UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|                              |   |                        |
|------------------------------|---|------------------------|
| In re                        | ) | Chapter 11 Cases       |
| WorldCom, Inc., _et al.,_    | ) | Case No. _____   |
|     Debtors. | ) | Jointly Administered |

AFFIDAVIT IN SUPPORT OF DEBTORS' APPLICATION FOR
ORDER UNDER 11 U.S.C. §§ 327(A) AND 328(A)
AUTHORIZING RETENTION OF
LAZARD FRERES & CO. LLC AS
INVESTMENT BANKER TO THE DEBTORS

STATE OF NEW YORK  )
                         ) ss.:
COUNTY OF NEW YORK )

       Frank (Terry) A. Savage, being duly sworn according to law, upon his oath, deposes and says:

       1.    I am a Managing Director of the firm Lazard Freres & Co. LLC ("Lazard" or the "Firm"), which has its principal office at 30 Rockefeller Plaza, New York, New York 10020. I am authorized to execute this affidavit on behalf of Lazard. Unless otherwise stated in this affidavit, I have personal knowledge of the facts set forth herein.

       2.    This affidavit is being submitted in connection with the proposed retention of Lazard as Investment Banker to WorldCom, Inc. and certain of its subsidiaries, debtors and debtors-in-possession in the above captioned cases (together, the "Debtors") to perform services as set forth in the application seeking to retain Lazard (the "Application").

      3.    Lazard is a privately held investment banking firm that provides a broad range of corporate advisory services, capital market capabilities, asset management, and principal investing. Lazard has been advising clients around the world for over 150 years

through its three Lazard "houses" centered in New York, London and Paris. Lazard has dedicated professionals who provide restructuring services to its clients.

4. The current managing directors, directors, vice presidents and associates of Lazard have extensive experience working with financially troubled companies in complex financial restructurings out-of-court and in Chapter 11 proceedings. Lazard and its principals have been involved as advisor to debtor, creditor and equity constituencies and government agencies in many reorganization cases. Since 1990, Lazard's professionals have been involved in over 175 restructurings, representing over $300 billion in debtor assets.

5. In connection with its proposed retention by the Debtors in these cases, Lazard undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Lazard has researched its client files and records to determine its connections with the Debtors, creditors, any other party in interest, and their respective attorneys and accountants. In connection with this check, Lazard obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties-in-interest in these chapter 11 cases (collectively, the "Potential Parties-in-Interest"). To the best of my knowledge, Lazard has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these Chapter 11 cases.

6. To the best of my knowledge and belief, insofar as I have been able to ascertain, none of the principals or employees of Lazard working on or connected to this engagement on the Debtors' behalf has had, or will have in the future, direct contact concerning these Chapter 11 cases with the Potential Parties-in-Interest, the United States Trustee, or anyone

employed in the Office of the United States Trustee, other than in connection with this engagement for the Debtors.

7. To the extent that I have been able to ascertain that Lazard has been retained to represent any of the Potential Parties-in-Interest in matters unrelated to these cases, such parties are listed on Schedule 1 annexed hereto.[4] Lazard's representation of each entity listed on Schedule 1 is only on matters that are totally unrelated to the Debtors or these cases. Other than as listed on Schedule 1, I am unaware of any relationships that Lazard has had with the Potential Parties-in-Interest. Given the size of the Firm and the breadth of Lazard's client base, however, it is possible that other principals or employees of Lazard may have been retained by one or more of the Debtors' creditors, shareholders or other parties in interest in unrelated matters without my knowledge. To the extent that Lazard discovers any such additional relationships, it will supplement this disclosure to the Court promptly.

8. As part of its regular business operations, Lazard trades securities on behalf of and/or acts as a broker or investment advisor for some or all of the Debtors' significant noteholders, and may also trade securities on behalf of and/or act as a broker for other creditors, equity holders and other parties in interest as well.

9. Specifically, through its asset management arm, Lazard Asset Management ("LAM"), Lazard may act as broker or investment advisor for or trade securities (including in discretionary client accounts, and through LAM's operation of hedge funds and mutual funds, in which cases investment decisions are made by LAM), including on behalf of creditors, equity holders or other parties in interest in these cases. Some of these LAM accounts and funds may now or in the future hold debt or equity securities of the Debtors. Lazard has in

---

[4] None of these relationships are material to the financial condition of Lazard.

place compliance procedures to ensure that no confidential or non-public information concerning the Debtors has been or will be available to employees of Lazard with responsibility for trading securities in LAM accounts or funds. LAM is operated as a separate and distinct business unit within the Firm, which is separated from the Firm's other businesses, including its financial advisory services group and its managing directors and employees advising the Debtors, by an ethical wall.

