| | |
|---|---|
| Interim Approval Hearing Date: | November 5, 2002 at 10:00 a.m. |
| Interim Approval Objection Deadline: | October 31, 2002 at 4:00 p.m. |
| Final Approval Hearing Date: | November 26, 2002 at 10:00 a.m. |
| Final Approval Objection Deadline: | November 21, 2002 at 4:00 p.m. |

Daniel H. Golden (DG-5624)
Ira S. Dizengoff (ID-9980)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, NY 10022
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Attorneys for the Official Committee of Unsecured
Creditors of WorldCom, Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WORLDCOM, INC., et al., | : | Case No. 02-13533 (AJG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------x

### NOTICE OF HEARING ON APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING THE EMPLOYMENT OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, AS FINANCIAL ADVISOR , NUNC PRO TUNC TO JULY 29, 2002

PLEASE TAKE NOTICE that the Official Committee of Unsecured Creditors

(the "Committee") of Worldcom, Inc. and its affiliated debtors and debtors in possession

(collectively, the "Debtors"), seek entry of an order approving its Application Authorizing the

Employment of Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey"), as Financial

Advisor, pursuant to sections 328(a) and 1103(a) of chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"), nunc pro tunc to July 29, 2002 (the "Application").

PLEASE TAKE FURTHER NOTICE that a hearing to consider the employment of Houlihan Lokey and the payment of Houlihan Lokey's Monthly Fees,[1] on an interim basis, shall be held before the Honorable Arthur J. Gonzalez, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on November 5, 2002, at 10:00 a.m. (ET), or as soon thereafter as counsel may be heard (the "Interim Hearing").

PLEASE TAKE FURTHER NOTICE that a hearing to consider final approval of the Application, including the Transaction Fee set forth in the Application, shall be held before the Honorable Arthur J. Gonzalez, United States Bankruptcy Judge, in Room 523 of the Bankruptcy Court, on November 26, 2002, at 10:00 a.m. (ET), or as soon thereafter as counsel may be heard (the "Final Hearing").

PLEASE TAKE FURTHER NOTICE that responses or objections to the Application, if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers), and shall be served in accordance with General Order M-242

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

upon (i) the Debtors, 1133 19th Street, Washington, D.C. 20036, Attn: Michael Salsbury, General

Counsel, (ii) Weil, Gotshal & Manges LLP, Attorneys for Debtors and Debtors in Possession,

767 Fifth Avenue, New York, New York 10153, Attn: Scott E. Cohen, Esq., (iii) the Office of

the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:

Mary Tom, Esq., (iv) counsel for the examiner appointed in the Debtors' chapter 11 cases,

(v) O'Melveny & Myers, LLP, Attorneys for the Lenders Party to the Debtors' 364-Day

Revolving Credit Agreement, 153 East 53rd Street, New York, New York 10022, Attn: Robert

White, Esq., (vi) Shearman & Sterling, Attorneys for the Debtors' Postpetition Lenders, 599

Lexington Avenue, New York, New York 10022, Attn: Douglas Bartner, Esq. and Marc B.

Hankin, Esq., (vii) Akin Gump Strauss Hauer & Feld LLP, Attorneys for the Official Committee

of Unsecured Creditors, 590 Madison Avenue, New York, New York 10022, Attn: Daniel

Golden, Esq., (viii) Kasowitz Benson Torres & Friedman, LLP, Attorneys for Informal

Committee of Bondholders of MCI Communications Corporation, 1633 Broadway, New York,

New York 10019, Attn: David S. Rosner, Esq. (ix) Paul Weiss Rifkind Wharton & Garrison,

Attorneys for Informal Committee of Bondholders of Intermedia Communications Inc., 1285

Avenue of the Americas, New York, New York, 10019, Attn: Alan W. Kornberg, Esq., (x) the

attorneys for any other statutory committee appointed in the Debtors' chapter 11 cases,

(xi) Securities and Exchange Commission, 223 Broadway, New York, New York 10279, Attn:

Wayne M. Carlin and Securities & Exchange Commission, 450 Fifth Street, N.W. Washington,

D.C. 20549, Attn: Michael A. Berman, Esq., (xii) Internal Revenue Service, 290 Broadway, New

York, New York 10007, Attn: District Director and Internal Revenue Service, 290 Broadway,

New York, New York 10007, Attn: Regional Director, (xiii) other government agencies to the

extent required by the Bankruptcy Rules and the Local Rules, and (xiv) any party that has

3

requested notice pursuant to Bankruptcy Rule 2002, in each case so as to be received no later than (a) October 31, 2002 at 4:00 p.m. (ET) with respect to the relief requested at the Interim Hearing, and (b) November 21, 2002 at 4:00 p.m. (ET) with respect to the relief requested at the Final Hearing.

PLEASE TAKE FURTHER NOTICE that pursuant to the Application, the Committee seeks to retain Houlihan Lokey to provide the following services for the Committee:

a.   Evaluating the assets and liabilities of the Debtors;

b.   Analyzing and reviewing the financial and operating statements of the Debtors;

c.   Analyzing the business plans and forecasts of the Debtors;

d.   Evaluating all aspects of the Debtors' debtor in possession financing, cash collateral usage and adequate protection therefore and any exit financing in connection with any plan of reorganization and any budgets relating thereto;

e.   Providing such specific valuation or other financial analyses as the Committee may require in connection with these cases;

f.   Helping with the claim resolution process and distributions relating thereto;

g.   Assessing the financial issues and options concerning (a) the sale of any assets of the Debtors and/or the Company (as defined in the Engagement Letter, as defined below), either in whole or in part, and (b) the Debtors' plan(s) of reorganization or any other plan(s) of reorganization (the "Plan");

h.   Preparation, analysis and explanation of the Plan to various constituencies; and

i.   Providing testimony in court on behalf of the Committee, if necessary.

4

PLEASE TAKE FURTHER NOTICE that, if Houlihan Lokey's retention is approved, Houlihan Lokey will be entitled to receive the following compensation:

a. A Monthly Fee of $350,000;

b. Upon the closing or consummation of a Transaction, the Company shall pay Houlihan Lokey, in cash, a Transaction Fee equal to the sum of (i) $5,000,000; plus (ii) a Variable Transaction Fee as described below (the "Variable Transaction Fee"); plus (iii) $3,000,000 if the Transaction is consensual (the "Consensual Transaction Fee"). The Variable Transaction Fee shall be calculated as follows: (A) 20 basis points (0.20%) of the total enterprise value (the "TEV") of the Company in excess of $6,000,000,000, as of the consummation of a Transaction, plus (B) 35 basis points (0.35%) of the TEV of the Company in excess of $9,000,000,000, as of the consummation of a Transaction. The Variable Transaction Fee shall not exceed $17,000,000, and the Transaction Fee shall not exceed $25,000,000. A Transaction shall be consensual if (i) a Plan is confirmed pursuant to section 1129 of the Bankruptcy Code and (ii) at least 50% in dollar amount of each class of unsecured claims that is actually voted votes in favor of such Plan; provided, however, that to the extent the Plan provides for a single class of unsecured creditors or classifies creditors without regard to the Debtor entity against which such unsecured claim is held, at least 50% in dollar amount of the unsecured claims of each Debtor (as if the unsecured claims of each Debtor were separately classified) that is actually voted (the "Requisite Majority") votes in favor of such Plan. Any party asserting that the Consensual Transaction Fee has not been earned shall have the burden of establishing that the Requisite Majority was not achieved. The Transaction Fee shall be paid upon the consummation of a Transaction either (i) during the term of the Engagement Letter or (ii) within twelve months of the effective date of termination of the Engagement Letter; and

c. Reimbursement of all reasonable out-of-pocket expenses.

