Hearing Date: October 30, 2003

Daniel H. Golden (DG-5624)
Ira S. Dizengoff (ID-9980)
James R. Savin (JS-9920)
Kenneth A. Davis (KD-9070)
Colin M. Adams (CA-2913)

AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, NY 10022
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Counsel to the Official Committee of Unsecured
Creditors of WorldCom, Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
WORLDCOM, INC., et al.,                                     :    Case No. 02-13533 (AJG)
                                                            :
                                    Debtors.                :    (Jointly Administered)
------------------------------------------------------------x

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION**
**OF THE DEBTORS' MODIFIED SECOND AMENDED JOINT**
**PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The Official Committee of Unsecured Creditors (the "Official Creditors Committee") of

WorldCom, Inc., et al. (the "Debtors"), by and through its counsel, Akin Gump Strauss Hauer &

Feld LLP, submits this supplemental memorandum of law (the "Memorandum")[1] in support of

---

[1] By this Memorandum, the Official Creditors Committee joins and incorporates, as if fully set forth herein, the legal and factual assertions set forth in Debtors' Memorandum of Law in Support of Confirmation of Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, Dated October 27, 2003 Pursuant to Section 1129(b) of the Bankruptcy Code. Further, this Memorandum supplements the Official Committee of Unsecured Creditors' (a) Memorandum of Law in Support of Confirmation of Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, filed on September 3, 2003 and (b) Supplemental Memorandum of Law in Support of Confirmation of the Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, filed on October 13, 2003.

Confirmation of the Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Modified Second Amended Plan"). In support of its Memorandum, the Official Creditors Committee respectfully represents as follows:

### PRELIMINARY STATEMENT

1. The Committee urges that the Court confirm the Debtors' Modified Second Amended Plan inasmuch as it satisfies all of the confirmation requirements for a plan of reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), including the section 1129(b) "cramdown" requirements with respect to newly-created Class 6 – WorldCom General Unsecured Claims and Class 6A – MCI Pre-merger Claims. Specifically, the Modified Second Amended Plan satisfies section 1129(b) of the Bankruptcy Code because:

- no claim or equity interest junior in right of payment to Class 6 or Class 6A will receive or retain any property under the Plan.

- Class 6 claimants will receive the same recovery from the Debtors' estates under the Modified Second Amended Plan as the members of the Ad Hoc MCI Trade Claims Committee (Class 6B). Although Ad Hoc MCI Trade Claims will receive additional gifts from other creditor classes in order to avoid litigation that could threaten confirmation of the Modified Second Amended Plan, such gifts do not constitute discrimination by the Debtors because the consideration is coming from other creditors, not the Debtors' estates.

- Although Class 6A will be receiving more favorable treatment under the Plan compared to Class 6, such treatment is fair because it recognizes unique reliance arguments that such Class 6 creditors have in opposition to substantive consolidation and is consistent with the treatment provided to other creditors holding claims against the MCI Debtors that accrued prior to the 1998 MCI/WorldCom merger.

2. Since the amendments contained in the Modified Second Amended Plan are designed to clarify the equitable treatment being afforded to the foregoing classes of WorldCom General Unsecured Claims and benefit the Debtors' estates and creditors by allowing the Debtors to proceed to confirmation with minimal litigation risk, the Official Creditors Committee

7071724

2

believes that the amendments are appropriate and that the Second Amended Plan should be confirmed.

## BACKGROUND

3. On July 21, 2002 (the "Initial Petition Date"), WorldCom and certain of its subsidiaries and affiliates filed with this Court their voluntary petitions for relief under the Bankruptcy Code. In addition, on November 8, 2002 (the "Subsequent Petition Date" and, together with the Initial Petition Date, the "Petition Date"), additional subsidiaries and affiliates of WorldCom filed with this Court their voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their respective businesses and properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4. On July 29, 2002, the United States Trustee formed the Official Creditors Committee. The Official Creditors Committee currently is comprised of fourteen members consisting of representatives from substantially all of the Debtors' unsecured creditor constituencies, including holders of WorldCom funded debt obligations, holders of MCI Communications Corporation ("MCIC") funded debt obligations, holders of Intermedia funded debt obligations and trade creditors.[2]

