| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | FOR PUBLICATION |

------------------------------------------------------x
: 
In re : Chapter 11
:
WORLDCOM, INC., *et al.*, : Case No. 02-13533 (AJG)
:
      Reorganized Debtors. : (Jointly Administered)
:
------------------------------------------------------x

**MEMORANDUM OPINION DENYING MDIP LITIGATION TRUST'S MOTION FOR RETROACTIVE RELIEF FROM AUTOMATIC STAY TO ALLOW IT TO PURSUE PREFERENCE ACTIONS FILED IN ITS BANKRUPTCY CASE AGAINST CERTAIN WORLDCOM, INC. DEBTORS AND FINDING ITS REQUEST FOR RELATED RELIEF SEEKING MODIFICATION OF PLAN INJUNCTION AND TO FILE LATE PROOFS OF CLAIM IS MOOT**

A P P E A R A N C E S:

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Reorganized Debtors
767 Fifth Avenue
New York, NY 10153
    Marcia L. Goldstein, Esq.
    Lori R. Fife, Esq.
        Of Counsel

700 Louisiana, Suite 1600
Houston, TX 77002
    Alfredo R. Perez, Esq.
        Of Counsel

AKIN GUMP STRAUSS HAUER & FELD LLP
Attorneys for the Official Committee
    of Unsecured Creditors
590 Madison Avenue
New York, NY 10022
    Daniel H. Golden, Esq.
    Ira S. Dizengoff, Esq.
        Of Counsel

SAUL EWING, LLP
Attorneys for MDIP Litigation Trust
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
    Mark Minuti, Esq.
    Donald J. Detweiler, Esq.
        Of Counsel


ARTHUR J. GONZALEZ
United States Bankruptcy Judge


      The issues before the Court are whether cause exists (1) to retroactively lift the section 362 automatic stay (the "362 Stay"), (2) to modify the injunction contained in the Debtors' confirmed plan (the "Debtors' Plan Injunction") to allow the MDIP Litigation Trust (the "MDIP Trust") to prosecute filed and pending preference actions against the MCI/Skytel debtors, and (3) to allow the MDIP Trust to file late proofs of claim. Upon consideration of the pleadings and oral arguments of the parties, the Court finds the MDIP Trust has failed to establish cause to retroactively lift the 362 Stay. As a result, the MDIP Trust's request to modify the Debtors' Plan Injunction and to allow it to file late proofs of claim against MCI/Skytel debtors is moot.

      The Court has subject matter jurisdiction under sections 1334(b) and 157(a) of title 28 of the United States Code and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding pursuant to section 157(b)(2)(A), (B), (G) and (O) of title 28 of the United States Code. This Court has retained jurisdiction pursuant to ¶¶ 32(e), (h), (i) and (m) of the order dated October 31, 2003 (the "Confirmation Order") and §§ 31.02(e), (h), (i) and (m) of the Modified Second Amended Joint Plan of Reorganization (the "Debtors' Plan"). *See In re Johns-Manville Corp.*, 97 B.R. 174, 180 (Bankr.

2

S.D.N.Y. 1989). Venue is properly before this Court, pursuant to section 1409(a) of the title 28 of the United States Code.

## BACKGROUND

On July 21, 2002 (the "Commencement Date") and November 8, 2002, WorldCom, Inc. et al. ("WorldCom" or the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("the Bankruptcy Code") in this Court. The Debtors' chapter 11 cases were procedurally consolidated for administrative purposes. Following the Commencement Date, the Debtors continued to operate their businesses and managed their properties pursuant to sections 1107 and 1108 of the Bankruptcy Code.

By an order dated October 29, 2002 (the "Bar Date Order"), this Court set January 23, 2003 as the bar date (the "Bar Date") to file proof of claims against the Debtors. On November 22, 2002, the Debtors mailed notice of the Bar Date (the "Bar Date Notice") to creditors, including to Mosler, Inc., the predecessor entity to the MDIP Trust. By an order dated October 31, 2003, this Court confirmed the Debtors' Plan. On April 20, 2004, the Debtors' Plan became effective.

