UNITED STATES BANKRUPTCY COURT      Not For Publication
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| WORLDCOM, INC., *et al.*, | : | Case No. 02-13533 (AJG) |
| | : | Jointly Administered |
| Reorganized Debtors. | : | (Confirmed) |
| | : | |

_____

## MEMORANDUM OPINION
## REGARDING REORGANIZED DEBTORS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT
## WITH RESPECT TO CLAIM NOS. 35124 AND 35125
## FILED BY MONIQUE GROSS

A P P E A R A N C E S :

STINSON MORRISON HECKER LLP
Attorneys for the Reorganized Debtors
1201 Walnut Street
Kansas City, MO  64106

      Mark A. Shaiken, Esq.
      Patricia A. Konopka, Esq.
      Amy R. Miller, Esq.
        Of Counsel

MONIQUE GROSS
Pro Se


ARTHUR J. GONZALEZ
United States Bankruptcy Judge

      The matter before the Court involves proofs of claim filed by a former employee of the

Reorganized Debtors based upon alleged violations of Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2003 ("Title VII").[1]

_____

[1] Title VII makes it "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e(a)(1).

## I.  Jurisdiction

The Court has subject matter jurisdiction under sections 1334(b) and 157(a) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.).  This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code.

## II.  Background

### A.  The Debtor

On July 21, 2002 (the "Commencement Date") and November 8, 2002, WorldCom, Inc. and certain of its direct and indirect subsidiaries (collectively, the "Debtor") commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  By orders dated July 22, 2002 and November 12, 2002, the Debtor's chapter 11 cases were consolidated for procedural purposes.  During the chapter 11 cases, the Debtor had been operating its businesses and managing its properties as debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On July 29, 2002, the United States Trustee formed the Official Committee of Unsecured Creditors (the "Committee") of the Debtor.

By order dated October 29, 2002, this Court established January 23, 2003 as the deadline for the filing of a proof of claim against the Debtor (the "Bar Date").  By order dated October 31, 2003, the Court confirmed the Debtor's Modified Second Amended Joint Plan of Reorganization which became effective on April 20, 2004 (the "Plan").  Upon the effective date, the Debtor became MCI, WorldCom Communications, Inc. ("MCI").

### B.  The Claimant

Monique Gross, f/k/a Monique Kelly, (the "Claimant") is a former employee of the Debtor. The Claimant worked as a telephone sales representative in the Small Business Segment of the Debtor's Atlanta, Georgia, Call Center beginning on July 1999. The Debtor terminated the Claimant's employment on January 4, 2001.

## C. Complaint

On May 14, 2001, the Claimant filed an action with the United States District Court of the Northern District of Georgia, Atlanta Division. The caption reads *Monique L. Kelly v. MCI WorldCom*, Case No. 1:01 CV 1238 (the "Complaint"). The Complaint consists of five charges of discrimination the Claimant filed with the United States Equal Employment Opportunity Commission ("EEOC"). On July 25, 2002, the Debtor filed a notice of commencement of their chapter 11 cases in the Claimant's district court action. Since that time, the Claimant's district court action has been stayed under 11 U.S.C. § 362(a)(1) and post effective date by the injunction under the Plan.

## D. The Claimant's EEOC Charges

The Claimant's EEOC charges consist of Title VII violations of discrimination based on sex, disability, hostile work environment, and retaliation. The Claimant filed the first four charges during her employment with the Debtor; and the fifth charge was filed after the Debtor terminated her employment.

### 1. First EEOC Charge (Number 110A00954)

The Claimant's first EEOC charge of discrimination, Number 110A00954, was filed on December 23, 1999 alleging sex and disability discrimination ("First EEOC Charge"). On April 18, 2000, the Claimant requested that the EEOC issue a Right to Sue Notice ("RTS Notice") on this charge, and the EEOC issued such RTS Notice on April 27, 2000. Although the Claimant

does not recall when she received the RTS Notice, she does not dispute that she received the

RTS Notice sometime prior to the filing of her third EEOC charge on November 6, 2000.

### 2.  Second EEOC Charge (Number 110A02421)

The Claimant's second EEOC charge of discrimination, Number 110A02421, was filed

on April 18, 2000 ("Second EEOC Charge").  In this charge, the Claimant alleges that after filing

the First EEOC Charge (1) "I received a written reprimand from my Supervisor and was denied

'flex hours'"; (2) "The reason I was given for the denial of flex hours is that I 'went to the

EEOC.'"  "I was not given a reason for my reprimand"; and (3) "I believe I've been retaliated

against for filing an EEOC complaint . . . ."  On June 14, 2000, the parties executed a settlement

agreement which reflected a resolution of this charge (the "Settlement Agreement").  Pursuant to

the Settlement Agreement, the Debtor was to assign the Claimant to a flexible work schedule.

However, the Claimant alleges that she did not enter into the Settlement Agreement voluntarily

and knowingly.

### 3.  Third EEOC Charge (Number 110A10574)

The Claimant's third EEOC charge of discrimination, Number 110A10574, was filed on

November 6, 2000 ("Third EEOC Charge").  In this charge, the Claimant states that on June 7,

2000, she signed a Settlement Agreement regarding her Second EEOC Charge and that,

thereafter, she has been retaliated against for the following reasons (1) "The employer has failed

or refused to honor the [S]ettlement [A]greement"; (2) "Since both charges have been closed, the

employer has created a hostile working environment by not permitting [me] to work a regular

flex schedule, not providing me with a regular place and/or seat to work, not paying me for the

total number of hours worked, not paying me all the commissions I earned and by threatening to

take away my benefits"; and (4) "On or about October 18, 2000, when I questioned Ludelle

4

Price[, the Claimant's supervisor,] about my missing pay checks and the amounts paid to me, she

shouted at me in the presence of my coworker and told me that I could 'go to [sic] back to EEOC

or call an attorney . . . because our paperwork is right.'"

### 4. Fourth EEOC Charge (Number 110A10800)

The Claimant's fourth EEOC charge of discrimination, Number 110A10800, was filed on

November 21, 2000 ("Fourth EEOC Charge").  In this charge, the Claimant alleges that she was

retaliated against because she filed the Third EEOC Charge (1) "On November 21, 2000 my

employer stated that they would give me my paycheck upon me signing for it or a green card, but

they refuse[d] to let me look to see if it was my paycheck"; (2) "In the beginning they told me

they were going to give me my check, but lied and said they would put it back in the mail"; (3)

"They've also failed to explain and/or provide me correct information in reference to my 'flex

schedule' terms and conditions"; (4) "They have created a hostile work environment by makeing

[sic] me subject to laughter."  "As well as not allowing me the enjoyment as the other flex

workers"; and (5) "They told me I wasn't eligible for short term disability and threatened my

job."

### 5. Fifth EEOC Charge (Number 110A11572)

The Claimant filed the fifth charge of discrimination, Number 110A11572, on January

19, 2001 ("Fifth EEOC Charge").  In this charge, the Claimant alleges that she has been

retaliated against for the following reasons (1) "Since I filed the charges, I have continuously

been harassed, intimidated, subjected to different terms and conditions of employment than

others similarly situated, verbally reprimanded for being insubordinate, denied pay for hours

worked and my 11/00 paycheck withheld"; (2) "On 1/4/01, I was discharged"; and (3) "No valid

reason has been given for the disparate manner in which I have been treated."  "I was informed

5

by Alvin McDewell, Manager Small Business Department, that I was being discharged for insubordination, refusing to provide him with my work schedule."[2]

## E. Amended Complaint

On September 27, 2001, the Claimant filed an Amended Complaint in the United States District Court of the Northern District of Georgia, Atlanta Division. The Amended Complaint contains the same allegations presented in the Complaint, including the five EEOC charges. However, the Claimant added allegations relating to racial discrimination in violation of Title VII, in which she generally states that the Debtor showed discriminatory preferential treatment to her co-workers, which she specifically names, by allowing them "employment privileges, compensation and other benefits which were denied to [her]."

