UNITED STATES BANKRUPTCY COURT      Not For Publication
SOUTHERN DISTRICT OF NEW YORK
_____

In re     Chapter 11 Case No.
    02-13533 (AJG)

WORLDCOM, INC., et al.,

    (Jointly Administered)
        Reorganized Debtors.     (Confirmed)
_____

OPINION GRANTING IN PART AND DENYING IN PART REORGANIZED
DEBTORS' OBJECTION TO SPECTRUM NETWORK SERVICES, INC.'S PROOF
OF CLAIM NO. 38360

APPEARANCES:

STINSON MORRISON HECKER LLP
Special Counsel for Reorganized Debtors
1201 Walnut Street, Suite 2700
Kansas City, MO 64106

        Mark A. Shaiken, Esq.
        Blake Pryor, Esq.
        Andrew Muller, Esq.
            Of Counsel

DLA PIPER RUDNICK GRAY CARY LLP
Attorneys for Reorganized Debtors
6225 Smith Avenue
Baltimore, MD 21209

        John Wellschlanger, Esq.
            Of Counsel

KEATING MUETHING & KLEKAMP PLL
Attorney for Spectrum Network Services, Inc.
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202

        Gregory M. Utter, Esq.
            Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

Spectrum Network Services, Inc., ("Spectrum") filed a timely proof of claim. The Reorganized Debtors ("the Debtors") objected. The Court must now decide whether to sustain the objection and disallow the proof of claim.

## JURISDICTION

The Court has subject matter jurisdiction over this proceeding pursuant to sections 1334 and 157(b) of title 28 of the United States Code, under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), and under paragraph 32 of this Court's Order Confirming Debtors' Modified Second Amended Joint Plan of Reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (Oct. 31, 2003). The Court has jurisdiction over "core proceedings" including "allowance and disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(B) (2000); *see, e.g., S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 705 (2nd Cir. 1994). Venue is properly before this Court pursuant to sections 1408 and 1409 of title 28 of the United States Code.

## FACTS

*Background Information about the Debtors*

On July 21, 2002 and November 8, 2002, WorldCom, Inc., ("WorldCom") and certain of its direct and indirect subsidiaries commenced cases under the Bankruptcy Code. By orders dated July 22, 2002 and November 12, 2002, the Debtors' chapter 11 cases were consolidated for procedural purposes. During the chapter 11 cases, the

2

Debtors operated their businesses and managed their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

By order dated October 29, 2002, this Court established January 23, 2003 as the deadline for the filing of a proof of claim against the Debtors. By order dated October 31, 2003, the Court confirmed the Debtors' Modified Second Amended Joint Plan of Reorganization, which became effective on April 20, 2004. Upon this effective date, the Debtors became MCI, Inc.

*Spectrum and the Agreement with Intermedia*

Spectrum is a licensed broker of telecommunications services that specializes in advising individuals and corporations in the creation of telecommunications networks. Intermedia Communications, Inc., ("Intermedia") was one of WorldCom's aforementioned subsidiaries. It offered various services including telephone system equipment, integrated voice and data services, Internet access and web hosting.

In June 1999, Intermedia and Spectrum signed a contract ("the Agreement") making Spectrum a sales agent for Intermedia. The parties agreed that Florida law would govern any disputes. Agreement ¶ 10(A).

Spectrum referred Simon Property Group ("Simon"), one of the largest shopping-mall developers, owners and operators, to Intermedia. Intermedia and Simon entered into an agreement to build a network of telecommunications services ("the Network"). Spectrum asserts that Simon and other mall owners and developers later started working as one entity, Merchant Wired, LLC, ("Merchant Wired") with Intermedia. Spectrum further states that, during 2000, Merchant Wired began paying all of Intermedia's bills sent to Simon and associated with the Network. The Debtors deny any contract was

3

signed with Merchant Wired until 2001. Intermedia's Answers, Affirmative Defenses and Countercl. in the Florida Litigation ("the Answer"), ¶ 16.

