# Minutes of Proceedings

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------------x
Date: March 28, 2006                                                                     :
-----------------------------------------------------------------------------------------x
In re                                                                                    :
WorldCom, Inc., *et al.*,                                                                :
                               Debtors.      :   Case No. 02-13533 (AJG)
                                                                                         :
                                                                                         :
                                                                                         :
_____x

Present: Hon. Arthur J. Gonzalez        Jacqueline De Pierola        _____
       Bankruptcy Judge                   Courtroom Deputy            Court Reporter

Debtors: WorldCom, Inc., *et al.*           Counsel: Weil, Gotshal & Manges LLP
                                                     By: Alfredo R. Perez, Esq.

Claimant: TMB Communications, Inc.,         Counsel: McElroy, Deutsch, Mulvaney & Carpenter
and Frank and Janice Mitchell                        LLP
                                                     By: Louis A. Modugno, Esq.

**Proceeding:**   Claimant's Motion to Allow TMB Communications, Inc., and Frank and Janice Mitchell to Modify the Class 6 General Unsecured Claim to the Class 6A MCI Pre-Merger Claim Pursuant to Bankruptcy Rule 9006(b)

**Order:**   For the reasons set forth in the decision attached hereto as Exhibit A, the relief sought is

      ☐ Granted        **X** Denied

FOR THE COURT: Kathleen Farrell, Clerk of the Court

BY THE COURT:

**s/Arthur J. Gonzalez**              3/28/2006        Jacqueline De Pierola
United States Bankruptcy Judge        Date             Courtroom Deputy

EXHIBIT A

TMB Communications, Inc., and Frank and Janice Mitchell (collectively "TMB"), pursuant to Bankruptcy Rule 9006(b)(1),[1] request an extension of time to provide evidence that TMB holds a Class 6A MCI Pre-Merger Claim[2] instead of a Class 6 General Unsecured Claim.

On September 14, 1995, TMB and MCI Telecommunications Corporation ("MCI" or "Debtors") entered into an agreement making TMB a sales agent of MCI. MCI ended the agreement in May 1996.

After termination, TMB repeatedly demanded a complete accounting of its customers. TMB also alleged that (i) MCI stole or diverted certain customers generated by TMB, (ii) MCI failed to report and misrepresented certain revenues and failed to pay commissions accordingly, and (iii) MCI mishandled certain TMB accounts by committing various acts and omissions, including, without limitation, delivering poor service to its customers, engaging in improper billing practices, processing orders untimely, failing to provide to TMB's customers the required level of service, installing customer services inaccurately and untimely, and failing and/or delaying in providing to TMB's customers promised discounts.

---

[1] The relevant part of Rule 9006(b)(1) provides the following:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion…(2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).

[2] Capitalized terms not defined in this decision have the same meaning as in the Debtors' Modified Second Amended Joint Plan of Reorganization ("the Plan").

1

The September 14, 1995 agreement contained a mandatory arbitration clause, which was deemed unconscionable and unenforceable under New York law. *In re Arbitration between Teleserve Sys. and MCI Telecomm. Corp.*, 659 N.Y.S.2d 659 (N.Y. App. Div. 1997). On August 30, 1999, the parties executed an arbitration agreement to resolve their dispute.

The Debtors filed for bankruptcy in 2002. TMB filed a timely proof of claim. MCI objected. By stipulation dated August 26, 2003, the parties dismissed the objection, agreed that TMB had a general unsecured claim and subjected the amount of the claim to arbitration.

On October 31, 2003, the Court confirmed the Debtors' Modified Second Amended Joint Plan of Reorganization, which became effective on April 20, 2004. John J. Preefer, TMB's local counsel before this Court, did not receive a copy of the Plan because Mr. Preefer did not file a notice of appearance on behalf of TMB and therefore was not included on the service list for documents in the Debtors' proceedings.

On November 19, 2003, Debtors served the Notice of (i) Entry of Order Confirming Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, (ii) Deadline for Assertion of Certain Rejection Damage Claims, and (iii) Deadline for Assertion of MCI Pre-Merger Claims ("the Confirmation Notice"[3]). According to the Confirmation Notice, any holder of a General Unsecured Claim against the Debtors that sought treatment as holder of a Class 6A MCI Pre-merger Claim was required to serve upon MCI and counsel for Debtors supporting documents establishing the claim within 30 days of service of the Confirmation Notice.

