# Minutes of Proceedings

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------------x
Date: March 28, 2006
-----------------------------------------------------------------------------------------x
In re
WorldCom, Inc., *et al.*,

                                         Debtors.           Case No. 02-13533 (AJG)

_____x

Present: <u>Hon. Arthur J. Gonzalez</u>      <u>Jacqueline De Pierola</u>        _____
         Bankruptcy Judge               Courtroom Deputy         Court Reporter

Debtors: <u>WorldCom, Inc., *et al.*</u>         Counsel: <u>Stinson Morrison Hecker LLP</u>
                                                              By: Mark A. Shaiken, Esq.

Claimant: <u>Paul Chiptoff</u>                    Counsel: <u>Lowenstein Sandler, PC</u>
                                                              By: Ira M. Levee, Esq.

**Proceeding:**    Opinion on Cross Motion for Abstention filed by Claimant Paul Chiptoff.

**Order:**         For the reasons set forth in the opinion attached hereto as Exhibit A, the relief sought is

             ☐ Granted      **X** Denied

         FOR THE COURT: Kathleen Farrell, Clerk of the Court

         BY THE COURT:

         **s/Arthur J. Gonzalez**                     3/28/2006        <u>Jacqueline De Pierola</u>
          United States Bankruptcy Judge           Date              Courtroom Deputy

Exhibit A

The issue before the Court is whether to grant the cross-motion for abstention (the "Abstention Motion") filed by Paul Chiptoff (the "Plaintiff," alternatively the "Claimant") against WorldCom, Inc. and MCI Telecommunications Corp. (collectively the "Defendants" or alternatively the "Debtors"), two of the reorganized debtors. A hearing on the abstention matter was held on March 29, 2005.

Mr. Chiptoff bases his claim #31079 (the "Claim") on a complaint which was filed on behalf of himself and a putative nationwide class of persons alleged to be similarly situated in the Superior Court of California for the County of Sonoma on or about August 13, 1997 (the "State Court Action"). On November 2, 2000, the Plaintiff filed his First Amended Complaint (the "Complaint"), which he contends is the operative complaint governing the State Court Action. The Complaint, as amended, set forth six common law causes of action against the Defendants including fraud, fraudulent concealment, interference with business and contractual relation, negligent misrepresentation, negligence, unjust enrichment and a seventh cause of action based on a California statute. The California state law is based on the prohibition against the fraudulent practice of "slamming. " "Slamming" involves moving a person to different phone carrier without the person's consent. The Complaint alleges that this practice of "slamming" cost those in Plaintiff's putative nationwide class millions of dollars in savings which they would have otherwise realized but for the misconduct of the Defendants. Subsequent to the filing of the Complaint, the parties engaged in the exchange of documentation and discovery.

On August 7, 2001, the Defendants filed a motion for summary judgment, which was denied it its entirety. After taking further discovery, the Plaintiff filed a motion for class certification on July 18, 2002.

On July 21, 2002 and November 8, 2002, the Debtors petitioned for bankruptcy relief under Chapter 11 of the Bankruptcy Code. The Automatic Stay, as provided for under 11 U.S.C. §362, thus effectively stayed all proceedings in the State Court Action, including the issue of class certification.

On January 23, 2003, the Claimant filed his proof of claim in this case on behalf of himself and on behalf of an alleged class. As the basis for the proof of claim, the plaintiff refers to a "Class Action Complaint" and attached a copy of the Complaint filed in connection with the State Cause of Action Captioned <u>Paul Chiptoff, on behalf of himself and the general public v. WorldCom, Inc., MCI Telecommunication Corp., MCI Communications Corp., and DOES 1 through 100, inclusive</u>. The Plaintiff asserted on the proof of claim that he is entitled to "Damages & Equitable Relief" in an unspecified amount for the fraudulent practice of "slamming."

The Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan") was confirmed on October 31, 2003 and became effective on April 20, 2004.

