**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                         :

In re:                                                :       Chapter 11 Case No.
                                                   :
**WORLDCOM, INC., et al.,**             :       02-13533 (AJG)
                                                   :
         Debtors                    :       (Jointly Administered)
------------------------------------------------------------x

**ORDER ON MOTION OF REORGANIZED DEBTORS FOR AN ORDER
ENFORCING THE PLAN AND THE CONFIRMATION ORDER TO BAR
PROSECUTION OF AN ACTION TO COLLECT ON DISCHARGED CLAIMS
<u>INITIATED BY CARL BRUNSON AND NINA BRUNSON</u>**

        Upon consideration of the Motion of Reorganized Debtors for an Order Enforcing the Plan and the Confirmation Order to Bar Prosecution of an Action to Collect on Discharged Claim Initiated by Carl Brunson and Nina Brunson (the "Discharge Motion") and the parties' briefs and arguments on the Discharge Motion, and for the reasons stated in the Court's March 14, 2006 decision on the Discharge Motion, which is attached hereto as Exhibit A, it is hereby

        ORDERED that the Discharge Motion is granted, except to the extent that it seeks costs and attorneys' fees which are denied; and it is further

        ORDERED that the claims asserted against MCI, including it's predecessors, subsidiaries and affiliates (collectively, the "Debtors"), by Carl and Nina Brunson (the "Brunsons") were discharged upon confirmation of the Debtors' plan of reorganization; and it is further

        ORDERED that the Brunsons are barred from taking further action to prosecute their lawsuits to recover on such claims and are directed to cease any further acts to attempt to enforce their claims against the Debtors and to dismiss with prejudice

HO1:\329086\02\71X@02!.DOC\81793.0045

all claims and/or causes of action as against the Debtors to the extent they remain pending; and it is further

ORDERED that this Order does not bar the Brunsons from proceeding against non-Debtor parties in their civil action now pending in Jasper County, Illinois.

