UNITED STATES BANKRUPTCY COURT  　　　Not For Publication
SOUTHERN DISTRICT OF NEW YORK

---

In re:                                         :    Chapter 11
                                               :
WORLDCOM, INC., *et al.*,                      :    Case No. 02-13533 (AJG)
                                               :    (Jointly Administered)
                      Debtors.                 :    (Confirmed)
                                               :

---

# OPINION DENYING MOTION TO COMPEL ALLOWANCE AND DISTRIBUTIONS IN RESPECT OF CERTAIN CLASS 6 CLAIMS HELD BY STARO ASSET MANAGEMENT LLC

APPEARANCES:

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
700 Louisiana, Suite 1600
Houston, TX 77002

  Alfredo R. Perez, Esq.
  James T. Grogan, III, Esq.
    Of Counsel

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Attorneys for Staro Asset Management LLC
1177 Avenue of the Americas
New York, NY 10036

  Sukyong Suh, Esq.
    Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

  Staro Asset Management LLC ("Staro"), as the alleged assignee of claims nos. 312000610 and 212000150, requests the Court to allow them and order the Debtors to make distributions accordingly. The Debtors contend that Staro does not own these

claims because its assignor did not own them. They also assert they settled these claims with their actual owner, and that these claims were ultimately satisfied pursuant to settlement. The Court must deny Staro's request because the record supports the Debtors' contentions.

## JURISDICTION

The Court has subject matter jurisdiction over this proceeding pursuant to sections 1334 and 157(b) of title 28 of the United States Code, under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), and paragraph 32 of this Court's Order Confirming Debtors' Modified Second Amended Joint Plan of Reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (Oct. 31, 2003). The Court has jurisdiction over "core proceedings," including "matters concerning the administration of the estate" and "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(A), (B) (2006). Venue is properly before this Court pursuant to sections 1408 and 1409 of title 28 of the United States Code.

## FACTS

On or about July 1, 1994, MCI Telecommunications Corporation, a predecessor of one of the Debtors,[1] and Concert Communications Company ("Concert")[2] entered into a distribution agreement. MCI and BT[3] executed other contracts implementing the distribution agreement.

---

[1] MCI WorldCom Network Services, Inc., one of the Debtors, succeeded to MCI Telecommunications Corporation.
[2] Concert was a joint venture between the AT & T and British Telecom businesses.
[3] In this opinion, unless specifically defined otherwise, "MCI" refers to the Debtors, their predecessors, successors, and affiliates and "BT" refers to British Telecommunications, PLC, and its predecessors, successors, and affiliates. *See* November 2003 settlement agreement between MCI and BT, Ex. 1.

2

MCI remitted payments to BT in a bank account in the name of Concert until March 2002, when Concert's bank account was closed and replaced by an account in the name of CGN Contract LLC. Declaration of Alfredo R. Perez in Support of Reorganized Debtors' Response to Motion to Compel Allowance and Distributions in Respect of Certain Class 6 Claims Held by Staro Asset Management LLC ("Perez Declaration"), Ex. 7. On May 23, 2002, the dissolution of the Concert joint venture led BT to start billing MCI under the name BT Global Networks (USA), Inc. Perez Declaration, Ex. 10. The Debtors still remitted payments in the account in the name of CGN Contract LLC. Id.

An August 23, 2002 invoice instructs the Debtors to remit payment by check to BT Ignite Global Business, 11921 Freedom Drive, Reston Town Center, Reston, Virginia, 20190, USA, or by wire transfer to the account open earlier the same year in the name of CGN Contract LLC. Perez Declaration, Ex. 13. The "Payment Remittance Report" submitted by BT with this invoice mentions BT Global Networks (USA), Inc., as payee and provides information identifying the same account in the name of CGN Contract LLC. Id.

