**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

For Publication

—————————————————————— :

In re:                                                                    :          Chapter 11

                                                                              :

WORLDCOM, INC., *et al.*,                              :          Case No. 02-13533 (AJG)

                                                                              :

                              Reorganized Debtors.      :          (Confirmed)

—————————————————————— :

### OPINION GRANTING REORGANIZED DEBTORS' SUPPLEMENTAL
### OBJECTION TO CLASS PROOF OF CLAIM NO. 22680

**APPEARANCES:**

DLA PIPER RUDNICK
Special Counsel to the Reorganized Debtors
1251 Avenue of the Americas
New York, NY 10020-1104

      Timothy W. Walsh, Esq.
          Of Counsel

MILBERG WEISS BESHARD & SCHULMAN LLP
Attorney for Tammy Crump, Pauline Rivers, Gary Morris and Donna Chaplinski
One Pennsylvania Plaza
New York, NY 10019-1229

      Jerome M. Congress, Esq.
          Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

## I. INTRODUCTION

The matter before the Court involves a proof of claim filed by Tammy Crump, Pauline Rivers, Gary Morris and Donna Chaplinski (collectively, "Crump") in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors," "WorldCom," or "MCI").  On January 22, 2003, Crump filed a claim (the "Claim") numbered 22680 seeking damages of approximately $200 million from WorldCom.  Crump seeks to represent a nationwide class on behalf of itself and the putative class members against WorldCom for WorldCom's alleged fraudulent marketing of its long-distance programs. The Debtors seek to expunge the Claim because the putative class fails to meet the requirements of Rule 7023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which incorporates Rule 23 ("Rule 23") of the Federal Rules of Civil Procedure into the Bankruptcy Rules.

## II. JURISDICTION

The Court has subject matter jurisdiction over this proceeding pursuant to sections 1334 and 157(b) of title 28 of the United States Code, the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), and paragraph 32 of this Court's Order Confirming Debtors' Modified Second Amended Joint Plan of Reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  This matter is a core proceeding pursuant to section 157(b)(2)(B) of title 28 of the United

States Code.  Venue is proper before this Court pursuant to sections 1408 and 1409 of title 28 of the United States Code.

## III. BACKGROUND

On July 21, 2002 (the "Commencement Date") and November 8, 2002, the Debtors commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  By orders dated July 22, 2002 and November 12, 2002, the Debtors' chapter 11 cases were consolidated for procedural purposes.

By order dated October 29, 2002, this Court established January 23, 2003 as the deadline for the filing of proofs of claim against the Debtors (the "Bar Date").  By order dated October 31, 2003, the Court confirmed the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan").  On April 20, 2004, the Plan became effective ("Effective Date").  Upon the Effective Date, the Debtors changed its name to MCI, Inc.

On September 8, 2000, Crump filed a complaint (the "Complaint") against WorldCom in the Tennessee Chancery Court (the "Chancery Court") alleging that through fraudulent advertising WorldCom had induced consumers to subscribe to various MCI long-distance services and that such customers were injured as a result of these subscriptions.  Crump thereafter sought certification for a nationwide class on behalf of Crump and the putative class members against WorldCom in the Chancery Court.  On September 19, 2000, the Chancery Court granted conditional *ex parte* certification (the "Conditional Certification," "*Ex Parte* Certification," or "Conditional *Ex Parte* Certification") on behalf of the nationwide class[1] (the "Class") and appointed Crump as the class representative.

---

[1] The Complaint seeks relief for the nationwide class predicated upon common law fraud and the consumer protection laws of forty-one states and the District of Columbia.  Compl. ¶¶ 33,51.

The Complaint alleges that WorldCom engaged in the uniform misrepresentation of the cost of MCI long-distance services and thereby induced Crump to subscribe to MCI.  Specifically, "MCI offer[ed] its products and services to consumers (on a nationwide basis) through marketing solicitations made directly by MCI, its subsidiaries and/or other companies on behalf of MCI.  Further, MCI solicit[ed] potential customers (on a nationwide basis) through the use of direct mail, television, radio, internet, print advertising, and telemarketing."  Compl. ¶ 8.  In reliance on MCI's advertising, which is alleged to be fraudulent, Crump subscribed to MCI's long-distance services and Crump sustained injury as a result.

While the Complaint lists a total of nine MCI services that were allegedly fraudulently marketed, it focuses on and details specific allegations of fraudulent solicitation associated with four services, which are the (i)"Five cents a minute everyday" long-distance calling plan (the "Everyday Plan"), (ii) MCI 10-10-9000 directory assistance plan (the "Directory Assistance Plan"), (iii) MCI 10-10-321 dial around long-distance service (the "Dial Around Service"), and (iv) MCI frequent flier plan (the "Frequent Flier Plan").

Regarding the Everyday Plan, MCI advertised that consumers who switched to the Everyday Plan would pay a rate of five cents a minute for their long-distance service.  Crump alleges that WorldCom failed to inform or adequately disclose the Everyday Plan's monthly minimum fee, service fees, and that these fees were charged regardless of whether consumers placed long-distance calls during the month.  Additionally, MCI failed to inform or adequately disclose that the Everyday Plan was not available during all calling times and for certain interstate long-distance calls.

4

Regarding the Directory Assistance Plan, MCI advertised that consumers could access MCI directory assistance by dialing 10-10-9000.  MCI would then provide two numbers to anywhere in the United States for 99 cents.  As part of the service, the operator could connect the consumer to one of those phone numbers.  Crump alleges that MCI failed to inform or adequately disclose that users of this service were billed for the request regardless of whether the phone number was located, that MCI's database did not contain every phone number in America, that this rate did not apply to consumers who were not members of an MCI calling plan, and that MCI charged consumers using this plan a Federal Universal Service Fee.

Regarding the Dial Around Service, MCI advertised that by dialing 10-10-321 consumers could access MCI and "save up to 50% off AT&T's basic rate."  Compl. at ¶ 16.  Crump alleges that WorldCom failed to inform or adequately disclose that the 50% savings was from the other carriers non-discounted phone services, that the rates did not apply to all calls, and that there was a minimum time requirement for calls to qualify for the discount.

