# Minutes of Proceedings

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------------------x
Date: May 8, 2006                                                                              :
-----------------------------------------------------------------------------------------------x
In re                                                                                          :
WorldCom, Inc., *et al.*,                                                                      :
                                           Debtors.                          :     Case No. 02-13533 (AJG)
                                                                                               :
                                                                                               :
                                                                                               :
_____x

Present: Hon. Arthur J. Gonzalez         Jacqueline De Pierola         _____
        Bankruptcy Judge                 Courtroom Deputy              Court Reporter

Debtors: WorldCom, Inc., *et al.*                Counsel: Weil, Gotshal & Manges LLP
                                                                                     By: Alfredo R. Perez, Esq.

Claimant: Qwest Corporation                      Counsel: Sills Cummis Epstein & Gross P.C.
                                                                                     By: Andrew H. Sherman, Esq.

**Proceeding:**   Motion of Reorganized Debtors to Enforce the Plan and Confirmation Order against Qwest Corporation

**Order:**        For the reasons set forth in the opinion attached hereto as Exhibit A, the relief sought is

     [X] Granted     [ ] Denied

    FOR THE COURT: Kathleen Farrell, Clerk of the Court

    BY THE COURT:

**s/Arthur J. Gonzalez**                  5/09/2006         Jacqueline De Pierola
   United States Bankruptcy Judge            Date               Courtroom Deputy

EXHIBIT A

Commencing on July 21, 2002 and November 8, 2002 (the "Commencement Date"), WorldCom, Inc. and certain of its direct and indirect subsidiaries (the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code"). On October 31, 2003, the Court entered the Confirmation Order confirming the Modified Second Amended Joint Plan of Reorganization (the "Plan"). The Plan became effective on April 20, 2004 (the "Effective Date"). Upon the Effective Date, the Debtors became MCI, Inc.

On August 14, 2003, MCI and Qwest Corporation ("Qwest") reached a settlement agreement ("Settlement Agreement") that was approved by an order of the Court (the Settlement Order").

On January 9, 2006, Qwest filed a complaint, as amended on March 16, 2006, against the Debtors in the United States District Court for the District of Colorado (the "Colorado Court") asserting claims for (1) breach of federal tariffs, (2) breach of state tariffs, and (3) unjust enrichment (the lawsuit herein called the "Colorado Action"). With respect to the first two causes of action, Qwest alleged that MCI has violated certain federal and state tariffs by failing to pay terminating access charges resulting from telephone calls that were placed by MCI's long distance customers to Qwest's local service customers. With respect to the third cause of action, Qwest alleged that MCI is liable for nonpayment of such charges based upon a theory of unjust enrichment.

On March 17, 2006, the Debtors filed the motion to Enforce the Plan and Confirmation Order ("Enforcement Motion") against Qwest seeking the Court enter an order finding that this Court, rather than the Colorado Court, should adjudicate the

1

disputes at issue because (1) a bankruptcy court retains exclusive jurisdiction over all proceedings related to the chapter 11 cases and the Plan, including determinations concerning the disputed claims and the Debtors' discharge; and (2) the commencement of the Colorado Action violates the discharge and injunction provisions of the Plan and Confirmation Order, sections 524(a) and 1141(d) of the Bankruptcy Code and the terms of the Settlement Agreement.

In its pleadings and at oral argument, MCI argues that the tariff claims asserted in the Colorado Action did not arise under assumed Executory Contracts, as such term is referenced in paragraph 25 of Settlement Agreement, that would provide Qwest relief from this Court's jurisdiction. MCI also argues that because the tariff claims are not covered in the context of the Settlement Agreement, Qwest released its right to pursue those claims under the discharge provisions of the Plan and the Confirmation Order. Further, MCI argues that there are no assumed Executory Contracts, regardless of whether it falls under the tariffs because there has not been a cure.

In its April 6, 2006 response and at oral argument, Qwest contends that because the claims at issue arose under assumed Executory Contracts, thereby falling within the scope of the Settlement Agreement, the Court is precluded from adjudicating those claims. Further, that the right to assert the post petition claims regarding the cure amount is preserved under the Settlement Agreement. On April 10, 2006, MCI filed its reply. A hearing was held on April 11, 2006 (the "Hearing").

Following the Hearing, on April 18, 2006, Qwest filed a post-hearing submission in further opposition to Enforcement Motion ("Post-hearing Submission") countering that the access charges under the tariff claims covered (1) direct calls delivered by MCI to

2

Qwest, and (2) third-party calls on which MCI was the originating interexchange carrier but which were delivered to Qwest through third-party carriers. Further, Qwest contends that the distinction between direct calls involving MCI and Qwest and third-party calls is irrelevant because the FCC and the federal courts have held that the calling party's long distance carriers is liable under access tariffs even though the calls are handed off to a third-party carrier prior to delivery to the terminating carrier. In the Post-hearing Submission, Qwest also states that it intends to amend the complaint in the Colorado Court to withdraw the unjust enrichment claim. Further, in its submission, Qwest did not further discuss the cure amount issue regarding the assumed Executory Contracts.

