# Minutes of Proceedings

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------x
Date: May 30, 2006                                                                    :
------------------------------------------------------------------------------------x
In re                                                                                 :
WorldCom, Inc., *et al.*,                                                             :
                                         Debtors.    :    Case No. 02-13533 (AJG)
                                                     :
                                                                                  :
_____x

Present: Hon. Arthur J. Gonzalez      Jacqueline De Pierola      _____
        Bankruptcy Judge                  Courtroom Deputy            Court Reporter

Debtors: WorldCom, Inc., *et al.*          Counsel: Stinson Morrison Hecker LLP
                                                   By: Mark A. Shaiken, Esq.

Claimant: Beepwear Paging Products, LLC     Counsel: Zeichner Ellman & Krause LLP
                                                   By: Brigitte M. Nahas, Esq

**Proceeding:**    Opinion on Motion for Summary Judgment filed by Claimant Beepwear Paging Products, LLC and Cross-Motion for Summary Judgment filed by Skytel Corp.

**Order:**    For the reasons set forth in the opinion attached hereto as Exhibit A, the relief sought is

        **X** Granted as to Skytel Corp.      **X** Denied as to Beepwear Paging Products, LLC

        FOR THE COURT: Kathleen Farrell, Clerk of the Court

        BY THE COURT:

        **s/Arthur J. Gonzalez**                 5/30/2006       Jacqueline De Pierola
          United States Bankruptcy Judge           Date           Courtroom Deputy

**EXHIBIT A**

Beepwear Paging Products, LLC ("Beepwear") moves for partial summary judgment of one of its proofs of claims filed against Debtor SkyTel Corp. ("SkyTel" or the "Reorganized Debtors"). SkyTel moves for summary judgment on the same claim. On or about June 25, 1998, SkyTel and Beepwear entered into a Joint Marketing Agreement whereby the parties agreed to market and promote SkyTel's one-way wireless messaging services to end-users of pager watches developed by Beepwear. The Joint Marketing Agreement was subsequently amended twice by the parties. Certain disputes arose over each party's obligations under the Joint Marketing Agreement and the parties agreed to enter into a subsequent "Settlement Agreement, Release, and Covenant Not to Sue." (the "Settlement Agreement"). The Settlement Agreement states: "[T]here are certain outstanding claims, differences and alleged causes of action arising out of and/or related to the Joint Marketing Agreement and the parties desire to reach a full and final compromise and settlement of all such claims, differences and alleged causes of action . . . ." Pursuant to section 1 of the Settlement Agreement, SkyTel agreed to pay Beepwear $2,026,000.00 in four equal installments of $506,500.00. SkyTel paid $1,013,000.00 of the settlement amount before the filing of this case.

On November 20, 2002, the debtors filed a "Notice of Rejection of Executory Contract" and pursuant to 11 USC § 365(a), rejected both the original Joint Marketing Agreement and the subsequent Settlement Agreement. Beepwear subsequently filed two proofs of claim based on the debtor's section 365(a) rejection. In claim no. 10345, Beepwear seeks $4,825,658.12 based on rejection of contract. This amount is derived from the breach of the original Joint Marketing Agreement and also takes into consideration the $1,013,000.00 that SkyTel paid to Beepwear pursuant to the Settlement Agreement. Beepwear's second Proof of Claim, no. 10335, seeks

1

$1,013,000.00 for the remaining unpaid settlement amount pursuant to the Settlement Agreement.

In the Reorganized Debtors' claim objection, the Reorganized Debtors do not dispute that the effect of the Rejection is that SkyTel breached the Settlement Agreement as of immediately before the filing of the Debtors' bankruptcy petitions on the Commencement Date[1] and, therefore, they do not dispute the $1,013,000.00 claim. However, the Debtors do object to proof of claim no. 10345 and any ability of Beepwear to assert a claim arising out of any breach of the Joint Marketing Agreement.

