**UNITED STATES BANKRUPTCY COURT**      FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| WORLDCOM, INC., *et al.*, | : | Case No. 02-13533 (AJG) |
| | : | |
| Reorganized Debtors. | : | (Confirmed) |
| | : | |

_____:

**OPINION REGARDING REORGANIZED
DEBTORS' OBJECTION AND REQUEST FOR ENFORCEMENT
OF AGREEMENT BETWEEN DOBIE PROPERTIES, LLC AND MCI
WORLDCOM NETWORK SERVICES, INC.**

**APPEARANCES:**

WEIL, GOTSHAL & MANGES LLP
Counsel for Reorganized Debtors

767 Fifth Avenue
New York, NY 10153

     Marcia L. Goldstein, Esq.
     Lori R. Fife, Esq.
     Alfredo R. Perez, Esq.
     Adam P. Strochak, Esq.
     Lauren Sierchio, Esq.
     Jessica L. Fink
          Of Counsel


FORD, BOWLUS, DUSS, MORGAN,
 KENNEY, SAFER & HAMPTON, P.A.
Counsel for Dobie Properties, LLC

10110 San Jose Blvd.
Jacksonville, FL 32257

     Michael Bowlus, Esq.
          Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

Before the Court is Dobie Properties, LLC's ("Dobie") Response to Reorganized
Debtors' Objection and Request for Enforcement of Agreement Between Dobie and MCI,
filed in the chapter 11 cases of the above-referenced debtors and reorganized debtors
(collectively, the "Debtors").  Dobie seeks to enforce a prepetition settlement agreement
between itself and MCI WorldCom Network Services, Inc. ("MCI"), one of the Debtors.
Dobie further requests disbursement of funds in the amount of $1.6 million pursuant to
said agreement.  The issues before the Court are (i) whether the settlement agreement
constitutes an executory contract, and (ii) if so, whether it was assumed by the Debtors.
Upon review of the parties' pleadings and arguments made at the hearing on this matter,
the Court finds that the settlement agreement is an executory contract, and was assumed
pursuant to the Debtors' Modified Second Amended Joint Plan of Reorganization Under
Chapter 11 of the Bankruptcy Code, dated October 21, 2003 (the "Plan").

## I.  JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157
and 1334 and this Court's Order Confirming Debtors' Modified Second Amended Joint
Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, Dated October 31,
2003.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper
pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

Prior to the commencement of the Debtors' chapter 11 cases, Dobie purchased a
tax deed under the laws of the state of Florida for a parcel of real property (the "Florida
Property") that was owned by MCI, one of the Debtors.  Dobie then brought an action

2

against MCI, among others, in the Circuit Court for the Fourth Judicial Circuit in Duval

County, Florida (the "State Action"),[1] seeking to quiet title and confirm its alleged title in

the Florida Property.  MCI appeared in the State Action to dispute Dobie's claim and to

counterclaim for quiet title to the Florida Property and certain personal property located

on the Florida Property.

While the State Action was pending, the Florida Department of Transportation

(the "DOT") filed an eminent domain action regarding the Property (the "Condemnation

Action").[2]  Both MCI and Dobie, among others, were named as defendants in the

Condemnation Action.

Thereafter, MCI and Dobie entered into a settlement agreement, dated August 30,

2001 (the "Original Settlement Agreement"), in connection with the State Action.  Under

the Original Settlement Agreement, Dobie consented to a judgment (the "State Court

Consent Judgment") in the State Action, confirming MCI's title in the Florida Property.

In return, MCI agreed to pay Dobie a portion of the proceeds resulting from the

Condemnation Action.  Additionally, the Original Settlement Agreement required, among

other things, that if the DOT made a payment into the registry established by the Fourth

Judicial Circuit, Duval County, Florida in relation to the Condemnation Action (the

"Registry") of more than $1.6 million, then $1.6 million would be paid to Dobie.

(Original Settlement Agmt. ¶ 3.)  Pursuant to an "escape clause" contained in the Original

Settlement Agreement, if $1.6 million were not received, then the Original Settlement

Agreement was to become null and void and the parties would return to mediation to

---

[1]  *See Dobie Properties, L.L.C. v. Worldcom Network Services, Inc. and Lavana J. Truppman*, Case No.
00-7722-CA (Circuit Court, Fourth Judicial Circuit, Duval County, Florida).
[2]  *See State of Florida Dept. of Transportation v. Worldcom Network Services, Inc., Dobie Properties,
L.L.C., et al.*, Case No. 01-01491-CA, Division CV-B (Circuit Court, Fourth Judicial Circuit, Duval
County, Florida).

resolve the matter.  (Original Settlement Agmt. ¶ 5.)  The Original Settlement Agreement

provided that the parties would use their "best efforts" to obtain payment into the

Registry.  (Original Settlement Agmt. ¶ 1.)

The State Court Consent Judgment was entered in the State Action on September

6, 2001.  Thereafter, the DOT indicated that the appraisal value of the Florida Property

would not exceed $445,000.  The Original Settlement Agreement had been entered into

upon the assumption that the payment made in the Condemnation Action would be much

higher, and as a result the parties prepared a joint motion to vacate the State Court

Consent Judgment (the "Motion to Vacate") pursuant to the escape clause contained in

the Original Settlement Agreement.  The Motion to Vacate, however, was not filed

because the parties soon began negotiations to amend the Original Settlement Agreement.

MCI and Dobie subsequently entered into an amendment to the Original Settlement

Agreement, dated May 7, 2002 (the "Amended Settlement Agreement"), pursuant to

which MCI acknowledged that all amounts placed in the Registry up to $445,000

belonged to Dobie and that MCI would make no claim to those funds.  (Amended

Settlement Agmt. ¶ 1.)  Any proceeds above that amount were to be shared equally

between MCI and Dobie.  (Amended Settlement Agmt. ¶ 2.)  A cap of $1.6 million was

placed on the potential recovery of Dobie.  (Amended Settlement Agmt. ¶ 2.)

