|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | For Publication |

|  |  |
|---|---|
| In re: | Chapter 11 |
| WORLDCOM, INC., *et al.*, | Case No. 02-13533 (AJG) |
|  | (Jointly Administered) |
| Reorganized Debtors. | (Confirmed) |

**OPINION REGARDING TELESERVE SYSTEMS, INC. ("TSI")'S MOTION FOR AN ORDER DIRECTING (1) THAT TSI'S ALLOWED CLAIM BE CLASSIFIED A CLASS 6A MCI PRE-MERGER CLAIM, (2) PAYMENT OF TSI'S COSTS, EXPENSES AND ATTORNEYS' FEES, AND (3) PAYMENT OF INTEREST ON TSI'S ALLOWED CLAIM**

APPEARANCES:

DLA PIPER RUDNICK GRAY CARY US LLP
Special Counsel to the Reorganized Debtors
1251 Avenue of the Americas
New York, NY 10020-1104

 Thomas R. Califano, Esq.
  Of Counsel

 -and-

6225 Smith Avenue
Baltimore, MD 21209

 Robert J. Mathias, Esq.
 Heather A. Klink, Esq.
  Of Counsel


HARRIS BEACH PLLC
Attorneys for Teleserve Systems, Inc.
805 Third Avenue
New York, NY 10022

 Eric H. Lindenman, Esq.
  Of Counsel

       -and-

One Park Place, 4th floor
300 South State Street
Syracuse, NY 13202

      Lee E. Woodard, Esq.
         Of Counsel


ARTHUR J. GONZALEZ
United States Bankruptcy Judge

    Before the Court is Teleserve Systems, Inc., ("TSI")'s Motion for an Order Directing (1) that TSI's Allowed Claim Be Classified a Class 6A MCI Pre-Merger Claim, (2) Payment of TSI's Costs, Expenses and Attorneys' Fees, and (3) Payment of Interest on TSI's Allowed Claim (the "6A Motion"). TSI's 6A Motion is partially granted and partially denied. The Court orders classification of TSI's Allowed Claim[1] as a Class 6A Pre-Merger Claim, but denies the requests for costs, expenses, attorneys' fees, and interest.

## JURISDICTION

    The Court has subject matter jurisdiction over this proceeding pursuant to sections 1334 and 157(b) of title 28 of the United States Code, under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), and paragraphs 32 and 61 of this Court's Order Confirming Debtors' Modified Second Amended Joint Plan of Reorganization under chapter 11 of title 11 of the United States Code (Oct. 31, 2003).

---

[1] Unless otherwise noted, capitalized terms in this opinion shall have the same meaning as in the Debtors' Modified Second Amended Joint Plan of Reorganization.

2

The Court has jurisdiction over "core proceedings," including "matters concerning the administration of the estate," "allowance or disallowance of claims against the estate," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor…relationship." 28 U.S.C. § 157(b)(2)(A), (B), (O) (2000); *see also* 11 U.S.C. § 1142(b); 8 *Collier on Bankruptcy* ¶ 1142.03 (Alan N. Resnick & Henry J. Sommer et al. eds., 15th ed. rev. 2006) ("Acting pursuant to section 1142(b), the court may issue any order necessary for the implementation of the plan."). Venue is properly before this Court pursuant to sections 1408 and 1409 of title 28 of the United States Code.

**FACTS AND PROCEDURAL BACKGROUND**

*Background Information About the Debtors*

On July 21, 2002 and November 8, 2002, WorldCom, Inc. ("WorldCom"), and certain of its direct and indirect subsidiaries, including MCI Communications Corporation, Inc. ("MCI") (collectively the "Debtors"), commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). By orders dated July 22, 2002 and November 12, 2002, the Debtors' chapter 11 cases were consolidated for procedural purposes.

By order dated October 31, 2003, the Court confirmed the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan"), which became effective on April 20, 2004. The Plan created several classes of claims, including Class 6A (Plan art. III), in which TSI seeks to include its Allowed Claim. Upon the effective date of the Plan, the Debtors became MCI, Inc. (Plan ¶ 5.08.) Verizon Communications, Inc., and MCI, Inc., merged on January 6, 2006.

