UNITED STATES BANKRUPTCY COURT  For Publication
SOUTHERN DISTRICT OF NEW YORK
_____
          :
In re          :  Chapter 11
          :
WORLDCOM, INC., *et al.*,    :  Case No. 02-13533 (AJG)
          :
     Reorganized Debtors.  :  (Confirmed Case)
_____:

OPINION REGARDING DEBTORS' SUPPLEMENTAL OBJECTION TO, AND
MOTION TO DENY CLASS CERTIFICATION OF, THAT PORTION OF PROOF OF
CLAIM NUMBER 31079 THAT ASSERTS A CLAIM ON BEHALF OF PUTATIVE
CLASS OR AS A PRIVATE ATTORNEY GENERAL UNDER CALIFORNIA LAW

**APPEARANCES**

STINSON MORRISON HECKER LLP
Special Counsel to the Reorganized Debtors
1201 Walnut Street
Kansas City, MO  64106

  Mark A. Shaiken, Esq.
   Of Counsel


LOWENSTEIN SANDLER PC
Attorneys for Paul Chiptoff and the Putative Class
65 Livingston Avenue
Roseland, NJ  07068

  Michael S. Etkin, Esq.
   Of Counsel

KIRBY MCINERNEY & SQUIRE, LLP
Attorneys for Paul Chiptoff and the Putative Class
890 Third Avenue
New York, NY  10022

  Peter Linden, Esq.
   Of Counsel

I. Introduction

Paul Chiptoff ("Chiptoff") filed a proof of claim (the "Proof of Claim") on behalf of himself and a putative class (the "Class") in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors," "WorldCom," or "MCI"). The Complaint alleges that MCI switched the class members (the "Members," except when referred to individually which is hereinafter defined as the "Member") and Chiptoff's long-distance telephone provider ("Provider," or "Providers") to MCI without their consent and knowledge, a practice that is referred to as slamming ("Slamming" or "Wrongful Switching," when used in past tense "Slammed," or "Wrongfully Switched"). Chiptoff seeks to represent all persons in the United States who suffered from MCI's Slamming. In addition, in the Complaint, Chiptoff seeks relief as a private attorney general on behalf of himself and all consumers pursuant to California Business and Professions Code section 17200 *et seq.* (the "UCL" or "Section 17200").

II. Background

On July 21, 2002 (the "Commencement Date") and November 8, 2002, the Debtors commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). By orders dated July 22, 2002 and November 12, 2002, the Debtors' chapter 11 cases were consolidated for procedural purposes. By order dated October 29, 2002, the Court established January 23, 2003 as the deadline for the filing of proofs of claim against the Debtors (the "Bar Date"). By order dated October 31, 2003, the Court confirmed the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan"). On April 20, 2004, the Plan became effective (the "Effective Date"). Upon the Effective Date, WorldCom changed its name to MCI, Inc.

On January 6, 2006, Verizon Communications, Inc. and MCI merged. Under the merger agreement, MCI, Inc. merged with and into Eli Acquisition, LLC, as a direct, wholly owned subsidiary of Verizon Communications Inc. Eli Acquisition LLC, as the surviving entity, was immediately renamed MCI, LLC.

Chiptoff filed a motion to certify the Class ("Motion for California State Certification") in the Superior Court of the State of California for Sonoma County (the "Superior Court"). In the proceeding seeking certification of the Class (the "Superior Court Proceeding"), there was an extensive exchange of discovery between Chiptoff and MCI. However, prior to discovery, MCI filed a motion in the Superior Court to strike all nationwide class references in the Complaint. The Superior Court denied the motion in September 2000. Subsequent to discovery[1], MCI filed a motion in the Superior Court for summary judgment or, alternatively, a motion for summary adjudication that Chiptoff was not damaged.[2] In November 2001, the Superior Court denied MCI's motion for summary judgment and motion for summary adjudication.

The amended complaint (the "Complaint") was filed in the Superior Court in November 2000.[3] Chiptoff seeks to represent a class for the period of "August 7, 1993 through the present" (the "Class Period").[4] The Complaint describes the action as a "consumer fraud action." While the Complaint includes causes of action predicated upon

---

[1] It appears from the pleadings that discovery began prior to MCI's motion for summary judgment. Likewise, Chiptoff's response to the motion includes evidence that resulted from discovery.

[2] Additionally, the motion argues that Chiptoff was not an appropriate private attorney general under the UCL.

[3] The Complaint was attached to the Claim as evidence of the Class.

[4] As discussed *infra* in note 15, the Class Period for monetary relief ends in February 2000 when MCI instituted a policy of issuing a 30-day credit to all customers who complained of Slamming whether or not MCI could verify authorization.

negligence and contains some broad allegations regarding negligence,[5] the specific allegations of negligence focus upon MCI's failure to supervise its representatives or agents. However, the Complaint also includes a cause of action predicated upon negligent misrepresentation, alleging that "[MCI] knew or should have known that their representations were false, misleading and/or omitted to provide material information." Compl. ¶ 51.[6] The Complaint alleges that MCI Slammed Chiptoff and the Members "by falsely and fraudulently changing their telecommunications service carrier to MCI" through misleading and/or fraudulent marketing ("Wrongful Marketing") and that Chiptoff and the Members were not aware that their service was switched to MCI.[7] Compl. ¶ 35. (As discussed *infra*, Chiptoff's Claim is not based on the common facts and legal theories. Therefore, the Court finds that he is not a member of the Class.) As a result of MCI's alleged misrepresentation, omission of material fact, fraud, or negligence (1) the Members were switched to MCI without the Member's proper authorization ("Wrongful Selling"), or (2) individuals who were not authorized to make long-distance decisions on behalf of the Member ("Unauthorized Individuals, except when referred to individually which is hereinafter defined as "Unauthorized Individual")[8] consented to switch the Member's Provider to MCI ("Unauthorized Switching").[9] The Complaint further alleges that as part of MCI's Wrongful Marketing, MCI mailed promotional

---

[5] Even the Complaint's broad allegations of negligence are related to an alleged fraudulent scheme. The complaint generally alleges that "[w]hether intentionally or negligently done, the actions of [MCI], their employees and agents were part of a scheme of deceptive practices used to change the [Members'] telecommunication carriers." Compl. ¶ 26.

[6] Therefore, the Complaint was not precise when it described the Complaint because the Complaint contains a cause of action predicated upon negligent misrepresentation.

[7] The Complaint names as defendants WorldCom Inc., MCI Telecommunications Corp., and Does 1 through 100.

[8] From the Complaint it appears that the Unauthorized Individuals were not MCI representatives, but were persons that answered the Member's telephone and responded to the solicitation, but allegedly were not authorized by the Member.

[9] Both the Wrongful Selling and the Unauthorized Switching are subcategories of Wrongful Marketing.

checks to the class members that authorized the switching of their Providers to MCI upon cashing the checks (the "Checks," except when referred to individually which is hereinafter defined as the "Check").  The Complaint alleges the Checks were misleading and/or were signed by Unauthorized Individuals.  (The Complaint fails to allege how many or what portion of the Members were switched as result of Wrongful Marketing and the Unauthorized Switching.)  In support of the existence of the Class, Chiptoff has identified databases maintained by the Debtors that listed the Members who complained of Slamming and the resolution of their complaints (whether MCI issued a refund to the Members).

The Complaint alleges that Chiptoff's long-distance service was switched twice without his knowledge,[10] once on August 24, 1996 (the "August Switch"), and again on November 25, 1996 (the "November Switch"), Chiptoff alleges that he first found out about the changes when he received his telephone bills.  In the Complaint, Chiptoff denies signing any Checks for the two allegedly unauthorized switches.  Moreover, Chiptoff alleges in the Complaint that he is currently paying Pacific Bell ("PAC Bell"), his local telephone provider, for the local and long-distance charges he incurred in the last months of 1996, including the amounts overcharged by MCI.  Finally, Chiptoff avers in the Complaint that he and the Members have been forced to pay MCI or have had their credit status damaged or threatened.  Based on the aforementioned, the Complaint contains six causes of action (i) fraud (the "Fraud Count"), (ii) fraudulent concealment (the "Fraudulent Concealment Count"), (iii) interference with business and contractual relations (the "Interference with Business and Contractual Relations Count," or "Tortious

---

[10] As discussed in note 18, Chiptoff alleges that prior to the two allegedly unauthorized switches, he authorized a previous switch.  Chiptoff does not allege that the previous switch was wrongful.

