**UNITED STATES BANKRUPTCY COURT**  Not For Publication
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
                                                          :
In re                                                     :    Chapter 11
                                                          :
WORLDCOM, INC., et al.,                                   :    Case No. 02-13533 (AJG)
                                                          :
        Reorganized Debtors.                              :    (Confirmed)
                                                          :
----------------------------------------------------------x

# OPINION REGARDING THE PARTIES'
# CROSS-MOTIONS FOR SUMMARY JUDGMENT

**APPEARANCES**

Stinson Morrison Heckler LLP
Counsel for Debtors and Debtors in Possession
1201 Walnut Street
Suite 2800
Kansas City, MO 64106

  Mark A. Shaiken, Esq.
  Sara E. Welch, Esq.
    Of Counsel

Ralph Johnson
*Pro Se*

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

### I. Introduction

  Before the Court are the parties' cross-motions for summary judgment on the

claims set forth in Proof of Claim Number 12998 (the "Johnson Claim"), filed by Ralph

Johnson ("Johnson"), and the Twenty-Second Omnibus Objection to Proofs of Claim (the

"Objection"), filed by the debtor, WorldCom, Inc. (the "Debtors"). The Johnson Claim asserts rights to payment for (1) alleged damages related to the decline in the share price of the Debtors' stock, which Johnson held in unexercised stock options, his 401(k), and in his Employee Stock Purchase Plan ("ESPP") account; (2) allegedly outstanding pension obligations under the Debtors' pension plan; (3) allegedly unpaid benefits owed under the Debtors' Supplemental Executive Retirement Plan (the "SERP"); and (4) allegedly unpaid performance bonuses. The Debtors assert generally in the Objection that no outstanding debts are owed Johnson and argue in addition that Johnson's claim for stock-related damages should be subordinated pursuant to section 510(b) of Title 11 of the United States Code (the "Bankruptcy Code" or "Code").

Having reviewed the parties' pleadings and the relevant case law, and a hearing having been held on this matter, the Court concludes that the Debtors' Motion for Summary Judgment (the "Debtors' Motion") should be granted in part, and that Johnson's Motion for Summary Judgment ("Johnson's Motion") should be denied in full.

**II. Factual Background**

Prior to reorganization, Johnson had was employed by the Debtors, and more specifically, their predecessor-in-interest MCI Communications, Inc. ("MCI"), since July 1989. As an MCI employee prior to its merger with WorldCom on September 15, 1998, Johnson was entitled to participate in MCI's 401(k), ESPP, and pension plans, and was also given the opportunity to receive MCI stock options in lieu of cash compensation. As a WorldCom employee following the merger, Johnson was also eligible to receive performance bonuses reflecting the value of his sales contracts. Following the Debtors'

petition for bankruptcy, Johnson was terminated in June 2002 along with a large proportion of the Debtors' workforce.

### a. 401(k), ESPP & Stock Options

Under MCI's 401(k) plan, employees were eligible for matching employer stock contributions to supplement their individual contributions. The 401(k) plan gave each employee $0.67 in company stock for every dollar the employee saved in the 401(k) plan, up to 6% of the employee's annual pay. After five years, or at age 65, employees became vested under the plan and could elect to take their vested plan benefits as a lump sum payment upon termination or retirement. Johnson had accumulated 2,096.4880 shares in his 401(k) plan as of September 30, 2002. Similarly, under MCI's ESPP, employees were eligible to purchase MCI stock at a discounted share price. Johnson accumulated 3,810.74 shares in the ESPP prior to the termination of the plan in 1999. Finally, from February 1994 to August 1998, Johnson was eligible to receive options for the future purchase of MCI stock in lieu of cash compensation. Johnson elected to receive options for approximately 57,489 shares of MCI stock during this period.

