**UNITED STATES BANKRUPTCY COURT**       For Publication
**SOUTHERN DISTRICT OF NEW YORK**
_____
|  | : |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| WORLDCOM, INC., *et al.*, | : | Case No. 02-13533 (AJG) |
|  | : |  |
| Reorganized Debtors. | : | (Confirmed) |

_____

### OPINION GRANTING REORGANIZED DEBTORS' PARTIAL SUMMARY JUDGMENT MOTION TO RECLASSIFY PROOF OF CLAIM NUMBER 3059 AS UNSECURED AND DENYING WALDINGER CORPORATION'S CROSS-MOTION FOR SUMMARY JUDGMENT

**APPEARANCES**

STINSON MORRISON HECKER LLP
Special Counsel to the Reorganized Debtors
1201 Walnut Street
Kansas City, MO 64106

      Mark A. Shaiken, Esq.
         Of Counsel

LIEBEN, WHITTED, HOUGHTON, SLOWIACZEK & CAVANAGH, PC, LLO
Attorneys for the Waldinger Corporation
100 Scoular Building
2027 Dodge Street
Omaha, NE  68102

      James B. Cavanagh, Esq.
         Of Counsel

SCHLAM STONE & DOLAN LLP
Attorneys for the Waldinger Corporation
26 Broadway
New York, New York 10004

      Bennette D. Kramer, Esq.
         Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

## I. INTRODUCTION

Before the Court is the Motion of WorldCom, Inc., MCI Telecommunications

Corp., and their subsidiaries (collectively, the "Debtors," or "WorldCom") for partial

summary judgment to reclassify proof of claim number 3059 (the "Claim") filed by the

Waldinger Corporation ("Waldinger") as unsecured.  Waldinger moves for summary

judgment that the Claim is secured.  Additionally, Waldinger moves for summary

judgment that the Claim is oversecured, thereby entitling it to the Nebraska statutory

interest rate for a mechanic's lien of 12% per annum ("Interest") and the recovery of all

fees and expenses, including attorney's fees (collectively," Attorney's Fees") pursuant to

section 506 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## II. JURIDICTION

The Court has subject matter jurisdiction over this proceeding pursuant to sections

1334 and 157(b) of title 28 of the United States Code, the July 10, 1984 "Standing Order

of Referral of Cases to Bankruptcy Judges" of the United States District Court for the

Southern District of New York (Ward, Acting C.J.), and paragraph 32 of the Court's

Order Confirming Debtors' Modified Second Amended Joint Plan of Reorganization

under chapter 11 of title 11 of the United States Code.  This matter is a core proceeding

pursuant to section 157(b)(2)(B) of title 28 of the United States Code.  Venue is proper

before the Court pursuant to sections 1408 and 1409 of title 28 of the United States Code.

## III. BACKGROUND

On July 21, 2002 (the "Commencement Date") and November 8, 2002, the

Debtors commenced cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). By orders dated July 22, 2002 and November 12, 2002, the Debtors' chapter 11 cases were consolidated for procedural purposes.

By order dated October 29, 2002, the Court established January 23, 2003 as the deadline for the filing of proofs of claim against the Debtors (the "Bar Date"). By order dated October 31, 2003, the Court confirmed the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan"). On April 20, 2004, the Plan became effective (the "Effective Date"). Upon the Effective Date, WorldCom changed its name to MCI, Inc. On January 6, 2006, Verizon Communications, Inc. and MCI merged. Under the merger agreement, MCI, Inc. merged with and into Eli Acquisition, LLC, as a direct, wholly owned subsidiary of Verizon Communications Inc. Eli Acquisition LLC, as the surviving entity, was immediately renamed MCI, LLC. MCI, LLC is now doing business as Verizon Business Global LLC.

Waldinger is engaged in the construction business in Omaha, Nebraska. WorldCom owns a certain property in Omaha, Nebraska (the "Omaha Property") located at 4226 South 80th Street. WorldCom purchased and paid for three Air Handler Units (the "AHUs") from Waldinger. Waldinger alleges that WorldCom requested that it install the AHUs on the Omaha Property (the "Installation"). WorldCom maintains, among other things, that it did not authorize the Installation. Further, Waldinger alleges that on or around March 28, 2001,[1] it began to perform construction and provide the materials (collectively, the "Construction Services") necessary to install the AHUs on the Omaha property. WorldCom did not pay Waldinger for the Construction Services. On or about October 29, 2001, Waldinger filed a claim of lien (the "Lien") on the Omaha

---

[1] The Debtors allege that Waldinger commenced construction on or around April 3, 2001. For the purposes of the instant motion, this difference is not material.

Property pursuant to the Nebraska Construction Lien Act, Neb. Rev. Stat § 52-125, *et seq*

(the "Nebraska Statute").  The Lien was in the amount of $463,862 for the cost of the

Installation, which included $371,362 for the Construction Services already performed.[2]

On January 29, 2002, Waldinger filed a petition in the Nebraska state court (the "State

Court Proceeding") to recover the money from WorldCom for the Construction Services.

On or about March 6, 2002, WorldCom removed the State Court Proceeding to federal

court (the "Federal Court Proceeding").  The State Court Proceeding and the Federal

Court Proceeding were for breach of contract and *quantum meruit*.  Those proceedings

were *not* brought as actions to foreclose the Lien.[3]

On or about March 22, 2002, Waldinger voluntarily withdrew the claim from the

Federal Court Proceeding without prejudice.  On or about June 26, 2002,Waldinger and

the Debtors reached a settlement agreement (the "Settlement Agreement").  Under the

Settlement Agreement, WorldCom agreed to pay $371,362 for the services already

rendered and pay an additional $128,356 upon completion of the Installation, and

WorldCom denied any wrongdoing or responsibility regarding its actions with respect to

the Installation.  Additionally, under the Settlement Agreement "if any party is required

to employ counsel to enforce its rights, the prevailing party shall recover its attorneys'

fees and costs incurred in enforcing its rights."  Settlement Agreement ¶ 5.5.  Waldinger

never completed the Installation and was not paid the $371,362.[4]

---

[2] The Omaha Property was valued at $8,000,000 in 1995.  The Omaha Property was unencumbered, except for a claim of lien of approximately $10,000.

[3] Waldinger concedes that it has not brought an action to foreclose the Lien.

[4] The Court notes to the extent that the Settlement Agreement is valid, the Settlement Agreement would result in an unsecured claim predicated upon a prepetition contractual obligation.  However, the Settlement Agreement does not address the Lien's validity, which is the basis of Waldinger's secured claim.

On December 3, 2002, Waldinger filed the Claim.  Waldinger alleges that the

Claim is secured by the Lien.  The Claim seeks the principal of  $371,362 plus Interest,

and Attorney's Fees pursuant to section 506 of the Bankruptcy Code.

Under the Plan, Class 3 Other Secured Claims ("Class 3 Claims," or "Other

Secured Claims") are entitled to payment in full, plus any interest required to be paid

pursuant to section 506.[5]  In contrast, Class 6 WorldCom General Unsecured Claims

("Class 6 Claims") are impaired and are not entitled to payment of Interest or Attorney's

Fees.

On October 15, 2004, as part of the Seventy-Second Omnibus Objection, the

Debtors sought to expunge and disallow the Claim, alleging that the Claim is disputed

and unsecured.  On November 16, 2004, Waldinger filed the Response of the Waldinger

Corporation to the Debtors' Seventy-Second Omnibus Objection to Proofs of Claim.  On

July 27, 2005, the Debtors filed a motion for partial summary judgment that the Claim is

unsecured and filed a memorandum of law supporting the motion on July 28, 2005

(collectively, the "Debtors' Partial Summary Judgment Motion").  On September 20,

2005, Waldinger filed the Opposition to the Debtors' Partial Summary Judgment Motion

on Claim No. 3059 and the Cross-Motion for Summary Judgment on Claim No. 3059.

On October 31, 2005, the Debtors filed the Debtors' Reply to Opposition of the

Waldinger Corporation to Debtors' Motion for Partial Summary Judgment and Debtors'

Response in Opposition to Cross-Motion for Summary Judgment on Claim No. 3059

Filed by the Waldinger Corporation.  The Court heard this matter on January 31, 2006

(the "Hearing").  Subsequent to the Hearing, the Debtors and Waldinger submitted

---

[5] Under the Debtors' Joint Disclosure Statement of April 14, 2003 ("Disclosure Statement"), Class 3
Claims include mechanic's liens.  Disclosure Statement VI B, § 6.

supplemental memoranda of law addressing certain issues that were raised at the Hearing

(the "First Supplemental Briefing").[6]  Subsequent to the submission of the supplemental

memoranda, the Court directed that the Debtors and Waldinger more fully address certain

issues which were implicated by Waldinger's and the Debtors' arguments (the "Second

Supplemental Briefing").  In response, the Debtors and Waldinger submitted briefs

primarily focusing whether sections 362(b)(3) and 546(b)(2) or section 108(c) were

applicable to the Claim during the pendency of the automatic stay of section 362.  On

September 7, 2006, Waldinger submitted the Second Supplemental Memorandum Brief

of the Waldinger Corporation in Opposition to Debtors' Motion for Partial Summary

Judgment on Claim No. 3059 and the Waldinger Corporation's Cross-Motion for

Summary Judgment on Claim No. 3059 (the "Waldinger's Second Supplemental

Memorandum").[7]  Additionally, Waldinger submitted an addendum to Waldinger's

Second Supplemental Memorandum, dated September 8, 2006.  On September 21, 2006,

the Debtors submitted the Debtors' Response to Second Supplemental Memorandum

Brief of the Waldinger Corporation in Opposition to Debtors' Motion for Partial

Summary Judgment on Claim No. 3059 and the Waldinger Corporation's Cross-Motion

for Summary Judgment.

