| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | Not For Publication |
| In re | : | Chapter 11 |
| WORLDCOM, INC. et al., | : | Case No. 02-13533 (AJG) |
| Reorganized Debtors. | : | (Confirmed Case) |

**OPINION REGARDING (1) CLAIMANT'S MOTION FOR RELIEF FROM AUTOMATIC STAY,[1] AND (2) DEBTORS' MOTION TO STRIKE CLAIMANT'S SUPPLEMENTAL BRIEF**

APPEARANCES

STINSON MORRISON HECKER LLP
Attorneys for Reorganized Debtors
1201 Walnut Street
Kansas City, MO 64106

    Mark A. Shaiken, Esq.
    Patricia A. Konopka, Esq.
    Erin C. Kobler, Esq.

SMITH RUSHING COTTON & ROBINSON, PLLC
Attorney for Claimant
4848 North State Street
Jackson, MS 39286-9366

    Kelsey L. Rushing, Esq.

SHAKED & POSNER
Attorney for Claimant
225 W. 34th Street, Suite 705
New York, NY

    Dan Shaked, Esq.

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

---

[1] Although the Claimant has moved for relief from the automatic stay, the Court treats the motion as a motion for relief from or modification of the Plan Injunction. See discussion *infra*.

## I. Introduction

Before the Court is the motion of Donald Hewitt (the "Claimant" or "Hewitt") for relief from the automatic stay. Additionally, WorldCom, Inc., MCI Telecommunications Corp., and their subsidiaries (collectively, the "Debtors," "Reorganized Debtors," or "WorldCom") move to strike the Claimant's November 2, 2006 Supplemental Brief With Respect to Claimant's Motion for Relief from Automatic Stay (the "November 2006 Brief").

## II. Jurisdiction and Venue

The Court has subject matter jurisdiction over this proceeding pursuant to sections 1334(b) and 157(a) of title 28 of the United States Code. This matter is a core proceeding within the meaning of section 157(b) of title 28 of the United States Code. Venue is properly before the Court, pursuant to sections 1408 and 1409 of title 28 of the United States Code.

## III. Background

On July 21, 2002 (the "Commencement Date") and November 8, 2002, the Debtors commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). By orders dated July 22, 2002 and November 12, 2002, the Debtors' chapter 11 cases were consolidated for procedural purposes. By order dated October 29, 2002, the Court established January 23, 2003 as the deadline for the filing of proofs of claim against the Debtors (the "Bar Date").

By order dated October 31, 2003, the Court confirmed the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan"). On April 20, 2004, the Plan became effective (the "Effective Date"). Upon the Effective Date, WorldCom changed

2

its name to MCI, Inc. On January 6, 2006, Verizon Communications, Inc. and MCI merged. Under the merger agreement, MCI, Inc. merged with and into Eli Acquisition, LLC, as a direct, wholly owned subsidiary of Verizon Communications Inc. Eli Acquisition LLC, as the surviving entity, was immediately renamed MCI, LLC. MCI, LLC is now doing business as Verizon Business Global LLC.

On August 6, 2001, Hewitt on behalf of himself and all other similarly situated individuals commenced an action with the United States District Court for the Southern District of Mississippi (the "Mississippi District Court") against SkyTel Corp., an indirect subsidiary of WorldCom Inc., and MCI WorldCom, by filing a complaint (the "Complaint") alleging disparate treatment, intentional discrimination and retaliation pursuant to sections 703 and 704 of title VII of the Civil Rights Act of 1964 and section 1981 of title 42 of the United States Code. On February 11, 2002, an order was entered dismissing class certification in the Mississippi Action, but Hewitt's individual allegations remained. On March 29, 2002, Skytel filed its answer to the Complaint.

On January 23, 2003, Hewitt filed proof of claim number 30907 (the "Proof of Claim") in the amount of $10,047,000, which is composed of compensatory damages of $47,000 and $10,000,000 of punitive damages.

