UNITED STATES BANKRUPTCY COURT  For Publication
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------
                                                :
In re                                           :  Chapter 11
                                                :
WORLDCOM, INC., *et al.*,                       :  Case No. 02-13533 (AJG)
                                                :  (Confirmed Cases)
             Reorganized Debtors.               :  (Jointly Administered)
                                                :
                                                :
                                                :
---------------------------------------------------------------

OPINION GRANTING IN PART, DENYING IN PART, PERMISSION
TO ASSERT COUNTERCLAIMS

A P P E A R A N C E S

WEIL, GOTSHAL & MANGES LLP
Counsel for Reorganized Debtors
767 Fifth Avenue
New York, NY 10153

    Marcia L. Goldstein, Esq.
    Lori R. Fife, Esq.
    Alfredo R. Perez, Esq.
    Adam P. Strochack, Esq.
        Of Counsel

HULETT HARPER STEWART LLP
Attorneys for Abbott Claimants
550 West C Street, Suite 1600
San Diego, CA 92101

    Kirk B. Hulett, Esq.
        Of Counsel

LAW OFFICES OF ANDREW W. HUTTON
Attorneys for Abbott Claimants
550 West C Street, Suite 1600
San Diego, CA 92101

Andrew W. Hutton, Esq.
Of Counsel

LOWENSTEIN SANDLER PC
Attorneys for Abbott Claimants
65 Livingston Avenue
Roseland, NJ 07068

Michael S. Etkin, Esq.
Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

## I.  INTRODUCTION

On July 21, 2002, and continuing thereafter, WorldCom Inc. and certain of its subsidiaries (hereinafter "WorldCom" or "Reorganized Debtors") filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the Southern District of New York.  Roger B. Abbott ("Abbott") subsequently filed proof of claim number 17111 against WorldCom for $222 million, based on allegations contained in a California state action.[1]  Other parties, who were shareholders of WorldxChange (together with Abbott, the "Abbott Claimants"), also filed proofs of claims against WorldCom based on the allegations in the California state action.[2]  The subject of this opinion is WorldCom's motion for leave to amend its Fifth Omnibus Objection to Proofs of Claim to assert three counterclaims against Abbott for common law contribution, contribution under California Corporations Code section 25505, and equitable indemnity.  For the reasons discussed below, the Court grants permission to assert the equitable indemnity counterclaim and denies permission to assert the contribution counterclaims.

---

[1] See the First Amended Complaint in *Roger B. Abbott, et al., v. John D. Phillips, et al.*, No. 321708 (Cal. Super. Ct. filed June 21, 2001).
[2] WorldxChange shareholders asserted proofs of claim numbered 22573, 22574, 17112, 24819, and 24817.

2

## II. BACKGROUND

A. *Factual Background*

The allegations contained in the California state action concern a corporate transaction in which the Abbott Claimants agreed to merge a company they owned, WorldxChange, with World Access, Inc. ("World Access"), a company that was partially owned by WorldCom. The Abbott Claimants exchanged their shares of WorldxChange for approximately 25 million shares of World Access stock. The agreement to merge was made when World Access's stock was trading at about $23 per share. At the closing of the merger, in December 2000, that stock traded substantially lower – at $3 per share. World Access filed for bankruptcy protection in April 2001. Ultimately, the Abbott Claimants, the former WorldxChange shareholders who sold 100% of their company in exchange for World Access stock, were left with worthless stock.

The Abbott Claimants contend that they were induced into the merger by the expectations that WorldCom was obligated each month to purchase $25 million in services from World Access via a Carrier Services Agreement (the "CSA") and that WorldCom was in fact purchasing that level of service. The Abbott Claimants have alleged that the CSA was actually a sham transaction and that WorldCom and World Access lied about WorldCom's obligation to purchase $25 million in services each month.

In support of its motion for leave to add the counterclaims, WorldCom alleges that Abbott, who began working as "a member of the World Access senior executive team" immediately after WorldxChange signed the merger agreement in February 2000, knew that WorldCom was not able to utilize $25 million a month in services from World

3

Access. WorldCom also alleges that Abbott knew both that WorldCom was making "true up" payments to World Access to make up for the shortfall and that World Access included the "true up" payments in its revenue forecasts and recorded those payments as revenue in its financial statements. Thus, WorldCom argues that if any fraud did occur Abbott knew of it between the signing of the merger agreement and the agreement's closing, making Abbott liable to WorldCom on contribution or indemnity grounds if WorldCom is held liable to the WorldxChange shareholders – the Abbott Claimants.

