**UNITED STATES BANKRUPTCY COURT**      FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| WORLDCOM, INC., *et al.*, | : | Case No. 02-13533 (AJG) |
| | : | |
| Reorganized Debtors. | : | (Confirmed) |
| | : | |
| _____ | : | |

**OPINION REGARDING MCI COMMUNICATIONS CORPORATION'S
MOTION FOR SUMMARY JUDGMENT AND
MOTION FOR PROTECTIVE ORDER STAYING DISCOVERY AND
GENERAL PHYSICS CORPORATION'S AND GP STRATEGIES
CORPORATION'S CROSS-MOTION FOR DISCOVERY**

**APPEARANCES**

WEIL, GOTSHAL & MANGES LLP
Counsel for Reorganized Debtors
767 Fifth Avenue
New York, NY 10153

      Alan R. Kusinitz, Esq.
          Of Counsel

700 Louisiana Street, Suite 1600
Houston, TX 77002

      Alfredo R. Perez, Esq.
          Of Counsel

GIBBONS, DEL DEO, DOLAN,
 GRIFFINGER & VECCHIONE PC
Counsel for MCI Communications Corporation
1 Riverfront Plaza
Newark, NJ 07102

      David J. Sheehan, Esq.
          Of Counsel

One Penn Plaza
New York, NY 10168

  Jennifer A. Gelshenen, Esq.
    Of Counsel


DUANE MORRIS LLP
Counsel for General Physics Corporation and GP Strategies Corporation
1540 Broadway
New York, NY 10036-4086

  Fran M. Jacobs, Esq.
  Rosemary Halligan, Esq.
    Of Counsel


ARTHUR J. GONZALEZ
United States Bankruptcy Judge


  Before the Court is MCI Communications Corporation's ("MCI") Motion for Summary Judgment and Motion for a Protective Order Staying Discovery, dated February 22, 2002 (the "Summary Judgment Motion"). MCI filed the Summary Judgment Motion in the Supreme Court of the State of New York, County of New York (the "State Court"), prior to the commencement of the chapter 11 cases of the above-referenced debtors and reorganized debtors (collectively, the "Debtors"). The motion has arisen in conjunction with respect to the claims of General Physics Corporation and GP Strategies Corporation (hereinafter referred to collectively by the term "General Physics") filed in the Debtors' cases.[1] MCI, one of the Debtors, seeks summary judgment against General Physics in relation to General Physics's verified complaint against MCI, among others, seeking damages for fraud (the "Complaint").

---

[1] The Court will use the full name of the corporation when referring to the corporate entities separately, "General Physics Corporation" and "GP Strategies Corporation."

Upon review of the pleadings and arguments made at the hearing on this matter, the Court finds that (i) General Physics has failed to plead one of the necessary elements of fraud with particularity, (ii) certain of General Physics's claims with respect to statements made by MCI employees allegedly acting on behalf of MCI to mislead General Physics with respect to whether Systemhouse (as defined below) was to be sold to EDS (as defined below) are not barred by the language contained in the agreements relating to the underlying transaction, and (iii) General Physics has not met the standard necessary to compel further discovery with respect to fraud, but the parties will be permitted to continue discovery in preparation for trial with respect to the statements made by MCI employees allegedly acting on behalf of MCI to mislead General Physics regarding the sale of Systemhouse.  The Summary Judgment Motion is therefore granted in part and denied in part.[2]   General Physics's cross-motion to compel discovery is granted in part and denied in part.

## I.  JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this Court's Order Confirming Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated October 31, 2003.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.  BACKGROUND

On or about January 1, 2001, General Physics filed the Complaint in the State Court, seeking actual damages in the aggregate amount of $182,387,000, plus interest,

---

[2]   The Summary Judgment Motion also seeks a protective order staying discovery while it is pending. Under the present circumstances, the request for a protective order is moot.  The treatment of discovery with respect to this matter is discussed below.

costs, and attorneys' fees, and punitive damages in an amount to be determined at trial.

The Complaint was based upon allegations of fraud on the part of several parties,

including MCI[3], in relation to General Physics's purchase of Learning Technologies

("LTI"),[4] an unincorporated indirect subsidiary of MCI.  Prior to the sale, LTI operated as

an unincorporated division of an entity variously referred to as either SHL Systemhouse

Co. in Canada and the United Kingdom or MCI Systemhouse Corp. in the United States

(together, "Systemhouse").  The entities comprising Systemhouse were separately

incorporated direct subsidiaries of MCI Telecommunications Corporation, which was in

turn a direct subsidiary of MCI.  (Summary Judgment Motion, 3.)

General Physics alleges that MCI had an active role in the proposed sale of LTI

and arranged for MCI's in-house lawyers to oversee the transaction.  (Complaint, ¶ 11.)

A Confidential Information Memorandum circulated by Systemhouse in December of

1997 (the "Offering Memorandum") indicated that LTI's relationship with other

businesses owned by Systemhouse accounted for $6.7 million in revenue – 13.5% of

LTI's total revenue – in 1997.  (Complaint, ¶ 16.)  After receiving a copy of the Offering

Memorandum in January of 1998, General Physics decided to pursue the acquisition of

LTI.  (Complaint, ¶ 17.)  In the Complaint, General Physics claims that in March of 1998

MCI provided General Physics with a document that was represented to be the 1998

budget for the United Kingdom ("U.K.") operations of LTI (the "Altered Budget").

(Complaint, ¶ 20.)  The Altered Budget, which was broken down by month, indicated

---

[3]   In addition to MCI, General Physics filed the Complaint against Electronic Data Systems Corporation
("EDS"), as successor in interest to SHL Systemhouse Co., MCI Systemhouse Corp., SHL Computer
Innovations, Inc. and SHL Technology Solutions Limited; EDS Canada Inc. f/k/a EDS of Canada Ltd. and
successor by amalgamation to SHL Systemhouse Co., EDS/SHL Corporation f/k/a MCI Systemhouse
Corp.; EDS Innovations, Inc., f/k/a SHLL Computer Innovations, Inc.; SHL Technology Solutions Limited
(collectively, the "EDS Defendants," and together with MCI, the "Defendants").

