| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Not for Publication |
| In re | Chapter 11 |
| WORLDCOM, INC., *et al.*, | Case No. 02-13533 (AJG) |
|         Reorganized Debtors. | (Jointly Administered) |

**OPINION REGARDING KENNEDY'S SECOND MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND MOTION FOR RULE TO SHOW
CAUSE WHY DEBTORS SHOULD NOT BE HELD IN CONTEMPT**

A P P E A R A N C E S

STINSON MORRISON HECKER LLP
Special Counsel for Reorganized Debtors
1201 Walnut Street, Suite 2700
Kansas City, MO 64106

        Mark A. Shaiken, Esq.
        Sara E. Welch, Esq.

UNGARETTI & HARRIS, LLP
Attorneys for Kennedy & Associates, Inc.
3500 Three First National Plaza
Chicago, IL 60602

        Dean J. Polales, Esq.

and

LAW OFFICES OF ALEX PIROGOVSKY, LTD.
250 Parkway Drive, Suite 150
Lincolnshire, IL 660069

        Alex Pirogovsky, Esq.

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

Kennedy has made two discovery-related motions, which the Court largely denies for the reasons discussed below. The Court also will not disqualify Kennedy's law firms for any conflict arising from their prior representation of a WorldCom employee, for the reasons discussed below.

**I. BACKGROUND**

The two discovery-related motions that are the subject of the current ruling are a Motion for Rule To Show Cause Why Debtors Should Not Be Held in Contempt for Failure to Comply With the March 19, 2007 Order (the "Motion for Rule to Show Cause"), and a Second Motion to Compel Production of Documents (the "Second Motion to Compel"). Both seek WorldCom, Inc. ("WorldCom" or "the Debtors") to, among other things, review and produce relevant documents from the three million documents that were gathered from WorldCom's Boca Raton office by an unrelated law firm representing WorldCom in connection with a class-action Employee Retirement Income Security Act of 1974 ("ERISA") action[1] (the "ERISA Action") and or a securities class action case.[2] Boca Raton is where a certain WorldCom employee, Dona Miller ("Miller") – who is alleged to be Kennedy's primary contact – worked. Miller is relevant in many ways to the current ruling, as the Court will also address a potential conflicts issue that it discovered, and that was subsequently briefed by the parties.

Prior to the two pending motions, the Court ruled on Kennedy's first motion to compel production. (*See* Op. Regarding Kennedy's Mot. To Compel Produc. Of Docs., Dkt. No. 18742, Feb. 26, 2007 (the "February Opinion").) In the February Opinion, the Court narrowed the scope of Kennedy's requests. The Court found that the Debtors

---

[1] *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816(DLC) (S.D.N.Y.).

[2] *Securities & Exchange Comm'n v. WorldCom, Inc.*, No. 02 CIV. 4963 (JSR) (S.D.N.Y.).

2

should be compelled "to produce certain documents as the requests concern the parties' course of performance and could conceivably help Kennedy establish the existence of an agreement." (*Id.* at 6.) The Court excused the Debtors from certain document requests because they were "not relevant to the parties' specific claims or defenses." (*Id.* at 6.) Furthermore, the Court stayed certain requests, such as requests relevant to damages, until the Court decides the threshold issue of whether an agreement exists between the parties. An order consistent with the February Opinion was entered on March 19, 2007 (the "March Order"). In the subsequent decision on Kennedy's motion for relief from that order, the Court made clear that it had, in the February Opinion, informally bifurcated the case with the Court to first determine that an agreement between Kennedy and WorldCom existed. (*See* Op. Regarding Kennedy & Assocs., Inc.'s Mot. for Relief from Order on Mot. to Compel Produc. of Docs. at 3, Dkt. No. 19057, Aug. 21, 2007.)

A. *The Current Discovery-Related Motions*

In the Second Motion to Compel, Kennedy asks the Court to compel WorldCom to respond to nineteen document requests that were not included in Kennedy's first motion to compel. The Motion for Rule to Show Cause, in contrast, complains that WorldCom's supplemental production of documents in response to the March Order has been insufficient and seeks further discovery and sanctions against WorldCom. In both discovery-related motions, Kennedy classifies the document requests into three broad groups – the "Boca Raton Documents," the "Dixon Documents," and "VEBA Documents." [3] The specific, actual document requests will be discussed in the sub-sections relating to each of the two discovery-related motions.