10. Similarly, Lazard operates a Capital Markets business, which is run as a separate department within the Firm and is ethically walled off from the Firm's investment banking businesses, including its financial advisory services group and its managing directors and employees advising the Debtors. Capital Markets regularly engages in trading of debt and equity securities for both clients and the Firm's own account. However, as a result of this engagement, the Debtors have been placed on the Firm's "Restricted List". Proprietary trading by Lazard and its managing directors and employees, and publication of research reports and recommendations or solicitations by Lazard to buy or sell, are prohibited with respect to companies placed on the Restricted List, including the Debtors. Placement on the Restricted List does not, however, prohibit Lazard from executing unsolicited agency orders and liquidating trades in a company's securities, including the Debtors.

11. Other than as disclosed herein Lazard and its principals and employees have no relationship with the Debtors of which I am aware after due inquiry. Other than as disclosed herein, Lazard holds no interest which is materially adverse to the interests of the Debtors or their estates, creditors or equity security holders.

12. Lazard has provided and agrees to continue to provide assistance to the Debtors in accordance with the terms and conditions set forth in the Application and the

Engagement Letter, which is annexed to the Application as Exhibit A. Accordingly, I make this Affidavit in support of an order authorizing such retention.

13. Pursuant to the Engagement Letter, the Debtors paid $300,000 to Lazard, the Monthly Advisory Fee (as defined in the Application) for July. WorldCom also paid Lazard a $300,000 retainer which is to be credited against any unpaid pre-petition invoices and unbilled fees, charges and disbursements, it being agreed and understood that the unused portion of the retainer shall be held by Lazard and applied against any of the fee applications filed and approved by the Court. During the prepetition period, the Debtors paid Lazard in full for all prepetition fees and expenses. Accordingly, Lazard is not a creditor of the Debtors.

14. All the services that the Firm will provide to the Debtors will be (i) at the request of the Debtors, (ii) appropriately directed by the Debtors so as to avoid duplicative efforts among professionals retained in the case, and (iii) performed in accordance with customary market practice of the investment banking profession.

15. Based upon the foregoing, I believe Lazard is disinterested as defined in section 101(14) of the Bankruptcy Code and represents no interest adverse to the Debtors.

16. It is the intention of Lazard to seek compensation for its services as described in the Application and the Engagement Letter in accordance with the Bankruptcy Code, the Bankruptcy Rules, the United States Trustees' Guidelines and any and all rules of this Court.

17. Lazard charges its clients for reasonably incurred, out-of-pocket expenses associated with an assignment. Except as necessary to comply with an applicable Administrative Order, all such expense billings are in accordance with the Firm's customary practices.

I declare under the penalty of perjury that the forgoing is true and correct.

LAZARD FRERES & CO. LLC

By: _____

Name: Frank (Terry) A. Savage
Title: Managing Director

Sworn and subscribed to before me, a notary
public for the State of New York, County of
___NY___ this _19th_ day of _July_, 2002

_____
Notary Public

JUDITH ORLANDO
Notary Public, State of New York
No. 01OR5066917
Qualified in New York County
Commission Expires Oct. 7, 20_02_

## Schedule 1

1. WorldCom and certain of its subsidiaries, including MFS Telecom, Inc., SkyTel Corp., UUNET Technologies, provide internet, telecom and paging services to Lazard. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

2. Lazard represented MCI Communications Corp. in its 1998 merger with WorldCom, Inc., the 1998 sale of its stake in Concert Communications Services (a joint venture with British Telecommunications) and the 1997 sale of Darome Teleconferencing to Genesys SA. Lazard also represented MCI Communications Corp. on a variety of acquisitions in the past. MCI is a subsidiary of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

3. JPMorgan Chase is one of the principal lenders on Lazard's subordinated credit facility. JPMorgan Chase is an unsecured creditor of the Debtor through its participation in the Debtors' pre-petition bank facility and is also a bondholder of the Debtors. JPMorgan Chase is also a participant in the Debtors' proposed DIP facility. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these chapter 11 cases.

4. Citibank is one of the principal lenders on Lazard's subordinated credit facility. Citibank is an unsecured creditor of the Debtor through its participation in the Debtors' pre-petition bank facility, a significant shareholder of the Debtors, and is also a bondholder of the Debtors. Citibank is a participant in the Debtors' proposed DIP facility. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

5. Lazard represented Bank One in the acquisition of First USA in 1997. Lazard also represented First Chicago and NBD in their merger with Bank One in 1998. Bank One is an unsecured creditor of the Debtor through its participation in the Debtors' pre-petition bank facility. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

6. Lazard has, in the past, represented Mellon Bank Corporation on various matters. Lazard represented Mellon Bank on its acquisition of a minority interest in Prime Advisors in 1998. Lazard also advised Mellon Bank on its acquisition of United Bankshares in 1997. Lazard has advised on other transactions involving Mellon Bank, but is not currently advising Mellon Bank on any assignments. Mellon Bank is an unsecured creditor of the Debtor through its participation in the Debtors' pre-petition bank facility. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these chapter 11 cases.

7. Lazard represented Northern Trust Company in 1997 on a matter unrelated to the Debtors or these chapter 11 cases. Northern Trust Company is a bondholder of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these chapter 11 cases.