5

**PLEASE TAKE FURTHER NOTICE** that if the Application is granted, as more fully described in the Application and subject to certain conditions, the Debtors shall indemnify and hold Houlihan Lokey harmless against any and all losses, claims, damages or liabilities in connection with the engagement, except to the extent they result from Houlihan Lokey's gross negligence, willful misconduct, bad faith or self-dealing in connection with the performance of its services.

PLEASE TAKE FURTHER NOTICE that the foregoing summary of certain elements of the retention is not complete and that the full terms of the retention are contained in the Application and the letter agreement, dated as of July 29, 2002, containing the terms of Houlihan Lokey's employment in these chapter 11 cases (the "Engagement Letter"), which is annexed to the Application as Exhibit A. The Application and the Engagement Letter are available for inspection at the Office of the Clerk for the Bankruptcy Court and on the Bankruptcy Court's Internet site at www.nysb.uscourts.gov, through an account obtained from Pacer Service Center at 1-800-676-6856, or 1-210-301-6440, or www.pacer.psc.uscourts.gov. To the extent that the summary of the retention terms set forth in this notice conflict with the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

**PLEASE TAKE FURTHER NOTICE** that if you do not object by the

November 21, 2002 objection deadline above, your rights to subsequently object to the

compensation of Houlihan Lokey will be affected and subject to the heightened standard of

review enumerated in section 328 of the Bankruptcy Code.

Dated: New York, New York
      October 7, 2002

                        **AKIN GUMP STRAUSS HAUER & FELD LLP**

                        By:  /s/  Ira S. Dizengoff
                              Ira S. Dizengoff (ID-9980)

                              590 Madison Avenue
                              New York, NY  10022
                              (212) 872-1000

                        Attorneys for the Official Committee of Unsecured
                        Creditors of WorldCom, Inc. et al.

340774 v4

| Interim Approval Hearing Date: | November 5, 2002 at 10:00 a.m. |
| Interim Approval Objection Deadline: | October 31, 2002 at 4:00 p.m. |
| Final Approval Hearing Date: | November 26, 2002 at 10:00 a.m. |
| Final Approval Objection Deadline: | November 21, 2002 at 4:00 p.m. |

Daniel H. Golden (DG-5624)
Ira S. Dizengoff (ID-9980)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, NY 10022
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Attorneys for the Official Committee of Unsecured
Creditors of WorldCom, Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| WORLDCOM, INC., et al., | : | Case No. 02-13533 (AJG) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------x

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING THE EMPLOYMENT OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, AS FINANCIAL ADVISOR , NUNC PRO TUNC TO JULY 29, 2002

The Official Committee of Unsecured Creditors (the "Committee") of WorldCom, Inc.

and its affiliated debtors (collectively, the "Debtors"), hereby submits this application (the

"Application") for an order, pursuant to sections 328(a) and 1103(a) of chapter 11 of title 11 of

the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Committee to retain and employ

Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey"), pursuant to the terms of its engagement letter, dated as of July 29, 2002, attached hereto as Exhibit A (the "Engagement Letter"), as its financial advisor nunc pro tunc to July 29, 2002, and, in support thereof respectfully represents as follows:

### Introduction

1.      On July 21, 2002 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under the Bankruptcy Code.

2.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On July 29, 2002, the United States Trustee appointed the Committee,[1] and on that date the Committtee selected Houlihan Lokey to serve as its financial advisor. Prior to the Petition Date, Houlihan Lokey had been retained as the financial advisor to an informal committee (the "Informal Committee") comprised of certain holders of senior notes issued by the Debtors. Before Houlihan Lokey could begin its efforts on behalf of the Informal Committee, however, the Debtors commenced these chapter 11 cases. Houlihan Lokey is not a prepetition creditor of the Debtors.

---

[1]      The Committee is comprised of the following entities: ABN Amro Bank N.V.; AOL Time Warner, Inc.; Blue River, LLC; Cerberus Capital Management, L.P.; Deutsche Bank AG; Electronic Data Systems Corporation; Elliott Management Corp.; ESL Investments; GSC Partners; Law Debenture Corporate Services, Inc., as indenture trustee; Metropolitan Life Insurance Co.; Metropolitan West Asset Management LLC; New York Life Investment Management LLC; Sun Trust Bank; and Wilmington Trust Company, as indenture trustee.

2

## Jurisdiction and Venue

4.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§157 and 1334. This Application is a core proceeding pursuant to 28 U.S.C. §157(b). The statutory predicates for the relief requested in this Application are 11 U.S.C. §§328(a) and 1103(a).

## Retention of Houlihan Lokey Howard & Zukin Capital

### a.      *Introduction*

5.      The Committee brings this Application because of its pressing need to retain a financial advisor to assist it in the critical tasks associated with analyzing and implementing critical restructuring alternatives, and to help guide it through the Debtors' reorganization efforts. As a result of the Committee's careful deliberations, the Committee determined that Houlihan Lokey's broad experience would best serve the interests of the Committee, its counsel, and the creditors in these cases.