**The Plan and Disclosure Statement**

5. Less than nine months after filing the largest chapter 11 case in history, on April 14, 2003, the Debtors filed their disclosure statement (the "Original Disclosure Statement"), which was amended pursuant to supplements dated, respectively, July 9, 2003 (the "First

---

[2] The Official Creditors Committee is comprised of: ABN Amro Bank N.V.; AOL Time Warner, Inc.; Blue River, LLC; Cerberus Capital Management, L.P.; Deutsche Bank AG; Electronic Data Systems Corporation; Elliott Management Corp.; ESL Investments; Law Debenture Corporate Services, Inc., as indenture trustee; Metropolitan Life Insurance Co.; Metropolitan West Asset Management LLC; New York Life Investment Management LLC; Sun Trust Bank; and Wilmington Trust Company, as indenture trustee.

7071724                                3

Supplement"), August 6, 2003 (the "Second Supplement") and September 12, 2003 (the "Third Supplement," and, with the Original Disclosure Statement, the First Supplement and the Second Supplement, the "Disclosure Statement"). The Original Disclosure Statement, First Supplement, Second Supplement, and Third Supplement were approved by this Court pursuant to orders entered on May 28, 2003, July 10, 2003, August 6, 2003 and September 12, 2003, respectively. On April 14, 2003, the Debtors also filed their Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Original Plan"). On July 9, 2003, the Debtors filed the Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Amended Plan") and, subsequently, on September 12, 2003, the Debtors filed the Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Second Amended Plan"), which was modified pursuant to the Modifications to Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, filed on September 19, 2003.

6. On October 21, 2003, the Debtors filed the Modified Second Amended Plan (collectively, with the Original Plan, the Amended Plan and the Second Amended Plan, the "Plan"). The Plan provides for the substantive consolidation of the Intermedia Debtors,[3] and all of the Debtors other than the Intermedia Debtors (collectively, the "WorldCom Debtors"), respectively. The Modified Second Amended Plan amended the Second Amended Plan to divide Class 6 - WorldCom General Unsecured Claims into three sub-classes, as follows: (i) Class 6 -

---

[3] "Intermedia Debtors" means, collectively, Access Network Services, Inc., Access Virginia, Inc., Business Internet, Inc., Express Communications, Inc., ICI Capital LLC, Intermedia, Intermedia Capital, Inc., Intermedia Communications of Virginia, Inc., Intermedia Investment, Inc., Intermedia Licensing Company, Intermedia Services LLC, National Telecommunications of Florida, Inc., Netwave Systems, Inc., NTC, Inc., WorldCom Intermedia Communications Corporation f/k/a Shared Technologies Fairchild Communications Corporation, WorldCom Intermedia Telecom, Inc. f/k/a Shared Technologies Fairchild Telecom, Inc., or WorldCom Intermedia, Inc. f/k/a Shared Technologies Fairchild, Inc.

7071724                                    4

WorldCom General Unsecured Claims; (ii) Class 6A - MCI Pre-merger Claims; and (iii) Class 6B - Ad Hoc MCI Trade Claims Committee Claims. Classes 6 and 6A are deemed to have rejected the Plan and Class 6B is deemed to have accepted the Plan.

7. The Plan provides for the following distributions to the newly created sub-classes: (i) Class 6 - WorldCom General Unsecured Claims, will receive a combination of Cash and New Common Stock equaling approximately 36% of their allowed claims; (ii) Class 6A - MCI Pre-merger Claims, will receive a combination of Cash and New Common Stock equaling approximately 60% of their allowed claims; and (iii) Class 6B - Ad Hoc MCI Trade Claims Committee Claims, will receive approximately 36% of their allowed claims from the Debtors' estates, the same distribution as Class 6 - WorldCom General Unsecured Claims.