On August 6, 2001 (the "MDIP Petition Date"), MDIP, Inc. f/k/a Mosler, Inc. ("MDIP"), and its affiliated debtor companies MDIP of Alabama, Inc. f/k/a Mosler of Alabama, Inc., and MDIP Indiana, LLC f/k/a Mosler Indiana, Inc. (all hereinafter collectively referred to as the "MDIP Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the District of Delaware, Case No. 01-10055 (GMS). On October 25, 2001, substantially all of the MDIP Debtor's assets were sold to Diebold, Incorporated (the "MDIP Buyer"or "Diebold"), pursuant to sections 363 and 365 of the Bankruptcy Code. By an order dated June 26, 2003, the Delaware Bankruptcy Court confirmed the MDIP Debtors' Second Amended Joint Plan of Liquidation (the "MDIP Plan"), which plan created the MDIP Trust, the Movant here, and assigned thereto the MDIP Debtors' causes of

3

action arising under the Bankruptcy Code (the "Assigned Causes of Action" or "Preferences"). Pursuant to section 546 of the Bankruptcy Code, the last date for the MDIP Trust to commence the Preferences was August 5, 2003. (Hereinafter, Mosler, Inc. MDIP, MDIP Debtors and MDIP Trust, collectively, are referred to as the "MDIP Chain Entities" or, individually, as a "MDIP Chain Entity.")

John Hedge served as the Chief Wind-Down Officer of the MDIP Debtors from August 7, 2001 to July 31, 2003. Alfred R. Rabasca served as Chief Operating Officer during the MDIP Debtors' bankruptcy proceedings and then as Plan Agent for the MDIP Trust.

On October 25, 2001, substantially all of the MDIP Debtors' assets, including the headquarters office at 8509 Berk Boulevard, Hamilton, Ohio, were sold to Diebold, Incorporated under an Asset Purchase Agreement (the "Agreement") pursuant to an order of the Delaware Bankruptcy Court. The Agreement contained a provision whereby Diebold agreed to cooperate with and grant access to the MDIP Debtors with respect to certain information relating to the pre-closing period that came into the possession of Diebold at the Berk Boulevard building, the former MDIP headquarters. Although the part of the Agreement referenced in the Motion is captioned "Cooperation on Tax Matters," the Movant argues that Diebold's "cooperation" included the forwarding of mail addressed to the MDIP Debtors from the Berk Boulevard address to Movant's relocated headquarters, referenced below.[1]

After the sale, the MDIP Debtors relocated their headquarters to 11427 Reed Hartman Highway, Cincinnati, Ohio. In December, 2001, the MDIP Debtors closed the Reed Hartman

---

[1] In article 6.3.3 of the Agreement, the Purchaser and Seller agree to furnish each other information relating to tax matters. However, the Purchaser agrees only to provide access to the Seller for information (not related to tax matters) the Sellers deem necessary to, among other things, bankruptcy matters upon the request of the Seller. Article 6.7 provides, subject to article 6.3.3, only that the Purchaser will provide access to, not that the Purchaser agrees to furnish to, the Seller or an Official Committee of Unsecured Creditors information related to bankruptcy matters. (Rabasca Supplemental Aff. Ex. A.) In any event, even if the Bar Date Notice had been forwarded to them, the MDIP Trust does not argue that the MDIP Debtors would have altered the timing of the performance of its preference investigation.

4

Highway office, yet they continued to pick up mail at the closed office. Mr. Rabasca discontinued monitoring the forwarded mail from Diebold to the MDIP Debtors in December, 2001. Mr. Hedge recalls that the MDIP Debtors stopped receiving mail from Diebold early in the second quarter of 2002.

The MDIP Debtors became dissatisfied with the level of Diebold's cooperation in providing the agreed access to the Berk Boulevard building, where the MDIP Debtors believed that the accounting, business, financial, and tax records and information relating to the MDIP Debtors' tax returns were present. On May 8, 2002, the MDIP Debtors brought a motion in the Delaware Bankruptcy Court seeking to compel Diebold to turn over records. On May 29, 2002, the Delaware Bankruptcy Court entered a stipulation and order resolving the MDIP Debtors' Motion to Compel whereby Diebold agreed to provide the MDIP Debtors' representatives with access to the Berk Boulevard building.

On November 22, 2002, the Bar Date Notice in the Debtors' case was mailed by Bankruptcy Services LLC to Mosler, 8509 Berk Boulevard, Hamilton, Ohio 45015; to Mosler, Inc., 101 Business Park Dr, Ste A, Ridgeland, Mississippi 39257; to Mosler, Inc., PO Box 640671, Cincinnati, Ohio, 45264-0671; and to Mosler, Inc., PO Box 691548, Cincinnati, Ohio 45269-1548. The Bar Date Notice was published in several major daily newspapers. Mosler, Incorporated, c/o Diebold, Incorporated, 5995 Mayfair Road, North Canton, Ohio 44720, filed proof of claim no. 5051 on December 11, 2002 in the Debtors' case, for goods and services in the amount of $903,674.11 provided to the Debtors from July 3, 2000 to August 2, 2001, a period of time prior to the MDIP Petition Date. On June 18, 2003, the Debtors' Solicitation Packages were served on creditors, including Mosler, Inc., PO Box 691548, Cincinnati, OH 45269-1548. Neither the names of Diebold nor MDIP were contained on the service list and therefore solicitation packages were not sent to those entities under those names.