On January 1, 2003, the Claimant filed Proofs of Claim Nos. 35124 and 35125, seeking secured claims in the amount of $75,000 and asserting the basis of the claims as "services performed" (the "Proofs of Claim") with the Court. The bases of the Claimant's Proofs of Claim are the charges alleged in the Amended Complaint.

On July 15, 2003, the Claimant filed (1) a motion for continuance pursuant to Federal Bankruptcy Rule 3018(a), (2) a motion which appears to be an application for admission to practice pro hac vice, (3) a letter asking that the Court not dismiss her case, and (4) a letter explaining why her Proofs of Claim should be entitled priority status.

On August 25, 2003, the Claimant filed a motion entitled "Motion For Stay to be [L]ifted" ("Lift Stay Motion"), however, it appears to be a request by the Claimant asking that her Proofs of Claim be given priority status. The Debtor's filed an objection to this motion, on

---

[2] The Debtor has not moved for summary judgment with respect to the Claimant's allegation that she was discharged from her employment in retaliation for filing charges of discrimination in violation of Title VII.

October 1, 2003, arguing that the Lift Stay Motion should not be granted.  The Committee filed a joinder in support of the Debtor's objection on October 2, 2003.

A status conference was scheduled for October 21, 2003 to respond to any questions the Claimant may have regarding the Claimant's Lift Stay Motion.  However, the Claimant informed the Court that morning that she would be unavailable for the status conference because of a medical problem.  The Court then scheduled arguments for the Lift Stay Motion for November 4, 2003.  The Court informed the Claimant that to the extent that she needed questions responded to regarding the November 4, 2003 scheduled hearing, she could submit them in writing, and the Court would schedule a conference call to respond to them prior to the hearing.  The Court received no such written submissions or any other communication prior to the scheduled hearing.

Thereafter, at the hearing on November 4, 2003, the Court denied the Claimant's Lift Stay Motion and further ordered that the Court would adjudicate her Proofs of Claim in the claim resolution process. The Court directed the Debtor to settle the order.  No objection was received by the Court from the Claimant regarding the order submitted by the Debtor, therefore, on November 24, 2003, the Court signed the order denying the Claimant's Lift Stay Motion.  However, the order was inadvertently placed in the Claimant's file and was not entered on the Court's docket.  Thereafter, on April 6, 2005, after the Court recognized the inadvertence, it entered the order on the docket and sent a copy to the Claimant and the Debtor.

On January 16, 2004, the Debtor filed an objection to the Proofs of Claim.  The motion had an objection deadline of February 17, 2004, with a hearing scheduled for March 2, 2004.  On March 4, 2004, the Debtor filed a notice of presentment of order disallowing and expunging the Proofs of Claim because of the Claimant's failure to respond to the Debtor's objection.  On March 14, 2004, the Claimant sent a letter to the Court objecting to the entry of an order

7

expunging and disallowing her Proofs of Claim.  Thereafter, on April 13, 2004, the Court signed

and entered an order adjourning the Debtor's objection to the Proofs of Claim and scheduled a

hearing to consider the objection to the Proofs of Claim for June 1, 2004.

On June 1, 2004, a Scheduling Order for the Proofs of Claim was entered requiring that

(1) the parties were to complete discovery on or before June 30, 2004, (2) any dispositive

motions were due on or before August 2, 2004, and (3) a pre-trial conference was set for August

24, 2004, but was later adjourned to September 24, 2004.

On August 2, 2004, the Debtor filed a motion for summary judgment with respect to the

Proofs of Claim.  The Debtor's summary judgment motion argues that the Court should grant

summary judgment in its favor against the Claimant because (1) Proof of Claim Number 35125

is a duplicate proof of claim which should be expunged, (2) the Claimant's First EEOC Charge is

time barred, (3) the majority of the Claimant's remaining allegations allege only retaliation, and

the Claimant cannot show that the Debtor engaged in any adverse employment action, (4) even if

the Claimant could prove her allegations regarding pay and commissions were adverse

employment actions, she cannot prove a causal connection existed between her protected activity

and the alleged adverse actions, and (5) the remaining allegations, with the exception of the

Claimant's discharge claim, fail because there is no evidence to support them, or they are barred

because the Claimant has failed to exhaust her administrative remedies.

A document entitled "Motion for Relief from Summary Judgment," dated August 9,

2004, which appears to be the Claimant's response to the Debtor's motion for summary

judgment, was filed on September 14, 2004.[3]  The Court notes that the Claimant's response was

generally conclusory.  In fact, the Claimant failed to respond to any of the specific allegations

---

[3]  Although it appears as though the Claimant's motion was not timely filed, the Debtor did not object to its
untimeliness.

raised by the Debtor.  There was no other response filed by the Claimant responding to the

Debtor's motion for partial summary judgment.

On September 24, 2004, the Court heard arguments regarding the Claimant's objection to

the Debtor's motion for partial summary judgment, after which the Court took the matter under

advisement.

On or about January 31, 2005, the Claimant telephoned the Court about the litigation

regarding her Proofs of Claim.  The Court instructed the Claimant to put whatever issues she had

in writing, and to mail the writing to the Court along with any supportive documentation, and to

send a copy of whatever is sent to the Court to the Debtor.  On February 7, 2005, the Court

received a series of documents from the Claimant entitled "Statement of Undisputed Facts,"

"Proof of [N]on Paid Commission," and "Money Judgment" (collectively, the "Supplemental

Pleadings").

On February 15, 2005, the Debtor filed an objection to the Claimant's Supplemental

Pleadings, entitled "Debtor['s] Response to Claimant Monique Gross' Response to Debtor['s]

Motion for Summary Judgment."  The Debtor argues that the Claimant's Supplemental

Pleadings should not be considered because (1) to the extent that the Claimant is attempting to

change her sworn testimony from her deposition, it is improper, (2) to the extent that the

Claimant is attempting to respond to the Debtor's Motion, it should be disregarded as untimely,

(3) the Claimant failed to seek leave of the Court to file these pleadings out of time, and (4) even

if the Claimant had asked the Court for an enlargement of time pursuant to Fed. R. Civ. P. 6 and

Bankruptcy Rule 9006, such a request should be denied.

On March 9, 2005, the Court issued an Order Requesting Post-Hearing Submissions

Regarding Claim Nos. 35124 and 35125 Filed by Monique Gross as Her Response to the

Debtor's Motion for Summary Judgment which states that to the extent that the Claimant wanted

to have the Court consider the Supplemental Pleadings, the Claimant had to file a motion for

leave of the Court to file her Supplemental Pleadings out of time by March 22, 2005.  The Court,

as of the due date, nor thereafter, has received such motion from the Claimant.  Consequently,

the Court asked the Debtor to settle an order granting the Debtor's Objection to the Claimant's

Supplemental Pleadings.  On April 15, 2005, the Debtor filed a Notice of Presentment of

Proposed Order Granting Debtor['s] Objection to Claimant, Monique Gross' Response to

Debtor['s] Motion for Summary Judgment and set the presentment date for May 10, 2005, and a

response deadline of May 5, 2005.  Claimant, however, did not file any response to the Debtor's

proposed order by the May 5 deadline.  On May 10, 2005, the date set for presentment, the

Claimant contacted the Court via telephone expressing that she was unable to appear due to a

family emergency but that she objected to the order.[4]  The Court instructed the Claimant to

submit her objection by May 13, 2005.  The Court did not receive any response by that date,

however, on May 16, 2005, the Claimant submitted a writing to the Court.  Such writing was not

an objection to the proposed order at issue, but was an objection to the November 24, 2003 order,

which was previously discussed.