The Agreement provides that Intermedia "shall compensate Agent on a monthly commission basis . . . for each Service Agreement[1] that it actively and materially contributes to the execution of . . . ." and that "[t]o be eligible for commissions based on referral, Agent must be personally and materially responsible for the procurement of the Services by the Prospect." Agreement ¶¶ 4(A), 4(I). The Agreement sets a formula to compute the commission. Agreement, Ex. B. Commission payments are restricted to "Service Agreements with Customers sold by Agent for as long as that Service Agreement remains valid . . . ." Agreement ¶ 4(D). The Agreement precludes ". . . commissions on all business between Intermedia and any customer." Agreement ¶ 4(E). Intermedia started billing Simon in July 1999 and paid commissions to Spectrum.

In March 2001, Intermedia terminated the Agreement without cause, with the required thirty-day notice. Agreement ¶ 2(A). Ever since, Intermedia and Spectrum have not solved their disagreement about commissions allegedly due to Spectrum. The Agreement provides that "if either party terminates this Agreement without cause, Agent's right to receive commissions will continue for all Service Agreements executed prior to the date of such termination for the term of those Agreements . . . ." Agreement ¶ 2(B). In case of a dispute regarding commissions, the Agreement provides that "Agent's eligibility for commissions shall be determined by Intermedia and all determinations shall be final. All disputes regarding commissions shall be presented by Agent to Intermedia, and shall be handled by amicable, good-faith negotiations." Agreement ¶ 4(A). Spectrum can challenge Intermedia's determinations only by claiming "Intermedia failed

---

[1] A "Service Agreement" is an agreement between Intermedia and a customer. Agreement ¶ 1(B)(4).

4

to act in good faith in making a determination regarding the disposition of a commission dispute." Agreement ¶ 10(A).

In June 2001, Spectrum filed a complaint ("the Complaint") in the Tampa Division of the United States District Court for the Middle District of Florida ("the Florida Litigation"). The Complaint alleged breach of contract for failure to pay commissions, breach of contract for improper offset to commission payments, breach of contract for failure to pay future commissions and unjust enrichment. Also, it sought declaratory judgment regarding Spectrum's commission rights. Intermedia filed counterclaims for breach of contract and unjust enrichment, alleging that Spectrum breached the Agreement by accepting commissions to which it had no entitlement.

WorldCom's filing for bankruptcy in 2002 stayed the Florida Litigation. Spectrum filed a timely proof of claim (No. 10810) on January 14, 2003, an amended proof of claim (No. 36157) on September 4, 2003 and, finally, a second amended proof of claim (No. 38360) on June 23, 2004. The Debtors filed an objection to Spectrum's Proof of Claim on October 13, 2004, to which Spectrum responded on November 11, 2004. The Debtors filed a supplemental objection on January 28, 2005, to which Spectrum responded on February 25, 2005. Unless otherwise noted, the Court will refer to Spectrum's proof of claim and responses as "the Proof of Claim" and to the Debtors' initial and supplemental objections as "the Objection." A hearing was held regarding the matter on May 10, 2005.

## DISCUSSION

*Parties' Contentions*

5

The Debtors deny any liability to Spectrum. They refer to the exculpatory clause in the Agreement with Intermedia that bars Spectrum from bringing a claim not based on lack of good faith and argue that Spectrum did not properly state such a claim. Moreover, they assert that Intermedia acted in good faith in deciding the commission dispute. The Debtors also object to the amount of Spectrum's claim. They concede that, "at the very early stages of the relationship between Intermedia and Simon, Spectrum was involved in referring certain Simon business to Intermedia." Answer, ¶ 14. They deny that Spectrum was actively and materially involved in discussions between Simon and Intermedia when they were discussing non-Simon properties. Answer, ¶ 14. They acknowledge "Spectrum has had some involvement in signing up certain retailers, and has been paid commissions with respect to those retailers." Answer, ¶ 17. Finally, they argue that Spectrum cannot maintain anticipatory breach and unjust enrichment claims under applicable law.