---

[3] See Confirmation Notice ("…within thirty (30) days from and after the date on which this *Confirmation Notice* is served…") (emphasis added).

2

Failure to provide supporting documentation within the prescribed deadline results in a permanent bar from asserting an MCI Pre-merger Claim.

Under the Plan, an MCI Pre-merger Claim "means an Allowed General Unsecured Claim against the WorldCom Debtors, to the extent the holder of which can establish in writing, with supporting documentation to the Debtors' satisfaction and, until the Effective Date, on reasonable notice to the Committee, that (i) its Claim arises solely from an individual transaction or series of transactions that was fully completed on or before September 13, 1998 and (ii) it relied on the separate credit of [MCI Communications Corporation] or any subsidiary of [MCI Communications Corporation] as of or prior to September 13, 1998." Plan ¶ 1.79.

TMB admits that its counsel received a copy of the Confirmation Notice, but contends that TMB took no action because of the pending arbitration and the indeterminate amount of the claim. TMB contends that it qualifies to hold an MCI Pre-merger Claim.

An arbitration hearing was held in June 2004 and a decision rendered in September, awarding $1,920,000 to TMB. On January 10, 2005, TMB filed the motion now before the Court. MCI objected. A hearing was held on February 8, 2005, during which the Court requested that MCI submit a declaration with respect to service of applicable documents to TMB, specifically the Confirmation Notice and the Third Supplement to Debtors' Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code, dated September 12, 2003 ("the Third Supplement"). MCI submitted such a declaration in April 2005, stating that "counsel for TMB, listed as 'John D. Dichiara [sic] for TMB Communications Inc. and Frank & Janice Mitchell,' was included

3

02-13533-mg    Doc 18089    Filed 03/28/06    Entered 03/28/06 12:52:16    Main Document
Pg 5 of 12

on the service list for the Confirmation Notice." Declaration of Alfredo R. Perez, Esq., in Support of Debtors' Objection to the Motion of TMB Communications, Inc., and Frank & Janice Mitchell for Authorization to File a Class 6A MCI Pre-Merger Claim After the Expiration of the Deadline to File Claims ¶ 4 ("the Perez Declaration"). The Declaration notes that "[t]he Confirmation Notice is the only document that provides a bar date for asserting MCI Pre-merger Claims." Id. As for the Third Supplement, which, "among other things, provides certain disclosures regarding a Plan amendment providing for additional recoveries to certain Class 6 (WorldCom General Unsecured Claims) creditors holding MCI Pre-merger Claims…[,] the Reorganized Debtors have been unable to confirm that a copy of the Third Supplement was served on TMB, its counsel or its known representatives." Id. ¶ 5.

The parties approach their dispute under the excusable neglect framework defined by Rule 9006(b)(1) and *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). However, TMB made the choice not to apply timely for MCI Pre-merger treatment although its counsel received the Confirmation Notice. Arguably, when a party, regardless of good faith, intentionally ignores a form of bar date, no issue of neglect *sensu stricto* obtains. Case law supports the rule that such an intentional act can never constitute excusable neglect. *See, e.g., Jacobson v. Official Comm. of Unsecured Creditors of Mahoney Hawkes, L.L.P. (In re Mahoney Hawkes, L.L.P.)*, 272 B.R. 19, 20 (B.A.P. 1st Cir. 2002) ("*Pioneer*…did not go so far as to equate 'neglect' with conscious disregard of the bar date…[T]ardiness was borne of calculation rather than neglect."); *Banco Latino Int'l v. Gomez-Lopez (In re Banco Latino Int'l)*, 310 B.R. 780, 785 (S.D. Fla. 2004) ("[T]he law since the *Pioneer* decision has been well

4

established that where a party's actions are deliberate, the party's late filing cannot constitute excusable neglect.") (internal quotation marks omitted); *In re PT-1 Commc'ns, Inc.*, 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003) ("[C]onscious disregard of the bar date is not excusable neglect."); *In re SC Corp.*, 265 B.R. 660, 662 (Bankr. D. Conn. 2001). When the party's intentional conduct evidences bad faith, finding neglect is impossible. *See, e.g., Balzotti v. RAD Invs. (In re Shepherds Hill Dev. Co.)*, 316 B.R. 406, 416 (B.A.P. 1st Cir. 2004); *In re D.A. Elia Constr. Corp.*, 246 B.R. 164, 170-172 (Bankr. W.D.N.Y. 2000).