On October 15, 2004, the Debtors filed their Claim Objection seeking to expunge the Class Proof of Claim. The objection was part of its Seventy-Second Omnibus Objections to proof of claim (the "Claim Objection"). Debtors objected to the Claim, *inter alia*, on the grounds that the Plaintiff lacks the proper standing to bring the Claim. The Debtors argue, among other things, that the Claim should be expunged because he is an inappropriate class representative, and furthermore that any certification of a class

2

based on a "slamming" claim would be very subjective since fraud allegations are dependant upon the subjective state of a person's mind.

On January 4, 2005, the Plaintiff filed his response to Debtors' objections on behalf of himself and on behalf of the alleged class. The Plaintiff further cross-moved for an order that this Court exercise its discretionary power and permissively abstain, pursuant to 28 U.S.C. §1334(c)(1), with respect to the Claim Objection, thus deferring to the state court proceedings. This would allow the Plaintiff to pursue his State Cause of Action. It is assumed at that point the Plaintiff will seek class certification, which was prevented due to the Automatic Stay.

On March 10, 2005, Debtors responded to the Plaintiff's Abstention Motion and this Court subsequently heard oral argument on March 29, 2005 in favor of and in opposition to the Claimant's Abstention Motion.

On May 24, 2005 Debtors filed a Supplemental Objection asserting, *inter alia*, that Plaintiff cannot certify the class. The Debtors did not believe themselves compelled to bring to a standstill any of the proceedings on the underlying issues in this case as the court considered Plaintiff's' Abstention Motion.

On July 26, 2005, the Court was to hear arguments for and against Debtors' supplemental objection to the motion to deny class certification of the proof of claim filed by the Plaintiff. However, the Plaintiff argued at that time that they were under the impression that no arguments on this matter would be held until the Court had first made a determination as the Plaintiff's Abstention Motion. At that time, the Court noted the practicality of not hearing arguments on the underlying Claim until the Court dealt with its decision on the Abstention Motion. The Court expressed its hope of first issuing a

3

decision on the Abstention Motion, and then, if still required, dealing with the underlying issues in this matter. However, the Court also noted the possibility of dealing with the Abstention Motion and the underlying objection at the same time.

At this time, the Court only addresses the issue of abstention and leaves the underlying question of Debtors objection to the Claim for a later date.

The Plaintiff has asked this Court to exercise its discretion and grant permissive abstention as provided for under 28 U.S.C. §1334(c)(1). Section 1334 provides in relevant part "(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11…. (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

Abstention under section 1334(c)(1) is ultimately a matter within the sound discretion of the Court. *In re Continental Airlines*, 156 B.R. 441, 443 (Bankr. D. Del. 1993). Under section 1334 (c)(1) this Court has discretion to abstain "in the interests of justice, or in the interest of comity with state courts or respect of State law." This has been construed to mean that a court need not abstain where issues of state law are settled and uncomplicated. See *T.A. Title Insurance Co. v. Lampl, Sable & Makoroff,* 158 B.R. 693, 702 (Bankr.W.D.Pa. 1993).

The Court notes that the burden is on the Plaintiff to demonstrate that the factors considered in permissive abstention analysis weigh in his favor. *In re Double Trl, Inc.,* 65 B.R. 993, 1002 (Bankr. E.D.N.Y. 1986).

The arguments, as asserted by the Debtors, for this Court retaining jurisdiction and not excising its discretion and granting abstention are compelling. The Court notes that under the confirmed Plan it is this Court that does retain jurisdiction. More compelling is the analysis used by courts in determining the appropriateness of abstention under both the traditional nonbankruptcy case law and the twelve factors used traditional by the bankruptcy courts for determining abstention. It should be noted that the almost universal considerations in any analysis of permissive abstention seem to turn on the existence of a unique state issue(s) or area of unsettled state law and the effect on judicial resources.