Dated: New York, New York
       March 28, 2006

                                        **s/Arthur J. Gonzalez**
                                        HONORABLE ARTHUR J. GONZALEZ,
                                        UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**EXHIBIT A**

```
 1
 2
 3
 4
 5
 6
 7
 8                        *    *    *    *
 9            Before the Court is a Motion by the
10   Reorganized Debtor MCI WorldCom Network
11   Services, Inc. ("Debtor"), for an Order
12   Enforcing the Plan and the Confirmation Order
13   ("Motion").  The Debtor seeks to bar the
14   action brought by Carl and Nina Brunson (the
15   "Brunsons") for injunctive relief in the
16   Circuit Court of the Fourth Judicial Circuit,
17   Jasper County, Illinois (the "Brunson
18   Action").  The Brunsons seek a permanent
19   injunction compelling the Debtor to remove
20   its fiber optic cable from the easement the
21   Debtor holds across the Brunsons' property.
22   The Debtor argues that this claim for
23   injunctive relief arose prepetition and was
24   subsequently discharged on the effective date
25   of its reorganization plan ("Effective
```

```
 1                     Proceedings
 2    Date").  The Debtor also seeks recovery of
 3    the legal costs it incurred responding to the
 4    Brunson Action on the grounds that the
 5    Brunsons knowingly violated this Court's
 6    Order Confirming the Modified Second Amended
 7    Joint Plan of Reorganization ("Confirmation
 8    Order").  The Brunsons respond that the
 9    asserted claim for injunctive relief is not a
10    "claim" as defined by the Bankruptcy Code and
11    thus was not discharged by the Confirmation
12    Order.  The Brunsons also argue, in the
13    alternative, that even if this Court finds
14    the claim for injunctive relief to be a
15    dischargeable claim, the asserted claim
16    nonetheless arose postpetition and therefore
17    was not discharged.
18              The Brunsons argue first that the
19    asserted claim for injunctive relief is not a
20    "claim" as defined by 11 U.S.C. section
21    101(5)(B)(previously codified as section
22    101(4)(B)).  The Bankruptcy Code defines
23    "claim" to include "an equitable remedy for
24    breach of performance if such breach gives
25    rise to a right of payment."  Id.  As the
```

```
 1                  Proceedings
 2   Supreme Court has recognized, there may be
 3   situations in which a claim for injunctive
 4   relief is not a claim within the language of
 5   section 101(5)(B) and thus is not discharged.
 6   Ohio v. Kovacs, 469 U.S. 274, 284-285 (1985).
 7             Whether or not a particular remedy
 8   or relief sought against a debtor who has
 9   filed under the Bankruptcy Code is a "claim"
10   involves interpretation of the Bankruptcy
11   Code and is thus an issue of federal law.
12   This Court notes that while Kovacs
13   highlighted this issue, it did not set forth
14   a standard for determining when a claim for
15   injunctive relief is not a dischargeable
16   claim.  The controlling standard for this
17   Court was provided by the Second Circuit in
18   In re Chateaugay, 944 F.2d 997 (2d Cir.
19   1991) ("Chateaugay I").  In a thorough and
20   detailed analysis of the issue, the Court
21   held that "[a]n injunction that does no more
22   than impose an obligation entirely as an
23   alternative to a payment right is
24   dischargeable."  Id. at 1008.  Only where the
25   injunction is the only available relief, that
```

```
 1                    Proceedings
 2   is, where the enjoining party has no
 3   authority to require damages or compensation
 4   in lieu of injunctive relief, is injunctive
 5   relief not a dischargeable claim.  Id.
 6           Here, the Brunsons have an
 7   available alternative payment right, and
 8   thus, the claim for injunctive relief is a
 9   "claim" under the Bankruptcy Code.  The
10   Brunsons argue that the asserted claim for
11   injunctive relief is limited to any
12   prospective injury and therefore, that they
13   have no "right to payment."  However, while
14   it may be the case in some instances that
15   future injury may only be adequately remedied
16   through injunctive relief, this is not true
17   here.  As a "telecommunications carrier," the
18   Debtor possesses the right of eminent domain
19   under the Illinois Public Utilities Act.  See
20   35 Ill. Comp. Stat. Ann. 635/10 (West 2005)
21   (defining "telecommunications carrier"); 220
22   Ill. Comp. Stat. Ann. 65/4 (West
23   2005)(granting telecommunications carriers
24   the right of eminent domain as defined in 220
25   Ill. Comp. Stat. Ann. 55/2 (West 2005)).  As
```

```
 1                    Proceedings
 2   act 55, section 2 states, a
 3   telecommunications carrier "may enter upon
 4   any lands ... and take and damage private
 5   property for the erection and maintenance" of
 6   its telecommunications system.  While this
 7   statute does not provide the Brunsons with a
 8   direct payment right, it does provide an
 9   alternative remedy for monetary damages
10   insofar as the Brunsons could seek an
11   injunction forcing the Debtor to exercise its
12   powers of eminent domain under the statute.
13   Moreover, because the Debtor would exercise
14   its power of eminent domain if this Court
15   granted the Brunsons injunctive relief, such
16   injunctive relief is the means through which
17   to compel payment of monetary damages.
18   Therefore, the Brunsons have the "option to
19   accept payment in lieu of continued [injury]"
20   as a result of the Illinois Public Utilities
21   Act.  Chateaugay I, 944 F.2d at 1008.
22             This Court's reasoning is analogous
23   to the Supreme Court's holding in Johnson v.
24   Home State Bank, 501 U.S. 78 (1991), where
25   the Court held that the right to foreclose on
```

```
 1                    Proceedings
 2    a mortgage was a claim under the Bankruptcy
 3    Code.  The Supreme Court reasoned that
 4    although the creditor possessed only the
 5    equitable right of foreclosure and not an