On July 21, 2002, and November 8, 2002, the Debtors initiated cases under chapter 11 of title 11 of the United States Code ("the Bankruptcy Code"). They filed their schedules of liabilities, including claims nos. 312000610 and 212000150, held by "CGN Contract LLC…Reston, VA…," as undisputed, non-contingent and liquidated claims in the amounts of $17,242,494.64 and $3,483,641.24, respectively. Perez Declaration, Ex. 1, 2. BT filed timely proof of claims nos. 26279 and 26771 based on the distribution agreement. Perez Declaration, Ex. 3, 4.

3

The Debtors' plan of reorganization ("the Plan") was confirmed on October 31, 2003, and took effect on April 20, 2004 ("the Effective Date"). In November 2003, with the approval of the Court, MCI and BT settled their disputes about the claims filed by BT. *In re WorldCom, Inc.*, No. 02-13533 (Bankr. S.D.N.Y. Nov. 25, 2003) (order approving settlement). It is undisputed that, pursuant to the settlement, the claims filed by BT were satisfied. Transcript of Oral Argument, 18-19, *In re WorldCom, Inc.*, No. 02-13533 (Bankr. S.D.N.Y. Sept. 20, 2005).

Staro alleges that on June 30, 2003, an entity named CGN Contract LLC, located at 318 Albert Street, East Melbourne, Victoria 3002, Australia, assigned claims nos. 312000610 and 212000150 to Staro. Staro submitted the assignment agreements to the Court. Motion to Compel Allowance and Distributions in Respect of Certain Class 6 Claims Held by Staro Asset Management LLC, Ex. A. Staro filed notices of transfer of claim addressed to the same entity in Australia. Id., Ex. B. It also submitted invoices from "CGN Contract LLC" to "MCI International Telecommunications Corp." Ex. A. About a month later, Staro executed an addendum to the assignment agreements with "CGN, LLC" and its parent "Circlecom Ltd." Perez Declaration, Ex. 21. On August 26, 2005, Staro moved to compel allowance and distributions for claims nos. 312000610 and 212000150. The Debtors filed a response along with the Perez Declaration. A hearing was held on September 20, 2005.

## DISCUSSION

### *Parties' Contentions*

Staro notes that, under the Bankruptcy Code, a claim listed on a debtor's schedules is deemed filed, unless disputed or listed as contingent or unliquidated. *See* 11

4

U.S.C. § 1111(a). A filed claim, unless objected to, is deemed allowed. *See* 11 U.S.C. § 502(a). Staro points to § 7.01 of the Plan, which provides that the Debtors had 180 days from the Effective Date to file objections to claims. This deadline expired on October 18, 2004, without any objection from the Debtors. Staro concludes that the Court should order the Debtors to make distributions to Staro.

Staro asserts that the claims filed by BT did not supersede the scheduled claims because the claims filed by BT do not mention "CGN" or "Concert Global Networks" as a claimant and because the MCI/BT Summary of Contracts attached to the November 2003 settlement agreement between MCI and BT does not mention "CGN" or "Concert Global Networks" under the "BT Receivables from MCI" heading. Tr. 5, 16-18; s*ee also* November 2003 settlement agreement between MCI and BT, Ex. 1.

MCI contends that the assignor did not own scheduled claims nos. 312000610 and 212000150 and therefore Staro cannot own them either. MCI explains that these scheduled claims were part of claims owned by BT, as a successor to Concert Global Networks ("CGN"). MCI asserts that the proofs of claim nos. 26279 and 26771 filed by BT superseded these scheduled claims and were ultimately settled and satisfied. MCI clarifies that "CGN Contract LLC," an entity based in Reston, Virginia, only served for remittance of payments from MCI to BT. MCI further points out that the notices of assignment were given to the entity allegedly located in Australia, which from the start did not own the claims.