Finally, regarding the Frequent Flier Plan, MCI advertised a program that awarded MCI customers with frequent flier miles for using MCI services.  Crump alleges that MCI failed to inform consumers that there was a federal tax on the miles earned, that current and certain former subscribers were ineligible, and that the program contained several other limitations.

In October 2000, WorldCom removed the action to the United States District Court for the Western District of Tennessee.  WorldCom argued that the Federal Communication Act and the "filed rate doctrine" preempted the Chancery Court's ability

to hear the Claim.  Crump argued that removal from the Chancery Court was improper.

The district court ruled that federal law did not completely preempt the Claim and

remanded the case to the Chancery Court.  *Crump v. WorldCom, Inc.,* 128 F. Supp. 2d

549 (D. Tenn. 2001).

On July 21, 2002, discovery on the Complaint was stayed as a result of the

Debtors' bankruptcy filing.  On January 22, 2003, Crump filed a proof of claim for the

alleged damages, which constituted "approximately $200 million in the aggregate (plus

interest, costs and attorneys' fees as allowed)."  V.S. of Class Action Pls. Pursuant to

Bankruptcy Rule 2019(a) dated, March 19, 2003.  The Claim referenced the Complaint

and the Chancery Court's Conditional Certification.

On October 15, 2004, the Debtors objected to the Claim in the Debtors' Seventy-

Second Omnibus Objection to Proofs of Claims (the "Claim Objection").  On January 4,

2005, Crump filed the Response of the Class Creditors to the Debtors' Objections to the

Crump Creditors' Class Claim ("Crump's Response to the Claim Objection").  On April

21, 2005, the Debtors filed the Memorandum in Support of Debtors' Supplemental

Objection to the Purported Class Proof of Claim of Tammy Crump et al. (the "Debtors'

Supplemental Objection").  On June 7, 2005, Crump filed the Crump Creditors'

Response to the Supplemental Objection to Class Proof of Claim (the "Crump's

Response to the Supplemental Objections").  On June 10, 2005, the Debtors filed the

Reply Memorandum in Further Support of the Debtors' Objection to Purported Class

Proof of Claim of Tammy Crump et al. (the "Debtors Reply to Crump's Response").  On

June 14, 2005, oral arguments were heard before the Court and the Court took the matter

under advisement.

## IV. DISCUSSION

Crump argues that the Court should recognize the Conditional Certification and that the Debtors are estopped from challenging the Conditional Certification. Additionally, Crump argues that the Complaint meets Rule 23's requirements for certification.  Alternatively, if the Court does not certify the Class, Crump seeks discovery to determine whether a class can be certified.  The Debtors counter that the Court should not grant deference to the *Ex Parte* Conditional Certification and that the Debtors never waived their rights to challenge certification.  Additionally, the Debtors argue that Crump only has standing to represent the Class for the Everyday Plan, and that the Class cannot be certified because it fails to meet the requirements of Rule 23.[2] Finally, the Debtors argue that discovery is not warranted because the Complaint's undisputed allegations demonstrate that the Class cannot be certified.

### A. Recognition of the Conditional Ex Parte Certification

The Debtors argue that the Court should not recognize the Conditional *Ex Parte* Certification.  This Court has previously held that the Court should not rely on the state court's certification and must make its own determination whether to certify the class.  *In re WorldCom, Inc., et* al., (Denying Motion of Duane G. West), 2002 WL 32773997 (Trial Motion, Memorandum and Affidavit), at *8 (Bankr. S.D.N.Y. Oct. 29, 2002). Likewise, "the [Sixth Circuit] upheld the bankruptcy court's refusal to certify a class that had previously been certified in state court." *In re Mortgage & Realty Trust*, 125 B.R.

---

[2] The Debtors argue that the Class is not certifiable.  Specifically, they argue (i) the advertisements utilized multiple forms of media or were oral, and the Court would be required to perform an analysis of exactly which advertisements each Class member saw or heard and their reliance on those advertisements; (ii) the Complaint's allegations relate to distinctly different consumer products, some of which are not even long-distance products; and (iii) certification requires the Court to apply the laws of over 41 states and the District of Columbia.

575, 582 (Bankr. D. Cal. 1991)(explaining *Reid v. White Motor Corp.*, 886 F.2d 1462

(6th Cir. 1989)).  Especially in this case where the certification was *ex parte,* the Court

would have to perform its own analysis.  *Ex parte* certification has attracted much

criticism from both commentators[3] and federal courts,[4] and the Tennessee state courts

have ended the practice.[5]  Even if this Court accepted a state court's certification as is, it

is a conditional *ex parte* certification, which in any case the Court would not recognize as

conclusive.

Finally, Crump argued that the Debtors were estopped from challenging the

Conditional Certification.  The Debtors had the opportunity to challenge the Conditional

---

[3] *See* Schwartz, Behrens and Lorber, *Federal Courts Should Decide Interstate Class Actions: A Call for Federal Class Action Diversity Jurisdiction Reform*, 37 Harv. J. On Legis. 483, 502 (2000)(providing an example of how *ex parte* certification was abused in a Tennessee state court).  "In a lawsuit filed against a major automobile manufacturer in a Tennessee state court, plaintiffs filed several inches of documents with their complaint.  By the end of the same day the lawsuit was filed, the court certified a nationwide class of 23 million automobile owners, one of the largest class actions ever certified by any court.  In its certification order, the court stated that it had conducted a 'probing, rigorous review' of the matter; a practical impossibility given the few hours allotted the review and the utter lack of thoughtful response to the plaintiff's motion.  This practice of *ex parte* certification offends notions of due process and fundamental fairness."  *Id.* (internal citations omitted); *see also* Schwartz, Behrens and Lorber, *Tort Reform Past, Present and Future: Solving Old Problem and Dealing With "New Style" Litigation.*, 27 Wm. Mitchell L. Rev. 237, 264 (2000)(describing the difference between certain state courts' and the federal courts' process of certification).  "Federal courts are required to perform a rigorous analysis of requests for class certification.  State courts, on the other hand, often take a laissez-faire attitude toward certifying statewide or even nationwide-classes.  Some states allow their courts to engage in so-called drive-by class certifications, where a class is conditionally certified at the request of plaintiffs' counsel - even before defendants have been served with a complaint or given an opportunity to file an answer.  Courts in other states use certification standards so lax that almost every class certification motion is granted, even though it is apparent that the case cannot be tried to a jury under basic due process principles."  *Id.* (internal citations and quotations omitted); *see also* Wheeler and Vance, *Alabama Supreme Court Rings Death Knell for "Conditional" Ex Parte Certifications*, 8 C. Act. & Dev. Sts. 3 (1998)(describing the unfair burdens plaintiffs faced in Alabama before the Alabama Supreme Court disallowed *ex parte* certification).