On April 25, 2006, *inter alia*, MCI responded to Post-hearing Submission arguing that the tariff claims arising from access charges on calls placed by its customers that were "handed off" by MCI to third-party carriers are not under the assumed Executory Contract. As a result, the tariff claims involving in the third-party carriers are not within the scope of carve-out in the Settlement Agreement. Thus, MCI argues that the Court has exclusive jurisdiction over the discharge provisions of the Plan and the Confirmation Order. MCI requests the Court grant its request and find that the Court, rather than the Colorado Court, should adjudicate the disputes at issue involving any liability regarding transactions with the third-party carriers.

## Discussion

In the instant matter, the Court will not consider the substantive issues such as whether MCI is liable to Qwest under the tariff claims involved in the calls that are handed off by a third-party carrier prior to delivery to the terminating carriers or whether that determination, if the claims are not subject to the discharge and injunction provisions

3

of the Plan, is governed by, *inter alia*, the "filed rate doctrine." The issue that the Court needs to address is whether the tariff claims related to charges for traffic terminated by third parties arise under assumed Executory Contracts within the meaning of the Settlement Agreement.

Both parties agree that any dispute arising under assumed Executory Contracts shall not be resolved in the Bankruptcy Court under the Settlement Agreement.

Section 25 of the Settlement Agreement provides that:

> The parties to this Settlement Agreement consent to the non-exclusive jurisdiction of the Bankruptcy Court in connection with the interpretation and enforcement of this Settlement Agreement; provided, however, any disputes arising under assumed Executory Contracts shall be resolved in accordance with the provisions of the Executory Contract and not in the Bankruptcy Court.

Settlement Agreement, §25.

Further, none of the parties dispute that the transactions at issue involve direct calls and third-party calls under the tariffs. The distinction between direct calls and the third-party calls under the tariffs is instrumental in determining whether a specific contract in dispute is one of the assumed Executory Contracts. If a specific contract involving the third-party calls under a different tariff between MCI and Qwest is not covered within the carve-out provision under the Settlement Agreement, MCI can seek relief before this Court.

The definition of executory contract is not contained in the Bankruptcy Code. However, courts have adopted that "[[a]]n executory contract] is a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v. Nat'l Fuel*

4

*Gas Distribution Corp.,* 872 F.2d 36, 30 (3rd Cir. 1989); *see also Doctors Health, Inc. v. Nylcare Health Plans of the Mid-Atlantic, Inc.*, 335 B.R. 95, 114 (Bankr. D. M.D. 2005) (citing that executory contract "generally includes contracts on which performance remains due to some extent on both sides"). Thus, it is well established that an "executory contract" in the context of the bankruptcy law concerns the performance that arises between two contractual parties, *i.e.*, the debtor and another party.

The definition of "Executory Contracts" under the Settlement Agreement is consistent with this established concept. The term "Executory Contracts" in the Settlement Agreement is defined as follows:

> *MCI and Qwest* were as of the Commencement Date, and continue as of the Settlement Date, *to be parties to various contracts and arrangements with each other pursuant to which they provide services and furnish facilities to one another,* including without limitation (a) various interconnection agreements and arrangements provided under tariffs and service and or facilities agreements pursuant to which each party has made access to its network available to the other, and (b) a billing and collection agreement pursuant to which QC has purchased accounts receivable of MCI and provided billing services for MCK (all such agreements and arrangements, collectively (and only for purposes of this Settlement Agreement), the "Executory Contracts").

Settlement Agreement, Third "Whereas" Clause (emphasis added).

The carve-out provision in the Settlement Agreement between a bankrupt and another party that excludes the bankruptcy court from adjudicating executory contracts is not common. Traditionally, the issues arising from executory contracts are adjudicated within the domain of the bankruptcy court. Thus, in the absence of clear evidence to state otherwise, the Court should limit this exception to the agreed-upon carve-out provision in the Settlement Agreement and not expand it.

An executory contract under the plain language of the Settlement Agreement is a contract under which the performance must arise under a tariff between MCI and Qwest. Specifically, it is a contract under which one party provides services and furnishes facilities to one another. As to those contracts involving a third-party's performance to either MCI or Qwest under a different tariff between MCI and Qwest, the Court finds that the plain definition of "executory contracts" under the Settlement Agreement and the established notion as discussed previously do not support that those contracts should be characterized as "exectuory contracts." The carve-out provision in the Settlement Agreement does not preclude the bankruptcy court from adjudicating those contracts that do not fall into the definition of executory contracts.

Moreover, MCI's argument, and Qwest's response thereto, that there is no "assumed executory contract" because there has not been a cure by MCI was not addressed or referenced in any post-hearing submissions. However, based upon the record before the Court at the oral argument, the Court finds that the right to resolve disputes over the cure amounts was preserved under the Settlement Agreement.

After considering the arguments of the parties, this Court finds that the bankruptcy court has exclusive jurisdiction to adjudicate any claims at issue in the Colorado Action that do not arise from the assumed Executory Contracts and, therefore, are not subject to the carve-out provision in the Settlement Agreement. Any issues regarding whether the third-party tariff claims are released pursuant to the discharge provisions of, *inter alia*, the Plan and the Confirmation Order are within the Court's

6

exclusive jurisdiction.  Any assertion of claims outside of the Court that are not part of the carve-out provision is a violation of the Plan and the Confirmation Order.  Therefore, Qwest is directed to amend its pleading, accordingly.