With regard to proof of claim no. 10345, Beepwear moves for partial summary judgment on the grounds that the rejection of the Settlement Agreement permits them to assert a general unsecured claim under the prior Joint Marketing Agreement. SkyTel moves for summary judgment on the grounds that the Settlement Agreement released them of all obligations and liabilities under the Joint Marketing Agreement.

Pursuant to FED. R. CIV. P. 56 (the "Federal Rules"), made applicable by FED. R. BANKR. P. 7056 (the "Bankruptcy Rules"), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *In re Interbank Funding Corp.*, 310 B.R. 328, 248 (Bankr. S.D.N.Y. 2004). "Summary judgment is appropriate if, in light of the evidence presented, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."

---

[1] *See* 11 USC § 365(g)(1) ("[T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease . . . if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition . . .").

2

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Id.* at 249.

Pursuant to either section 16(g) of the Joint Marketing Agreement or section 15 of the Settlement Agreement, Delaware law is applicable. Beepwear claims that, under the rule of accord and satisfaction, the Settlement Agreement was an accord of compromise between the parties and, since SkyTel breached the Settlement Agreement, it is entitled to reinstate its original claim under the Joint Marketing Agreement. Under Delaware Law, an accord and satisfaction is where:

> [O]ne party to an existing contract may agree with the other party to accept from him in the future a stated performance in satisfaction of the subsisting contractual duty. This is an accord. In such case, it is the performance of the accord which is to be the satisfaction of the claim. The original duty is not discharged; the right to enforce that duty is suspended for a reasonable time. If the new agreement is breached by the debtor, the creditor may either enforce the original duty or the subsequent contract.

*Jefferson Island Salt Mining Co. v. Empire Box Corp.*, 41 Del. 386, 391 (Del. 1941)

Beepwear claims that since SkyTel breached the Settlement Agreement by rejecting it pursuant to section 365(a), they are entitled to enforce the original Joint Marketing Agreement. Beepwear points to language of the Settlement Agreement to establish that both parties intended the Joint Marketing Agreement to remain in effect until full and complete satisfaction of the Settlement Agreement. Section 5 of the Settlement Agreement states that: "Except as expressly provided herein, the terms of the Joint Marketing Agreement are unchanged and shall remain in full force and effect." While this section provides that the Joint Marketing Agreement remains in effect for provisions not explicitly mentioned in the Settlement Agreement, it does not reveal whether the Settlement Agreement extinguishes or preserves claims based on breach of the Joint

3

Marketing Agreement. "[A] new contract, with reference to the subject matter of a former one, does not destroy its obligation except in so far as the new one is inconsistent therewith, unless the parties intended the new contract to supersede the old one." *Id.* Delaware law provides that "parties may agree that the new promise itself shall be the satisfaction of the pre-existing duty and where this is clearly shown, the original claim is at once extinguished, and the claimant's remedy is on the new promise." *Id.* "If the parties intend for the new agreement to abrogate the former contract, the parties may seek remedies only under the latter agreement." *CitiSteel USA, Inc. v. Connell Ltd. Pshp., Luria Bros. Div.*, 758 A.2d 928, 931 (Del. 2000). "Determining such intent is usually a question of fact. If intent cannot be determined 'expressly or impliedly' from the contract provisions, the court may consider evidence of the surrounding circumstances." *Id.; see also Wagner v. Hendry*, 2000 Del. Ch. LEXIS 33, at *18 (Del. Ch. Feb. 23, 2000) (citing *EmpireBox Corp. v. Jefferson Island Salt Mining Co.*, 36 A.2d 40, 43-44 (Del. 1944) ("[W]hether or not the parties agreed that a subsequent contract would be accepted in full performance and satisfaction of the pre-existing duty such that the old agreement is wholly abrogated and superseded by the new contract is 'usually a question of fact, which must be proved by the party alleging it' . . . .").