Additionally, the Amended Settlement Agreement required, among other things, that

Dobie was not to file the Motion to Vacate prior to a hearing scheduled to take place on

May 7, 2002.  (Amended Settlement Agmt. ¶ 3.)[3]  MCI was to use its best efforts to

---

[3]  While the Amended Settlement Agreement refers to Dobie's obligation extending only until a hearing
scheduled to take place on May 7, 2002, it appears from the pleadings that both the Debtors and Dobie
viewed this obligation as having continued postpetition, and the Court has taken this to be the case.
Specifically, Dobie states that "the Agreement required substantial performance from both parities [sic],

maximize recovery in the Condemnation Action, and Dobie was to provide "all reasonable assistance reasonably requested." (Amended Settlement Agmt. ¶ 6.) Additionally, if an amount less than $445,000 was deposited in the Registry, the Amended Settlement Agreement was null and void and the parties' rights reverted to those granted under the Original Settlement Agreement. (Amended Settlement Agmt. ¶ 7.)

On July 21, 2002, the Debtors commenced these cases under chapter 11 of the Bankruptcy Code (the "Petition Date"). Thereafter, without seeking prior relief from the automatic stay pursuant to section 362 of the Bankruptcy Code, Dobie filed the Motion to Vacate on an ex parte basis, which was approved by the Circuit Court, Duval County in the State Action on July 26, 2002 (the "Order to Vacate"). Dobie subsequently filed a motion with this Court to lift the automatic stay so as to proceed with the State Action (the "Lift Stay Motion"), which was opposed to by the Debtors. This Court entered a consent order, dated September 17, 2002 (the "Consent Order"), settling the Lift Stay Motion. The Consent Order provided that neither party would pursue the State Action and that the State Court Consent Judgment and Amended Settlement Agreement were to remain in full force and effect. (Consent Order ¶¶ 2, 3.) The Order to Vacate was declared void.[4] (Consent Order ¶ 4.) Additionally, the Consent Order modified the

---

postpetition . . . Dobie was not to file or seek a motion/order to vacate consent judgment prior to the award of the condemnation proceedings." (Resp. 8.) The Debtors state that "Dobie's only obligations as of the Commencement Date were to refrain from filing a motion to vacate the [State Court] Consent Judgment in the State Court Action and to provide reasonable assistance as reasonably requested in the Condemnation Action." (Obj. ¶ 17.) It seems likely that the parties referred to the May 7th date in the Amended Settlement Agreement because they expected the award of the condemnation proceedings would take place on that date. Thus, the continuing obligation was linked not to the date, but to the actual award. Further, the finding that this was a continuing obligation on the part of Dobie is consistent with the way the parties acted and reacted to events that took place.

[4] Additionally, an order entered in the State Action that vacated the Order to Vacate was found to not have been a violation of the automatic stay and was held to be in full force and effect. (Consent Order ¶ 4.)

automatic stay to allow continuation of the Condemnation Action for purposes of

determining the compensation to be paid by the DOT.  (Consent Order ¶ 6.)  The Consent

Order prohibited withdrawal of the current or future funds on deposit in the Registry by

either the Debtors or Dobie.  (Consent Order ¶ 7.)[5]

On October 21, 2003 (the "Confirmation Date"), the Court entered an order

confirming the Plan.  The Plan became effective in accordance with its terms on April 20,

2004 (the "Effective Date").

On October 15, 2004, the Debtors filed their Seventy-Second Omnibus Objection

to Proofs of Claims [Litigation Related Claims] (the "Omnibus Objection").  The

Omnibus Objection sought to expunge, among others, claim nos. 17042 and 38241

(together, the "Claims") filed by Dobie in the case of MCI WorldCom Network Services,

Inc., one of the Debtors.[6]  The Claims were each for unliquidated amounts based upon the

State Action, the Condemnation Action, the Original and Amended Settlement

Agreements, the Consent Order and Florida state law.

MCI continued to pursue the Condemnation Action.  During this time, Dobie

alleges that MCI took actions that would destroy "unity of title" in the Florida Property,

---

[5]   Furthermore, the parties reserved their rights and remedies in the State Action and under the Original
and Amended Settlement Agreements and State Court Consent Judgment and under applicable law,
including "the treatment and/or priority of any claims in these chapter 11 cases arising out of or relating to
the [Amended] Settlement Agreement or the [State Court] Consent Judgment and any applicable rights of
the Debtors to assume or reject the [Amended] Settlement Agreement or the [State Court] Consent
Judgment."  (Consent Order ¶ 8.)  Nothing in the Consent Order was to prejudice the rights with the parties
had or might have in the future with regard to the State Action, the Amended Settlement Agreement or the
State Court Consent Judgment.  (Consent Order ¶ 8.)  Additionally, the Consent Order was not to be
construed as elevating actual or potential prepetition claims of Dobie relating to the Amended Settlement
Agreement or State Court Consent Judgment to postpetition status.  (Consent Order ¶ 9.)  The parties
reserved their rights with regard to the treatment and/or priority of Dobie's claims arising from the
Amended Settlement Agreement or State Court Consent Judgment.  (Consent Order ¶ 9.)
[6]   The Debtors' objection to claim no. 17042 is based upon insufficient evidence, duplicativeness, a dispute
regarding the basis of the claim, and that the claim was in litigation and the Debtor asserted the defenses
used in the litigation.  The objection to claim no. 38241 was made upon these bases and additionally, that
the claim was not timely filed.  (Omnibus Obj. ¶ 8, Ex. A 55.)

which would result in a smaller recovery in the Condemnation Action.[7]  In response,

Dobie unilaterally filed a Motion for Summary Final Judgment in the Condemnation

Action (the "Summary Final Judgment Motion"), which was ultimately approved by the

Circuit Court, Duval County in the Condemnation Action.  It appears that at the hearing,

MCI consented to the relief sought by Dobie in the Summary Final Judgment Motion.