3

*Background Information About Class 6A*

Class 6A was created "to provide for additional recoveries to certain Class 6 creditors, whose claims arise from transactions completed prior to September 13, 1998 with MCIC [MCI] or any of its subsidiaries, as of that date." (Third Supplement to Debtors' Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code, Dated May 23, 2003 (the "Third Supplement"), Sept. 12, 2003, p. 3) (docket # 8900) (approved by the Court's order on Sept. 12, 2003).

Creation of Class 6A addressed the concerns of, among others, the Ad Hoc Committee of Dissenting Bondholders and the Ad Hoc MCI Trade Claims Committee, who objected to substantive consolidation because they "relied on the separateness of MCI and the affairs of MCI are not hopelessly entangled with those of WorldCom." (Third Supplement p. 4; *see also* Mem. of Law in Supp. of the Ad Hoc MCI Trade Claims Committee's Mot. for the Appointment of a Chapter 11 Trustee for MCI Communications Corporation and its Subsidiaries pp. 23-26; Mem. of Law of Dissenting MCI Bondholders in Opp'n to Substantive Consolidation Provisions of Joint Plan of Reorganization pp. 34-43; The Ad Hoc MCI Trade Claims Committee's Objection to Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code pp. 30-37; Opening Statement of the Ad Hoc MCI Trade Claims Committee; Opening Statement of Dissenting MCI Bondholders.)[2]

---

[2] These objectors to substantive consolidation presented their argument within the framework established by *Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515 (2d Cir. 1988). According to this case, two factors should be considered to decide whether substantive consolidation is appropriate: "(i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." 860 F.2d at 518 (citations omitted) (internal quotation marks omitted).

To be classified as a Class 6A MCI Pre-Merger Claim, TSI's claim needs to satisfy the test set forth by the Plan. The test has two parts: a completion prong and a reliance prong.

> <u>MCI Pre-merger Claim</u> means an Allowed General Unsecured Claim against the WorldCom Debtors, to the extent the holder of which can establish in writing, with supporting documentation, to the Debtors' satisfaction and, until the Effective date, on reasonable notice to the Committee, that (i) its Claim arises solely from an individual transaction or series of transactions that was fully completed on or before September 13, 1998 and (ii) it relied on the separate credit of MCIC [MCI] or any subsidiary of MCIC [MCI] as of or prior to September 13, 1998. The Debtors do not concede that the mere existence of a contract dated on or before September 13, 1998 constitutes reliance. To the extent the Debtors do not agree that a claimant holds an MCI Pre-merger Claim, the Court shall resolve such dispute in accordance with the foregoing criteria after notice and hearing.

(Plan ¶ 1.79)

The Court approved the Plan, including the foregoing provisions. (Order Confirming Debtors' Modified Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, Dated October 21, 2003 ¶¶ 48, 61; Findings of Fact and Conclusions of Law (1) Approving (i) Substantive Consolidation and (ii) the Settlements Under Debtors' Modified Second Amended Joint Plan of Reorganization, Dated October 21, 2003, and (2) Confirming Debtors' Modified Second Amended Joint Plan of Reorganization, Dated October 21, 2003 (the "Findings and Conclusions") pp. 6-8, 64-65.)

*The Instant Dispute*

Facts pertinent to the instant matter are summarized in the Court's Opinion denying the Debtors' objection to TSI's proof of claim. *See In re WorldCom*, 340 B.R. 719, 721-722 (Bankr. S.D.N.Y. 2006). Pursuant to that Opinion, the Court issued an

5

order allowing TSI's claim "in the amount of $7,366,101.18 subject to the Debtors' right to object to TSI's designation of such claim as a Class 6A claim and payable after a determination by the Court or by stipulation between the parties, of the proper classification of such claim under the confirmed plan of reorganization." *In re WorldCom*, No. 02-13533 (Bankr. S.D.N.Y. May 1, 2006) (order denying objection and allowing claim, docket # 18220).

On July 5, 2006, TSI filed the 6A Motion seeking an order that

    A.    Directs that TSI's Allowed Claim be afforded 6A Classification, and

    B.    Pursuant to 42 U.S.C. § 1988, directs payment of TSI's costs, expenses and attorneys['] fees, and

    C.    Pursuant to the inherent power of this Court, directs payment of interest on TSI's Allowed Claim, commencing on a date determined by this Court to be fair and equitable.

(6A Motion ¶ 4.)