Interference Count"), (iv) negligent misrepresentation (the "Negligent Misrepresentation Count"), (v) negligence (the "Negligence Count"), and (vi) unjust enrichment (the "Unjust Enrichment Count").[11]

Chiptoff conducted extensive discovery prior to filing the Claim. Chiptoff found that MCI's database includes records of the Members who complained of Slamming and whether MCI issued a credit.[12] Additionally, Chiptoff alleges that MCI settled and entered into consent decrees with state and federal agencies and paid fines for the Wrongful Switching. Moreover, Chiptoff alleges from September 1995 through January 2000 MCI was required by the FCC to re-rate customers who complained of slamming if MCI could not verify authorization for the switch. Despite that requirement, Chiptoff alleges that MCI failed to re-rate customers, as demonstrated by MCI's failure to re-rate his claim.[13] Chiptoff alleges that prior to 1995, the Slamming complaints were essentially not regulated.[14] Additionally, Chiptoff alleges that MCI has identified 200 employees who were engaged in Slamming and that Slamming generated a significant percentage of MCI's sales.[15]

---

[11] Chiptoff argues the evidence in the Motion for California State Certification demonstrates that the Class should be certified. While addressing the predominance requirement of Rule 23, the Motion for California State Certification generally discusses the issues alleged to be common to the entire class. The Motion for California State Certification then specifically addresses the predominance requirement of Rule 23 regarding the three counts listed in the Complaint (the Negligence Count, Unjust Enrichment Count and Tortious Interference Count). The Complaint that was submitted with the Claim lists the six causes of action. Moreover, at the hearing and in their papers the Debtors reference all six causes of action. Based on the aforementioned, the Court considers the six causes of action.

[12] From 1997, the databases include MCI's conclusion about the reasons for the complaint.

[13] As discussed *infra*, more than two years after the suit was initiated in the Superior Court, MCI attempted to re-rate Chiptoff by mailing a refund check to Chiptoff.

[14] This adds another element of complexity to the management of the Class. The Members that allege Slamming prior to September 1995 would have different burdens of proof than the Members that allege Slamming after that date. For example, after December 1995, the Members would have an easier burden of establishing scienter because MCI was aware of the Slamming.

[15] Chiptoff alleges that from February 2000, MCI had a policy of issuing a 30-day credit to all customers who complained of Slamming whether or not MCI could verify authorization and in November 2000, the FCC required MCI to maintain this policy. In the Motion for California State Certification, Chiptoff argues that from February 2000 customers have claims for injunctive relief. Similarly, Chiptoff seeks equitable

Regarding Chiptoff's allegation that his phone service was switched without authorization twice, once on August 24, 1996 (the "August Switch") and again on November 25, 1996 (the "November Switch"), the Debtors produced the Check signed by Chiptoff authorizing his switch to MCI. Chiptoff has not alleged the Check he signed was misleading.[16] Chiptoff avers that the Check produced by MCI authorized the change in service on July 19, 1996.[17] Chiptoff alleges that on August 7, 1996 he switched his service to an AT&T plan prior to the August Switch.[18] However, at the oral argument Chiptoff conceded that there is a question whether the August Switch was a result of Chiptoff signing the Check. Chiptoff maintains that even if the August Switch was authorized by his signing the Check, the November Switch was clearly unauthorized. MCI concedes that the November Switch was an error and that Chiptoff should have been re-rated for any overcharge that may have resulted from the November Switch. The Complaint alleges that MCI initially argued that both the August Switch and November Switch were the result of Chiptoff signing the Checks.

Before the Superior Court ruled on the Motion for California State Certification, the Superior Court Proceeding was stayed as a result of the Debtors' filing for relief under Chapter 11 of the United States Bankruptcy Code on July 21, 2002. On January

---

relief in the Proof of Claim. However, it appears that customers from February 2000 are not included in the Class that is seeking monetary compensation.

[16] Further, the Court notes that the Check on its face states, "Endorse the check to switch to MCI" and on the back the Check states, "I understand cashing the check switches me to MCI."

[17] The Complaint failed to allege that an authorized switch preceded the August Switch.

[18] Based on Chiptoff's arguments in the Superior Court Papers, it appears that he alleges that his service was switched to MCI three times, once with authorization and twice without authorization that are referred to in the Complaint. *See* note 10. While Chiptoff alleges that the first switch took place prior to August 7, he failed to provide the day the first switch allegedly occurred or any other relevant information. In the pleadings, MCI does not respond to whether Chiptoff switched his service to MCI prior to August and the affect such a switch would have on the instant motion. However, the relevant facts for the purpose of the instant motion are that Chiptoff concedes that there is a question of fact whether the August Switch was unauthorized and MCI concedes that it mistakenly switched Chiptoff in November. Therefore, for the purposes of the instant motion, the Court addresses the August Switch and the November Switch.

23, 2003, Chiptoff filed the Claim purporting to represent the Class.  On October 15,

2004, the Debtors objected to the Claim in the Debtors' Seventy-Second Omnibus

Objection to Proofs of Claims (the "Claim Objection").  Chiptoff filed the Response by

Paul Chiptoff to the Debtors' Objection to Proof of Claim Number 31079 and Cross

Motion for Abstention (the "Response to Claim Objection"), dated January 4, 2005.  The

Debtors filed the Reorganized Debtors' Supplemental Objection to, and Motion to Deny

Class Certification of Paul Chiptoff, Proof of Claim Number 31079 (the "Debtors'

Supplemental Objection"), dated May 24, 2005.  Chiptoff filed the Response by Paul

Chiptoff to the Reorganized Debtors' Supplemental Objection to, and Motion to Deny

Class Certification of Proof of Claim Number 31079 (the "Response to Supplemental

Objection"), dated July 22, 2005.  Memoranda filed in the Superior Court were appended

to the Response to Supplemental Objection (the "Superior Court Papers").[19]  On March

28, 2006, the Court denied Chiptoff's motion for abstention.  On May 9, 2006, the Court

heard the instant matter and took it under advisement.

III Discussion

---

[19] A number of the Superior Court Papers were filed in the Superior Court under seal and similarly were
filed in the Court under seal.  Chiptoff and the Debtors have waived the confidentiality of the Superior
Court Papers for the purpose of the Court's reference to such papers in this opinion.

  The Superior Court Papers include (1) the Motion for California State Certification, (2) Chiptoff's
memoranda from the Superior Court Proceeding in opposition to MCI's motion for summary judgment or,
alternatively summary adjudication, dated October 2001 (the "October 2001 Memorandum"), and (3) a
memorandum dated August 2000 in response to Debtors motion to strike (the "August 2000
Memorandum").  Additionally, Chiptoff appended the Superior Court's ruling rejecting MCI's motion to
strike in September 2000 (the "2000 Superior Court Ruling") and MCI's motion for summary judgment in
November 2001(the "2001 Superior Court Ruling").  For the 2001 Superior Court Ruling, Chiptoff
appended the tentative ruling of the Superior Court and notice that the Superior Court adopted the tentative
ruling as an order of the Superior Court.  Additionally, the Court received MCI's Memorandum In Support
of Motion to Strike; Reply Brief in Support of Defendant MCI Communication Corp.'s Motion to Strike;
Memorandum of Points and Authorities In Support of Defendants Motion for Summary Judgment or,
Alternatively Summary Adjudication (arguing that Chiptoff's individual claim should be dismissed because
he was never damaged by MCI and Chiptoff is inappropriate as a private attorney general); and Reply Brief
in Support of Defendants' Motion for Summary Judgment or, Alternatively Summary Adjudication.