### b. Pension

MCI adopted the Pension Plan for Employees of MCI Communications Corporation and Subsidiaries (the "Pension Plan") on April 1, 1981. Originally, the Pension Plan provided for benefits solely in the form of an ongoing annuity to be paid to the participant upon retirement. Beginning January 1, 1996, the Pension Plan was divided into two parts: Part I retained the features of the original plan, while Part II provided for a "cash balance" benefit structure, which combined individual account balances and lump sum benefits. *Debtors' Motion*, Docket No. 17732, Exhibit E at ¶ 7.

3

Part II of the Pension Plan applied to both active employees already participating in the Pension Plan as of January 1, 1996, and active employees who began their participation after that date.

> However, Part II also provides special protection for "Grandfathered Participants"
>
> 6.1 Retirement Pension. A participant who has a Termination of Employment shall be entitled to a monthly Retirement Pension beginning on his or her Pension Commencement Date equal to the greater of: (a) the Actuarial Equivalent of his or her Vested Account Balance at his or her Pension Commencement Date, or (b) his or her vested Part I Retirement Pension. The monthly Retirement Pension of a Grandfathered Participant shall be no less than his or her Grandfathered Retirement Pension.

*Debtors' Motion*, Docket No. 17732, Exhibit E at ¶ 16. Part II defines the term "Grandfathered Participant" as any eligible employee, as of December 31, 1995, who was at least fifty years of age and had attained at least five years of service. *Debtors' Motion*, Docket No. 17732, Exhibit E at ¶ 17. Johnson was at least fifty years old and had attained five years of service as of December 31, 1995. The "Grandfathered Retirement Pension" is defined as "[t]he amount a Grandfathered Participant would have received as a monthly annuity under Part I beginning on his or her Pension Commencement Date as if Part I had remained in effect until December 31, 2000." *Debtors' Motion*. Docket No. 17732, Exhibit E at ¶ 18.

Subsequent to the merger between MCI and WorldCom, the Pension Plan was frozen, effective January 1, 1999, such that all benefits, for all participants, ceased to accrue. Under the Debtors' Modified Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the " Reorganization Plan"), approved by order of the Court on October 31, 2003, the Debtors assumed the Pension Plan and have continued to administer it.

4

On February 12, 2005, Johnson submitted a claim for benefits to the Pension Plan's representative. His benefits were calculated as having accrued until January 1, 1999, the date upon which the Pension Plan was frozen, rather than December 31, 2000, the date specified for Grandfathered Participations by the January 1, 1996 amendment.

### c. Bonus Payments

From January 1999 through June 2002, Johnson was a Director with Global Solutions, a WorldCom subsidiary. As part of his compensation package, Johnson was typically eligible for performance bonuses reflecting the value of his sales contracts. The 2001 Global Solutions Compensation Plan (the "2001 Plan") was effective from January 1, 2001, through December 31, 2001, and required that the contract be fully executed by WorldCom Global Accounts on or before December 31, 2001, in order to qualify. The 2002 Global Solutions Compensation Plan (the "2002 Plan") was effective from January 1, 2002 through December 31, 2002. However, the 2002 Plan did not provide for sales performance bonuses.

The Claim asserts a right to payment for two particular sales contracts, the Case New Holland ("CNH") contract and the Washington Mutual ("WAMU") contract. The CNH contract was fully executed in January 2002 and the WAMU contract was fully executed in April 2002.

## III. Procedural History

On July 21, 2002, and continuing thereafter, WorldCom and certain of its direct and indirect domestic subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. As previously noted, the Court approved the Reorganization Plan on October 31, 2003. The Reorganization Plan became effective April 20, 2004 (the

5

"Effective Date").   The Reorganized Debtors, renamed MCI, Inc., subsequently merged with Verizon Communications, Inc., on January 6, 2006.  Under the merger agreement, MCI, Inc., merged with and into Eli Acquisition, LLC, as a direct, wholly owned subsidiary of Verizon Communications, Inc.  Eli Acquisition, LLC, as the surviving entity, was immediately renamed MCI, LLC.