---

[6] The supplemental memoranda primarily address the effect of section 108(c) after the Effective Date.  On February 8, 2006, the Debtors submitted the Debtors' Supplemental Reply in Support of their Motion for Partial Summary Judgment - Claim No. 3059 Filed by the Waldinger Corporation.  On February 16, 2006, Waldinger submitted the Supplemental Memorandum Brief of the Waldinger Corporation in Opposition to Debtors' Motion for Partial Summary Judgment on Claim No. 3059 and the Waldinger Corporation's Cross-Motion for Summary Judgment.

[7] Additionally, Waldinger submitted supplemental evidence in support of the Second Supplemental Memorandum Brief of the Waldinger Corporation in Opposition to Debtors' Motion for Partial Summary Judgment on Claim No. 3059 and the Waldinger Corporation's Cross-Motion for Summary Judgment.

## IV. DISCUSSION

Regarding the validity of the Lien issue, the Debtors and Waldinger dispute, among other things, whether WorldCom authorized such services at the time the Construction Services were performed. Under Nebraska Law, a mechanic's lien is not valid absent a contract between the parties. *Mid-America Maintenance, Inc. v. Bill Morris Ford, Inc.*, 442 N.W.2d 869, 871 (Neb. 1989) (interpreting Neb. Rev. Stat. § 52-131). Prior to the Second Supplemental Briefing, the Debtors argued, that even if the Lien was valid when filed, the Lien lapsed because Waldinger failed to bring a suit to foreclose the Lien (the "Foreclosure Action") within the statutory time period required by Nebraska Law ("Statute of Limitations") and the Lien lapsed. In the Second Supplemental Briefing, the Debtors argue that sections 362(b)(3) and 546(b)(2) were applicable. Therefore, the Debtors argue that Waldinger was required to provide notice pursuant to section 546(b)(2) in lieu of the Foreclosure Action and failed to do so. As such, the Debtors conclude that the Lien lapsed on October 29, 2003, two years after the filing of the Lien.

Waldinger argues that as a result of the automatic stay of section 362, section 108(c) tolled the Statute of Limitations until 30 days after the Effective Date. Further, Waldinger argues that subsequent to the Effective Date, section 108(c) tolls the Statute of Limitations because the Plan's injunction enjoins Waldinger from commencing the Foreclosure Action. In the alternative, if the Plan's injunction did not continue the tolling under section 108(c), Waldinger argues that the Debtors are contractually bound to pay Waldinger as a Class 3 Claim or the Debtors are equitably estopped from asserting that the Lien lapsed. Furthermore, Waldinger argues that if section 108(c) was not applicable

and sections 362(b)(3) and 546(b)(2) were applicable, Waldinger provided notice

pursuant to section 546(b)(2) to maintain or continue the Lien.  The Debtors counter that

even if the automatic stay of section 362 triggered the tolling of section 108(c), the Plan's

injunction did not trigger section 108(c).  Section 108(c) would have tolled the need to

bring action until May 20, 2004, 30 days after the Effective Date.  Waldinger failed to

commence the Foreclosure Action prior to the expiration of the 30-day period.

Additionally, the Debtors dispute Waldinger's other arguments.[8]  Therefore, they argue,

that even if section 108(c) was applicable, the Lien lapsed on May 20, 2004.

*Standard for Summary Judgment*

The basic principles governing a motion for summary judgment are well-settled.

First, summary judgment may be granted only if the Court determines that there is no

genuine issue of material fact to be tried and the moving party is therefore entitled to

judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056; *see generally*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

202 (1986).  Second, the burden is upon the moving party to clearly establish the absence

of a genuine issue as to any material fact.  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144,

157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).  Third, in considering such, the Court

must resolve all ambiguities and draw all reasonable inferences in the light most

favorable to the non-moving party.  *Institute for Shipboard Educ. v. Cigna Worldwide*

*Ins. Co.,* 22 F.3d 414, 418 (2d Cir. 1994).  Fourth, the movant can meet its burden for

summary judgment by showing that little or no evidence may be found to support the

non-movant's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554,

---

[8] The Debtors dispute that the Plan contractually bound them to treat the Claim as secured and they were estopped from challenging the Claim.

91 L.Ed.2d 265 (1986).  Finally, if no reasonable jury could find in favor of the non-movant because evidence to support its case is slight, there is no genuine issue of material fact and a grant of summary judgment is proper.  *See Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d. Cir. 1994).

*Section 108(c)*

The Debtors argue in the [Debtors'] Partial Summary Judgment Motion, as stated above, that as a matter of law, even if the Lien was valid when filed, the Claim is unsecured because the Lien lapsed.  Under Nebraska law, a mechanic's lien is enforceable for two years after recording.  Neb. Rev. Stat. § 52-140.  A mechanic's lien lapses if the holder fails to bring suit to foreclose during that two-year period.  Prior to the Second Supplementary Briefing, the Debtors argued that pursuant to sections 362(b)(3) and 546(b)(1), Waldinger was required to file the Foreclosure Action to prevent the Lien from lapsing and failed to do so.[9]  It appears that the Debtors realized that section 546(b)(1) did not apply to the Foreclosure Action.  As such, in the Second Supplemental Briefing, the Debtors argued that pursuant to sections 362(b)(3) and 546(b)(2), Waldinger was required to provide notice in lieu of the Foreclosure Action and failed to do so.  Therefore by October 29, 2003, two years after the filing of the Lien, the Lien lapsed as a matter of law.  Waldinger disputes the Debtors' contention that the Lien lapsed on October 29, 2003.  As stated above, Waldinger argues that the Statute of Limitations was tolled by section 108(c).

---

[9] Nebraska law requires that a "proceeding to enforce a lien is instituted while a lien is effective."  Neb. Rev. Stat. § 52-140.  As noted, the State Court Proceeding and the Federal Court Proceeding were for breach of contract and *quantum meruit,* and were not "proceeding[s] to enforce a lien."  Furthermore, "the lien continues during the pendency of the proceeding" and does not extend a lien's validity past the pendency.  *Id.*

"[Section 108(c)] provides that if an action on a claim against the debtor in a court other than a bankruptcy court is stayed due to the bankruptcy case, any time deadline for commencing and continuing the action is extended to 30 days after notice of termination of the stay, if the deadline would have occurred on an earlier date."  2 Collier on Bankruptcy P 108.04 (15th ed. rev. 2006).  "Courts have generally held that [section 108(c)] does apply to time periods within which a creditor must bring an action to enforce a lien before the lien expires."  *Id.* (citing cases including *Morton v. Nat'l Bank of New York City (In re Morton),* 866 F.2d 561 (2d Cir. 1989).

Section 108 of the Bankruptcy Code states

> (c) Except as provided in section 524 of this title [11 U.S.C. § 524], if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, […], and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of-
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title [11 U.S.C. §§ 362, 922, 1201 or 1301], as the case may be, with respect to such claim.

> 11 U.S.C. § 108

In contrast, section 546(b) allows, under certain circumstances, lien holders to perfect a lien, or to maintain or continue the perfection of an already perfected lien.[10] "As this Circuit has recognized, the relatively narrow purpose of [the section 546(b) exception is to 'protect in spite of the surprise intervention of [the] bankruptcy petition, those whom State law protects' by allowing them to perfect an interest they obtained before the bankruptcy proceedings began."  *In re Bennett Funding Group,* 255 B.R. 616,

---

[10] "Section 546(b)(1)(A) authorizes postpetition perfection of an interest in property if any generally applicable law permits perfection against an entity that acquires rights in the property before the date of perfection."  5 Collier on Bankruptcy P 546.03[2][a] (15th ed. rev. 2006).

632 (N.D.N.Y. 2000) (citations omitted).  The Bankruptcy Reform Act of 1994 ("the

1994 Amendment")  "expanded the scope of § 546(b) (which previously related only to

perfection of an interest) to encompass an act to maintain or continue perfection of a

security interest."  *Concrete Structures, Inc. v. Tidewater Crane and Rigging Co. (In re*

*Concrete Structures,* 261 B.R. 627, 637 (D. Va. 2001).  Prior to the 1994 Amendment

section 546(b) "did not explicitly allow an act to continue or maintain perfection, which

caused trouble because Commercial Code filings may lapse, expire, or

become ineffective for several reasons."  Kathryn R. Heidt, *The Effect of the 1994*

*Amendments on Commercial Secured Creditors*, 69 Am. Bankr. L.J. 395, 424-425

(1995).  The 1994 Amendment explicitly allowed for the maintenance or continuation of

such perfection.  *Id.*

Section 546 of the Bankruptcy Code states

> (b) (1) The rights and powers of a trustee under sections 544, 545, and 549 of this
> title [11 U.S.C. § 544, 545, or 549] are subject to any generally applicable law
> that-
>> (A) permits perfection of an interest in property to be effective against
>> an entity that acquires rights in such property before the date of perfection;
>> or
>> (B) provides for the maintenance or continuation of perfection of an
>> interest in property to be effective against an entity that acquires rights in
>> such property before the date on which action is taken to effect such
>> maintenance or continuation.
> (2) If--
>> (A) a law described in paragraph (1) requires seizure of such property
>> or commencement of an action to accomplish such perfection, or
>> maintenance or continuation of perfection of an interest in property; and
>> (B) such property has not been seized or such an action has not been
>> commenced before the date of the filing of the petition;

such interest in such property shall be perfected, or perfection of such interest
shall be maintained or continued, by giving notice within the time fixed by such
law for such seizure or such commencement. [..]