On October 5, 2004, the Debtors filed their 38th Omnibus Objection to Proofs of Claims, which addressed the Proof of Claim. On October 17, 2004, the Debtors filed their amended 38th Omnibus Object (hereinafter referred to as the "Claim Objection"). On January 3, 2005, the Claimant filed a response to the Claim Objection and opposed the expungement of the Proof of Claim. In addition to the response, the Claimant also

3

filed a motion for relief from the automatic stay requesting that the Court allow the claims to be resolved in the Mississippi District Court.

On January 10, 2005, the Debtors objected to the Claimant's request for relief from the automatic stay. On January 18, 2005, the Court requested supplemental briefing on whether the nature of the claim was for a personal injury tort. On February 1, 2005, the Claimant filed his Supplemental Response to the Claim Objection. On February 15, 2005, the Debtors filed their Supplemental Response and Objection to Motion for Relief from the Automatic Stay Filed by Claimant and Memorandum of Law in Support Thereof Regarding Personal Injury Tort Claim Issues.

On August 2, 2005, the Court determined that if the Claimant suffered physical manifestations of emotional distress in the form of ulcers as a result of the Debtors' conduct, he "must establish this physical injury [because] the only record before the Court is the Claimant's assertion of such physical manifestations."

At a subsequent hearing on August 9, 2005, the Court allowed the parties to conduct discovery on the issue of whether the Claimant has suffered a physical injury as a result of any of actions by the Debtors. Counsel for the Claimant and Debtors' counsel reported to the Court on August 17, 2005 that they would complete discovery on the issue of whether the Claimant suffered a personal injury as a result of any action of the Debtors by November 18, 2005.

On December 6, 2005, the parties reported to the Court that they had completed discovery and that the only evidence to be presented to the Court was documentary. As no live witness testimony was necessary, the Court ordered the parties to each file a brief presenting the evidence and argument. The parties presented a briefing schedule to the

4

Court on December 22, 2005, where (1) the Claimant's brief would be filed no later than January 27, 2006, and (2) the Debtors' brief would be filed no later than February 27, 2006.

Pursuant to the schedule presented to the Court, the Claimant filed his Supplemental Response to 38th Omnibus Objection to Proofs of Claim and Motion of the Claimant for Relief from Automatic Stay on or about January 27, 2006. On February 27, 2006, Debtors filed their Second Supplemental Response and Objection to Motion for Relief from the Automatic Stay Filed by Claimant Regarding Personal Injury Tort Claim Issues.

On November 2, 2006, the Claimant filed the November 2006 Brief, which revisited the personal injury tort claim issue. Attached to this brief were (1) an affidavit from Claimant's physician dated March 7, 2006, (2) a short term disability claim form from 1999, and (3) a form containing a physician's statement dated September 29, 1999. On November 10, 2006, the Debtors filed a motion to strike the November 2006 Brief. The Court held a hearing with respect to the motion to strike on February 6, 2007

### IV. Claimant's Motion

### A. Nature of Complaint

The Claimant argues that the Complaint, which serves as the basis for proof of claim 30907, included a general allegation for emotional distress and thus, the Claimant has a pending cause of action against the Debtors for emotional distress. Further, the Claimant argues that his cause of action against the Debtors should be treated as a

5

personal injury tort claim and therefore, under provision 7.03 of the Plan, the claim should be heard in the Mississippi District Court.[2]

The Court must determine whether the claims asserted against the Debtors in the Complaint are "personal injury tort" claims within the meaning of section 157(b)(5) of title 28 of the United States Code.

Under section 157(b)(2)(B) of title 28 of the United States Code, the liquidation or estimation of contingent or unliquidated personal injury tort claims is a non-core matter. The bankruptcy court lacks jurisdiction to liquidate a personal injury claim. *In re United States Lines, Inc.*, 1998 U.S. Dist. LEXIS 10135 (S.D.N.Y. July 9, 1998), aff'd, 216 F.3d 228 (2d Cir. 2000).