B. *The Proposed Counterclaims*

The proposed counterclaims that WorldCom seeks to assert are (1) contribution under California Corporations Code section 25505, (2) common law contribution, and (3) equitable indemnity.

### III.  LEGAL STANDARDS

A. *Applicable Federal Rules*

Rule 13(f) of the Federal Rules of Civil Procedure provides that a court may allow a party to amend its pleading to assert a counterclaim if the pleader failed originally to assert the counterclaim through oversight, inadvertence, excusable neglect, or when justice so requires. Bankruptcy Rule 7013 provides that Rule 13 applies in adversary proceedings, which the current proceeding is not. Under Rule 9014, the filing of an objection to a proof of claim commences a contested matter, which the current proceeding is. Rule 9014(c) provides that certain of the Part VII rules apply to contested matters but does not expressly include Rule 7013. However, the Court may direct that any of the other Part VII rules apply, *see* Bankr. Rule 9014(c), and the Court accordingly directs that Rule 7013 applies here.

4

Rule 13(a)'s purpose is to permit a court to decide all related claims in one action, thus avoiding "a wasteful multiplicity of litigation." *In re PCH Assocs.*, 949 F.2d 585, 594 (2d Cir. 1991) (citing 6 C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE & PROCEDURE § 1409, at 46 (1990)). Under Rule 13, parties generally are permitted to amend their pleadings even if there has been a substantial delay in seeking the amendment, unless the movant has acted in bad faith, the amendment will prejudice the non-movant, or the amendment is futile. *See Feitshans v. Kahn*, No. 06 Civ. 2125(SAS), 2007 WL 998400, at *1 (S.D.N.Y. Apr. 02, 2007). When a party seeks leave to amend its answer to assert a counterclaim, Rules 13(f) and 15(a) should be read together. *See Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 360-61 (S.D.N.Y. 2005); *see also Minitti v. Speiser, Krause, Nolan & Granito, P.C.*, Nos. 04 Civ. 7976(DC), 05 Civ. 2210(DC), 2006 WL 3740847, at *10 (S.D.N.Y. Dec. 19, 2006) ("Courts must read Rule 13(f) together with Federal Rule of Civil Procedure 15, which provides that leave to amend a pleading shall be freely given when justice so requires."). Mere delay, absent a showing of bad faith or prejudice, does not justify denial of leave to amend. *See Feitshans*, 2007 WL 998400, at *1; *see also Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y. 1992) (under the Second Circuit's application of Rule 15, the "lateness of a motion to amend [alone] is not a proper basis for denying the application") (*citing Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)). Although Rule 15 requires that leave to amend should be freely granted, it is within the Court's sound discretion whether to grant the request. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

B.  *Futility*

5

It is "well established" that leave to amend a complaint need not be granted when the amendment would be futile. *See Ellis v. Chao*, 336 F.3d 114, 126 (2d Cir. 2003). Within the Second Circuit, an amendment is considered futile if the amended pleading would be subject to a motion to dismiss on some basis. *See Neshewat v. Salem*, 365 F. Supp. 2d 508, 516 (S.D.N.Y. 2005). In evaluating futility, all well-pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader. *See Savitsky v. Mazzella*, No. 98 Civ. 9051, 2004 WL 2454120, at *3 (S.D.N.Y. Nov. 1, 2004) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)).

## IV.  DISCUSSION

The Abbott Claimants attack WorldCom's motion for leave to assert the counterclaims on two main grounds – futility and delay. The Abbott Claimants make several futility arguments. They argue that all of the counterclaims are futile because of a settlement reached between the Abbott Claimants and all of World Access's officers and directors in the underlying California action. They also argue that each of the counterclaims is futile for other reasons addressed below.