[4]   LTI provided training technology and had operations in Canada, the United Kingdom, and the United
States.

that the U.K. operations of LTI would generate revenue of £570,100 in January of 1998,
£1,001,000 in February of 1998, and £1,250,000 in March of 1998.  The Altered Budget
projected a total of approximately £15,000,000 from the U.K. operations of LTI for 1998.
(Complaint, ¶ 20.)  On or about March 20, 1998, the Defendants provided General
Physics Corporation with the actual results of LTI's U.K. operations for January and
February of 1998, which closely approximated the amounts contained in the Altered
Budget.  Based on this information, General Physics assumed that the Altered Budget
was a reliable and accurate forecast of the amount of revenue that could be expected for
the remainder of 1998.  (Complaint, ¶ 21.)  General Physics later discovered that the
Defendants had prepared a budget in relation to LTI in late 1997 or early 1998 (the
"Original Budget").  (Complaint, ¶ 22.)  Although both the Altered Budget and the
Original Budget projected that year-end revenue for LTI's U.K. operations would be
approximately £15,000,000 for 1998,[5] the Original Budget had projected revenue in the
amount of £865,000 for January 1998, £1,169,000 for February 1998, and £1,514,500 for
March 1998, which represented a three-month total approximately £727,400 higher than
that contained in the Altered Budget.  (Complaint, ¶ 22.)  General Physics alleges that the
Defendants created the Altered Budget to conceal how poorly the U.K. operations of LTI
were performing during 1998 by "replac[ing] the projected revenue for the first quarter of
1998 in the Original Budget, which they knew the UK operation would not achieve, with
numbers approximating the actual revenue results for January and February of 1998,
which Defendants then knew, and the then expected revenue result for March of 1998,
which Defendants were then accurately able to predict.  This was done to eliminate any

---

[5]  As noted below, the actual 1998 revenues from the U.K. operation fell far short of £15,000,000.

significant variance between actual and budget for the first quarter and make the

[Altered] Budget look reliable."  (Complaint, ¶ 23.)

General Physics claims that the Defendants continued to assure it that "the UK

operation was performing on budget and was on track to generate £15,000,000 in revenue

in 1998, which assurances were borne out by the actual results General Physics was

shown."  (Complaint, ¶ 27.)  The Defendants did not disclose the existence of the

Original Budget to General Physics, and General Physics asserts that had it been aware of

the Original Budget or that the Altered Budget was prepared from actual revenue results,

it would not have proceeded with the acquisition of LTI.  (Complaint, ¶ 28.)

On or about March 27, 1998, General Physics submitted a formal bid to acquire

LTI, which was accepted by Systemhouse on April 3, 1998.  General Physics claims that

in-house attorneys for MCI handled the transaction for Systemhouse, and thereby they

were able to dictate both the terms of the transaction and the information provided to

General Physics.  (Complaint, ¶ 30.)

Soon after General Physics's bid was accepted, a press article stated that MCI

planned to sell Systemhouse to EDS.  (Complaint, ¶ 32.)  Concerned with the impact

such sale could have on LTI, General Physics inquired with Defendants regarding

whether a sale was planned.  (Complaint, ¶ 32.)  According to General Physics,

"Defendants represented that Old MCI did not intend to sell Systemhouse to EDS and

that, if General Physics purchased Learning Technologies, General Physics could

therefore be assured of continuing to receive Systemhouse business in the future."

(Complaint, ¶ 32.)  General Physics specifically alleges that an employee of MCI,

Kathleen Morgan, Esq. ("Morgan"), denied rumors that MCI was in discussions to sell

6

Systemhouse to EDS when confronted with them by John C. McAuliffe, General

Physics's president.  (Memorandum of Law in Opposition to the Motion of MCI

Communications Corporation for Summary Judgment and a Stay, and in Support of

General Physics's Cross-Motion to Compel, 17 (the "Opposition"); *see also* Affidavit of

John C. McAuliffe in Opposition to Defendants' Motion and In Support of Plaintiffs'

Cross-Motion, ¶ 29.)   Further, Systemhouse agreed to designate General Physics as its

exclusive preferred provider of training services and to promote its relationship with

General Physics.  (Complaint, ¶ 33.)  "To satisfy this obligation, Systemhouse agreed that

it would either propose that it provide services to its customers with General Physics as

its subcontractor or refer its customers to General Physics so that General Physics could

contract directly with those customers.  Systemhouse was to receive a commission for the

business General Physics obtained pursuant to the preferred provider agreement."  (*Id*.)

Systemhouse refused General Physics's request to guarantee that the business would

continue as part of the acquisition of LTI.  (Complaint, ¶ 34.)  According to the

Complaint, Defendants countered that a guarantee was not necessary because financial

incentives built into the preferred provider agreement were sufficient to ensure the

business would continue.  (*Id*.)  Based on the Defendants' representations, General

Physics agreed that the preferred provider agreement would terminate if Systemhouse

were to be subsequently sold.  (*Id*.)

General Physics acquired LTI from Systemhouse on June 16, 1998 and began

operating the LTI business at that time.[6]  After the transaction's closing, the U.K.

operation performed substantially below budget, generating only £10,908,000 in revenue

---

[6]  Financing was provided to General Physics by plaintiff GP Strategies Corporation, which funded the
acquisition by borrowing under a revolving credit agreement and advancing the funds to General Physics,
in addition to acting as co-obligor of a term loan to a subsidiary of General Physics.  (Complaint, ¶ 43.)

in 1998, £4,485,000 less than the Altered Budget predicted.  (Complaint, ¶ 48.)  Also,

General Physics did not receive new business from Systemhouse.  In April of 1999, MCI

announced that it had sold Systemhouse to EDS.  In September of 2000, General Physics

shut down both the U.K. operations and Canadian operations of LTI as a result of losses.

In 2000, General Physics discovered the Original Budget.

General Physics maintains that the Defendants made three misrepresentations by

(1) providing them with the Altered Budget for LTI's U.K. operations, (2) failing to

disclose that they were projecting a budget shortfall that would eliminate the entire year's

profit for LTI's U.K. operations while simultaneously falsely assuring the plaintiffs that

they expected LTI U.K. to meet its budget numbers, and (3) falsely representing to the

plaintiffs that MCI was not discussing the sale of its Systemhouse subsidiaries to EDS

"even though it was already doing so."  (Opposition, 1).