---

[3] VEBA is an acronym for Voluntary Employees' Beneficiary Association.

3

As stated above, the Boca Raton Documents are a large – 3 million plus pages – collection of documents compiled by WorldCom for review in connection with the ERISA Action and the securities class action. Kennedy describes the Dixon Documents as documents, including correspondence and law firm fee statements, concerning Sharon Q. Dixon, an attorney from a law firm that did legal work for WorldCom. Kennedy states that Kennedy has previously requested certain documents relating to Dixon, and that the Court has ordered production of some, but that WorldCom has produced "virtually no correspondence or other documents." (Mot. for Rule to Show Cause, 14.) Kennedy describes the VEBA Documents as relating to WorldCom's benefit plans, such as audit reports and accountings of overpayment refunds. Kennedy alleges that it has been requesting such documents from WorldCom but that WorldCom has refused to provide them.

1. The Second Motion to Compel

In the Second Motion to Compel, Kennedy asks the Court to compel WorldCom to respond to nineteen documents requests that were not included in Kennedy's first motion to compel. Kennedy states the impetus is the discovery of "millions of pages of documents in the Debtors' control and/or possession that contain documents that are responsive to those Document Requests" to which the Debtors' have purportedly responded. (Second Mot. to Compel 3.) For most of those document requests, Kennedy states that it has received minimal documents, and that a review of the Boca Raton Documents and the Dixon Documents will yield additional responsive documents.

4

Kennedy states that there are at least nineteen document requests to which some of the three million documents are relevant and responsive.[4] WorldCom argues that Kennedy has failed to take account of the February Opinion and the March Order, which limited, stayed or denied similar requests, as well as WorldCom's original objections discussed by the Court in the February Opinion. WorldCom argues that none of Kennedy's supporting theories for the purported relevancy of the documents relate to whether the parties entered into an agreement.

2. Motion for Rule to Show Cause

The Motion for Rule to Show Cause concerns document requests that were subject to the February Opinion and March Order. Essentially, Kennedy complains that

---

[4] Kennedy's Document Requests Nos. 1, 2, and 76 ask WorldCom to "Produce all correspondence between Kennedy and WorldCom; all correspondence concerning Kennedy; all correspondence between WorldCom and Hartford concerning Kennedy." Document Requests Nos. 3 and 4 ask WorldCom to "Produce all contracts or agreements and any versions or drafts thereof between Kennedy and WorldCom and Kennedy, WorldCom and any third parties, whether fully executed, partially executed or unexecuted." Document Request No. 5 asks WorldCom to "Produce all Documents concerning payments made by WorldCom to Kennedy." Document Requests Nos. 6 and 7 ask WorldCom to "Produce all Documents concerning Kennedy and the Kennedy vendor file." Document Requests Nos. 8, 9, and 72 ask WorldCom to "Produce all Documents concerning meetings between Kennedy and WorldCom; Kennedy, WorldCom and third parties; Kennedy, JSL and/or Hartford." Document Request No. 25 asks WorldCom to "Produce all Documents concerning WorldCom's Request for Proposals for the STD and LTD Benefits Plans for the Benefit Plan year 2000." Document Request No. 30 asks WorldCom to "Produce all Documents concerning statements of WorldCom's overdrawn ERISA Benefit Plan bank accounts with First Union for the Hartford ASO LTD Policy number 070642, including, without limitation, Kennedy's identification and request thereof." Document Requests Nos. 42 and 43 ask WorldCom to "Produce all Documents concerning ASO Benefit Plans that are not, but appear to employees, the IRS and the DOL to be fully insured, and correspondence between WorldCom and/or Marsh and JSL concerning the same." Document Request No. 75 asks WorldCom to "Produce all Documents concerning WorldCom's tracking of Medicare eligibility with Hartford." Document Requests Nos. 78 and 79 ask WorldCom to "Produce all Documents concerning Hartford premium overpayment in 2001 including, without limitation, Kennedy's request therefor, and all correspondence between John Hudson, Susan Tavel, JSL, and/or Hartford regarding the same." Document Request No. 83 asks WorldCom to "Produce all non-privileged Documents, including correspondence between WorldCom, Sharon Dixon and/or Hartford concerning recoveries of Plan Assets as a result of Hartford's admission of breach of contract relative to Hartford's failing to require claimants to pursue Social Security Disability Benefits and Hartford's failure to carry out the terms of the Abilities Contract."