8.   Lazard represented a special committee for Credit Suisse First Boston in 2001 in connection with the purchase of the public shares of its CSFBdirect tracking stock. Credit Suisse First Boston is a bondholder of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these chapter 11 cases.

9.   Bank of New York is one of the principal lenders on Lazard's subordinated credit facility. Bank of New York is a bondholder and significant shareholder of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these chapter 11 cases.

10.   Lazard represented Bank of America when it sold Robertson Stephens in 1998 and when it bought Robertson Stephens in 1997. Bank of America is a bondholder of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

11.   Lazard represented Robertson Stephens on an unrelated matter. Robertson Stephens is an underwriter of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

12.   Lazard represented Cowen in the 1998 combination with Societe Generale, resulting in SG Cowen. SG Cowen is a bondholder of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these chapter 11 cases.

13.   Lazard has represented First Union National Bank on a variety of matters. Lazard represented First Union in its acquisition of First Fidelity Bankcorp in 1996. Lazard represented Bowles, Hollowell Connor & Co. on its sale to First Union National Bank in 1998. Lazard has also been engaged by First Union in other transactions, none of which are currently active. First Union is a bondholder of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

14.   Lazard is currently providing investment banking services to PNC Bank on an unrelated matter, and has represented PNC Bank in the past. PNC Bank is a bondholder of the Debtors and a significant shareholder of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

15.   State Street Bank acts as custodian to Lazard. State Street Bank is a bondholder of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

16.   Lazard is currently representing a subsidiary of Royal Bank of Scotland on an unrelated matter and has an ongoing relationship with Royal Bank of Scotland. Royal Bank of Scotland is a bondholder of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

17.   Lazard has represented AXA Financial in the acquisition of affiliated minority interests in 2000 and in other transactions in the past. AXA is a significant shareholder

of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

18. Lazard has in the past worked with Southwestern Bell ("SBC") on a variety of matters. Lazard advised SBC on its acquisition of Pacific Telesis in 1996. Lazard also advised SBC on its acquisition of SNET in 1998. In 1999, Lazard advised SBC in the formation of a wireless joint venture with BellSouth, and in 2000, Lazard advised SBC on its acquisition of Sterling Commerce. SBC provides telecommunications services to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these chapter 11 cases.

19. Lazard has represented BellSouth in the past and continues to have a relationship with BellSouth. BellSouth provides telecommunication services to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these chapter 11 cases.

20. The CIT Group is one of the lenders on one of Lazard's credit facilities. CIT Capital Finance is one of the Debtors' landlords. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

21. Lazard has a relationship with Daimlerchrysler Corp., the parent company of Daimlerchrysler Services North America LLC. Daimlerchrysler Corp. is a landlord of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

22. Lazard is currently providing investment banking services to Dana Commercial Credit Corporation on an unrelated matter. Dana Commercial Credit Corporation is a landlord of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

23. Lazard is currently representing American Express on an unrelated matter and we have represented them on a variety of matters in the past. Vernon E. Jordan Jr., and Harvey Golub, a Managing Director and Senior Advisor, respectively, are board members of American Express. American Express is a bondholder of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these chapter 11 cases.

24. Lazard represented Wireless One, Inc. in its restructuring and sale to MCI WorldCom in 1999. Arnold L. Chavkin, a partner at Chase Capital Partners, was a director of Wireless One and also an officer or director of the Debtors over the last three years. Henry M. Burkhalter was the CEO of Wireless One, Inc. and was an officer or director of subsidiaries of the Debtors over the last three years. Wireless One, Inc. is a subsidiary of the Debtors. Lazard does not believe that these relationships create a conflict of interest regarding the Debtors or these chapter 11 cases.

25. Lazard is currently representing Marconi plc, the parent of Marconi Telegraph Cable Company, on an unrelated matter. Marconi Telegraph Cable Company is a subsidiary of the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

26. Lazard has represented Telecom Italia in the past and is currently representing Telecom Italia on an unrelated matter. Telecom Italia International Settlements Dept. is an unsecured creditor to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these chapter 11 cases.

27. Lazard has represented Wells Fargo Bank in the past. Wells Fargo Bank is an unsecured creditor to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

28. Lazard represented Nationsbank in its 1997 merger with Montgomery Securities. Nationsbank is an indenture trustee to the Debtors. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

29. Gregory B. Maffei was previously either an officer or a director of either the Debtors or one of their subsidiaries. Mr. Maffei is currently Chairman and CEO of 360networks, Inc. Lazard is currently representing 360networks, Inc. in its restructuring. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

30. Arthur Andersen LLP was Lazard's auditor until 2000. Arthur Andersen LLP was the auditor of the debtors until 2001. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

31. Ernst & Young provides accounting service to the Debtors as well as Lazard. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

32. Deloitte & Touche provides accounting service to the Debtors and serves as Lazard's auditor. Lazard does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

33. Lazard has in the past worked with, continues to work with, and has mutual clients with certain law firms, including the Debtors' counsel Weil, Gotshal & Manges LLP, who represent parties-in-interest in this case. None of those engagements or relationships relate to these cases.