6.      Houlihan Lokey is a nationally recognized investment banking/financial advisory firm with 9 offices worldwide and more than 275 professionals. Houlihan Lokey provides investment banking and financial advisory services and execution capabilities in a variety of areas, including financial restructuring, where Houlihan Lokey is one of the leading investment bankers and advisors to debtors, bondholder groups, secured and unsecured creditors, acquirors, and other parties-in-interest involved in financially distressed companies, both in and outside of bankruptcy. Houlihan Lokey's Financial Restructuring Group, which has over 75 professionals dedicated to such engagements, will be providing the agreed-upon financial advisory services to the Committee. Houlihan Lokey has served as a financial advisor in some of the largest and most complex restructuring matters in the United States, including serving as the

financial advisor to the debtors in the chapter 11 proceedings of *XO Communications, Inc., NII Holdings, Inc. (Nextel International), Covad Communications, Inc.* and *AmeriServe Food Distribution, Inc.,* and as the financial advisor to the official creditors' committees in the chapter 11 proceedings of *Enron Corporation, Williams Communications Group, Inc., Laidlaw, Inc.,* and *The Loewen Group, Inc.* In addition, Houlihan Lokey has provided financial advisory and investment banking services to over 100 telecommunications and media companies and their creditors throughout the world, including in connection with the following companies: *McLeod USA, Impsat Fiber Networks, Inc., Flag Telecom Holdings, Ltd., Asia Global Crossing, Global Telesystems, Inc., GST Telecommunications* and *CTI Movil.*

   7. As the financial advisor to the Committee, it is expected that Houlihan Lokey will provide the following services:

    a. Evaluating the assets and liabilities of the Debtors;

    b. Analyzing and reviewing the financial and operating statements of the Debtors;

    c. Analyzing the business plans and forecasts of the Debtors;

    d. Evaluating all aspects of the Debtors' debtor in possession financing, cash collateral usage and adequate protection therefore and any exit financing in connection with any plan of reorganization and any budgets relating thereto;

    e. Providing such specific valuation or other financial analyses as the Committee may require in connection with these cases;

    f. Helping with the claim resolution process and distributions relating thereto;

    g. Assessing the financial issues and options concerning (a) the sale of any assets of the Debtors

and/or the Company,[2] either in whole or in part, and
(b) the Debtors' plan(s) of reorganization or any
other plan(s) of reorganization (the "Plan");

h. Preparation, analysis and explanation of the Plan to
various constituencies; and

i. Providing testimony in court on behalf of the
Committee, if necessary.

8. The Committee hereby requests that the Court approve Houlihan Lokey's

retention nunc pro tunc, to July 29, 2002. This is appropriate because, since that date, Houlihan

Lokey has been providing critical services to the Committee, including reviewing extensive

operating information, meeting with the Debtors' management, analyzing various issues

confronting the Debtors and communicating with the Committee regarding such matters.

### b. *The Terms of Houlihan Lokey's Engagement*

9. As described more fully in the Engagement Letter, Houlihan Lokey will be

entitled to receive, as compensation for its services:

a. A Monthly Fee of $350,000;

b. Upon the closing or consummation of a
Transaction, the Company shall pay Houlihan
Lokey, in cash, a Transaction Fee equal to the sum
of (i) $5,000,000; plus (ii) a Variable Transaction
Fee as described below (the "Variable Transaction
Fee"); plus (iii) $3,000,000 if the Transaction is
consensual (the "Consensual Transaction Fee").
The Variable Transaction Fee shall be calculated as
follows: (A) 20 basis points (0.20%) of the total
enterprise value (the "TEV") of the Company in
excess of $6,000,000,000, as of the consummation
of a Transaction, plus (B) 35 basis points (0.35%) of
the TEV of the Company in excess of
$9,000,000,000, as of the consummation of a
Transaction. The Variable Transaction Fee shall not

---

[2] Unless otherwise defined, all capitalized terms used herein have the meanings given to them in
the Engagement Letter.

exceed $17,000,000, and the Transaction Fee shall
not exceed $25,000,000. A Transaction shall be
consensual if (i) a Plan is confirmed pursuant to
section 1129 of the Bankruptcy Code and (ii) at
least 50% in dollar amount of each class of
unsecured claims that is actually voted votes in
favor of such Plan; provided, however, that to the
extent the Plan provides for a single class of
unsecured creditors or classifies creditors without
regard to the Debtor entity against which such
unsecured claim is held, at least 50% in dollar
amount of the unsecured claims of each Debtor (as
if the unsecured claims of each Debtor were
separately classified) that is actually voted (the
"Requisite Majority") votes in favor of such Plan.
Any party asserting that the Consensual Transaction
Fee has not been earned shall have the burden of
establishing that the Requisite Majority was not
achieved. The Transaction Fee shall be paid upon
the consummation of a Transaction either (i) during
the term of the Engagement Letter or (ii) within
twelve months of the effective date of termination
of the Engagement Letter; and

c.   Reimbursement of all reasonable out-of-pocket
expenses.

The Engagement Letter also provides that the Debtors shall indemnify and hold Houlihan Lokey

harmless against any and all losses, claims, damages or liabilities in connection with the

engagement, except to the extent they arise as a result of any gross negligence, willful

misconduct, bad faith or self-dealing on the part of Houlihan Lokey in the performance of its

services.

10.    As set forth in the Affidavit of Alan D. Fragen in Support of the

Application (the "Fragen Affidavit"), attached hereto as Exhibit B, the terms of the Engagement

Letter are similar to the terms, both financial and otherwise, agreed to by Houlihan Lokey and

other investment bankers in similar engagements, both in and outside of bankruptcy.

6

11.     The terms of the Engagement Letter were heavily negotiated between the Committee and Houlihan Lokey, and reflect the extensive work to be performed by Houlihan Lokey and the Firm's financial advisory expertise.

### c.      *Houlihan Lokey's Application Should be Approved Pursuant to Section 328(a) of the Bankruptcy Code*

12.     The Engagement Letter provides that Houlihan Lokey will be retained pursuant to section 328(a) of the Bankruptcy Code.  Section 328(a) provides, in relevant part, that a Committee, "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 . . . on any reasonable terms and conditions of employment, including a retainer . . . ." 11 U.S.C. §328(a).  Section 328 reflects a significant departure from prior bankruptcy practice relating to the compensation of professionals, as it permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions.  As the Fifth Circuit Court of Appeals recognized in In re National Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997) (citations omitted):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

340759 v. 5

13. Section 328(a) provides courts with inherent flexibility to approve alternative fee structures to the customary hourly rate. The fee structure for this engagement is similar to fee agreements approved by bankruptcy courts throughout the United States under section 328(a).

14. Pursuant to section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") and the Orders of this Court, Houlihan Lokey will apply to the Court for the interim and final allowance of compensation and reimbursement of expenses.

### d. *Houlihan Lokey is a Disinterested Party*

15. Houlihan Lokey's compliance with the requirements of sections 326 and 504 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016 is set forth in greater detail in the Fragen Affidavit.

16. As described in the Fragen Affidavit, Houlihan Lokey does not represent any of the Debtors' creditors or other parties to this proceeding, or their respective attorneys or accountants, in any matter which is adverse to the interests of any of the Debtors, and Houlihan Lokey is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code. As also described in the Fragen Affidavit, Houlihan Lokey does not hold any interest adverse to any of the Debtors or their estates in the matters upon which Houlihan Lokey is to be engaged herein.

### Waiver of Memorandum of Law

17. Because this Application presents no novel issues of law and the authorities relied upon by the Committee are set forth herein, the Committee respectfully requests that the Court waive the requirement for the filing of a separate memorandum of law in support

of this Application pursuant to Local Rule 9013-1(b), but the Committee reserves the right to file a brief in reply to any objection to this Application.

## **Notice**

18. Notice of this Application has been provided in accordance with the Case Management Order of this Court, dated July 29, 2002.