8. Class 6A - MCI Pre-merger Claims, is comprised of certain creditors who can establish to the Debtors' satisfaction that (i) their claim arises solely from an individual transaction or series of transactions that was fully completed on or before September 13, 1998, the date the merger between MCI and WorldCom was consummated, and (ii) they relied on the separate credit of MCIC or a subsidiary of MCIC, as of or prior to September 13, 1998. Any dispute as to whether a claim qualifies as an MCI Pre-merger Claim will be determined by this Court.

9. Although Class 6B will receive the same amount under the Plan as Class 6, Class 6B's ultimate recovery will be higher than that received by Class 6 claimants. The increase in Class 6B's recovery is the result of a compromise and settlement between certain classes of creditors and the Ad Hoc MCI Trade Claims Committee as follows: (i) Class 9 - MCI Senior Debt Claims will contribute $21.2 million of their distribution under the Plan, paid in New

Notes, to Class 6B;[4] and (ii) Class 10 - MCIC Subordinated Debt Claims will contribute $19 million of their aggregate cash distributions under the Plan to Class 6B.[5] The foregoing represent voluntary contributions of consideration, as evidenced by Classes 9 and 10 having voted to accept the Plan by over 98% in amount and 94% in number, provided by two classes of creditors to others to settle certain objections to the Amended Plan. These are neither treatments under the Plan nor estate property (in the absence of these contributions, this consideration would not inure to Class 6B).

## ARGUMENT

10.  Since Classes 6 and 6A have been deemed to reject the Plan, the Plan must meet the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code with respect to Classes 6 and 6A. Section 1129(b) of the Bankruptcy Code provides that if all of the applicable confirmation requirements of section 1129(a) other than subsection (8) (requiring all impaired classes to accept the plan) are met, the court, on request of the plan proponent, must confirm the plan if it does not "discriminate unfairly" and if it is "fair and equitable" with respect to each class of claims or interests that is impaired under, and has not accepted, the plan. See 11 U.S.C. § 1129(b)(1); Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 650 (2d Cir. 1988) ("Under section 1129(b), the so-called 'cram down' provision, even if all impaired classes do not accept the plan, it may nonetheless be confirmed as long as 'the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or

---

[4] Under the Plan, MCIC Senior Debt Claims will receive New Notes equaling 80% of their allowed claim for principal amounts due under the MCIC Senior Notes Indentures. Following their contribution to the Ad Hoc MCI Trade Claims Committee, the MCIC Senior Debt claimants' recovery will be reduced to 79.2% of the principal amount of their claims.

[5] Under the Plan, MCIC Subordinated Debt claimants will receive a pro rata share of $353 million, distributed in the form of up to $165 million in New Notes and not less than $188 million in cash. Following their contribution to the Ad Hoc MCI Trade Claims Committee, the MCI Subordinated Debt claimants will receive a net estimated consideration of $334 million, an estimated recovery of 44.5%.

interests that is impaired under, and has not accepted, the plan.'") (citations omitted); Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 441-42 (1999) (similar).

### I.    The Plan Treats Impaired Classes Fairly and Equitably

11.    Section 1129(b)(2)(B) of the Bankruptcy Code provides that a plan is "fair and equitable" with respect to a class of unsecured claims as long as the plan provides, in substance, that "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. § 1129(b)(2)(B)(ii). Class 6 is comprised of WorldCom General Unsecured Claims. Class 6A is comprised of MCI Pre-merger Claims, which are also general unsecured claims. There is no claim or equity interest junior in right of payment to either Class 6 or Class 6A that will receive or retain any property from the WorldCom Debtors' estates under the Plan. Accordingly, the "fair and equitable" requirement is satisfied with respect to each holder of a claim in Classes 6 and 6A.