As stated above, on June 26, 2003, the Delaware Bankruptcy Court confirmed the MDIP Plan and authorized MDIP Trust to pursue the Assigned Causes of Action.[2]

On July 29, 2003, the Movant sent a letter to the Debtors asserting that certain transfers from the MDIP Debtors to the Debtors were "preference" payments and demanded repayment. Debtors assert that Debtors' counsel immediately responded to the letter by advising MDIP Debtors' counsel of the automatic stay order of this Court.[3] As noted above, on July 31, 2003, Mr. Hedge ceased to serve as Chief Wind-Down Officer for the MDIP Debtors. On August 5, 2003, the Movant filed two complaints in the Delaware Bankruptcy Court against the Debtors, seeking avoidance and recovery of preferential transfers totaling $951,847.09 (the "Preference Actions"). On November 13, 2003, the Movant filed the instant motion. A hearing was held on December 16, 2003. Movants thereafter filed supplemental papers on February 4, 2004. Debtors filed a response thereto on February 17, 2004.

## DISCUSSION

The Movant contends that its actions were dictated by the short time frame between the Confirmation Order authorizing the MDIP Trust on June 26, 2003, and the August 5, 2003 deadline for the filing of avoidance actions in its case pursuant to section 546 of the Bankruptcy Code. Further, the Movant argues that the pressure from being allowed only a short period of time necessitated its violation of the stay in the Debtors's bankruptcy case, and that it reduced the effect of that violation by immediately and voluntarily suspending the prosecution of the filed Preference Actions. Furthermore,

---

[2] As noted above, Mr. Rabasca is the MDIP Plan Agent. (Rabasca Supplemental Aff. para. 1.) Pursuant to articles 1.54 and 6.2 of the MDIP Plan, the MDIP Plan Agent's duties excluded those granted to the Litigation Board. (Rabasca Supplemental Aff. Ex. B.). Mr. Hedge served only as the Chief Wind-Down Officer of the MDIP Debtors, not as member of the Litigation Board. (Hedge Aff. para. 1.)

[3] As to other actions of the Debtors in connection with the Movant, WorldCom filed a proof of claim in the MDIP Debtors' case in the amount of $237,428.41 in October 2001.

the Movant seeks to file late proofs of claim regarding the Preference Actions.

First, with respect to a grant of retroactive relief from the stay, the Movant argues that the facts of the situation establish "cause," consistent with the "*Sonnax* Factors" approved by the Second Circuit. *Sonnax Indus., Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280 (2d Cir. 1990). The Movant asserts that such a finding of sufficient cause under the *Sonnax* factors allows this Court to permit the prosecution of the Preference Actions by granting retroactive lifting of the Debtors' 362 stay effective as of August 5, 2003, the date on which the Movant filed the Preference Actions. The Movant also seeks to have the Preference Actions deemed timely filed in order to have its claims against the Debtors included in the Debtors' claims resolution process. This is assuming that it were permitted to file a late filed proof regarding such actions.

Second, the Movant argues that the application of the "*Sonnax* Factors" as applied in *In re Fucilo*, 2002 WL 1008935 (Bankr. S.D.N.Y. Jan. 24, 2002) (unreported), permits this Court to exercise its equitable powers to modify the Debtors' Plan Injunction.

Third, the Movant contends that its request to file late proofs of claim is supported by Bankruptcy Rule 9006(b)(1) and the test set forth in *Pioneer* for excusable neglect. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct 1489 (1993).

Regarding the Movant's first contention, Debtors point out that the time limit to commence a preference action in the Movant's case has expired. Further, they argue that the termination of the stay would provide no relief to the Movant because it would be too late for the Movant to commence an avoidance action in its case. Debtors assert that the *Sonnax* Factors for evaluating cause apply only to terminate the stay effective on the date of the order granting such relief. Therefore, Debtors contend that the balancing approach of the *Sonnax* Factors is not relevant in this case. Instead, the Debtors argue that *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir. 1997),

7

which requires a finding of unusual and compelling facts to support a grant of retroactive relief, sets forth the relevant analysis. Debtors contend that, under the *Soares* test, determinative findings are rare and would not be found in this case, because the Movant's need for relief is the result of Movant's mismanagement of circumstances within its own control.

Regarding the Movant's second contention, Debtors do not offer opposition to the Movant's request for a modification of the Debtors' Plan Injunction. However, the absence of opposition by the Debtors likely results from the fact that if the retroactive relief sought by Movant is not granted, the lifting of the Debtors' Plan Injunction would not provide any relief - the Preference Actions would be a nullity, and new actions, as discussed above, would be time-barred. If retroactive relief were granted, the focus would presumably then be on the request to file a late proof of claim.