　　　　Thus, based upon the Debtor's objection to the Supplemental Pleadings, and the

Claimant's failure to file the requested motion by the deadline or request any extension thereof,

or in any way respond to the Debtor's objection, the Court sustains the Debtor's objection, and

will only consider the submissions that were properly submitted.  Therefore, the Court basis this

---

[4]  Thereafter, on May 16, 2005, the Court received a "Motion for extension of time" dated May 9, 2005 seeking an
adjournment of the May 10, 2005 hearing.  However, when such request was made by telephone on May 10, 2005
prior to the hearing, the Court told the Claimant that in lieu of oral arguments, the Claimant could submit her
objection, if any, in writing, and the Court would rule on the papers as submitted.

memorandum opinion upon the documents that were properly submitted, thereby, excluding the

Supplemental Pleadings.

### III.  Discussion

**A.  Summary Judgment Standard**

The basic principles governing a motion for summary judgment are well settled.  Rule 56

of the Federal Rules of Civil Procedure (hereinafter each rule entitled the "Rule"), made

applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy

Procedure, governs summary judgment motions.  Summary judgment may only be granted when

there is no genuine issue of material fact remaining for trial and the moving party is entitled to

judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Rule 56(c) provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits,
> if any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law.

A "genuine issue" exists "if the evidence is such that a reasonable jury could return a

verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* at 248.

The burden is upon the moving party to clearly establish the absence of a genuine issue as to any

material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The Court, however,

must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the

non-moving party.  *See United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994).  In addition,

because the Claimant is *pro se*, the Court reads the Claimant's papers "liberally and construe

them to raise the strongest argument they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280

(2d Cir. 1999).  The movant can meet its burden for summary judgment by showing that little or

no evidence may be found to support the nonmovant's case. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986). "Once a movant has demonstrated that no material facts are genuinely in dispute, the nonmovant must set forth specific facts indicating a genuine issue for trial exists in order to avoid granting of summary judgment." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1990).

In employment discrimination cases "[c]ourts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where . . . plaintiff has offered little or no evidence of discrimination." *Rinsler v. Sony Pictures Entm't, Inc.*, No. 02-Civ. 4069 (SAS), 2003 WL 22015434, at *4 (S.D.N.Y. Aug. 25, 2003) (citation and internal quotation marks omitted). However, courts should use caution in granting summary judgment "where the employer's intent is genuinely at issue and circumstantial evidence may reveal an inference of discrimination." *Id.* (citing *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)). Nevertheless, even in circumstances where the employer's intent is at issue, a "plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.* (citing *Schwapp v. Town of* Avon, 118 F.3d 106, 110 (2d Cir. 1997)). Thus, the nonmovant cannot escape summary judgment with mere conclusory allegations, speculation or conjecture. *See Cifarelli*, 93 F.3d at 51. The nonmovant in fact, must do more than simply show that there is some "metaphysical doubt" about the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Therefore, if no reasonable jury could find in favor of the nonmovant because evidence to support its case is slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *See Gallo v. Prudential Residential Servs. Ltd. P'ship.,* 22 F.3d 1219, 1224 (2d Cir. 1994).

**B.  Applicable Circuit Case Law**

The Debtor applies Eleventh Circuit case law to its analysis of the Title VII claims,

presumably because the Eleventh Circuit is the situs of the causes of action.  The Claimant has

not objected to the application of Eleventh Circuit case law.  However, although neither party

has disputed the application of Eleventh Circuit case law, the Court will examine whether the

appropriate case law is the Second Circuit as the Debtor's bankruptcy proceeding is pending

therein.

"The decision to allow or disallow a claim is considered a 'core proceeding' under 28

U.S.C. § 157(b)(2)(B)."  *In re Degeorge Fin. Corp.*, Nos. 99-32300-02 (ASD), Civ.A.

3:01CV0009 (CFD), 2002 WL 31096716, at *5 (D. Conn. July 15, 2002).  The Supreme Court in

*Granfinaciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), recognized that by filing a proof of claim

against a bankruptcy estate a creditor triggers the process of allowance and disallowance of

claims, thereby subjecting himself to the bankruptcy court's equitable power.  *Id.* at 58-59 (citing

*Katchen v. Landy*, 382 U.S. 323, 336 (1966); *S.G. Phillips Constructors, Inc. v. City of*

*Burlington, Vermont (In re S.G. Phillips Constructor's Inc.)*, 45 F.3d 702, 705 (2d Cir. 1995);

*Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines*, 132 B.R. 4, 7 (S.D.N.Y. 1991)).  This

general rule applies even when the basis for the creditor's claim involves a pre-petition claim

brought by the creditor pre-petition.  *See Cibro Petroleum Products, Inc. v. City of Albany (In re*

*Winimo Realty Corp.)*, 270 B.R. 108, 120 (S.D.N.Y. 2001) ("[W]here a defendant to a pre-

petition  . . . action has filed a proof of claim against the estate, the defendant has sought the

benefits of the bankruptcy court's jurisdiction and the matter will be deemed core.")  This

Court's jurisdiction is derived from the Second Circuit.  Thus, it would follow that the Court

adjudicating a "core" matter, which is within its jurisdiction and is a claim based on federal law, would apply Second Circuit case law.

Here, the Claimant's claims against the Debtor originated in the United States District Court for the Northern District of Georgia in the Eleventh Circuit. Thereafter, the Claimant filed the Proofs of Claim, which incorporate the causes of action in the Amended Complaint, in the Southern District of New York where the Debtor's bankruptcy case is pending. The filing of the Proofs of Claim, triggered the process of allowance and disallowance of claims. Accordingly, the Claimant has subjected herself to the jurisdiction of the Court's equitable power. Therefore, the Court will apply Second Circuit case law.

Even if the Court were to treat the Claimant's federal action in the Northern District of Georgia as being "transferred" to this Court because it was subsumed in the Proofs of Claim, the Second Circuit has "previously held that a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (citing *Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.)*, 950 F.2d 839, 847 (2d Cir. 1991)). "Although federal courts sometimes arrive at different constructions of federal law, federal law (unlike state law) is supposed to be unitary." *Id.* Thus, "until the Supreme Court speaks, the federal circuit courts are under duties to arrive at their own determinations of the merits of federal questions presented to them . . . ." *Id.* A federal court that simply accepts the interpretation of another circuit court without independently addressing the merits is not doing its job. *Id.* Here, there are issues involving federal law present in this case. Therefore, even in a "transfer" analysis the Court would apply Second Circuit case law.

## C.  Expungement of Claim Number 35125

The Debtor argues that the Proofs of Claim filed by the Claimant on January 1, 2003 are practically identical to each other.  The Proofs of Claim are both in the amount of $75,000, and they both assert the same basis for the claims, "services performed."  The Debtor further argues that the Claimant testified that the Proofs of Claim are in her handwriting and signed by her.  However, the Claimant does not remember whether she sent one or two forms.  In addition, the Debtor states that according to the Claimant's deposition, she only intended to have one claim in this Court, which would encompass all her claims in the Amended Complaint.  *See* Gross Dep. pp. 159-163.  The Court agrees with the Debtor that it appears from the facts that the Claimant only intended to have one proof of claim based on her claims in the Amended Complaint.  Accordingly, the Court finds that there is no genuine issue of material fact at issue.  Therefore, Proofs of Claim Numbers 35124 and 35125 are duplicative claims.  Accordingly, Proof of Claim Number 35125, the later filed claim, is expunged.

The Debtor further argues that the Claimant mistakenly indicated that her Proofs of Claim were secured claims by indicating the "value of collateral" as $75,000.  There have been no facts presented to establish that the Claimant is a secured creditor of the Debtor.  Therefore, to the extent that the Claimant argues that her Proofs of Claim are secured, she is incorrect.  The Proofs of Claim are a result of alleged violations of Title VII and are not entitled to secured status.  Therefore, the Court finds that the Claimant mistakenly identified the Proofs of Claim as secured claims, and will reclassify the remaining claim, Proof of Claim Number 35124, as an unsecured claim.