On the other hand, Spectrum contends that Intermedia still owes commissions to Spectrum for existing customer agreements to the execution of which Spectrum actively and materially contributed. Spectrum claims that providing a contact name that resulted in a sale was sufficient to contribute actively and materially to the execution of a customer agreement and therefore enough to justify an ongoing commission. Additionally, Spectrum argues that it contributed actively and materially to Network agreements, which included Simon, non-Simon properties and retailer business. Spectrum asserts that, before and after the execution of the agreement with Simon, Intermedia understood the Network would include non-Simon properties. Spectrum concludes that Intermedia lacked good faith when it refused commission payments to

6

Spectrum. Finally, Spectrum states that applicable law permits its anticipatory breach and unjust enrichment claims.

*Analysis*

A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or right to any equitable remedy." 11 U.S.C. § 101(5) (2000). The term "claim" is "sufficiently broad to encompass any possible right to payment." *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 302 (2d Cir. 1997). As noted by the Supreme Court, Congress intended the term "claim" to have the broadest possible scope so that "all legal obligations of debtor . . . will be able to be dealt with in a bankruptcy case." *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 498 (2d Cir. 1995) ("Chateaugay").

"[A] valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition." *Id.* at 497. As stated in Chateaugay, "[a] claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts." *Id.* For purposes of bankruptcy, a claim arises when "the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation . . . under the relevant non-bankruptcy law." *Goldman, Sachs & Co. v. Esso Virgin Is., Inc. (In re Duplan Corp.)*, 212 F.3d 144, 151 (2d Cir. 2000) (*citing* Chateaugay at 497). In the instant case, Spectrum pursued a contract claim in the Florida Litigation. The United States District Court for the Middle District of Florida has not made a decision yet

7

because the proceedings have been stayed by the bankruptcy case in this Court, which must now decide whether the Debtors' Objection warrants disallowing Spectrum's claim.

The Court must base its decision on applicable federal and state law. *New York City Employees' Ret. Sys. v. Villarie (In re Villarie)*, 648 F.2d 810 (2d Cir. 1981); *In re Johnson*, 960 F.2d 396, 404 (4th Cir. 1992). As indicated earlier, the parties agreed that Florida law would apply to contractual disputes under the Agreement. Agreement ¶ 10(A). Such a choice of law clause is enforceable in New York, where this Court is sitting. *See, e.g., Cram v. Pepsico, Inc.*, 31 Fed. Appx. 39, 43 (2d Cir. 2002); *In re Enron Corp.*, 300 B.R. 201, 208 (Bankr. S.D.N.Y. 2003) (applying Texas law pursuant to a choice of law contract clause). Thus, the Court must decide whether to disallow Spectrum's claim against the Debtors under the Bankruptcy Code and Florida law.

A proof of claim is deemed *prima facie* valid. Fed. R. Bankr. P. 3001(f). The burden of proof is then allocated the following way:

> The burden of proof for claims brought in the bankruptcy court . . . rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "prima facie" valid . . . . In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case . . . . In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence . . . . The burden of persuasion is always on the claimant.

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1992).

At this stage of the proceedings, a court makes a decision after examining only the pleadings.  Therefore, the Court is not making a determination as to the validity of Spectrum's claim, nor is the Court making any findings of facts as to Spectrum's assertions regarding the parties' conduct.  The burden of persuasion as to the validity of Spectrum's claim remains on Spectrum.  The Court is only deciding whether the Debtors' Objection, based on Spectrum's alleged failure to state a claim, warrants disallowing the claim.

The Debtors have objected to the Proof of Claim on the ground that, *inter alia,* the Agreement prohibits Spectrum from filing it.  A valid pre-petition agreement barring certain creditor claims prevents the Court from allowing such claims.  11 U.S.C. § 502(b)(1) (2000); 4 *Collier on Bankruptcy* ¶ 502.03 [2][b][i] (Alan N. Resnick & Henry J. Sommer et al. eds., 15th ed. rev. 2005).  Under the Agreement, Spectrum can only assert a claim if "Intermedia failed to act in good faith in making a determination regarding the disposition of a commission dispute." Agreement ¶ 10(A).

Therefore, the Court must first examine whether the clause limiting to lack of good faith claims Spectrum's right to challenge Intermedia's determinations regarding commission disputes is valid under Florida law.  If the clause is valid, the Court must then determine whether Spectrum fails to state a claim of lack of good faith under Florida law.  Finally, the Court must also examine Spectrum's anticipatory breach and unjust enrichment claims under Florida law.