In the instant matter, TMB's good faith is not disputed, but its choice to wait for the arbitration result seems to preclude any finding of excusable neglect or even just neglect. Under these circumstances, arguably, TMB could only avail itself of relief under an estoppel theory. TMB, however, does not allege that MCI induced it not to make a timely request. Therefore, any such estoppel argument would be unavailing.

To the extent the parties argue the issue of excusable neglect under Rule 9006(b)(1), the Court must also reject TMB's motion. The moving party bears the burden of proving excusable neglect. *In re Keene Corp.*, 188 B.R. 903, 907 n.2 (Bankr. S.D.N.Y. 1995). By enacting Rule 9006(b)(1), "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388. To decide whether a party's neglect was excusable, "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," which include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the

5

reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

Not all factors need to favor the moving party. *In re Enron Corp.*, 298 B.R. 513, 525 (Bankr. S.D.N.Y. 2003). "[N]o single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits. Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other." *Id.* (quoting *In re 50-Off Stores*, 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998)).

Applying the *Pioneer* factors leads to the conclusion that TMB is barred from asserting its MCI Pre-merger Claim.

**Prejudice to the Debtors**

TMB argues that granting it an extension of time will not prejudice MCI because all creditors who choose to be included in the MCI Pre-merger Class must do so after the Plan is confirmed. TMB also points out that the MCI Pre-merger Class is only a subset of the General Unsecured Class and that the size of the estate dwarfs the amount of TMB's claim. Moreoever, TMB contends that MCI will not suffer great harm because MCI was aware of TMB's claim long before MCI merged with WorldCom and knew TMB qualified for the MCI Pre-merger Class.

MCI answers that the Court placed the burden on the creditors to come forward with reasons to have their claims treated as MCI Pre-merger Claims. MCI argues that finding excusable neglect when a creditor fails to bring a claim because of its unliquidated nature would allow an identical finding for many other creditors who are now barred from filing claims, and thus would inflict enormous prejudice on MCI.

6

Under the prejudice prong of the analysis, the Court considers the following: the relative sizes of the late claim and the estate, the filing or confirmation of a disclosure statement or plan of reorganization with knowledge of the existence of the claim, and the disruptive effect that the late filing would have on a plan close to completion or upon the economic model on which the plan was formulated and negotiated. *In re Keene*, 188 B.R. at 910.

Assessing TMB's evidence of eligibility for MCI Pre-merger treatment, as MCI has done for hundreds of other creditors who complied with the deadline, would add only a marginal burden on MCI. MCI already knows of TMB's General Unsecured Claim, and treating it as an MCI Pre-merger Claim would only change the distribution amount. Whatever its ultimate amount, the distribution to TMB will represent a small fraction of the size of the bankruptcy estate.

A holding of excusable neglect by this Court in the instant matter would, as MCI argues, open the door to many other creditors claiming that they missed the applicable deadline because their MCI Pre-merger Claims were unliquidated. Unliquidated claims are still claims under the Bankruptcy Code. 11 U.S.C. § 101(5)(A) (2005); *see, e.g., Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000); *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 8 (1st Cir. 1992). Creditors, including TMB, should therefore not be permitted to disregard a deadline because of the unliquidated nature of their claims.

Further, TMB did bear the burden of coming forward with evidence of eligibility for MCI Pre-merger treatment. Permitting TMB to apply late for MCI Pre-merger treatment because MCI knew or should have known about TMB's MCI Pre-merger

7

Claim could lead to many other creditors making the same argument to escape the effect of the deadline. The Debtors would then shoulder a significantly higher amount of distributions for MCI Pre-merger Claims than they anticipated once the deadline expired.

Overall, the Court finds that MCI is likely to suffer a significant prejudice if TMB were allowed an extension of time under Rule 9006(b)(1) to apply for MCI Pre-merger treatment.

**Length of the Delay**

TMB bore the burden of coming forward with evidence of eligibility for MCI Pre-merger treatment and TMB's one-year delay is considerably longer than the 20-day delay that the *Pioneer* Court held excusable. *Pioneer*, 507 U.S. at 384. Granting only TMB an extension of time would not greatly impact judicial proceedings in this Court. Yet, as written above, this grant may lead to similar requests from other late creditors, which could significantly burden judicial process.