The Supreme Court in *Colorado River Water Conservation Dist. v. U. S.,* 424 U.S. 800 (1976) held that the circumstances appropriate for abstention have been traditionally confined to three general categories (a) cases presenting a federal constitutional issue which might be mooted or presented in a different posture by state court determination of pertinent state law, (b) cases where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, and (c) cases where, absent bad faith, harassment or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, or state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the

5

closure of places exhibiting obscene films or collection of state taxes. *Colorado River*, 424 U.S. at 813.

Similarly, the Second Circuit again noted this traditional analysis *In re Joint E. and S. Dist. Asbestos Litigation,* 78 F.3d 764 (2nd Cir. 1996) where it found that abstention was appropriate where "(1) to avoid a federal constitutional issue where that issue may be mooted or altered by a state-court ruling on the state-law question; or (2) to avoid hindrance of such state functions as criminal prosecutions or the collection of state taxes; or (3) to conserve federal judicial resources in those 'exceptional circumstances' where there is concurrent state-court litigation whose resolution could result in 'comprehensive disposition of litigation;' or (4) to defer to state resolution of difficult state-law questions that involve local regulation and administration or important matters of local public policy." *In re Joint E. and S. Dist. Asbestos Litig.*, 78 F.3d at 775 (*internal citations omitted*).

In *Woodford v. Community Action Agency of Greene County,* 239 F.3d 517 (2nd Cir. 2001) the Second Circuit offered further observation of traditional abstention, specifically when a court is considering whether or not to abstain in order to conserve judicial resources. The court here noted that this should be done in only a few "exceptional circumstances" noting that it should be the exception rather than the norm. *Id.* at 522. "The abstention doctrine comprises a few 'extraordinary and narrow exception[s]' to a federal court's duty to exercise its jurisdiction." *Id.* at 522 (quoting *Colorado River,* 424 U.S. at 813). The Court went on to write that "[b]ecause abstention is contrary to a federal court's normal duty to adjudicate a controversy over which it has jurisdiction, the court's discretion 'must be exercised within the narrow and specific

6

limits prescribed by the particular abstention doctrine involved. Thus, there is little or no discretion to abstain in a case which does not meet traditional abstention requirements.'" *Woodford,* 239 F.3d at 523 (quoting *Village of Westfield,* 170 F.3d at 120; citing *Dittmer v. County of Suffolk,* 146 F.3d at 116; *Asbestos Litigation,* 78 F.3d at 775; *Bethphage Lutheran Service, Inc. v. Weicker,* 965 F.2d at 1244-45). The court cautioned against the excessive use of abstention. "Even where there are some state-law issues, 'the presence of federal-law issues must always be a major consideration weighing against surrender' of federal jurisdiction." *Woodford,* 239 F.3d 523 (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26 (1983)).

The Second Circuit in *Woodford* put forth the following factors to be considered when a court is determining whether to abstain in order to conserve judicial resources for "exceptional circumstances." Those factors include "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. *Woodford,* 239 F.3d at 522 (*internal citations omitted*).

The court in *Woodford* also noted that no one factor is dispositive but rather "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. *Only the clearest of justifications will warrant dismissal*." *Woodford,* 239 F.3d at 522.

7

The court here also noted that a when a federal court considered abstention, the balanced weighed heavily on the court excising its jurisdiction. Furthermore, the court noted that, "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Id.* at 522.

Notwithstanding the above traditional abstention analysis, bankruptcy courts have further developed the abstention analysis to allow for considerations that are unique to a bankruptcy proceeding. Courts in this Circuit and other circuits traditionally consider the following twelve factors in addressing a motion based on section 1334(c)(1) "(1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced instate court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties." *In re WorldCom, Inc. Securities Litigation,* 293 B.R. 308, 332 (S.D.N.Y. 2003); See also *Matter of Continental Airlines, Inc.,* 156 B.R. 441, 443 (Bankr.D.Del.1993), *In re Masterwear Corp.,* 241 B.R. 511, 520 (Bankr. S.D.N.Y. 1999), *In re CRD Sales and Leasing, Inc.,* 231 B.R. 214, 221 (Bankr. D. Vt. 1999), *In re*