 6    alternative right to payment, the right to
 7    foreclose gave rise to a corollary right to
 8    payment, either through sale of the property
 9    or by compelling the debtor to satisfy the
10    debt in order to stop the foreclosure.  Id.
11    at 83-85.  Here, the Brunsons' right to
12    equitable relief similarly gives rise to a
13    corollary right to payment through the
14    operation of the Illinois Public Utilities
15    Act.  Similarly, the Seventh Circuit held in
16    Udell v. Standard Carpetland, USA Inc.,
17    (In re Udell) 18 F.3d 403, 408 (7th Cir.
18    1994) that "a right to an equitable remedy is
19    a 'claim' if the same breach also gives rise
20    to a payment 'with respect to' the equitable
21    remedy."  The Court finds that the asserted
22    right to injunctive relief and the right to
23    payment vis-a-vis the Public Utilities Act
24    are sufficiently related to justify the
25    Court's conclusion that the Brunsons' claim
```

```
 1                   Proceedings
 2   for injunctive relief is a "claim" under
 3   section 101(5)(B).
 4               This conclusion is supported by
 5   consideration of the purposes of the
 6   Bankruptcy Code.  The Brunsons are here
 7   seeking to evade the operation of the Code by
 8   limiting their demand for injunctive relief
 9   to prospective injury, cognizant of the fact
10   that any claim for damages based on the
11   Debtor's pre- and postpetition actions was
12   discharged on the Effective Date.  In
13   essence, the demand for injunctive relief
14   here is an alternative route through which to
15   obtain the damages that were discharged by
16   the Code, as the Brunsons can use the threat
17   of an injunction to extract a settlement from
18   the Debtor.  The Brunsons had the opportunity
19   preconfirmation to either obtain an
20   injunction or file a proof of claim for
21   damages, but failed to do so.  They cannot
22   therefore use the threat of an injunction to
23   recoup a discharged debt now.  To allow the
24   Brunsons to do so would plainly frustrate the
25   purposes of the Bankruptcy Code.
```

```
 1                    Proceedings
 2              That the Brunsons' claim for
 3    injunctive relief is a claim under the
 4    Bankruptcy Code does not end the inquiry,
 5    however.  As only prepetition claims are
 6    discharged on the Effective Date, the Court
 7    must now determine whether the asserted claim
 8    is a prepetition claim.  See 11 U.S.C.
 9    Section 1141(d)(1)(A).  The Second Circuit in
10    LTV Steel Co., Inc. v. Shalala (In re
11    Chateaugay Corp.)("Chateaugay II") set forth
12    fairly exhaustively the standard for
13    determining whether a claim is prepetition or
14    postpetition.  53 F.3d 478, 496-498 (2d Cir.
15    1995).  As an initial matter, the court noted
16    that "Congress intend[ed] to invest the term
17    'claim' with the 'broadest possible' scope so
18    that 'all legal obligations of the debtor
19    [would] be able to be dealt with in a
20    bankruptcy case."  Id. at 496 (citing
21    Pennsylvania Dep't of Pub. Welfare v.
22    Davenport, 495 U.S. 552, 558 (1990)).  With
23    this in mind, the court held that a
24    prepetition claim is one where "the
25    relationship between the debtor and the
```

```
 1                    Proceedings
 2   creditor contained all of the elements
 3   necessary to give rise to a legal
 4   obligation -- 'a right to payment' -- under
 5   the relevant non-bankruptcy law" before the
 6   petition was filed.  Id., at 497 (citation
 7   omitted.)
 8              Under this standard, it is clear
 9   that the asserted claim for injunctive relief
10   is a prepetition claim for purposes of the
11   Bankruptcy Code.  The Brunsons argue that
12   their claim is not prepetition because it is
13   limited in scope to the Debtor's postpetition
14   use of the fiber optic cable.  However, the
15   "elements" of that claim and the "right to
16   payment" on that basis were established in
17   the prepetition period, as the Debtor began
18   using the fiber optic cable prepetition and
19   the relationship of the parties did not alter
20   prepetition to postpetition.  Any
21   postpetition use of the cable is simply a
22   continuation of the prepetition use, and in
23   consequence, any postpetition debt incurred
24   is simply an addition to the prepetition
25   debt.  The Brunsons cannot escape the
```

```
 1                      Proceedings
 2   discharge of their claim by simply stating
 3   that they seek relief only for the Debtor's
 4   activities in the postpetition period.  They
 5   may so limit their claims as to the relevant
 6   injury for which they seek relief, but this
 7   limitation has no effect on the prepetition
 8   character of the claims for the purposes of
 9   the Bankruptcy Code.  Therefore, the Court
10   concludes that the asserted claim for
11   injunctive relief is a prepetition claim and
12   was thus discharged on the Effective Date.
13              The Debtor argues that it should be
14   awarded compensation for the legal costs
15   incurred responding to the Brunson Action in
16   this Court on the theory that the Brunsons
17   knowingly violated the Confirmation Order.
18   As the Brunsons raised before this Court an
19   issue as to the dischargeability of their
20   claim for injunctive relief, this Court does
21   not believe that the imposition of sanctions
22   pursuant to Fed.R.Bankr.P. 9011 is proper.
23              In light of the foregoing, this
24   Court grants the Debtor's Motion for an Order
25   Enforcing the Plan and Confirmation Order,
```

```
 1                    Proceedings
 2   except insofar as this Court denies the
 3   Debtor's request for legal costs.
 4             The Debtor is to settle an order
 5   consistent with this Court's opinion,
 6   attaching thereto as Exhibit A a revised and
 7   modified transcript of the opinion as read by
 8   the Court today.  Thank you.
 9                    *    *    *    *
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```