*Analysis*

After having examined the record, the Court finds that the following were or are all BT's affiliates: BT Global Networks (USA), Inc.; BT Global Networks, LLC; BT

5

Global Networks Contracts, LLC; BT Ignite Global Business; Communications Networking Service Company; Concert Communications Company; Concert Global Networks Contracts, LLC; Concert Global Networks USA, Inc.; Concert Global Networks USA, LLC. *See* November 2003 settlement agreement between MCI and BT; id., Ex. 1; Perez Declaration Ex. 10, 13. The Court also finds that MCI made payments to BT through CGN Contract LLC, which served only as a pass-through payee entity. Perez Declaration, Ex. 7-13.

Thus, claims filed by BT included the interests of BT's affiliates despite the absence of the words "CGN" or "Concert Global Networks" in these BT claims. By the same token, the absence of these words in the MCI/BT Summary of Contracts, attached to the November 2003 settlement agreement between MCI and BT, under the "BT Receivables from MCI" heading is of no consequence. Tr. 17-18.

A filed proof of claim supersedes the corresponding claim scheduled earlier. Fed. R. Bankr. P. 3003(c)(4). Claims nos. 26279 and 26771 filed by BT on January 22, 2003 superseded scheduled claims nos. 312000610 and 212000150. Perez Declaration, Ex. 1-4. The assignment agreements come later in June 2003 and therefore could not transfer ownership of the scheduled claims.

Further, the Court holds that Staro cannot own claims nos. 312000610 and 212000150 because its assignor did not own them. The Court agrees with the Debtors that the invoices from CGN presented by Staro "do not have anything to do with the six invoices that form the basis of the scheduled claims which were from Concert and then BT all in Reston, Virginia…" Tr. 11. The Court also takes notice that, although the addendum to the assignment agreements provides that "Circlecom and CGN will use

6

their best efforts…to have the Claims allowed by the Bankruptcy Court….," nobody representing Circlecom or CGN appeared before the Court. *See* Perez Declaration, Ex. 21 ¶ 1(a); Tr. 12. The record finally shows that the notices of transfer of claim were addressed to the transferor entity located in Australia and not to the actual owner of the claims, BT. Tr. 7. Therefore, BT could not object to the transfer.

Paragraph 16(b) of each assignment agreement provides that Wisconsin law, expect for choice of law rules, governs the rights and obligations of the parties. Such a choice of law clause is enforceable in New York, where this Court is sitting. *See, e.g., Cram v. Pepsico, Inc.*, 31 Fed. Appx. 39, 43 (2d Cir. 2002); *In re Enron Corp.*, 300 B.R. 201, 208 (Bankr. S.D.N.Y. 2003) (applying Texas law pursuant to a choice of law contract clause).

Under Wisconsin law, an assignee cannot have more rights than its assignor.[4] *Callies v. Reliance Laundry Co.*, 206 N.W. 198, 200 (Wis. 1925); *Allison v. Manzke*, 94 N.W. 659, 662 (Wis. 1903); *Town of Mount Pleasant v. Hartford Accident and Indem. Co.*, 625 N.W.2d 317, 320 n.2 (Wis. Ct. App. 2001). Therefore, if Staro's assignor did not own the claims, Staro cannot own them as assignee.

Staro cannot compel allowance of claims it does not own or any distributions related thereto, and the Court must therefore deny its motion.

## CONCLUSION

Staro's motion is denied. The Debtors shall settle an order consistent with this opinion.

---

[4] The rule would not differ in most other jurisdictions, including New York. *See In re Gen. Assignment for the Benefit of Creditors of Int'l Ribbon Mills, Ltd., Assignor, to Maxwell Sturtz, Respondent*, 325 N.E.2d 137, 139 (N.Y. 1975) ("[A]n assignee never stands in any better position than his assignor."); *Allstate Ins. Co. v. Administratia Asigurarilor de Stat*, 875 F. Supp. 1022, 1026 (S.D.N.Y. 1995) (quoting *Int'l Ribbon Mills*); *see also* Restatement (Second) of Contracts § 336 (1981).

Dated: New York, New York
      March 31, 2006

                                              **s/Arthur J. Gonzalez**
                                              UNITED STATES BANKRUPTCY JUDGE