[4] *See Pipes v. American Sec. Ins. Co.*, 169 F.R.D. 382, 384 (D. Ala. 1996)(noting *ex parte* certification is "quite troubling," particularly in "fraud claims typically unsuitable for class treatment"); *see also Romstadt v. Apple Computer*, 948 F. Supp. 701, 710 (D. Ohio 1996), *amended*, 1996 U.S. Dist. LEXIS 20477 (N.D. Ohio Dec. 10, 1996).

[5] *See* Tennessee Rules of Civil Procedure 23.03(2004)(stating that a hearing on certification should take place "as soon as practicable after the commencement of an action brought as a class action, but never in a hearing without all representative plaintiffs and all the defendants having been given an opportunity to be present.")

Certification for approximately two years and failed to do so.[6]  The Court does not find a basis to preclude the Debtors' ability to challenge the certification.  The Chancery Court's certification was conditional, and the Chancery Court never certified Crump as a *bona fide* class.  Furthermore, discovery in the state case had been stayed before the Debtors had a chance to respond to Crump's discovery request in the Chancery Court.[7]

### B. Standing

The Debtors argue that Crump lacks standing to represent the putative class for all but one of the services listed in the Complaint.  The Complaint fails to allege that Crump subscribed to or used any plan or service listed in the Complaint, other than the Everyday Plan.  Compl. ¶¶ 1-4.  At the hearing, Crump appears to have conceded that Crump purchased only the Everyday Plan.  Transcript of Hearing ("Tr.") at 50.  "The Supreme Court has held that if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant [], none may seek relief on behalf of himself or any other member of the class."  *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005)(quoting *O'Shea v. Littleton*, 414 U.S. 488, 494

---

[6] Crump argues that the Debtors are estopped from challenging the Conditional Certification because they litigated the federal filed rate doctrine in the federal and state courts and never challenged the Conditional Certification.  However, the question of the filed rate doctrine is independent of whether Crump's claim was brought individually or as a class.  If the filed rate doctrine applied to the Complaint's substantive claims, Crump, either individually or as class, would be prohibited from bringing the present action.  Further, Crump argues that *Martin v. Amoco Oil Co.*, 679 N.E.2d 139, 145 (Ind. Ct. App. 1997), supports the argument that the Debtors are precluded from challenging the Conditional Certification.  *Martin* held that by "declining to exercise their known right to immediately appeal the class certification and electing to fully participate in the proceedings," the appellants waived their right to appeal.  *Id.*  However, in *Martin*, when the class certification orders were issued, they were "clearly final and appealable interlocutory orders."  *Id.*  Additionally, *Martin* was an Indiana state court applying that state's rules regarding waiver.

[7] Crump had made its initial discovery request prior to the Debtors' bankruptcy, but the Debtors' bankruptcy stayed the state court action before the Debtors responded.

(1974)(internal quotations omitted).  Therefore, the Court finds that Crump has standing

only to be considered by the Court as the named plaintiff for the Everyday Plan.[8]

### C. Rule 23

Regarding the Everyday Plan, the remaining issue for the Court to address is

whether Crump meets the requirements of Rule 23 to be certified as a class for the

Everyday Plan.[9]

Rule 23 provides:

(a) Prerequisites to a Class Action.  One or more members of a class may sue or
be sued as representative parties on behalf of all only if (1) the class is so numerous that
joinder of all members is impracticable, (2) there are questions of law or fact common to
the class, (3) the claims or defenses of the representative parties are typical of the claims
or defenses of the class, and (4) the representative parties will fairly and adequately
protect the interests of the class.

(b) Class Actions Maintainable.  An action may be maintained as a class action if
the prerequisites of subdivision (a) are satisfied, and in addition:
> …
> (3) the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting only
> individual members, and that a class action is superior to other available

---

[8] Crump characterizes the services and plans listed in the complaint as MCI long-distance services.  Based
on this characterization, Crump argues that the Court should treat Crump's alleged injury from the
Everyday Plan as typical of all of the Class members' injuries for all of the plans and services listed in the
Complaint.  However, these services and plans are distinctly different consumer products.  One of these
services offered frequent flier miles and another discounted calling.  They are not even all long-distance
products.  One of the services provides directory assistance.  Therefore, even if Crump itself established
standing for the other services and products, a class seeking relief for the fraudulent marketing of these
diverse services and products would fail to meet the commonality and typicality requirements under Rule
23(a).