In *Jefferson Island Salt Mining Co.*, the Superior Court of Delaware held that a subsequent agreement between two parties extinguished the cause of action arising out of breach of the original agreement because the "final agreement . . . contemplated the surrender by the plaintiff of its right of action growing out of the defendant's breach of its original contractual duty." 41 Del. at 392. The corporation and supplier in *Jefferson Island Salt Mining Co.*, entered into an initial agreement on May 27, 1939, whereby the supplier agreed to ship cartons to the corporation. After delivering only about 10% of the cartons, the supplier refused to deliver the

4

rest of the shipment at the agreed upon price.  After several negotiations and proposals, the parties came upon a final agreement on March 11, 1940.  *Id.* at 390.  The March 11 agreement contained the same terms and conditions as the May 27 contract as supplemented, altered or changed by their negotiations.  *Id.*  After the supplier breached the subsequent March 11 agreement, the court held that the corporation could only recover based on breach of the subsequent March 11 agreement because it was clear that "the plaintiff accepted the new promise as an immediate satisfaction of the defendant's pre-existing contractual liability." *Id.* at 392.

Similarly, in this case, the language of the Settlement Agreement indicates that Beepwear accepted the Settlement Agreement as satisfaction of SkyTel's breach of the original Joint Marketing Agreement; therefore, any recovery for subsequent breach can only be based on the Settlement Agreement.  The Settlement Agreement states, "there are certain outstanding claims, differences and alleged causes of action arising out of and/or related to the Joint Marketing Agreement and the parties' desire to reach a full and final compromise and settlement of all such claims, differences and alleged causes of action . . . ." *See* Settlement Agreement (emphasis added).  Section 7 of the Settlement Agreement states that "Beepwear shall not hereafter institute any suit, action or proceeding against WorldCom of any kind in any court . . . arising out of or in connection with any Claim herein released." *Id.*; *see also Jefferson Island Salt Mining Co.*, 41 Del. at 392 (noting that "during the negotiations leading to the formation of the new contract, the plaintiff offered to waive its claim for this damage.").  This language evinces the clear intent of the parties that the Settlement Agreement would be a new promise that would satisfy any and all liability that SkyTel incurred for breach of the original Joint Marketing Agreement.

Beepwear's interpretation that the Joint Marketing Agreement remains in effect and provides the basis for a proof of claim is contrary to the plain language of the Settlement

5

Agreement. This is because Beepwear's interpretation would indicate that the Settlement Agreement was not a "full and final compromise and settlement," as set forth in the third paragraph of the Settlement Agreement, of all claims arising out of the Joint Marketing Agreement. Furthermore, even though Section 5 of the Settlement Agreement provides that the terms of the Joint Marketing Agreement remain "in full force and effect" if not expressly provided for, the parties expressly agreed in section 6 of the Settlement Agreement that:

> Beepwear *releases and discharges* SkyTel . . . from any and all actual or potential claims . . . whether presently known or unknown which Beepwear may have . . . against Worldcom for payments, damages (personal or otherwise), costs, losses and expenses . . . resulting from, arising out of or *in any manner connected with SkyTel's obligation under the Joint Marketing Agreement* to purchase Pager Watches from Beepwear and to market, sell, advertise and promote Pager Watches.

*See* Settlement Agreement (emphasis added).

This section of the Settlement Agreement permanently releases SkyTel for any liability it may have incurred under the original agreement. The plain language of this section would be inconsistent with the Delaware law that an accord and satisfaction does not discharge the original duty, but only suspends the right to enforce that duty for a reasonable time. *See Jefferson Island Salt Mining Co.,* 41 Del. at 391 ("The original duty is not discharged; the right to enforce that duty is suspended for a reasonable time."). Beepwear's proof of claim no. 10345 is directly calculated from SkyTel's obligations under the Joint Marketing Agreement to purchase, market, sell and advertise units of Pager Watches. Therefore, under section 6, Beepwear is precluded from asserting proof of claim no. 10345 because the claim is derived from SkyTel's breach of its obligations under the Joint Marketing Agreement.