On or about June 17, 2005, the DOT and MCI agreed to a settlement in the

Condemnation Action in the amount of $3,670,000 (the "Proceeds").

On September 1, 2005, the Debtors filed the Emergency Motion of the

Reorganized Debtors With Respect to Disbursement of Funds, contending that Dobie's

rights under the Amended Settlement Agreement constitute a claim under section 101(5)

of the Bankruptcy Code, and that Dobie is therefore entitled to only a general unsecured

claim under the Plan for $1.6 million.  The Debtors requested that the Proceeds in excess

of $1.6 million be disbursed to the Debtors, with the remaining amount to be deposited in

a separate account pending resolution of the issue.  In the Verified Objection of Dobie

Properties, LLC to Emergency Motion of the Reorganized Debtors with Respect to

Disbursement of Funds, dated September 6, 2005, Dobie disputed the Debtors

contentions and objected to the requested relief.  A hearing was held on September 6,

2005 to address the matter.  By order, dated September 7, 2005 (the "Proceeds Order"),

this Court required that the Proceeds be deposited in a separate, interest bearing account

pending the resolution of the parties competing claims to the Proceeds.  The Proceeds

Order directed the parties to file pleadings in preparation for a hearing to determine the

---

[7]   Dobie alleges that the actions taken by MCI would result in "no recovery for MCI and only $445,000 recovery for Dobie."  (Resp. 4.)

parties' rights to the Proceeds, which took place on December 6, 2005.  At the hearing,

Dobie agreed to release of the funds in excess of $1.6 million to MCI.

### III.  PARTIES CONTENTIONS

**A.**     *Dobie's Request*

In the Memorandum in Support of Dobie's Response to Reorganized Debtors'

Objection and Request for Enforcement of Agreement Between Dobie and MCI, dated

September 23, 2005 (the "Response"), Dobie argues that the Amended Settlement

Agreement constitutes an executory contract.  Dobie states that substantial performance is

due from both sides, and that the Amended Settlement Agreement was therefore assumed

by the Debtors' Plan.  (Resp. 8.)  Dobie claims that it was required to act to preserve

MCI's unity of title under Florida law so that business damages could be recovered in the

condemnation proceeding.  Dobie states that if it had not sought final summary judgment

in the Condemnation Action, MCI would not have been able to recover an award based

on business damages and Dobie would have breached its contractual duty to obtain

payment of the Proceeds into the Registry.  (Resp. 11.)  Dobie further alleges that

because the Amended Settlement Agreement states that MCI and Dobie are to share the

Proceeds, the $1.6 million portion of the Proceeds is Dobie's property and MCI held no

ownership interest in that amount either pre- or postpetition.  (Resp. 11.)  Furthermore,

Dobie claims that due to its reliance on assertions made by MCI, MCI is now estopped

from arguing that Dobie's claim has not been fully established and that Dobie does not

own the $1.6 million in Proceeds.  (Resp. 14.)  Lastly, Dobie argues that the executory

contract cannot be avoided as a preferential transfer because the date of the Original

Settlement Agreement fell outside of the 90-day period prior to the Debtors' chapter 11

petition date.  (Resp. 14.)  Dobie alleges that the Amended Settlement Agreement is merely a "clarification" of the terms of the Original Settlement Agreement and does not establish a new agreement or modify Dobie's rights with respect to the $1.6 million in Proceeds.  (Resp. 14.)  Furthermore, Dobie alleges that no transfer took place for purposes of a preference action.  (Resp. 14.)

**B.**    *Debtors' Objection*

The Debtors responded by filing the Reorganized Debtors' Objection to Application of Dobie Properties, L.L.C. For Enforcement of Agreement and Reply to Dobie's Response to 72nd Omnibus Objection to Claims, dated October 6, 2005 (the "Objection").  In the Objection, the Debtors countered that there were no remaining material obligations left to Dobie under the Amended Settlement Agreement on the Petition Date.  (Obj. ¶ 15.)  Specifically, Dobie admitted that their remaining obligations as of the Petition Date were to "refrain from filing a motion to vacate the [State Court] Consent Judgment in the State Court Action and to provide reasonable assistance as reasonably requested in the Condemnation Action."  (Obj. ¶ 17.)  The Amended Settlement Agreement was therefore not executory under either the "Countryman" or "Functional" analyses.  Alternatively, even if the obligations remaining on the side of Dobie were material, they had been breached, allowing for MCI to be relieved of its obligations under the Amended Settlement Agreement.  (Obj. ¶ 23.)  Furthermore, even if the Amended Settlement Agreement were executory, Dobie's claim thereunder is not entitled to full payment because Dobie has performed no postpetition act that benefited the Debtors' estates.  (Obj. ¶ 27.)  The actions Dobie took in the Condemnation Action did not maximize recovery thereunder, and MCI did not request or receive assistance