On August 3, 2006, the Debtors objected to the 6A Motion (the "6A Objection"). On August 7, 2006, TSI filed a response to the Debtors' objection and amended it the same day (the "6A Response"). A hearing was held on August 8, 2006.

## DISCUSSION

*Parties' Contentions*

a) TSI's 6A Motion

TSI argues that its Allowed Claim qualifies for treatment as a Pre-Merger Claim and that it submitted a timely application for pre-merger treatment. (*See* Teleserve

6

Systems, Inc.'s Application for Class 6A MCI Pre-Merger Claim Status (the "6A Application").)[3]

TSI reproaches the Debtors with not evaluating in good faith creditor applications for 6A treatment. TSI notes that the Debtors have failed to give any written response to TSI's application for two and a half years. TSI alleges that, during a recent conversation with an attorney from the law firm representing the Debtors in the instant matter, its counsel found out that the Debtors intended to deny TSI's application because TSI allegedly did not satisfy the second part of the applicable test, i.e. the reliance prong.

TSI disagrees with the Debtors' position and asserts that its allegations are sufficient and that it provided enough facts and documents supporting these allegations. In TSI's opinion, the two requirements to be afforded 6A status are "simple and straightforward" if the Court gives them their "plain meaning." (6A Motion ¶ 18.)

TSI explains the first part of the applicable test, the completion prong, is satisfied because MCI and TSI's "contractual relationship…was 'fully completed' no later than the date when MCI terminated TSI's contracts in February, 1996." (Id. ¶ 21.) TSI further contends that the second part of the applicable test, the reliance prong, is satisfied because "TSI relied solely on MCI's 'separate credit' as MCI is the only company TSI ever dealt with -- the possibility of a merger between MCI and WorldCom was not 'even on the horizon' when TSI's business relationship with MCI ended and the parties commenced their trek down the litigation path." (Id.)

Moreover, TSI requests that the Court enter sanctions against the Debtors pursuant to Federal Rule of Bankruptcy Procedure 9011 and section 1988 of title 42 of

---

[3] A copy of the 6A Application is attached as Exhibit 1 to the Supporting Affirmation of Edward A. O'Hara III, which itself is attached to the 6A Motion.

7

the United States Code. TSI asserts that the Debtors' behavior during the legal proceedings that have culminated in the instant matter have only been motivated by the goal of delay. TSI contends that the Debtors, aware that the Plan prevents payment of interest on TSI's Allowed Claim (*see* Plan ¶ 1.10, 7.04), have no incentive in favor of resolution.

Citing *Forman v. Mount Sinai Medical Center*, 128 F.R.D. 591, 603 (S.D.N.Y. 1989), TSI also asserts that this Court, pursuant to its inherent powers, should award TSI interest on its Allowed Claim, starting at the latest on May 1, 2006, the date of this Court's order allowing the claim.

b) The Debtors' 6A Objection

The Debtors contend that TSI has not satisfied the two requirements of the applicable test. First, the Debtors argue that TSI's claim arose out of the arbitration award, which became final after the relevant September 13, 1998, date. Second, the Debtors assert that TSI has not shown reliance on the separate credit of MCI. TSI's argument is insufficient, the Debtors say, as "if it was permissible to demonstrate simply that their claims arose from a pre-merger transaction without showing more, the second 'reliance' prong would be rendered meaningless; indeed, TSI has either inadvertently ignored or intentionally disregarded the Plan which clearly provides that the mere existence of a pre-merger MCI contract is insufficient to constitute reliance for purposes [of] Class 6A treatment." (6A Objection ¶ 12.)

According to the Debtors, "TSI must provide supporting details and evidence to demonstrate it relied on MCI's separate creditworthiness in performing its contractual obligations." (Id. ¶ 12.) More precisely, the Debtors assert that "TSI's filings are devoid

8

of any details and supporting documentation showing that it was induced to change its position for the worse or to suffer some substantial injury under the…[a]greements by reason of its reliance on MCI's separate credit." (Id. ¶ 14.) Consistently with this position, the Debtors have "propounded discovery on TSI to determine whether any factual grounds exist to support the [6A] Application." (Id. ¶ 15.)