The Debtors argue that Chiptoff failed to apply Rule 23 of the Federal Rules of Civil Procedure Rule ("Rule 23"),[20] incorporated into the Bankruptcy Rules by Rule 7023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the facts of the case. *See In re Chateaugay Corp.*, 104 B.R. 626, 634 (S.D.N.Y. 1989)(permitting class proof of claim pursuant to Rule 7023 of the Bankruptcy Rules). The Debtors assert that for certification Chiptoff relies on the Superior Court Papers that address the California Code of Civil Procedure and, as stated above, fails to address Rule 23. Chiptoff argues that the case was initially filed in the Superior Court and, as such, this proceeding is a California class action and California state laws should govern certification. Additionally, Chiptoff asserts that the arguments and cases in the Superior Court Papers are relevant to certification under Rule 23. Further, Chiptoff argues that the Debtors' arguments to deny certification recycle arguments that the Superior Court rejected. Therefore, Chiptoff asserts that the Court should adopt the Superior Court's rulings and deny Debtors' Supplemental Objection.

A prerequisite for a class action claim to proceed is that the claim satisfies the requirements of Rule 23.[21] The Class was never certified in the Superior Court Proceeding.[22] Even if the Superior Court certified the Class, the Court is not bound by that certification.[23]

---

[20] Additionally, the Debtors argue that Chiptoff cannot satisfy the Rule 23 requirements for certification, including the numerosity, commonality, typicality, and ascertainibility requirements of Rule 23.

[21] While the Court considers the California Code of Civil Procedure for issues regarding Chiptoff as a private attorney general (the UCL claim), the Court considers the Federal Rules and relevant case law for questions regarding Chiptoff as a class representative.

[22] Chiptoff alleges the Superior Court found that there is triable issue of fact whether Chiptoff suffered damages, the November Switch was unauthorized (it does not appear that MCI challenged this contention in the Superior Court Papers), and there is a reasonable possibility that he can establish a community of interest. "The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462,

Regarding the Superior Court Papers, the Court considers the arguments and case law contained in those papers that are relevant to certification under Rule 23. The Court first addresses whether Chiptoff meets the requirements for a class representative under Rule 23. If Chiptoff fails to meet those requirements, class certification is not appropriate and it is not necessary to address the other Rule 23 requirements.

*Prerequisites of Rule 23*

Rule 23 provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to

---

470 (Cal. 1981). A review of the record submitted reveals that the Superior Court did not explicitly address the uniqueness of the November Switch. However, as stated above, the Court finds that the November Switch was a result of a factual situation that is unique to Chiptoff and, as such, he is not a proper representative because he is not a member of the Class and he is subject to a unique defense.

The 2001 Superior Court Ruling addressed MCI's motion for summary judgment or, alternatively summary adjudication that Chiptoff lacked standing to sue because he was not damaged as the result of an Unauthorized Switch. Additionally, MCI sought summary judgment or, alternatively summary adjudication that Chiptoff was not an appropriate private attorney general. The Superior Court held that there was a triable issue of fact whether Chiptoff was damaged. Additionally, the Superior Court held that Chiptoff did not have to sustain damages to serve as a private attorney general. The Superior Court never issued a ruling that Chiptoff qualified as a private attorney general.

However, after the Superior Court noted its view as to the requirements to be designated as a private attorney general, Proposition 64 was enacted. Proposition 64 requires that a private attorney general sustain damage and is required to meet the qualifications for class certification. Thereafter, the Supreme Court of California ruled that Proposition 64 applies to cases that were pending at the time Proposition 64 was enacted. As discussed *infra*, the Court addresses the UCL allegations to the extent they are included in the Proof of Claim. Therefore, the Court analyzes Chiptoff's qualification to serve as a private attorney in light of the recent California Supreme Court decision.

Similarly, the 2001 Superior Court Ruling did not address explicitly whether the unique factual situation that resulted in the November Switch was typical of the Members' allegations. As a result, the Superior Court did not address explicitly whether these unique facts prevent Chiptoff from serving as a class representative under the California Code of Civil Procedure.

The 2000 Superior Court Ruling addressed MCI's motion to strike nationwide class allegations. The Superior Court found that there is reasonable probability that Chiptoff can establish a community of interest (that the Class meets California Code of Civil Procedure 's requirements for certification), which includes a commonality and typicality requirement. The Superior Court's ruling that there is the reasonable probability that Chiptoff can establish a community of interest was in response to MCI's motion to strike nationwide class allegations prior to discovery. As discussed, it is not clear how the Superior Court addressed whether the November Switch's unique factual circumstance preclude Chiptoff from serving as a named plaintiff.

[23] The Court has held previously that it is not required to rely on the state court's certification and may make its own determination whether to certify the class. *In re WorldCom, Inc., et* al., (Denying Motion of Duane G. West), 2002 WL 32773997 (Trial Motion, Memorandum and Affidavit), at *8 (Bankr. S.D.N.Y. Oct. 29, 2002).

the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Class requirements*

 "[Chiptoff] bears the burden of proving that [his] action satisfies all four prerequisites to a class action enumerated in Rule 23(a) and falls within one of the three categories of permissible class actions defined by Rule 23(b)." *Luedke v. Pan Am Corp.*, 155 B.R. 327, 329 (S.D.N.Y. 1993).

*Requirements for the Class Representative*

The Court's initial inquiry is whether Chiptoff is an appropriate representative. If Chiptoff is not an appropriate representative than "[i]t is not necessary for the court to continue its analysis of the remaining class certification requirements." *Walker v. Asea Brown Boveri, Inc*., 214 F.R.D. 58, 66 (D. Conn. 2003). "A finding that [Chiptoff is not a member of the Class or is] atypical will result in the dispositive conclusion that class certification is inappropriate in this case." *Newman v. RCN Telecom Servs., Inc*., 2006 U.S. Dist. LEXIS 52314, at *11 (S.D.N.Y. 2006).[24] Similarly, a finding that Chiptoff fails to meet the adequacy of representation requirement of Rule 23(a)(4) is dispositive that class certification is inappropriate and it is not necessary for the Court to reach the other requirements of Rule 23.[25] *See Savino v. Computer Credit*, 173 F.R.D. 346, 357 (E.D.N.Y. 1997) (declining to address the defendants other arguments in opposition to

---

[24] *See generally* Alba Conte & Herbert B. Newberg, 1 Newberg on Class Actions § 3:13 (4th ed.)(discussing the overlap between the commonality requirement and the typicality requirement of Rule 23(a)).

[25] *See Zemel Family Trust v. Philips Int'l Realty Corp*., 205 F.R.D. 434, 437 (S.D.N.Y. 2002)(denying certification because the class representative's "lack of honesty and trustworthiness"); *Beck v. Status Game Corp.*, 1995 U.S. Dist. LEXIS 9978, at *11-12 (S.D.N.Y. 1995)(denying certification because the one of named plaintiffs' failed to meet the typicality requirement of Rule 23(a)(3) and the other failed to meet the adequacy requirement of Rule 23(a)(4)). "Each of these plaintiffs is atypical and none is an adequate representative of this class. Accordingly, the motion for class certification is denied." *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 477 (S.D.N.Y. 1989).

certification because named plaintiff failed to meet adequacy of representation requirement of Rule 23 (a)(4)) *aff'd in part, vacated on other grounds*, 164 F.3d 81 (2d Cir. 1998). Finally, "[t]he standing analysis in the context of a class action looks to the status of the named plaintiff, not the standing of unidentified class members. A named plaintiff may only represent absent class members if he personally has standing to litigate his own claim." *Salsitz v. Peltz*, 210 F.R.D. 95, 99 (S.D.N.Y. 2002).[26]   If Chiptoff was not damaged by MCI, he lacks standing to represent the Class. *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005).[27]

---

[26] The Court addresses Chiptoff's standing prior to the numerosity and commonality requirements of Rule 23 because standing is related to the prior discussion of whether Chiptoff is an appropriate representative.