On March 23, 2003, the Court entered the Order Pursuant to 11 U.S.C. § 105 Approving Notice Procedures Regarding Claim Objections and Deemed Schedule Amendment Motions ("Claim Objection Procedure Order"), approving certain procedures for providing notice of claims objections and omnibus motions.  On that same day, the Debtors filed and provided Johnson with copies of both a Notice of Non-Voting Status with Respect to Impaired Classes and a Notice of Non-Voting Status with Respect to Unimpaired Classes (collectively, the "Status Notices").

The Debtors filed their Fourteenth Omnibus Objection to Proofs of Claim ("Fourteenth Objection") seeking to reclassify and subordinate certain claims pursuant to section 510(b) of the Bankruptcy Code on June 12, 2003.  The Court entered an order on July 31, 2003 (the "Subordination Order") granting the Fourteenth Objection.  The Subordination Order authorized the Debtors to notify those claimants asserting claims for damages arising from the purchase or sale of the Debtors stock that such claims would be reclassified as Class 7 Subordinated Claims pursuant to the Reorganization Plan without further order of the Court.

On September 19, 2003, the Debtors filed two Notices of Rejection of Executory Contracts (the "Notices of Rejection").  Through the Notices, the Debtors formally

6

rejected Johnson's SERP and Employee Stock Option Agreements. On October 1, 2003, Johnson filed two objections to the Notices.

On August 4, 2004, the Debtors filed their Twenty-Second Omnibus Objection to Proofs of Claim (the "Twenty-Second Objection"), subsequently amended on August 11, 2004. The Johnson Claim was among those claims objected to in the Twenty-Second Objection. Johnson filed three responses and objections to the Twenty-Second Objection on September 7, 2004, November 15, 2004, and August 25, 2005.

On December 16, 2005, both Johnson and the Debtors filed Motions for Summary Judgment on the Twenty-Second Objection. *On January 17, 2006, the Debtors filed a Memorandum in Opposition to the Motion for Summary Judgment in Favor of Johnson and Johnson filed a Response to the Debtors' Motion for Summary Judgment.* A hearing was held before the Court on January 31, 2006.

### IV. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper before this Court pursuant to 28 USC §§ 1408 and 1409.

### V. Standards

#### a. Summary Judgment Standard

Rule 7056 of the Federal Rules of Bankruptcy Procedure adopts Rule 56 of the Federal Rules of Civil Procedure, which provides that a party is entitled to summary judgment if the record demonstrates that "there is no genuine issue as to any material fact

7

and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* "When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). The evidence must be "viewed in the light more favorable to the party opposing the motion." *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1352 (2d. Cir. 1994) (citations omitted). Furthermore, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where, as here, the parties have filed cross-motions for summary judgment, the Court must pay particular attention to each parties' respective burdens of proof, persuasion, and production. When faced with cross-motions for summary judgment, the court must consider the merits of each motion independently of the other. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). Although it may be implied from the filing of cross-motions that the parties have agreed that no material issues of fact exist, the Court is not bound by this implicit agreement and is not required to enter a judgment for either party. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *see also Aviall, Inc. v. Ryder System, Inc.*, 913 F. Supp. 826, 828 (S.D.N.Y. 1996), *aff'd*, 110 F.3d 892 (2d Cir. 1997). Moreover, "neither side is barred from asserting that

8

there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein*, 996 F.2d at 1461. When analyzing each motion, the Court must be careful to view the facts in the light more favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id*.

### b. Pro Se Litigants

Johnson is representing himself *pro se* before this Court. The Court recognizes that *pro se* pleadings are held "to less stringent standards than formal pleadings, drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). As well, courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2nd Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2nd Cir. 1994)). However, there are limits to a court's indulgence, as *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2nd Cir. 1983) (quotations omitted).