11 U.S.C. § 546.

Prior to the Second Supplemental Briefing, the Debtors argued that section 108(c) did not toll the requirement for Waldinger to bring the Foreclosure Action because the automatic stay of section 362 did not prevent Waldinger from filing the Foreclosure Action in the Nebraska state court. The Debtors asserted that merely filing the Foreclosure Action is within the purview of sections 362(b)(3) and 546(b)(1), and constitutes an act "to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b)," which is permitted. 11 U.S.C. § 362(b)(3).[11] The Debtors conceded that any steps to enforce the Lien would have violated the automatic stay. As a result, the Debtors argued that section 546(b)(2) applied and section 108(c) was not implicated and, hence, no tolling of the Statute of Limitations. Waldinger argued that the automatic stay of section 362 prevented Waldinger from filing the Foreclosure Action in the Nebraska state court.

"Filing a foreclosure, [even without] serving its lien foreclosure complaints," is prohibited by the automatic stay of section 362. *In re Baldwin Builders v. Gould*, 232 B.R. 406, 410 (9th Cir., Bankr. Fed. App. 1999). *See also In re Coated Sales, Inc*., 147 B.R. 842, 846 (S.D.N.Y. 1992) (notice of intent to claim a lien is a violation of the automatic stay). Moreover, it appears that in the Second Supplemental Briefing the Debtors concede that filing the Foreclosure Action (without any taking any further enforcement action) would be a violation of the automatic stay of section 362.

In the Second Supplemental Briefing, the Debtors argue that the automatic stay of section 362 did not prevent Waldinger from providing notice pursuant to section

---

[11] Section 546(b)(1) is applicable where perfection, or the maintenance or continuation of perfection does not require seizing the property or commencing an action.

546(b)(2) to maintain or continue perfection of the Lien and, as such, section 108(c) did

not toll the Foreclosure Action. The Debtors argue that the Foreclosure Action is an

element of the perfection process and is required to maintain or continue perfection.[12] As

such, sections 362(b)(3) and 546(b)(2) are implicated and Waldinger was required to give

notice pursuant to those sections in lieu of the Foreclosure Action. The Debtors argue

that Waldinger failed to give notice pursuant to section 546(b)(2). Therefore, the Debtors

conclude that the Lien lapsed on October 29, 2003 because Waldinger failed to continue

or maintain perfection of the Lien through notice.[13]

Waldinger counters that the Foreclosure Action is unrelated to perfection and, as a

result, sections 362(b)(3) and 546(b)(2) are not implicated. Waldinger argues that the

Foreclosure Action is necessary to enforce a perfected lien and is subject to the automatic

stay of section 362. "[I]f the automatic stay is in effect and under state law the time

required for the commencement of an enforcement action commences, the state

requirement is tolled under 11 U.S.C.A § 108(c)." Baxter Dunaway, The Law of

Distressed Real Estate § 60:14 (2006).[14] Waldinger further argues that the continuation

of a lien during the pendency of the Foreclosure Action is only an ancillary result of the

requirement to foreclose the lien within two years. The Nebraska Statute incorporates

---

[12] The Debtors and Waldinger do not dispute that under the Nebraska Statute and applicable case law that a mechanic's lien is perfected upon recording.

[13] "If the commencement of an enforcement suit is required to maintain perfection under Virginia law and, if such a suit had not been instituted before CSI instituted the Chapter 11 proceedings, then under § 546(b)(2) of the Bankruptcy Code, in order to maintain perfection, Tidewater was required to give notice to CSI within the period of time provided under the state statute. Alternatively, if the commencement of an enforcement suit is not part of the perfection process, the filing of a bankruptcy petition operates as a stay to any enforcement action and Tidewater's mechanics' liens would remain in effect." *Concrete Structures, Inc. v. Tidewater Crane and Rigging Co. (In re Concrete Structures, Inc.),* 261 B.R. 627, 636 (D. Va. 2001).

[14] Waldinger cites case law that section 108(c) tolls the need to bring a suit to foreclose a lien. *See e.g. In re APC Constr., Inc.,* 112 B.R. 89, 120 (Bankr. D. Vt. 1990); *Farm Credit Servs. v. Roth (In re Roth),* 171 B.R. 357, 362 (Bankr. D.S.D. 1994). *See also In re Morton,* 866 F.2d 561, 566 (2d Cir. 1989) (judicial lien); *National Bank of Commerce Trust & Sav. Ass'n v. Ham,* 256 Neb. 679, 683 (Neb. 1999) (written contract).

the possibility that the litigation to foreclose a lien may take longer than the two-year statutory time frame.  Therefore, Waldinger asserts that section 108(c) tolled the need to bring the Foreclosure Action at least until May 20, 2004, 30 days after the Effective Date.

Waldinger contends that a similar issue was addressed in *Concrete Structures.* There, prior to bankruptcy, the lien holder filed a memorandum, perfecting the mechanic's lien.  *Concrete Structures,* 261 B.R. 627.  The Virginia statute required that subsequent to perfection, the creditor foreclose on the lien within 6 months.  *Id*. at 635. The lien holder filed a proof of claim in the bankruptcy and took no other action during the pendency of the automatic stay of section 362.  The debtor argued that pursuant to sections 362(b)(3) and 546(b)(2), the lien holder was required to maintain perfection through notice during the pendency of the automatic stay of section 362 and the lien lapsed because the creditor failed to provide such notice.  *Id*. at 638.

The court in *Concrete Structures* analyzed whether the Virginia statute's requirement to commence an enforcement action was part of the perfection process and, as a result, section 546(b)(2) was implicated.  The court in *Concrete Structures* noted that the "novel and far reaching" interpretation of section 546(b)(2) (requiring a mechanic's lien holder to give notice in order to maintain perfection) is not supported by the legislative history.  "The only comment in the legislative history of the 1994 amendment to § 546(b) actually counsels against adopting the interpretation pressed by [the debtors]."  *Id*. at 638.  The legislative history "explains that the change to § 546(b) was intended to apply to acts necessary to maintain or continue the perfection of an interest

14

held by a secured creditor under the Uniform Commercial Code." *Id.*[15] Finally, the court

in *Concrete Structures* concluded that under the Virginia statute, "a suit to enforce a

mechanics' lien is separate from, and not a necessary part of, the perfection of that lien."

*Id.* at 641.  Rather, the court in *Concrete Structures* held that the Virginia statute "only

sets forth a limitations period in which the lienor must file suit to collect on his

previously perfected lien."  *Id.* at 640.

Waldinger asserts that the Virginia statute is similar to the Nebraska Statute and

the Foreclosure Action is separate from, and not a necessary part of, the perfection of the

a lien.  Similarly, the two-year time period to commence the Foreclosure Action is a

statute of limitations.  Therefore, Waldinger argues the Foreclosure Action was tolled by

section 108(c).[16]

The Debtors counter that the Nebraska Statute is not similar to the Virginia

statute.  The Debtors argue that under the Nebraska Statute, the Foreclosure Action is an

element of the perfection process and the two-year time period to commence the

Foreclosure Action is not a statute of limitations.  Whereas, they argue "[t]he plain

language of the [Virginia] statute makes clear that enforcement is not a

constituent element of perfection.  That is further demonstrated by the fact that the statute

providing for the mechanisms of enforcement refers to the enforcement of perfected

liens, thereby further drawing a distinction between perfection and enforcement."  *Id.*  at

---

[15] "This section [546(b)(2)] sets forth an amendment to sections 362(b)(3) and 546(b)(2) of the Bankruptcy Code to confirm that certain actions taken during bankruptcy proceedings pursuant to the Uniform Commercial Code to maintain a secured creditor's position as it was at the commencement of the case do not violate the automatic stay.  Such actions could include the filing of a continuation statement and the filing of a financing statement.  The steps taken by a secured creditor to ensure continued perfection merely maintain the status quo and do not improve the position of the secured creditor."  140 Cong. Rec. H10767 (daily ed. Oct. 4, 1994).

[16] As discussed, Waldinger argues that the Plan's injunction prohibits the Foreclosure Action and, as such, section 108(c) continues to toll the Statute of Limitations.

639-640. The Debtors contend that the Nebraska Statute requires the Foreclosure Action to continue a lien. "If a judicial proceeding to enforce a lien is instituted while a lien is effective [..] the lien continues during the pendency of the proceeding." Neb. Rev. Stat § 52-140. Further, the Debtors argue that Nebraska Statute requires "commencement of an action" for "the maintenance or continuation of perfection of an interest in property." 11 U.S.C. § 546. Therefore, the Debtors argue that "such interest in such property [..] shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement." *Id.*

The Debtors cite *360networks* for the proposition that the Foreclosure Action is within the purview of section 546(b)(2). *360networks (USA), Inc.*, 282 B.R. 756, 763 (Bankr. S.D.N.Y. 2001) (addressing the California and Oregon statutes that require the initiation of a suit to continue a lien).[17] Similarly, the Ninth Circuit Bankruptcy Appellate Court held that the initiation of judicial action to prevent a lien from lapsing is part of the perfection process. "Under California law, the filing of a foreclosure suit, an enforcement action, is required to maintain the perfection of a lien: if no suit is timely filed, the lien becomes void." *Baldwin,* 232 B.R. 411.