The procedure governing liquidation of a personal injury claim is set out in section 157(b)(5) of title 28 of the United States Code, which provides

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

The Plan defines "Personal Injury Claim" in section 1.93 as "any Claim against any of the Debtors, whether or not the subject of an existing lawsuit, arising from a personal injury or wrongful death allegation."

The Complaint alleges violations of federal anti-discrimination statutes contained in Title VII of the Civil Rights Act of 1964 and section 1981 of title 42 of the United

---

[2] Section 7.03 of the Plan provides, "Any Personal Injury Claim which has not been liquidated prior to the Effective Date and as to which a proof of claim was timely filed in the Chapter 11 Cases, shall be determined and liquidated in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action was pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction."

6

States Code.[3] The first cause of action in the Complaint is entitled, "Violation of Title VII – Disparate treatment" and specifically references section 703 of Title VII of the Civil Rights Act of 1964, as amended, section 2000-e2 of title 42 of the United States Code.[4] The second cause of action in the Complaint is entitled, "Violation of 42 U.S.C. §1981 – Intentional Discrimination" and specifically references section 1981 of title 42 of the United States Code.[5] The third cause of action is entitled, "Violation of Title VII – Retaliation" and specifically references section 704 of Title VII of the Civil Rights Act of 1964, as amended, section 2000-e3 of title 42 of the United States Code.[6]

In addition, the Complaint states that the Claimant's claims arise under, "Title VII of the Civil Rights Act of 1964, 42 U.S.C. [§§] 2000e et seq[.]," and "42 U.S.C. [§]1981."

Further, the Complaint seeks the following seven types of relief (1) court declaration that the practices alleged are unlawful, issuance of a permanent injunction preventing the conduct alleged, (3) issuance of a permanent mandatory injunction requiring compliance with Title VII, (4) award of back pay, (5) award of compensatory

---

[3] The Court notes that the Complaint contains three causes of action labeled, "Count II," "Count III," and "Count IV." Although there may have been an omission of Count I or the Claimant has mislabeled his particular causes of action, the Court notes that only the mentioned causes of action are relevant to the discussion of whether the Claimant made an allegation of emotional distress as a separate cause of action.
[4] With respect to emotional distress, Count II provides

> The defendant's discriminatory practices described above have denied African American salaried and non-salaried employees promotional opportunities and compensation to which they are entitled, which has resulted in emotional distress and other harm for which they are entitled to compensation.

[5] With respect to emotional distress, Count III provides

> The discriminatory practices described above have denied African American salaried employees promotional opportunities and compensation t o which they are entitled, which has resulted in emotional distress and other harm for which they are entitled to compensation

[6] With respect to emotional distress, Count IV provides

> The defendant's discriminatory practices described above have caused employees harm, including emotional distress and loss of wages.

7

and punitive damages, (6) award of attorneys fees, and (7) order for other and further relief as the court deems just and proper.

Based on the language of the Complaint, the Court finds that the Claimant only seeks compensatory damages for emotional distress. Furthermore, the Complaint only contained causes of action related to Title VII and section 1981 of title 42 of the United States Code, and failed to state a separate cause of action for emotional distress.

However, even if the Complaint contains a cause of action for the intentional infliction of emotional distress, the Court finds that the Claimant has failed to sufficiently allege the necessary elements of a claim for the intentional infliction of emotional distress.

"Meeting the requisite elements of a claim for intentional infliction of emotional distress is a tall order in Mississippi. The inquiry focuses on the conduct of the defendant rather than the physiological condition of the plaintiff." *Jenkins v. Grenada*, 813 F. Supp. 443, 446 (D. Miss. 1993).[7]

---

[7] In considering the Claimant's alleged cause of action for intentional infliction of emotional distress, a conflict of law analysis must first be undertaken to determine which state's substantive law is applicable to determine the requisite elements of a claim for intentional infliction of emotional distress.