A.  *The Settlement Agreement Does Not Bar the Proposed Counterclaims*

The Abbott Claimants argue that a settlement agreement between the Abbott Claimants and World Access's directors and officers in 2005 bars the contribution and indemnity counterclaims pursuant to California Code Civil of Procedure section 877.6. The California state court in the underlying action[3] held after a hearing that the settlement was entered into good faith as per section 877.6.[4] Section 877.6(c) provides

---

[3] *See supra* note 1.
[4] § 877.6(a) provides that "any party to an action in which it is alleged two or more parties are joint tortfeasors or co-obligors on a contract debt is entitled to a hearing on the issue of the good faith of a settlement entered into between the plaintiff and one or more of the alleged tortfeasors or co-obligors."

6

> A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

§ 877.6 (c).

In response, WorldCom argues that section 877.6 is only applicable to settling defendants and tortfeasors but not to settling plaintiffs, Abbott's position in the California settlement. WorldCom cites a California case in support. *See Doose Landscape, Inc. v. Superior Ct.*, 286 Cal.Rptr. 321 (Cal. Ct. App. 1991).

In *Doose Landscape*, a condominium association initially sued a developer for construction defects, and the developer cross-complained against a landscaper for indemnity. 286 Cal.Rptr. at 322. The landscaper then cross-complained against both the developer and the condominium association for indemnity, arguing that if the landscaping contributed to the damage, such damage was caused in part by the condominium association's negligence. *Id.* The condominium association and the developer stipulated to a settlement. *Id.* The condominium association then moved for a determination that the settlement was in good faith pursuant to section 877.6 and for an order barring the landscaper's cross-claims for indemnity. *Id.* The lower court granted the motions. *Id.*

On appeal, the appellate court stated that "we are confronted with the novel situation where a settling plaintiff seeks the protection of a good faith settlement to protect itself from cross-claims by a cross-defendant for equitable indemnity." *Id.* The appellate court reversed, finding that section 877.6 "only acts to bar claims against a *settling tortfeasor* . . . . [and t]he court was without jurisdiction under the statutory provision to bar cross-claims for equitable indemnity against the *settling plaintiff*." *Id.*

7

(emphasis in original).  Further, that court stated the "statute provides no bar for cross-claims against the settling plaintiff." *Id.*

The Court finds that *Doose Landscape* squarely answers the question of whether section 877.6 applies to a settling plaintiff in WorldCom's favor, as the *Doose Landscape* court held that section 877.6 "provides no bar for cross-claims against the settling plaintiffs."  At oral argument, the Abbott Claimants did not successfully distinguish *Doose Landscape*.  Also, other authority supports the propositions that section 877.6 was not intended to bar contribution and indemnification claims against settling plaintiffs and that the statute should not be interpreted broadly.  *See Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 698 P.2d 159, 168 (Cal. 1985) (one of the main goals of section 877.6 is "allocating costs equitably among multiple tortfeasors"); *see also Bob Parrett Constr. Co. v. Superior Ct.*, 45 Cal.Rptr.3d 250, 255 (Cal. Ct. App. 2006) (section 877.6 was adopted to encourage settlements and to permit the equitable allocation of damages' it applies when the fundamental requirements of the statute are met."); *cf. Arizona Pipeline Co. v. Superior Ct.*, 27 Cal.Rptr.2d 118, 124 (Cal. Ct. App. 1994) (a court should not rewrite 877.6 to apply more broadly than intended).

B.  *California Does Not Recognize Common Law Contribution*

Although WorldCom proposes a counterclaim for common law contribution, the Abbott Claimants correctly point out that California does not recognize common law contribution.  Instead, after not recognizing the doctrine for decades, California codified the contribution remedy in Code of Civil Procedure section 875 in 1957.  *See American Motorcycle Assn. v. Superior Court*, 20 Cal.3d 578, 578 P.2d 899 (Cal. 1978); *Coca-Cola Bottling Co. v. Lucky Stores, Inc.*, 14 Cal.Rptr.2d 673, 677 n.6 (Cal. Ct. App. 1992).  In

8

reply, WorldCom argues that this is a minor defect in pleading and the counterclaim sufficiently identifies the cause of action. The Court will thus assume that WorldCom intends to assert a counterclaim for contribution under California's contribution statute, addressed below.