In response to the Complaint, the EDS Defendants separately petitioned the State

Court for summary judgment to dismiss the Complaint as against them pursuant to

Section 3212 of the New York Civil Practice Law and Rules (the "CPLR").  On June 6,

2005, an order was issued granting partial summary judgment in favor of the EDS

Defendants, dismissing the fraud claims against the EDS Defendants to the extent that the

claims were based upon alleged misrepresentations relating to the sale of Systemhouse.

The remainder of the action against the EDS Defendants, however, continues in the State

Court.[7]

---

[7]   The State Court action involves the EDS Defendants and no longer involves MCI.  The decisions of the State Court therefore do not have direct bearing on the issues at hand.

## III. PARTIES' CONTENTIONS

**A.**    ***Motion for Summary Judgment***

In its Summary Judgment Motion, MCI argues that General Physics must pierce the corporate veil in order to hold it accountable.  However, it is now apparent to the Court and both parties that General Physics is not proceeding under a veil-piercing theory, under which General Physics would have to show MCI dominated another party.  Instead, General Physics claims that MCI had direct involvement in the fraud.  At oral arguments, MCI's counsel explained that it included that argument because it "assumed" that General Physics was pursuing that theory.  (Hr'g Tr. 6:6 – 6:11, Dec. 13, 2005.)  For that reason, the Court does not need to further discuss the inapplicable doctrine of piercing the corporate veil.

MCI argues that it was not involved in the sale of LTI, and the extent of MCI's involvement was to "loan" one of its in-house attorneys, Morgan, to assist Systemhouse with the transaction.  (Summary Judgment Motion, 5, 14.)  MCI points out that Morgan considered herself to be outside counsel and the Systemhouse entities to be her clients in the transaction.  (*Id.* at 14.)

MCI further argues that General Physics's claim of an oral representation that was alleged to have been made with regard to Systemhouse not being sold is barred as a matter of law due to provisions contained in the Asset Purchase Agreement, dated June 3, 1998 (the "APA"), and the Preferred Provider Agreement, dated June 3, 1998 (the "PPA")[8].  Specifically, Section 11.6 of the APA contains an Integration Clause,[9] which

---

[8] General Physics does not dispute that the PPA and the APA should be interpreted as one instrument. Section 11.6 of the APA states in part "This Agreement, including the other documents referred to herein . . . contain the entire Agreement between the parties . . . ."  The PPA was specifically referred to in the APA at Section 6.5.  The instruments, which refer to each other, and which were executed contemporaneously,

states that the parties to the APA relied solely on representations and warranties in the APA. Additionally, MCI argues that provisions in both the APA and PPA relate to the sale of Systemhouse, indicating to MCI that the parties had contemplated, discussed, and negotiated the transaction with the potential sale of Systemhouse in mind. (Summary Judgment Motion, 15.)

For example, section 10.3 of the PPA states "Notwithstanding anything to the contrary contained herein, in the event of a change of control of SHL Systemhouse Co. or MCI Systemhouse Corp. to a non-affiliated person . . . the terms of this Agreement and the Schedules and Exhibits hereto shall be automatically amended." PPA § 10.3. The automatic amendments relate to what effect a change in control of Systemhouse would have on General Physics's customers and non-customers. One subsection of section 10.3 stated "General Physics will no longer be identified within the Territory as SYSTEMHOUSE's 'Preferred Provider.'" PPA § 10.3(iii).

Section 11.2(A)(3) of the APA states that the non-compete provisions of Section 11.2 would be void "in the event of a change of control of SHL Systemhouse Co. or MCI to an non-affiliated Person." The non-compete provisions under Section 11.2 had a duration of three years beginning at the transaction's closing date. § 11.2(A).

---

by the same parties, for the same purpose, should be read together. *See BWA Corp. v. Alltrans Express U.S.A., Inc.*, 112 A.D.2d 850, 852, 493 N.Y.S.2d 1 (1st Dep't 1985).

[9]   The Integration Clause states

> This Agreement, including the other documents referred to herein (including, without limitation, the Confidentiality Agreement), contain the entire Agreement between the parties with respect to the transactions contemplated hereunder and thereunder and supercede all prior arrangements or understandings with respect thereto, written or oral, other than documents referred to herein. The parties hereto in executing and delivering, and in carrying out the provisions of this Agreement are relying solely on the representations, warranties and covenants contained in this Agreement or in any writing delivered pursuant to provisions of this Agreement, and not upon any representation, warranty, covenant, or information, written or oral, made by any person other than as specifically set forth herein or therein.

APA § 11.6.

MCI further argues that the Integration Clause and the "As Is" Clause[10] contained in the APA bar the claim relating to the Altered Budget. (Summary Judgment Motion, 19). Furthermore, MCI argues that General Physics cannot establish the elements of fraud as a matter of law because (1) the Altered Budget was not intended to deceive but was instead a diagnostic tool, (2) General Physics cannot show scienter because there was no intent to deceive, (3) the amount of the purported misrepresentation was too small to be material, and (4) General Physics could not show reasonable reliance on the purported misrepresentations because it had unlimited access to Systemhouse's financial information and the information received by General Physics precluded reliance on the Altered Budget. (Summary Judgment Motion, 19). At oral arguments, MCI went further by stating that there are no allegations that the "loaned" MCI attorneys made any misrepresentations regarding the budgets to General Physics. (*See* Hr'g Tr. 7:17 – 8:9, Dec. 13, 2005.) Additionally, MCI argues that discovery must be stayed pursuant to Rule 3214(b) of the CPLR, which stipulates that service of a motion for summary judgment stays discovery. In the alternative, MCI requests that a protective order staying discovery during the pending of the Summary Judgment Motion should be granted. (Summary Judgment Motion, 28-29).

---

[10] The "As Is" Clause states
> WITH RESPECT TO ALL INVENTORY AND PRODUCT CONVEYED PURSUANT TO THIS AGREEMENT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES OF SELLERS SET FORTH IN THIS AGREEMENT, THE SALE OF THE INVENTORY AND PRODUCT IS MADE "AS IS, WHERE IS", AND SELLERS SHALL NOT BE DEEMED TO HAVE MADE ANY FURTHER REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, NOW OR HEREAFTER, AS TO THE VALUE, CONDITION, DESIGN, OPERATION, MERCHANTABILITY, QUALITY OR WORKMANSHIP, FITNESS FOR USE FOR A PARTICULAR PURPOSE, MAINTENANCE OR MARKETABILITY OF ANY OF THE INVENTORY OR PRODUCT.