5

WorldCom has not sufficiently responded to multiple document requests,[5] especially in light of the discovery of the Boca Raton Documents.

In response to the Second Motion to Compel and the Motion for Rule to Show Cause, WorldCom asserts that it has produced 1,929 pages of documents pursuant to the March Order, in addition to the approximately 1,200 pages of documents it produced prior to the first motion to compel. WorldCom alleges that the latest motions contain requests that are too broad and seek irrelevant material, particularly since the February Opinion stated the Court's intention to first determine whether the parties entered into an agreement before turning to any damages claims.

---

[5] In the Motion for Rule to Show Cause, Kennedy assails WorldCom for insufficient responses to the following document requests – Document Requests Nos. 15 and 16. The requests were for the Debtors to "Produce all Documents concerning Hartford STD and LTD Policy No. 67365, including all amendments and contract premium rates thereof with respect to coverage elections identified as Option 1 and Option 2." Kennedy complains that WorldCom has not produced sufficient documents, specifically that amendments to the policies were not produced. Kennedy asserts that these documents would be in the Boca Raton Documents or the VEBA Documents. Kennedy acknowledges that the Debtors produced the initial policies and certain rate schedules. (Mot. for Rule to Show Cause, 18.)

Document Request No. 31. Produce all Documents concerning WorldCom's self-funded ASO benefits plan as successor plan to Hartford LTD and STD policies 673565." Kennedy complains that WorldCom has not produced enough responsive documents. Kennedy asserts that these documents would be in the Boca Raton Documents or the VEBA Documents.

Document Request No. 32. The request was for the Debtors to "Produce all Documents concerning refunds and penalties based upon Hartford's failure to comply with terms of benefit Plans including, without limitations, payments under Hartford performance guarantee documents for Benefit Plan years 1995 through 2002, and Kennedy's identification and request thereof." Kennedy complains that WorldCom has not produced enough responsive documents. Kennedy asserts that these documents would be in the Boca Raton documents, the Dixon Documents, or the VEBA documents.

Document Requests Nos. 33 and 34. The requests were for the Debtors to "Produce all correspondence between WorldCom and Dong Ahn and WorldCom and Ramani Ayar concerning Kennedy or Kennedy's work for the Debtors." Kennedy complains that WorldCom has not produced enough responsive documents. Kennedy asserts that these documents would be in the Boca Raton Documents, the Dixon Documents, or the VEBA Documents.

Document Request No. 45. The request was for all correspondence between WorldCom and UNUM concerning Social Security Disability benefits discussing Kennedy or Kennedy's work for the Debtors. Kennedy complains that WorldCom has not produced enough responsive documents. Kennedy asserts that these documents would be in the Boca Raton Documents.

Document Requests Nos. 80, 81, and 82. The requests were for the Debtors to "Produce all non-privileged correspondence between Sharon Dixon and WorldCom discussing Kennedy or its work for Debtors; Documents produced by Dixon to WorldCom discussing Dixon or its work for the Debtors; and Documents produced by WorldCom to Dixon discussing Kennedy or its work for the Debtors." Kennedy complains that WorldCom has not produced enough responsive documents. Kennedy implies that WorldCom is applying attorney-client privilege protection too broadly.

6

WorldCom also asserts that it has reviewed multiple documents, nearly twenty-five boxes, from the Boca Raton office, an office, it notes, that has been closed for more than five years.