## **No Previous Request**

19. No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Committee respectfully requests that this Court enter an Order substantially in the form attached hereto as Exhibit C (and on an interim basis, the limited relief set forth in Exhibit D), approving the retention and employment of Houlihan Lokey Howard & Zukin Capital, as financial advisor to the Committee, nunc pro tunc to July 29, 2002, pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code, and granting such other relief as may be just and equitable.

Dated: New York, New York
      October 7, 2002

                   **THE OFFICIAL COMMITTEE OF UNSECURED
                   CREDITORS OF WORLDCOM, INC., ET AL.**

                   **By: BLUE RIVER, L.L.C.**

                       By: /s/ Van Greenfield
                       Name: Van Greenfield

                   **By: CERBERUS CAPITAL MANAGEMENT, L.P.**

                       By: /s/ Scott Cohen
                       Name: Scott Cohen

340759 v. 5



H O U L I H A N   L O K E Y   H O W A R D   &   Z U K I N   C A P I T A L

INVESTMENT BANKERS

Exhibit A

To: The Official Committee of Unsecured Creditors (the "Committee") of WorldCom, Inc. and its affiliated debtors and debtors-in-possession (the "Debtors") and its remaining affiliate and subsidiary corporations (collectively with the Debtors, the "Company"), in care of:

Committee Co-Chair                    Committee Counsel

Blue River LLC                        Akin Gump Strauss Hauer & Feld LLP
360 East 88th Street, Suite 2D        590 Madison Ave.
New York, NY 10126                    New York, NY 10022

Attn: Van Greenfield                  Attn: Daniel H. Golden, Esq.

Committee Co-Chair
Cerberus Partners LP
450 Park Ave.
New York, NY 10022

Attn: Scott Cohen

Gentlemen:

This letter confirms the terms of the agreement between Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey" or the "Firm") and the Committee concerning the Committee's engagement of Houlihan Lokey to provide financial advisory and related services to the Committee, effective as of July 29, 2002, in connection with the Debtors' Chapter 11 cases (the "Cases"), which are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

1.   **Scope of Engagement**.  Pursuant to its engagement by the Committee, Houlihan Lokey's services will include:

   (a)   Evaluating the assets and liabilities of the Debtors;

   (b)   Analyzing and reviewing the financial and operating statements of the Debtors;

(c)    Analyzing the business plans and forecasts of the Debtors;

(d)    Evaluating all aspects of the Debtors' debtor-in-possession financing, cash collateral usage and adequate protection therefore and any exit financing in connection with any plan of reorganization and any budgets relating thereto;

(e)    Providing such specific valuation or other financial analyses as the Committee may require in connection with the Cases;

(f)    Helping with the claim resolution process and distributions relating thereto;

(g)    Assessing the financial issues and options concerning (a) the sale of any assets of the Debtors and/or the Company, either in whole or in part, and (b) the Debtors' plan(s) of reorganization or any other plan(s) of reorganization (the "Plan");

(h)    Preparation, analysis and explanation of the Plan to various constituencies; and

(i)    Providing testimony in court on behalf of the Committee, if necessary.

As used herein, the term "Transaction" shall include the consummation of any agreement or series of agreements, or transactions or series of transactions (which agreement or series of agreements or transaction or series of transactions subsequently closes within a reasonable time period thereafter, or a similar transaction closes thereafter with a competing bidder upon Bankruptcy Court approval), which in each case may include, but is not limited to, the following:

(i)    The sale of all or substantially all of the assets or operations of the Debtors and/or the Company;

(ii)    The sale, transfer or assumption of all or substantially all of the assets, liabilities or stock of the Debtors and/or the Company;

(iii)    The successful tender for a majority of the unsecured claims;

(iv)    The confirmation of a Chapter 11 plan of reorganization or liquidation, the terms of which have been substantially agreed to by the Committee; or,

(v)    Absent any of the foregoing, an agreement in good faith by the Committee and Houlihan Lokey (collectively, a "Transaction").

2.    **Committee Engagement**.   Neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee ("Committee Counsel")), shall be liable for the fees, expenses or other amounts payable to Houlihan Lokey hereunder.  All financial advice, written or oral, provided by Houlihan Lokey to the Committee pursuant to this Agreement is intended solely for the use and benefit of the Committee, and such advice may not be disclosed publicly or made available to third-parties without the prior consent of Houlihan Lokey, which consent shall not be unreasonably withheld.  Houlihan Lokey is providing its services as the financial advisor to the Committee, and is not providing any services on behalf of the individual members of the Committee.  To the extent any issue arises as to the scope, nature or substance of Houlihan Lokey's analysis, the Committee, with the advice of Committee Counsel, shall resolve such issue.  At the direction of Committee Counsel, certain communication and correspondence between Houlihan Lokey and the Committee, and work product and analyses prepared by Houlihan Lokey for the Committee in connection with this matter, will be considered in preparation for litigation over the restructuring of the Debtors, and accordingly will be subject to the attorney-client privilege and work-product privilege between Houlihan Lokey, Committee Counsel and the Committee.

3.    **Advisor**.  Houlihan Lokey's services are limited to those specifically provided in this Agreement or subsequently agreed-upon by the parties hereto, and Houlihan Lokey shall have no obligation or responsibility for any other services.  The parties agree that this Agreement does not create an agency relationship between Houlihan Lokey and the parties to this Agreement.

4.    **Consideration**.  As consideration for the services being provided by Houlihan Lokey, the Company shall pay Houlihan Lokey a fee of $350,000 per month (the "Monthly Fee").  The first payment of $350,000 shall be due immediately upon entry by the Bankruptcy Court of an order approving the Committee's retention of Houlihan Lokey.  Thereafter, the Company shall pay the Monthly Fee by the 29th day of each month, in advance, or to the extent there is less than 29 days in any month, on the 28th day of such month.  Notwithstanding the foregoing, upon entry of an order approving Houlihan Lokey's retention by the Committee, the Company shall immediately remit payment to Houlihan Lokey as if this Agreement went into effect on July 29, 2002.  For the avoidance of doubt, to the extent such order is entered on September 15, 2002, the Company will immediately remit $700,000 to Houlihan Lokey on account of payments that would have been made on July 29, 2002 and August 29, 2002, respectively.  One hundred percent (100%) of the Monthly Fees earned after 12 months from the date of this Agreement shall be credited against the Transaction Fee earned pursuant to this Agreement, provided, however, in no event shall the Transaction Fee be reduced to less than zero.  Payment shall be made to Houlihan Lokey at the address above, Attention: Irwin N. Gold.  In addition, the Company agrees to promptly reimburse Houlihan Lokey, upon request from time to time, for all out-of-pocket expenses reasonably incurred by Houlihan Lokey in connection with the matters contemplated by this Agreement. Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, duplicating charges, on-line service charges, messenger services,

delivery services, meeting services, long distance telephone and facsimile charges incurred by Houlihan Lokey.