### II.    The Plan Does Not Discriminate Unfairly

12.    Unfair discrimination is a bankruptcy term of art and has generally been interpreted to mean that a plan of reorganization may provide creditors with similar rights materially different treatment under a proposed plan provided that such different treatment is fair. See 11 U.S.C. § 1129(b)(1); 7 L. KING COLLIER ON BANKRUPTCY, 1129.04[3] [a] at 1129-69 (15th ed. rev. 1996). Courts examine the facts and circumstances of a particular case only to determine whether the alleged discrimination is unfair. See, e.g., In re Aztec Co., 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) (noting that courts "have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair

7071724                                       7

discrimination"). Discrimination between classes is considered fair, for purposes of section 1129(b)(1), if it has a reasonable basis and is necessary for the reorganization. See, e.g., In re The Leslie Faye Companies, Inc., 207 B.R. 764 (Bankr. S.D.N.Y. 1997) (providing senior management with greater recoveries than similarly situated equity interest holders was not "unfair" because such recoveries were necessary to ensure senior managements' services to the reorganized debtors and thus, a successful reorganization). As the Debtors' disparate treatment of Class 6 and 6A under the Plan respects the equitable differences between such classes and avoids litigation risks that could otherwise threaten confirmation of the Plan, the Plan satisfies the requirements of section 1129(b)(1) of the Bankruptcy Code.

### A. The Debtors' Plan Treats Class 6 Claimants and Class 6B Claimants Equally

13. Class 6 Claims and Class 6B Claims are provided the same recovery from the Debtors' estates pursuant to the Plan.

14. Class 6B - Ad Hoc MCI Trade Claims Committee claims ultimately will recover more than Class 6 – WorldCom General Unsecured Claims only because (i) Class 9 - MCIC Senior Debt Claims voted as a class to gift part of their recovery to Class 6B - Ad Hoc MCI Trade Claims Committee Claims in consideration for the Ad Hoc MCI Trade Claims Committee's agreement to withdraw its objection to the Plan, as well as certain other litigation which could impede confirmation of the Plan and (ii) Class 10 - MCIC Subordinated Debt Claims also voted as a class, for identical reasons, to gift a portion of their recovery under the Plan to Class 6B. As addressed in greater detail in the Official Creditors Committee's Supplemental Memorandum of Law in Support of Confirmation of the Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated October 13, 2003, such agreements among classes of creditors to contribute portions of recovery to other

creditors under a plan of reorganization are consistent with applicable law and are proper. See In re SPM Manufacturing Corp., 984 F.2d 1305 (1st Cir. 1993) (holding that senior lender could share a portion of its recovery with unsecured creditors when priority creditors did not receive a distribution under the debtor's plan); In re MCorp Financial, Inc., 160 B.R. 941 (S.D. Tex. 1993); In re Nuclear Imaging Systems, Inc., 270 B.R. 365, 376 (Bankr. E.D. Pa. 2001) (same); In re Genesis Health Ventures, Inc., 266 B.R. 591, 601.

15.   The consideration (described above) to be gifted by MCIC Senior Debt Claimants and MCIC Subordinated Debt Claimants to the Ad Hoc MCI Trade Claims Committee Claimants does not create *any* discrimination, for purposes of section 1129(b)(1) of the Bankruptcy Code, because such consideration is not being provided from the Debtors' estates. See, e.g., SPM, 984 F.2d at 1313 (1st Cir. 1993) ("[C]reditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including to share them with other creditors," even if such sharing conflicts with the Bankruptcy Code's distribution and priority scheme.); In re Genesis Health Ventures, Inc., 266 B.R. 591, 612 (Bankr. D. Del. 2001) (no unfair discrimination was created, for purposes of section 1129 of the Bankruptcy Code, where secured creditors voluntarily agreed to provide a portion of their recovery to general unsecured claimants, while not providing a similar recovery to punitive damage claimants, notwithstanding the fact that both classes had the same priority); In re MCorp Financial, Inc., 160 B.R. 941, 960 (S.D. Tex. 1993) (finding that a senior unsecured creditor could share its plan proceeds with a junior creditor, even if other junior creditors were left out, as long as the excluded junior creditors received as much as they would without such sharing).  Thus, there is no discrimination as between Class 6 and Class 6B under the Plan.

### B. Plan Distributions to Class 6A – MCI Pre-merger Claims are Fair Because They are Based on Unique Reliance Arguments

16. The Debtors' decision to afford Class 6A - MCI Pre-merger Claims different recoveries than Class 6 - WorldCom General Unsecured Claims takes into account the unique reliance arguments available to holders of MCI Pre-merger Claims, consistent with the treatment provided to other creditors holding pre-merger claims against the MCI Debtors, and resolves litigation which could impede confirmation.