Regarding the Movant's third contention, Debtors argue that the Movant cannot succeed in establishing excusable neglect under *Pioneer* because the Debtors provided Movant with the actual notice of the Debtors' bankruptcy filing owed to a known creditor. Debtors assert that they complied with the requirements of Rules 2002(a)(7) and 9006(e) by properly mailing notice of the Bar Date to Mosler, Inc., and therefore the MDIP Debtors and the related MDIP Trust should be deemed to have received the Bar Date Notice. Further, Debtors contend that the MDIP Trust admitted to the Debtors that a member of the MDIP Trust Litigation Board visited the Berk Boulevard office in early November, 2003, and discovered that the Debtors' Bar Date Notice had been received there. The Debtors also state the Bar Date Notice was published in several newspapers, and therefore the constructive notice owed to unknown creditors was accomplished.

Further, Debtors contend that the nearly two year period between the MDIP Debtors' bankruptcy filing and the formation of the MDIP Trust did not obviate the fact that the preferences or the claims belonged jointly to the MDIP Debtors and MDIP Trust, as the successor at the end of the

8

MDIP Chain. In other words, Debtors contend that merely being the last entity in the chain did not "de-link" MDIP Trust from the knowledge, duties and rights of its predecessors. Also, Debtors contend that, at the very least, the Debtors' response to the Movant's July 29, 2003 letter put the Movant on notice of Debtors' chapter 11 status prior to its filing of the Preference Actions. The Official Committee of Unsecured Creditors joins in the Debtors' opposition to the Motion.

## Analysis

Both parties, and their respective affiliates, were chapter 11 debtors whose pendency overlapped in time during the relevant periods at issue herein. As stated above, on August 5, 2003, the last day for Movant to file preference actions in its own cases and the date on which the Movant filed the Preference Actions at issue, the Debtors were chapter 11 debtors with the 362 Stay in effect as of July 21, 2002 - the day on which the Debtors' filed their petitions.

Regarding the Movant's knowledge of the Debtors' 362 Stay, the Court determines that the MDIP Trust Motion makes clear that the Movant was aware of the Debtors' 362 Stay.[4] Moreover, at no time does Movant content that it was unaware of the Debtors' 362 Stay, but rather, it alleges that it did not have time to seek relief from this Court.

In general, the Movant argues that its conduct of leaving the prosecution of its preference actions to the late stages of its bankruptcy case fits within customary practice. Presumably, the MDIP Debtors, as in many chapter 11 cases, determined that the needs of their case during the early stages warranted delaying the preference analysis. Yet, the fact that a decision to delay the process may be

---

[4] Movant states: "Given the looming deadline for filing avoidance actions, there was not time for the MDIP Trust to obtain relief from the automatic stay from this Court before filing its complaints." (MDIP Mot. para. 14.) Further, the Court finds the admission that the Movant had determined that it should take no action against the Debtors beyond the filing of the actions in Delaware. (MDIP Mot. paras. 14 & 16.) In addition, the Movant refers to "preserving its claims"and "proofs of claim" from which the inference can be drawn of the Movant's awareness that its preference defendant was a protected debtor. (MDIP Mot. paras. 15 & 17.)

9

reasonable and necessary does not relieve an estate of the consequences of such decision. *In re Enron Corp.* 298 B.R. 513, 526 (Bankr. S.D.N.Y. 2003) (in an analogous context, where the movant asserted that it was heavily focused on some aspects of negotiations to the neglect of others, there could be no finding of any genuine reason for delay) (hereinafter "*Enron/Midland*").  It is possible that a delay will make the prosecution and collection of preference claims more difficult.  While some of the circumstances that result from a delay may well be in the control of the debtors, others will not.  Moreover, to the extent that an estate representative could lessen the consequences of any delay in the prosecution of a preference claim, one would expect it to do so.  *See In re Stockwell*, 262 B.R. 275, 281 (Bankr. D. Vt. 2001) (debtor is under a duty to exercise diligence in protecting and pursuing its own rights) (citations omitted); *In re UNR Ind., Inc.* 30 B.R. 609 (Bankr. N.D. Ill. 1983) (chapter 11 debtors have a duty, on behalf of creditors, to protect and preserve assets) (citations omitted).  That did not happen here.