## D.  First EEOC Charge Is Time-Barred

The Debtor argues that the Claimant's First EEOC Charge is time barred because the Claimant failed to file her civil action within ninety days of her receipt of the EEOC's RTS

Notice.  Moreover, the Debtor argues that it is undisputed that the Claimant received the RTS

Notice sometime prior to her filing her Third EEOC Charge, which was filed on November 6,

2000, and that even if you were to calculate the date of receipt from that late date, her Complaint

was filed more than ninety days after November 6, 2000.

    The receipt of a RTS Notice from the EEOC is a prerequisite to filing a Title VII

complaint in federal court.  *See* 42 U.S.C. 2000e-5(f)(1).  A plaintiff has ninety days from receipt

of the RTS Notice in which to timely file a complaint under Title VII.  *Sherlock v. Montefiore*

*Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996); *see also* 42 U.S.C. 2000e-5(f)(1).  In the absence of a

challenge, it may be assumed that a RTS Notice provided by a government agency has been

mailed on the date shown on the RTS Notice.  *Sherlock*, 84 F.3d at 526.  It is further assumed

that in the absence of proof of the date of receipt, the plaintiff is presumed to have received the

RTS Notice three days after it was mailed by the EEOC.  *See Thompson v.*

*PricewaterhouseCoopers LLP*, 02 Civ. 9375 (KTD) (FM), 2005 U.S. Dist. LEXIS 2302, at *2

(S.D.N.Y. Feb. 16, 2005).

    The Claimant filed the First EEOC Charge on December 23, 1999.  On April 18, 2000,

the Claimant requested that the EEOC issue her an RTS Notice for this charge.  It is undisputed

by the parties that the EEOC mailed the RTS Notice to the Claimant on the date shown on the

RTS Notice, April 27, 2000.  The Claimant filed the Complaint on May 14, 2001, and the

Amended Complaint was filed on September 27, 2001.  The Claimant does not recall when she

actually received the RTS Notice.  However, it is undisputed that the Claimant received the RTS

Notice prior to filing the Third EEOC Charge on November 6, 2000 because in her Third EEOC

Charge the Claimant stated "On December 23, 1999, I filed a charge (110A00954) of

discrimination.  On April 18, 2000, I filed another charge (110A02421) of retaliation.  I

16

requested, and *received*, a Notice of Right to Sue on my first charge." Yet, the Claimant did not

file the Complaint until May 14, 2001, nearly a year after the RTS Notice was mailed and

presumed to have been received three days after it was mailed on April 27, 2000. Therefore, the

Claimant did not timely file her charges of discrimination based on sex and disability.

Even resolving all ambiguities and drawing all reasonable inferences in the light most

favorable to the Claimant by assuming that she did not receive the RTS Notice until November

6, 2000, as the Debtor suggested, the Claimant still did not file her Complaint for another 188

days from that date. Therefore, based upon the undisputed facts, the Claimant has failed to

establish that she filed the Complaint based upon her First EEOC Charge within ninety days of

receiving the RTS Notice. In addition, the Court finds that since there are no facts present to

invoke equitable tolling,[5] the Claimant's First EEOC Charge of discrimination based on sex and

disability is time-barred. Therefore, the Court grants the Debtor's request for summary judgment

with respect to the First EEOC Charge.

**E. Title VII Racial Discrimination Claim**

The Claimant's Amended Complaint contains allegations of racial discrimination in

violation of Title VII. The Debtor argues that this claim is barred because the Claimant failed to

raise it in any of her EEOC charges or bring it before the EEOC. Furthermore, the Debtor argues

that since the racial discrimination claim is not "reasonably related" to the claims set forth in her

EEOC charges, nor could it have been reasonably expected to have arisen during the course of

the EEOC's investigation into the Claimant's claims of discrimination based on sex and

---

[5] "[E]quitable tolling is only appropriate in rare and exceptional circumstances . . . in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y. City Tran. Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citation and internal quotation marks omitted). In addition, it is "generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified period," the "plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant" or "where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Id.* at 80-81 (citations and internal quotation marks omitted).

disability, retaliation, or hostile work environment, she is precluded from raising them in her
Amended Complaint.

A precondition to bringing a Title VII claim in federal court is timely filing a complaint
with the EEOC and receiving a RTS Notice from the EEOC. *Legnani v. Alitalia Linee Aeree
Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). The purpose of the exhaustion requirement is
that the EEOC should have the first opportunity to investigate the alleged discriminatory
practices to encourage voluntary compliance and promote conciliation efforts. *See Butts v. The
City of N.Y. Dept. of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superceded by
statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d
Cir. 1998). Therefore, "a district court only has jurisdiction to hear claims that are either
included in a plaintiff's EEOC charge or are based on subsequent conduct which is 'reasonably
related' to the conduct alleged in the EEOC charge." *Dahbany-Miraglia v. Queensboro Cmty.
Coll.*, 03 Civ. 8052 (SAS), 2004 U.S. Dist. LEXIS 9709, at *14 (S.D.N.Y. May 27, 2004) (citing
*Legnani*, 274 F.3d at 686).

"There are three types of situations in which claims may be 'reasonably related' to the
allegations in an EEOC charge: (1) where the conduct would fall within the scope of the EEOC
investigation into the charge; (2) a claim of retaliation after the employee filed an EEOC charge;
and (3) incidents of discrimination carried out in precisely the same manner alleged in the EEOC
charge." *Tamayo v. City of New York*, 02 Civ. 8030 (HB), 2004 U.S. Dist. LEXIS 5656, at *17
(S.D.N.Y. March 31, 2004) (citing *Butts*, 990 F.2d at 1402-03) (internal quotation marks
omitted). This exception "is essentially an allowance of loose pleading and is based on the
recognition that EEOC charges frequently are filled out by employees without the benefit of
counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff

claims [she] is suffering." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (citing *Butts*, 990

F.2d at 1402) (internal quotation marks omitted). "The 'reasonably related' doctrine can serve to

incorporate conduct subsequent to the filing of the EEOC charge, but it does not permit inclusion

of discriminatory acts that plaintiff knew of when [s]he filed the EEOC charge." *Tamayo*, 2004

U.S. Dist. LEXIS 5656, at *17-18.

The inquiry is whether the Claimant's racial discrimination claim is "reasonably related"

to the allegations contained in her five EEOC charges. The Claimant's EEOC charges were

specific to her allegations of discrimination based on sex, disability, retaliation, and hostile work

environment. They did not in any way set forth allegations pertaining to racial discrimination.

Material differences exist between a racial discrimination claim and claims of discrimination

based on sex, disability, retaliation, and hostile work environment. "Courts generally do not find

a claim that is based on a wholly different type of discrimination to be 'reasonably related' to

those initially asserted in the EEOC charge." *Burrell v. City Univ. of N.Y.*, 995 F. Supp. 398,

407-08 (S.D.N.Y. 1998) (finding plaintiff's subsequent national origin discrimination claim not

"reasonably related" to her claim of sex discrimination); *see Dahbany-Miraglia*, 2004 U.S. Dist.

LEXIS 9709, at * 5 (finding plaintiff's subsequent ADA claim not "reasonably related" to her

claims of race, sex and age discrimination claims); *Dennis v. Pan Am. World Airways, Inc.*, 746

F. Supp. 288, 291 (E.D.N.Y. 1990) (finding plaintiff's subsequent age discrimination claim not

"reasonably related" to her race discrimination claim).

The Claimant does not present any facts or arguments regarding her racial discrimination

claim to satisfy any of the three exceptions. Accordingly, the Court finds that as a matter of law

the Claimant's claims are *not* "reasonably related" to the allegations in her EEOC charges. Thus,

the Court finds that the Claimant did not exhaust her administrative remedies by filing her claim

of racial discrimination first with the EEOC.  Therefore, the Claimant's racial discrimination

claim is barred.  Accordingly, the Court grants the Debtor's request for summary judgment with

respect to the racial discrimination claim.

## F.  Title VII Retaliation Claims

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that

"(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of

plaintiff's participation in the protected activity; (3) the employer took adverse action against

plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the

adverse action taken by the employer."  *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 116 (2d

Cir. 2000) (citing *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)).