**A. Exculpatory Clause**

A party to a contract can waive a right. *State Dep't of Health and Rehabilitative Services. v. E.D.S. Fed. Corp.*, 631 So. 2d 353, 355 (Fla. Dist. Ct. App. 1994) ("Typically, a party may waive any right to which it is legally entitled under the constitution, a statute, or a contract."); *Royal Palm Sav. Ass'n v. Pine Trace Corp.* 716 F. Supp. 1416, 1419 (M.D. Fla. 1989) ("A person may waive any legally entitled rights, including rights guaranteed by the Constitution, conferred by statute or secured by contract.").

Consequently, a contract provision can limit availability of remedies, including access to court. *Pizza U.S.A. of Pompano, Inc. v. R/S Assocs. of Florida*, 665 So. 2d 237, 239-240 (Fla. Dist. Ct. App. 1995) ("There is no question that parties to a contract may agree to limit their respective remedies and that those remedies need not be the same."); *Coastal Computer Corp. v. Team Mgmt. Sys.*, 624 So. 2d 352, 353 (Fla. Dist. Ct. App. 1993) ("Parties to a contract may stipulate to what the consequences of a breach of the agreement will be. If the language discloses that the parties intended to limit the remedy to the one stated, the stipulation will be enforced."); *Ware Else, Inc. v. Ofstein*, 856 So. 2d 1079, 1081 (Fla. Dist. Ct. App. 2003) ("Under Florida law, the parties to a contract may as a general rule stipulate to the proper forum, venue and law that will govern the interpretation and enforcement of their mutual contract."). Moreover, "sophisticated parties may contractually limit future remedies." 17A Am. Jur. 2d *Contracts* § 280 (2004) (footnote omitted). Intermedia and Spectrum are both sophisticated actors in the

telecommunications field, which may agree to limit remedies available under the Agreement.

The clause at issue considerably limits Spectrum's right to a remedy in court, raising the question whether the clause is against public policy and therefore void. Courts are reluctant to declare a contract provision void without any clear showing of illegality. "A court is extremely cautious when called upon to declare a contract or a provision of a contract void on the ground of public policy." 11 Fla. Jur. *Contracts* § 121 (2004) (footnotes omitted). Freedom of contract implies that "parties to a contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to third parties." 17A Am. Jur. 2d *Contracts* § 277 (2004) (footnotes omitted).

A waiver of the right to file a claim for bad faith breach of contract would violate public policy because "liability for knowing or bad faith breaches of contract can never be limited." 17A Am. Jur. 2d *Contracts* § 286 (*citing City of Dillingham v. CH2M Hill Northwest, Inc.*, 873 P.2d 1271, 1275 (Alaska 1994)). The instant clause, however, preserves Spectrum's right to file a claim alleging lack of good faith,[2] and is therefore valid. *See, e.g., Fed. Deposit Ins. Corp. v. Carre*, 436 So. 2d 227 (Fla. Dist. Ct. App. 1983) (Court enforced exculpatory clause limiting bank's liability to acts of gross negligence, fraud, or bad faith).

Therefore, the Court finds that the clause of the Agreement that limits to lack of good faith claims Spectrum's right to challenge Intermedia's determinations regarding commission disputes is valid under Florida law. Now the Court must decide whether

---

[2] Lack of good faith often implies bad faith and bad faith usually means lack of good faith. The Florida courts do not distinguish the two concepts (lack of good faith v. bad faith). *Grover v. Jacksonville Golfair, Inc.,* 30 Fla. L. Weekly D 2422 (Fla. Dist. Ct. App. 2005); *Espirito Santo Bank of Florida v. Agronomics Fin. Corp.*, 591 So. 2d 1078, 1079 (Fla. Dist. Ct. App. 1991). For purposes of the instant matter, the Court will consider the two concepts coterminous.

11

Spectrum states a lack of good faith claim first under the Federal Rules of Civil Procedure and then under Florida law.