**Reason for the Delay**

TMB blames MCI for not including TMB on all service lists and alleges that it received neither notice of the filing of the Plan before confirmation nor a copy of the Plan. TMB says that it would have asked to be included in the MCI Pre-merger Class in the August 26, 2003 stipulation, had it known about this option then. TMB explains it took no action within the prescribed deadline because the arbitration proceeding was pending and the amount of the claim was not determined until September 2004.

In opposition, MCI asserts that it properly served the Confirmation Notice on TMB. Besides, MCI emphasizes that TMB admits receiving the Confirmation Notice through its counsel and that TMB chose to take no action. MCI argues that the deadline

8

applied to an MCI Pre-Merger Claim, whether liquidated or not.  Thus, MCI concludes, TMB cannot argue that the indeterminate amount of its claim justified its failure to provide timely evidence of eligibility for the MCI Pre-merger Class.  In the absence of any timely evidence for MCI Pre-merger Class eligibility, MCI concludes TMB is permanently barred from providing such evidence.

MCI can confirm that it served a copy of the Confirmation Notice on "John D. Dichiara [sic][4] for TMB Communications Inc. and Frank & Janice Mitchell," but cannot make the same confirmation regarding the Third Supplement.  Perez Declaration ¶¶ 4-5. John B. DiChiara, a Florida attorney, admits receiving a copy of the Confirmation Notice on behalf of TMB.  Certification of John B. DiChiara, Esq., in Support of a Motion to Allow TMB Communications, Inc., and Frank and Janice Mitchell to Modify the Class 6 General Unsecured Claim to the Class 6A MCI Pre-Merger Claim Pursuant to Bankruptcy Rule 9006(b) ¶ 7.

The excusable neglect inquiry includes sufficiency of notice.  *Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co.)*, 166 B.R. 799, 801 (S.D.N.Y. 1994). TMB could not expect to know about the MCI Pre-merger Class at the time of the August 26, 2003 stipulation because by then the access conditions to this Class had not yet been reduced to a document filed with the Court.  Transcript of Oral Argument at 18, *In re WorldCom, Inc.*, No. 02-13533 (Bankr. S.D.N.Y. Feb. 8, 2005).  The Third Supplement describes eligibility criteria and a distribution calculation method for MCI Pre-merger Claims.  Third Supplement at 7.  Apart from giving notice of the confirmed Plan, the Confirmation Notice contains the eligibility criteria, but not the distribution calculation

---

[4] No party has alleged that the different middle initial and the lack of capitalization of the letter *c* in Mr. DiChiara's last name in the Debtors' records were relevant to the issue of proper service.

9

method.  The last sentence of the Confirmation Notice provides the following in bold letters: "Any holder of a General Unsecured Claim against the WorldCom Debtors that does not provide written evidence that it holds an MCI Pre-merger Claim on or before the MCI Pre-merger Deadline in accordance with this paragraph shall be forever barred from asserting an MCI Pre-merger Claim."

TMB already knew it held a General Unsecured Claim.  Assuming TMB did not receive a copy of the Plan or the Third Supplement, the Confirmation Notice provided sufficient information to TMB's counsel to know about the confirmation of the Plan and determine that TMB may be eligible for MCI Pre-merger treatment.  The Confirmation Notice also made clear enough the applicable deadline and the effect of failing to comply with it.  TMB cannot escape the consequences of its counsel's failure to obtain a copy of the Plan and apply timely for MCI Pre-merger treatment.  *Pioneer*, 507 U.S. at 396 ("[C]lients must be held accountable for the acts and omissions of their attorneys.").  Nor can it escape the consequences of its local counsel's failure to file a notice of appearance with the Court.  *Id.*

Further, as stated above, the Bankruptcy Code includes unliquidated claims in the definition of claim.  11 U.S.C. § 101(5)(A); *Olin Corp.* 209 F.3d at 128; *Woburn Assocs.*, 954 F.2d at 8.  Thus, TMB should have applied for MCI Pre-merger treatment even if its claim was unliquidated.

In sum, the Court holds that TMB does not come forward with a valid reason why it failed to apply timely for MCI Pre-merger treatment.

**Good Faith**

TMB's good faith is not in dispute.

**Conclusion**

TMB's deliberate choice not to apply on time for MCI Pre-merger treatment despite sufficient notice cannot constitute excusable neglect. Assuming it may, taking all circumstances into account, especially the risk of other similar requests by creditors, the length of the delay and again TMB's deliberate choice, the Court must still hold that TMB has failed to show excusable neglect under Bankruptcy Rule 9006(b)(1). Its motion must therefore be denied.