8

*Craft Architectural Metals Corp.,* 115 B.R. 423, 432 (E.D.N.Y. 1989), *In re Macmillan Inc.*, 186 B.R. 35, 52 (Bankr. S.D.N.Y. 1995), *In re JCC Capital Corp.,* 147 B.R. 349, 354 (Bankr. S.D.N.Y. 1992) and *In re American Motor Club, Inc.*, 149 B.R. 317, 323 (Bankr. E.D.N.Y. 1993).

In weighing the various factors *In re WorldCom, Inc. Securities Litigation* the court concentrated on the absence of any unsettled issues of state law that would warrant comity, and the most efficient use of judicial resources. *In re WorldCom, Inc. Securities Litigation,* 293 B.R. at 332.

Other courts have also cautioned against considering the factors equally. "[This] list of factors is non-exclusive and was developed simply as a guide to the required inquiry; the wise exercise of discretion is rarely a matter of score-keeping or bean-counting. Ultimately, the pursuit of 'equit[y],' 'justice' and 'comity' involves a thoughtful, complex assessment of what makes good sense in the totality of the circumstances." *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship,* Not Reported in F.Supp.2d, 2004 WL 1048239 at 3 (S.D.N.Y. May 7, 2004).

The Plaintiff argue that a majority of the traditional factors used in evaluating a section 1334(c)(1) abstention request are present in this matter and the Court should exercise its discretion and grant abstention. The Plaintiff argues that the Claim here is based exclusively on state law. Furthermore, the Plaintiff notes that it is the California State Court where the issues underlying this claim have already been litigated for years. The Plaintiff also asserts that for this Court to proceed and hear the Objection to the Claim would result in a waste of the estate resources in the form of duplicative discovery and potentially inconsistent outcomes.

9

The Plaintiff argues that the traditional nonbankruptcy reasons for abstention and the twelve traditional factors often applied by bankruptcy courts favored abstention, while Debtors argue that when considering all the factors together the facts do not weigh in favor of this Court granting abstention. The Debtors also note that while this case does involve some state issues they are hardly unique and six out of the seven causes of action involve traditional common law state issues.

The Court will consider the twelve factors generally used by bankruptcy courts. The Court notes that the only applicable part of the traditional nonbankruptcy abstention analysis as set for in *Colorado River*, *Wordford* and *In re Joint E. and S. Dist. Asbestos Litigation* are comity and the effect on judicial resources both of which are discussed as part of the twelve factors.

The first factor to be considered is whether abstention here would not result in inefficient administration of the estate. The Plaintiff argues that since the California State court have dealt with this matter for years and its possesses a certain familiarly with the issues and parties involved, thus raising the possibility of a faster resolution of this matter. Alternatively, the Debtors argue that this case has progressed at a very slow pace since 1997 and could well continue to remain idle for sometime.

The Court finds that the results in saving to the estate are ambiguous at best. The original complaint was filed in the State Court in August of 1997. Then over three years later, the complaint was amended. Finally nearly two years later, the Plaintiff filed his motion for class certification in the State Court. Furthermore, much of the State Court Action has been delayed due to the stay and this Court does not feel that sending this matter back to the state court where the delay of the stay and the already otherwise slow

10

pace of the case, coupled with a the potential for inconsistent outcomes.  The Court finds no clear savings by sending this case back to the State Court.  Therefore, this factor does not weigh in favor of abstention.

The second factor is the extent to which state law issues predominate over bankruptcy issues.  Although this Claim would be based on state law the Court is accustomed to making determinations of a claim's validity based on state law.  Furthermore, as noted six of the seven causes of action here are general common law issues.  The prominence of state law issues here does not weigh in favor of abstention.