[9] "By way of background, nothing in the Bankruptcy Code or Rules expressly permits a creditor to file a
proof of claim…on behalf of all other creditors similarly situated.  Indeed, prior to 1988, many courts had
held that 11 U.S.C. § 501 provides an exclusive list of those who may file a representative claim and that
class proofs of claims are invalid as a matter of law because class representatives are not listed in § 501."
*In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005). While the Supreme Court and the Second
Circuit have not issued a ruling on this matter, the "the vast majority of courts conclude that class proofs of
claim are permissible in a bankruptcy proceeding."  *In re Kaiser Group Int'l*, 278 B.R. 58, 62 (Bankr. D.
Del. 2002).  This Court has held that "[f]or a class action claim to proceed three requirements must be met
(1) the bankruptcy court must direct Rule 23 to apply, (2) the claim must satisfy the requirements of Rule
23, and (3) the benefits that generally support class certification in civil litigation must be realizable in the
bankruptcy case."  Memorandum Opinion Regarding M. Ray West and Class Claimants' Motion for
Certification Under Fed. R. Bank. 7023, at 5, *In re WorldCom Inc.*, Case No. 02-13533 (dated, May 11,
2005).

methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Ascertainability (implied requirement)*

In addition to the stated elements of Rule 23(a) and (b), which will be discussed *infra*, courts have held that class members must be able to be ascertained through "reference to objective criteria" as an implied prerequisite for certification. *Zapka v. Coca-Cola Co.* 2000 WL 1644539, at *3 (N.D.Ill. Oct. 27, 2000); (followed by *Dunnigan v. Metropolitan Life Ins. Co*., 214 F.R.D. 125, 135 (S.D.N.Y. 2003); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323, 336  (S.D.N.Y. 2002)).[10]  *Zapka* explained, "while Rule 23(a) does not expressly require that a class be definite in order to be certified; however, a requirement that there be an identifiable class has been implied by the courts." *Zapka,* 2000 WL 1644539, at *2-3 (internal citations and quotations omitted).  "The Court must be able to make this determination without having to answer numerous [individualized] fact-intensive questions." *Fogarazzo v. Lehman Bros*., 232 F.R.D. 176, 181 (S.D.N.Y. 2005)(internal citations omitted).[11]

---

[10] In *Zapka*, the plaintiff argued that Coca-Cola misrepresented to its customers that Diet Fountain Coke ("Fountain Coke") was sweetened with aspartame and did not contain saccharine.  In fact, Fountain Coke contained saccharine.  Allegedly induced by Coke's misrepresentation, the plaintiff drank the Fountain Coke.  The plaintiff attempted to certify a class for all the similarly situated individuals who drank the Fountain Coke under the belief that it did not contain saccharin.  The *Zapka* court held that the membership in the class is dependent upon a subjective standard.  Many people would have drunk the Fountain Coke irrespective of whether it contained saccharin.  To ascertain the existence of a class, a court would be burdened with determining the state of mind of each person who drank Fountain Coke.

[11] "There are two primary purposes of properly identifying the proposed class.  First, a properly identified class alerts the parties and the court to the burdens that such a process might entail; and second, proper identification of the class insures that those individuals actually harmed by a defendant's wrongful conduct

The Debtors argue that the Class lacks ascertainability because the Class membership is contingent upon the state of mind of "millions of MCI customers." Debtors' Supplemental Objection at 12.[12]  The Complaint alleges that the named plaintiffs were "not aware of the misrepresentations complained of herein."  Compl. ¶¶ 1-4.  Likewise, the Complaint seeks certification on "behalf of a class of all persons who incurred any cost… resulting from the misleading, deceptive, tortuous, and/or other wrongful conduct by Defendant described herein."  *Id.* ¶18.  There are a multitude of reasons why Class members chose to subscribe to the Everyday Plan, other than the Debtors' alleged omissions.[13]  Class members must demonstrate that they subscribed to the Everyday Plan as a result of being deceived by the fraudulent advertisements. Consumers who were not aware of, or did not rely on, the alleged false advertising could not have suffered damage from fraudulent advertising.[14]  Crump counters that the only basis for customers to subscribe to the Everyday Plan was because they relied on the

---

will be recipients of the relief eventually provided."  *Zapka,* 2000 WL 1644539, at *2-3 (internal citations and quotations omitted).

[12] The Debtors' contention is supported by Crump's assertion that "issues of causation or reliance can be determined on a class-wide basis."  Compl. ¶ 37 (Crump noted that the Tennessee Consumer Protection Act of 1977 does not require reliance.)  Many of the state laws that the class action is being brought under require reliance.  *See Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 356 (Tex. App. 2003)(listing the states that require reliance or causation).  Likewise, Crump seeks to certify a nationwide class based on common law fraud.  Common law fraud requires reliance.  *See In re Woodward & Lothrop Holdings*, 205 B.R. 365, 371 (Bankr. S.D.N.Y. 1997).

[13] The Debtors argue that Class members may have subscribed to the Everyday Plan even if they were aware that the Everyday Plan's discounted rate was limited to certain time periods; did not apply to all interstate long-distance calls; or carried monthly service charges.  The Everyday Plan's customers were billed monthly and were aware of the charges after they received their first bill.  Transcript of Hearing at 57.

[14] The class would not be ascertainable if the Class included members that did not suffer damages.  *See Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 581 (D. Ill. 2005)(addressing the difficulty of ascertaining a class predicated on the members' beliefs).  "To recover, class members would be required to show they were misled, deceived, tricked, or treated unfairly.  Class membership implies a state of mind element that requires an individual examination of each class member.  [The] proposed class is inadequately defined. Considerable cost and time would have to be expended by the court and parties before the class could even theoretically be identified."  *Id.*

alleged fraudulent advertising regarding the Everyday Plan's costs, and subscribing to the Everyday Plan demonstrates the Class members' reliance.

The Court cannot readily ascertain or infer Class membership. Crump defines the Class as consumers who where induced by WorldCom's fraudulent advertising to subscribe to the Everyday Plan. This definition "would make membership of each class member contingent on each [C]lass member's state of mind because [Crump] alleges she was deceived by [the Debtors'] allegedly deceptive advertisements and marketing practices and relied on those representations." *Zapka,* 2000 WL 1644539, at *3. There are no objective criteria to determine that the Class members were induced to subscribe to the Everyday Plan through reliance on the Debtors' alleged omissions. To establish class membership, the Court would be required to examine every individual Class member's state of mind.

The alleged omissions may not have impacted every, or even most, Class members' decision to subscribe to the Everyday Plan.[15] As discussed more fully *infra,* the alleged omissions' relevance is dependent upon each Class member's anticipated long-distance usage (the "Calling Habits").[16] Similarly, Class members may have subscribed to the Everyday Plan because they felt that MCI provided superior long-distance services, e.g. superior connectivity or customer service. After receiving their first bill, Class members were aware of the Everyday Plan's costs and limitations. Nevertheless, many of the Class Members remained subscribers.