Moreover, although Beepwear asserts that the Settlement Agreement was an accord and satisfaction, Beepwear has not set forth any of the necessary elements of an accord and satisfaction under Delaware Law. An accord and satisfaction exists when (1) a bona fide dispute

6

existed as to the amount owed that was based on mutual good faith; (2) the debtor tendered an amount to the creditor with the intent that payment would be in total satisfaction of the debt; and (3) that the creditor agreed to accept the payment in full satisfaction of the debt. *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1069 (Del. 1997). The burden to prove all the elements necessary for an accord and satisfaction is on the party alleging that it took place. *Id*.

As to the first element, "to be deemed bona fide, a dispute must be (1) honest and advanced in good faith, and (2) founded on some reasonable, tenable or plausible ground." *Id*.; *but see Modern Dust Bag Co. Inc. v. Commercial Trust Co.,* 34 Del. Ch. 354, 357 (Del. Ch. 1954) (asserting that a good faith, bona fine dispute resting on a substantial basis need not be established in fact or based on a solid foundation and that plaintiff need only show some justification for its claim and that it is not a arbitrary refusal to pay a just indebtedness). Whether a claim is subject to a bona fide dispute is a factual determination. *Trader v. Wilson*, 2002 Del. Super. LEXIS 92, at *11 (Del. Super. Ct. 2002). As discussed above, the Settlement Agreement sets forth a definite and clear payment structure to satisfy any and all claims arising out of any breach of SkyTel's obligations under the Joint Marketing Agreement. "It is difficult to see how there can be a genuine, bona fide dispute concerning terms of payment when the terms are set out in a written agreement, plain and unambiguous in every respect." *State of Delaware v. Massachusetts Bonding and Ins. Co*., 40 Del. 274, 281 (Sup. Ct. Del. 1939). Inconsistent with the principles of accord and satisfaction, Beepwear's claim that the Settlement Agreement is not the operative document is not founded on a reasonable, plausible or tenable ground. To that, Beepwear argues that since section 5 of the Settlement Agreement provides that the "terms of the Joint Marketing Agreement are unchanged and shall remain in full force and effect," unless expressly provided for, they should still be allowed to recover for breach of the original Joint

7

Marketing Agreement.  Beepwear's interpretation of the effect of the Settlement Agreement would suggest that Beepwear could have claimed damages arising out of the Joint Marketing Agreement at any time up until SkyTel completely satisfied all terms of the Settlement Agreement.  Since there is nothing in the Settlement Agreement that suggests that any of the terms that Beepwear argues are in full force and effect could be subject to enforcement awaiting the satisfaction, there is no basis to argue that any accord and satisfaction could be ascertained from the Settlement Agreement.  In this instance, Beepwear is simply trying to rewrite the agreement.  Since Beepwear has failed to establish the first element of an accord and satisfaction, the remaining two elements need not be addressed and this Court finds that no accord and satisfaction was ever reached between the parties.  Therefore, SkyTel's rejection of the Settlement Agreement does not enable Beepwear to enforce the original agreement.  As a result, Beepwear's motion for partial summary judgment must be denied.

The Reorganized Debtors, in their opposition to Beepwear's motion for partial summary judgment, moved for summary judgment on the same claim.  They assert that the Settlement Agreement was a either a substitute contract or novation[2] and, therefore, Beepwear's remedies are limited to those found in the Settlement Agreement and Beepwear should be precluded from asserting a claim based on the original Joint Marketing Agreement.

In order to prove a novation, the moving party must show (1) a previous valid debt; (2) extinguishment of the old contract; (3) agreement of all parties to a new contract; and (4) validity of a new one." *Transportes Aereos de Angola v. Ronair*, 693 F. Supp. 102, 107 (D. Del. 1988).  While a novation can be implied from the actions of the parties, it must be clear that a novation is intended.  *Schwartz v. Centennial Ins. Co.*, 1980 Del. Ch. LEXIS 501, at *7 (Del. Ch. 1980).  The burden of establishing a novation rests with the party asserting the novation.  *Barclays*

---

[2] In their filed motions with the Court, both parties use the terms substitute contract and novation interchangeably.