from Dobie.  (Obj. ¶ 28.)  In fact, MCI was not asserting a claim for business damages, and did not recover such damages in the Condemnation Action.  (Obj. ¶ 28.)  The Debtors allege that Dobie's summary judgment motion, therefore did not enable MCI to recover business damages, and provided no benefit in the Condemnation Action.  (Obj. ¶ 28.)  In fact, Dobie's summary judgment motion was necessary only because of Dobie's interference in the case and questions that had been raised about the issue.  (Obj. ¶ 28.)  The Debtors assert that Dobie is entitled only to a postpetition unsecured claim that would be due for a fully executed prepetition contract.  (Obj. ¶ 29.)  Furthermore, a prepetition contract that provides no benefit to a debtor's estate is entitled only to general unsecured status.  Therefore, Dobie is at most entitled to a $1.6 million claim under Class 6 of the Plan.  (Obj. ¶ 29.)  The Debtors also contend that the Proceeds are property of the Debtors' estates, as the Amended Settlement Agreement provided that Dobie and MCI would share proceeds exceeding $445,000.  The Debtors contend that an agreement to share contingent proceeds cannot affect a transfer of a debtor's interest in that property.  (Obj. ¶ 31.)  The Debtors note that a debtor's estate consists of legal and equitable interests of the debtor in property as of the commencement of the case.  Therefore, the interest in the proceeds was property of the Debtors' estates, which the Amended Settlement Agreement did not purport to transfer.  (Obj. ¶ 32.)  Even if the $445,000 deposited into the Registry prior to the Petition Date were Dobie's property, this amount is avoidable as a preferential transfer, and Dobie has nothing but a prepetition general unsecured claim for such amount.  (Obj. ¶ 34.)

## IV.    DISCUSSION

### A.    *Executory Contract*

Under section 365 of the Bankruptcy Code, a debtor-in-possession "may assume or reject any executory contract of unexpired lease of the debtor." 11 U.S.C. § 365(a). The Bankruptcy Code does not define what constitutes an executory contract, but the legislative history states, "though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S. Rep. No. 989, 95th Cong. 2d Sess. 58 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5844, 6303. Most jurisdictions have now come to utilize either the "Countryman" test or the "Functional" approach when determining whether a prepetition contract is executory. Under the Countryman test, "an executory contract is one that is not so fully performed that a breach by either side would constitute a material breach of the contract." *The Penn Traffic Co. v. Cor Route 5 Co., LLC (In re The Penn Traffic Co.)*, No. 05-3755, 2005 U.S. Dist. LEXIS 20407, at *6 (S.D.N.Y. September 16, 2005) (citing Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)) (additional citations omitted). Under the Countryman test, a contract is considered executory "if 'material future performance obligations remain on both sides' of the contract." *Shoppers World Community Center L.P. v. Bradlees Stores, Inc. (In re Bradlees Stores, Inc.)*, No. 01-CV-3934, 2001 U.S. Dist. LEXIS 14755, at *20-*21 (S.D.N.Y. September 20, 2001) (quoting *In re Bluman*, 125 B.R. 359, 361-62 (Bankr. E.D.N.Y. 1991)). Courts look to state contract law to determine whether failure to perform such obligations would constitute a material breach. *In re Bradlees Stores, Inc.*, 2001 U.S. Dist. LEXIS 14755, at *24-*25 (citing *In re Riodizio, Inc.*, 204 B.R. 417, 421;

*Mitchell v. Streets (In re Streets & Beard Farm Partnership)*, 882 F.2d 233, 235 (7th Cir. 1989)).

Some courts believe that the Countryman test created a higher standard than was intended by Congress and have adopted the "Functional" approach, which is generally viewed as more flexible and lenient analysis. *In re Bradlees Stores, Inc.*, 2001 U.S. Dist. LEXIS 14755, at *21 (citing *In re Riodizio, Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997); *In re Gen. Dev. Corp.*, 84 F.3d 1364, 1374 (11th Cir. 1996)).  Under the Functional approach, a court looks to whether assumption or rejection of the contract in question would benefit the debtor's estate, regardless of whether any material obligations remain outstanding on the part of only one party to the contract. *In re Bradlees Stores, Inc.*, 2001 U.S. Dist. LEXIS 14755, at *21-*22 (citing *In re Gen. Dev. Corp.*, 84 F.3d at 1374; *In re Jolly*, 574 F.2d 349, 351 (6th Cir. 1978); *Cohen v. The Drexel Burnham Lambert Group, Inc. (In re The Drexel Burnham Lambert Group, Inc.)*, 138 B.R. 687, 707-709 (Bankr. S.D.N.Y. 1992); *In re Bluman*, 125 B.R. at 362.))

While the executory nature of a contract is normally examined as of the petition date, "[s]ometimes, however, postpetition events alter the executoriness of a contract, as when a contract expires postpetition.  In those circumstances, a court will look to the date the motion to assume or reject is made or heard rather than the petition date." *In re The Penn Traffic Co.*, 2005 U.S. Dist. LEXIS 20407, at *7-*8 (citing *In re Riodizio*, 204 B.R. 417, 421 (Bankr. S.D.N.Y. 1997) (additional citations omitted).

It should be noted that the Second Circuit has not unequivocally adopted either the Countryman test or the Functional approach.[8]  However, courts in this jurisdiction

---

[8]   As stated in *Shoppers World Community Center, L.P. v. Bradlees Stores, Inc. (In re Bradlees Stores, Inc.)*, Ad. P. No. 01-3934, 2001 U.S. Dist. LEXIS 14755 (S.D.N.Y. September 20, 2001), the Second

have used one or both analyses when discussing executory contracts, and the Debtors

have addressed both in their pleadings.  Therefore, this Court will perform an analysis of

the executoriness of the Amended Settlement Agreement under both the Countryman test

and the Functional approach.

### Countryman Test

It is not disputed, that MCI still possessed material obligations under the

Amended Settlement Agreement[9] at the time of the alleged assumption.[10]  The issue is

whether Dobie also had any material obligations remaining under the Amended

Settlement Agreement at that point in time.  The Debtors assert that the remaining

obligations on the part of Dobie under the Amended Settlement Agreement consist of

refraining from filing a motion to vacate the State Court Consent Judgment and providing

reasonable assistance as reasonably requested in the Condemnation Action.  (Obj. ¶ 17.)