Further, the Debtors emphasize that the 1994 agreements between MCI and TSI allowed MCI to assign its interest in the agreements between MCI and TSI to a "parent, subsidiary or affiliate." (*See* 6A Application Ex. A ¶ 13, Ex. B ¶ 13.) The Debtors believe this provision establishes that TSI entered the agreements "fully aware that it might ultimately sell operator-assisted telephone services on behalf of other MCI related entities." (6A Objection ¶ 13.)

The Debtors also assert that TSI has not established that they should be sanctioned. They note that a prerequisite to application of Federal Rule of Bankruptcy Procedure 9011 is the existence of a signed pleading, motion, or other document. *See* Fed. R. Bankr. P. 9011; *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986). They explain that Rule 9011 does not apply here "because prior to filing the instant pleading, MCI has never filed a pleading or made a representation to this Court in response to the [6A] Motion or [6A] Application prior [to] the filing of the present [6A Objection]." (6A Objection ¶ 18.)

As for section 1988 of title 42 of the United States Code, the Debtors contend that this provision applies only to civil rights cases and thus not to the present matter. *See* 42 U.S.C.S. § 1988(b) (Lexis 2006); *Blanchard v. Bergeron,* 489 U.S. 87, 93-94 (1989); *Oliveri*, 803 F.2d at 1272.

9

Furthermore, the Debtors argue that they did not take any action regarding the 6A Application because they were waiting for resolution of the claim objection proceeding, which ended with the Court's May 1, 2006, Order.

Finally, the Debtors assert that, under the Plan, TSI is not entitled to any interest on its Allowed Claim. (*See* Plan 7.04.) The provisions of the Plan are binding, the Debtors argue, and cannot be modified by this Court's equitable powers under section 105 of title 11 of the United States Code. The Debtors also contend that *Forman*, the case cited by TSI, is distinguishable.

c) TSI's 6A Response

First, TSI insists that its business relationship with MCI ended either when litigation related to the 1994 agreements started or at the latest when MCI terminated the agreements in 1996, in any event before September 13, 1998.

As for the reliance prong, TSI argues that satisfaction of this second requirement is "inherent in the terms of the parties'… agreements." (6A Response ¶ 6.). TSI further argues that the applicable test "do[es] not require an unsecured creditor to allege or prove their *motivation* for entering into their business relationship with MCI." TSI also disputes that, as the Debtors suggest in the 6A Objection, the reliance prong requires proof of detrimental reliance. Assuming such proof is needed, TSI asserts its 6A Application is sufficient to show detrimental reliance, which included $2.4 million spent marketing MCI's products and services, an expense motivated by "the promised willingness and ability on MCI's part to pay the monthly commissions clearly set forth in the parties'…agreements." (*See* Rebuttal Affirmation of Edward A. O'Hara III ¶ 7) (attached to the 6A Response).

As for the Debtors' argument based on the agreement provisions permitting assignment, TSI dismisses it as purely hypothetical.

Additionally, TSI protests against the Debtors' latest discovery requests. TSI argues these requests are duplicative, harassing, and only intended to delay the proceedings. (*See* id. ¶¶ 2-6.)

d) Hearing

TSI opposes the Debtors' argument as to the first prong of the applicable test and asserts that the arbitration proceedings on which its Allowed Claim is founded should not be considered to determine whether TSI satisfies the first prong. TSI describes these proceedings as a mere mechanism to determine the merit and value of TSI's legal position. (Tr. 3, 8, 15.)

Furthermore, TSI explains that Class 6A was created to distinguish between creditors who intended to deal exclusively with MCI and creditors who understood they were dealing, at least indirectly, with WorldCom. (Tr. 4-5, 7, 15.) To address the Court's concern that TSI's interpretation of the reliance prong may render it nugatory (Tr. 6), TSI hypothesizes that in some situations a claimant will satisfy the completion prong of the test but not the reliance prong because the claimant knew of the impending merger (Tr. 6-7.)

The Debtors additionally argue that TSI "was relying on the credit of [MCI's] customers to pay. [TSI] never extended any credit to MCI. It is a fully integrated agreement [one of the 1994 agreements]. You can read that agreement many times. There is no reference to any sort of credit of MCI or reliance on the credit of MCI." (Tr. 11-12.)

11

*The Court's Determination*

**Class 6A**

There is no dispute that TSI filed a timely application for pre-merger treatment of its claim. The issue is whether TSI's claim passes the two-part test set forth in the Plan to be included in Class 6A, a class of general unsecured claims entitled to recovery higher than claims in Class 6.