[27] "Federal courts ordinarily treat standing as a threshold inquiry because in its absence there is no case or controversy within the federal courts' jurisdiction. Nonetheless, the Supreme Court has carved out an exception to the ordinary treatment of standing in at least some class action suits. Specifically, in the context of widespread asbestos-related litigation, the Court determined that where class certification issues are logically antecedent to standing issues, class certification is properly addressed before standing." *In re Grand Theft Auto Video Game Consumer Litig.*, 2006 U.S. Dist. LEXIS 78064, at *5-6 (S.D.N.Y. 2006)(citations omitted). In *Grand Theft,* the named plaintiffs made purchases in five states and sought to represent a putative class of nationwide purchasers based on the laws of all fifty states. The defendant argued that the named plaintiffs lacked standing to represent the purchasers in states where none of the named plaintiffs made purchases. The court in *Grand Theft* noted the split of authority in terms of under what circumstances the logically antecedent exception is applicable. The court in *Grand Theft* held that the "better interpretation is to treat class certification as logically antecedent to standing where class certification is the source of the potential standing problems." *Id.,* at *9. In *Grand Theft* every named plaintiff had a claim against the defendant but might have lacked standing to bring a claim in every state. The court in *Grand Theft* held that deferring the standing inquiry until after the class inquiry would solve the named plaintiffs' standing infirmities. *Grand Theft*'s reasoning is not applicable to situation where the plaintiff lacks standing and "piggy-back[s] on the injuries of the unnamed class members." *Id.,* at *10 (citations omitted).

Likewise, the Seventh Circuit addressed a situation where the named plaintiff did not interact directly with all the defendants but if certified, the class would have standing with respect to all the defendants. *Payton v. County of Kane*, 308 F.3d 673, 681-682 (7th Cir. 2002). The court in *Kane* held that the standing inquiry should follow the class inquiry. The court in *Kane* held that "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." *Id.* (citing *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974)). In *Kane* and *Grand Theft* postponing the standing inquiry until after the certification inquiry provided standing for the putative class.

In contrast, the timing of the standing inquiry will not effect the Court's determination. However, as discussed *infra*, it is not necessary for the Court to address whether Chiptoff has standing as a result of being damaged because he fails to meet the requirements of Rule 23(a).

*Requirements for the Class Representative*

"The class-action suit is a procedural device for joining parties.  It permits single-action litigation of multiple claims involving similar or identical questions of fact and law that arise from a common set of operative facts."  5-23 Moore's Federal Practice - Civil § 23.02 (citing *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 781 (9th Cir. 1994)). "The class-action device was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982)(internal citations omitted).

Regarding the named plaintiff, "the Supreme Court has held that if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant [..], none may seek relief on behalf of himself or any other member of the class." *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005)(quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)(internal citations omitted).  "A named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share.  Standing cannot be acquired through the back door of a class action." *Id.* (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974)).

"The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly

13

and adequately protected in their absence." *Falcon*, 457 U.S. 158.  Rule 23(a)(3) requires

that "the claims or defenses of the representative parties are typical of the claims or

defenses of the class."  Rule 23(a)(3).  "Rule 23(a)(3) is satisfied when each class

member's claim arises from the same course of events, and each class member makes

similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham*

*Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

      "If a proposed class representative is subject to a defense that is unique to the

representative and that could become a focus of the litigation, the class representative will

not satisfy the adequacy-of-representation requirement."  5-23 Moore's Federal Practice -

Civil § 23.25.[28]  Similarly, "if the credibility or honesty of the class representatives

threatens to become a focus of the litigation, the class representatives will be inadequate

representatives."  *Id.*

      *Application of the Requirements for the Class Representative to Chiptoff*

      The Debtors argue that Chiptoff's claim is unique from the Members' claims.[29]

Specifically, the Debtors argue that Chiptoff's claim is unique from the Members who

never subscribed.[30]  Chiptoff counters that that his claim arises from the same conduct,

MCI's practice of allegedly switching the Members without their consent and, as a result,

he and the Members were forced to pay higher telecommunications costs or their credit

---

[28] "Regardless of whether the issue is framed in terms of the typicality of the representative's claims, Rule
23(a)(3), Fed.R.Civ.P., or the adequacy of its representation, Rule 23(a)(4), Fed.R.Civ.P., there is a danger
that absent class members will suffer if their representative is preoccupied with defenses unique to it."
*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.
1990)(internal citations omitted).
[29] Addressing the implied requirement of ascertainibilty of Rule 23, the Debtors argue that Chiptoff's claim
is unique because Chiptoff was previously a customer.  However, the uniqueness of his claim is (also)
relevant for the commonality requirement of Rule 23.
[30] *See* note 18 (discussing Chiptoff's relationship with MCI prior to the November Switch).

was damaged or threatened.  Therefore, Chiptoff concludes that he and the Members share the same interest in proving the allegations in the Complaint.

As will be discussed in more detail *infra,* the application of the requirements for a named plaintiff to Chiptoff demonstrates that he is inappropriate as a named plaintiff. Chiptoff has the burden of proving that he meets the requirements of Rule 23. *See Luedke v. Pan Am Corp.,* 155 B.R. 327, 329 (S.D.N.Y. 1993).  Chiptoff has failed to demonstrate that the November Switch and the Members' switches arose from the same course of events and entail similar questions of law.  As a result, Chiptoff is not a member of the Class.  Moreover, Chiptoff is subject to a unique defense that the November Switch was not the result of a pattern and practice of the alleged Slamming but rather the result of an error based upon a unique set of facts and circumstances.

### *Chiptoff as a Member of the Class*

 "The standard for meeting the Rule 23(a)(2) prerequisite is [..] there need only be a single issue common to all members of the class."  *Becher v. Long Island Lighting Co*., 164 F.R.D. 144, 150 (E.D.N.Y. 1996).   However, "[i]t is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality."  *Sprague v. General Motors Corp*., 133 F.3d 388, 397 (6th Cir. 1998) (en banc).

"The commonality and typicality requirement [..] serve as guideposts for determining whether [..]  the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147,

158, (U.S. 1982).[31]  "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)(citing *Falcon*, 457 U.S. 157; *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 597 (2d Cir. 1986)). "23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).[32]

As discussed, Chiptoff's arguments before the Court focused on the November Switch.  However, the Court notes that the August Switch would not provide a basis for certification.  Chiptoff has failed to meet his burden of demonstrating the August Switch is typical of the claims alleged by the Members.  Moreover, Chiptoff has failed to meet his burden of demonstrating that he did not authorize the August Switch by cashing the Check or that the August Switch emanated from the marketing department.[33]

---

[31] "To a large extent, it overlaps the requirements that the named representatives adequately represent the class, that there be common questions of law and fact, that such questions predominate, and that the class action be a superior means of resolution."  *Eisenberg v. Gagnon* 766 F.2d 770, 786 (3rd Circ. 1985).  The overlap with adequacy of representation is discussed *infra*.

[32] "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998).

[33] Chiptoff's failure to establish that the August Switch was unauthorized also demonstrates Chiptoff is not a proper representative based upon the August Switch.  Chiptoff argues that the Class is ascertainable by looking at the MCI databases.  Chiptoff has had the benefit of extensive discovery of the databases' contents, document production and depositions.  However, as stated above, Chiptoff has failed to demonstrate the August Switch was unauthorized and concedes that there is a question whether the August Switch was unauthorized.  Moreover, after conceding that there question regarding the August Switch, Chiptoff failed to address how the August Switch meets the requirement of Rule 23.  Chiptoff has failed to establish that the August Switch is common or typical of the Slamming that is alleged in the Complaint.

Additionally, the Second Circuit recently addressed the proper standard a district court should apply in determining whether to certify a class.