## VI. Discussion

The Johnson Claim asserts rights to payment for (1) alleged damages related to the decline in the share price of the Debtors' stock, which Johnson held in unexercised stock options, his 401(k), and in his Employee Stock Purchase Plan ("ESPP") account; (2) allegedly outstanding pension obligations under the Debtors' pension plan; (3) allegedly unpaid benefits owed under the Debtors' Supplemental Executive Retirement Plan (the "SERP"); and (4) allegedly unpaid performance bonuses. The Debtors assert generally in the Objection and the Debtors' Motion that no outstanding debts are owed

9

Johnson and argue in addition that Johnson's claim for stock-related damages should be subordinated pursuant to section 510(b).

Without conceding those points, Johnson asserts in turn that the doctrine of laches and the Debtors' alleged failure to comply with discovery should equitably bar subordination of his claim. Furthermore, Johnson contends that the Debtors committed fraud and age discrimination by replacing the Pension Plan with stock options, by eliminating previously established protection for employees over fifty, and by severing Johnson's employment when he was sixty-one years of age. The Court will consider each claim and response in turn.

### a. Stock Options and Stock Claims

The Debtors argue that Johnson's claims for damages related to his unexercised stock options and the common stock held in his ESPP and 401(k) accounts should be subordinated pursuant to section 510(b) of the Bankruptcy Code. Section 510(b) provides

> For the purpose of distribution under this title, a claim … for damages arising from the purchase or sale of such [a security of the debtor or of an affiliate of the debtor] … shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b) (2006). Mandatory subordination pursuant to section 510(b) would effectively preclude Johnson from receiving any compensation on his claims, as holders of common stock will not participate in the distribution of the estate's assets under the Reorganization Plan.

Johnson argues in response that neither his claims for common stock held in his 401(k) and ESPP accounts nor his claims for unexercised common stock options are

10

stock-related claims. Johnson suggests that the unexercised stock options constitute compensation and not an equity investment; likewise, he argues that his claim for damages suffered in his retirement accounts are more properly characterized as pension-related claims.

While the Court is sympathetic to Johnson's characterization of his claims, recent decisions of both this Court and the Second Circuit make clear that section 510(b) is more broadly applicable than simply to claims commonly denominated as "stock related." As the Second Circuit has noted, "[T]hose who conclude the bargain to become investors or shareholders should be treated as such." *Rombro v. Dufrayne* (*In re Med Diversified, Inc.*), 461 F.3d 251, 257 (2d Cir. 2006). *See also In re Enron Corp.*, 341 B.R. 141 (Bankr. S.D.N.Y. 2006). The form in which the equity interest is held is ultimately irrelevant. So long as the claimant's interest enabled him to participate in the success of the enterprise and the distribution of profits, the claim will be subordinated pursuant to section 510(b). The Second Circuit has reasoned, "Once [the claimant] entered a binding agreement to purchase shares of the debtor … and to forego the significant cash compensation to which he otherwise was due upon termination, he became bound by the choice he made to trade the relative safety of cash compensation for the upside potential of shareholder status…." *Id.* at 256. That the asserted "damages [flow] from changes in the debtor's share price" is obvious evidence that the claim represents the equity interest of a securityholder and should be subordinated. *Id.* at 257-58 (citing *Enron*, 341 B.R. at 157, 167-68).

It is clear then that Johnson's asserted rights to payment for damages related to his unexercised stock options and to stock held in his retirement accounts are properly

11

subordinated pursuant to section 510(b). The Court previously considered unexercised stock options in *Enron* and reiterates here the conclusion that such claims for damages should be subordinated. *Enron*, 341 B.R. at 149-59. Similarly, Johnson's 401(k) and ESPP claims represent an equity interest and flow directly from the catastrophic decline in the share price of the Debtors' stock. That Johnson held his stock in retirement accounts rather than directly does not impact the Court's conclusion, as the stock represents an equity investment in either case.[1] Accordingly, the Court concludes that Johnson's claims for damages related to his unexercised stock options and the common stock held in his ESPP and 401(k) accounts should be subordinated pursuant to section 510(b) of the Bankruptcy Code.