> It appears to this Court that the requirement of the filing of a Continuation Action is within the purview of § 546(b), and that holders of alleged mechanic's liens can preserve their rights by notice without putting debtors to the burden and expense of litigation and motions for relief from the automatic stay. The word "perfection" as used in § 546(b) is not defined in the Bankruptcy Code (or in the Uniform Commercial Code, for that matter), and it would give the term

---

[17] The court in *360networks* addressed a situation where the creditors provided notice pursuant to section 546(b)(2). *In re 360networks (USA), Inc.,* 282 B.R. 756, 763 (Bankr. S.D.N.Y. 2001). Under those circumstances, the court in *360networks* held that the lien holders were protected whether the Continuation Action was an act to continue perfection or was something more than perfection." *Id.* "To the extent that a filing of a Continuation Action was something more that the 'maintenance or continuation of perfection,' and constituted the 'enforcement' of a lien -- and therefore might not be within the purview of §§ 546(b) and 362(b)(3) -- it was stayed by virtue of § 362(a) and the time period for commencement of such action was tolled under § 108(c)." *Id.*

"perfection" a narrow reading to hold that the filing of a Continuation Action is not an act intended to continue the "perfection" of an interest in property. There is ample precedent for the proposition that where the filing of an enforcement action is required to preserve a lien under State law, § 546(b) allows, and indeed compels, creditors to give notice to a debtor instead of filing suit. As for the Continuation Action itself, an alleged lienholder, who provided § 546(b) notice, would be fully protected by virtue of the fact that § 108(c) tolls the time for prosecuting the suit.

*360networks,* 282 B.R. 763.

Based upon a review of the Nebraska Statute and relevant case law, the Court concludes that the Nebraska Statute is a statute of limitations and not an aspect of the perfection process under the Nebraska law. The Court finds that the Foreclosure Action is not an act to maintain or continue perfection of a lien. The purpose of the Foreclosure Action is to enforce a lien and is not related to perfection. "Except as provided in subsections (2) and (3) of this section, a lien that has become enforceable as provided in sections 52-125 to 52-159 continues enforceable for two years after recording of the lien." Neb. Rev. Stat § 52-140. (Subsection (3) addresses the timely commencement of the Foreclosure Action.) The continuation of a lien during the pendency of the Foreclosure Action is ancillary to the suit to foreclose the property. The purpose of the continuation is to prevent the lien from lapsing during the pendency of a suit to foreclose.[18] The two-year time period to enforce a lien serves the same purpose as a statute of limitations.[19] "Statutes of limitations, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost,

---

[18] The continuation of a lien during the Foreclosure Action protects a lien holder from inequitable consequences. Absent this protection, the lien holder would lose a lien simply because the Foreclosure Action extended past two years. Likewise, it would provide the debtors an incentive to delay and obfuscate the Foreclosure Action.

[19] *See Muenchau v. Swarts,* 170 Neb. 209 (Neb. 1960). In *Muenchau,* under the predecessor to the Nebraska Statute, the Supreme Court of Nebraska treated the need to foreclose within two years as a statute of limitations. *Id.*

memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348-49, 64 S.Ct. 582, 586 (1944).[20]

Section 546(b)(2) is not applicable to the Foreclosure Action and, as a result, the Foreclosure Action was subject to the automatic stay of section 362. During the pendency of the automatic stay of section 362, section 108(c) tolled the time for Waldinger to institute the Foreclosure Action. "Actions to perfect an interest in property are excepted by § 362(b)(3), while actions to enforce the lien are not." *Concrete Structures*, 261 B.R. 641. "Acts to enforce a lien, in contrast to the perfection actions which fall within 11 U.S.C. § 546(b), are stayed by the bankruptcy filing and, thus, any time periods for enforcement are tolled by § 108(c) of the Bankruptcy Code." *Premier Hotel Dev. Group v. Premier Hotel Dev. Group*, 270 B.R. 234, 242 (Bankr. D. Tenn. 2001). "Recognizing that a petition in bankruptcy could sometimes give a debtor unfair advantage over a claimant by allowing the debtor to remain under the protection of the automatic stay until the limitation period governing the claimant's action had expired, [..] Congress [through the enactment of section 108] acted to solidly preserve the rights of a party stayed from commencing or continuing an action against the debtor because of the bankruptcy case." *Morton*, 866 F.2d 566 (citing S.R. Rep. No. 95-989, 95th Cong., 2d Sess. 30 (1978); H.R. No. 95-595, 95th Cong., 2d Sess. 318 (1978)) (quotations omitted).

*Baldwin* and *360networks* are distinguishable. *Baldwin* addressed the California statute and *360networks* addressed the California statute and the similarly worded Oregon

---

[20] "The essential attribute of a statute of limitations is that it accords and limits a reasonable time within which a suit may be brought upon causes of action which it affects. Limitations are created by statute and derive their authority therefrom. They evidence a public policy formally declared by the legislative department of government; and as applied to each classification made by it are based upon the similarity of the intrinsic or inherent elements which the causes of action so classified comprise, considered with reference to the nature of proof required to establish the existence of the same." *Markel v. Glassmeye*r 288 N.W. 821, 822-823 (Neb. 1939).

statute.[21]  Under the California statute, enforcement is an integral element of maintaining

perfection**.  "**No lien provided for in this chapter binds any property for a longer period of

time than 90 days after the recording of the claim of lien, unless within that time an

action to foreclose the lien is commenced in a proper court."  Cal Civ Code § 3144

(2006).  "California law requires two distinct steps for the perfection of an oil and gas

lien: recordation of the lien [..], and enforcement or perfection of the lien [..]."  *Ryan v.*

*Grayson Serv. (In re Rincon Island Ltd. Pshp.),* 253 B.R. 880, 884 (Bankr. D. Cal. 2000).

Similarly, "[the holding in *Baldwin*] is tethered to the conclusion that under California

law, the filing of a foreclosure suit, an enforcement action, is required to maintain

perfection of a lien."  *Concrete Structures*, 261 B.R.  641-642 (citations omitted).

Moreover, the time in which the mechanic's lien holder is required to foreclose under the

California and Oregon statutes is significantly shorter (90 and 120 days, respectively)

than the Nebraska Statute (two years).  The longer time period under the Nebraska

Statute further demonstrates that the Foreclosure Action in not part of the perfection

process, but part of the enforcement process.[22]

Based on the aforementioned, the Court finds that section 108(c) tolled the need

to take the Foreclosure Action until May 20, 2004, 30 days after the expiration of the

automatic stay of section 362.

---

[21] "No lien created under ORS 87.010 shall bind any improvement for a longer period than 120 days after
the claim of lien is filed unless suit is brought in a proper court within that time to enforce the lien, or if
extended payment is provided and the terms thereof are stated in the claim of lien, then 120 days after the
expiration of such extended payment, but no lien shall be continued in force for a longer time than two
years from the time the claim of lien is filed under ORS 87.035 by any agreement to extend payment.  For
purposes of this section: (1) Subject to subsection (2) of this section, a suit to enforce the lien shall be
deemed commenced as provided in ORS 12.020."  ORS § 87.055.
[22] While the longer time period alone may not be dispositive as to whether the Foreclosure Action is an
element of the enforcement of a lien (as opposed to the perfection), the longer time period supports that the
Foreclosure Action is an element of the enforcement consistent with the purpose of a statute of limitations
requiring one to enforce their rights within a certain period of time.  *See Order of R.R. Telegraphers v.
Railway Express Agency*, 321 U.S. 342, 348-49, 64 S.Ct. 582, 586 (1944).

*The Effect of Section 108(c) Following the Expiration of the Automatic Stay*

The Debtors argue that even if section 108(c) tolled the Statute of Limitations, the Lien lapsed 30 days after the Effective Date.  Section 108(c) tolls the Statute of Limitations "30 days after notice of the termination or expiration of the stay under section 362."  11 U.S.C. § 108(c).  "Unless otherwise provided in the Plan, [...] all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, […] shall remain in full force and effect until the later of the Effective Date."  Plan ¶ 10.05.  The Debtors argue that under the Plan, the automatic stay of section 362 was lifted on the Effective Date.  Waldinger failed to institute the Foreclosure Action within 30 days of the Effective Date.  Therefore, the Debtors conclude on May 20, 2004, 30 days after the Effective Date, the Lien lapsed.

Waldinger counters the Plan's injunction continues the tolling of section 108(c). Waldinger argues that the Plan's injunction extended the automatic stay past the Effective Date and the automatic stay is still in effect.[23]  Waldinger argues that the Plan's injunction "permanently enjoined [Waldinger] from creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or the Reorganized Debtors."  Plan ¶ 10.04.