In determining the choice of law issue, the federal common law choice-of-law rules would likely apply. *See, e.g., In re Best Products,* 168 B.R. 35, 51 (Bankr. S.D.N.Y. 1994), *aff'd,* 68 F.3d 26 (2d Cir. 1995). The federal common law approach is to employ the law of the jurisdiction with the most significant relationship to the transaction and to the parties. *Id.* (choice of law test for torts under § 145 of the Restatement (Second) of Conflicts of Laws (the "Restatement") is applicable to intentional infliction of emotional distress). Under section 145 of the Restatement, contacts to be taken into account include the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered. Restatement, section 145. Thus, under this analysis, "applicable law" could be the law of the state in which the debtor is incorporated, the transferee's principal place of business is located, the merger was negotiated and consummated, the state where the creditors are located, or the state whose law would provide the most benefit to the creditors as a group. *See Best Products,* 168 B.R. at 52 (stating that the law where the majority of the creditors were located and where the transaction was negotiated and consummated would probably apply).

The Court finds that alleged injury occurred in Mississippi, the relationship between the parties was centered in Mississippi, and at the time the alleged injury occurred, the Debtors' principal place of business was Mississippi. Therefore, under a conflict of law analysis, the Court finds that Mississippi law

8

Under Mississippi law, to recover for intentional infliction of emotional distress, the defendant's conduct must evoke "outrage or revulsion." *Mitchell v. Random House, Inc.*, 865 F.2d 664, 672 (5th Cir. 1989) *See Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss.1981); *see also Burris v. South Central Bell Telephone Co.*, 540 F. Supp. 905, 909 (S.D.Miss. 1982) (conduct should be "extreme and outrageous") (quoting *Restatement (Second) of Torts* section 46 comment (d)).

In the Complaint, the Claimant asserts that, "the defendant's discriminatory practices described … resulted in emotional distress and other harm for which they are entitled to compensation." The Claimant does not allege, however, that the actions of the Debtors evoked outrage or revulsion.

Accordingly, the Court finds that the even if the Complaint contained a cause of action for the intentional infliction of emotional distress, the Claimant failed to sufficiently allege the necessary basis for such a cause of action.

Therefore, the Court finds that the Complaint, the basis for proof of claim 30907, does not contain a "personal injury tort" claim as described under section 7.03 of the Plan or section 157(b)(2)(B) of title 28 of the United States Code.

### B. Relief from the Automatic Stay

The Claimant also argues that under the factors set forth in *Sonnax Indus., Inc. v. Tri Component Products Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1286 (2d Cir. 1990), he is entitled to relief from the automatic stay to continue the cause of action in the Mississippi District Court.

---

would be applicable to any determination of the elements of a cause of action for the intentional infliction of emotional distress.

9

The Debtors argue that the Claimant is not entitled to relief from the automatic stay because section 10.04 of the Plan,[8] labeled "Injunction," (hereinafter referred to as the "Plan Injunction) and other applicable provisions of the Plan dictate that the Court should resolve the matter at issue. The Debtors further argue that the motion for relief from the automatic stay does not satisfy the standard for relief from the Plan Injunction. In addition, the Debtors argue that the Claim Objection is properly before the Court and should be resolved by the Court. Further, the Debtors argue that even if the automatic stay were still in place, the motion for relief from the automatic stay does not satisfy the standard to lift the automatic stay.

The Debtors argue that the *Sonnax* factors are inapplicable because the automatic stay is no longer in place and has been replaced by the Plan Injunction no later than the Effective Date of the Plan on April 20, 2004, pursuant to section 362(c) of the Bankruptcy Code.