> C. *WorldCom Cannot Assert a Counterclaim Pursuant to California's Contribution Statute*

As noted above, contribution was not recognized at common law but was adopted in California by statutory enactment in 1957.[5] Section 875 of the state's Code of Civil Procedure provides:

> (a) Where a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided.
>
> (b) Such right of contribution shall be administered in accordance with the principles of equity.
>
> (c) Such right of contribution may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof. It shall be limited to the excess so paid over the pro rata share of the person so paying and in no event shall any tortfeasor be compelled to make contribution beyond his own pro rata share of the entire judgment.
>
> (d) There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person.
>
> (e) A liability insurer who by payment has discharged the liability of a tortfeasor judgment debtor shall be subrogated to his right of contribution.
>
> (f) This title shall not impair any right of indemnity under existing law, and where one tortfeasor judgment debtor is entitled to indemnity from another there shall be no right of contribution between them.

---

[5] At common law there was no right to contribution among tortfeasors in California. *See, e.g., Lamberton v. Rhodes-Jamieson*, 245 Cal.Rptr. 162, 164 (Cal. Ct. App. 1988). As a result, a plaintiff could choose to satisfy an entire judgment from one tortfeasor "who would have no equitable recourse against the others." *Id.* The California Legislature "set out to lessen the harshness of this doctrine by enacting the contribution statutes" in 1957. *Id.*

9

> (g) This title shall not impair the right of a plaintiff to satisfy a judgment in full as against any tortfeasor judgment debtor.

There are three reasons, related to some extent, why a contribution counterclaim under section 875 should not be permitted at the current time. First, such a counterclaim would be unripe as the right of contribution comes into existence only *after* a judgment has been entered. *See Federal Agr. Mortg. Corp. v. It's A Jungle Out There, Inc.*, No. C 03-3721, 2005 WL 3325051, at *36 (N.D. Cal. Dec. 7, 2005) (declaring third-party claims for contribution to be "unripe at this time because '[a] right of contribution can come into existence only after rendition of a judgment declaring . . . more than one defendant jointly liable to the plaintiff.'") (citation omitted); *Western/Scott Fetzer Co. v. Braden Partners, LP*, No. C-03-4114, 2006 WL 2263827, at *9-10 (N.D. Cal. Aug. 7, 2006) (holding that contribution claims were unripe because no judgment had been entered). A second barrier is that a condition under the contribution statute is that there must be a judgment rendered jointly against *two or more* defendants. *See, e.g., General Electric Co. v. State of Cal. ex rel. Dept. Pub. Works*, 108 Cal.Rptr. 543 (Cal. Ct. App. 1973) ("It has now been repeatedly held that the condition of this statute – a money judgment rendered jointly against two or more defendants – must exist before either may assert a right to contribution from the other."). Here, WorldCom, a defendant, is attempting to bring in a cross-defendant for contribution, which is not permitted according to California case law. *See id.* ("Cross-complainants' argument, that section 875 is consistent with their right to now bring the state and county cross-defendants into the action, with the right of contribution to be perfected after judgment is also invalid. There is no such right in one joint tortfeasor to himself bring in the others.").

Finally, a right to contribution under section 875 does not exist if a right to indemnity has been established. As will be discussed further in Section IV(f) below, since WorldCom will be permitted to assert the indemnification counterclaim, it could be a waste of judicial resources to simultaneously consider a contribution counterclaim that could be rendered moot. For the reasons stated above, WorldCom will not be permitted to assert a counterclaim for contribution under section 875.

D. *WorldCom's Counterclaim for Contribution Under Cal. Corp. Code § 25505*

WorldCom's second proposed counterclaim is for contribution under California Corporations Code section 25505. The Abbott Claimants argue that the section is not applicable because it only permits a corporation to seek contribution from its *own* officers, directors, or control persons. As Abbott never held such a position with WorldCom, the Abbott Claimants argue that the statute is not applicable. The Abbott Claimants point to the statute's first sentence – "A corporation which is liable under this chapter shall have a right of indemnification against any of its principal executive officers, directors, and controlling persons whose willful violations of any provision of this law gave rise to such liability." WorldCom argues that the statute's second sentence shows that the statute does apply to the circumstances of the case. That sentence reads – "All persons liable under this chapter shall have a right of contribution against all other persons similarly liable, based upon each person's proportionate share of the total liability . . . ."