APA § 5.11(A).

**B.**    *Opposition to Motion for Summary Judgment*

In the Opposition, General Physics claims that material issues of fact exist and summary judgment must be denied.  (Opposition, 22.)  In the Opposition, General Physics raises a new theory of liability not put forward by either count in the Complaint, specifically that MCI can also be held liable for assisting in a scheme to defraud General Physics.  (Opposition, 24.)  Furthermore, General Physics asserts that MCI cannot establish it is entitled to judgment as a matter of law.

Specifically, argues General Physics, the Integration Clause does not bar its claim based upon the oral representation because the clause is a general merger clause and does not specifically disclaim reliance on representations regarding the sale of Systemhouse.  General Physics argues that the facts regarding the sale of Systemhouse were peculiarly within MCI's knowledge, making the Integration Clause inapplicable.  Further, General Physics argues that MCI cannot rely on the Integration Clause, even if it had contained a specific disclaimer, because MCI was not a party to the Agreement.  (Opposition, 26.)  In regard to the change of control provisions in the APA and PPA, Systemhouse argues that such provisions are incompatible with the idea that MCI was then in the process of selling Systemhouse.  (Opposition, 32.)  General Physics argues that the provisions contemplating a potential future sale of Systemhouse do not cleanse what MCI misrepresented to it – that, at the time of the LTI transaction, MCI was not discussing the sale of Systemhouse to EDS.

General Physics points out that the "As Is" Clause relates only to inventory and products and that the "Investigation of Buyer" Clause in section 5.2 of the APA did not provide General Physics with full access to documents, but rather access to the personnel

and information the Defendants chose to provide.  Furthermore, General Physics argues

that the APA contained no acknowledgement that it had full access to information and

that General Physics rejected such a provision during the negotiation of the transaction

when it had been proposed by MCI.  (Opposition, 33.)  In addition, General Physics

argues that MCI cannot show that no genuine issue of fact exists as to the elements of

General Physics's fraud claim.  (Opposition, 34.)  Lastly, General Physics argues that

discovery should not be stayed and that its cross-motion to compel discovery should be

granted because MCI's purpose in requesting a stay of discovery was to interfere with

General Physics's discovery process.  (Opposition, 39.)

**C.**      ***Reply in Further Support of Motion for Summary Judgment***

In the Reply Brief in Further Support of MCI Communications Corporation's

Motion for Summary Judgment and Motion for a Protective Order Staying Discovery and

In Opposition to General Physics's Cross-Motion to Compel, dated April 3, 2002 (the

"Reply"), MCI reiterates its argument that the transaction documents indicate that a sale

of Systemhouse was anticipated.  (Reply, 3.)  MCI then restates that the APA and PPA

bar General Physics's fraud claims.  (Reply, 6.)  MCI argues that General Physics cannot

establish that MCI committed, aided, or abetted fraud.  (Reply, 8.)  Specifically, MCI

argues that it cannot be established by clear and convincing evidence that MCI itself is

liable for alleged misrepresentations that there were no plans to sell Systemhouse because

(1) the evidence disproves General Physics's claim that MCI had an undisclosed intent to

sell Systemhouse, (2) MCI made no affirmative misrepresentations in the transaction, (3)

the evidence demonstrates that Morgan did not have knowledge of a plan to sell

Systemhouse, and (4) MCI did not have a duty to disclose information to General

Physics. (Reply, 10-16.)

MCI also states that General Physics cannot establish MCI is liable for alleged

misrepresentations in the financial information of LTI and that, as a matter of law, MCI

did not aid and abet any alleged fraud that took place. (Reply 18, 20.) Furthermore, MCI

asserts that General Physics cannot demonstrate that fraud occurred with regard to LTI's

financial condition, since the Altered Budget was not a misrepresentation, and that

General Physics cannot show that any alleged misrepresentation was material, that

scienter existed, or that it reasonably relied on any alleged misrepresentation. (Reply, 20-

25.)

### D.    *Memorandum of Claimants Concerning Fed.R.Civ.P. 56*

In the Memorandum of Claimants General Physics Corporation and GP Strategies

Corporation Concerning Fed.R.Civ.P.56[11] ("General Physics's Rule 56 Memo."), General

Physics notes that since the submission of its papers in opposition to summary judgment,

the forum for which the Summary Judgment Motion would be decided has switched from

a New York state court to a federal court. Furthermore, General Physics states that MCI

has changed the basis of its argument from a focus on the necessity to pierce the

corporate veil to a factual dispute concerning the lack of evidence supporting the

misrepresentations made relating to the performance of the U.K. operations. General

Physics argues that because MCI originally moved on a legal argument, additional

discovery was unnecessary, and that, because MCI's arguments have changed, General

Physics's response would have been different than that originally given in the State

---

[11] Rule 7056 of the Federal Rules of Bankruptcy Procedure, as a consequence of Rule 7014, makes Rule 56 applicable to this proceeding.

Court.  General Physics states that discovery was incomplete by the time the Summary

Judgment Motion was submitted in April of 2002, noting that it was unable to depose

Amy Harvey, Esq. ("Harvey").  (Harvey and Morgan were the MCI attorneys that

participated in the transaction.)  General Physics further notes that the automatic stay

prevented it from conducting discovery against the EDS Defendants to develop its case

against MCI, and some of the discovery gained from the EDS Defendants prior to the

imposition of the automatic stay seemed to suggest that further discovery would have

yielded evidence which would have been sufficient to create a genuine issue of material

fact relating to MCI's direct participation in the fraud.

General Physics agrees with MCI that New York substantive law and federal

procedural law should be applied in this case.  General Physics goes on to state that,

while Rule 56(f) and CPLR 3212(f) contain similar language, different case law relates to

each and that, unlike the standard under the federal rule, General Physics was not

required to submit an affidavit under CPLR 3212(f).  General Physics notes that New

York courts have held that where facts are peculiarly in the possession of the party

seeking summary judgment, this is sufficient to deny summary judgment.  General

Physics argues that Second Circuit law does not require it to identify the particular facts it

is expected to learn in discovery.