B. *The Conflicts Issue*

The Court recently discovered that Ungaretti & Harris, LLP ("Ungaretti"), a law firm representing Kennedy against WorldCom, formerly represented Miller, the former WorldCom employee, in the ERISA Action in which she was a defendant alleged to have breached her fiduciary duties while acting in a fiduciary capacity for WorldCom.[6] Alex Pirogovsky ("Pirogovsky"), who represents Kennedy along with Ungaretti, was a member of Ungaretti until he left that firm to establish his own practice in September 2007. After discovering that potential conflict, the Court held a hearing on March 18, 2008 (the "March 18 Hearing") to express its concerns about the possible attorney-client conflict and to ask the parties to further explain the background of Ungaretti's representation of Miller.

One issue of the potential conflict, which the Court asked the parties to address, is that Ungaretti and Pirogovsky, in representing Kennedy, have attacked the veracity of Miller, Ungaretti's former client.[7] For example, in Kennedy's Reply to WorldCom's Response to Kennedy & Associates, Inc.'s Motion to Compel Production of Documents, Dkt. No. 16867, August 26, 2005, Kennedy made the following allegations –

---

[6] The parties also agree that Ungaretti previously represented WorldCom in unrelated matters, such as employment and regulatory matters. Ungaretti asserts that it received WorldCom's consent in September 2004 to represent Kennedy. Although it is not clear that this waiver was memorialized, at the March 18 Hearing, WorldCom's counsel stated that she had been aware that Ungaretti had represented WorldCom and was aware of discussions among the client's in-house attorneys about waiving any potential conflict.

[7] An impermissible conflict between Ungaretti and Miller would be imputed to Pirogovsky. *See Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005) (An individual lawyer's conflicts are ordinarily imputed to the other attorneys in his firm based on the presumption that "associated attorneys share client confidences.").

7

> "A number of statements that Dona Miller makes in her declaration under penalty of perjury directly contradict the contemporaneous documents Kennedy already produced to WorldCom." (*Id.* at 3-4.)
>
> "Other of Ms. Miller's statements clearly appear to be self-serving statements designed to create 'facts' to fit WorldCom's present story." (*Id.* at 4.)
>
> "Ms. Miller's statements that WorldCom retained Kennedy to coordinate social security benefits . . . are necessarily false." (*Id.* at 6.)
>
> "Kennedy would not have entered into the arrangement that Ms. Miller claims, under oath, to have existed." (*Id.* at 7.)
>
> "The above-identified statements, as well as others, that Dona Miller makes in her declaration are incredible." (*Id*. at 7.)

Kennedy's attorneys also assert that WorldCom's refusal to review the three million documents stem from a desire to protect Miller and her credibility. (*See* Mot. for Rule to Show Cause, at 8 ("The only reasonable inference from Debtor's counsel's unilateral decision to basically ignore and fail to review the Boca Raton documents is that a review of those documents might completely destroy the credibility of their other client, Dona Miller.").)[8]

After the March 18 Hearing, Ungaretti, WorldCom, and Pirogovsky filed letter briefs as requested by the Court. The Court then subsequently advised the parties that it wished to hear from Miller regarding the potential conflict of interest. WorldCom's counsel then filed the Declaration of Dona J. Miller Regarding Representation By Ungaretti & Harris on July 16, 2008 (the "Miller Declaration").

---

[8] If Pirogovsky or Ungaretti knew of specific documents that would "destroy" Miller's credibility based upon their representation of Miller, they would be violating their duty of confidentiality. Both Pirogovsky and Ungaretti, however, purportedly had no part in compiling those documents while representing Miller, which is not disputed by WorldCom or Miller. Based on the Court's view, the statements from Kennedy's attorney appear to be the routine posturing of a zealous counsel rather than an implication based on personal knowledge. Of course, despite the hyperbolic language that "the only reasonable inference from Debtor's counsel's" desire to not review the Boca Raton documents, many other reasons can be readily inferred, including a lack of relevancy and WorldCom's desire to control costs.

**II.  DISCUSSION**

A.  *Discussion of the Conflicts Issue*

Federal bankruptcy courts sitting in New York apply New York's Code of Professional Responsibility to ethical disputes.  *See Kittay v. Kornstein*, 230 F.3d 531, 538 n.2 (2d Cir. 2000).  The Second Circuit has held that an attorney may be disqualified under New York's Disciplinary Rule ("DR") 5-108 if:  (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.  *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005).  Under DR 5-108, the lawyer's duty of confidentiality continues indefinitely after termination of the employment.  *See Greene v. Greene*, 47 N.Y.2d 447, 453 (N.Y. 1979).