In addition to the foregoing Monthly Fees, upon the closing or consummation of a Transaction, the Company shall pay Houlihan Lokey, in cash, a Transaction Fee equal to the sum of (i) $5,000,000 (the "Minimum Transaction Fee"); plus (ii) a Variable Transaction Fee as described below (the "Variable Transaction Fee"); plus (iii) $3,000,000 if the Transaction is consensual as defined below (the "Consensual Transaction Fee"). For the purposes of this Agreement, the Variable Transaction Fee shall be calculated as follows: (A) 20 basis points (0.20%) of the total enterprise value ("TEV")[1] of the Company in excess of $6,000,000,000, as of the consummation of a Transaction, plus (B) 35 basis points (0.35%) of the TEV of the Company in excess of $9,000,000,000, as of the consummation of a Transaction. The Variable Transaction Fee shall not exceed $17,000,000, and the Transaction Fee shall not exceed $25,000,000.

For the purposes of this Agreement, a Transaction shall be consensual if (i) a Plan is confirmed pursuant to section 1129 of the Bankruptcy Code and (ii) at least 50% in dollar amount of each class of unsecured claims that is actually voted votes in favor of such Plan; provided, however, that to the extent the Plan provides for a single class of unsecured creditors or classifies creditors without regard to the Debtor entity against which such unsecured claim is held, at least 50% in dollar amount of the unsecured claims of each Debtor (as if the unsecured claims of each Debtor were separately classified) that is actually voted (the "Requisite Majority") votes in favor of such Plan. Any party asserting that the Consensual Transaction Fee has not been earned shall have the burden of establishing that the Requisite Majority was not achieved. The Transaction Fee shall be paid upon the consummation of a Transaction either (i) during the term of this Agreement or (ii) within twelve months of the effective date of termination of this Agreement (such twelve-month period being referred to herein as the "Tail Period").

---

[1] TEV shall include all distributions made pursuant to a Plan including, but not limited to, all funded debt obligations of the Company, whether newly issued or reinstated pursuant to a Plan. TEV shall not include any setoffs, administrative expense claims or the repayment of any debtor-in-possession financing facility. Any equity securities distributed pursuant to the Plan shall be valued as follows: (x) if such securities are traded on a stock exchange, the securities will be valued based upon the average last sale or closing price for the ten trading days over a period that begins 60 days following the consummation of the Plan; (y) if such securities are traded primarily in over-the-counter transactions, the securities will be valued at the average of the closing bid and asked quotations similarly averaged for the ten trading days over a period that begins 60 days following the consummation of the Plan; or (z) if neither (x) nor (y) is applicable, Houlihan Lokey will prepare a valuation of the securities and, together with the Committee, will seek to agree on a mutually acceptable fair valuation thereof for the purposes of calculating the Variable Transaction Fee, which may take into account the value of such securities as disclosed in a court approved disclosure statement in support of a Plan that is confirmed. Any funded debt securities, whether newly issued or reinstated pursuant to a Plan, shall be valued at the amount reflected on the Company's balance sheet on the date of consummation of a Transaction, net of any original issue discount. Any other property distributed pursuant to the Plan will be valued as follows: Houlihan Lokey will prepare a valuation of such property and, together with the Committee, will seek to agree on a mutually acceptable fair valuation thereof for the purposes of calculating the Variable Transaction Fee, which may take into account the value of such property as disclosed in a court approved disclosure statement in support of a Plan that is confirmed.

The parties acknowledge that a substantial professional commitment of time and effort will be required by Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for the Firm. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for the Firm. Given the numerous issues which may arise in these cases, the Firm's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature whether in, or out of court, the parties agree that the fee arrangement hereunder is reasonable, fairly compensates Houlihan Lokey and provides certainty to the Debtors and the Committee.

5.    **Bankruptcy Court**.  The Committee shall, as soon as practicable following the execution of this Agreement by the Committee, seek an order from the Bankruptcy Court authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to (and subject to the standard of review of) Section 328(a) of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules, and shall use its best efforts to cause such application to be considered on the most expedited basis.  The employment application and the order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey sufficiently in advance of their filing, and must be acceptable to Houlihan Lokey in its discretion. If the order authorizing the employment of Houlihan Lokey is obtained, the Company shall pay all fees and expenses as promptly as possible in accordance with the terms of this Agreement, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court.  The terms of this paragraph are solely for the benefit of Houlihan Lokey and may be waived, in whole or in part, only by Houlihan Lokey.

6.    **Termination**.  This Agreement is terminable upon thirty (30) days written notice by the Committee or Houlihan Lokey, provided, however, that if the Agreement is terminated, the Company shall pay Houlihan Lokey all previously unpaid Monthly Fees and the pro-rata portion of the Monthly Fee for the month in which the Agreement is terminated.  The termination of this Agreement will not affect (a) the Debtors' indemnification, reimbursement, contribution and other obligations set forth in this Agreement and (b) Houlihan Lokey's right to receive, and the Debtors' obligation to pay (i) any and all fees and expenses accrued as of the effective date of termination of this Agreement, and (ii) those fees earned for a Transaction that is consummated during the Tail Period as described in this Agreement.

7.    **Information**.  The Committee acknowledges and agrees that, in rendering its services hereunder, Houlihan Lokey will be using and relying on information made available to it by the Debtors and their advisors (the "Information") (and information available from public sources and other sources deemed reliable by Houlihan Lokey) without independent verification thereof by Houlihan Lokey or independent appraisal by Houlihan Lokey.  Houlihan Lokey does not assume responsibility for the accuracy or completeness of the Information or any other information regarding the Company.

8.   **CHOICE OF LAW; JURISDICTION.**   THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

9.   **Counterparts**.  For the convenience of the parties, any number of counterparts of this Agreement may be executed by the parties hereto. Each such counterpart shall be, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same Agreement.

10.   **Severability**.  If it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that any term or provision hereof is invalid or unenforceable, (i) the remaining terms and provisions hereof shall be unimpaired and shall remain in full force and effect and (ii) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

11.   **Entire Agreement**.  This Agreement embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understanding relating to the matters provided for herein.  No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

12.   **Indemnification**.  As a material part of the consideration for Houlihan Lokey to furnish its services under this Agreement, the Debtors shall indemnify Houlihan Lokey shall hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to the Agreement, any actions taken or omitted to be taken by an Indemnified Party in connection with Houlihan Lokey's provision of services to the Committee, or any Transaction (as defined herein) or proposed Transaction contemplated thereby. In addition, the Debtors shall reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, there shall be no liability to the Company under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.

If for any reason the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the Company shall contribute to the amount paid or payable by

the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection with a proposed Transaction and/or the services rendered by Houlihan Lokey. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the Debtors shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, the aggregate contribution of all Indemnified Parties to any such losses, claims, damages, liabilities and expenses shall not exceed the amount of fees actually received by Houlihan Lokey pursuant to the Agreement.