17. Similar to Class 9 – MCIC Senior Debt Claims, Class 6A – MCI-Pre-merger Claims represent debt obligations of the MCI Debtors incurred prior to its 1998 merger with WorldCom. As further discussed in the Official Creditors Committee's Memorandum of Law in Support of Confirmation of Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated September 3, 2003, the Class 9 - MCIC Senior Debt Claims are to be afforded treatment superior to that of other unsecured claims in respect of their argument that, among other things, (i) they relied upon the separate credit of the MCIC Debtors <u>before</u> they were merged into WorldCom, (ii) the MCIC estates had greater value than the estates of the remaining WorldCom Debtors, and (iii) accordingly, it would be inequitable to substantively consolidate the estates of the WorldCom Debtors and the MCIC Debtors, thus forcing the holders of MCIC Senior Debt Claims to accept the same recoveries as holders of WorldCom General Unsecured Claims. <u>See, e.g.</u>, <u>Flora Mir Candy Corp. v. R.S. Dickson & Co. (In re Flora Mir Candy Corp.)</u>, 432 F.2d 1060 (2d Cir. 1970) (denying substantive consolidation, as inequitable, where objecting creditors had purchased securities of one debtor-entity prior to that debtor's merger with other debtors). Although the Debtors and the Official Creditors Committee believe that the entanglement of the Debtors' estates rendered such treatment appropriate under applicable precedent, the Debtors, with the Official Creditors Committee's support, provided for

higher recoveries to MCIC Senior Debt Claims in order to foreclose protracted litigation over the issue and ensure a timely confirmation of the Debtors' Plan.

18.  Holders of MCI Pre-merger Claims, like holders of MCIC Senior Debt Claims, have argued that (i) they relied on the credit of the MCI Debtors in extending credit to the MCIC Debtors prior to their merger with WorldCom, (ii) the MCIC Debtors have greater assets to satisfy such MCI Pre-merger Claims than would the substantively consolidated WorldCom Debtors' estates, and (iii) accordingly, it is unfair to treat them like other Class 6 – WorldCom General Unsecured Claims, claims based on credit extended to either the WorldCom Debtors before the 1998 merger or the combined company after the merger.  See Flora Mir, 432 F.2d 1060; Chemical Bank New York Trust Co. v. Kheel (In re Seatrade Corp.), 369 F.2d 845 (2d Cir. 1966) ("Equality among creditors who have lawfully bargained for different treatment is not equity but its opposite.").  In order to foreclose the litigation risk presented by such objections to the Plan by holders of MCI Pre-merger Claims, and to treat such claims in accordance with other pre-1998 claims against the MCI Debtors, the Plan provides for enhanced recoveries in satisfaction of such claims.  See generally In re The Leslie Faye Companies, Inc. et al., 207 B.R. 764 (disparate recoveries between equity interest holders were not unfair where the increased recoveries for certain equity interest holders were necessary to ensure a successful reorganization).  Such discrimination is not unfair under section 1129(b)(1) of the Bankruptcy Code because it accounts for the equitable distinctions between Class 6 and Class 6A claimants and is necessary to ensure the Debtors' prompt emergence from chapter 11.

## CONCLUSION

For all of the foregoing reasons, the Official Creditors Committee respectfully requests that the Court (a) confirm the Modified Second Amended Plan and (b) grant such other relief as the Court deems just, equitable and proper.

Dated: New York, New York
       October 27, 2003

                        **AKIN GUMP STRAUSS HAUER & FELD LLP**

                        /s/ Daniel H. Golden
                        Daniel H. Golden (DG-5624)
                        Ira S. Dizengoff (ID-9980)
                        James R. Savin (JS-9920)
                        Kenneth A. Davis (KD-9070)
                        Colin M. Adams (CA-2913)

                        590 Madison Avenue
                        New York, New York 10022
                        (212) 872-1000

                        Counsel to the Official Committee of Unsecured Creditors of WorldCom, Inc., et al.