Instead, faced with the Debtors' 362 Stay, the MDIP Trust decided not even to attempt to seek relief and decided instead to violate the 362 Stay.[5] After choosing a course of action that put its interests (the pursuit of the claims of the estate) at risk, the Movant is here seeking to be relieved from the consequences of such action.[6] In sum, the Movant had sufficient time to seek emergency relief from

---

[5] As indicated above, no attempt at all was made by the Movant to contact the Court to seek emergency relief in light of the August 6, 2003 deadline.  The Court notes that, in addition to the information that would have been provided had the Movant simply called the Court's chambers to inquire about seeking emergency relief, on the Southern District of New York Bankruptcy Court's website under the heading *WorldCom, Inc.* one can find the First Amended Case Management Order ("Case Management Order"), dated December 23, 2002, in the WorldCom cases.  Within that order, a party seeking emergency relief is given directions as to how to obtain a hearing date for such relief.  Case Mgmt. Order, p. 8, para. 6.  The Case Management Order is referenced here to emphasize how little effort was required on the part of the Movant to obtain guidance at any time from the website for, among other things, requesting emergency relief.

[6] Movant submits the transcript of a hearing held on March 28, 2003 before Hon. Henry J. Boroff, U.S. Bankruptcy Judge for the District of Massachusetts in *In re Dehon*, Case No. 02-41045.  (MDIP Mot. Ex. E)  The movant there, also a liquidating trust (BCP Liquidating LLC) ("BCP"), sought relief from the stay but the distinction

this Court prior to filing the Preference Actions. However, it neither contacted the Court to explain the situation nor attempted to seek relief from the Court in any other way. Instead, it filed the Preference Actions in violation of the Debtors' 362 Stay.

As previously discussed, the Court finds that the Movant filed its Preference Actions with the knowledge of Debtors' status as a chapter 11 debtor and the existence of the Debtor's 362 Stay. There can be no doubt that the MDIP Trust was fully aware of the importance of the protection afforded by the automatic stay and the plan injunction to the bankruptcy process. In its own efforts to maximize recoveries and ensure an efficient and effective claims adjudication, the MDIP Trust benefitted from the very same protections, yet it chose to violate those protections in the Debtors cases herein. Given such intentional conduct in the context of the surrounding circumstances, the Movant does not merit relief.

      1.      **Motion for Retroactive Relief from the Section 362 Automatic Stay**

This Court applies the principle that, through the "automatic stay" found in section 362(a) of the Bankruptcy Code, Congress has provided essential protections to debtors and creditors by centralizing all disputes. *Shugrue v. Air Line Pilots Ass'n Int. (In re Ionosphere Clubs, Inc.* 922 F.2d 984, 989 (2d Cir. 1990). Congress has also designed the stay as the "[t]ool necessary to the . . . total disposition of all claims in a reorganization proceeding." *In re Johns-Manville Corp.*, 57 B.R. 680, 685 (Bankr. S.D.N.Y. 1986). In particular, section 362(a)(1) extends the principle in order that "[t]he filing of a bankruptcy petition operates as a stay applicable to all entities regarding the commencement or continuation of judicial proceedings against the debtor." *In re Enron Corp.* 306 B.R. 465, 475

---

is that BCP sought that relief prior to expiration of the time to file preference actions and therefore was not coming before the court after it intentionally violated a debtor's automatic stay .

(Bankr. S.D.N.Y. 2004) (Case No. 01-16034) (hereinafter "*Enron/MARTA*")[7] (citing, among others, for congressional intent, *Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.,* 157 F.3d 169 (2d Cir. 1998)).

Important in these circumstances, the Bankruptcy Code also provides this Court with the power to grant relief from the automatic stay under section 362(d) by either "terminating, annulling, modifying or conditioning" the stay order.[8] These remedies are independent and each apply to specific circumstances. *Soares*, 107 F.3d at 976 (the several powers granted by Congress in section 362(d) must be given independent meanings); *Eastern Refractories,* 157 F.3d at 172 (section 362(d) measures have different operation and effect). When an action has been commenced in violation of the stay, that action can only be made legitimate by an order retroactively validating the action. *Enron/MARTA*, 306 B.R. at 477 ("An order annulling the automatic stay has retroactive effect and validates actions or proceedings that would otherwise be deemed void ab initio."). In contrast, an order terminating the stay operates only from the date of entry of the order and does not affect the status of actions taken between the filing of the petition and the entry of the order. *Id*. (citing *Eastern Refractories,* 157 F.3d at 172, to the effect that a terminating order permits a creditor to initiate an

---

[7] In *In re Enron/MARTA,* the movant was a creditor seeking to have the stay lifted as affecting the movant's state court action filed against the debtor after the automatic stay arose. 306 B.R. at 474.