The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

established the allocation of the burden of production and the order of presentation of proof in

retaliation cases.  Under *McDonnell Douglas*, the plaintiff has the initial burden of establishing a

prima facie case of retaliation by a preponderance of the evidence.  *Id.* at 802.  Once a plaintiff

makes a prima facie showing, the burden shifts to the defendant to present evidence that it had a

legitimate, nondiscriminatory reason for terminating the plaintiff.  *Id.*  Once the defendant makes

such a showing, the plaintiff must then show that the defendant's reason was a pretext for

discrimination.  *See Id.* at 804-05.

### 1.  Protected Activity

The Debtor does not dispute that the Claimant's filing of EEOC charges is a statutorily

protected activity.  *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 443 (2d Cir.

1999) ("There is no disagreement that Richardson engaged in protected activity when she . . .

filed her EEOC charge and filed her lawsuit.").  Therefore, the Claimant has met the first prong

of a prima facie case of retaliation.

### 2.  Debtor's Knowledge

The second prong requires the Claimant to establish that the Debtor had knowledge of the

Claimant's filing of EEOC charges, the protected activities.  To establish the knowledge

requirement for a prima facie case, the Claimant need only show that the Debtor had general

corporate knowledge that the Claimant engaged in a protected activity.  *Gordon*, 232 F.3d at 116

(plaintiff established knowledge requirement through the Board of Education's general corporate

knowledge of her protected activity) (citing *Cosgrove*, 9 F.3d at 1039 ("plaintiff established a

prima facie case because the Sears corporation was aware of her EEOC complaint"); *Alston v.*

*N.Y. City Transit Auth.*, 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998) ("In order to satisfy the second

prong of her retaliation claim, plaintiff need not show that individual decision-makers within the

NYCTA knew that she had filed . . . [an] EEOC complaint.")).  Accordingly, the Claimant has

established the second prong of a prima facie case because the Debtor had general corporate

knowledge of the Claimant's various charges with the EEOC.

### 3.  Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a materially

adverse change in the terms and conditions of employment."  *Galabya v. N.Y.C. Bd. of Educ.*,

202 F.3d 636, 640 (2d Cir. 2000) (citations and internal quotation marks omitted).  "A materially

adverse change must be more disruptive than a mere inconvenience or an alteration of job

responsibilities and might be indicated by a termination of employment, a demotion evidenced

by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices . . . unique to a particular situation."

*Patrolmen's Benevolent Assoc. of the City of N.Y., Inc. v. The City of New York*, 310 F.3d 43, 51

(2d Cir. 2002) (citation and internal quotation marks omitted).

   To prove retaliation other than through the "classic" examples, "the plaintiff must

demonstrate, 'using an objective standard,' that 'the total circumstances of [her] working

environment changed to become unreasonably inferior and adverse when compared to a typical

or normal, not ideal or model workplace.'" *Alban-Davies v. Credit Lyonnais Sec. (USA) Inc.*,

No. 00 Civ. 6150(DLC), 2002 WL 498630 (S.D.N.Y. 2002) (citing *Phillip v. Bowen*, 278 F.3d

103, 109 (2d Cir. 2002)). "Because there are no bright-line rules, courts must pore over each

case to determine whether the challenged employment action reaches the level of 'adverse.'"

*Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997).

   The Claimant presents the following allegations in support of her claims of adverse

employment.[6]

1. "On November 21, 2000 my employer stated they would give me my paycheck upon me signing for it or a green card, but they refuse[d] to let me look to see if it was my paycheck."

2. "In the beginning they told me they were going to give me my check, but lied and said they would put it back in the mail."

3. "They've also failed to explain and/or provide me correct information in reference to my 'flex schedule' terms and conditions."

4. "As well as not allowing me the enjoyment as the other flex workers."

5. "They told me I wasn't' eligible for short term disability and threatened my job."

6. The Debtor "[f]ail[ed] to provide earned commissions, forc[ed] [the Claimant] to seek alternative resolution of the failure to provide earned commissions by and through complaints to superiors." (The Claimant alleges that she earned $2,500 in commissions but was only paid $2,000).

7. "Falsely accusing [the Claimant] of purloining cash certificates."

---

[6]  The Court did not include allegations that were duplicative in nature.

8.  "Falsely giving [the Claimant] written and oral reprimands."

9.  The Debtor "was shorting the [Claimant]'s base pay." (The Claimant alleges that her base pay was $8.07, but that some of her paychecks reflect that she was only paid $8.06.)

10. The Debtor "was shorting [the Claimant]'s work hours in an attempt to force [the Claimant] to quit based upon insufficient work hours to provide adequate work income [or flex schedule]."

11. "Failing to provide [the Claimant] with [the Claimant]'s employment check in person, but mailing the same to the [Claimant] when the other employees were paid in person."

12. "Deliberately failing to pay [the Claimant] financial compensation earned as provided to other employees." (The Claimant alleges that her paycheck for the period ending 11/00 was withheld.[7]  In addition, that her pay was shortened three hours for the pay period ending 10/28/00.)[8]

13. "Deliberately failing and refusing to provide [the Claimant] equal work employment treatment and equipment, which hindered and interfered with [the Claimant]'s proper job functions and performance."

14. "Retaliated against the [Claimant] by freezing the [Claimant]'s pay and deliberately refusing to compensate [the Claimant] on an equal or similar level as compensation was given to other similarly situated employees were receiving at the same time while denying the same to the [Claimant]."

15. The Debtor "by and through its management staff, treated [the Claimant] differently than other employees, based upon [the Claimant]'s filing of discrimination complaints, with the purposes of such treatment to be in retaliation for the [Claimant]'s filing such discrimination claims, and to also force the [Claimant] to voluntarily quit her employment with [the Debtor]."

16. The Debtor "willfully and deliberately violated the rules, guidelines and

---

[7]  It is not clear as to what the Claimant is alleging is the adverse employment action committed by the Debtor with regard to her check being "withheld" in that it does not appear that the check was not paid; therefore, the claimant has not provided facts to establish an adverse employment action.

[8]  Attached to the Claimant's Proof of Claim Number 35124, is a Statement of Earnings for the period ending 02/05 (the year is not stated).  In the bottom right corner is a handwritten note by the Claimant which states:  Checks Missing 7/28-809555, 8/11-830268, 8/25-850822 (the years are not listed).  Without further information from the Claimant as to what her allegation(s) is(are) with regard to these checks and what she means by "missing," it is unclear what she is alleging is(are) the adverse employment action(s) committed by the Debtor; therefore, the Claimant has not provided any facts to establish an adverse employment action.

   In addition, the Claimant listed in her response to the Debtor's interrogatories her paycheck for the period ending 4/15/00, check number 2679248, again, it is unclear as to what the Claimant is alleging is the adverse action; therefore, the Claimant has not provided facts to demonstrate that she has suffered an adverse employment action with respect to these allegations.

procedures accorded to other employees, but denied the same to the [Claimant]."

17. The Debtor "willfully and deliberately took acts and actions which were designed and intended to make the [Claimant] quit her employment with [the Debtor]."

**a. Allegation Numbers 1-3, 7-8 and 11**

The allegations contained in numbers 1-3, 7-8 and 11 are not adverse employment actions. The actions are not materially adverse employment actions because the Claimant did not lose her job, position, benefits, or job responsibility based on those actions. Here, the Claimant alleges that her check was not given to her directly but mailed to her while other employees were given their paychecks directly. Such conduct if found to be true would appear to be improper if no reasonable justification was given for such disparate treatment. However, such conduct does not, as alleged, rise to the level of being materially adverse because the Claimant, nonetheless, received her paycheck in a timely manner.