**B. Lack of Good Faith Claim**

The Debtors argue that Spectrum fails to state a lack of good faith claim under Florida law. They also note that Spectrum did not claim lack of good faith in the Florida Litigation and waited until the pleading with this Court dated November 11, 2004 to do so. *See* Spectrum Network Services, Inc.'s Resp. to Reorganized Debtors' Objection to Proof of Claim Filed by Spectrum Network Services, Inc., ¶ 32-39. Spectrum counters that it has properly pleaded lack of good faith under Federal Rule of Civil Procedure 8(a)(2) and as an implied part of its breach of contract claim under Florida law.

1. Federal Rules of Civil Procedure

Federal Rule 8(a)(2), incorporated in Federal Rule of Bankruptcy Procedure 7008, requires that a plaintiff provide "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must essentially find out whether the opponent received "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2nd Cir. 1997) ("The test of a complaint's sufficiency is whether it is detailed and informative enough to enable defendant to respond . . . ."). The pleading need not identify a correct legal basis, as long as it alleges "facts sufficient to support a meritorious legal claim." *Northrop*, 134 F.3d at 46; *Sandak v. Dobrayel (In Re Dobrayel)*, 287 B.R. 3, 19 n.14 (Bankr. S.D.N.Y. 2002).

In the instant case, Spectrum has alleged sufficient facts to formulate a lack of good faith claim under Federal Rule 8(a)(2). Spectrum's pleadings filed in the Florida Litigation and before this Court contain enough facts for Intermedia to receive fair notice and respond. See, e.g., Compl. ¶ 1-27. Intermedia had apparently no difficulty filing responsive pleadings in the Florida Litigation and in this Court.

Moreover, Intermedia's duty of good faith stems from express contract provisions. Agreement ¶¶ 4(A), 10(A). Thus, a breach of contract claim impliedly includes a lack of good faith claim. Spectrum has been consistently alleging breach of contract in the Florida Litigation and before this Court under the Federal Rules, and therefore has been properly claiming lack of good faith before this Court under the Federal Rules.[3]

2. Florida Law

The Court must assess whether Spectrum has alleged enough facts to state a lack of good faith claim under the applicable state law and under the Agreement.

In Florida law, good faith "describe[s] that state of mind denoting honesty of purpose . . . and, generally speaking, means being faithful to one's duty or obligation." *Florida Bar v. Jackson*, 494 So. 2d 206, 209 (Fla. 1986) (*citing* Black's Law Dictionary 623-24 (5th ed. 1979)). Justice Souter, as a justice of the New Hampshire Supreme Court, expounded the requirements of good faith for a party vested with discretion by a contract. The Florida courts have adopted his following explanation: "[W]here the terms of the contract afford a party substantial discretion to promote that party's self-interest,

---

[3] In the Florida litigation, the District Court's refusal to let Spectrum amend its pleadings with an allegation of fraud, a tort, does not alter this result because Spectrum has consistently pleaded breach of contract. *See* Order, *Spectrum Networks, Inc. v. Intermedia Communications., Inc.*, Case No. 8:01-CV-1178-T-17EAJ (M.D. Fla. July 22, 2002); Compl. Counts I, II, and III.

13

the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097-1098 (Fla. Dist. Ct. App. 1999) (citations omitted).  Nonetheless, the limit placed on a party's discretion "is not great" under Florida law.  *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001); *Burger King Corp. v. Ashland Equities, Inc.*, 217 F. Supp. 2d 1266, 1278 (S.D. Fla. 2002) (*quoting Ford*).  No violation of the duty of good faith occurs "unless no reasonable party . . . would have made the same discretionary decision." *Sepe v. City of Safety Harbor*, 761 So. 2d 1182, 1185 (Fla. Dist. Ct. App. 2000); *Ford*, 260 F.3d at 1291 (*quoting Sepe*); *Ashland Equities, Inc.*, 217 F. Supp. 2d at 1278 (S.D. Fla. 2002) (*quoting Sepe*).  The Restatement of Contracts mentions "abuse of a power to specify terms" as an example of judicially sanctioned violations of the duty of good faith.  Restatement (Second) of Contracts, § 205, cmt. d (1981).