The third and perhaps most important factor a court considers when granting permissive abstention is the existence of a novel or unsettled area of state law.  This element is one of the major underpinnings of any abstention analysis, whether it is the traditional nonbankruptcy analysis or the traditional twelve-part bankruptcy analysis. "'Given the genesis of section 1334(c)(1), it is not surprising that the primary determinant for the exercise of discretionary abstention is whether there exist unsettled issues of state law.'"  *In re Pan American Corp.,* 950 F.2d 839, 846 (2nd Cir. 1991) (quoting *General Am. Comm.,* 130 B.R. at 146).

Although the Plaintiff alludes to the complexity the State Cause of Action, the Plaintiff conceded in their oral argument on the Abstention Motion, held on March 29, 2005 that this factor is a essentially neutral one generally favoring neither side.  The Debtors argue that this claim is a normal business claim part of which happens to be based a "slamming" claim, which is generally considered an area of settled law that is not unique in form to California.  Furthermore, the other part of any potential claim here

11

would be based on traditional common law causes of action, which presumably would not present any unique state law issues.

The Court agrees with the both the Debtors and Plaintiff's assessment that this matter does not present any great novel questions of state law or alternatively is an area of unsettled state law. That this factor, which most courts consider paramount in any permissive abstention analysis, weighs in favor of the Debtors is significant.

The fourth element is the presence of a related proceeding commenced in state court. It is clear that a state court action has been commenced and neither side really disputes this, therefore this factor weighs in favor of abstention.

The fifth factor to be considered is the jurisdictional basis, if any, other than section 1334. The Plaintiff concedes in his oral argument that this factor would be considered neutral, and therefore would not weigh in favor of either side. However, the Court notes the obligation of the Plaintiff to demonstrate that the factors considered in the abstention analysis weigh in his favor. Thus, a neutral factor, relevant to the analysis, weighs in favor of the Debtors.

The sixth factor is the degree of relatedness or remoteness of the proceeding to the main bankruptcy case. The Plaintiff argues this matter is not clearly related to the main bankruptcy case and furthermore that since this is a contingent unliquidated claim, like the court in *Continental*, this should weigh in favor of the court abstaining. *Matter of Continental Airlines, Inc.,* 156 B.R. 443-444. However, Debtors argue that the issues raised here go to the heart of the main bankruptcy case and would be considered part of the core proceedings as defined under 28 U.S.C. §157. The Debtors argue that by the

12

Plaintiff asserting his claim in this case and failing to object to the confirmed Plan the Plaintiff submitted to the jurisdiction of this court.

The Debtors are correct in noting that when the Plaintiff filed a claim in this case he submitted himself to the jurisdiction of this court. *Katchen v. Landy*, 382 US 323 (1966) and *Langenkamp v. Culp*, 498 US 42 (1990). The arguments that this matter is not directly related to the main bankruptcy case are at best ambiguous. Though reasonable arguments can and have been put forth by both parties, the Court notes that given neutrality of this element, when balanced by the arguments, does not find it a compelling reason to grant abstention.

The seventh factor to be considered is the substance rather than form of an asserted core proceeding. It would seem that this factor favors the Plaintiff as this matter does not specifically involve a bankruptcy issue, but rather involves state law and common law causes of action that would exist outside of the bankruptcy court.

The eight factor, is the feasibility of severing the state law claims from the core bankruptcy matters, thus allowing judgments to be entered. Debtors argue that this is a core matter and therefore any resolution cannot be severed from the main bankruptcy Case. Although the state court could determine the validity of the State Cause of Action, this Court will ultimately have to determine the enforcement of any potential judgment and on that basis the Court does not see this factor as a compelling reason to grant abstention under section 1334(c)(1).

The ninth factor to be considered is the burden on the Court's docket and the use of judicial resources. While it is true this Court has a considerable caseload, it is this Court's obligation to exercise its jurisdiction and abstain only in a few narrow and

13

extraordinary situations, in consideration of judicial resources, as noted by the Second Circuit in *Woodford* and the Supreme Court in *Colorado River*.