---

[15] Class members may have subscribed to the Everyday Plan even if they were aware that the Everyday Plan's discounted rate was limited to certain time periods, did not apply to all interstate long-distance calls, or carried monthly service charges.

[16] The Class members' Calling Habits may vary based upon the geographic region the Class members anticipated calling, the number of minutes or hours Class members anticipated using, and the time of the day the Class members anticipated calling.

13

Additionally, and perhaps more significantly, the Complaint alleges that WorldCom suppressed at least four distinct aspects of the Everyday Plan[17] (i.e., the existence of a monthly minimum charge, the existence of a service charge, and the unavailability of the discounted rate for certain calling times and for certain interstate long-distance calls). This would require the Court to perform an individualized analysis of each Class member's idiosyncratic Calling Habits to ascertain Class membership. The Class members are diverse individuals, with different priorities and unique needs. As a result, different aspects of the Everyday Plan may have been relevant to individual Class members. For example, if a Class member's anticipated long-distance charge would surpass the minimum charge, the Class member would not have relied upon any presumption as to the presence or absence of such a charge. Likewise, if a Class member anticipated placing long-distance calls during the time period that the discounted rate applied, the Class member would not have relied upon 24-hour availability of the discounted rate. Moreover, Class members may have placed different weight on each of the alleged omissions, resulting in numerous variations and permutations of the omissions' relevance to each Class member.[18]

Crump argues that rather than focusing on the Class members' reliance, the Court should focus on the Debtors' alleged suppression of information. Crump asserts that the Debtors' uniform fraudulent marketing scheme to misrepresent the true price of the Everyday Plan is similar to the actions of the defendants in *Synthroid Mktg. Litig.*, 188

---

[17] The Complaint enumerates seven omissions regarding the Everyday Plan.

[18] Additionally, even if the Court were able to determine that Class members relied on the alleged omissions, the Court would be required to determine on which specific omission each Class member relied. For example, there would be no damages for a Class member that was induced to subscribe to the Everyday Plan in reliance that the service was available for all long-distance phone calls if the Class member never placed a long-distance call during the period that the discounted rate did not apply.

14

F.R.D. 295 (D. Ill. 1999). There, the defendants, pharmaceutical companies, suppressed information that a drug named Synthroid was the bioequivalent of similar drugs. The district court certified a class consisting of all consumers who purchased the drug. *Synthroid* focused on the defendants' suppression of medical information.

However, *Synthroid* is inapposite. There, the class members' reliance was not a central issue. *Synthroid* found that as result of the suppression, the market price of the Synthroid was more expensive than bioequivalent drugs.[19] Thus, irrespective of the customers' subjective reason for purchasing Synthroid, all of the customers suffered objective harm. Crump has failed to demonstrate that members of the Class suffered objective harm. Moreover, the *Synthroid* plaintiffs' cause of action was substantially predicated on state and federal laws where "[i]ndividual reliance is not an element of a claim." *Id.* at 300. Finally, Synthroid addressed the suppressing of one material fact. In contrast, the Debtors are alleged to have suppressed many different aspects of the Everyday Plan, e.g. availability of calling times and geographic areas, and surcharges.[20]

"Considerable cost and time would have to be expended by the [C]ourt and parties before the class could even theoretically be identified.*" Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 581(D. Ill. 2005). Therefore, the Court finds that Crump fails to meet Rule 23's implied requirement of ascertainability because the Class membership is

---

[19] "[I]f the defendants had not engaged in such conduct, class members would have paid less for Synthroid because defendants would not have been able to maintain an artificially high price spread between Synthroid and other brands." *In re Synthroid Mktg. Litig.*, 188 F.R.D. 295, 300 (D. Ill. 1999).

[20] While *Synthroid* noted, "that it is well established that individual issues of reliance do not thwart class actions " *Id.* (citing *Peterson v. H & R Block Tax Servs.*, 174 F.R.D. 78, 85 (D. Ill. 1997)), *Peterson* and *Synthroid* are distinguishable from the Debtors' alleged fraudulent marketing. *Peterson* and *Synthroid* are addressing situations where it would be "logical to [infer reliance] or when the complaint's allegations make reliance apparent." *Peterson,* 174 F.R.D. at 85. In *Peterson*, a tax preparation company induced consumers to purchase a tax-related service under the belief that the consumers would receive a tax-related benefit. However, the company was aware that the consumers were ineligible for the benefit. The consumers would not have purchased the service if the company had not induced them to believe that they were eligible to receive the tax-related benefit. Likewise, in *Synthroid* the consumers would not have paid more for Synthroid if they had not been induced to believe Synthroid was superior to other drugs.

"contingent on the state of mind of the prospective members." *Zapka,* 2000 WL

1644539, at *3 (internal citations omitted).

*Numerosity Under Rule 23(a)(1)*

Rule 23(a)(1) permits class action treatment only when "the class is so numerous

that joinder of all class members is impracticable." Rule 23(a)(1). "Because the size of a

class is the most important factor in determining impracticability, a class defined so as to

include an extremely large number of class members may, by itself, establish that joining

all class members would be impracticable." 5-23 Moore's Federal Practice - Civil §

23.22. *See Mathis v. Bess*, 138 F.R.D. 390, 393 (S.D.N.Y. 1991)(holding that "120

putative class members demonstrates that the proposed class is so numerous that joinder

of all plaintiffs in a single action would be impractical.") Crump alleges that the

Everyday Plan was marketed to and used by at least tens of thousands of consumers.

Compl. ¶ 21. Likewise, the Debtors do not dispute that the Class meets the requirement

of Rule 23(a)(1). Therefore, the Court finds that Crump meets the numerosity

requirement under Rule 23(a)(1).

*Common Questions of Law or Fact Under Rule 23(a)(2)*

Rule 23(a)(2) requires that "there are questions of law or fact common to the

class." Rule 23(a)(2). "[Commonality] is established if the plaintiffs' and class

members' grievances share common questions of law or fact." *In re Deutsche Telekom

AG Sec. Litig*., 229 F. Supp. 2d 277, 280 (S.D.N.Y. 2002)(internal citations omitted).