8

*American/Business Credit, Inc. v. Otterstrom*, 673 F.Supp. 128, 137 (D. Del. 1987); *Berg v. Liberty Federal Savings & Loan Ass'n.*, 428 A.2d 347, 349 (Del. Super. 1981). A novation is never presumed. *Fontana v. Julian*, 1979 Del. Ch. 388, at *10 (Del. Ch. 1979).

In this case, the only element in dispute between the parties is whether the original Joint Marketing Agreement was extinguished. The language of the Settlement Agreement evinces the intent of the parties to have the Settlement Agreement supersede the Joint Marketing Agreement, thereby extinguishing the original agreement and any claims arising thereof. "The elements of a novation are essentially the same as in an original transaction and include a meeting of the minds of all parties as to the substitution of the new undertaking for the old." *Id*. "The intention to substitute a new agreement for a previous contract need not be expressed, however, since facts and circumstances surrounding the transaction, as well as the subsequent conduct by the parties, may show such an acceptance as clearly as an express agreement . . . ." *Id*.; s*ee also CC Investors Corp. v. Raytheon Co.*, 2005 U.S. Dist. LEXIS 6893, at *17 (D. Del. 2005); *Ronair*, 693 F.Supp. at 107.

In this case, the plain language of the Settlement Agreement demonstrates that both parties intended the Settlement Agreement to substitute the Joint Marketing Agreement. Section 10 of the Settlement Agreement states:

> This Agreement constitutes the entire agreement between or among the parties hereto with respect to the subject matter hereof, *supersedes any and all prior communications, negations and agreements between or among the parties pertaining to the subject matter hereof*, and represents their full and complete understanding with respect to the subject matter hereof . . . .

*See* Settlement Agreement (emphasis added).

This language states that the Settlement Agreement overrides all prior agreements, which would include the Joint Marketing Agreement. In addition, section 12 of the Settlement Agreement states: "The settlement compromise reflect herein . . . is entered in the compromise

9

and settlement of doubtful and disputed claims." The language in section 12 unequivocally indicates that the settlement terms were agreed upon based on satisfaction of previous duties and claims. "Where a subsequent contract is accepted in satisfaction of the pre-existing duties, the old agreement is abrogated and the only remedy is on the new contract." *County Banking & Trust Co. v. Lacey*, 1993 Del. Super. LEXIS 293, at *10 (Del. 1993). The Settlement Agreement functioned to render the Joint Marketing Agreement inoperative. The parties agreed that the Settlement Agreement would be the superceding instrument through which their respective rights and obligations would be defined. The Court finds that the Settlement Agreement was in fact a substitute contract. Therefore, Beepwear's rights and remedies are limited to those set forth in the Settlement Agreement and they cannot assert a proof of claim under the Joint Marketing Agreement.

   Contrary to Beepwear's contention, Skytel's rejection of the Settlement Agreement does not preclude them from asserting rights derived from that substitute agreement. This was not a situation where the debtor rejected a contract but still sought to maintain its benefits. *See In re United Assocs. of Delaware, L.P.*, 140 B.R. 368, 372 (Bankr. D. Del. 1992) ("Bankruptcy law does not allow a debtor to reject a contract but still maintain its benefits. The debtor must either reject the contract in full, or assume it in full."). In this case, SkyTel did reject the Settlement Agreement in full, pursuant to section 365(a), and is not trying to reap any benefit from the agreement, but is simply benefiting from the controlling agreement as offered to the prior agreement. In fact, by not contesting proof of claim no. 10335 and agreeing that the remaining unpaid portion of the Settlement Agreement is a valid debt, SkyTel is not seeking to reap any benefit but, rather, is fulfilling its obligation under a valid subsequent contract.

Based on the foregoing, Beepwear's motion for partial summary judgment is denied. Beepwear is precluded from asserting a proof of claim under the Joint Marketing Agreement. Accordingly, SkyTel's motion for summary judgment is granted. Therefore, claim no. 10345 is disallowed and expunged.