Dobie characterizes its obligations differently, stating that they were required to use their

best efforts to obtain payment of condemnation proceedings into the Registry and to not

file or seek a motion/order to vacate the State Court Consent Judgment prior to the award

of condemnation proceedings.  Upon the Court's review of the Amended Settlement

Agreement, the remaining obligations on the part of Dobie were that (i) "Dobie will not

file the Motion/order to Vacate the [State Court] Consent Judgment before the taking

---

Circuit's most recent statement relating to the definition of an executory contract was to refer to the
legislative history.  Specifically, "an executory contract is 'a contract on which performance remains due to
some extent on both sides.'"  *Id.* at *23 (quoting *Eastern Airlines, Inc. v. The Insurance Co. of the State of
Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 999 (2d Cir. 1996)).

[9]   The remaining obligations of MCI under the Amended Settlement Agreement appear to be that MCI
draw down the Deposit and deliver the same to Dobie, together with any other sums realized up to a total of
$1.6 million.  (Amended Settlement Agmt. ¶ 5.).  Additionally, MCI was to use its best efforts to maximize
recovery in the Condemnation Action.  (Amended Settlement Agmt. ¶ 6.)

[10]   For purposes of this discussion, the assumption is deemed to have taken place on the Effective Date
because if the Amended Settlement Agreement is found to be "executory," it was assumed under the terms
of the Plan, unless specifically rejected.

hearing on Tuesday, May 7, 2002." (Amended Settlement Agmt. ¶ 3.) Additionally,

"Dobie will provide all reasonable assistance reasonably requested" in connection with

MCI's efforts to maximize recovery in the condemnation proceeding. (Amended

Settlement Agmt. ¶ 6.)

The Court finds the requirement that Dobie refrain from taking steps to vacate the

State Court Consent Judgment is a material term of the Amended Settlement Agreement,

violation of which would constitute a material breach on the part of Dobie.[11] This

provision can be best viewed as the waiver of a remedy that would otherwise have been

available to Dobie had the State Action not been settled. The Amended Settlement

Agreement specifically centers on settlement of the State Action in favor of MCI via

Dobie's consent. In return for its consent, Dobie is to receive a certain amount of the

Proceeds from the Condemnation Action. The waiver of Dobie's right to vacate the State

Court Consent Judgment and subsequently challenge the State Action clearly goes to the

heart of the settlement of the State Action, and is therefore a material outstanding

obligation under the Amended Settlement Agreement. It was the specific commitment on

the part of Dobie that was "bargained for" in exchange for MCI's commitment to, among

other things, maximize recovery in the Condemnation Action and deliver the Proceeds of

up to $1.6 million to Dobie.

As stated earlier, materiality is a question resolved through application of state

law. *In re Bradlees Stores, Inc.*, 2001 U.S. Dist. LEXIS 14755, at *24-*25 (citing *In re

Riodizio, Inc.*, 204 B.R. 417, 421; *Mitchell v. Streets (In re Streets & Beard Farm

Partnership)*, 882 F.2d 233, 235 (7th Cir. 1989)). While neither the Original Settlement

---

[11]   Because this obligation is found to be a material term of the Amended Settlement Agreement, the Court
does not address whether Dobie's obligation to provide reasonable assistance reasonably requested also
constitutes a material term of the Amended Settlement Agreement.

Agreement or the Amended Settlement Agreement contain a choice-of-law provision, this Court finds that Florida law should be applied in determining issues relating to the agreement between the parties.[12]  This Court therefore begins by looking to the law of the state of Florida to determine whether the failure of Dobie to comply with the provision would constitute a material breach.

Under Florida case law, "a material breach of [contract] allows the non-breaching party to treat the breach as a discharge of his contractual liability." *Bradley v. Health Coalition, Inc.*, 687 So. 2d 329, 333 (Fla. 3d Dist. Ct. App. 1997) (superceded on other grounds); *see also Hustad v. Edwin K. Williams & Co.*, 321 So. 2d 601, 603 (Fla. 4th DCA 1975) (A "breach terminates the contract so that the injured party is no longer obligated to perform that which was to be performed in consideration of the contract…"). While the Court has been unable to locate Florida law directly on point, case law and statutory authority exists suggesting that a breach of a covenant not to compete is normally compensated only through damages or an injunction.  *See* Fla. Stat. 542.33 (2005) (Stating that a contract in restraint of trade "may, in the discretion of a court of competent jurisdiction, be enforced by injunction."); *see also Miller Mechanical, Inc. v. Ruth*, 300 So. 2d 11, 12 (Fla. 1974).  However, the policy implications behind these holdings can be distinguished from the case at hand.  Florida takes a strict approach to the restraint of trade through the use of non-competition covenants, which is evident from the statutory authority of that state.  *See* Fla. Stat. §§ 543.33, 542.335 (2005).  Arguably, the

---

[12]   Whether this Court applied federal choice of law rules or the choice of law rules of the forum state of New York, the result would be the same.  "[F]ederal choice of law rules apply the law of the jurisdiction with the most significant relationship with the action . . . ." *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 605 (2d Cir. 2001).  In contract cases, New York applies 'the 'center of gravity' or 'grouping of contacts' choice of law theory . . . ." *Finance One Public Co., Ltd. v. Lehman Brothers Special Financing, Inc.*, 414 F.3d 325, 336 (2d Cir. 2005).  The Court determines that under both the federal and the New York test, the appropriate law to be applied is that of the state of Florida.