The Court must interpret the provisions of the Plan to resolve this issue, a task akin to interpreting a binding contract. *Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2004 U.S. Dist. LEXIS 9153, at *14 (S.D.N.Y. May 20, 2004); *Rosenberg v. XO Communications, Inc. (In re XO Communications, Inc.)*, 330 B.R. 394, 442 n.34 (Bankr. S.D.N.Y. 2005) (citing *Goldin*); 8 *Collier on Bankruptcy* ¶ 1142.04[2]. For purposes of interpretation, "all documents which were confirmed together to form the contract" are added to the Plan itself. *Goldin*, 2004 U.S. Dist. LEXIS 9153, at *14 (quoting *In re Sugarhouse Realty, Inc.*, 192 B.R. 355, 363 (Bankr. E.D. Pa. 1996)); *see also Rosenberg*, 330 B.R at 442 n.34 ("Plan documents as an integrated contract"). Thus, the Plan and the Third Supplement to Debtors' Disclosure Statement should be read together to ascertain the meaning of Plan provisions. *Goldin*, 2004 U.S. Dist. LEXIS 9153, at *14-17 ("The disclosure statement and the plan should be read conjunctively."); *Rosenberg*, 330 B.R. at 442 n.34.

First, as to the completion prong, the "transaction" between MCI and TSI ended at the latest when MCI terminated the 1994 agreements in February 1996, more than two years before the relevant cutoff date, September 13, 1998. The Debtors' argument that the arbitration proceedings, which lasted beyond 1998, should be considered to determine

12

satisfaction of the completion prong unduly stretches the semantic limits of the word "transaction" and must therefore be rejected. *See* Restatement (Second) of Contracts § 202(3)(a) (1981) ("where language has a generally prevailing meaning, it is interpreted in accordance with that meaning"). Thus, the Court finds that TSI's claim satisfies the completion prong.

Second, as to the reliance prong, a narrow reading of the word "credit," as the Debtors seemed to suggest during oral argument when they noted the absence of the word in one of the 1994 agreements (Tr. 11-12), would go against the purpose of the applicable Plan provisions. The history of the Plan (Third Supplement pp. 3-5, 7-9; Findings and Conclusions pp. 7-8, 64-65)[4] demonstrates that creation of Class 6A aimed at distinguishing between, on the one hand, creditors who intended to complete a "transaction" only with MCI and its affiliates, not including WorldCom, and, on the other hand, creditors who completed a "transaction" with MCI, but knew or should have known that WorldCom was in the picture or, as TSI's counsel put it (6A Motion ¶ 21), "on the horizon."

The Debtors' argument predicated on the assignment clauses of the 1994 agreements has therefore no merit because the critical issue for satisfaction of the reliance prong is whether a creditor knew or should have known of the merger with WorldCom when entering into or during a "transaction" with MCI. The mere existence of the clauses is not sufficient to impute the required knowledge.

This Court is also mindful of the Debtors' argument that a contractual relationship with MCI that ended before the merger with WorldCom does not suffice to qualify for

---

[4] *See also* submissions of the Ad Hoc Committee of Dissenting Bondholders and the Ad Hoc MCI Trade Claims Committee, cited *supra* p. 4.

Class 6A treatment and that finding such a relationship sufficient would annihilate the reliance prong.  *See* Restatement of Contracts § 203(a) ("an interpretation which gives…[an] effective meaning to all the terms is preferred to an interpretation which leaves a part…of no effect").  However, giving Class 6A status to TSI's claim does not amount to rendering the reliance prong meaningless as there may be claimants who satisfy the completion prong, but do not the reliance one because they knew or should have known of the merger when they entered into or during a "transaction" with MCI.

TSI completed a "transaction" only with MCI.  The "transaction" between MCI and TSI ended at the latest in 1996, early enough before the merger to conclude that TSI, when entering into the 1994 agreements and during the execution of these agreements, did not and could not have known it would ultimately be asserting a claim against WorldCom.  Therefore, TSI's claim satisfies the reliance prong.

The Debtors argue that an applicant for 6A treatment should show detrimental reliance on MCI's credit.  Such a requirement would entail an unduly narrow reading of the Plan.  Simply put, the applicable standard is whether creditors knew or should have known with whom they were completing a "transaction."