In light of the foregoing discussion, we reach the following conclusions: (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to

Chiptoff alleges that he is a member of the Class.  Chiptoff argues to meet the commonality requirement of Rule 23(a)(2), the Court is only required to find one common question and whether the Members' switch was authorized is a question common to the entire Class.[34]  Chiptoff asserts that MCI conceded that the November Switch was unauthorized.  MCI argues that Chiptoff's claim is not a result of a pattern and practice of the alleged Slamming but rather the result of an accident.[35]  Prior to the November Switch, MCI alleges that he was a customer of MCI with a large unpaid bill.  MCI further alleges that when Chiptoff called to change his long-distance telephone service from MCI to another Provider, his long-distance telephone service from MCI was already subject to be canceled because of his large unpaid bills.  MCI alleges the "discontinuance was rescinded (although he never paid his bill) and the restoration of service inadvertently trumped the disconnect initiated as a result of [Chitptoff's] complaint."  MCI argues that Chiptoff's November Switch was not the result of the

---

each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.
*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 2006 U.S. App. LEXIS 29854 at *52-54  (2d Cir. 2006).

Applying the recent decision to the instant case, the Court finds that Chiptoff has failed to meet the burden of proving that the August Switch was unauthorized.  As discussed, Chiptoff has the benefit of extensive discovery and ample time to demonstrate that the August Switch was unauthorized.  However, Chiptoff has failed to demonstrate that the August Switch was related to marketing or was not the result of his signing the Check.  In fact, Chiptoff has conceded that there this is a question as to whether the August Switch resulted from his signing the Check.  Based on the aforementioned, Chiptoff has failed to meet his burden that the August Switch was unauthorized.

[34] Chiptoff argues MCI admitted that the November Switch was unauthorized and he was Slammed as a result of the November Switch.  While MCI conceded that that the November Switch was an error, MCI did not concede that the November Switch was the result of its marketing efforts or was part of an alleged scheme.

[35] MCI was addressing the requirements for a private attorney general under Section 17200.

alleged "systematic pattern of slamming customers."[36]  Rather, MCI argues that the

November Switch was due to internal miscommunications.  Whether Chiptoff disputes

the validity of the bills does not affect this analysis, Chiptoff does not dispute that MCI's

records reflected high-unpaid international toll charges.[37]  MCI has demonstrated that the

November Switch resulted from an action taken by the high toll department and was not

part of an alleged systematic scheme to switch customers by the marketing department.

The Complaint alleges that the Member where Slammed as a result of MCI's

aggressive marketing and selling telephone service to consumers throughout the United

States.  Likewise, the Complaint alleges that it is consumer fraud action.  (As discussed,

the Negligent Misrepresentation Count includes conduct that was negligent and not

fraudulent.  However, that count is based on Wrongful Marketing.)  While some of the

language in the Complaint is broad enough to include switching not done through

Wrongful Marketing, the specific allegations of how Members were switched details

Wrongful Marketing.[38]  Moreover in Debtors' Supplemental Objection, MCI argues that

the Complaint was based on marketing.  Chiptoff never specifically denies that it was

based on marketing in his subsequent pleadings or at the oral argument.  While the Claim

---

[36] In a deposition, an MCI representative testified that based on MCI's research the November Switch was a result of an error that emanated from the high toll department.  The representative noted that it was a highly unusual and she could not explain how it occurred.

[37] Additionally, the Debtors cite the Court's decision denying certification in the *Memorandum Opinion Regarding M. Ray West and Class Claimants' Motion for Certification Under Fed. R. Bank. 7023, In re WorldCom Inc.*, Case No. 02-13533 (dated, May 11, 2005)(hereinafter referred to as "*M. Ray West*") for the proposition that Chiptoff's claim is not typical.  The Debtors argue that the same factors are present in the instant case, including issues of reliance and different statutes of limitations.  Chiptoff counters *M. Ray West* is distinguishable.  Chiptoff argues that in the instant case the statute of limitations do not pose a barrier to certification because the statute was tolled during the pendency of the litigation initiated in the Superior Court and any other differences can be addressed through a formulaic approach.  Additionally, Chiptoff argues that reliance is not an issue with regard to the Slamming complaint.  It is not necessary for the Court to address these arguments because the Court finds that Chiptoff is not a member of the Class and he is subject to a unique defense.

[38] Similarly, addressing the Fraud allegations Chiptoff gives examples of how Members were fraudulently switched through Wrongful Advertising or Unauthorized Switching and the laws addressing Slamming generally address marketing (telemarketing or the use of written authorizations).

includes the Negligence Count, the Negligence Count focuses primarily on MCI's failure

to supervise employees.[39]  Finally, Chiptoff had the benefit of extensive discovery to

determine whether the November Switch was the result of Wrongful Marketing.  Based

on the aforementioned, the Class is limited to consumers who suffered as a result of

Wrongful Marketing.[40]

        In contrast, Chiptoff's claim was not the result of Wrongful Marketing or the

result of an intentional action but rather the result of an accident.[41]  All of the Complaints

allegations contain boilerplate language referring to the "plaintiff [Chiptoff] and the

members of the class."  Likewise, the pleadings allege that the November Switch was

part of an alleged scheme.  However, the specific factual allegations in the Complaint and

the pleading demonstrate that the November Switch was not the result of Wrongful

Marketing.  Chiptoff denies authorizing the November Switch.  He alleges that he was

never contacted regarding the November Switch.  However, he does not allege that an

Unauthorized Individual switched him or that he was switched as a result of Wrongful

Advertising.  Chiptoff has exchanged extensive discovery with MCI and he has failed to

allege that a particular marketing effort led to the November Switch or was the result of

---

[39] The Negligence Count does not address the type of negligence that occurred in the November Switch.
The Negligence Count alleges that MCI's failure to supervise led to the MCI's agents' and/or
representatives' practice of Slamming.  Members who where intentionally Slammed by sales
representatives due to MCI's failure to supervise would have the rights similar to Members who were
intentionally Slammed.  While the Motion for California State Certification uses broad language in alleging
MCI's negligence, the Motion for California State Certification also addresses an alleged scheme or pattern
of Slamming.

[40] As discussed the Negligence Count in the Complaint focuses on MCI's failure to supervise.  *See* note 5.
Even if the Negligence Count could be interpreted to allege that MCI, its employees and agents
participation in the alleged scheme switching of the tens of thousand consumers was negligent.  This
negligence would be distinct from the negligence was responsible for the November Switch.  For example,
although California law allows for punitive damages for negligence, the negligence would have to reach the
level of malice.  *Snyder v. Enter. Rent-A-Car Co.*, 392 F. Supp. 2d 1116, 1129 (D. Cal. 2005).

[41] Chiptoff did not dispute MCI's contention that the November Switch was a result of an error.  In fact,
Chiptoff quoted the MCI representative testimony that the November Switch was an error.  Moreover, as
discussed, Chiptoff's factual allegations do not support that the November Switch was a result of an alleged
marketing scheme.

an intentional act by one of MCI's agents or representatives. Chiptoff does not dispute

MCI's allegations that the November Switch was the result of an error. Additionally, as

discussed *infra*, the Court finds that Chiptoff has failed to demonstrate that he overpaid

for the service that he received from MCI and, as a result, that his payments did not

unjustly enriched MCI.[42] Based on the aforementioned, the Court finds that Chiptoff is

not a Member of the Class.

A Class that includes Members who were switched irrespective of whether the

Members were switched as a result of Wrongful Marketing and were switched

accidentally has not been addressed in the Complaint or the pleadings. The Court notes

that Chiptoff has failed to demonstrate how a class with such a diverse membership

would meet the requirements of Rule 23. A claim based upon an accidental switch is

significantly different than one based upon an intentional wrongdoing or a marketing

program to switch consumers. For consumers alleging Wrongful Marketing,[43] MCI may

be subject to strict liability and punitive damages.[44] Moreover, for such consumers MCI

---

[42] For Chiptoff to state a claim for unjust enrichment, he must allege the receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000). "A person is enriched if the person receives a benefit at another's expense. Benefit means any type of advantage." *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662-1663 (Cal. Ct. App. 1992). In order to prevail, Chiptoff would be required to prove that MCI was enriched at his expense. Chiptoff has failed to meet this burden. As stated, Chiptoff has failed to establish that he suffered any pecuniary damages. Chiptoff has failed to explain how his alleged non-pecuniary damages are sufficient to satisfy the elements of unjust enrichment. Additionally, Chiptoff argues the Class meets the requirement of Rule 23(b)(3) that common questions of law or fact predominate as to whether the Members complained of an Unauthorized Switch, the Members paid MCI and MCI issued a refund. However, Chiptoff failed to prove that he overpaid and that he should have received a refund or that the payment he received was a refund of the amount he actually paid.