> **b. Pension Benefits**

The Debtors argue that the Court does not have jurisdiction over Johnson's claim for additional pension benefits. The Debtors contend that Johnson has not exhausted the administrative remedies provided for in the Pension Plan and note that binding precedent requires that administrative remedies be exhausted before a plaintiff is permitted to bring a claim for ERISA benefits. Johnson does not contest those assertions, but argues that the Debtors have consistently and inaccurately informed him that this proceeding was the sole venue in which his claims could be addressed and suggests that the administrative remedies are likely to prove unfruitful given the Debtors' past behavior.

The case law is clear that all administrative remedies provided for under ERISA must be exhausted before judicial review may be sought. *Kennedy v. Empire Blue Cross*

---

[1] Similarly, the Court notes that the allegedly fraudulent and false information provided by WorldCom management is immaterial to the Court's determination. For the purposes of resolving this issue, the Court assumes Johnson's allegations concerning such behavior are true. The Court's conclusion rests not upon the truth or falsity of such allegations, but only upon the Code's treatment of such claims once they are proven or established at law.

*and Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). Moreover, the Court is not persuaded that pursuit of those administrative remedies would prove futile. *Denton v. First Nat'l Bank of Waco, Texas*, 765 F.2d 1295 (5th Cir. 1985). Accordingly, the Court agrees that the pension benefits potion of the Johnson Claim should be disallowed and expunged.

### c. SERP benefits

Johnson has conceded that he received the full payment of his SERP benefits, $9,144.97, from the Debtors on Mary 21, 2004. Response to *Debtors' Motion*, Docket No.17859, ¶ 20. Accordingly, the Court concludes that the portion of the Johnson Claim seeking SERP benefits should be disallowed and expunged.

### d. Bonus Payments

The Debtors argue that Johnson's claim for performance bonuses should be disallowed because neither contract upon which Johnson rests his claim was fully executed within the effective dates of the 2001 Plan, and because the 2002 Plan did not provide for any such bonuses. Johnson responds that it was the Debtors' practice to make bonus payments under the following year's plan when contracts were not fully executed before the end of the previous year. Johnson also alleges that is he entitled to the bonuses under the 2001 Plan because he assumed the 2002 Plan would be substantially similar to the 2001 Plan and because the 2002 Plan had not been published by June 2002, when Johnson's employment was severed.

However, Johnson has failed to identify an enforceable contractual obligation or right to payment. While it may have been the Debtors' practice to routinely make bonus payments under the following year's plan when contracts were not fully executed before the end of the previous year, that alone does not obligate the Debtors to issue such

13

payments in the future. Similarly, although Johnson assumed that the 2002 Plan would be substantially similar to the 2001 Plan, WorldCom was under no obligation to promulgate similar plans. The Court is left then with the plain and unambiguous language of the 2001 and 2002 Plans. Johnson cannot assert a right to payment under the 2001 Plan as the respective contracts were not fully executed until 2002, thus violating the terms of the 2001 Plan. Likewise, Johnson cannot assert a right to payment under the 2002 Plan as the 2002 Plan does not provide for performance bonuses. While equity might support a different conclusion, in the absence of an enforceable obligation the Court must conclude that Johnson's claim for performance bonuses should be disallowed and expunged.

### e. Laches, Estoppel, and Equitable Considerations

While Johnson has made a number of substantive arguments, as detailed above, the core of his motion for summary judgment and of his response to the Debtors' Motion is an argument in equity concerning the Debtors' pattern of behavior preceding and during this litigation. In his filings Johnson details the history of his post-bankruptcy communication with the Debtors, highlighting in particular the confusing and contradictory information the Debtors provided regarding the status of his claim. As Johnson notes, the Debtors provided him with both a Notice of Impaired Status and a Notice of Unimpaired Status – neither of which references a particular portion of the Johnson Claim or provided any more than cursory information. Johnson also notes that he received two Notices of Rejection of An Executory Contract, one of which was subsequently withdrawn upon the Debtors' assumption of that contract. Finally, Johnson describes in detail his numerous written and verbal communications with the Debtors in

which the Debtors provided what Johnson understood to be assurances that the Johnson Claim would be paid in full.