The Court finds that the Plan's injunction does not continue or trigger anew the statutory tolling of section 108(c).  The Plan's injunction is premised upon sections 1141

---

[23] "10.04. Injunction.  Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against the Debtors or Reorganized Debtors on account of any such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors on account of any such Claim or Equity Interest."  Plan ¶ 10.04.

and 524, not section 362. Plan ¶ 10.03. Section 108(c) automatically tolls the time period for taking "action in a court other than a bankruptcy court on a claim against the debtor" that was stayed by "sections 362, 922, 1201, or 1301." 11 U.S.C. § 108(c). The language of section 108(c) limits the automatic tolling to the sections enumerated in the statute. Likewise, the Ninth Circuit Bankruptcy Appellate Panel noted that expanding the tolling of section 108(c) to include an injunction based on a section not enumerated, rewrote section 108(c) to include a provision that is "inconsistent with the language of the statute." *See Smith v Lachter (In re Smith),* 293 B.R. 220, 224 (9th Cir., Bankr. Fed. App. 2003) (subsequent appellate history at *Smith v. Lachter (In re Smith)*, 352 B.R. 702 (9th Cir., Bankr. Fed. App. 2006) (addressing whether the Arizona statute extended the time to renew)).[24]

Based on this analysis, the period to commence the Foreclosure Action lapsed 30 days after the Effective Date. As stated previously, the Plan's injunction did not continue or reinstate the tolling of section 108(c). On the Effective Date, the automatic stay of section 362 was lifted and, as such, section 108(c) tolled the need to commence a Foreclosure Action for 30 days after the Effective Date. Waldinger was required institute the Foreclosure Action within 30 days. However, Waldinger was restricted by the Plan's injunction from commencing the Foreclosure Action. Waldinger was required to seek the Court's permission to institute the Foreclosure Action or for the Court to provide other relief. However, Waldinger failed to request any relief. No state or federal statute

---

[24] In *Smith,* the bankruptcy court held that section 108(c) tolled the statute of limitations pursuant to the section 524 discharge injunction. The Ninth Circuit Bankruptcy Appellate Court in *Smith* noted that such a holding rewrote section 108(c). Based on the bankruptcy court' reasoning section 108(c) should have read "(2) 30 days after notice of the termination or expiration of the stay under section 362, 722, 1201, or 1301 of this title, as the case may be, with respect to such claim *or after determination of the dischargeability of the debt by the bankruptcy court***.**" *Smith* 293 B.R. 224 (italicized letters indicate language not found in the statute).

relieved Waldinger from commencing the Foreclosure Action to prevent the Lien from

lapsing 30 days after the Effective Date.  Therefore, on May 20, 2004, the Lien lapsed

and the Omaha Property no longer secured the Claim.[25]

*Contract Obligations Under the Plan*

Waldinger argues that even if the Lien lapsed on May 20, 2004, the Debtors were

contractually obligated to treat the Claim as a Class 3 Claim.  "A confirmed plan holds

the status of a binding contract as between the debtor and its creditors."  *Charter Asset*

*Corp. v. Victory Mrts.* (*In re Victory Mkts.*), 221 B.R. 298, 303 (2d Cir., Bankr. Fed. App.

1998).  Under the Debtors' Joint Disclosure Statement of April 14, 2003 (the "Disclosure

Statement"), Other Secured Claims include mechanic's liens.  Disclosure Statement VI B,

§ 6.  On the Effective Date, the Lien did not lapse because it was tolled by section 108(c).

Under the Plan, "each holder of an Allowed Other Secured Claim shall receive Cash in an

amount equal to such Allowed Other Secured Claim […] on the later of the Effective

Date."  Plan ¶ 4.03.  Likewise, under the Disclosure Statement, "[p]ayments and

distributions to holders of Claims that are Allowed Claims on the Effective Date will be

made on the Effective Date, or as soon thereafter as is practicable."  Disclosure Statement

VI F, § 1.  Therefore, Waldinger concludes, on the Effective Date, the Plan contractually

obligated the Debtors to treat the Claim as an Allowed Other Secured Claim.

---

[25] Waldinger cites *Roth,* 171 B.R. 362 for the proposition that "the critical time for determining the rights of
a debtor and creditor is on the date of filing and if valid at filing, the lien is preserved."  *Id.*  It appears that
Waldinger argues that *Roth* stands for the proposition that Waldinger was not required to take action to
insure the Lien would not lapse.  However, the portion of the decision cited by Waldinger is merely a
recitation of the creditor's argument by the court in *Roth*.  The holding in *Roth* addressed "whether Section
108(c) would have tolled the time in which to file an addendum."  *Id.* at 365.  The court in *Roth* held that
the creditor was required to take action to insure the lien would not lapse post-confirmation.  In *Roth*, the
court held that the lien lapsed because the creditor failed to file a mortgage addendum after the expiration
of the automatic stay.  *Id.* at 366.  Like the creditor in *Roth*, Waldinger failed to take the necessary action to
insure the Lien would not lapse.

The Debtors counter that the Plan does not obligate the Debtors to treat a mechanic's lien that is valid on the Effective Date as an Allowed Other Secured Claim. Rather, the Debtors argue that the Plan obligates the Debtors to treat a mechanic's lien that is properly perfected at the time it becomes "Allowed" as an Allowed Other Secured Claim.  (*See infra,* the Plan defines "Allowed" as a claim that is not "Disputed").  The Debtors disputed, among other things, that the Lien was valid when filed.[26]

The Plan does not obligate the Debtors to treat the Claim as a Class 3 Claim until the Claim becomes "Allowed."  Under the Plan, "each holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to such Allowed Other Secured Claim on the later of the Effective Date and the date such Allowed Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable."  Plan ¶ 4.03.  The Claim still has not become allowed.  As of May 20, 2004, the Lien lapsed.  Even if the Claim was secured on the Effective Date, the Debtors are not obligated to treat the Claim as an Allowed Other Secured Claim because the Claim was objected to timely and then became  "Disputed" under the Plan.  Once an objection was filed, the Claim could only become  "Allowed," as discussed below, if certain criteria under the Plan were met.

 "Allowed" is a defined term in the Plan, and, as such, the parties' contractual rights under the Plan are determined by the Plan's definition of "Allowed."  Under section 502, "[a] claim  […] is deemed allowed, unless a party in interest [...] objects."  11 U.S.C. § 502.  However, the parties' rights under the Plan are determined by the definition of the relevant term therein.  The Bankruptcy Code's definition of  "Allowed"

---

[26] To support its allegation that the Lien was not valid when filed, WorldCom introduced the Affidavit of Ray Brock attesting that WorldCom had not authorized the installation of the AHUs at the time Waldinger filed the Lien.  Under Nebraska law, a mechanic's lien is not valid absent a contract between the parties.

controls the rights of the claimant, unless otherwise modified for the purposes of the Plan,

as is the case here.

> Under the Plan there are five situations in which a claim is "Allowed"

>> (i) any Claim that has been listed by the Debtors in their Schedules, [...] as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any Claim allowed hereunder, (iii) any Claim that is not Disputed, (iv) any Claim that is compromised, settled, or otherwise resolved  […], or (v) any Claim that, if Disputed, has been Allowed by Final Order.

Plan ¶ 1.10.

The Claim fails to meet any of the Plan's definitions of "Allowed."  Waldinger

has not alleged that the Debtors have listed the Claim as not disputed.  It has not alleged

that a specific provision of the Plan allowed the Claim.  It has not alleged that the Claim

was resolved, or the Claim was "Allowed" by a Final Order.

Further, while the Debtors did not object to the Claim on or before the Effective

Date, the Claim was never "Allowed" as of that date under the Plan.  The Plan gives the

Debtors 180 days after the Effective Date to timely object to the Claim.  The Debtors

objected within this 180-day time period.[27]   The definition of "Disputed" includes where

the "Debtors have interposed a timely objection." *Id.* ¶ 1.43.  Under the Plan, as stated

above, the Debtors had "one hundred eighty (180) days after the Effective Date " to

---

[27] It appears that Waldinger argues that the Claim was "Allowed" on the Effective Date because the Debtors failed to object on or before the Effective Date.  That interpretation of the Plan is inconsistent with the Plan's clear and unambiguous language.  The Plan provides that the Debtors can interpose an objection within 180 days of the Effective Date.  Waldinger's interpretation would render this provision meaningless for a Class 3 Claim because even if the Debtors were to object within 180 days of the Effective Date to a Class 3 Claim, the Debtors would be nevertheless contractually obligated to treat the claim as an Allowed Class 3 Claim.

timely object to the Claim.  *Id.* ¶ 7.01.  Therefore, the Claim was "Disputed" because a timely objection was filed.[28]

Likewise, the Claim must be secured when it becomes "Allowed."  The Plan states "[e]ach holder of an Allowed Other Secured Claim" and not each holder of an Allowed Other Claim that was secured.  *Id.* ¶ 4.03.

The Plan did not transform the Claim into an Allowed Class 3 Claim.[29]  While the Plan set forth the time period in which the Debtors were required to act, the Plan did not alter the substantive relationship between Waldinger and the Debtors.  On the Effective Date, the Debtors maintained their right to object to the Claim.  The Plan limited the time period that the Debtors could timely object to a claim.  Likewise, the Plan did not explicitly or implicitly excuse Waldinger's obligation to insure that the Lien would not lapse.  While section 108(c) tolled the Statute of Limitations pursuant to the automatic stay of section 362, that stay expired on the Effective Date and the Plan's injunction became effective.  On the Effective Date, the 30 day period of section 108(c) began running and Waldinger needed to take action prior to the expiration of that period as any other entity would have been obligated to do under the Nebraska mechanic's lien law.  As stated previously, Waldinger was required to seek the Court's permission to institute the Foreclosure Action or for the Court to provide other relief.  Waldinger was not insulated from the Debtors' objections to the Claim.

On October 15, 2004, the Debtors timely objected to the Claim.  The Debtors argue that the Lien was not valid when filed, and that even if the Lien was valid when

---

[28] In the instant case, the Debtors timely objected to the Claim.  Therefore, the Claim was never "Allowed" under the Plan.