Although the Claimant's motion is presented as one for relief from the automatic stay, the Court notes that the automatic stay terminated when the Debtors' plan was confirmed. Since the Plan Injunction went into effect prior to the Claimant's motion for relief from the automatic stay, the Court treats the relief sought by the Claimant as a request to lift or modify the Plan Injunction provided for in the Debtors' October 31,

---

[8] The Plan Injunction states as follows, in pertinent part

> Except as otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest . . . are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against [them] . . . (iv) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan, and (v) taking any actions to interfere with the implementation of the Plan.

10

2003 Confirmation Order (the "Confirmation Order") and the Plan. *See In re Fucilo*, 2002 Bankr. LEXIS 475, 2002 WL 1008935 (Bankr. S.D.N.Y. Jan. 24, 2002)(unreported).

Although the factors set forth in *Sonnax* pertain to determining "cause" with respect to a request for relief from the automatic stay rather than relief from or modification of the Plan Injunction, the Court finds that the same principles of "cause" would also apply in the context of the Plan Injunction. The Court has previously held that "[d]etermining whether relief from the permanent injunction is warranted under appropriate circumstances should be analyzed pursuant to a cause standard." *Id.*

For the reasons set forth below, the Court finds that the Claimant has failed to carry the necessary burden under the factors set forth in *Sonnax* to show cause for modification of the Plan Injunction.[9]

The Bankruptcy Code does not define the meaning of the phrase "for cause." E.g., *Schneiderman v. Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 110 (2d Cir. 2002). In determining whether there is cause to grant relief from the automatic stay, a court in this circuit should examine the factors outlined in *In re Sonnax Indus., Inc.*, 907 F.2d at 1286.

> These factors are
>
> (1) whether relief would result in a partial or complete resolution of the issues,
> (2) lack of any connection with or interference with the bankruptcy case,
> (3) whether the other proceeding involves the debtor as a fiduciary,
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
> (5) whether the debtor's insurer has assumed full responsibility for defending it,
> (6) whether the action primarily involves third parties,
> (7) whether litigation in another forum would prejudice the interests of other

---

[9] The Court notes that factors 3, 6, 8, and 9 are not applicable to the current situation, leaving eight factors for the Court to consider.

11

>creditors,
>(8) whether the judgment claim arising from the other action is subject to equitable subordination,
>(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
>(10) the interests of judicial economy and the expeditious and economical resolution of litigation,
>(11) whether the parties are ready for trial in the other proceeding, and
>(12) impact of the stay on the parties and the balance of harms.

*Id*. (citing *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (hereafter known as the "Sonnax Factor(s)")).

All twelve Sonnax Factors will not be relevant in every case, *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999), nor will a court accord equal weight to each element. *Burger Boys, Inc. v. South St. Seaport Ltd. P'Ship (In re Burger Boys, Inc.)*, 183 B.R. 682, 688 (S.D.N.Y. 1994); *In re New York Medical Group, P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

The burden of proof on a motion to modify the automatic stay is a shifting one. *In re Sonnax Indus., Inc.*, 907 F.2d at 1285. The initial burden rests on the movant to show cause to modify the stay. *In re Bogdanovich*, 292 F.3d at 110; *In re Mazzeo*, 167 F.3d at 142; *In re Sonnax Indus., Inc.*, 907 F.2d at 1285. Only if the movant makes an initial showing of cause does the burden then shift to the party opposing the relief. *In re Mazzeo*, 167 F.3d at 142. Once a legally sufficient basis, or cause, is demonstrated by the movant, the party opposing the relief must prove that it is entitled to the continuing protections of the automatic stay. *In re M.J. & K. Co., Inc.*, 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993). If the movant fails to meet its initial burden of demonstrating cause, relief from the automatic stay should be denied. *In re Bogdanovich*, 292 F.3d at 110; *In re Mazzeo*, 167 F.3d at 142; *In re Sonnax Indus., Inc.*, 907 F.2d at 1285. The

determination whether to modify the automatic stay depends upon the facts of each motion. *In re Bogdanovich*, 292 F.3d at 110.

    a. *Sonnax Factor 1: Whether Relief Would Result in a Partial or Complete Resolution of the Issues*

The Claimant argues that allowing the Mississippi Action to proceed will result in the complete resolution of his claim against the Debtors. The Claimant further asserts that the resolution of the Mississippi Action will result in a final, undisputed liquidated claim.