Although there is no case found that directly addresses the relevant issues raised by the statute, the Court agrees with WorldCom's interpretation. WorldCom is seeking *contribution* under the statute; the sentence in the statute that the Abbott Claimants rely

11

on deals with a corporation's right of *indemnification*. That the statute provides *both* indemnification and contribution is evident from the statute's language addressing each in the first two sentences. *See also Employers Ins. of Wausau v. Musick, Peeler, & Garrett*, 948 F. Supp. 942, 945 (S.D. Cal. 1995) ("the Corporations Code provides for its own system of contribution *and* indemnification") (emphasis added). Such a right of contribution for a claim based on the California Corporate Securities Act would not conflict with the Court's analysis of contribution under section 875, discussed above. The statutes govern two distinct rights of contribution. *See Harrison v. Sheats*, 608 F. Supp. 502, 505-06 (E.D. Cal. 1985) (stating that "[s]ince this section [§ 25502] was added to the California code eleven years after Sections 875 and 877, it may be inferred that the legislature intended this section to govern all actions founded on the California Corporate Securities Act, and that said action would not be controlled by Sections 875, *et seq.*, of the Code of Civil Procedure.").

Although the Court decides that WorldCom is not precluded from seeking contribution under section 25505, the Court decides, as it did for the section 875 contribution counterclaim, that WorldCom should not be permitted to assert such a claim until after resolution of the indemnification counterclaim, discussed below. Thus, WorldCom cannot add the section 25505 counterclaim but, of course, remains free to assert it after judgment is rendered in the underlying action. Although it is unclear whether section 25505 requires a judgment to be rendered before a contribution claim can be asserted, the scant authority found suggests that WorldCom must be found liable before it could assert a right to contribution. *See Nelson v. Quimby Island Reclamation Dist. Facilities Corp.*, No. C-77-0784No. C-80-0477, 1980 WL 1405 (N.D. Cal. April 25,

12

1980) (stating that under state securities laws, a cause of action for contribution does not arise "at least" until the party seeking relief has previously been found to be liable). As to whether the statute contains a similar bar as section 875 on the co-existence of a right of contribution with a right to indemnification, *see* discussion below at § IV(f), the Court does not need to address the issue at this juncture.

E.  *WorldCom's Indemnification Counterclaim Can Be Asserted*

Although WorldCom cannot currently bring in a purported joint tortfeasor under a contribution counterclaim, the counterclaim for indemnity can be asserted. The distinction in California between contribution and indemnification, while "more formalistic than substantive," *American Motorcycle Assn.*, 20 Cal.3d 578 at 591, matters here. As one court has explained, "[i]ndemnity either imposes the entire loss on one of two or more tortfeasors or apportions it on the basis of comparative fault. Contribution, on the other hand, is a creature of statute and distributes the loss equally among all tortfeasors." *See Coca-Cola Bottling*, 11 Cal.App.4th at 1378. While indemnification "requires a determination of fault on the part of the alleged indemnitor," contribution "requires a showing that one of several joint tortfeasor judgment debtors has paid more than a pro rata share of a judgment." *Id.*

Indemnification in California is no longer a matter of "all-or-nothing." *See Baird v. Jones*, 27 Cal.Rptr.2d 232, 234 (Cal. Ct. App. 1993). In *American Motorcycle*, the California Supreme Court recognized the doctrine of comparative indemnity and "concluded that . . . the equitable indemnity doctrine should be modified to allow indemnity among multiple tortfeasors based on comparative fault." *Id.* at 235. The

doctrine is a "matter of fairness" and "is applied to multiple tortfeasors to apportion loss in relation to their relative culpability." *Id.* at 235-36.

The Abbott Claimants argue that the right to indemnification is only for an injured party, who without active fault of their own, is compelled to pay for damages caused by others. If found liable, WorldCom would be an active participant in the wrongdoing, Abbott argues, thus precluding the indemnification remedy.