General Physics has also submitted an affidavit pursuant to Rule 56(f) (the "Rule

56 Affidavit") to specifically address the factors required under Second Circuit case law.

Regarding that affidavit, General Physics states that Section A describes the discovery it

seeks – mainly what MCI knew about LTI's financial condition and why certain

information relating to LTI was not provided in due diligence.  General Physics intends

to depose Harvey and other witnesses with knowledge of the information MCI possessed

relating to the financial condition of the U.K. operations of LTI (General Physics's Rule

56 Memo., 12.)  Section B explains why the facts that General Physics seeks are

reasonably expected to create a genuine issue of material fact, specifically that it was not

provided with revised financial projections of the UK operations and other documents.

(*Id*.)  General Physics notes that since MCI has denied deliberately misleading it as to the

financial condition of the U.K. operations, the only way to show what MCI knew is to

examine them. (*Id*.)  Section C notes the efforts made to obtain the facts sought in

discovery and that deposition notices were outstanding when MCI moved for summary

judgment, with deposition discovery having just begun. (*Id*. at 13.)  Section D describes

why General Physics's efforts to obtain discovery were unsuccessful, which include on

the part of MCI "stonewalling, motions for protective orders, and MCI's bankruptcy

filing."  (*Id*. at 13.)  General Physics argues that it cannot be faulted for failing to provide

proof that MCI knowingly provided misleading financial information, and that MCI

denied further discovery at the same time regarding what MCI actually knew about LTI's

financial condition.  This is because General Physics claims the facts are exclusively in

the possession of the movant, MCI.

**E.**     *Reply Brief in Further Support of MCI's Supplemental Brief Regarding
        Application of the Federal Rules*

In its Reply Brief, MCI argues that the Rule 56 Affidavit submitted by General

Physics speculates as to how General Physics could gain evidence that would enable it to

create a genuine question of material fact.  MCI notes that General Physics has been able

to conduct discovery, but it has failed to identify evidence to support with whom MCI

allegedly committed fraud.  MCI notes that General Physics fails to satisfy the standard

16

under Rule 56(f) because it can only support its fraud claim if certain information is

revealed through additional discovery, and that summary judgment cannot be defeated

under Rule 56(f) through mere speculation as to what might be uncovered through

additional discovery.  MCI argues that because General Physics cannot make a viable

claim, it should not be granted leave to conduct additional discovery.

Furthermore, MCI argues, General Physics failed to identify how additional

discovery will raise a genuine issue of material fact.  MCI notes that General Physics has

already conducted discovery relating to MCI's knowledge of the financial condition of

the U.K. operations, the due diligence process in the LTI transaction, and MCI's role in

the LTI transaction.  Additionally, MCI argues that General Physics has failed to show

what effort it has made to obtain the discovery it now seeks and how it failed to obtain

the discovery.  MCI further notes that as a matter of law, General Physics is unable to

establish the elements of a fraud claim against MCI.  Specifically, no evidence exists that

MCI made material misrepresentations and reasonable reliance cannot be demonstrated.

### IV.  DISCUSSION

### A.    *Summary Judgment Standard*

While the parties' pleadings utilize the New York standard for summary

judgment, as a result of the Debtors' Chapter 11 cases, this matter is moving forward in a

federal forum.  The Court will therefore apply the federal summary judgment standard in

this proceeding.  *See Hanna v. Plumer*, 380 U.S. 460, 464 (1965); *see also Yeshiva*

*Chofetz Chaim Radin, Inc. v. Village of New Hempstead,* 98 F. Supp. 2d 347, 359-360

(S.D.N.Y. 2000) (holding that the standard for summary judgment is procedural in nature

and is governed by Fed.R.Civ.P. 56(c) and declining to apply CPLR 3212 because the

"standards for granting summary judgment motions in the federal courts are clearly

established in FRCP Rule 56 and federal case law").  "[I]n federal court, even where state

law provides the substantive rule of decision, the Federal Rules of Civil Procedure, as

explicated in the decisions of federal courts, govern procedural matters such as the

standard for summary judgment."  *Resolution Trust Corp. v. Diamond*, 801 F. Supp.

1152, 1164, n.8 (S.D.N.Y. 1992) (rev'd on other grounds) (citing *Hanna v. Plumer*, 380

U.S. 460 (1965)).

Rule 56(c), incorporated into bankruptcy practice by Rule 7056 of the Federal

Rules of Bankruptcy Procedure, as stated previously, provides that summary judgment

shall be rendered "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of

law."  FED.R.CIV.P. 56(c).

After the non-moving party to the summary judgment motion has been afforded a

sufficient time for discovery, summary judgment must be entered against it where it fails

to make a showing sufficient to establish the existence of an element essential to its case

and on which it has the burden of proof at trial.  *See Celotex Corp. v. Carett*, 477 U.S.

317, 322 (1986).  In such a situation, no genuine issue concerning any material fact exists

because "a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial."  *Id.* at 323.  The summary

judgment standard is interpreted in a way to support its primary goal of "dispos[ing] of

factually unsupported claims or defenses."  *Id*. at 323-24.

In the Opposition, General Physics argues, for what appears to be the first time, that MCI should be held liable for aiding and abetting a scheme to misrepresent the LTI business. The issue of aiding and abetting is not properly before the Court under these circumstances, as it was not raised in the Complaint and General Physics has not sought to amend the Complaint to include this theory of liability. The Court therefore declines to consider General Physics's argument with respect to aiding and abetting.

**C.**      ***Fraud Claim: Failure to Plead with Particularity***

With respect to the allegations relating to the Altered Budget, General Physics has failed to adequately plead in the Complaint all of the necessary elements of fraud with the requisite level of particularity. The well-settled elements of a fraud claim under New York law are a misrepresentation of a material fact, falsity, scienter, and deception. *See Barclay Arms, Inc. v. Barclay Arms Assoc.*, 74 N.Y.2d 644, 646-47 (N.Y. 1989); *see also Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) ("*Banque Arabe*") (To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.). Against MCI, General Physics apparently proceeds under the common law fraud theory of fraudulent concealment.[12] To prove fraudulent concealment under New York law, the plaintiff must prove, in addition to all of the elements of common law fraud, that the defendant had a duty to disclose material information. *Id.* at 155. For

---

[12] At oral argument on December 13, 2005, General Physics expressly raised the theory of fraudulent concealment for the first time. *See* Hr'g Tr. 27:6, Dec. 13, 2005 ("Our claim is based on fraudulent concealment."); *see also* Jacobs Aff., ¶ 16 ("MCI . . . has . . . been charged with withholding information.").

both common law fraud and fraudulent concealment, "the more stringent CPLR §

3016(b) pleading rule requires that 'the circumstances constituting the wrong shall be

stated in detail.'"  *See Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 643 N.Y.S.2d 33 (1st

Dep't 1996).