The burden of establishing the need for disqualification is on the moving party.  *See, e.g., Rosman v. Shapiro*, 653 F. Supp. 1441, 1444 n.4 (S.D.N.Y. 1987).  Where the movant satisfies all three elements identified above, an irrebuttable presumption of disqualification arises.  *See Tekni-Plex v. Meyner & Landis*, 89 N.Y.2d 123, 132 (N.Y. 1996).  "[T]he Second Circuit requires a high standard of proof on the part of the party seeking to disqualify its opposing counsel."  *Russell-Stanley Holdings, Inc. v. Buonanno*, 210 F. Supp. 2d 395, 396 (S.D.N.Y. 2002) (citing *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)); *see also Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 325 F. Supp. 2d 270, 275-76 (S.D.N.Y. 2004) (Disqualification motions are

9

generally viewed with disfavor, which is why the moving party must meet a high standard of proof.). The competing policy interests pit a party's entitlement to be represented by counsel of its choice versus the policy of the counsel's loyalty to the first client and the protection of that client's confidences. *Jamaica Pub. Serv. Co. v. AIU Ins. Co.*, 707 N.E.2d 414, 417-18 (N.Y. 1998). In ruling, courts should balance the significant interests and consider the totality of the circumstances. *See Mulhern v. Calder*, 763 N.Y.S.2d 741, 743 (N.Y. Sup. Ct. 2003).

Although Ungaretti's and Pirogovsky's increasingly adverse positions against Miller coupled with the discovery that Ungaretti previously represented Miller have caused the Court to inquire into the prior relationships and directed the parties to notice Miller, the Court, after considering the results of that inquiry, will not disqualify Ungaretti or Pirogovsky. First, no party has moved for disqualification.[9] As Pirogovsky observes, despite the displeasure voiced by Miller in the Miller Declaration, Miller "has not sought to disqualify [Ungaretti] from representing Kennedy in this matter." (Supplemental Letter Brief of Ungaretti and Kennedy, Dkt. No. 19372, Aug.14, 2008). Second, Ungaretti has asserted that it had no part in document discovery for the ERISA Litigation or securities class action, assertions not disputed by WorldCom or Miller. Third, as discussed below, the ERISA Litigation and the securities class action are not substantially related to the Kennedy-WorldCom dispute, a point that even Kennedy and WorldCom agree upon. Thus, the second element for disqualification under DR 5-108 is not met.

---

[9] Although the Court did not find a case decided under New York's disciplinary rules in which a court did *sua sponte* disqualify counsel for a conflict with a prior counsel, a case from the Fifth Circuit holds that the Court would possess such authority. *See United States v. Coleman*, 997 F.2d 1101, 1104 (5th Cir. 1993) (approving the district court's *sua sponte* disqualification of an attorney for a conflict with another client).

10

B. *Discussion of the Discovery-Related Motions*

The February Opinion discussed the legal standards of discovery motions –

> The discovery permitted under the Federal Rules "is broad, but not without limits." *Jones v. Goord*, No. 95 CIV. 8026(GEL), 2002 WL 1007614, at *5-6 (S.D.N.Y. May 16, 2002). Under Rule 26 of the Federal Rules of Civil Procedure, as amended in 2000, parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED.R.CIV.P. 26(b)(1). . . . The amendment narrowed the scope of permissible discovery, to ensure that the focus would be on the parties' claims and defenses. *See* FED.R.CIV.P. 26(b)(1) advisory committee's note ("The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.").
>
> "When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action." FED.R.CIV.P. 26(b)(1) advisory committee's note. Courts in contracts actions take a more restrictive approach to the determination of "relevant" information than in other types of cases." *See* 6 J. Moore et al., Moore's Federal Practice § 26.46[4] (3d ed. 2002). In addition, where necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," the Court may enter any protective order that is necessary, including "that the disclosure or discovery not be had." FED.R.CIV.P. 26(c)(1). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *see also Kunstler v. City of New York*, No. 04CIV1145(RWS)(MHD), 2006 WL 2516625 (S.D.N.Y. Aug. 29, 2006) ("This provision gives the court broad discretion to tailor discovery to the needs of the case and the interests of the discovered party, and in doing so the court may 'undertake some substantive balancing of interests.'") (citation omitted); *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94 (S.D.N.Y. 1997) (Rule 26 "directs a court to 'examine the burdens potentially to be borne by the various parties if the contemplated discovery is performed, and to limit such if it determines that the burdens or expenses of the discovery outweighs the benefits.'").