The Committee and the Debtors shall not affect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification from the Debtors unless, such settlement or release contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey. The Committee and/or the Debtors shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the prior written consent of the Committee and the Debtors.

Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant proportion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Debtors set forth in this Agreement, the Debtors will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Debtors set forth herein, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to Houlihan Lokey.

Neither Houlihan Lokey nor any other Indemnified Party shall have any liability, regardless of the legal theory advanced, to the Committee, the Debtors or any other person or entity (including the Debtors' equity holders and creditors) related to or arising out of Houlihan Lokey's engagement, except for any liability for losses, claims, damages, liabilities or expenses incurred by the Committee and/or the Debtors which are finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party. The indemnity, reimbursement, contribution and other obligations and agreements of the Committee and the Debtors set forth herein shall apply to any modifications of this Agreement, shall be in addition to any liability which these parties may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of these parties and each Indemnified Party. The foregoing indemnification

provisions shall survive the consummation of any Transaction and/or any termination of the relationship established by this Agreement.

The obligations of Houlihan Lokey are solely corporate obligations, and no officer, director, employee, agent, shareholder or controlling person of Houlihan Lokey shall be subjected to any personal liability whatsoever to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement or any person relying on the services provided hereunder. The Debtors' obligations with respect to any and all payments owing to Houlihan Lokey and the indemnification, reimbursement, contribution and other similar obligations of the Debtors under this Agreement shall survive any termination of this Agreement.

Dated and effective as of the 29th day of July 2002.

**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL**

/s/ Irwin N. Gold
By: Irwin N. Gold
Senior Managing Director

AGREED AND ACCEPTED AS OF

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF WORLDCOM, INC.**

**Blue River LLC**

/s/ Van Greefield
By: Van Greenfield
Title:

**Cerberus Partners LP**

/s/ Scott Cohen
By: Scott Cohen
Title:

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| WORLDCOM, INC., et al., | : | Case No. 02-13533 (AJG) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------x

### AFFIDAVIT OF ALAN D. FRAGEN IN SUPPORT OF
### APPLICATION OF THE OFFICIAL COMMITTEE OF
### UNSECURED CREDITORS FOR AN ORDER AUTHORIZING
### THE EMPLOYMENT OF HOULIHAN LOKEY HOWARD & ZUKIN
### CAPITAL, AS FINANCIAL ADVISOR , NUNC PRO TUNC TO JULY 29, 2002

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) SS |
| COUNTY OF LOS ANGELES | ) |

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), Alan D. Fragen, being duly sworn, deposes and says:

1.    I am a Managing Director of Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey"), and am duly authorized to execute this Affidavit on behalf of Houlihan Lokey. I make this Affidavit in support of the Application of the Official Committee of Unsecured Creditors for an Order Authorizing the Employment of Houlihan Lokey Howard & Zukin Capital, as Financial Advisor, nunc pro tunc to July 29, 2002 (the "Application"). I am familiar with the matters set forth herein and, if called as a witness, I could and would testify thereto. Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to them in the Application.

2.      Houlihan Lokey is a nationally recognized investment banking/financial advisory firm with 9 offices worldwide, and more than 275 professionals. Houlihan Lokey provides investment banking and financial advisory services in a variety of areas, including financial restructuring, where Houlihan Lokey is one of the leading investment bankers and financial advisors to debtors, bondholder groups, secured and unsecured creditors, acquirors, and other parties-in-interest involved with financially distressed companies, both in and outside of bankruptcy. Houlihan Lokey's Financial Restructuring Group has over 75 professionals dedicated to such engagements, and will be providing the agreed-upon financial advisory services to the Debtors. Houlihan Lokey has served as a financial advisor in some of the largest and most complex restructuring matters in the United States, including serving as the financial advisor to the debtors in the chapter 11 proceedings of *XO Communications, Inc., NII Holdings, Inc. (Nextel International), Covad Communications, Inc.* and *AmeriServe Food Distribution, Inc.*, and as the financial advisor to the official creditors committees in *Enron Corporation, Williams Communications Group, Inc., Laidlaw, Inc.* and *The Loewen Group, Inc.* In addition, Houlihan Lokey has provided financial advisory and investment banking services to over 100 telecommunications and media companies and their creditors throughout the world, including with respect to *McLeod USA, Impsat Fiber Networks, Inc., Flag Telecom Holdings, Ltd., Asia Global Crossing, Global Telesystems, Inc., GST Telecommunications* and *CTI Movil.*

3.      Houlihan Lokey has agreed to provide financial advisory services to the Committee in the above-captioned chapter 11 cases, pursuant to the terms and conditions of the Engagement Letter dated July 29, 2002, between the Committee and Houlihan Lokey (the "Engagement Letter"). A copy of the Engagement Letter is attached to the Application as

<u>Exhibit A</u>.  No agreement exists to share any compensation received by Houlihan Lokey for its services with any person or firm.

        4.      The terms and conditions of the Engagement Letter were heavily negotiated between the Committee and Houlihan Lokey, and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  As is customary in similar engagements, both in and outside of bankruptcy, the Engagement Letter provides for Houlihan Lokey to receive a Monthly Fee and a Transaction Fee.  Taking into account the highly complex nature of this engagement, the terms contained in the Engagement Letter are similar to the terms agreed to by Houlihan Lokey and other financial advisory firms in similar restructuring engagements, both in and outside of bankruptcy.

        5.      Houlihan Lokey is a "disinterested person" as that term is defined in section 101(14) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in that Houlihan Lokey:

    a.    is not a creditor, equity security holder or insider of the Debtors;

    b.    is not and was not an investment banker for any outstanding security of the Debtors;

    c.    has not been, within three (3) years before the date of the filing of the Debtors' chapter 11 petition, (i) an investment banker for a security of the Debtors, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and

    d.    is not and, was not, within two (2) years before the date of the filing of the Debtors' chapter 11 petition, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.

6. Moreover, to the best of my knowledge, information and belief formed after reasonable inquiry, Houlihan Lokey and its affiliates, professionals and employees have no materially adverse interest to the Debtors' estates or the creditors in these cases.

7. To determine its relationship with the parties-in-interest in these cases, Houlihan Lokey researched its client databases as to the following individuals and entities (collectively, the "Interested Parties"), that were identified to Houlihan Lokey by the Debtors and counsel to the Committee:

    a.    the Debtors and their non-Debtor affiliates;

    b.    the former corporate names of the Debtors and their non-Debtor affiliates;

    c.    current officers and directors of the Debtors and their non-Debtor affiliates;

    d.    business affiliations of the current directors and officers of the Debtors and their non-Debtor affiliates;

    e.    senior secured lenders/holders of secured debt;

    f.    indenture or collateral trustees or former indenture trustees;

    g.    material bondholders;

    h.    the largest unsecured creditors of each of the Debtors;

    i.    the attorneys and other professionals of the Debtors;

    j.    the prepetition lenders and landlords of the Debtors;

    k.    5% shareholders of the Debtors; and

    l.    other potentially adverse parties.