[8] When an entity commences an action in violation of the stay, the long held view in this Circuit is that the violative action is void. *In re Best Payphones, Inc.*, 279 B.R. 92, 97 & n.8 (Bankr. S.D.N.Y. 2002) (stating Second Circuit subscribes to majority view that stay violations are void; minority view holds violations are voidable). The case history relied on in *Best Payphones* is fully applicable here:
    i) *Eastern Refractories Co.*, 157 F.3d 169 (applying *Rexnord Holdings & 48th St. Steakhouse*).
    ii) *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir. 1994) (applying *48th St. Steakhouse*).
    iii) *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.* (*In re 48th St. Steakhouse, Inc.*) 61 B.R. 182 (Bankr. S.D.N.Y. 1986), affirmed, 835 F.2d 427 (2d Cir. 1987), cert. denied, 485 U.S. 1035, 108 S.Ct. 1596 (1988)(citing, among others, Albany Partners, Ltd.).
    iv) *Albany Partners, Ltd. v. W.P. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir. 1984) (citing *Kalb v. Feuerstein*).
    v) *Kalb v. Feuerstein,* 308 U.S. 433, 443, 60 S.Ct. 343, 348 (1940) (violations of stay generally deemed void).

action, or "re-initiate" violative action); *Albany Partners,* 749 F.2d at 675 (merely terminating the stay will not reinstate or validate a stay violation, which therefore remains void).

The distinction between retroactive lifting (annulment) of the stay and termination of the stay is important because the applicable test for each form of relief is different. MDIP Trust's motion is a request for the retroactive lifting of the stay, inasmuch as the motion seeks an order validating an action commenced in violation of the stay. Without the retroactive relief of the order lifting the stay, the action is void. 306 B.R. at 477 (applying *In re Best Payphones* to the effect that a party seeking to validate a void action must move to annul). As noted above, any relief must be retroactively effective as of August 5, 2003, the date on which the Movant filed the Preference Actions.[9]

The test used for a motion seeking annulment is not the *Sonnax* Factors test that the Movant cites. The Debtors are correct in directing the Court's attention to *Soares* and *In re Stockwell*, because those are the cases in which courts found the applicable test for retroactive relief when there were violations of the automatic stay.

In *Sonnax,* the appellant had sought relief from the court below to continue a pre-petition state court action against the appellee debtor. The appellant, a competitor of the appellee, had obtained a state antitrust injunction against the appellee, to which the appellee ultimately responded by seeking chapter 11 protection. *Sonnax,* 907 F.2d at 1282. In *In re Curtis,* 40 B.R. 795 (Bankr. D. Utah 1984), the source of the *Sonnax* Factors, the movant sought to join chapter 11 debtors in a pending state court action, arguably equivalent to trying to commence a post-petition action against the debtors. *Id.* at 797. In both cases, the movants could not show that cause existed for relief under a weighing of the relevant factors. *Sonnax,* 907 F.2d at 1288; *In re Curtis,* 40 B.R. at 796.

---

[9] Movant can only seek retroactive relief because, as the Movant recognizes, a "refiling" would be outside the time prescribed in section 546 (August 5, 2003) in its own case. *Eastern Refractories*, 157 F.3d at 172.

In contrast, *Soares* concerns retroactive lifting of the stay. In *Soares,* a mortgage lender was seeking a foreclosure judgment when the debtor's chapter 13 filing intervened. Thereafter, the state judge, not apprised by the lender of the debtor's bankruptcy, authorized entry of the foreclosure judgment. The mortgage lender then moved for retroactive relief in the bankruptcy court. The question presented on appeal was whether the bankruptcy court had properly justified the grant of retroactive lift of stay. *Soares,* 107 F.3d at 977. The First Circuit held that, although the form of relief was correct, retroactive relief is available "only sparingly and in compelling circumstances," which the bankruptcy court had failed to find. *Id*. at 978. In *In re Stockwell,* the court was presented with a similar situation, only there it was the chapter 13 co-debtors who failed to inform the mortgage lender of their bankruptcy, resulting in the entering of the foreclosure judgment in violation of their stay. Under those circumstances, the court recognized that only retroactive relief was appropriate and that the discretion of the court was limited to identifying compelling circumstances to warrant that relief. *In re Stockwell,* 262 B.R. at 280 (applying, among others, *Soares* and *Eastern Refractories*).

A bankruptcy court exercises its discretionary powers when considering whether to retroactively lift the automatic stay. *Soares,* 107 F.3d at 978 (abuse of discretion is standard of review for bankruptcy court's decision granting retroactive relief from stay); *In re Stockwell,* 262 B.R. at 281 (power to annul is within wide latitude of court and is considered case by case); *see also In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 321 (Bankr. S.D.N.Y. 2001). However, the exercise of discretion is subject to the "overarching purpose" of Congressional intent in establishing the automatic stay, and thus the application of such retroactive relief must be restrained. *Soares,* 107 F.3d at 977 (honoring congressional intent requires that "strict standard" be applied when considering retroactive relief).