Even if the Debtor did not provide the Claimant with the terms and conditions of the flex schedule, it would not be a material adverse action because the Claimant failed to provide facts to demonstrate how the lack of that information resulted in a material tangible harm to her benefits. In addition, the Claimant contends that she was falsely accused of purloining cash certificates. However, without any facts to demonstrate how this alleged false accusation adversely effected the terms of the Claimant's employment, the Claimant has failed to raise an issue of material fact with respect to this allegation.

Lastly, the Claimant contends that she was falsely given a written and oral reprimand. A reprimand can constitute an adverse employment action. *Honey v. County of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002). Nevertheless, "reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other

negative results such as a decrease in pay or being placed on probation." *Id.* The record is

unclear as to whether the reprimands were a warning or if disciplinary actions were taken.

Nonetheless, the Claimant has not presented evidence of any adverse action that occurred as a

result of those alleged reprimands. Based on the foregoing reasons, the Claimant has failed to

establish that a genuine issue of material fact remains for trial regarding the above allegations.

Therefore, the Debtor is entitled to summary judgment as a matter of law regarding the

allegations in numbers 1-3, 7-8 and 11.

### b.  Allegation Numbers 4, 10, 13 and 15-17

The allegations contained in numbers 4, 10, 13 and 15-17 are not adverse employment

actions. These allegations cannot withstand summary judgment because they are conclusory or

speculative in nature. The Claimant has failed to provide facts regarding these allegations.

"Statements that are devoid of any specifics, but replete with conclusions, are insufficient to

defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196

F.3d 435, 452 (2d Cir. 1999). Based on the foregoing reasons, the Claimant has failed to

establish that a genuine issue of material fact remains for trial regarding the allegations.

Therefore, the Debtor is entitled to summary judgment as a matter of law regarding the

allegations in numbers 4, 10, 13 and 15-17.

### c.  Allegation Numbers 5, 6, 9, 12 and 14

The allegation contained in number 5 is that the Debtor told the Claimant that she was not

eligible for short term disability and threatened her job. Although the Claimant has not provided

what the terms of the Debtor's short term disability benefits are, short term disability has

generally been described as the inability to perform the essential duties of your job because of

illness, injury or pregnancy. Thus, it follows that to be eligible for short term disability an

employee must first meet any one of these conditions. It would appear to the Court that an employee who has properly met the specified conditions of receiving short term disability and subsequently denied such an employment benefit, would have experienced an adverse employment action. Absent here, however, is any allegation from the Claimant that she has properly met a condition of receiving short term disability. A denial of a benefit cannot be adverse to an employee if the employee was not entitled to such benefit in the first instance. Therefore, the Claimant has failed to establish that a genuine issue of material fact remains for trial regarding this issue. In addition, the allegation that the Debtor allegedly threatened the Claimant's job is not an adverse action because the Claimant has failed to show how the threat alone had a material adverse effect on the Claimant's employment. Therefore, the Debtor is entitled to summary judgment as matter of law regarding the allegation in number 5.

The allegations contained in numbers 6 and 12 allege that the Debtor failed to provide the Claimant earned commissions. Specifically, she alleges that she earned $2,500 in earned commissions and only received $2,000. In addition, the Claimant alleges that her paycheck was shortened by three hours for the pay period ending on October 28, 2000. These are adverse employment actions because the Claimant alleges that she did not receive earned commissions and other earned compensation.

The allegation contained in number 9 is that the Debtor shortened the Claimant's base pay from $8.07 to $8.06. The Claimant provided check number 2399359 for the pay period ending September 4, 1999,[9] check number 2589314 for the period ending February 5, 2000, and the pay check for the pay period ending on May 13, 2000 as evidence of such shortened pay. "A reduction in pay has been determined to be an adverse employment action." *Parrish*, 258 F.

---

[9] The Court notes that check number 2399359 for the pay period ending September 4, 1999 is irrelevant with respect to the Claimant's retaliation charge because the alleged action occurred prior to the Claimant filing her First EEOC Charge on December 23, 1999.

Supp. 2d at 269 (citing *Morris v. Linda*, 196 F.3d 102, 110 (2d Cir. 1999)). The Debtor argues

that these checks do not reflect such a shortened pay, but actually reflect the base pay of $8.07.

The Court agrees with the Debtor that the Claimant has not raised an issue of material fact with

respect to this issue. The Court has performed the calculations, and it appears that the Claimant

received her correct base pay of $8.07 for the pay period at issue. The Court notes that at best

the Claimant has alleged that she was not paid a quarter of a cent for the pay period at issue.[10] In

addition, the Claimant does not allege that when the Debtor is faced with paying employees

fractions of hours, it has not routinely rounded the result of that calculation to whole cents.

Based upon the undisputed facts, the Claimant failed to establish that a genuine issue of material

fact remains for trial on this issue. Therefore, the Debtor is entitled to summary judgment as a

matter of law regarding the allegation in number 9.

       The allegation contained in number 14 states that the Debtor did not pay the Claimant on

an equal level to others. More specifically, the Claimant on oral argument stated that she was

not given the same across the board raises as her co-workers. The Debtor argues that there is no

evidence in the record that the Claimant was, in fact, paid at a level unequal to others.

Furthermore, the Debtor argues that the Claimant has not identified any individuals, which she

claims were paid at a level higher than she. The Claimant in her deposition testified to the

following regarding her allegation of unequal treatment by the Debtor.

       Q:  And my question is:  Do you have any personal knowledge or information
          about anyone else's paycheck other than your own?

---

[10] The Claimant provided her paycheck for the pay period ending May 13, 2000 as proof that she was only paid $8.06 per hour. The Court notes that when the Claimant's regular hours worked of 47.75 is multiplied by the base rate of $8.07, it equals $385.3425. Her paycheck reflects that she was paid $385.34. The Debtor, essentially, did not pay her $0.0025 cents or 25% of one cent. It appears that the Claimant's argument is based upon the fact that if you were to take the paid amount of $385.34 and divide that by the number of hours worked, 47.75, it equals a base rate of $8.0699. As noted above, the Claimant was not paid $0.0025. However, it seems conventional for employers to round to the nearest cent, which explains why she was not paid the quarter of a cent, and, in any event, there is no allegation that such "rounding" is not done by the Debtor with respect to all other employees.

27

A:  I have knowledge of only what was shown to me on the job when people was opening their checks up at the same time on the job and passing them around or showing to each one [sic].

Q:  Are you saying you and your co-workers passed around your paychecks to each other?

A:  I won't say passed it around.  I would say they compared and looked at each other's paychecks.

Q:  Can you name any individual employees who claim were treated better than you?

A:  I gave a list here in my Interrogatories.

Q:  Let's look at that.  That's Exhibit 13.  There's a list of names in the answer to Question Number 2.  Question Number 2 in the Interrogatory Number 12 is state the name, address and telephone number of each person who you believe has or may have knowledge of any facts concerning, directly or indirectly, any of the claims or allegations set forth in your complaint, and for each person provide a description of the knowledge each person possesses or may possess.  And then in response, there's a list of names.  The first name is Latonya Jackson.  Who is Latonya Jackson?

A:  A lady who works at MCI WorldCom.

Q:  And is it your testimony that Ms. Jackson was treated better than you?

A:  It's my testimony that she has knowledge about Stevie Johnson's discriminatory actions towards me, as well as his ex-girlfriend, Karleen Smith, had knowledge of the awards and ceremonies.  She has knowledge of how I was treated.

Q:  The next person on the list is Kenya Grayhill.

. . .

Q:  Do you believe that Ms. Grayhill was treated better than you?

A:  Yes.

Q:  In what way?

A:  I never heard her or Latonya complain about their hours or time lost, and I never heard either one of them having their paychecks mailed to them.

28

Q:  Okay.

A:  And they always were able to log into their systems and things of that nature.

Q:  The next person is Joyce Foster.  Was Ms. Foster an employee of MCI WorldCom?

A:  Yes.

Q:  And are you alleging that Ms. Foster was treated better than you?

A:  No.  What I'm saying, she can testify to Stevie Johnson's intentional discriminatory actions, ver[b]al statements that was made to me in front of co-workers.