As described earlier, the Agreement entitles Spectrum to commissions for Intermedia customer agreements that Spectrum "actively and materially" contributed. Agreement ¶ 4(A).  Additionally, "[t]o be eligible for commissions based on referral, Agent must be personally and materially responsible for the procurement of the Services by the Prospect."  Agreement ¶ 4(I).  Commission payments are due for "Service Agreements with Customers sold by Agent for as long as that Service Agreement remains valid . . . ."  Agreement ¶ 4(D).  In the event of termination without cause, "Agent's right to receive commissions will continue for all Service Agreements executed prior to the date of such termination for the term of those Agreements . . . ."  Agreement ¶ 2(B).

14

Intermedia has discretion to decide commission disputes, as long as it decides them in good faith. Agreement ¶¶ 4(A), 10(A).

The Agreement does not define the phrases "actively and materially contributes" and "personally and materially responsible." In case of ambiguity, a Florida court will take into account the parties' conduct as they execute their contract. *Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 407 (Fla. 1974) (*quoting Shouse v. Doane,* 39 Fla. 95, 104 (1897)) ("Where the terms of a written agreement are in any respect doubtful or uncertain, or if the contract contains no provisions on a given point, or if it fails to define with certainty the duties of the parties with respect to a particular matter or in a given emergency, and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the court, upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract."); 11 Fla. Jur. *Contracts* § 148 (2004) ("In construing a contract, what a party did or omitted to do *after* the contract was made may be properly considered. The actions of the parties will be considered as a means of determining the interpretation that they themselves have placed on the contract.") (footnotes omitted) (emphasis added).

A court will give weight to the parties' conduct during the contract execution proportionally to the duration of this conduct without any dispute. 17A C.J.S. *Contracts* § 340 (2005) ("The general rule that a practical interpretation by the parties is entitled to great, if not controlling, weight is particularly applicable where such an interpretation is agreed on before any controversy has arisen . . . . A practical construction extending

over, or acted on, or acquiesced in for a considerable or long period of time is very persuasive, has great weight or influence, and usually will be followed by the court.") (footnotes omitted).

Spectrum offers evidence of the parties' conduct from the initial implementation of the Agreement in June 1999 to the termination in March 2001. Spectrum offers depositions, conducted in the Florida Litigation, of Intermedia's employees with personal knowledge of the relationship between Spectrum and Intermedia to establish that Spectrum only had to provide customer names and referral information to earn commissions on later services provided to referred customers. Spectrum Network Services, Inc.'s Resp. to Reorganized Debtors' Objection to Proof of Claim Filed by Spectrum Network Services, Inc., ¶ 18-31. Spectrum also offers the depositions to prove that Intermedia understood that Spectrum could expect commissions from Simon mall business, non-Simon mall business and retailer business.

The depositions support the argument that the parties did not determine the meaning of the words "actively and materially contribute" until implementation of the contract. They further support the argument that Intermedia consistently paid commissions if Spectrum provided a contact name and contact information and a contract was consummated. They also buttress the contention that Spectrum would be entitled to commissions for all service orders (both initial and subsequent) associated with that customer.

According to the depositions, Spectrum was entitled to commissions on all services associated with Simon malls, non-Simon malls, retailers and the Network. For Simon service orders, the deponent named Suzanne Schwallie, an Intermedia account

manager, designated Spectrum's entitlement to all commissions for all Network telecommunications until her supervisor instructed her to stop just prior to Intermedia terminating its contract with Spectrum.  Furthermore, Spectrum points to the pricing proposal provided by Intermedia to Simon that specifically included pricing information for installation and monthly recurrent costs for Simon and non-Simon shopping malls as part of the Network.

Finally the depositions support the assertion that Intermedia became more dissatisfied with the Agreement as commission payments to Spectrum became higher and that Intermedia was considering giving a discount to Simon.

Spectrum alleges that, since termination of the contract, Intermedia acted inconsistently with the pre-termination course of performance evidenced by the depositions.  Spectrum asserts that Intermedia refused to pay certain commissions to Spectrum without giving any precise basis for this refusal, merely arguing that Spectrum had been paid excessive commissions and was not entitled to all Simon, non-Simon and retailer business.  Spectrum also alleges that Intermedia did not comprehensively answer Spectrum's questions regarding how Intermedia intended to calculate commissions that remained due and that Intermedia refused Spectrum's offer of a meeting to resolve the dispute.  Absent a more definite basis for its conduct, Spectrum says, Intermedia could not reasonably stop these commission payments to Spectrum upon termination without violating the language of the Agreement entitling Spectrum to ongoing commissions on existing customer agreements after termination without cause and without thwarting Spectrum's reasonable expectations under the Agreement.