The case law on the effect to the courts docket and judicial resources would suggest that this Court would not only have to find the State court a better venue to deal with these issues but at the same time it would have to offer the benefit of judicial economy. In consideration of the analysis offered in by the Second Circuit in *Woodford* it should be noted that, while this Court if confidant in ability of the California State Court, this case has not progressed so far along as to weigh in favor of the state court hearing this matter in order to conserve judicial resources. Furthermore, by abstaining here there is a potential for further litigation after the state court action that could result in piecemeal litigation. Additionally, this Court does not feel that the federal forum is an inconvenience to most, if not all, of the parties to this matter.

The Court does not find its docket considerations and the venue of the state court so compelling as to make this a basis for granting abstention.

The tenth factor is the evidence of forum shopping. Although the Plaintiff seems to make mention of this in early pleadings it appears that it was conceded at the oral argument that neither side appears to be engaged in this practice here. The Court does not see any overt forum shopping in this case either. Therefore, this factor does not weigh in favor of abstention.

The eleventh factor is the right to a jury trial. Based on the record, the Plaintiff appears to insist that he retains his right to a jury in the state proceedings, however, if this Court does not abstain then he recognizes that he has waived his right to a jury trial in this Court by filing his proof of claim. This factor would not weigh in favor of the

14

Plaintiff's request.  *Katchen v. Landy*, 382 US 323 (1966) and *Langenkamp v. Culp,* 498 US 42,44 (1990).

The twelfth factor is the presence of nondebtor parties.  Both parties agree that nondebtors predominate in this case.  However, all of the nondebtors have, through the putative Plaintiff, have sought to participate in this case.  If the Plaintiff were to be successful at the state court level he would then come before this Court to seek to enforce any claim.  Furthermore, this case does not involve nondebtor codefendants or third party claims which would, if present, have weighed in favor for the Plaintiff.  *In re Masterwear Corp.,* 241 B.R. 511, 520-521 (Bankr. S.D.N.Y. 1999).  In that situation, the concern would be that the debtor entity was merely one of many parties in the state court litigation and that by happenstance the proceeding involved a debtor such involvement would not warrant the action being resolved in the bankruptcy court.  Therefore, this factor would not weigh in favor of the Plaintiff's request.

Assuming *arguendo* that this factor had weighed in favor of the Plaintiff it would not have changed the outcome of this matter.

In weighing the traditional nonbankruptcy factors for abstention and the traditional twelve factors often used by bankruptcy courts, against the facts here, the Court finds that while some of the factors would support abstention the majority either weigh against abstention or are neutral and thus are not compelling reasons for this Court to abstain in this matter.

Indeed the one factor that courts have given great weight is the presence of a unique or unsettled area of state law.  Although this matter does involve some complexity

15

it is far from involving any novel issues or an area of unsettled state.  Furthermore, most of the causes of action asserted by the plaintiff involve general common law issues.

Finally, the Court notes again the issue of the best allocation of judicial resources, a matter raised by both parties.  Under the analysis offered in by the Second Circuit in *Woodford* and the Supreme Court in *Colorado River* it should be noted that, while this Court recognizes the substantial docket it has and further reflects on the best use of judicial resources, this court does not find that extraordinary circumstances exist here that would warrant refraining on Court's obligation to hear this matter.

Thus, after having considered all the facts and arguments in this matter the Court finds that the Plaintiff has failed to establish that either the traditional nonbankruptcy abstention considerations or the traditional twelve considerations used by bankruptcy courts weigh in favor of the Plaintiff's Abstention Motion. *In re Double Trl, Inc.,* 65 B.R. 993, 1002 (Bankr. E.D.N.Y. 1986).  Based upon the foregoing, the Plaintiff's Cross-motion for permissive abstention under section 1334(c)(1) is denied and this matter will proceed at a later date to be determined by the Court.