"The threshold for commonality under Rule 23(a)(2) is significantly less rigorous than

the Rule 23(b)(3) requirement that common questions of law or fact predominate over

questions affecting only individual class members." *Strain v. Nutri/System, Inc*., 1990
U.S. Dist. LEXIS 17031, at *9 (E.D. Pa. Dec. 12, 1990)(internal citations omitted).

Crump alleges that the Debtors engaged in fraudulent or misleading advertising
regarding distinct aspects of the Everyday Plan.  As discussed, this requires the Court to
make an individualized determination of reliance for each Class member.  In *Strain*, the
defendant was alleged to have engaged in fraudulent or misleading advertising through
multiple forms of media, which required the court to make an individualized
determination of reliance for each class member.  *Strain* noted that the need for a court to
make individualized determinations of each class member's reliance did not defeat the
commonality requirement under Rule 23(a)(2).  *Id.*[21]  Likewise, in this case the need to
determine each Class member's reliance will not defeat the commonality requirement
under Rule 23(a)(2).  Therefore, the Court finds that the Complaint meets the
commonality requirement under Rule 23(a)(2).

*Typicality Under Rule 23(a)(3)*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are
typical of the claims or defenses of the class."  Rule 23(a)(3).  "Typicality is established
when the plaintiff shows that each class member's claim arises from the same course of
events, and each class member makes similar legal arguments to prove the defendant's
liability."  *In re Deutsche Telekom Ag Securities Litigation,* 229 F. Supp. 2d at 280
(internal citations omitted).

*Strain* noted that the need for a court to make individualized determinations of
each class members' reliance did not defeat the typicality requirement under Rule

---

[21] As discussed *infra*, *Strain* held that the advertisements were fatal to the predominance requirement under
Rule 23(b)(3).

23(a)(3).  *Strain*, 1990 U.S. Dist. LEXIS 17031, at *11.  Here, Crump seeks to certify a

nationwide class based on the laws of over 41 states.  In addition to being required to

establish each Class member's reliance, the Court would be required to apply the diverse

laws and varied burdens of proof of many states to the Class members.[22]  Thus, the Class

may not meet the requirement that "each class member makes similar legal arguments."

*In re Deutsche Telekom Ag Securities Litigation,* at 280.  The Court is not required to

address whether the variations in state laws defeat the typicality requirement under Rule

23(a)(3).  These variations defeat certification because the class fails to meet the

predominance requirement under Rule 23(b)(3).  See *infra* (discussion of the

predominance requirement under Rule 23(b)(3)).

     *Adequacy of Representation Under Rule 23(a)(4)*

     Rule 23(a)(4) requires that the named plaintiffs "will fairly and adequately protect

the interest of the class."  Rule 23(a)(4)  "The following two factors serve as basic

guidelines for satisfying Rule 23(a)(4): assurance of vigorous prosecution; and absence of

conflict."  *General Tel Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  The Debtors have

not challenged the qualifications or competence of Crump's attorneys, nor have the

Debtors alleged any conflicts of interest between the Class and Crump's attorneys.

Therefore, the Court finds that Crump meets the adequate representation requirement

under Rule 23(a)(4).

     *Predominance Under Rule 23(b)(3)*

     "To be certified as a class under Rule 23, plaintiffs must satisfy all requirements

of subsection (a) and must prove that the class is 'maintainable' as defined in subsection

---

[22] The variations of the law are addressed more fully in the discussion of the predominance requirement under Rule 23(b)(3).  *Infra.*

18

(b)."  *MTBE,* 209 F.R.D at 336.  Crump asserts that the Class is maintainable under Rule

23(b)(3).  Rule 23(b)(3) requires that "common questions of law or fact predominate over

individual questions and that class treatment is superior to other available procedures."

Rule 23(b)(3).  "Because Rule 23(b)(3) requires that common issues predominate, courts

deny certification where individualized issues of fact abound."  *Id.* at 349.  "The 23(b)(3)

predominance requirement is more stringent and far more demanding than the

commonality requirement of Rule 23(a)."  *Dunnigan,* 214 F.R.D. at 138 (internal

citations and quotations omitted).

Crump alleges that the Debtors fraudulently advertised distinct aspects of the

Everyday Plan to induce consumers to subscribe to the Everyday Plan, and seeks relief

under the laws of many states.  To determine whether the Complaint meets the

predominance requirement under Rule 23(b)(3), the Court will address certification in

light of the false advertising allegations and the application of the laws of many states.

(a) Predominance Under Rule 23(b)(3): False Advertising

The Complaint alleges that the Debtors induced the Class members to subscribe to

the Everyday Plan through false advertising.  As previously noted, reliance is an essential

element of these allegations.  "Claims for money damages in which individual reliance is

an element are poor candidates for class treatment, at best."  *McManus v. Fleetwood*

*Enters*., 320 F.3d 545, 550 (5th Cir. 2003)(internal citations and quotations omitted).  The

Court has held that "[a] class action is generally not appropriate to resolve claims based

upon common law fraud because each class member must prove his or her own reliance.

This is especially true when the claim is based on false advertising."[23]  *In re Woodward*

---

[23] While *Woodward* addressed common law fraud, *Woodward's* reasoning would apply to any state statute
where reliance is an element.  *Woodward* noted that the Pennsylvania consumer fraud statute required

*& Lothrop Holdings*, 205 B.R. 365, 371 (Bankr. S.D.N.Y. 1997). In *Woodward,* the

plaintiff alleged that the defendant, a department store, made false and misleading

statements in connection with the price of bedding. The plaintiff sought to certify a class.

*Woodward* held that the necessity of each member of the class to prove reliance defeats

Rule 23(b)(3)'s predominance requirement.[24]

Here, every Class member would have to prove reliance. As discussed

previously, the Court cannot readily ascertain or infer the Class members' reliance. Class

members may have subscribed to the Everyday Plan even if they were aware of the

alleged omissions. Class members may have preferred MCI's long-distance services.