Florida courts do not want to restrict such parties further than necessary, and therefore would not normally permit a non-breaching party from ending a contract as a result of the breach of a non-competition covenant.  Furthermore, there is an indication that favoring injunctions in the case of a covenant not to compete results from the complication of determining damages in such situations.  *See The Jewett Orthopaedic Clinic, P.A. v. White*, 629 So. 2d 922, 927 (Fla. Dist. Ct. App. 1993) ("The question of whether the injury is 'irreparable' turns on whether there is an adequate legal remedy available . . . Irreparable injury means, in essence, that injunction is the only practical mode of enforcement.  A negative covenant, where one party promises that he will not do certain things, is an apt example . . . The supreme court observed in *Miller Mechanical* that certain types of contractual covenants, like covenants not to compete, by their nature lend themselves principally to enforcement by injunction because of the difficulty of arriving at a dollar figure for the actual damage done as the result of the breach.") (internal citations omitted); *see also Miller Mechanical*, 300 So. 2d at 12 ("The Court may award damages for breach of contract but the normal remedy to grant an injunction.  This is so because of the inherently difficult, although not impossible, task of determining just what damage actually is caused by the employee's breach of the agreement.  In the event a trial court finds the provisions of the agreement to be unreasonable, the correct procedure would be for the Court to modify the agreement and award an appropriate remedy.") (internal citations omitted).  In this situation, damages sustained by the Debtors as a result of Dobie's actions could easily have been determined based on any impact their actions would have had on the Debtors' efforts to recover the Proceeds.  Furthermore, no damages, other than additional attorneys fees, appear to have arisen based on the breach

16

that allegedly took place, as the actions of Dobie have not prevented MCI in recovering the Proceeds from the Condemnation Action.  Since the reasoning behind the Florida policies regarding non-competition agreements appear inapplicable to this situation, there is no rationale to extend this case law to the agreement not to vacate the State Court Consent Judgment.

Several courts have found that restrictive covenants do not constitute material provisions of a contract.  *See Ready Productions, Inc. v. Jarvis (In re Jarvis)*, Case No. 04-10806, 2005 Bankr. LEXIS 536, at *11 (Bankr. D. N.H. March 28, 2005); *In re Schneeweiss*, 233 B.R. 28, 31 (Bankr. N.D.N.Y. 1999); *In re Spectrum Information Technologies, Inc.*, 193 B.R. 400, 404 (Bankr. E.D.N.Y. 1996); *In re Bluman*, 125 B.R. 359, 362-63 (Bankr. E.D.N.Y. 1990).  Some of these cases base their ruling upon the argument that restrictive covenants create passive and not affirmative obligations on the part of the party being held to them, and that such passive obligations do not to rise to the level of materiality necessary for an executory contract to exist.[13]  *See In re Jarvis*, 2005 Bankr. LEXIS 536, at *11. (finding non-disparagement clause not to rise to level of materiality necessary to constitute an executory contract); *In re Schneeweiss*, 233 B.R. at 32 ("An obligation to comply with a restrictive covenant such as a covenant not to compete, does not constitute a material obligation, and a contract under which one party must refrain from competing is therefore not executory under the Countryman definition of an executory contract.").  The Court finds that applying these arguments to this case would inherently place form over substance.  As discussed above, Dobie's obligation was

---

[13]    In the case of *In re Noco, Inc.*, 76 B.R. 839 (Bankr. N.D. Fl. 1987), the Bankruptcy Court for the Northern District of Florida found a contract not to be executory where the only remaining obligations were "on the part of the debtors in the form of the covenant not to compete."  *In re Noco, Inc.*, 76 B.R. at 843.  In the *Noco* case, however, obligations remained only on one side of the contract; dual obligations were not present.  *See id.*

clearly a material term of the contract.  Without Dobie's promise to refrain from

challenging the State Court Consent Judgment, entry into the Amended Settlement

Agreement would not have occurred.  The agreement of the Debtors to pay a portion of

the proceeds to Dobie was given mainly in return for Dobie giving up its right to

challenge the State Action.  "Each performance goes to the essence of what the other

party sought and expected when he entered into the . . . Agreement, and without it, the

party will lose the benefit of the bargain that he thought he struck."  *In re Teligent, Inc.*,

268 B.R. 723, 730-31 (Bankr. S.D.N.Y. 2001).  The materiality of the breach of this

provision is evidenced by the Debtors' response when Dobie actually carried out such a

breach.  Upon Dobie's filing of a motion to vacate the State Court Consent Judgment and

seeking to lift the automatic stay, the Debtors requested that this Court enforce

application of the automatic stay.  Although the Debtors sought sanctions with respect to

Dobie's violation of the automatic stay, the Consent Order that was approved by this

Court required that the parties be returned to the position in which they had been prior to

Dobie's breach of the Amended Settlement Agreement.  Specifically, "[t]he [State Court]

Consent Judgment, dated September 6, 2001, entered in the State Court action, and the

settlement agreement between Dobie and MCI WorldCom, dated August 30, 2001, as

amended by separate letter agreements dated August 30, 2001 and May 7, 2002 . . . shall

remain in full force and effect in accordance with the provisions thereof.  (Consent Order

¶ 3.)  Furthermore, "[t]he order styled 'Consent Order Vacating Consent Judgment,'

dated July 26, 2002 . . . entered in the state Court Action is void."  (Consent Order ¶ 4.)