In sum, TSI's claim qualifies as a Class 6A MCI Pre-Merger Claim.  As a result, the Debtors' discovery request is moot.

**Sanctions**

None of the legal bases suggested by TSI justify an award of sanctions.

Section 1988 of title 42 of the United States Code governs the award of attorneys' fees in civil rights cases only and therefore does not apply to the instant matter.  42 U.S.C.S. § 1988(b) (Lexis 2006); *Blanchard*, 489 U.S. at 93 ("the purpose of § 1988 was

14

to make sure that competent counsel was available to civil rights plaintiffs"); *Oliveri*, 803 F.2d at 1272 (section 1988 applies "in certain types of civil rights actions"). Accordingly, TSI may not request any sanction under this provision.

Federal Rule of Bankruptcy 9011 and Federal Rule of Civil Procedure 11 "are nearly identical and serve a common goal." *United of Omaha Life Ins. Co. v. LJAK Assocs., Inc. (In re LJAK Assocs., Inc.)*, 165 B.R. 9, 11 n.1 (Bankr. E.D.N.Y. 1994). "Rule 11 applies only to the initial signing of 'a pleading, motion, or other paper.'" *Oliveri*, 803 F.2d at 1274 (quoting Rule 11). The Rule "is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" *Id.* at 1275 (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985)).

TSI has not identified any specific "pleading, motion, or other paper" to trigger application of Rule 9011, but refers to the Debtors' overall conduct of litigation. Also, TSI has not shown that the Debtors asserted a claim clearly devoid of any chance of success. Therefore, sanctions are not warranted under Federal Rule of Bankruptcy Procedure 9011.

Finally, a court has the inherent power "to award a reasonable attorneys' fee to the prevailing party when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Oliveri*, 803 F.2d at 1272 (quoting *F. D. Rich Co. v United States*, 417 U.S. 116 (1974)). "'Bad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Id.* (citing *Hall v. Cole*, 412 U.S. 1, 15 (1973)). The applicable standard in the Second Circuit is, however, a strict one, as "both clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes *and* a high degree of

15

specificity in the factual findings" are required. *Id.* (quoting *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)) (internal quotation marks and brackets omitted) (emphasis added).

TSI has not offered "clear evidence" warranting use of the Court's inherent power to impose sanctions. TSI blames the Debtors for focusing exclusively on delay. There is, however, no clear evidence of such intent. The Debtors did not act upon TSI's 6A Application because they were waiting for the Court's decision on their objection to TSI's proof of claim. Moreover, although the Plan does prevent payment of interest on TSI's Allowed Claim, mere awareness of this situation by the Debtors does not suggest an exclusive motive to delay.

The *Forman* case cited by TSI is legally and factually distinguishable. First, *Forman* involved sanctions under a legal basis not invoked by TSI, section 1927 of title 28 of the United States Code. *Forman*, 128 F.R.D. at 599. Second, defendant's counsel in *Forman* prevented effectuation of a settlement by not communicating reasonably with both plaintiff's counsel and the court, using nonpayment of expert fees for purposes of delay, and not being adequately prepared. *Id.* at 605-606. The Debtors and their counsel have not behaved in such a way in the instant matter.

In any event, TSI's request for sanctions would also fail under section 1927, which requires a "clear showing of bad faith" and a finding "similar to that necessary to invoke the court's inherent power." *Id.* at 599 (quoting *Oliveri*).

**Interest**

"Pursuant to 11 U.S.C. § 1141(a), all parties are bound by the terms of a confirmed plan of reorganization." *First Union Commercial Corp. v. Nelson, Mullins,*

16

*Riley, and Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1315 (4th Cir. 1996). The Court agrees with the Debtors that the provisions of the Plan prohibit the award of interest on an Allowed Claim. (*See* Plan ¶¶ 1.10, 7.04.) Besides, this Court may not modify provisions of a confirmed plan by using its equitable powers. *In re Rickel & Assocs., Inc.*, 260 B.R. 673, 678 (Bankr. S.D.N.Y. 2001). TSI's request for interest is therefore denied.

## CONCLUSION

TSI's motion is granted as to 6A classification and denied as to sanctions and interest. TSI shall settle an order consistent with this opinion.

Dated: New York, New York
September 13, 2006

                                         **s/Arthur J. Gonzalez**
                                         UNITED STATES BANKRUPTCY JUDGE