[43] The Negligent Misrepresentation Count alleges misrepresentation made in the course of marketing MCI's long-distance service. As discussed, Chiptoff has failed to allege that the November Switch was the result of Wrongful Marketing. As such, Chiptoff is not appropriate named plaintiff for a class predicated upon the Negligent Misrepresentation Count.

[44] The Complaint and pleadings allege tortious interference, which allows for punitive damages. Chiptoff alleges that California law allows for punitive damages and the entire Class can receive punitive damages. Moreover, the Complaint alleges fraud, which may allow for punitive damages on a nationwide basis. In contrast, Chiptoff is not a proper representative for the Tortious Interference Count and the other counts that require scienter. Chiptoff's inability to represent a class that can receive punitive damages

may lack the defense of waiver.  Including such consumers in a class that is not

predicated upon intentional wrongdoing unfairly prevents these consumers from

collecting on a class-wide basis damages predicated upon being purposefully switched or

a marketing program to switch customers.[45]  Moreover, Chiptoff has failed to

demonstrate how a class with this diverse membership would be manageable.  Based on

the aforementioned, Chiptoff has failed to demonstrate that a class could be composed of

consumers whose service was switched both through Wrongful Marketing and as the

result of factual circumstances similar to the November Switch.

Further, Chiptoff's infirmities cannot be solved by the use of sub-classes.

Regarding nationwide certification, Chiptoff argues that if the Court finds that some

states do not allow for punitive damages the Court could use sub-classes to address those

---

demonstrates that Chiptoff's claim does not arise "from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

While California law allows for punitive damages for negligence, the negligence would have to reach the level of malice.  *Snyder,* 392 F. Supp. 2d 1129.  As discussed, the November Switch was accidental or non-systematic.  Therefore, Chiptoff has failed to properly allege that the November Switch involved malice.

Similarly, Chiptoff would not be a proper representative for a state that does not allow punitive damages for tortious inference.  Chiptoff argues that a state law allowing punitive damages should be applied the nationwide Class.  The Court does not address the merits of whether punitive damages can be awarded on a class-wide basis.  The factual circumstances regarding the November Switch would not establish malice.

In addressing nationwide certification, Chiptoff cited *Sullivan v. Chase Inv. Services, Inc.*, 79 F.R.D. 246, 269 (D. Cal. 1978) for the proposition that in to be a class named plaintiff in a nationwide securities class action the named plaintiff is not required to "raise every possible claim under state law that class members may be able to bring." *Id.*  In Contrast, Chiptoff cannot bring claims for punitive damages that he alleges every Member could bring.  Chiptoff limits the Members ability to collect punitive damages.  *See Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988) ("the claims of the class representative and class members [must be] based on the same legal or remedial theory").  Unlike the named plaintiff, "the claims of other members of the proposed class are not limited to those provided by ERISA; they can maintain claims under state law." *Kennedy v. Unumprovident Corp.*  50 Fed.Appx. 354, *356, 2002 WL 31474243, **1 (9th Circ. 2002)(not selected for publication). *See generally* Kathy L. Cerminara, The Class Action Suit as a Method of Patient Empowerment in the Managed Care Setting, 24 Am. J. L. and Med. 7, 27(1998)(discussing the limitations of ERISA relative to state claims).

[45] Even if the Negligence Count could be interpreted to allege that the MCI, its employees and agents participation in the alleged scheme switching of the tens of thousand consumers was negligent, this negligence would be distinct from the negligence that was responsible for the November Switch.  *See* note 5.

21

states.  Here, Chiptoff serving as a named Plaintiff effectively limits the Members' ability to collect punitive damages from the use of a class action.

The Court finds that Chiptoff is not a member of the Class and Chiptoff has failed to identify a class comprised of the Members and himself that meets the Rule 23 requirements for certification.[46]

### Subject to a Unique Defense

Chiptoff is subject to a unique defense that the November Switch was accidental and was not the result of a systematic marketing plan to switch customers.[47]  "Regardless of whether the issue is framed in terms of the typicality of the representative's claims, Rule 23(a)(3), Fed.R.Civ.P., or the adequacy of its representation, Rule 23(a)(4), Fed.R.Civ.P., there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."  *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 903 F.2d 176, 180 (2d Cir. 1990)(internal citations omitted).  "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Baffa v. Donaldson*, 222 F.3d 52, 59 (2d Cir. 2000).[48]  Chiptoff is subject to the defense that the

---

[46] The Court does not address whether a class based on consumers whose switch was accidental should be certified because Chiptoff has not requested certification for such a class.  The Court notes that the evidence submitted to the Court does not support the existence of such a class.

[47] The Complaint and pleadings define the Class as being predicated upon systematic switching.  The Court addresses the Class on that basis.

[48] "[I]t is beyond reasonable dispute that representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Trief v. Dun & Bradstreet Corp*., 144 F.R.D. 193, 200-201 (S.D.N.Y. 1992).  However, the defense that Chiptoff is subject to is distinguishable.  Trief is referring to instances where there is a common issue of liability among the entire class but the named representative might be subject to a unique defense regarding damages.  Here, Chiptoff is subject to a defense that based on the November Switch he is

22

November Switch was accidental and his claim arises from factual circumstances that are unique to Chiptoff.[49]  As a result, Chiptoff fails to meet the typicality requirement of Rule 23(a)(3).[50]

*Credibility*

"To determine the adequacy of representation by class representatives, courts generally consider only those challenges to the personal characteristics of the class representatives that arise out of or touch on the prosecution of the class action litigation. Furthermore, some courts hold that the personal characteristics of class representatives are relevant only if a reasonable fact finder might focus on those characteristics to the detriment of absent class members."  5-23 Moore's Federal Practice - Civil § 23.25.  "The fact that Savino offered differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial."  *Savino v. Computer Credit*, 164 F.3d 81, 87 (2d Cir. 1998).  Similarly, courts "deny certification where knowledge or credibility questions do not implicate a central issue but are particularly severe."  *Harrison v. Great Springwaters of Am., Inc.,* 1997 U.S. Dist. LEXIS 23267, at*16-21 (E.D.N.Y. 1997).

MCI argues that "[Chiptoff] has not been truthful in his pleadings put before the [Superior Court]."[51]  In the Complaint Chiptoff alleges, "Chiptoff is presently paying off

---

[49] not a member of the Class.  MCI argues that the November Switch is not predicated upon the same course of events, and Chiptoff's legal arguments are unique from the Members.  *See Drexel*, 960 F.2d 28.

[49] "While the fact that Gary Plastic was the only plaintiff to come forward and seek to represent the class weighs in favor of certification, *see Green*, 406 F.2d at 298; *Dura-Bilt*, 89 F.R.D. at 101, a class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982). In the factual context presented, we see no abuse of discretion in the district court's refusal to certify a class action."  *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir. 1990).  Similarly, as discussed, an analysis of Chiptoff's claim demonstrates that he fails to meet the typicality requirement of Rule 23(a).

[50] As discussed *supra*, an accidental switch is unique from the Slamming allegations in the Complaint and the pleadings.

his outstanding balance with the local carrier under protest, including the amounts
overcharged by MCI."[52]  Compl. ¶ 31.  As a result, MCI alleges that it engaged in
extensive discovery.  Chiptoff mailed one payment, a money order for $40.00 to PAC
Bell on August 7, 1997.  MCI alleges that this Check was for local services.  Regardless,
of whether the payment was made to MCI, the Complaint was filed in November 2000,
three years after Chiptoff made a single payment.  At best, Chiptoff's allegation paying
off his bill is misleading.