Having reviewed the parties' correspondence and communications, the Court is sympathetic to Johnson's frustration. The Debtors' repeated miscommunication with Johnson, notably the Notices of Rejection and the Status Notices, understandably created confusion. Considering that the Debtors were in possession of all relevant information, it is difficult to explain how the Debtors twice mailed Johnson the incorrect forms. The Debtors' current attempts to explain away these past mistakes are unconvincing.[2]

Nonetheless, the Court must still conclude that Johnson cannot establish the detrimental reliance necessary to sustain Johnson's asserted laches defense. Moreover, though Johnson has raised not equitable estoppel as an alternative defense, the Court would likewise conclude that Johnson could not establish detrimental reliance even if he were to raise that defense.

The Court need not delve deeply into Johnson's argument to conclude that Johnson cannot establish a laches defense as a matter of law.[3] Laches bars entry of judgment in favor of a party where the party's unreasonable delay in filing the claim unreasonably prejudices the defending party. *In re Toledano,* 322 B.R. 78, 82 (Bankr.

---

[2] The "correction" attached to the Notice of Unimpaired Status reads: "You are the holder of a Class 1 claim in the WorldCom case. We believe that certain holders of Class 1 claims may inadvertently have received the wrong notice as part of the mailing completed by Innisfree. Attached is the correct notice, the Notice of Non-Voting Status with Respect to Unimpaired Classes." The Debtors claim that while the correction "indicates that some holders of Class 1 claims may have inadvertently received the wrong notice, it does not state that Claimant erroneously received a Notice of Non-Voting Status with Respect to Impaired Classes." Suffice to say, that argument represents the height of sophistry.

[3] Neither party has submitted a choice of law analysis on this issue, and the Court cannot determine from the record as submitted what jurisdiction has the most significant contacts with this dispute. The Court would apply New York choice of law rules to determine which state law should be applied, as there is no significant federal policy is implicated here. *In re Gaston & Snow v. Erkins*, 243 F.3d 599 (2d. Cir. 2001). The Court assumes that the 401(k) Plan and Johnson's various employment agreements contain choice of law provisions, but those documents are not available to the Court. Nonetheless, the elements of a laches defense, at least to the extent relevant in the instant matter, are universal, and it is sufficient for the Court's purposes here to discuss those universal elements.

15

S.D.N.Y. 2005). However, as a matter of law, Johnson cannot establish that the Twenty-Second Objection was filed after an unreasonable delay. The Reorganization Plan provided that the Debtors' objections to proofs of claim must have been within 180 days of the Effective Date, April 20, 2004. As previously noted, the Twenty-Second Objection was filed on August 4, 2004, clearly within the 180-day period. There was, thus, no unreasonable delay. Moreover, that the Debtors' counsel did not at the time of their initial correspondence inform Johnson that the Twenty-Second Objection would be filed in the future does not make the intervening passage of time an unreasonable delay.

The Court would reach the same conclusion regarding a hypothetical defense of equitable estoppel. Even if the Court assumes Johnson's allegations to be true, and in particular, Johnson's allegation that the Debtors' counsel incorrectly and intentionally informed him that his claim would be allowed in full, Johnson cannot, as a matter of law, establish the detrimental reliance necessary for an equitable estoppel defense to the Twenty-Second Objection. Simply, Johnson has not identified any action he took in reliance upon the affirmations of the Debtors' counsel that would now result in substantial prejudice unless the Debtor was estopped from objecting to the Johnson Claim. That Johnson will be significantly harmed if the Court grants the Twenty-Second Objection is not in doubt; however, equitable estoppel rests not on the harm to the defendant resulting from the cause of action itself, but rather on the harm to the defendant resulting from his affirmative acts in reliance on the misrepresentation.