[29] Even if the Lien was valid on the Effective Date, that validity does not require the Debtors to treat the Claim as a Class 3 Claim, nor does it absolve Waldinger from the responsibility of insuring that the Lien does not lapse.

filed, as a matter of law the Lien lapsed. Even if the disputes regarding the Lien's

validity when filed and the Lien's validity on the Effective Date are determined in

Waldinger's favor, the Plan does not require the Claim to be treated as a Class 3 Claim

because the Claim is no longer secured. The Plan does not obligate payment as a Class 3

Claim in the case of a claim that may have been secured on the Effective Date, but such

interest lapsed before it became "Allowed" under the Plan. Therefore, the Debtors are

not contractually obligated to treat the Claim as a Class 3 Claim.[30]

> Additionally, Waldinger argues

> the plan only became effective if certain conditions were satisfied within 120 days
> after confirmation. If the condition were not satisfied, then the confirmation order
> was to be vacated and all parties restored to their status quo. If this failure of
> conditions occurred, then Waldinger would have been entitled to pursue an
> enforcement action as extended under section 108(c).

It is unclear what the point of this argument is. The Plan became effective on

April 20, 2004. Waldinger has not specified a condition precedent that would have

prevented the Plan from becoming effective. Likewise, article 11 of the Plan does not

specify a condition related to the Claim that was not met. Perhaps, Waldinger is arguing

that section 108(c) should continue to toll during the 120 days after the Effective Date

because the automatic stay of section 362 theoretically could have been triggered

retroactively by a failure of the conditions precedent of article 11. The possibility that the

automatic stay could have been retroactively applied does not relieve Waldinger of taking

the necessary action to insure the Lien did not lapse. Furthermore, the Court notes that

---

[30] Additionally, Waldinger argues that under the Plan, "the legal, equitable and contractual rights of the holders of Allowed Other Secured Claims, if any exist, are not altered by the Plan." Disclosure Statement VI B, § 6. However, as previously noted, Waldinger's rights were not altered by the Plan. After the Effective Date, Waldinger was in the same position as any holder of a Nebraska mechanic's lien. Under the Plan to the extent the lien was valid it attached to the funds set aside for such payments. Such treatment under the Plan did not relieve Waldinger of its obligation to commence the Foreclosure Action.

this argument fails because even if the automatic stay of section 362 was preserved for 120 days after the Effective Date and section 108(c) provided an additional 30 days thereafter, the Lien would have lapsed in September 2004 and Waldinger had not taken any action by that time.  Therefore, Waldinger's argument regarding article 11 of the Plan does not provide any relief for Waldinger.

*Estoppel*

Waldinger further argues that the Debtors are equitably estopped from asserting that the Lien has lapsed.  Waldinger alleges that "when these Disclosure Statements came out […] and [we] tried to figure out what was going on, and we couldn't get [the Debtors' counsel] to say anything to us, other than: if you have a lien you are fine."  Hearing Tr. at 24.  According to Waldinger, the Debtors' statement that "you are fine" conveyed the material misrepresentation that Waldinger was not required to take any further action to be paid in full as a Class 3 Claim.  *Id.*  Waldinger asserts that it detrimentally relied on the Debtors' response and failed to take action to insure that the Lien would not lapse.

The elements of equitable estoppel are material misrepresentation, reasonable reliance, and provable damages.  *Bennett v. United States Lines*, 64 F.3d 62, 65 (2d Cir. 1995).[31]  To defeat the Debtors' Summary Judgment Motion, Waldinger must allege the

---

[31] While Waldinger failed to specify whether the allegation is premised upon promissory or equitable estoppel, equitable estoppel appears to be what Waldinger is arguing.  "A promise is an expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future, communicated in such a manner to a promisee that he may justly expect performance and may reasonably rely thereon."  *Choate v. TRW, Inc.*, 304 U.S. App. D.C. 312 (D.C. Cir. 1994) (quoting 1 Corbin On Contracts § 13 (1963)).  Here, Waldinger did not allege that the Debtors expressed intent that they would  "conduct [themselves] in a specified way or bring about a specified result in the future."  *Id*.  At best, the Debtors offered an interpretation of the Plans provisions.  Even taking the evidence in the light most favorable to Waldinger, Waldinger's allegation fails to meet the requirements of promissory estoppel.  However, even if the Debtors' statement could be interpreted as a promise, promissory estoppel fails for the same reasons that equitable estoppel fails.  As discussed *infra*, there is no contention that the specific facts regarding Waldinger's situation regarding the Lien was stated to the Debtors prior to their alleged response.  The Debtors never made a "clear and unambiguous promise" that Waldinger was not required to take any action to prevent the Lien from lapsing and Waldinger's failure to prevent the Lien from lapsing "was not

Debtors materially misrepresented that Waldinger was not required to take any further action to be paid as a secured creditor and Waldinger reasonably relied on this misrepresentation.

Waldinger does not allege that the Debtors explicitly stated that Waldinger was not required to take affirmative action.  Rather, Waldinger argues that the Debtors' response "if you have a lien you are fine" clearly indicated there was no need to insure that the Lien would not lapse.  An examination of what Waldinger alleges took place would make reliance on the comments attributable to the Debtors not reasonable as a matter of law for the purposes asserted.

Waldinger alleges that "we couldn't get anybody to say anything to us other than: if you have a lien you are fine."  "We couldn't get anybody to say anything to us" implies that Waldinger was unsure of the meaning of the Debtors' alleged statement and felt the Debtors were being elusive.  Additionally, the alleged reply, "that if you have a lien you are fine," essentially parroted the Plan's language.  If Waldinger was unsure of the Plan's requirements and felt that the Debtors' answer was elusive, Waldinger could not reasonably rely on the Debtors' simple restatement of the Plan to understand its implications.  The Debtors are not "responsible for tutoring counsel for claimants as to how their rights are to be protected or to give counsel step-by-step instructions on how such claims or suits are to be maintained."  *Bennett,* 64 F.3d 67 (internal citations omitted).  Waldinger was required to determine the action necessary to insure that the

---

foreseeable reliance by the promisee."  *Braun v. CMGI, Inc.*, 64 Fed. Appx. 301, 304 (2d Cir. 2003) (addressing New York law).  Nebraska law has similar requirements.  *See Maxwell, Inc. v. Kenney Deans, Inc.,* 1999 Neb. App. LEXIS 271, at *14 (Neb. Ct. App.)  (1999) ("unambiguous promise"); and *Rosnick v. Dinsmore*, 235 Neb. 738, 749 (Neb. 1990) ("reasonable and foreseeable reliance"); *see also* Restatement 2d of Contracts, § 90 (for the proposition that justifiable reliance is considered to be an essential element of promissory estoppel).

Lien did not lapse and not rely on the Debtors' alleged statement.  Further, there is no

contention that the specific facts regarding Waldinger's situation regarding the Lien[32]

were stated to the Debtors prior to their alleged response.   Waldinger's concern over the

validity of the Lien is what prompted the inquiry to the Debtors.  The Debtors' alleged

response to such inquiry could not as a matter of law have addressed that concern such

that it would have relieved Waldinger of its obligation to protect its rights.  In sum,

Waldinger has failed to establish that its reliance upon the Debtors' alleged representation

was reasonable.

*Section 546(b)(2)*

As previously stated, the Foreclosure Action is not within the purview of sections

362(b)(3) and 546(b)(2).[33]  However, if these sections were applicable, it would appear to

the Court that the filing of a secured proof of claim would not have constituted notice

under section 546(b)(2).  Similarly, Waldinger's alleged communications with the

---

[32] Waldinger did not allege that Waldinger asked the Debtors what steps were required to insure the Lien would not lapse.

[33] As such, it is not necessary for the Court to reach the issue of if sections 362(b)(3) and 546(b)(2) would have been applicable, whether section 108(c) would have tolled the Statute of Limitations during the pendency of the automatic stay of section 362.  One commentator has noted that the case law regarding this issue is complex and under the current case law it is uncertain whether subsequent to the 1994 Amendment, section 108(c) tolls the commencement of an enforcement action to maintain or continue perfection.  James N. Duca, *Mechanics Lien Claims in Bankruptcy A Fresh Look at Mechanics Lien Law and the Bankruptcy Code*, American Bankruptcy Institute, Tenth Annual Southwest Bankruptcy Conference 091202 ABI-CLE 63, § A (2002).  Similarly, the Ninth Circuit Bankruptcy Appellate Court in *Baldwin* did not reach whether subsequent to the 1994 Amendment, an enforcement action to maintain or continue perfection is tolled by section 108(c).  *Baldwin* 232 B.R. 415.

> Nothing in the 1994 amendments modified the language of section 108(c), and it is clear under *Hunter's Run* [*In re Hunters Run Ltd. Partnership*, 875 F.2d 1425 (9th Cir. 1989)] and similar cases that this right existed under the law prior to the 1994 amendments.  It is a cardinal principal of statutory interpretation that repeals by implication are not favored.  Nevertheless, the requirement imposed on the lienholder by section 546(b) as amended - the timely giving of a notice in lieu of filing an action to continue the perfection of a lien - uses the mandatory word "*shall*," suggesting that the notice is not simply an optional alternative that the lienholder can employ to maintain the perfection of its lien.
>
> Duca, at § A.

However, it appears to the Court that if sections 362(b)(3) and 546(b)(2) were applicable, section 108(c) would not have tolled the Statute of Limitations.  However, even if section 108(c) tolled the Statute of Limitations when sections 362(b)(3) and 546(b)(2) were applicable, the Lien would have lapsed on May 20, 2004, 30 days after the Effective Date.