The Debtors argue that the only way to resolve all of the issues raised by the Proof of Claim is in the context of a claim objection in the Court. The Debtors also argue that allowing the Mississippi Action to proceed in another forum may lead to duplicative litigation because other creditors may object to proof of claim.

Based on the Plan and the Confirmation Order, the Court finds that the threat of duplicative litigation related other creditors objecting to the Proof of Claim is not a concern because the Reorganized Debtors have the exclusive right to make and file objections to claims. Therefore, the Court finds that this Sonnax Factor favors the Claimant.

    b. *Sonnax Factor 2: Lack of Any Connection With or Interference With the Bankruptcy Case*

The Claimant argues that his claim has no connection with the Debtors' reorganization efforts since the resolution of the claim is not necessary to effectuate the Debtors' reorganization.

13

The Debtors argue that the resolution of the Proof of Claim, especially in the amount, if any, the Debtors owe to the Claimant is a core proceeding under sections 157(b)(2)(B) and (C) of title 28 of the United States Code. The Debtors also assert that it is necessary to determine how much the Claimant will be paid, if anything, under the Plan. Furthermore, the Debtors assert that the entire claim objection process, of which this particular claim objection is a part, is directly connected with the bankruptcy proceedings.

The Court finds that the resolution of the Proof of Claim is directly connected with the bankruptcy proceedings and therefore, this Sonnax Factor weighs in favor of the Debtors.

*c. Sonnax Factor 4: Whether a Specialized Tribunal with the Necessary Expertise Has Been Established to Hear the Cause of Action*

Although the Claimant did not address Sonnax Factor 4, the Court notes that the Mississippi District Court is not a specialized tribunal; further no such specialized tribunal is necessary to adjudicate the claims set forth in the Complaint.

Therefore, the Court finds that this factor weighs in favor of the Debtors.

*d. Sonnax Factor 5: Whether the Debtors' Insurer Has Assumed Full Responsibility for Defending It*

The Claimant argues that the Debtors' insurer may hypothetically cover a portion of the claim if it is liquidated at a high enough threshold.

As to this Sonnax Factor, whether the debtor's insurer has assumed full responsibility for defending the Debtors in the instant matter, the Court finds that the

14

Claimant has not provided sufficient information to determine whether there is insurance coverage for the litigation.

The Court finds that the Claimant has failed to establish this Sonnax Factor in his favor, and therefore, this Sonnax Factor favors the Debtors.

*e. Sonnax Factor 7: Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors*

The Claimant argues that allowing the his claim to be liquidated in Mississippi will in no way prejudice the interests of the other creditors on the basis that the liquidation of his claim will not affect the distribution for other creditors and there will be no impact on the administrative expenses of the estate.

The Debtors argue that if claim objections are to be resolved in forums other than the Court, both the Debtors and creditors of the estate will be prejudiced by the added cost and difficulty in obtaining claim objection resolution in many forums.

The Court notes that while the interests of other creditors may be relevant prior to the confirmation of a plan of reorganization, such concerns are not relevant in the instant matter because the Plan has already been confirmed and therefore, the Reorganized Debtors have the exclusive right to make and file objections to claims and it is prejudice to the Reorganized Debtors here that, under the circumstances, should be the focus of the analysis.

Based on the possibility that increased costs associated with litigation in a separate forum would prejudice the interests of the Reorganized Debtors, the Court finds that this Sonnax Factor weighs in favor of the Debtors.

*f. Sonnax Factor 10: The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation & Sonnax Factor 11: Whether the Parties Are Ready for Trial in the Other Proceeding*

The Court notes that each party has combined Sonnax Factor 10 and Sonnax Factor 11 in their pleadings and therefore, the Court will address both Sonnax Factors simultaneously.