The Abbott Claimants cite cases predating *American Motorcycle* for their arguments on "active fault." As discussed, California has adopted "comparative equitable indemnity" which changes the active fault requirement. *See, e.g., In re First Alliance Mortg. Co.*, 471 F.3d 977, 1005 (9th Cir. 2006) ("California law does allow for comparative equitable indemnification among joint intentional tortfeasors."). Furthermore, as WorldCom argues, it is not clear that WorldCom would be liable on a theory that they acted intentionally or willfully.

F.  *The Contribution Counterclaims Should be Stayed Pending Resolution of the Indemnification Counterclaim*

In addition to the above stated reasons for not deciding contribution claims until liability is established, other reasons exist for allowing only the indemnification counterclaim to be asserted. For one, section 875(f) prohibits contribution if a right to indemnity has been established. § 875(f). *See also Coca-Cola Bottling*, 11 Cal.App.4th at 1379 (a defendant cannot recover under both indemnification and contribution.). The resolution of the indemnification issue, then, may make any contribution counterclaim moot, contributing to judicial efficiency. Since *American Motorcycle* approved the use of counterclaims for comparative indemnification, other California courts and parties have taken the more streamlined approach decided upon by the Court. *See Coca-Cola*

14

*Bottling*, 11 Cal.App.4th at 1379 (stating that in view of the subordination of contribution to the right of indemnity under § 875, "a resolution of the loss-sharing claims of multiple tortfeasors are [sic] most often completely resolved by a comparative indemnification cross-complaint in the underlying action rather than by a post-judgment claim for contribution"); *see also Lamberton v. Rhodes-Jamieson*, 199 Cal.App.3d 748, 752, 245 Cal.Rptr. 162 (Cal. Ct. App. 1988) ("The introduction of the [*American Motorcycle*] cross-complaint quickly made the subject of postjudgment contribution largely academic, since most defendants seized the opportunity to file prejudgment cross-complaints and have their proportionate responsibilities determined in the same action.").

      G.  *The Abbott Claimants Have Not Shown Impermissible Prejudice*

As an explanation for not seeking to assert the counterclaims earlier, WorldCom argues that "the extent of Abbott's involvement in World Access's affairs started to become more clear" in the first half of 2006, upon the review of voluminous discovery produced by the Abbott Claimants.  The standard under Rule 15, as stated above, is that delay, absent a showing of bad faith or prejudice, does not justify denial of leave to amend.  The Abbott Claimants have not shown they will be prejudiced beyond arguing that "discovery may have to be reopened" and "new experts may have to be called."

The Second Circuit has set forth three main considerations to determine what constitutes impermissible prejudice in the context of a Rule 15(a) motion – "whether the assertion of the new claim would:  (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in

15

another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citations omitted).

As WorldCom has provided an adequate explanation for its delay, the Abbott Claimants must make a greater showing of prejudice. *See American Medical Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2006 WL 3833440, at *6 n.10 (S.D.N.Y. Dec. 29, 2006) ("In assessing the degree of prejudice required, the *Block* court observed that the required demonstration of prejudice varies inversely with the period of unexplained delay in seeking the amendment.").

Permitting WorldCom to amend its pleading will inevitably place some additional burden on the opposing party, but courts have consistently held that such a burden does not constitute impermissible prejudice. *See id.* Furthermore, WorldCom effectively argues that such discovery will need to be undertaken regardless of whether the counterclaims are permitted, as WorldCom would retain the ability to assert a claim to shift liability to Abbott after any judgment against it is entered. Also, this case is not on the eve of trial, another consideration under the prejudice analysis, *see id.*, and although a the Abbott Claimants have moved for summary judgment, their motion was filed after WorldCom moved for leave to amend. *Cf. Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (holding that a proposed amendment is "especially prejudicial" when parties have completed discovery and the non-movant has filed a motion for summary judgment). Considering all of the above, the Court finds that allowing the proposed counterclaim for indemnity should not be denied because of prejudice to the Abbott Claimants.

## V. CONCLUSION

Based on the foregoing, the Court grants permission for WorldCom to amend its objection to add a counterclaim for equitable indemnity but denies permission to add the contribution counterclaims.

WorldCom should settle an order consistent with this opinion.

Dated: New York, New York
      July 18, 2007

                                      **s/Arthur J. Gonzalez**
                                      UNITED STATES BANKRUPTCY JUDGE