Rule 3013 of the CPLR requires that "[s]tatements in a pleading shall be

sufficiently particular to give the court and parties notice of the transactions, occurrences,

or series of transactions or occurrences, intended to be proved and the material elements

of each cause of action or defense."  CPLR 3013.  Additionally, Rule 3016(b) of the

CPLR states that "[w]here a cause of action or defense is based upon misrepresentation,

fraud, mistake, willful default, breach of trust or undue influence, the circumstances

constituting the wrong shall be stated in detail."  CPLR 3016(b).  Furthermore, "the

elements of fraud are narrowly defined, requiring proof by clear and convincing

evidence."  *Gaidon v. Guardian Life Ins. Co. of America*, 94 N.Y.2d 330, 349, 350 (N.Y.

1999) (citing V*ermeer Owners v. Guterman*, 78 N.Y.2d 1114, 1116 (N.Y. 1991)).

General Physics's allegations are not sufficiently particular to support the

fraudulent concealment claim.  "Under New York law, a duty to disclose material facts

arises (1) where there is a fiduciary relationship between the parties, or (2) where one

party possesses superior knowledge, not readily available to the other, and knows that the

other party is acting on the basis of mistaken knowledge."  *Congress Financial Corp. v.

John Morrell & Co.*, 790 F. Supp. 459, 472 (S.D.N.Y. 1992) (citing *Aaron Ferer & Sons,

Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir.1984)).  The second

theory is termed the "special facts" doctrine.  *Id.*  The duty to disclose under the "special

facts" doctrine arises where "(1) one party has superior knowledge of certain information;

(2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *UniCredito Italiano SPA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485, 498 (S.D.N.Y. 2003) (citing *Banque Arabe*, 57 F.3d at 155).  When parties deal at arms-length in a commercial transaction, as General Physics and MCI did, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.  *See, e.g., Travelers Indem. Co. of Ill. v. CDL Hotels USA*, 322 F. Supp. 2d 482, 499 (S.D.N.Y. 2004).  However, under the "special facts doctrine," a duty to disclose arises where one party's superior knowledge of essential facts makes the transaction without disclosure inherently unfair.  *Id*.  General Physics has not sufficiently alleged the first or third elements of the "special facts" doctrine against the MCI attorneys.  General Physics has not shown that Morgan and Harvey knew certain information about the Altered and Original Budgets that General Physics did not.  General Physics merely speculates that the MCI attorneys' *access* to certain information regarding LTI and the Altered and Original Budgets and the data room containing such information makes it likely that the MCI attorneys actually had knowledge of the information.  As to the third element, General Physics has not sufficiently alleged that the particular MCI attorneys knew that General Physics was acting on the basis of mistaken knowledge regarding the Altered or Original Budgets.

Regarding scienter, General Physics claims "Defendants knew plaintiffs were relying on the [Altered] Budget and that they were using it to gauge [LTI's] performance. Defendants also knew that the [Altered] Budget was not a budget and that it was not

achievable." (Opposition, 36.) Again, these general allegations to "Defendants"[13] do not

allege or show with the requisite particularity MCI's scienter. *See, e.g., BWA Corp. v.*

*Alltrans Exp. U.S.A., Inc.*, 112 A.D.2d 850, 493 N.Y.S.2d 1 (1st Dep't 1985); *see also*

*Long v. Fitzgerald*, 240 A.D.2d 971, 659 N.Y.S.2d 544 (3d Dep't 1997) (plaintiff's

speculation that defendant had knowledge of facts contrary to representations does not

raise a question of fact on the scienter element); *Zanett Lombardier, Ltd. v. Maslow*, 29

A.D.3d 495, 815 N.Y.S.2d 547 (1st Dep't 2006) (stating that "conclusory statement of

intent did not adequately plead sufficient details of scienter"). The weakness of General

Physics's scienter element is further exposed by its statement that "MCI also *appears to*

*have been aware* of the Real Budget, but did not provide it to plaintiffs." (Opposition,

24. Emphasis added.) That conclusory statement, which is not supported by facts, is not

sufficient under the particularity requirements.

Even assuming that MCI could be held liable for the actions of Morgan or Harvey

in relation to the sale of LTI, General Physics has failed to show that Morgan, Harvey, or

any other MCI employee, was aware that the Altered Budget contained inaccuracies and

that they provided the Altered Budget to General Physics with the scienter necessary to

hold MCI liable for fraud. Even when taking into consideration the subsequent pleadings

filed in this matter, General Physics has failed to meet the requirements of CPLR Rules

3013 and 3016(b) of pleading fraud with sufficient particularity and detail.

Therefore, the Summary Judgment Motion is granted with respect to the Altered

Budget claim.

---

[13] General Physics cannot take advantage of the limited "group pleading doctrine" to tie Morgan and
Harvey to the Altered Budget because, for one, they had no hand in creating the budget.

**D.**    ***False Representation Regarding Plans to Sell Systemhouse***

1. Application of the Integration Clause

With regard to the allegation of a false oral representation that there were no plans

to sell Systemhouse, the Court finds the Integration Clause does not bar General Physics

from asserting a cause of action based upon any representations that MCI employees may

have made if found to be acting on behalf of MCI.  The Integration Clause specifically

states that the parties were "relying solely on the representations, warranties and

covenants contained in this Agreement or in any writing delivered pursuant to provisions

of this Agreement, and not upon any representation, warranty, covenant, or information,

written or oral, made by any person other than as specifically set forth herein or therein."

(APA, § 11.6.)  However, MCI was not a party to the agreement, and has repeatedly

argued that it had nothing to do with the transaction, except to lend two of its attorneys to

Systemhouse.