February Op., 4-5.

After reviewing the assertions made and the decisions in the ERISA Action and the securities class action, and considering the potential burdens in the instant matters, the

11

Court finds that a review of the three million documents collected for those actions is not reasonably calculated to lead to the discovery of admissible evidence relevant to the threshold issue of whether an agreement exists between the parties. In defending their positions in regard to the potential conflict with Miller, both Ungaretti and Pirogovsky have implicitly conceded that the ERISA Action and the securities class action have too tenuous a connection to Kennedy's claim against WorldCom to justify the bulk of Kennedy's numerous and far-reaching document requests.

The Court agrees with WorldCom's counsel that Kennedy and its attorneys are trying to have it both ways. On one hand, to avoid running afoul of DR 5-108, Kennedy has asserted that there is no substantial relationship between Ungaretti's former representation of Miller and Kennedy's current claims. (*See* Ungaretti Letter Brief, at 10 (stating that "the ERISA Litigation and [Ungaretti's] involvement in representing Dona Miller in the ERISA Litigation are not substantially related to Kennedy's claim against WorldCom.")); *see also* Mar. 18 Hearing Tr., at 2:20-2:23 (Pirogovsky states "My understanding of the situation, Your Honor, is that Ungaretti . . . represented both WorldCom, in fact, and Dona Miller and WorldCom in certain employment-related matters previous to its representation of Kennedy in this particular case, and those employment matters were unrelated.").) On the other hand, before the conflicts issue raised the potential of Pirogovsky's and Ungaretti's disqualification, Pirogovsky asserted that the ERISA Action and the instant matter had a stronger connection. (*See* Second Mot. to Compel, 8 (stating that documents produced by Miller in that former litigation have "obvious relevance and responsiveness . . . to Kennedy's requests.").) *See also id*. at 10 ("the ERISA documents that the Debtors chose to ignore are not 'unconnected' at

12

all from this dispute; to the contrary they are directly relevant . . . Though the legal questions in the ERISA litigation may not be directly relevant to this dispute, many of the documents that formed a part of that litigation are directly relevant to this dispute.").

Currently, the only relevant claim and defense in the action is whether an agreement exists between Kennedy and WorldCom. The ERISA Action presented no similar issues or overlapping facts. That was a consolidated class action by and on behalf of participants in the WorldCom 401(k) Salary Savings Plan, i.e., WorldCom employees, who sought recovery for investment losses through purchases of WorldCom stock through the company's 401(k) plan. That action was premised on violations of ERISA, and named as defendants certain officers, directors and employees of WorldCom, as well as Merrill Lynch Trust Company of America, the trustee for the 401(k) plan, and Arthur Andersen LLP, the accounting firm that audited the WorldCom financials and the 401(k) plan. A key allegation was that "WorldCom's accounting manipulations and dissemination of material misrepresentations are alleged to have affected the price of its securities and to have misled investors regarding the true value of the company." *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 752 (S.D.N.Y. 2003).

Kennedy's claim, on the other hand, has little or nothing to do with any issues raised in the ERISA Action or the securities class action. Kennedy claims that WorldCom retained it to audit its employee benefit plans in order to save WorldCom money and to ensure compliance with their fiduciary duties in regard to various benefit plans, such as reviewing UNUM's administration of a self-insured Long-Term Disability plan. The purported agreement attached to Kennedy's proof of claim supports no interpretation that would bring that agreement within the scope of the issues in the

ERISA Action or the securities class action. The purported agreement shows that Kennedy was to review social security disability plans and claims, and pursue social security disability offsets with WorldCom employees who were on disability, tasks far from the allegations contained in the ERISA Action or the securities class action.