This research confirmed that Houlihan Lokey has no materially adverse interest to the Debtors' estates or the creditors in these cases. Houlihan Lokey's research of its relationships with the

Interested Parties indicated that during the past three years Houlihan Lokey has provided or is providing services, or has a financial relationship to certain entities in matters unrelated to these cases, and Houlihan Lokey has so indicated these on the attached Schedule 1. Of those parties listed on Schedule 1, no party accounted for more than 1% of Houlihan Lokey's revenues for 2001.

8. In addition, and by way of supplemental disclosure:

a. From time to time, Houlihan Lokey has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters unrelated to these chapter 11 cases. As described above, however, Houlihan Lokey has undertaken a detailed search to determine, and to disclose, whether it has been employed by any significant creditors (including banks), equity security holders, insiders or other parties-in-interest in such unrelated matters;

b. Houlihan Lokey provides services in connection with numerous cases, proceedings and transactions unrelated to these chapter 11 cases, including representing debtors and creditors' committees in chapter 11 proceedings and in out-of-court restructurings. As further described in paragraph 2 of this Affidavit, Houlihan Lokey is involved in a number of restructuring engagements in the telecommunication industry. All of these matters involve numerous attorneys, professionals and creditors, some of whom are, or may be, attorneys, professionals and creditors of the Debtors in these chapter 11 cases;

c. Houlihan Lokey personnel may have business associations with certain creditors of the Debtors unrelated to these chapter 11 cases. In addition, in the ordinary course of its business, Houlihan Lokey will work with and engage counsel or other professionals in unrelated matters who now represent, or in the future may represent, creditors or other interested parties in these chapter 11 cases;

d. Houlihan Lokey has thousands of clients, past and present, who are located throughout the United States, Asia, Europe and South America, in a variety of industries. While Houlihan Lokey has not advised any of these parties in connection with these chapter 11 cases, it is possible that certain of these parties, their creditors and the related professionals may have some relationship to the Debtors or their creditors in these cases;

e. Houlihan Lokey and its affiliates have over 470 employees, some of whom may have personal investments in the Debtors. Houlihan Lokey has placed the Debtors on their "restricted list", which precludes any employee from trading in the securities of the Debtors; and

f. Houlihan Lokey is affiliated with two investment funds, Sunrise Capital Partners, LP and Century Park Capital Partners, LP. While neither of these funds have any investments in the Debtors, it is possible that they may have made, or currently hold investments in certain of the creditors in these chapter 11 cases. Houlihan Lokey will continue its review of any potential investment in such creditors.

9. To the extent I discover any facts bearing on the matters described herein during the period of Houlihan Lokey's retention, I will supplement the information contained in this Affidavit.

10. Prior to the commencement of these chapter 11 cases, Houlihan Lokey had been retained as the financial advisor to an informal committee of bondholders. Before an engagement letter could be executed, the Debtors commenced their chapter 11 cases. Houlihan Lokey is not a prepetition creditor of the Debtors.

11.     Houlihan Lokey will apply to the Court for payment of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Engagement Letter, and pursuant to any additional procedures that may be established by the Court in these cases.

Dated:  September 26, 2002

_____/s/ Alan D. Fragen_____
Alan D. Fragen

Sworn to and subscribed to before me on this 26th day of September 2002.


____/s/ Joanna Kohn_____
**Joanna Kohn No. 1208969**
**State of California, Los Angeles County**
**Commission Expires January 23, 2003**

# SCHEDULE 1

## Worldcom, Inc., <u>et al.</u>

### Parties To Whom Houlihan Lokey Has Provided Services

Arthur Anderson (Litigation)

AT&T (Non-Transaction Based Opinion/Purchase Price Allocation/Intangible Assets)

Bank of America Corporation (Non-Transaction Based Opinion)

Bell South (Southwestern Bell) (Debtor Advisory)

Cerberus Capital Management (Consulting/Collateral Valuation/Other Discounts)

Charles Schwab Corporation (Litigation)

Choice Communications, Inc. (Fairness Opinion)

Citizens Telephone Company (ESOP Fairness)

Credit Suisse First Boston (Consulting/Creditor Advisory)

Deutsche Bank Alex Brown (Collateral Valuation)

Electronics Research & Inc. (ESOP Fairness/ESOP Update)

First Union National Bank (ESOP Update)

Fleet Capital Corporation (Non-Transaction Based Opinion/Collateral Valuation)

Fleet Capital Corporation (Financing to certain officers, employees and affiliated entities
of Houlihan Lokey to fund their respective investments in certain affiliated merchant
banking funds)

Florida Power & Light Company (ESOP Fairness)

Goldman Sachs & Company (Tax/Other Discounts/Creditor Advisory)

Internal Revenue Service (Litigation)

John Hancock Financial Services & Inc. (Non-Transaction Based Opinion)

KPMG & LLP (Purchase Price Allocation/Non-Transaction Based Opinion)

LaSalle Bank & NA (Fairness/ESOP Fairness/Consulting/ESOP Update)

Lazard Freres & Company LLC (Non-Transaction Based Opinion)

Lehman Brothers Holdings & Inc. (Creditor Advisory/Portfolio Acquisition)

MCI Telecommunications Corp. (Consulting)

MCI Worldcomm Communications, Inc. (Litigation)

MicroStrategy Incorporated (Non-Transaction Based Opinion)

Morgan Stanley Capital Partners III (Fairness)

Motorola & Inc. (Goodwill Impairment)

Northern Trust Corporation (Other Discounts/Non-Transaction Based Opinion/Tax/ESOP
Update)

Northern Trust Bank (Buyer Representation)

Piper Rudnick & LLP (Consulting)

PPM America & Inc. (Collateral Valuation/Non-Transaction Based Opinion/Other
Discounts)

Prudential Real Estate Investors (Non-Transaction Based Opinion)

Q Investments & LLP (Creditor Advisory)

Qwest Communications International, Inc. (Fairness Opinion)

SBC Communications, Inc.:

     Ameritech (Fairness Opinion/Consulting)

     Pacific Bell (Consulting/Non-Transaction Based Opinion)

Satellite Asset Management (Creditor Advisory)

Simpson Thacher & Bartlett (Creditor Advisory)

State Street Bank & Trust Company (Creditor Advisory/ESOP Update/ESOP
Fairness/Consulting)

Verizon Communications, Inc. (Creditor Advisory)

Wells Fargo (Creditor Advisory)

Wilmer, Cutler & Pickering (Consulting)

Exhibit C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WORLDCOM, INC., et al., | : | Case No. 02-13533 (AJG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