The party moving for the retroactive lifting of the stay has the burden to make a prima facie showing of cause for relief. *Id.* at 976 ("Treating an action taken in contravention of the automatic stay

as void places the burden of validating the action after the fact squarely on the shoulders of the offending creditor.").[10] *Soares* applies the principle that the examination of "cause" cannot be mechanical but must treat each case as "sui generis." *Id*. at 977. The First Circuit stated that the discretionary authority of bankruptcy courts to grant retroactive relief was subject to a "Limiting Principle," which could not be expressed in a "mechanical" standard. *Id*. The case by case test arises from the observation that Congress, in its statute or its legislative records, did not define "cause" as applied to section 362 of the Bankruptcy Code. *Id*.

In *In re Stockwell*[11], the court was presented with a motion for retroactive lift of stay to validate an action filed in violation of the automatic stay. As noted above, that court recognized that the requested relief of annulment should be granted sparingly. The court determined that it was the "well recognized" rule that the proper way to exercise the court's discretion in making the decision to annul the stay is to conduct a case-by-case analysis under the limiting principles set out in *Soares*. *In re Stockwell,* 262 B.R. at 280 (applying *Soares*); *Soares,* 107 F.3d at 977. In *Soares*, the First Circuit

---

[10] The movant's *prima facie* burden applies generally when lift of stay relief is sought. *In re Enron/MARTA*, 306 B.R. at 476 ("The initial burden rests on the movant to show cause to modify the stay.") (internal citations omitted). *See also Sonnax*, 907 F.2d at 1285 ("If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").

[11] The Stockwells were chapter 13 debtors who had completed their plan. But they had failed to make their "outside the plan payments" to their first mortgage lender, falling into arrears on these post-petition payments. The mortgage lender, a successor by transfer from the original lender, commenced a foreclosure action in the appropriate county court. The defendants failed to appear, and the lender was granted a default judgment. Because (1) the debtors were dealing with the mortgagee outside the chapter 13 plan and had not informed the mortgagee of their bankruptcy, even after receiving default notices, and (2) the bankruptcy court was never made aware of the transfer of the mortgage, although the first holder filed a claim in the case, the successor mortgagee foreclosed without knowledge of the bankruptcy case. By a happenstance, after recording the foreclosure judgment, the mortgagee learned of the bankruptcy and informed the Stockwells that it intended to seek lift of stay in order to take possession of the house. The debtors objected only as to the retroactive nature of the relief sought. The court found that the balance of actions and inactions favored neither side. Consequently, the court determined to "split the baby" by considering the "retroactive" component of the lift stay motion.

determined that the bankruptcy court below had failed to apply the proper analysis by a wide margin. *Id*. at 978. Therefore, the *Stockwell* court turned to the examples from other bankruptcy courts that addressed this issue for the factors to consider in granting the relief of annulment. The relevant factors are:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay, (2) if the debtor has acted in bad faith, (3) if there was equity in the property of the estate, (4) if the property was necessary for an effective reorganization, (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation, (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor, and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*In re Stockwell*. 262 B.R. at 281 (citing *In re Lett*, 238 B.R. 167, 195 (Bankr.W.D.Mo.1999); *In re Williams*, 124 B.R. at 311, 317 (Bankr. C.D. Cal. 1991); *In re Pulley*, 196 B.R. 502 (Bankr.W.D.Ark.1996)). Given the circumstances, the *Stockwell* court found relevance in each of the factors, with no one factor dominating. *In re Stockwell,* 262 B.R. at 281.

The Court finds that the *Soares* analysis and the relevant factors set forth in *Stockwell* are the appropriate test in deciding whether or not to grant a retroactive lifting of the automatic stay, and not the *Sonnax* Factors proposed by the Movant. Based on Movant's communication in July, 2003 with the Debtors, it is clear that the Movant had actual knowledge of the Debtors' bankruptcy.[12] Regarding

---

[12] The Court has noted above that the Debtors sent the Bar Date Notice to Mosler because the Debtors' records showed that Mosler, which was the first MDIP Chain Entity, was a creditor. The basis of that debt was the account receivable that was sold to Diebold pursuant to the terms of the Agreement. Thereafter, Diebold filed a proof of claim in the Debtors' case. In addition, the Movant has admitted that a member of the Litigation Board determined that the Bar Date Notice was received by its predecessor. Therefore, it is clear that the MDIP Chain, as a known creditor, received actual notice of the Bar Date.