Q:  The next person on the list is Sandra [Crawel].

. . .

Q:  Was Sandra a co-worker of yours at MCI WorldCom?

A:  Yes.

Q:  Do you believe that Sandra was treated better than you?

A:  Yes.

Q:  In what way?

A:  I recall her showing me her paychecks, her hours worked, her rate of pay increase, things of that nature.  That's how I knew there was an across-the-board raise and I didn't receive it.

Q:  And that was the raise – you testified earlier about a raise in November 2000.

A:  I think it started a little bit earlier than that; maybe October or November.  But one of the months or sometime during that time when it first began, I didn't receive it.

Q:  And that was the pay – during that period, you testified that the other workers were making more than ten dollars per hour; correct?

A:  Right.  The amount was ten eighty-seven.  The check prior to Exhibit 19, I was not making ten dollars and eighty-seven cents.  It was either ten dollars and seven cents or ten dollars and eighty-seven cents. I can't read this writing.

Q:  And you're looking at Exhibit 19?

A:  Yes.

Q:  Which has someone's handwriting other than your own?

A:  Exactly.

Q:  And you're just reading the number that's in that handwriting?

A:  Exactly.

Q:  The last person on the list that you refer to is Ronnie Austin.

. . .

Q:  And do you believe Mr. Austin was treated better than you?

A:  I just know all of the workers there in the company are different.  They
    weren't – I don't know to what degree they were treated as I was because I'm
    only talking about myself in this case.

Gross Dep. pp. 159-163.

        The Court agrees with the Debtor that the Claimant has not provided sufficient facts to

establish that the Debtor engaged in any adverse employment action.  The Claimant at best

provides that Ms. Crawel was allegedly treated better than she was treated because she saw her

paycheck, her rate of pay, and from this concluded that there was an across the board raise that

was not allegedly given to the Claimant.  The Court, however, finds that the Claimant's

allegation based on Ms. Crawel's paycheck is conclusory and speculative as to the basis for

alleged disparate treatment.  The Claimant has failed to present facts to demonstrate that other

employees similarly situated to the Claimant were given a higher pay.  For instance, the

Claimant has failed to show that Ms. Crawel was hired at the same time as her, had similar job

description, similar education and work experience, etc.  Based upon the undisputed facts, the

Claimant has failed to establish that a genuine issue of material fact remains for trial regarding

this issue. Therefore, the Debtor is entitled to summary judgment as a matter of law regarding

her claim that she was paid at un-equal levels to her co-workers.

### 4. Causal Connection between the Statutorily Protected Activity and the Adverse Employment Action

The next issue is whether the Claimant established a causal connection between her

participation in a protected activity and any of the alleged adverse employment actions. A

plaintiff can establish a causal connection either "(1) indirectly, by showing that the protected

activity was followed closely by discriminatory treatment, or through other circumstantial

evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2)

directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."

*Gordon*, 232 F.3d at 117. "A close temporal relationship between a plaintiff's participation in a

protected activity and an employer's adverse action is alone sufficient to establish causation,

without direct evidence in support." *Parrish*, 258 F. Supp. 2d at 268 (citing *Cifra v. Gen. Elec.

Co.*, 252 F.3d 205, 217 (2d Cir. 2001)). However, the Supreme Court has held "that if temporal

proximity alone is the basis for determining a causal connection, it must be very close." *Id.*

(citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). If there is direct

evidence of a causal relationship, the standard for temporal proximity is relaxed. *Id.*

"The lack of knowledge on the part of particular individual agents is admissible as some

evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of

proximity or disparate treatment." *Id.* However, retaliation can be found even if the agent

denies direct knowledge of a plaintiff's protected activities so long as the circumstances evidence

knowledge of the protected activities or that an agent is acting explicitly or implicitly upon the

orders of a superior who has the requisite knowledge. *See Id.*

### a. Shortened Pay

The Claimant alleges that she suffered the adverse employment action of allegedly being shortened pay by three hours for the pay period ending October 28, 2000. The Claimant filed her Second EEOC Charge on April 18, 2000. Seven months after filing the Second EEOC Charge, the Claimant allegedly suffered the above adverse employment action. The length of time between the Second EEOC Charge and the adverse action are not in close temporal proximity to infer a causal relationship. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990) (finding a period of three months insufficient to establish a causal connection); *Cobian v. New York City*, No. 99 Civ. 10533, 2000 WL 1782744, at *18 (S.D.N.Y. Dec. 6, 2000), *aff'd,* 2002 WL 4594 (2d Cir. 2001) (finding that a lapse of four months is insufficient to establish a causal connection); *Conner v. Schnuck*, 121 F.3d 1390 (10th Cir. 1997) (holding that a lapse of four months is insufficient to establish an inference of causation) (cited favorably by the Second Circuit in *Morris*, 196 F.3d at 113). Furthermore, the Claimant has not provided circumstantial evidence that other employees who have filed EEOC complaints against the Debtor received similar disparate treatment. Based upon the undisputed facts, the Claimant has failed to establish that a genuine issue of material fact remains for trial regarding a causal connection with respect to this allegation. Therefore, the Debtor is entitled to summary judgment as a matter of law regarding her claim that her pay was shortened.

**b. Commissions**

The Claimant allegedly suffered the adverse action of not being provided earned commissions, specifically, she alleges that she earned $2,500 in earned commissions and only received $2,000. The Claimant, however, failed to provide the Court with facts as to the date of when such adverse employment action occurred to demonstrate that this adverse action is causally connected to her protected activity of filing an EEOC charge either through direct or

indirect evidence. The Claimant also has failed to identify any corporate agent(s) who took this alleged adverse action against her or his/her/their requisite knowledge of her protected activity. Based upon the undisputed facts, the Claimant has failed to establish that a genuine issue of material fact remains for trial regarding a causal connection with respect to this allegation. Therefore, the Debtor is entitled to summary judgment as a matter of law regarding the Claimant's claim that she was not fully compensated for her commissions. Accordingly, based upon the undisputed facts, the Claimant has failed to establish a prima facie case of retaliation. Therefore, the Debtor is entitled to summary judgment as a matter of law regarding her claim of retaliation under Title VII.

## G. Settlement Agreement

On April 18, 2000, the Claimant filed her Second EEOC Charge. The parties executed a Settlement Agreement on June 14, 2000 resolving this charge. However, the Claimant argues that she did not knowingly and voluntarily enter into the agreement. The Claimant contends that she believed she was settling her Third EEOC Charge, which was filed on November 6, 2000. The Debtor argues that because of the Claimant's argument that she did not knowingly and voluntarily enter into the Settlement Agreement, it would be ineffective, therefore neither party has any obligations under the purported agreement. The Court does not agree with either the Claimant's or the Debtor's arguments.

The Settlement Agreement clearly refers to settling the Second EEOC Charge. The Second EEOC Charge number is listed several times throughout the agreement. In addition, the Claimant in her Third EEOC Charge stated that "On December 23, 1999, I filled (sic) a charge (110A00954) of discrimination. On April 18, 2000, I filed another charge (110A02421) of retaliation . . . . On June 7, 2000, I signed a settle (sic) agreement regarding my second charge.

The employer has failed or refused to honor the Settlement Agreement." However, the Claimant

testified on deposition that she thought she had signed a Settlement Agreement with respect to

her Third EEOC Charge, which was filed on November 6, 2000. The Court is not persuaded by

the Claimant's testimony coupled with the fact that the Claimant alleged in her Amended

Complaint paragraph 13 that "Defendant MCI, failed and refused to settle either of [Claimant]'s

claims of discrimination as filed on November 6, 2000, or November 22, 2000." This allegation

is in direct contradiction to the Claimant's testimony given on deposition.