17

Spectrum presents enough facts to state a lack of good faith claim. Good faith "means being faithful to one's duty or obligation," *Florida Bar*, 494 So. 2d at 209. If the Debtors refused to pay what they are contractually bound to pay under the Agreement provision entitling Spectrum to ongoing commissions on existing customer agreements after termination without cause, the Debtors would not have acted in good faith and breached the Agreement.

Moreover, if not contradicted, the evidence Spectrum offers shows that the parties' course of performance could create reasonable expectations that Spectrum would only have to provide customer names and referral information to earn commissions on later services provided to referred customers and that Intermedia would pay commissions to Spectrum from Simon mall business, non-Simon mall business and retailer business. Intermedia's alleged behavior after termination would sharply contrast with these reasonable expectations because, Spectrum contends, Intermedia started accusing Spectrum of having accepted excessive commissions, announced that Intermedia would offset these excessive payments against future commissions, and argued that Spectrum was only entitled to some of the Simon business.

If proven, Spectrum's allegations of Intermedia's unhappiness with the Agreement, as Spectrum's commission amounts grew, and of Intermedia's need for money to fund a discount to Simon, would support Spectrum's claim that Intermedia lacked good faith when it terminated the Agreement and refused to pay certain commissions.

The Court concludes that Spectrum states a claim for lack of good faith and that an evidentiary hearing is needed to assess its merits.

**C. Anticipatory Breach**

Spectrum claims that the termination letter, stating that Intermedia did not intend to pay future commissions on certain business, is an anticipatory breach of the Agreement. The Debtors object that Spectrum cannot claim anticipatory breach in a case involving a unilateral contract for the payment of money in fixed installments when the only remaining duty under the contract is payment. Spectrum responds that the Agreement is not such a contract and therefore Spectrum can claim anticipatory breach.

Spectrum's claim for anticipatory breach amounts to a claim for "breach of contract for failure to pay future commissions." Compl. Count III. This count and the other breach of contract counts in the Complaint merge into the claim of breach of the Agreement provision entitling Spectrum to ongoing commissions on existing customer agreements after termination without cause. Spectrum does not have a separate claim for anticipatory breach.

**D. Unjust Enrichment**

The Debtors argue that the existence of an adequate legal remedy under the Agreement bars Spectrum from claiming unjust enrichment. Spectrum counters that the Federal Rules of Civil Procedure allow pleading breach of contract and unjust enrichment in the alternative.

Under the Federal Rules of Civil Procedure, a party may alternatively plead breach of contract and unjust enrichment. *Shibata v. Lim*, No. 6:99-cv-984-Orl-28C, 2000 U.S. Dist. LEXIS 20053, 10 (M.D. Fla. Nov. 14, 2000); *Thunderwave, Inc. v.*

*Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997). However, a party cannot allege unjust enrichment if it has a remedy at law under an express contract whose existence is undisputed. *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998); *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. Dist. Ct. App. 1987); *Shibata*, 2000 U.S. Dist. LEXIS 20053 at 10; *Thunderwave*, 954 F. Supp. at 1566. The existence of the Agreement between Spectrum and Intermedia is undisputed. Spectrum can therefore assert a claim only under the Agreement and not for unjust enrichment.

## CONCLUSION

The Court grants the Debtors' Objection as to Spectrum's claims of anticipatory breach and unjust enrichment. The Court, however, denies the Debtors' Objection as to Spectrum's failure to state a lack of good faith claim upon which relief could be granted. Therefore, the Court concludes that an evidentiary hearing is needed to assess the merits of Spectrum's lack of good faith claim.

Counsel for the Debtors is to settle an order consistent with this Court's Opinion.

Dated: New York, New York
       December 29, 2005

                                                    **s/Arthur J. Gonzalez**
                                                    UNITED STATES BANKRUPTCY JUDGE