Likewise, the alleged omissions' relevance is dependent upon each Class member's

idiosyncratic Calling Habits. The burden of establishing reliance is further aggravated by

the allegation that WorldCom suppressed at least four distinct aspects of the Everyday

Plan. This would require individualized proof that a Class member relied upon a specific

omission or omissions and was damaged through reliance on that omission or omissions.

Crump argues that the only reason Class members subscribed to the Everyday

Plan was because they relied on the Debtors' alleged fraudulent omissions. Crump cites

*Synthroid* to support this proposition, however as discussed previously, *Synthroid* is

inapposite. In *Synthroid,* the plaintiffs' cause of action was not predicated on reliance.

---

reliance. *Woodward*, 205 B.R. at 373. Likewise, many state laws that the class action is being brought under require reliance. *See supra,* note 12.

[24] The record before the Court is insufficient to establish whether or to what extent the alleged omissions in the Everyday Plan's advertisements were standardized. The Complaint alleges that for an extended period of time the Debtors used multiple forms of media, including oral representations to fraudulently advertise the Everyday Plan. While these factors tend to indicate that there was not a fixed set of fraudulent statements, the Court is not required to address this issue. As previously noted, the Court cannot infer or readily determine the Class members' reliance on the Debtors' alleged omissions. The Court would be required to make an individualized determination of whether each Class member relied upon an omission. As in *Woodward*, the necessity of each Class member to prove reliance defeats the predominance requirement under Rule 23(b)(3).

The complaint's allegations made reliance apparent, the plaintiff's suffered objective

harm and the defendants suppressed one material fact.  *See supra* (discussion of the

implied requirement of ascertainability).

The Court finds that the individual questions of each Class member's reliance

predominate over common questions of law or fact.  Therefore, the Class is not

maintainable under Rule 23(b)(3).

(b) Predominance Under Rule 23(b)(3): Different State Laws

Crump seeks to certify a nationwide class based on the consumer fraud statutes of

41 individual states and the District of Columbia.  This would require the Court to apply

the laws and the burdens of proof of numerous states to the individual Class members'

claims.  "State consumer protection acts vary on a range of fundamental issues."  *Lyon v.

Caterpillar, Inc.*, 194 F.R.D. 206, 219 (D. Pa. 2000).[25]  These variations include

substantial differences regarding scienter, reliance, statute of limitations, and proof of

injury.  "The differences in the required proofs of the state [consumer protection] statutes

demonstrate that a nationwide certification would not be manageable because of the

multiple and different variables that would have to be proved as to each class member."

*Zapka,* 2000 WL 1644539, at *4.  Likewise, the Court has previously held that the need

of a court to apply diverse laws and varied burdens of proof to the individual class

members' claims defeats the predominance requirement of Rule 23(b)(3).  *See*

Memorandum and Decision Regarding Certain Right of Way Claimants' Request for

Class Certification at, 7-8, *In re WorldCom Inc*., Case No. 02-13533 (dated, Dec. 28,

2004); *see also Henry Schein v. Stromboe*, 102 S.W.3d 675, 698-699 (Tex. 2002)(citing

---

[25] *See Zapka,* WL 1644539 at, *4-5 (analyzing the difficulties associated with applying different state laws
to a nationwide class); *see also Lyon,* 194 F.R.D. at 219-220 (analyzing the many differences in state
consumer protection acts).

numerous federal and state courts that denied certification to class actions because of the need to apply the laws of multiple states).[26]

Likewise, the common law fraud claim would require the Court to apply the laws and the burdens of proof of many states to the individual Class members' claims. "In the absence of a single state law governing each entire common law claim, common questions of law would not predominate over individual questions." *In re Laser Arms Corp. Securities Litigation* 794 F.Supp. 475, 495 (S.D.N.Y. 1989).[27]

Crump argues that it will be able to demonstrate that the various state laws are more similar than different. Crump has had over five years to demonstrate this similarity.[28] The stay of discovery did not prevent Crump from performing the state law comparison analysis. In place of the analysis, Crump relies on case law. However, Crump cites case law that addresses settlement-only cases that are inapplicable.[29]

---

[26] One district court noted, that even "where state law variations are significant, [ ] courts have approved class certification where the evidence in each case [on major factual questions] was either identical or virtually so." *Lyon,* 194 F.R.D. at 219-220 (internal quotations and citations omitted). In the instant case, in addition to the numerous state laws, the Court would be required to evaluate the factual differences among the Class members (e.g., reliance). As in *Lyon,* the need to evaluate "factual differences along with divergent legal issues" defeats the predominance requirement under Rule 23(b)(3). *Id.* "[The] legal and factual differences in the plaintiffs' claims [are] exponentially magnified by choice of law considerations, eclipse any common issues in this case." *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) quoting (*Georgine v. Amchem Prods*., 83 F.3d 610, 1996 U.S. App. LEXIS 11191, 1996 WL 242442, at *2 (3d Cir. 1996)(internal quotations omitted)).

[27] *See Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 725 (11th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988)(upholding the denial of certification of a nationwide class based on common law fraud because the necessity to apply the laws of many states defeats the predominance requirement under Rule 23(b)(3)); *see also* John S. Kiernan, Michael Potenza, Peter Johnson, *Developments in Consumer Fraud Class Action Law*, 537 PLI/PAT 237, 295 -296 (1998)(enumerating the variances of common law fraud under different state laws, including substantial variations regarding the standard of proof, number of elements, scienter, and the economic loss doctrine).

[28] As the movant seeking certification, Crump had the burden of demonstrating, "through an extensive analysis of state law variances, that class certification does not present insuperable obstacles." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986).

[29] Crump's Response to Supplemental Objections cites *Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 63 (D. Mass. 1997)(settlement only) and *Elkins v. Equitable Life Ins. Co*., 1998 U.S. Dist. LEXIS 1557 (D. Fla. 1998)(settlement only).

Settlement-only cases do not require a court to analyze the management problems.[30]

"Confronted with a request for settlement-only certification, a district court need not

inquire whether the case, if tried would present intractable management problems."