The Debtors assert that Dobie's obligation to refrain from filing a motion to

vacate the State Court Consent Judgment could not render the Amended Settlement

Agreement executory, because "if that were the case, all settlement agreements would be executory because, by their nature, they obligate the parties to refrain from proceedings with the underlying litigation." (Obj. ¶ 21.) The Court, however, finds that this case can be distinguished from the type of settlement agreements referred to by the Debtors. Specifically, the obligation of Dobie to refrain from filing a motion to vacate the State Court Consent Judgment goes directly to the ability of the Debtors to perform their own obligations under the Amended Settlement Agreement. In a typical settlement agreement, the underlying concern is the continuation of the litigation that was settled. In this case, the underlying concern was not the outcome of the litigation, but rather the risk that would result to the Condemnation Action if the litigation were to continue. The vacatur of the State Court Consent Judgment would put the Debtors' unitary title to the Florida Property at issue, and, as the Debtors acknowledged, their ability to recover in the Condemnation Action would be put at risk.[14] In most litigation settlement agreements, a party proceeding with the underlying litigation, while giving rise to a damage claim, would not necessarily prevent the counterparty from successfully proceeding with its obligations under said agreement. Clearly, performance is due on the part of the Debtors that would be directly impeded by Dobie's failure to refrain from certain acts that, if taken, would be deemed to be a material breach of the Amended Settlement Agreement.

---

[14]    During the hearing held before this Court on December 6, 2005, S. Cary Gaylord, Esq., a witness for the Debtors, stated that the Debtors "did settle it with Dobie. If they had continued to litigate it, they would have had to litigate the tax deed issue simultaneously with the eminent domain issue. I think it is fair to say that that would have complicated the process, or certainly I would have thought it would have complicated the process." (Hr'g Tr. 21: 11 – 17, Dec. 6, 2005). In response to the question of whether it would be an advantage or disadvantage to MCI in the Condemnation Action if it were faced with a tax deed held by Dobie, Mr. Gaylord stated, "it would have been a disadvantage to MCI, if the Court had determined that MCI was not the owner of the property on the date of the taking . . . [T]he issue upon ownership on the date of evaluation would be the critical issue. If the Court had determined in a separate process that MCI was the owner on the date of valuation without regard to the tax deed, then the tax deed would not have been an issue. But it was taken off the table by virtue of that consent judgment." (Hr'g Tr. 23: 3 – 9, Dec. 6, 2005.)

As discussed below, such actions, in fact, were taken but the parties agreed under the Consent Order to return each other essentially to the position they were in prior to such breach.  The interrelationship between the Debtors performance and the bargained for non-performance on the part of Dobie is, among other things, what distinguishes this case from other litigation settlement agreements.  Furthermore, the typical litigation settlement is approved by a court order.  In such cases, the continuation of litigation subsequent to a court-approved settlement may, as mentioned above, cause damages and may be in violation of a court order, but it wouldn't relieve the parties of their duties under the settlement.  The non-breaching party could use the court-approved agreement to collaterally estop the breaching party from continuing the action.  The Court finds that these distinctions address the concern that finding a passive obligation satisfies the Countryman test would open the floodgates to all settlement agreements being considered executory.  Further, the record demonstrates the materiality of Dobie's obligation to refrain, coupled with the Debtors' material obligations establishes and the executory nature of the Amended Settlement Agreement under these circumstances.

The Debtors argue that even if Dobie's remaining obligations were found to be material, Dobie has breached these obligations and MCI is therefore relieved from performing under the contract as a result of such breach.  (Obj. ¶ 23.)  While it is generally the case that a material breach of one party would relieve the counterparty from performance under the contract, one must examine the particular factual situation at hand.  Though Dobie did breach a material obligation that would have relieved the Debtors of their own obligations under the Amended Settlement Agreement, the Consent Order in effect negates such breach.  Specifically, this Court stated in the Consent Order that

"[t]he order styled 'Consent Order Vacating Consent Judgment,' dated July 26, 2002 . . . ,

entered in the State Court Action is void.  The order entered in the State Court Action

dated August 27, 2002 vacating the Consent Order, was not entered in violation of the

automatic stay and is of full force and effect." (Consent Order ¶ 5.)  Furthermore, the

Court held that "[t]he [State Court] Consent Judgment, dated September 6, 2001, entered

in the State Court Action, and the settlement agreement between Dobie and MCI

WorldCom dated August 30, 2001, as amended by separate letter agreements dated

August 30, 2001 and May 7, 2002 . . . , shall remain in full force and effect in accordance

with the provisions thereof." (Consent Order ¶ 3.)  The Debtors themselves

acknowledged at the hearing held before this Court on December 6, 2005, "[t]hat is when

we had proceedings in this Court very early in the bankruptcy where we alleged that was

a violation of the automatic stay and sanctionable, and that proceeding ended up in a

stipulated order entered by this Court that essentially reverted to the status quo prior to

the bankruptcy.  It unwound what they had done in the weeks following the bankruptcy

and put the parties back in exactly the position they were on on July 21, 2002, when the

bankruptcy cases were commenced . . . . " (Hr'g Tr. 39: 1 – 11, Dec. 6, 2005.)  Even if

the breach was not cured by the order being vacated, the Consent Order specifically held

that the State Court Consent Judgment and the Amended Settlement Agreement were in

full force and effect.  In light of that language, the Debtors now cannot argue that they

have the right to terminate the Amended Settlement Agreement as a result of that breach.

In effect such position would be directly contrary to the provisions of the Consent

Order.[15]

---

[15]   While the Consent Order contains a reservation of rights with respect to the Settlement Agreement,
among other things (Consent Order ¶¶ 8, 9), such reservation is not strong enough to overcome the plain

**Functional Approach**

Dobie declined to address whether the contract would be considered executory

under the Functional approach, stating that "because the 'Countrymen' [sic] analysis is

best suited to the instant facts and is the more exclusive test Dobie will proceed only with

the 'Countrymen' [sic] analysis." (Resp. 7.)  The Debtors state that "[u]nder this

approach, the Amended Settlement Agreement is clearly nonexecutory, as assumption

would not provide any benefit to the Debtors, but instead would only subject the Debtors'

estates to an additional priority claim." (Obj. ¶ 25.)  The Court disagrees with the

Debtors' argument, and finds that the actions taken by the Debtors and the arguments

made as to the significance of such actions contradict the contention that the Amended

Settlement Agreement was not executory.  The executoriness is related to the

juxtaposition of the obligation of MCI under the Amended Settlement Agreement to

pursue the Condemnation Action with the obligation of Dobie to refrain from interfering

with the State Action.