Chiptoff's allegation that he is paying off the amount overcharged by MCI raises
questions regarding Chiptoff's credibility.  However, these questions do not seem to of to
a critical element in his cause of action.  *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983).
A finding that Chiptoff exaggerated his alleged payment efforts to MCI[53] would not
affect MCI's liability for the Unauthorized Switch.  It is not necessary for the Court to
address whether the questions regarding Chiptoff's credibility are so severe that they
preclude certification because the Court finds that Chiptoff is not a member of the Class
and he is subject to unique defenses.  As discussed above, the Court finds that Chiptoff
fails to meet the requirements to be a class representative and he fails to meet the
typicality requirement of Rule 23.

*Damages*

In order to be a proper representative, Chiptoff must be able to prove he has
standing to sue MCI.[54]  Chiptoff argues that he was damaged as a result of his

---

[51] MCI was addressing the requirement for a private attorney general under Section 17200.
[52] Chiptoff made similar allegations regarding the first complaint filed in 1997.
[53] MCI argues that the single payment Chiptoff made was for his local telephone service provided by PAC Bell and not the long-distance telephone service provided by MCI.
[54] MCI argues that Chiptoff was not an appropriate representative because he was not damaged and fails to meet the typicality requirement of Rule 23.

unauthorized switch.  Chiptoff alleges that he made a partial payment to MCI for his

long-distance service.  Additionally, he alleges MCI sued him for recovery of the funds,

he was reported to a credit-reporting agency because he refused to pay MCI's inflated

charges,[55] he received collection letters, MCI representatives threatened him, and his

telephone service was disconnected.  Finally, he alleges that after the commencement of

the class action, MCI sent him a check for $476.85,[56] which he alleges represents the

amount that he was overcharged by MCI.[57]  Chiptoff argues that based on the

aforementioned, the Superior Court found that there was a triable issue of fact whether he

was damaged.[58]

Chiptoff mailed a $40.00 payment to PAC Bell, which billed him for both the

long-distance and local services.[59]  Chiptoff conceded that other than this payment to

MCI, he did not suffer any other out of pocket expenses as a result of MCI's alleged

Wrongful Switching.[60]  Chiptoff alleges that the payment was earmarked for MCI and

was paid in protest because MCI overcharged him.  MCI disputes that the payment was

earmarked for MCI.  Even if the entire payment was earmarked for MCI, Chiptoff has

failed to demonstrate that he was damaged as a result of making the payment.  Chiptoff

received long-distance services from MCI during the period that Chiptoff alleges that

---

[55] PAC Bell reported Chiptoff to the credit-reporting agency.  Chiptoff argues that a substantial portion of the amount reported to the credit-reporting agency reflected unpaid bills for MCI's allegedly inflated long-distance service.

[56] Chiptoff alleges that MCI sent the $476.85 check directly to Chiptoff, even though they were aware that a lawyer represented Chiptoff.  It appears from the pleadings that the check was not cashed.

[57] Chiptoff does not assert that the $476.85 check that he received represented the amount of money that he paid to MCI.  MCI argues that it sent a letter to the FCC stating that based upon an investigation Chiptoff authorized the switch.  However, to resolve the matter, MCI sent a check to Chiptoff reflecting a re-rate from August to December 1996.

[58] Chiptoff does not specify the basis for the Superior Court's finding that there was a triable issue of fact that Chiptoff was harmed as a result of any of MCI's actions.

[59] Chiptoff alleges that the $40.00 payment was a partial payment to MCI.

[60] Chiptoff did not make any payments for over eight months.  Six days before the Complaint was filed Chiptoff made the $40.00 payment.

MCI was not authorized to provide long-distance service. During this period, Chiptoff would have been required to pay AT&T or a different Provider for the long-distance service that he received. Chiptoff has failed to demonstrate that his bill with AT&T or a different Provider would have been less than $40.00 with any portion of the PAC Bell payment that should be attributed to MCI. Moreover, it appears from the Complaint that the entire $40.00 did not go to MCI. Chiptoff alleges in the Complaint that he was paying off his local carrier. As this was the only payment Chiptoff made for his local and long-distance telephone services during the period, presumably part of the $40.00 payment went to pay PAC Bell for the local telephone services. As such, Chiptoff paid less than $40.00 for the long-distance services he received from MCI during this period.[61] In order to prove he was damaged because he overpaid MCI, as stated above, Chiptoff bears the burden of proving that the amount he paid MCI was greater than the amount he would have paid AT&T or another Provider for the long-distance services that he received from MCI.[62] Chiptoff has failed to meet that burden. Based upon the aforementioned, Chiptoff has failed to establish that he suffered any pecuniary damages.

Chiptoff argues that his credit rating has been damaged as a result of MCI's Wrongful Switching.[63] Chiptoff alleges that PAC Bell set up a collection account for the entire amount of Chiptoff's unpaid local and long-distance telephone bills.[64] Moreover,

---

[61] Finally, part of the $40.00 may have gone to MCI for the long-distance services he received as a result of the August Switch. Chiptoff concedes that there is a question whether the August Switch was unauthorized.

[62] Chiptoff does allege that the check for a $476.85 was a refund for the amount he was overcharged but he does not allege that the check was for the amount he paid MCI.

[63] Chiptoff alleges that MCI representatives mentioned to him several times that if he does not pay the amount owed, the unpaid amount will be on his credit report. MCI argues that Chiptoff has failed to demonstrate that he was damaged by those threats.

[64] Chiptoff argues that his phone was disconnected and that this resulted in damages. However, MCI counters that Chiptoff has failed to demonstrate that the damage was not a result of his failure to pay PAC Bell for his local service. Additionally, Chiptoff argues that MCI sued him. MCI alleges that it did not

he alleges that he received mail from a collection agency. MCI argues that Chiptoff did not suffer any damage. MCI alleges that Chiptoff never actually saw a negative credit report and that he has not had difficulty obtaining credit. Even if Chiptoff's credit was damaged, Chiptoff has not demonstrated that MCI was the cause of the damage. PAC Bell demanded payment for its local service. PAC Bell warned Chiptoff that whatever his dispute with MCI regarding his long-distance service, he is still required to pay PAC Bell. Chiptoff ignored that demand. Chiptoff has failed to demonstrate that his failure to pay MCI caused PAC Bell to report his unpaid bill. Similarly, Chiptoff has failed to demonstrate that the collection letter was a result of his failure to pay whatever portion of the bill was attributable to MCI.[65]

The determination of whether Chiptoff was damaged involves complex question of fact and law as to whether Chiptoff was damaged as a result of the November Switch.[66] It is not necessary to address whether Chiptoff was damaged.[67] The Court finds that Chiptoff fails to meet the requirements to be a class representative and he fails to meet the typicality requirement of Rule 23.[68]

---

initiate the suit. Rather, MCI asserts that it was a cross-claim in a suit Chiptoff initiated. MCI further argues that if MCI could not establish that Chiptoff owed it money, MCI could not prevail.

[65] PAC Bell reported the amounts owed to the telephone companies to a credit-reporting agency. The amount reported was for $1,076.48. The check that MCI sent to re-rate Chiptoff for $476.85 represented the difference in price between MCI and AT&T for his long-distance phone service. The amount MCI overcharged Chiptoff could not be greater than $476.85. Chiptoff argues that the majority of the amount reported was from international long-distance telephone calls.

[66] Chiptoff alleges that he never authorized the November Switch and, as a result MCI's collection efforts emanating from that bill was wrongful. However, Chiptoff admits that there are questions of fact whether the August Switch was unauthorized. Chiptoff does not allege nor does it appear from the pleadings that MCI attempted to collect the bills emanating from the November Switch independently from the bills emanating from the August Switch. Chiptoff would be required to demonstrate that MCI intensified its collection efforts as a result of the incremental increase in Chiptoff's bill from the November Switch and that he was damaged by these incremental collection efforts.

[67] Therefore, the Court does not address all of the litigants' arguments regarding whether Chiptoff suffered non-pecuniary loss.