Johnson suggests, however, that, as a result of the Status Notices, he did not vote on the Reorganization Plan prior to confirmation. Nonetheless, that forbearance and reliance would only be detrimental to the extent that Johnson could have affected the

16

Reorganization Plan's distribution scheme. As Johnson would have received payment on his subordinated claims only if the Reorganization Plan distributed assets to securityholders, his reliance was not for that reason detrimental. Further, there is no evidence that Johnson's vote, whether to accept or reject, would have had any impact on the outcome of the confirmation process.

Accordingly, the Court concludes that, as a matter of law, Johnson cannot establish a laches or equitable estoppel defense to the Twenty-Second Objection.

### f. Discovery

As part of his motion for summary judgment, Johnson argues that the Debtors have failed to produce documents requested pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. It is not clear to the Court what relief Johnson seeks, as he did not state any grounds upon which relief may be sought. Nonetheless, the Debtors respond that the requested documents were properly withheld as they "related to equity claims that have been reclassified and subordinated, or to the alleged procedural deficiencies (relating to notice and voting rights) [Johnson] has raised in his motion." *Debtors' Memorandum in Opposition to Motion for Summary Judgment*, Docket No. 17840, 10. It is also not clear to the Court whether the Debtors provided Johnson with a written explanation of their objection. Regardless, these documents do not appear to fall within the required disclosures of Rule 26(a)(1) and Johnson did not subsequently file a Rule 34 motion for the production of those documents. Therefore, the Court concludes that Johnson has failed to state a cause of action upon which relief may be granted.

### g. Fraud and Age Discrimination

17

Finally, Johnson alleges that the Debtors committed fraud when they replaced the Pension Plan with stock options, stated publicly and in writing that stock options and other stock valued retirement funds would provide greater long-term value than the Pension Plan, and fraudulently misstated the company's financial reports. Johnson also contends that the Debtors committed age discrimination by eliminating the Pension Plan that established protection for employees over fifty, and severing Johnson's employment one month before he turned 62 years of age.

However, Johnson failed to identify the relevant state or federal laws upon which he rests these claims. Accordingly, the Court concludes that Johnson has failed to state a cause of action upon which relief may be granted.

## VII. Conclusion

Having reviewed the parties' pleadings and oral arguments, as well as the relevant case law, the Court concludes that (1) that portion of the Johnson Claim asserting a right to payment for damages related to his unexercised stock options and the common stock held in his ESPP and 401(k) accounts should be subordinated pursuant to section 510(b); (2) that portion of the Johnson Claim seeking additional pension benefits should be disallowed and expunged for lack of jurisdiction; (3) that portion of the Johnson Claim seeking SERP benefits should be disallowed and expunged as moot; and (4) that portion of the Johnson Claim seeking unpaid performance bonuses should be disallowed and expunged in the absence of an enforceable right to payment. The Court also concludes that (1) Johnson has failed as a matter of law to establish a laches or equitable estoppel defense; (2) Johnson has failed to state a cause of action for fraud and age discrimination;

and (3) Johnson has failed to state a cause of action for violation of the relevant discovery rules.

However, the Debtors' Motion requests that the subordinated portions of the Johnson Claim be disallowed and expunged. As subordination, not disallowance, is the proper remedy, the Court denies the Debtors' Motion to that extent.

Based upon the foregoing, the Court grants the Debtors' Motion in part and denies Johnson's Motion in full.

The Debtors are to settle an order consistent with this opinion.


Dated: New York, New York
       December 21, 2006

                                           **s/Arthur J. Gonzalez**
                                           UNITED STATES BANKRUPTCY JUDGE