Debtors regarding the Lien (the "Communications") would not have constituted notice

under section 546(b)(2).  Therefore, if sections 362(b)(3) and 546(b)(2) were implicated,

the Lien would have lapsed on October 29, 2003, two years after the filing of the Lien.

Waldinger argues that even if sections 362(b)(3) and 546(b)(2) were applicable,

Waldinger provided the required notice.  Waldinger argues that the filing of the secured

proof of claim provided notice pursuant to section 546(b)(2).  Additionally, Waldinger

argues that the Communications provided notice pursuant to section 546(b)(2).  The

Debtors argue that the filing of the Claim and the Communications merely indicate that

Waldinger alleged that at the time of the filing or the Communications the Lien was

valid.  However, the Debtors argue, that the filing of the Claim and the Communications

failed to provide notice pursuant to section 546(b)(2) that Waldinger intended to enforce

the Lien.

"Section 546(b) provides little guidance as to what constitutes the requisite

notice."  *Coated*, 147 B.R. 846.  "Under § 546(b), notice is sufficient if it informs the

court or the possessor of the property that the creditor intends to enforce his lien."  *Jones*

*v. Salem Nat'l Bank (In re Fullop),* 6 F.3d 422, 430 (7th Cir. 1993) (citations omitted).

*See also In re Casbeer*, 793 F.2d 1436, 1443 (5th Cir. 1986).  While the case law

addressing the sufficiency of notice under section 546(b)(2) is not uniform, the guiding

principal is that the notice informs the court or the debtor that the creditor would have

seized the property or commenced the action had bankruptcy not intervened.[34]

The Fifth Circuit has held that motions to lift the stay and to prevent use of the

rents, and complaints seeking a temporary restraining order and a temporary and

---

[34] "The Notice will be sufficient if it makes clear that the interest holder intends to enforce its interest in property."  2 Collier P 546.03[3].

permanent injunction to prevent use of the rents satisfied the section 546(b)(2)

requirement for notice.  *In re Casbeer*, 793 F.2d 1436, 1442 (5th Cir. 1986).[35]  "The fact

that those motions were not styled as motions to give notice of perfecting security

interests in rental assignments under 11 U.S.C. § 546(b) does not much matter to us

because the notice given was clear."  *Id*. at 1443.[36]

   Waldinger cites the district court's decision in *Coated,* for the proposition that the

filing of a secured proof of claim satisfies the notice requirement of section 546(b)(2).

*Coated,* 147 B.R. 847.  The Debtors counter that the holding in *Coated* is not relevant to

the instant matter.  Since the court in *Coated* addressed perfection through notice, the

Debtors assert *Coated* is limited to the initial perfection and does not extend to the

maintenance or continuation of perfection, which is required under the Nebraska Statute.

   "Under § 546(b), notice is sufficient if it informs the court or the possessor of the

property that the creditor intends to enforce his lien in the rents."  *Fullop*, 6 F.3d 430.

The filing of the Claim did not inform the Court or the Debtors that Waldinger intended

to enforce his lien.  Filing of the Claim merely indicated on the day of the filing that

Waldinger alleged that the Lien was secured on that day.  Filing the Claim failed to

inform the Court or the Debtors of Waldinger's alleged intent to maintain or continue the

Lien.  Although not determinative of whether the specified notice was given and its

adequacy, the record is clear that Waldinger did not intend to provide notice through the

---

[35] "In Texas, an assignment of rents in a pledge to secure a debt is not effective until the mortgagee obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, or takes similar action."  *In re Casbeer*, 793 F.2d 1442 (citations omitted).

[36]  In another decision, the Fifth Circuit held that the complaint to modify the stay was not sufficient to grant a security interest in the rents.  *In re Village Properties, Ltd.*, 723 F.2d 441 (5th Cir. 1984).  The court in *Village* did not address section 546(b).  However, the Fifth Circuit addressed a state law that had similar notice requirement to perfect.  "The form of the action required to perfect the mortgagee's interest is not as important as its substantive thrust -- diligent action by the mortgagee which demonstrates that he would probably have obtained the rents had bankruptcy not intervened."  *Id.*  at  446.

filing of the Claim because it did not believe sections 362(b)(3) and 546(b)(2) were
applicable.  Waldinger did not argue that it provided notice.  Rather, Waldinger argued
that pursuant to sections 362 and 108(c), Waldinger was absolved from taking action to
prevent the Lien from lapsing during the pendency of the automatic stay of section 362.
As will be discussed, the court in *Coated* was faced with a unique set of circumstances
and held that the secured proof of claim satisfied the notice provision of section
546(b)(2).  The court in *Coated* did not annunciate the basis for the court's holding that a
secured proof of claim provides notice pursuant to section 546(b)(2).[37]  However, to the
extent that the holding in *Coated* stands for the proposition that as a matter of law, the
filing of a secured proof of claim provides adequate notice pursuant to section 546(b)(2),
the Court disagrees.

On the facts of the case before it, the [court in *Coated*] found that the contractor's
earlier filing of a secured proof of claim in the debtor's bankruptcy case satisfied the
notice provision of section 546(b)."  Lawrence Ponoroff, *Construction Claims in
Bankruptcy: Making the Best of a Bad Situation*, 11 Bank. Dev. J. 343, 366 (1994).  In
*Coated*, the creditor made "four relevant filings in connection with [the unsecured
mechanics lien]: a notice of intent to claim a lien, a petition to enforce a lien, a notice of
*lis pendens*, (collectively, the "Rhode Island filings"), and, finally, a secured claim in
Bankruptcy court."  *Id.* at 846.  The Court in *Coated* held that the petition to enforce a
lien and the notice of *lis pendens* were void *ab initio* and, as such, failed to perfect the

---

[37] Likewise, there is *dicta* from *Baldwin* that could be read to support a finding that filing a secured proof of
claim provides notice pursuant to section 546(b)(2).  *In re Baldwin Builders v. Gould*, 232 B.R. 406, 415
(9th Cir., Bankr. Fed. App. 1999).  In *Baldwin*, the Ninth Circuit Bankruptcy Appellate Court held that the
secured proof of claim was filed after the expiration of the time to commence a foreclosure proceeding
under the California statute for the first lien and the secured proof of claim was filed prior to the second
lien recordation in the state court.  *Id.* Therefore, the secured proof of claim failed to prevent the liens from
lapsing.  *Id.*

lien under the Rhode Island statute and failed to provided notice pursuant to section
546(b)(2). Similarly, the court in *Coated* held that the notice of intent to claim a lien was
insufficient to perfect under the Rhode Island statute because the Rhode Island law
required commencing an enforcement action to perfect the interest. Additionally, the
notice of intent to file a lien failed to provide adequate notice pursuant to section
546(b)(2) because it was not filed in the bankruptcy court. The court in *Coated* held
546(b)(2) notice is "sufficient only if filed in the Bankruptcy Court." *Coated,* 147 B.R.
846. In *Coated,* in addition to filling a secured proof of claim, the lien holder attempted
to perfect the lien outside of the bankruptcy court. Likewise, the court in Coated
addressed the perfection through notice and did not address the maintenance or
continuation of perfection through notice. Nevertheless, it appears that the rationale of
the court in *Coated* would extend to the maintenance or continuation of perfection
through the filing of a secured proof of claim.[38] As stated previously, to the extent that

---

[38] The Debtors argue that a secured proof of claim provides similar information that is required when a lien
is initially perfected through recording a lien. In contrast, the questions regarding the validity of the Lien
involve the maintenance or continuation of perfection. The Debtors argue that maintenance of a lien under
the Nebraska Statute requires the commencement of the Foreclosure Action. As such, the Debtors argue
filing a secured proof of claim fails to provide notice that a creditor intends to enforce the lien and remain
secured. Therefore, the Debtors argue that the *Coated* holding regarding the filing of a secured proof of
claim does not extend to the maintenance or continuation of a lien under the Nebraska Statute.

   The Debtors are correct that the court in *Coated* addressed only perfection and did not address the
maintenance or continuation of perfection. However, the *dicta* from *Coated* indicates that the court in
*Coated* would extend its holding to the maintenance or continuation of perfection. While some states may
require filing a document to perfect a lien, the court in *Coated* did not address that situation. In *Coated*,
the court held that the Rhode Island statute requires "commencing an enforcement proceeding " to perfect
the lien. *Coated,* 147 B.R. 845. The court in *Coated* addressed the situation were the lien holder was
required to commence an enforcement proceeding. It concluded that the filing of a secured proof of claim
provided notice pursuant to section 546(b)(2) that the lien holder intended to commence an enforcement
proceeding to perfect the lien under the Rhode Island statute. Pursuant to that rational, a secured proof of
claim demonstrates the lien holder's intent to enforce the claim. That intention is not affected by whether
the relevant law requires the enforcement of the claim to perfect, or the relevant law requires the
enforcement of the claim for the maintenance or continuation of perfection. Therefore, it would appear
under the court's rationale that the filing of a secured proof of claim provides notice for the maintenance or
continuation of perfection.

   Moreover, the Debtors argue that even if *Coated* can be extended to the continuation of perfection, the
Second Circuit holds that filing a secured claim does not continue a lien. "The filing of the proofs of debt

the holding in *Coated* stands for the proposition that the mere filing of a secured proof of claim provides sufficient notice under section 546(b)(2) to maintain or continue perfection, the Court disagrees.  Therefore, the filing of the Claim failed to provided adequate notice pursuant to section 546(b)(2).