The Claimant argues that because of its desire to avoid burdening the Court with, "complex, unique, and time-consuming litigation that could distract the Court from matters pertaining to the Debtors' reorganization efforts," the Court should allow this matter to be resolved in another forum. Furthermore, the Claimant asserts that a significant amount of time and effort has been placed into this matter in Mississippi by the parties and by the Mississippi District Court.

However, the Debtors assert that the Mississippi Action is in the early stages of litigation and the parties are not ready for trial. The Debtors argues that no scheduling order was entered in the Mississippi Action, no case management conference has been scheduled or held, and neither party has taken any discovery. Moreover, the Debtors argue that the Claimant's current attorney did not enter an appearance in the Mississippi Action until February 10, 2004. In addition, the Debtors argue that allowing the Claimant action to proceed in Mississippi would defeat the goal of an efficient and expeditious claims resolution process.

Based on the interests of judicial economy and the expeditious and economical resolution of litigation, and on the showing that the parties are not ready for trial in the

16

Mississippi Action, the Court finds that these Sonnax Factors weigh in favor of the Debtors.

*g. Sonnax Factor 12: Impact of the Stay on the Parties and the Balance of Harms*

The Claimant argues that the impact on the parties and the balance of the harms clearly supports allowing this matter to proceed in the Mississippi District Court because of the time already spent on this case. Furthermore, the Claimant argues that allowing matters to proceed in the Court will duplicate the efforts of the parties, wasting time and money.

The Debtors argue that they would be harmed by the resolution of the Proof of Claim in the Mississippi District Court because they have chosen to reorganize in the Court, and in accordance with the Bankruptcy Code, the resolution of claims objections and related counterclaims is a core matter under sections 157(b)(2)(B) and (C) of title 28 of the United States Code. Further, the Debtors argue that if all claim objections involving non-bankruptcy law were required to be litigated throughout the country rather than in the Court, the additional cost to the Debtors would be substantial.

The Court has previously held that

> [t]he purpose of the injunction, as well as the automatic stay, is to allow the Bankruptcy Court to administer promptly the claims before it, a purpose which would be undermined by constant disruption if separate claims before other courts were permitted to continue until final resolution in the courts, particularly when the claims involve issues of law easily disposed of by the Bankruptcy Court.

*Alan M. Grayson v. WorldCom, Inc., et al.* (*In re WorldCom, Inc.*), 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. 2006).

The Court finds that after balancing the harm to each of the parties, the Court finds that this Sonnax Factor weighs in favor of the Debtors.

After considering the relevant the Sonnax Factors, the Court finds that the Claimant has failed to show cause to modify or grant relief from the Plan Injunction and therefore, the Claimant's motion for relief from the Plan Injunction (see footnote 1) is denied.

### V. Debtors' Motion

The Debtors move to strike the November 2006 Brief. The Debtors argue that the November 2006 Brief is improper and untimely because Claimant has submitted new evidence with this brief beyond the close of discovery.

Rule 12(f) of the Federal Rules of Civil Procedure provides

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

"Unless it is clear that the portion of the pleading sought to be struck has 'no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendant, the complaint should remain intact.'" *Grunwald v. Bornfreund*, 668 F. Supp. 128, 133 (S.D.N.Y. 1987) (citations omitted)

Based on the Court's abovementioned determination that the Claimant did not plead a cause of action for a personal injury tort within the Complaint, the Court finds that the November 2006 Brief is irrelevant and therefore, the Court grants the Debtors' motion to strike the November 2006 Brief.

### VI. Conclusion

Therefore, the Claimant's motion for relief from the automatic stay is denied and the Debtors' motion to strike is granted.

The Debtors are to settle an order consistent with this opinion.

Dated: New York, New York
March 12, 2007

        **s/Arthur J. Gonzalez**
        UNITED STATES BANKRUPTCY JUDGE