General Physics cites *Wittenberg v. Robinov*, 9 N.Y.2d 261 (N.Y. 1961), among

other cases, for the position that an individual who is not party to an agreement cannot

rely upon a merger clause within said agreement.  In *Wittenberg*, the New York Court of

Appeals held that while an action for fraudulently inducing a contract did not lie against a

seller because of a disclaimer clause in the contract, the real estate broker was not a party

to the contract, "and the disclaimer provision by its express language did not inure to his

benefit.  The disclaimer provision in the contract constituted, in effect, a limitation upon

the agent's authority to bind his principal."  9 N.Y.2d at 264.[14]  The Court of Appeals

went on to note that

---

[14] The contract in *Wittenberg* contained the following disclaimers
        It is further understood and agreed that the seller has made no representation as to physical

> [i]n the instant case, the representations – which plaintiff in his complaint alleges were made by the agent – were similarly declared nonexistent by the seller; and the purchaser expressly agreed to consummate the transaction on those terms.  Such a declaration in the agency context here presented means, from the seller's point of view, that any agent's representations were unauthorized.  An unauthorized representation of an agent does not exist insofar as a principal is concerned.  As to the agent, however the noncontracting party, an unauthorized representation remains real and existent – and if fraudulent he may be subjected to liability.

*Id.*

In this case, MCI has agreed that it is not a party to the APA.  It is true that the APA states that it applies to representations made by any person, but as a non-contracting party, MCI cannot benefit from a clause that binds only those parties to the agreement.  The Integration Clause by its express terms only applies to the "parties" and it does not state that it can be relied upon by non-contracting parties.  Therefore, the Court will not extend its coverage to MCI, whose basis for much of its argument is that it cannot be connected to the transaction.

MCI cites the case of *Vesey Associates, Inc. v. Regime Realty Corp.*, 35 Misc.2d 353 (Sup. Ct. N.Y. County 1961).  The *Vesey* case held that a disclaimer provision in a contract would inure to the benefit of the officer of the corporate seller with respect to allegations of false and fraudulent representations as to the condition of a building being purchased.  However, the court in that case noted that the defendant was an officer of the corporate seller.  "He had full and actual authority to act for the corporation.  He negotiated the contract of sale and was one of the signatories to it."  *Vesey*, 35 Misc.2d at

---

condition or services and that seller shall not be liable and bound in any manner by express or implied warranties, guarantees, promises, statements, representations, or information pertaining to said premises, made or furnished by any real estate broker, agent . . . unless such warranties, guarantees, promises, statements and/or representations of information are expressly and specifically set forth herein. . . . It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged in this contract . . . .

*Id.* at 262-63.

355.  Here, the case is clearly distinguishable.  As noted above, MCI has argued that it was not involved in the sale of LTI and that the extent of its involvement was to loan its in-house attorneys to assist Systemhouse with the transaction.  (Summary Judgment Motion, 14.)  Therefore, MCI cannot rely on the Integration Clause with respect to the alleged representations made by its in-house attorneys to the extent the allegations relate not to each attorney acting on behalf of Systemhouse as their principal but on behalf of MCI as their principal.  The Court, therefore, denies summary judgment with respect to that portion of the General Physics's allegations.

     2.  <u>The APA and PPA's Provisions Regarding a Change of Control</u>

MCI argues that section 10.3 of the PPA and 11.2(A)(3) of the APA "clearly contemplate the potential sale of Systemhouse" and preclude General Physics from asserting a claim based on an alleged oral representation by Morgan or other MCI employees that MCI did not plan on selling Systemhouse to EDS.  The Court does not agree.  The two sections contemplate a potential future sale of Systemhouse, and what effect such a change of control would have on the relationship between Systemhouse and General Physics.  Obviously, General Physics, in purchasing a division of Systemhouse, could not contract to bar any future sale of Systemhouse.  The general "change of control" provisions of the PPA and APA do not bar General Physics's claim as a matter of law because they do not specifically disclaim reliance on the alleged misrepresentation that Systemhouse would not shortly be sold to EDS.  *See Europadisk Holdings, LLC v. Shelton*, No. 03 Civ. 4505, 2004 WL 613109, at *2-3 (S.D.N.Y. Mar. 26, 2004) (holding that, under New York law, claim of fraudulent inducement based on alleged misrepresentation of present facts, instead of defendant's future performance of contract,

was not barred by general contractual disclaimer).  *Cf. Harsco Corp. v. Segui*, 91 F.3d

337 (2d Cir. 1996) (finding that under New York law contractual disclaimer barred

plaintiff's fraud claim because it was specifically addressed to the representations upon

which plaintiff based its claim).

Triable issues of fact exist as to (1) who the employees of MCI were acting on

behalf of when the alleged misrepresentations were made, and (2) if such employees were

acting on behalf of MCI, whether reliance on the part of General Physics on statements

made by MCI, a third party, was reasonable, particularly in light of (a) the Integration

Clause, which, as set forth above in note 8, contained a representation by the parties that

they were relying solely on the representations contained in the Agreement and not upon

any oral representations, (b) Systemhouse's refusal to "guarantee" that its business

relationship with LTI would continue after General Physics purchased LTI and (c) the

negotiated term in the PPA that stated the Agreement would terminate if Systemhouse

were sold to an unaffiliated company that competed with General Physics.[15]

**E.      *Cross-Motion to Compel Discovery: Rule 56(f)***

In the Opposition, General Physics appears to make a cross-motion to compel

discovery.  General Physics claims that such motion should be granted because MCI's

purpose in requesting a stay of discovery was to interfere with General Physics's

---

[15] As noted above on page 7, General Physics claims that it asked Systemhouse to "guarantee" that the
business relationship between Systemhouse and LTI would continue after General Physics purchased LTI,
but that Systemhouse refused to make the guarantee, arguing that the financial incentives in the PPA were
sufficient to ensure that the relationship would continue.  Complaint, ¶¶ 33-34.  Additionally, General
Physics states that the "defendants" included the term in the PPA that the Agreement would terminate in
the event of a change of control.  *See* Opposition, 18-19.  General Physics claims it relied on the financial
incentives in the PPA and the alleged oral misrepresentation that MCI was not in the process of selling
Systemhouse, in agreeing that the PPA would terminate in the event Systemhouse was subsequently sold.
Complaint, ¶34; Opposition 18-19.

discovery process.  (Opposition, 39.)  While General Physics alleges that it has had insufficient time to complete discovery, some discovery has indeed taken place.

A motion for summary judgment should be granted after the non-moving party has had adequate time for discovery.  *Celotex Corp.,* 477 U.S. at 322.  General Physics, however, did not file an affidavit pursuant to Fed.R.Civ.P. 56(f), as the proceedings originally took place in the State Court and therefore developed pursuant to New York procedural law.  The Court requested that the parties further brief the issues relating to discovery and whether to apply the federal standard under Rule 56 or the New York standard under New York CPLR 3212.