The Court finds it extremely unlikely that documents gathered for the ERISA Action or the securities class action would be relevant to the issue of whether an agreement existed between Kennedy and WorldCom. The Court does not accept Kennedy's assertion that simply because those documents gathered for the ERISA Action and the securities class action may be from the Boca Raton office that they have obvious relevance. The Court also considers a search of three million documents to be an undue burden in light of the tenuous connection between the Kennedy-WorldCom dispute and the ERISA Action.

1. *The Ruling on the Motion to Compel*

Federal Rule of Civil Procedure 26,[10] although it contemplates liberal discovery, also contains a measure of proportionality. According to the Advisory Committee notes, the Court must balance factors such as the nature and complexity of the lawsuit and the potential for a discovery "war of attrition" to determine whether proposed discovery is warranted. *See Gucci Am., Inc. v. Costco Cos.*, 2000 WL 60209 (S.D.N.Y. Jan. 24, 2000) (citing Advisory Committees Notes on 1983 Amendment to Fed.R.Civ.P. 26(b)).

For the reasons discussed above, the Court denies Kennedy's Second Motion to Compel to the extent that the document requests call for a review of the three million documents gathered for the ERISA Action or the securities class action. Regarding the

---

[10] That rule is made applicable to the instant matter pursuant to Federal Rules of Bankruptcy 7026 and 9014.

14

Dixon documents, WorldCom has stated that to the extent non-privileged communications existed and were in the custody and control of WorldCom, they were produced to Kennedy.  (WorldCom Response, at 11.)  The Court accepts WorldCom's assertion.  Kennedy's displeasure with the production is not enough to move the Court to impose sanctions or to force WorldCom to turn over privileged documents.  Regarding the VEBA documents, the Court previously denied Kennedy's requests for documents concerning the Trusts and WorldCom should not be compelled to produce any additional VEBA documents.  Regarding any documents from Miller's hard drive, however, it is not clear to the Court that WorldCom has conclusively answered whether it can or will produce relevant documents from that source.  In WorldCom's response to Kennedy's motion, WorldCom responded that it is "looking into information retrieved from the hard drives from Boca Raton office."  (WorldCom Response, at 6 n.2 (WorldCom stated it was in the process of determining what information was retrieved from Miller's hard drive and agreed that "if such documents actually exist and relate to Kennedy or its work for Debtors, Debtors agree that those additional documents should be produced.").)  The Court directs WorldCom to furnish the results of that inquiry to the Court and Kennedy and produce any relevant documents from Miller's hard drive to Kennedy within sixty days of a settled order consistent with this opinion.

    Furthermore, the reasoning in the February Opinion, such as the concern for relevancy, applies to certain document requests in the Second Motion to Compel.  Accordingly, the following document requests are denied because they are not relevant to the parties' specific claims or defenses – Document Requests Nos. 25, 30, 42, 43, 72, 75, 78, 79, and 83.  The following document requests should be responded *to the limited*

15

*extent* that WorldCom shall produce any responsive documents if they are able to be retrieved from the hard drive of Miller – Document Requests Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, and 76.

   *2. The Ruling on the Motion For Rule to Show Cause*

The same analysis applies to the Motion for Rule to Show Cause. The Boca Raton Documents do not have to be reviewed. The Court expects WorldCom to furnish the results of the inquiry into Miller's hard drive and produce any documents responsive to the document requests listed in the Motion For Rule to Show Cause to Kennedy within sixty days of the settled order consistent with this opinion. Based on the foregoing, Kennedy's request for sanctions is denied.

## III.  CONCLUSION

Within sixty days of the settled order consistent with this opinion, the Debtors shall produce the results of the inquiry into Miller's hard drive and any relevant documents to Kennedy. In all other respects, Kennedy's motions are denied.

The Debtors are directed to settle an order consistent with this opinion.

Dated:  New York, New York
        August 25, 2008

                                             **s/Arthur J. Gonzalez**
                                             UNITED STATES BANKRUPTCY JUDGE