--------------------------------------------------------------x

## FINAL ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL AS FINANCIAL ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, NUNC PRO TUNC TO JULY 29, 2002

Upon consideration of the application (the "Application")[1] of the Official Committee of

Unsecured Creditors (the "Committee") of the debtors and debtors in possession (the "Debtors")

in the above-captioned chapter 11 cases for entry of an order, under sections 328(a) and 1103(a)

of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of

the Federal Bankruptcy Rules (the "Bankruptcy Rules"), authorizing the employment and

retention of Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey") as its financial

advisor pursuant to the terms of the engagement letter dated as of July 29, 2002 (the

"Engagement Letter"); and the Court having considered the Application and the Affidavit of

Alan D. Fragen dated September 26, 2002 in support of the Application; and Houlihan Lokey

(i) not holding an interest adverse to the interest of the estates with respect to the matters on

which Houlihan Lokey will be employed and (ii) being "disinterested persons" as that term is

defined under section 101(14) of the Bankruptcy Code; and upon the Interim Order Authorizing

Employment and Retention of Houlihan Lokey Howard & Zukin Capital as Financial Advisor to

---

[1]  Capitalized terms not defined in this Order shall have the meanings ascribed to them in the Application .

Official Committee of Unsecured Creditors, Nunc Pro Tunc to July 29, 2002 entered by this Court, it is hereby

ORDERED that subject to the terms and conditions of this Order, the Application is granted; and it is further

ORDERED that the Office of the United States Trustee retains the right to object to any interim or final fee application filed by Houlihan Lokey (including any request for the reimbursement of expenses) on any grounds provided for under the Bankruptcy Code (including, without limitation, sections 327, 328, 330 and 331 thereof), the Bankruptcy Rules, or any of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") or Orders of this Court; and it is further

ORDERED that the requirements of Local Rule 9013-1(b) are waived with respect to the Application; and it is further

ORDERED that Houlihan Lokey is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code and does not hold an interest adverse to the Debtors or their estates; and it is further

ORDERED that the Committee is authorized to employ, retain, compensate, and reimburse Houlihan Lokey as its financial advisor pursuant to the Engagement Letter (a copy of which is attached hereto), nunc pro tunc to July 29, 2002, on the terms and conditions set forth in the Engagement Letter and the Application; and it is further

ORDERED that (i) none of the fees hereunder shall constitute a "bonus" under applicable law and (ii) Houlihan Lokey shall be entitled to be paid out of any Transaction proceeds as a cost, and upon the closing, of any Transaction in accordance with the terms of this Engagement Letter, without further application to the Court; and it is further

ORDERED that the Debtors shall indemnify and hold harmless Houlihan Lokey and its affiliates, and their past, present and future directors, officers, shareholders, employees, agents and controlling persons within the meaning of either section 15 of the Securities Act of 1933, as amended, or section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties"), pursuant to the Engagement Letter and subject to the following conditions:

(a)     all requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the Engagement Letter shall be made by submission of a Monthly Statement (as defined in the August 13, 2002, Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals) and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Orders of this Court, and is reasonable based upon the circumstances of the litigation or settlement in respect of which the indemnity is sought, provided, however, that in no event shall an Indemnified Party be indemnified or receive reimbursement for any loss, claim, damage or liability which is finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party, and

(b)     in the event an Indemnified Party seeks reimbursement for attorneys' fees from the Debtors, the invoices and supporting time records from such attorneys shall be annexed to Houlihan Lokey's own Monthly Statement, and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code

without regard to whether such attorney has been retained under section 327 or 1103 of the Bankruptcy Code; and it is further;

ORDERED that to the extent this Order is inconsistent with the Engagement Letter, the terms of this Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to construe and enforce the terms of this Order.

Dated:     New York, New York
           _____, 2002


_____
**ARTHUR J. GONZALEZ**
**UNITED STATES BANKRUPTCY JUDGE**


**No Objection to Entry of this Order**


_____
**United States Trustee for the**
**Southern District of New York**

Exhibit D

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
:
In re:                    :       Chapter 11
:
WORLDCOM, INC., et al.,      :       Case No. 02-13533 (AJG)
:
           Debtors.    :       (Jointly Administered)
--------------------------------------------------------------x

## INTERIM ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL AS FINANCIAL ADVISOR TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, NUNC PRO TUNC TO JULY 29, 2002

Upon consideration of the application (the "Application")[1] of the Official Committee of Unsecured Creditors (the "Committee") of the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases for entry of an order, under sections 328(a) and 1103(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Bankruptcy Rules (the "Bankruptcy Rules"), authorizing the employment and retention of Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey") as its financial advisor pursuant to the terms of the engagement letter dated as of July 29, 2002 (the "Engagement Letter"); and the Court having considered the Application and the Affidavit of Alan D. Fragen dated September 26, 2002 in support of the Application; and Houlihan Lokey (i) not holding an interest adverse to the interest of the estates with respect to the matters on which Houlihan Lokey will be employed and (ii) being "disinterested persons" as that term is defined under section 101(14) of the Bankruptcy Code, it is hereby

---

[1] Capitalized terms not defined in this Order shall have the meanings ascribed to them in the Application .

ORDERED that Houlihan Lokey is a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code and does not hold an interest adverse to the Debtors or their estates; and it is hereby

ORDERED that subject to the terms and conditions of this Order, the Committee is authorized to employ, retain, and compensate Houlihan Lokey as its financial advisor pursuant to the Engagement Letter, nunc pro tunc to July 29, 2002; and it is hereby

ORDERED that, subject to a final hearing on the Application, the Monthly Fee is approved; and it is hereby

ORDERED that a final hearing on the Application to consider approval of the Monthly Fee on a final basis and the Transaction Fee as described in the attached Engagement Letter shall be held before this Court on November 26, 2002 at 10:00 a.m. or as soon thereafter as counsel may be heard; and it is hereby

ORDERED that in accordance with the Committee's Notice of Hearing, dated October 7, 2002 objections to the relief requested by the Application, on a final basis, must be served so as to be received no later than November 21, 2002 at 4:00 p.m. (ET); and it is hereby

ORDERED that the Office of the United States Trustee retains the right to object to any interim fee application filed by Houlihan Lokey on any grounds provided for under the Bankruptcy Code (including, without limitation, sections 327, 328, 330 and 331 thereof), the Bankruptcy Rules, or any of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") or Orders of this Court; and it is further

ORDERED that the requirements of Local Rule 9013-1(b) are waived with respect to the Application; and it is further

ORDERED that this Court shall retain jurisdiction to construe and enforce the terms of this Order.

Dated:      New York, New York
                _____, 2002


                                       _____

                                     **ARTHUR J. GONZALEZ**
                                     **UNITED STATES BANKRUPTCY JUDGE**


**No Objection to Entry of this Order**


_____

**United States Trustee for the
Southern District of New York**

346603 v1