The question of notice would also favor the Debtors even viewing Movant in light of the sale of the Mosler receivables to Diebold. Movant would then have been an "unknown creditor" because its only claim would have been based upon the Preference Actions. *In re XO Communications, Inc*., 301 B.R. 782, 793 (Bankr. S.D.N.Y. 2003) (applying *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652 (1950) in the bankruptcy context), *aff'd*, 2004 WL 2414815 (S.D.N.Y.). This Court found in *In re XO Communications* that an entity that holds a preference claim is not generally considered to be a known creditor of a debtor based solely on the preference. *Id*. at

the second factor, no argument has been made that the Debtors have acted in bad faith.  Factors three and four relate to property of the Debtors and are not relevant to the analysis under the circumstances.

In considering the fifth factor, the appropriate analysis is whether relief would have been granted under the *Sonnax* Factors.  Without going through a complete analysis of the *Sonnax* Factors, it appears that, although the Court likely would not have granted relief to prosecute the Preference Actions, the facts as alleged herein would certainly have supported a modification of the stay to allow the MDIP Trust to file the actions to preserve any claims that it would assert as a result of the alleged Preferences.

Regarding the sixth factor, the Movant would not be able to pursue the Preference Actions if retroactive relief were not granted.  However, such "expense" is a consequence of an intentional, deliberate violation of the 362 Stay by an entity that itself operates under the similar protection.

Lastly, regarding the seventh factor, there is no evidence that the Movant detrimentally changed its position on the basis of the action taken.

Based on this analysis, the Court finds that, although denying the relief requested will prevent the Movant from pursuing the Preference Actions against the Debtors, the intentional violation of the 362 Stay under the circumstances described herein justifies those consequences.[13]  Therefore, the Court finds that the Movant has failed to establish cause to retroactively lift - or annul - the automatic stay.  Accordingly, the Movant's Preference Actions filed in violation of the Debtors' 362 Stay are

---

795.  In that case, it was determined that constructive notice through newspaper publication, as was provided here, would be proper.

In any event, it was within the Movant's control to provide a proper address to the Debtors for its receipt of notice.  Nothing the Debtors did, or failed to do, contributed to the problem articulated by Movant regarding its knowledge of the Bar Date.  Moreover, even after the Movant claims it actually became aware of the Bar Date, it did not take prompt action to remedy the problem.

[13]  The issue of the impact on the MDIP Debtors' claims adjudication process resulting from the Court's determination that the Preference Actions are a nullity is not before this Court.

void.

**2.     Modification of the Debtors' Plan Injunction**

The Court has determined that Movant has not shown cause to retroactively lift the automatic stay. Therefore, the Movant does not demonstrate cause to modify the Debtors' Plan Injunction. *In re Fucilo,* 2002 WL 1008935 at *9 (cause is standard for modifying plan injunction). The Movant's Preference Actions are void and the Movant holds no viable preference actions assertable against Debtors.[14] Therefore, this request for relief is moot. *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 29-30 (2d Cir. 1995).

**3.     Request to File Late Proofs of Claim**

As there is no claim that could be asserted against the Debtors, the Movant's request for leave to file late proofs of claim is a moot issue. *Id*.

However, it is important to note that the intentional conduct of the Movant in violating the 362 Stay would by itself, without even considering the length of time it took the Movant to seek any form of relief from the Court, likely warrant a denial of any equitable relief sought for permission to file a proof of claim after the Bar Date.

**CONCLUSION**

---

[14] Movant argues that applying *In re Fucilo* to their circumstances would result in the relief requested. The facts there differ markedly from the situation presented here. There the movant was the Attorney General of New York seeking to protect the public from investment fraud by obtaining an injunction and restitution order against a debtor who had filed under chapter 7 apparently to ward off those very actions. In order to determine the "appropriate circumstances" to modify the permanent injunction, the *Fucilo* court looked for cause by analyzing the *Sonnax* Factors, which were found to measurably favor the State, in particular the harm that would result from prohibiting the State from exercising its police powers. 2002 WL 1008935 at *9. In addition to preventing the debtor there from using the Code for "an improper purpose," the court found that State's claims may not have been discharged pursuant to section 523(a)(7). *Id*. at *10. And finally, determining that sections 362 and 524 should be read together, the court found that State's enforcement claims were never subject to the automatic stay. *Id*. at *12. In any event, this Court has examined the Movant's request under the appropriate cause standard and denies relief.

For the reasons stated above, the Movant's motion is denied in all respects. The Debtors are directed to settle an order consistent with this Memorandum Opinion.


Dated: New York, New York
        May 24, 2005

             *s/ Arthur J. Gonzalez*
             UNITED STATES BANKRUPTCY JUDGE