      The Claimant does not dispute that she signed the Settlement Agreement, which indicated

it was settling the Second EEOC Charge. Furthermore, when the Claimant filed her Third EEOC

Charge she stated that the Settlement Agreement settled her Second EEOC Charge. Moreover,

the Court questions how the Settlement Agreement, which was executed on June 7, 2000, can

possibly settle the Claimant's Third EEOC Charge, which was filed five months later, on

November 6, 2000. Thus, the Court finds that the Settlement Agreement did not resolve the

Second EEOC Charge. Therefore, the Court will not grant summary judgment to the Debtor

with respect to this issue. Accordingly, the next issue is whether the Debtor failed or refused to

honor the Settlement Agreement. The Debtor did not address this issue in its Motion for

Summary Judgment; thus, the Court will have a pre-hearing conference on July 12, 2005.

      The Claimant further alleges that the Debtor refused and failed to settle her Third and

Fourth EEOC Charges. The Debtor correctly argues that such a claim is without merit and that

there is no law that requires an employer to settle a charge of discrimination. In *Gupta v. Florida

Bd. of Regents*, the 11th Circuit held that "an employer is not legally required to attempt to settle

an employee's Title VII claim at all . . . . The anti-retaliation provisions of the various job

discrimination statues are aimed at preventing the employer from punishing the employee by

making job conditions worse.  The failure to settle a claim for whatever reason does not make job conditions worse as a result of the claim having been made." *Id.* 212 F.3d 571, 589 (11th Cir. 2001).  Based upon the foregoing, the Claimant has failed to establish that a genuine issue of material fact remains for trial regarding this issue.  Therefore, the Debtor is entitled to summary judgment as a matter of law regarding the Claimant's claim that the Debtor refused or failed to settle her Third and Fourth EEOC Charges.

## H.  Hostile Work Environment Claim

The Claimant essentially argues that the Debtor created a hostile work environment through the following actions:

1. "Since both charges have been closed, the employer has created a hostile working environment by not permitting [me] to work a regular flex schedule, not providing me with a regular place and/or seat to work, not paying me for the total number of hours worked, not paying me all the commissions I earned and by threatening to take away my benefits."

2. "On or about October 18, 2000, when I questioned Loudelle Price, Supervisor, about my missing pay checks and the amounts paid to me, she shouted at me in the presence of my coworker and told me that I could "go to [sic] back to EEOC or call an attorney . . . because our paperwork is right."

3. "They have created a hostile work environment by makeing [sic] me subject to laughter.  As well as not allowing me the enjoyment as the other flex workers."

4. "Since I filed these charges, I have continuously been harassed, intimidated, subjected to different terms and conditions of employment than others similarly situated, verbally reprimanded for being insubordinate, denied pay for hours worked and my 11/00 paycheck withheld."

5. "Ridiculing, embarrassing, and humiliating [the Claimant] in front of other employees."

6. The Debtor "[a]llowed, sanctioned aided and abetted the employment harassment and discrimination of the [Claimant] by other employees without taking any corrective measure to stop the same from occurring after the [Claimant] reported the same."

7. The Debtor "[s]anctioned and allowed such discrimination to continue and failed and refused to take any corrective act or action to terminate such activities by the

pertinent employees, for the purposes to make the [Claimant] quit [the Claimant]'s employment with [the Debtor]."

8.  The Debtor "[a]llowed and sanctioned and sought other employees to approve and sanction such conduct without taking any corrective acts or actions to terminate such unlawful conduct."

9.  "Subjecting [the Claimant] to ridicule and harassment by other employees."

10. "Constructively interfering with [the Claimant]'s employment by specific acts and actions designed to harass and cause [the Claimant] to be humiliated and held to ridicule."

11. "Allowed and sanctioned such discrimination to continue against [the Claimant] by [the Debtor], knowing that the constructive job interference committed by [the Debtor's] management, would be utilized to force [the Claimant] to quit or to be terminated pursuant to pre-textual and false charges being raised and lodged against the [Claimant]."

12. "Provided the [Claimant] with a hostile work environment by ensuring that the [Claimant's] work area and equipment did not function adequate and provided the [Claimant] with such equipment so as to ensure that the [Claimant] could not properly perform her job functions upon an equal basis with other employees which were provided with properly operating equipment and other benefits which was denied to the [Claimant]."

13. "Promoted, fostered and acquiesced to a hostile work environment to which [the Claimant] was and had to deal with on a daily basis during the term and course of her employment after the [Claimant] filed her EEOC Complaint and refused to take any corrective acts or actions to stop the same from continuing."

The Debtor argues that some of these allegations are ordinary tribulations of the workplace or are legal conclusions that are not factual allegations of adverse employment actions. The Court notes that although the Debtor has focused its arguments on the basis of a retaliatory claim, the Court acknowledges that Title VII recognizes a separate and distinct cause of action for a hostile work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). Based upon the different analytical approaches to a claim of retaliation and a hostile work environment, the Court will consider these two claims separately.

36

In order to establish a claim of hostile work environment, a plaintiff must establish that
"the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is
sufficiently severe or pervasive to alter the conditions of the victim's employment and create an
abusive working environment." *Id.* at 21 (internal quotation marks and citation omitted). The
factors to consider are the frequency and severity of the conduct, whether it is physically
threatening or humiliating, or a mere offensive utterance; and to what degree it reasonably
interferes with the plaintiff's job performance. *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir.
2003) (quoting *Harris*, at 21). "In determining whether a hostile environment exists, we must
look at the 'totality of the circumstances.'" *Id.* (quoting *Richardson*, 180 F.3d at 437-38). "As a
general rule, incidents must be more than 'episodic; they must be sufficiently continuous and
concerted in order to be deemed pervasive.'" *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 373
(2d Cir. 2002). However, although the law requires the harassment to be severe or pervasive
before it is actionable, that does not mean that employers are free from liability in all but the
most egregious cases. *Id.* (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70
(2d Cir. 2000)).

### a. Allegation Numbers 1-2

The allegations contained in the above numbers do not raise any genuine issues of
material facts because they do not set forth sufficient facts to support the Claimant's allegations
on whether the *Harris* standard is satisfied. The Claimant has failed to present facts to
demonstrate that the alleged acts by the Debtor were "sufficiently severe or pervasive to alter the
conditions of the [Claimant's] employment and create an abusive working environment."
Furthermore, the Claimant does not state the frequency of such acts or the degree to which they
affected her employment. Based upon the undisputed facts, the Claimant has failed to establish

that a genuine issue of material fact remains for trial regarding these allegations. Therefore, the Debtor is entitled to summary judgment as a matter of law regarding her allegations contained in numbers 1-2.

### b. Allegation Numbers 3-13

The allegations contained in the above numbers do not establish a claim for hostile work environment. These allegations are conclusory and speculative in nature. The Claimant has not presented any facts in support of her allegations. Based upon the undisputed facts, the Claimant has failed to establish that a genuine issue of material fact remains for trial regarding these allegations. Therefore, the Debtor is entitled to summary judgment as a matter of law regarding the allegations in numbers 3-13.

### IV. Conclusion

Based upon the foregoing, the Debtor's Motion for Partial Summary Judgment is DENIED with respect to the claim that the Debtor refused to honor the Settlement Agreement; and the Court will have a pre-hearing conference on this issue on July 12, 2005.

The Debtor's Motion for Summary Judgment is GRANTED in part with respect to (1) disallowing and expunging Claim Number 35125, (2) disallowing the Claimant's Title VII discrimination claim based on sex and disability, (3) disallowing the Claimant's Title VII discrimination claim based on race, (4) disallowing the Claimant's Title VII discrimination claim based on retaliation with respect to the allegations in numbers 1-17, (5) disallowing the Claimant's claim that the Debtor's alleged refused to settle her Third and Fourth EEOC Charges, and (6) disallowing the Claimant's Title VII discrimination claim based on a hostile work environment with respect to the allegations in numbers 1-13.

The Debtor should settle an order consistent with this opinion.


Dated:  New York, NY
        June 3, 2005

                                     *s/ Arthur J. Gonzalez*
                                     UNITED STATES BANKRUPTCY JUDGE