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

During the hearing, Crump raised an alternative argument addressing the

difficulties associated with certifying a single class based on the laws of various states.

Crump argued that perhaps the advertisements "emanated from one particular state …

that one state's law could be the governing law for all the claims of all the class

members." Tr. at 54-55.  In the pleadings, Crump failed to notify the Debtors and the

Court of this argument.  Additionally, Crump failed to elaborate adequately on how one

state's law could control.  "State consumer protection acts are designed to protect the

residents of the states in which the statutes are promulgated."  *Lyon*, 194 F.R.D. at 216.

While it is generally not feasible to apply the laws of one state to an entire nationwide

class,[31] this lack of feasibility "is magnified in an area regulated as heavily at the local

level as [long-distance telephone services are], where states, municipalities, and other

local franchising authorities impose individualized requirement."  *Dibbern v. Adelphia*

*Communs. Corp. (In re Adelphia Communs. Corp.),* 325 B.R. 89, 101 (Bankr. S.D.N.Y.

2005).  The Court does not readily see how one state's law could control.

The Court finds that individualized issues of law predominate over common

issues of law because the Court would be required to apply diverse laws and varied

burdens of proof to the individual Class members' claims.  Therefore, the Class is not

---

[30] In settlement-only cases, the litigants have agreed to forgo specific legal rights to reach a settlement.

[31] *See e.g.*, *Dibbern v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.),* 325 B.R. 89, 101
(Bankr. S.D.N.Y. 2005); *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir. 2001); *In re
Pharm. Indus. Average Wholesale Price Litig.,* 230 F.R.D. 61, 83 (D. Mass. 2005); *In re
Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018 (7th Cir. 2002); and *Tracker,* 108 S.W.3d at 356.

maintainable under the predominance requirement of Rule 23(b)(3) because the individual questions of each Class member's reliance predominate and because the Court would be required to apply diverse laws and varied burdens of proof to the Class members' claims.

*Superiority Under Rule 23(b)(3)*

Rule 23(b)(3) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Rule 23(b)(3).  "For a class action to be maintainable not only must the court find that the common questions of law and fact predominate over any questions affecting only individual members, but also it must find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Fischer v. Kletz*, 41 F.R.D. 377, 385 (S.D.N.Y. 1966)(citations and quotations omitted).

The Complaint alleges that class treatment is superior to the other available of methods of adjudication.  The basis for this superiority includes that there would be enormous scales of economies to the courts and parties litigating the common issues; the size of each claim is too small to make the individual litigation economically viable for each member to litigate; and there would be no unusual difficulties to be encountered in the management of the proposed class.

As discussed, there would indeed be unusual difficulties encountered in managing the Class because the Court would be required to make an individualized determination of each Class member's reliance and would be required to apply the laws and burdens of proof of many states.  *See supra* (discussion of the implied requirement of ascertainability under Rule 23 and the predominance requirement under Rule 23(b)(3)).  However, the

Court will address some of the other alleged basis for superiority. Class actions may offer economies of scale and make it economically feasible to litigate small claims in civil litigation. However, "this superiority of the class action vanishes when the other available method is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost." *In re Ephedra Prods. Liab. Litig.,* 329 B.R. 1, 9 (S.D.N.Y. 2005)(internal citations omitted). Additionally, "WorldCom's [customer] service is available to adjudicate and resolve billing disputes. In the ordinary course of business, WorldCom maintains certain customer service programs, policies, and practices, all of which are designed to ensure customer satisfaction." Memorandum Opinion Regarding M. Ray West and Class Claimants' Motion for Certification Under Fed. R. Bank. 7023, at 8, *In re WorldCom Inc.*, Case No. 02-13533 (dated, May 11, 2005). Crump has failed to demonstrate the superiority of a class action suit over every class member filing a proof of claim or contacting WorldCom's customer service.

D. *Discovery*

Crump argued that if the Court does not certify the Class, the Court should permit discovery to determine whether a class can be certified. For the purposes of deciding whether to certify the Class, the Court considered all of the Complaint's factual allegations as true. Based on this analysis, the Court found that Crump fails to meet the burdens imposed by Rule 23.[32] Crump has not identified facts that could possibly be discovered that would change the Court's finding. Likewise, the Court does not see how discovery can cure the Complaint of its infirmities.

---

[32] Specifically, the Complaint fails to satisfy the predominance requirement under Rule 23(b)(3) and to establish that the class is ascertainable consistent with the implied requirement of Rule 23.

**V. Conclusion**

The Court concludes that the Conditional *Ex Parte* Certification of the Class by the Chancery Court should not be recognized and that the Debtors are not been precluded from challenging such certification.  Furthermore, the Court finds that Crump has standing to represent the Class with regard to the Everyday Plan.  With respect to all other plans or services referenced in the Complaint, Crump has failed to establish standing.  Further, with regard to the Everyday Plan, Crump has failed to meet the requirements for certification of a class under Rule 23.  Specifically, Crump has failed to meet the implied requirement under Rule 23 that the class be ascertainable, since membership in the Class is dependent upon each member's subjective state of mind.  In addition, Crump has failed to meet the predominance requirement under Rule 23(b)(3) because individualized issues of fact and law predominate, requiring the Court to determine whether each Class member relied on the Debtors' alleged fraudulent advertising, and to apply the diverse laws of many states to the claims.  Finally, Crump has failed to demonstrate that the Class meets the requirement under Rule 23(b)(3) that class treatment is superior to other available methods, including individual Class members filing proofs of claim or contacting WorldCom's customer service.  Furthermore, the Court finds that additional discovery will not cure the Complaint of these infirmities.

Therefore, based upon the foregoing, certification of the Class is denied.  The

Debtors' supplemental objection to class proof of claim number 22680 is granted and the

class proof of claim is disallowed and expunged.

Counsel for the Debtors is to settle an order consistent with this Court's Opinion.


Dated:    New York, New York
          May 4, 2006

                          **s/Arthur J. Gonzalez**
                          UNITED STATES BANKRUPTCY JUDGE