As discussed below, under the Plan all executory contracts were assumed on the

Effective Date of the Plan, unless specifically rejected.  At that time, the Debtors were

clearly benefiting from continuation of the Amended Settlement Agreement.  The

Functional approach requires that a Court look to whether assumption or rejection of a

contract would benefit a debtor's estate.  *In re Bradlees Stores, Inc.*, 2001 U.S. Dist.

LEXIS 14755, at *21-*22 (citing *In re Gen. Dev. Corp.*, 84 F.3d at 1374; *In re Jolly*, 574

F.2d 349, 351 (6th Cir. 1978); *Cohen v. The Drexel Burnham Lambert Group, Inc. (In re

The Drexel Burnham Lambert Group, Inc.)*, 138 B.R. 687, 707-709 (Bankr. S.D.N.Y.

---

language of the Consent Order stating that "the settlement agreement between Dobie and MCI WorldCom,
dated August 30, 2001, as amended by separate letter agreements dated August 30, 2001 and May 7, 2002.
. . shall remain in full force and effect in accordance with the provisions thereof." (Consent Order ¶ 3.)

1992); *In re Bluman*, 125 B.R. at 362.))  The Condemnation Action had not yet been

resolved by the Effective Date.  Rejection of the Amended Settlement Agreement at that

point would have left Dobie free to challenge the State Court Consent Judgment in the

State Action and to pursue the issue in the Condemnation Action.  Thus, assumption at

that point in time was clearly of benefit to the Debtors' estate, as it ultimately permitted

the Debtors to recover $3,670,000, thus recouping an additional $2,070,000 above the

amount of any claim that Dobie might have against the Debtors' estate.  The importance

of the Amended Settlement Agreement and the benefit resulting to the Debtors from

Dobie's obligation is highlighted by the Debtors' arguments on this matter.  At the

hearing held before this Court on December 6, 2005, the Debtors repeatedly asserted that

the actions taken by Dobie in the Condemnation Action were not beneficial to the

Debtors, and indeed caused the Debtors harm.[16]  This points to the fact that the Debtors

were indeed very concerned about a question of Dobie's title to the property being

introduced to the Condemnation Action, and thus interference on the part of Dobie that

would somehow impact MCI's unity of title.

Based upon the foregoing, the Court concludes that the Amended Settlement

Agreement was executory on the Effective Date of the Debtors' Plan.  Section 8.01 of the

Plan states that "[p]ursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all

---

[16]  "The only request made of Dobie was that Dobie's counsel cease confusing the issue of ownership by showing up at hearings.  Dobie's appearance in the eminent proceeding did not assist MCI is [sic] its conduct of the case and only served to add extraneous issues that potentially could have confused a jury and detracted from MCI's efforts to maximize the valuation of the property."  (Hr'g Tr. 11: 9-16, Dec. 6, 2005).  "Counsel for the Florida Department of Transportation indicated on the record his intent to take discovery from Dobie regarding the facts and circumstances of Dobie's involvement with the property.  MCI previously had moved *in limine* to exclude evidence of Dobie's history with the property, because it was not relevant to valuing the property because Dobie had no interest in the property at the time of the taking as established by the consent judgment in the quiet title action."  (Hr'g Tr. 12: 14-23, Dec. 6, 2005).  Dobie Properties' action in filing their motion for summary judgment did not provide any assistance to MCI.  The motion simply reasserted the language of the consent judgment, which had been entered years earlier.  To the contrary, Dobie's actions interfered with MCI's challenge to the Department of Transportation's valuation and delayed resolution of the case."  (Hr'g Tr. 13: 10-17, Dec. 6, 2005).

executory contracts and unexpired leases that exist between the Debtors and any person
or entity shall be deemed assumed by the Debtors, as of the Effective Date, except for
any executory contract or unexpired lease (i) that has been rejected pursuant to an order
of the Bankruptcy Court entered prior to the Effective Date and for which the motion was
filed prior to the Confirmation Date, (ii) as to which a motion for approval of the
rejection of such executory contract or unexpired lease has been filed and served prior to
the Confirmation Date, or (iii) that is specifically designated as a contract or lease to be
rejected on Schedule 8.01(A) (executory contracts) or Schedule 8.01(B) (unexpired
leases) . . ."  (Plan § 8.01.).  The Amended Settlement Agreement, being an executory
contract that was not specifically rejected prior to the Effective Date, for which a motion
seeking rejection was not filed prior to the Confirmation Date, and which was not listed
on the Schedules to the Plan Supplement, therefore was assumed under the Plan.  Being
that under section 365(b)(1)(A), the Debtors must cure any deficiencies in the Amended
Settlement Agreement in conjunction with the assumption of the Amended Settlement
Agreement, the issues of whether the Proceeds are property of the estate or a preferential
transfer has taken place become moot.

## V.  CONCLUSION

The Court concludes that the Amended Settlement Agreement constitutes an
executory contract that was assumed by the Debtors pursuant to Section 8.01 of the Plan.
Dobie's request for enforcement of the Amended Settlement Agreement is granted.  The
Debtors are required to disburse to Dobie the $1.6 million in Proceeds now held in
escrow by Gaylord Merlin Ludovici Diaz & Bin.  Counsel to Dobie is to settle an order
consistent with this Opinion.

Dated: New York, New York
      June 21, 2006

                        **<u>s/Arthur J. Gonzalez</u>**
                        UNITED STATES BANKRUPTCY JUDGE