[68] As stated previously, the Court finds that Chiptoff is subject to a unique defense that the November Switch was accidental and resulted from the unique set of circumstances that he was a former customer with a large unpaid bill. Even if Chiptoff were capable of identifying a sub-class of the similarly situated

*V.  Private Attorney General*

The Proof of Claim listed the basis for the claim as a class action complaint. Chiptoff attached the Complaint, which included the UCL allegations, to the Proof of Claim.  Additionally, in the Complaint, Chiptoff seeks to serve as a private attorney general.  Likewise, in the pleadings Chiptoff refers to the UCL allegations.  The Court addresses the UCL allegations to the extent they are included in the Proof of Claim. "Proposition 64 amended certain provisions of the UCL and the false advertising law.  As amended by Proposition 64, the UCL now authorizes the filing of an injunctive or restitutionary relief action only by [..] any person who has suffered injury in fact and has lost money or property as a result of such unfair competition.   In addition, the UCL now authorizes a person to pursue a representative action only if he or she meets the class certification requirements of section 382 of the Code of Civil Procedure." *California Consumer Health Care Council v. Kaiser Foundation Health Plan, Inc.,* 142 Cal. App. 4th 21, 33 (Cal. Ct. App. 2006).  Proposition 64 amended the UCL after Chiptoff filed his suit.  During the oral argument, Chiptoff stated that there were conflicting California appellate rulings whether Proposition 64 applies retroactively to Chiptoff's claim. Chiptoff argued that if the California Supreme Court rules that the requirement is not retroactive then the denial of class certification would not affect Chiptoff's ability to serve as a private attorney general.[69]

---

Members who were subject to the same defense, Chiptoff's representation would be limited to that sub-class. Based upon the unique factual circumstances, it is not likely that such a sub-class exits or, if so, it would be manageable.  Unlike *Kane* and *Grand Theft* where certification could cure the named plaintiffs' standing infirmities, certification of the sub-class would not cure Chiptoff's infirmities as named plaintiff for the entire Class.  Chiptoff would still be subject to the unique defense.

[69] The California Supreme Court held that the application of Proposition 64 to a pending case was the prospective application of the proposition and was not the retroactive application of the proposition. *Californians for Disability Rights, LLC*, 39 Cal. 4th 223 (Cal. 2006).  "To apply Proposition 64's standing provisions to pending cases is not to apply them retroactively because the measure does not

Subsequent to the oral argument, "[the California Supreme Court in *Californians*

*for Disability Rights v. Mervyn's, LLC* 39 Cal. 4th 223 (2006)] held that UCL standing

provisions apply to cases that were pending when Proposition 64 took effect." *California*

*Consumer Health Care Council* 142 Cal. App. 4th 24.  Therefore, Chiptoff is required to

meet the class certification requirements of California Code of Civil Procedure to serve

as a private attorney general.

Section 17200 states

> As used in this chapter, unfair competition shall mean and include any unlawful,
> unfair or fraudulent business act or practice and unfair, deceptive, untrue or
> misleading advertising and any act prohibited by Chapter 1 (commencing with
> Section 17500 [False or misleading statements]) of Part 3 of Division 7 of the
> Business and Professions Code.

[T]he statute is not confined to anticompetitive business practice but is equally

directed toward the right of the public to protection from fraud and deceit." *Stoiber v.*

*Honeychuck* (1980, 5th Dist) 101 Cal App 3d 903, 162 Cal Rptr 194, 1980.[70]  "§§ 17200

and 17500, as these sections are the basic tools of the Attorney General and the district

attorneys in combating consumer fraud." *Lavie v. Procter & Gamble Co.*, 105 Cal. App.

4th 496 (Cal. Ct. App. 2003).

"The proscription in the statute against unfair competition is not restricted to

deceptive or fraudulent conduct but extends to any unlawful business practice." *Stoiber,*

101 Cal App 3d 903.  "An unlawful business activity includes anything that can properly

be called a business practice and that at the same time is forbidden by law." *People v.*

*McKale* 25 Cal 3d 626 (1979).  However, the UCL cause of action  (the "UCL Claim ") is

---

change the legal consequences of past conduct by imposing new or different liabilities based on such
conduct."  *Id.*
[70] "New Jersey Consumer Fraud Act (CFA) N.J.S.A. 56:8-1 to 20, is similar in many ways to the UCL."
*Net2phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583, 590 (Cal. Ct. App. 2003).

predicated upon consumer fraud.  The UCL Claim refer specifically to the "defendants'
practices of fraudulently changing the telecommunication carrier of consumers."
Moreover, UCL Claim alleges, "that the defendants' misconduct is likely to mislead
consumers and consequently, constitutes a fraudulent business act."  Compl. ¶ 66.
Finally, the Complaint alleges wrongful conduct based upon marketing.  Based on the
aforementioned, the Complaint's UCL allegation is a consumer fraud action.

Chiptoff cannot act as a private attorney general on behalf of a class of consumers
that have allegedly been harmed by consumer fraud or Wrongful Marketing.  Moreover,
the UCL Claim only specifically alleges fraudulent actions.  As discussed, Chiptoff has
failed to allege that the November Switch was the result of consumer fraud or Wrongful
Marketing.  Likewise, Chiptoff has failed to allege that the November Switch was the
result of business act or practice.  Based on the aforementioned, Chiptoff cannot act as a
private attorney general.[71]

Moreover, California Code of Civil Procedure requires that "the questions of law
or fact common to the class are substantially similar and predominate over the questions
affecting the individual members."  Cal Civ Code § 1781.  "[I]t uniformly has been held
that [..]there must be a well defined community of interest in the questions of law and
fact involved affecting the parties to be represented."  *Daar v. Yellow Cab Co*., 67 Cal. 2d
695, 704 (Cal. 1967)  "The community of interest requirement embodies three factors: (1)
predominant common questions of law or fact; (2) class representatives with claims or

---

[71] Even if the private attorney general claim entailed all of the Complaint's allegations, Chiptoff is not
competent to serve as a private attorney general.  As disciussed, the Complaint alleges that the Members
were Slammed as a result of Wrongful Advertising.  In contrast, the November Switch was the result of
factual circumstances unique to Chiptoff and not the result of Wrongful Advertising or any other systematic
marketing plan.

defenses typical of the class; and (3) class representatives who can adequately represent the class." *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 470 (Cal. 1981).

Based on the Court's conclusion that Chiptoff is not appropriate as a named plaintiff, Chiptoff fails to meet the requirements of California Code of Civil Procedure section 382. As discussed, the November Switch was the result of an accident and is unique from the switches alleged in the Complaint that were a result of MCI's marketing efforts or where the result of a purposeful action. Thus, Chiptoff fails to meet the requirement that "the questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members." Cal Civ Code § 1781. Moreover, as discussed Chiptoff is subject to a unique defense that the November Switch was accidental. As such, Chiptoff is subject to a defense that is not typical of the class. Based on the aforementioned, Chiptoff cannot act as a private attorney general because Chiptoff fails to meet the California Code of Civil Procedure's requirements for a class representative.

*VI. Conclusion*

Based on the forgoing, Chiptoff has failed to meet the burdens imposed by Rule 23 and the Court denies certification of the Class. The Court finds that Chiptoff is not a member of the Class. The Debtors have established that Chiptoff is subject to a unique defense that renders him not appropriate as a named plaintiff because he fails to meet the typicality requirement of Rule 23(a)(3). While MCI's alleged fraudulent or misleading practices are the basis of the Complaint's UCL allegations, Chiptoff claim is unrelated to those alleged practices. Similarly, regarding his assertion that he qualifies as a private attorney general under the California Statute, Chiptoff fails to meet the requirements for

31

certification under California Code of Civil Procedure for the same reason he fails to

meet the Rule 23 requirements.  As such, Chiptoff cannot serve as a private attorney

general under the California Statute on behalf of consumers alleging fraudulent or

misleading practices.  Therefore, the Debtors' supplemental objection to class proof of

claim number 31079 is granted and the class proof of claim and the UCL claim are

disallowed and expunged.

       Counsel for the Debtors is to settle an order consistent with this opinion.

Dated:    New York, New York
           December 14, 2006

 

                                        **s/Arthur J. Gonzalez**
                                        UNITED STATES BANKRUPTCY JUDGE