Regarding the Communications, Waldinger asserts that the Communications provided notice pursuant to section 546(b)(2).  For example, on December 2, 2002, Waldinger alleges that it communicated that "[Waldinger] would prefer to attempt to resolve the claim of lien with the least amount of expense to all parties, particularly since Waldinger is an oversecured party and is entitled to recover its fees and expenses from MCI."[39]  The Communications occurred within two years of the filing of the Lien.  While the court in *Coated* required the filings to take place in a bankruptcy court, Waldinger argues that *Coated* was prior to the 1994 Amendment and the holding requiring notice

---

with statements that they were secured by mechanics' liens was not equivalent to the beginning of actions to foreclose which would continue the liens under section 17 of the New York Lien Law." *In re Willax*, 93 F.2d 293, 295 (2d Cir. 1937).  While *Willax* was decided prior to the Bankruptcy Code, the Debtors argue that the Bankruptcy Code has not altered the holding in *Willax*.  *Morton*, 866 F.2d 564.

However, the issue addressed by *Coated* is discrete from the issue addressed in *Willax* and, as such, the holding in *Coated* does not conflict with *Willax*.  In *Willax*, the Second Circuit addressed the requirement that a creditor file a continuation to extend a judicial lien.  "There was no order of the bankruptcy court or rule of law which prevented [the secured creditor] from applying for a continuation." *In re Willax*, 93 F.2d 293, 295 (2d Cir. 1937).  The Second Circuit held that the "proofs involved no attempt by the claimants to realize upon their security" and the continuation of the lien was not subject to the automatic stay. *Id.*  The Second Circuit did not address a situation where notice was required in lieu of  "commencement of an action" for "the maintenance or continuation of perfection of an interest in property." 11 U.S.C. § 546.  In contrast, in *Coated*, the court held that the automatic stay prohibited the creditors from initiating the foreclosure action and section 546(b)(2) required the lien holder to provide notice in lieu of the foreclosure proceeding.  The court held filing a secured claim "provides notice in accordance with section 546." *Coated,* 147 B.R. 846.  In *Coated*, the court did not hold that filing the secured proof of claim meets the requirements of the Rhode Island statute requiring the commencement of an action.

[39] On December 10, 2002, Waldinger alleges that it sent the Debtors a copies of the Claim and the Lien to the Debtors and alleged that the Claim " was the only lien of substance" on the Omaha Property and indicated that the Lien was secured.  On February 10, 2003, Waldinger alleges that Waldinger communicated to the Debtors "Waldinger claims a lien interest against Lot 4 which is unimproved property."  Similarly, on February 21, 2003, Waldinger alleges that the Debtors communicated that the lot WorldCom was intending to sell was a different lot than Waldinger had a lien on and the Debtors did not anticipate any objection from Waldinger over the sale.  It is unclear how the last communication would provide notice pursuant to section 546(b)(2) when the communication was initiated by the Debtors.  However, the alleged communication clearly indicates that the Debtors were aware of the Lien.

pursuant to section 546(b)(2) to be given in the bankruptcy court is probably no longer controlling subsequent to the 1994 Amendment.[40]  The Debtors counter that the Communications merely indicate that Waldinger alleged that the Lien was secured at the time the Communications were made.  However, the Debtors contend that the Communications fail to provide notice that Waldinger was providing notice in lieu of the Foreclosure Action.

Waldinger's communication with the Debtors requesting "to attempt to resolve the claim of lien with the least amount of expense to all parties, particularly since Waldinger is an oversecured party and is entitled to recovery of its fees and expenses" is at most a preliminary step.  If bankruptcy had not intervened, Waldinger would have been required to commence the Foreclosure Action by instituting a suit.  Attempting to settle a case fails to inform the Debtors or the Court that Waldinger intended to enforce the Lien through the Foreclosure Action.  "The cases suggest that, at a minimum, the action must be calculated to notify the holder of the property, be it the debtor or the trustee, that the lienholder intends to enforce its lien."  *Baldwin*, 232 B.R. 414.  The Ninth Circuit Bankruptcy Appellate in *Baldwin* held that the discussions relating to the creditor's

---

[40] While Waldinger correctly notes that there is case law that does not require the notice to be given in the bankruptcy court, Waldinger fails to articulate why the 1994 Amendment would have affected the holding in *Coated* that required the notice to be given in the bankruptcy court.  *Rincon Island*, the case cited by Waldinger for the proposition that notice does not have to be given in the bankruptcy court is not predicated upon the 1994 Amendment.  Likewise, the Ninth Circuit Bankruptcy Appellate Court in *Baldwin* holding that notice is not required to be given in the bankruptcy court is not predicated on the 1994 Amendment.  The court in *Rincon Island* and the Bankruptcy Appellate Panel in *Baldwin* both cite the 1993 decision from the Seventh Circuit, *Fullop*, 6 F.3d 430.  "Prior to *Fullop*, courts [including *Coated*] generally held that notice under § 546(b) required something to be filed in the bankruptcy court."  *Baldwin*, 232 B.R. 413.  "[In the 1978 Bankruptcy Code] Congress deleted entirely the language of the [Bankruptcy Act] 'by filing notice thereof with the court,' and replaced it with the language, 'by giving notice.'  The change not only eliminated the requirement that notice be filed with the court, but by changing the language from 'filing' to 'giving,' the formality inherent in 'filing' has also been eliminated."  *Rincon Island*, 253 B.R. 886.  It is not necessary for the Court to address whether notice pursuant to section 546(b)(2) must be given in the bankruptcy court.  As will be discussed, the Communications failed to provide notice that Waldinger intended to enforce the Lien.

decision to hire a law firm to pursue the liens "were at most preliminary steps, not affirmative actions calculated to inform the debtor that the creditor intended to enforce its lien rights." *Rincon Island,* 253 B.R. 888.[41]  Similarly, the other communications between Waldinger and the Debtors at most asserted that Waldinger alleged that the Lien was secured and did not inform the Debtors or the Court that Waldinger intended to enforce the Lien.[42]  The Communications were merely preliminary steps, not affirmative actions that informed the Debtors or the Court that Waldinger intended to enforce the Lien.[43]  Therefore, the Communications failed to provided adequate notice pursuant to section 546(b)(2).

Based on the aforementioned, the Court finds that even if sections 362(b)(3) and 546(b)(2) were applicable, Waldinger failed to provide adequate notice pursuant to these sections.  The Claim and Communication's, either separately or in conjunction, failed to provide notice that Waldinger intended to maintain or continue the perfection of the Lien and, as such, failed to provide adequate notice pursuant to section 546(b)(2).  Therefore, if sections 362(b)(3) and 546(b)(2) were implicated, the Lien would have lapsed on October 29, 2003, two years after the filing of the Lien.

## V.  CONCLUSION

The Court finds that the Claim filed by Waldinger is unsecured because as a matter of law, the Lien lapsed on May 20, 2004.  Likewise, the Court rejects Waldinger's contractual and estoppel arguments.  Waldinger's motion for Interest and Attorney's

---

[41] In *Rincon Island,* the court held that a creditor that informed the debtor that the creditor would file suit, or take whatever other legal action was necessary to enforce the lien provided adequate notice pursuant to section 546(b)(2).  *Ryan v. Grayson Serv. (In re Rincon Island Ltd. Pshp.),* 253 B.R. 880, 889 (Bankr. D. Cal. 2000).

[42] *See* note 39(regarding the last communication that was made by the Debtors and not Waldinger).

[43] The Debtors concede that if the Lien was valid when filed, the Lien was valid during the time the Communications were made.

36

Fees[44] pursuant to section 506 is moot as a result of the Court's determination that the Claim is not a secured claim.

Therefore, based upon the foregoing, the Debtors' Motion for Partial Summary Judgment seeking a determination that the Claim is unsecured is granted.  Waldinger's Cross-Motion for Summary Judgment is denied.  Counsel for the Debtors is to settle an order consistent with this opinion.

Dated:   New York, New York
         February 23, 2007

**s/Arthur J. Gonzalez**
UNITED STATES BANKRUPTCY JUDGE

---

[44] The Court notes that even if Waldinger prevailed that the Omaha Property secured the Lien, section 506(b) would not permit Waldinger to receive Attorneys Fees as an oversecured creditor.  Section 506(b) allows recovery for an oversecured claim of  "any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."  11 U.S.C.  § 506.  "To recover attorney's fees under section 506(b), then, a creditor must establish: (1) that it is oversecured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorney's fees."  *First W. Bank & Trust v. Drewes (In re Schriock Constr.),* 104 F.3d 200, 201 (8th Cir. 1997).  Waldinger's claim for Attorneys Fees is based upon the Settlement Agreement.  However, even if enforceable, the Settlement Agreement was not the agreement giving rise to the claim.  The Claim is based upon the Lien which was non consensual and the Debtors did not agree to pay the Attorneys Fees for Waldinger's enforcement of the Lien.  The Code was amended in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to include "any reasonable fees, costs, or charges provided for under the agreement *or State statute* under which such claim arose."  11 U.S.C. § 506 (2005) (the italicized language in bold is the language added by BAPCPA).  WorldCom filed in 2002 so the amended language that would incorporate Attorneys Fees arising under state statute would not be applicable to the Claim.  However, even if it was applicable, Waldinger has not argued that the Debtors engaged in any of wrongful conduct as such term is described by the Nebraska Construction Lien Act, Neb. Rev. Stat § 52-157 that would enable a lien claimant to seek attorney fees.