Both parties agree that "in determining MCI's summary judgment motion, [the] Court should apply New York substantive law and federal procedural law."  (General Physics's Rule 56 Memo., 6)  General Physics has submitted a Rule 56(f) affidavit and, considering the complicated procedural history of this litigation, the Court will treat said affidavit as having been filed timely.

Fed.R.Civ.P. 56(f) provides

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may made such other order as is just.

Such affidavit must explain (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.  *See Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995).  It is within a court's discretion

whether to provide additional time for discovery pursuant to Rule 56(f).  *See Paddington*

*Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994).  Furthermore, summary

judgment may be granted where the plaintiff has provided "no basis to conclude that

further discovery would yield proof" of the desired evidence.  *Meloff*, 51 F.3d at 375.

The Second Circuit has stated

> A court can reject a request for discovery, even if properly and
> timely made through a Rule 56(f) affidavit, if it deems the request
> to be based on speculation as to what potentially could be
> discovered. 'Rule 56(f) is not a shield against all summary
> judgment motions.  Litigants seeking relief under the rule must
> show that the material sought is germane to the defense, and that it
> is neither cumulative nor speculative,' and a 'bare assertion that
> the evidence supporting a plaintiff's allegation is in the hands of
> the defendant is insufficient to justify a denial of a motion for
> summary judgment under Rule 56(f).'

*Paddington*, 34 F.3d at 1138 (citation omitted).

The Court finds that the Rule 56(f) Affidavit provided by General Physics fails to

meet the necessary standard set out by the Second Circuit with respect to the allegation of

fraud.  The affidavit relies on speculation and conclusory allegations, and requests a

"fishing expedition" in order to create a question of material fact.  General Physics has

failed to provide any facts linking MCI or its "loaned" attorneys with fraud.  Rather, the

facts that General Physics seeks are characterized as "what MCI knew about Learning

Technologies' financial condition in the period leading up to Claimants' acquisition of

Learning Technologies, and why certain information about Learning Technologies was

not provided to Claimants in due diligence."  (Rule 56(f) Aff., 3, ¶ 8.)  These facts, that

MCI allegedly assigned and paid its attorneys to handle the transaction, and MCI

attorneys used MCI letterhead and participated in the due diligence process, appear to be

the entire basis of General Physics's case.  General Physics simply alleges that these facts

were not provided to it during due diligence, along with certain financial projections and other documentation relating to the U.K. operations.  (Rule 56(f) Aff., 2-3.)

In this case, General Physics states "MCI cannot fault Claimants for failing to offer proof that it knowingly provided misleading financial information to prospective purchasers of Learning Technologies and, at the same time, deny Claimants the opportunity to conduct discovery to determine what it actually knew about Learning Technologies' financial condition."  (General Physics's Rule 56 Memo., at 13.)  General Physics states that none of the cases MCI cites for the proposition that in order to satisfy Rule 56(f) or CPLR 3212(f) an affidavit must specify what the party opposing the motion would prove if discovery were permitted involved a situation like this one, in which the facts were exclusively in the possession of the movant."  (*Id.*)  This, however, seems to misconstrue the situation.  Any available facts are clearly not in the exclusive possession of MCI.  General Physics has conducted some discovery by the point in which such activity was stayed in the State Court through MCI's motion for summary judgment.  This included both document discovery and the deposition of numerous parties.  (Reply Br. Supp. MCI's Br. Regarding Application Federal Rules, 4.)  One such party was Morgan, one of the MCI attorneys said to have participated in the fraud allegedly perpetrated by MCI.  Furthermore, information was obtained through the discovery process that took place in the EDS case.

As noted by MCI, General Physics previously alleged that it could make a case against MCI.  During oral argument on December 13, 2005, counsel to General Physics stated that

> We obtained evidence in [the EDS proceedings] which supports our claim against MCI. The discovery against MCI, when MCI made this motion,

had been very abbreviated and then stopped.  Notwithstanding that, we
have evidence in the form of Jean Gilchrist's testimony, which establishes
that MCI controlled the deal . . . As I understand MCI's argument, not the
one that Mr. Sheehan said today, but the argument that they presented in
their papers was that MCI's attorneys couldn't be held liable, because they
were on loan to Systemhouse.  There is no evidence in the record that that
is the case.  There is certainly no undisputed evidence.  In fact, the
evidence is to the contrary.

(Hr'g Tr. 21:12 – 22:7, Dec. 13, 2005.)  For General Physics to take such a position at

oral argument, and to now argue that, to the contrary, the information is within the

exclusive control of MCI seems self-serving at best.  The cross-motion to compel

discovery is denied with respect to the claim of fraud against MCI.  The parties are,

however, permitted to continue discovery in preparation for trial solely with respect to the

remaining allegation that MCI, through its employees acting on its behalf, made a false

oral representation relating to the sale of Systemhouse to EDS.

## V.  CONCLUSION

General Physics has failed to plead the necessary element of scienter with the

requisite level of particularity to support a claim for fraud against MCI, and has failed to

establish necessary elements under the "special facts" doctrine to supports its claim of

fraudulent concealment.  Additionally, General Physics has failed to meet the necessary

standard to deny summary judgment with respect to the fraud claims for the purpose of

additional discovery.  However, the Integration Clause and the "change of control"

provisions of the APA and PPA do not preclude General Physics from relying on any oral

representations allegedly made on the part of MCI regarding the sale of Systemhouse.

The Summary Judgment Motion is therefore granted with respect to the allegations

relating to the Altered Budget and denied with respect to the allegations relating to false

oral representations.  It is particularly necessary that the following triable issues of fact be

addressed (1) for whom were the employees of MCI acting on behalf of when the alleged

statements were made with respect to the sale of Systemhouse, and (2) if such employees

were acting on behalf of MCI, whether reliance by General Physics on statements made

by MCI was reasonable.  General Physics's cross-motion to compel discovery is denied

with respect to the fraud claim relating to the Altered Budget.  The parties are, however,

permitted to continue discovery in preparation for trial with respect to the remaining

allegation that MCI made a false oral representation relating to the sale of Systemhouse.

The Debtor is to settle an order consistent with this opinion.


Dated: New York, New York
       August 21, 2007


**s/Arthur J. Gonzalez**
UNITED STATES BANKRUPTCY JUDGE