**UNITED STATES BANKRUPTCY COURT**                    **FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**
_____
                                            :
In re                                       :        Chapter 11
                                            :
WORLDCOM, INC., *et al.*,                   :
                                            :        Case No. 02-13533 (AJG)
                                            :
                         Reorganized Debtors. :
_____:

**OPINION REGARDING MOTION OF REORGANIZED DEBTORS TO
ENFORCE PLAN AND CONFIRMATION ORDER AGAINST CHAPTER 7
TRUSTEE OF ONESTAR LONG DISTANCE, INC.**

**A P P E A R A N C E S**

STINSON MORRISON HECKER LLP
Special Counsel for Reorganized Debtors
1201 Walnut Street, Suite 2700
Kansas City, MO 64106

          Mark A. Shaiken, Esq.
                    Of Counsel

KILPATRICK STOCKTON LLP
Attorneys for Elliott D. Levin, Chapter 7 Trustee of OneStar Long Distance, Inc.
1100 Peachtree Street, NE, Suite 2800
Atlanta, GA 30309

          Todd C. Meyers, Esq.
          Colin M. Bernardino, Esq.
                    Of Counsel

## I.   <u>INTRODUCTION</u>

Before the Court is the motion of reorganized debtors, WorldCom, Inc. and its

subsidiaries (collectively, "WorldCom" or the "Reorganized Debtor"), to enforce the

Debtors' Modified Second Amended Joint Plan of Reorganization (the "WorldCom

Plan") and WorldCom confirmation order (the "WorldCom Confirmation Order") against

Elliot D. Levin, the Chapter 7 Trustee (the "OneStar Trustee") for OneStar Long

Distance, Inc. ("OneStar").[1]

## II.  **JURISDICTION**

The Court has subject matter jurisdiction over this proceeding pursuant to §§ 1334

and 157(b) of title 28 of the United States Code, the July 10, 1984 "Standing Order of

Referral of Cases to Bankruptcy Judges" of the United States District Court for the

Southern District of New York (Ward, Acting C.J.), and paragraph 32 of the WorldCom

Confirmation Order confirming the WorldCom Plan under chapter 11 of title 11 of the

United States Code.[2]  This matter is a core proceeding pursuant to § 157(b)(2)(B) of title

28 of the United States Code.  Venue is proper before the Court pursuant to §§ 1408 and

1409 of title 28 of the United States Code.

It is not contested that OneStar received notice of the WorldCom bankruptcy case

and proceedings and was served with all relevant materials relating to the WorldCom

Plan and corresponding disclosure statement.  Further, OneStar filed five timely proofs of

claim in the WorldCom bankruptcy case.

## III.  **BACKGROUND**

On July 21, 2002, and continuing thereafter, WorldCom, Inc. and certain of its

subsidiaries filed for bankruptcy under chapter 11 of the Code in the United States

Bankruptcy Court for the Southern District of New York.  By orders dated July 22, 2002

and November 12, 2002, the chapter 11 cases were consolidated and jointly administered

---

[1] In defining certain terms, the Court has included the name of the specific debtor that is referenced by the definition.  Although at times this results in awkwardness in reading, it is necessary to define terms in this manner for the sake of clarity.

[2] Title 11 of the United States Code is also known as the Bankruptcy Code and shall be defined hereinafter as the "Code."

2

for procedural purposes.  Thereafter, the Debtor continued to operate its businesses and manage its properties as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Code.  On October 31, 2003, the Court signed the WorldCom Confirmation Order (the "WorldCom Confirmation Order Date").  The WorldCom Plan became effective on April 20, 2004 (the "WorldCom Effective Date").[3]  Upon the WorldCom Effective Date, WorldCom changed its name to MCI, Inc.  On January 6, 2006, MCI, Inc. merged with Verizon Communications, Inc. ("Verizon") and under the merger agreement, Verizon, among other things, assumed the liabilities of MCI, Inc.  MCI, Inc. is now doing business as Verizon Business Global, LLC.

Between the WorldCom Confirmation Order Date and WorldCom Effective Date, on December 31, 2003 (the "OneStar Petition Date"), certain creditors of OneStar filed an involuntary chapter 7 bankruptcy petition against OneStar in the United States Bankruptcy Court for the Southern District of Indiana (the "Indiana Bankruptcy Court").  An order for relief was entered on February 3, 2004 converting OneStar's involuntary chapter 7 case to a voluntary case under chapter 11 of the Code.  After substantially all of its assets were sold, OneStar's chapter 11 case was converted back to a case under chapter 7 of the Code on January 13, 2005.  An interim trustee was appointed on January 13, 2005.  On February 10, 2005, the OneStar Trustee was elected.

Before and after the OneStar Petition Date, a WorldCom subsidiary, MCI, provided OneStar with telecommunications services pursuant to various telecommunications services agreements, for which OneStar paid WorldCom, and which OneStar resold to its customers.  All payments for such services were received by

---

[3] Article I, § 11.01 specified eight conditions that had to be met or waived for the Plan to become effective.  Article I, § 1.45 of the Plan defined the term "WorldCom Effective Date" to mean "the first business day on which the conditions specified in Section 11.01 of the Plan have been satisfied or waived."

WorldCom after WorldCom filed its petition.[4]  On August 16, 2005, the OneStar Trustee

commenced an adversary proceeding (the "Adversary Proceeding") against WorldCom in

the Indiana Bankruptcy Court seeking the avoidance and recovery of certain transfers

under §§ 547, 549, and 550 of the Code that OneStar made to WorldCom during the 90-

day period prior to the OneStar Petition Date.  Upon motion by WorldCom, the

Adversary Proceeding was stayed by the Indiana Bankruptcy Court pending resolution of

its motion to enforce the WorldCom Plan before the Court.  The Adversary Proceeding

asserts that payments received by WorldCom are avoidable by the OneStar Trustee as

preferential and unauthorized postpetition transfers under §§ 547 and 549, respectively,

of the Code, and seeks to recover those transfers for the benefit of the OneStar estate.  Of

these transfers, the OneStar Trustee asserts that WorldCom received $981,242.95 after

the commencement of WorldCom's case, during the OneStar preference period and

before the WorldCom Confirmation Order Date, and $1,490,615.07 was received during

the OneStar preference period and between the WorldCom Confirmation Order Date and

WorldCom Effective Date.  Further, the OneStar Trustee seeks to avoid $100,000.00 that

was received by WorldCom between the OneStar Petition Date and the WorldCom

Effective Date.[5]

       At a hearing held on May 20, 2008, the Court directed the parties to file

supplemental briefs addressing the issue of whether the OneStar Trustee is bound by the

terms of the WorldCom Plan under the principles of res judicata.  (Tr. 3:3-11, May 20,

2008, Case No. 02-13533, Docket No. 19330.)  Specifically, the parties were to address

---

[4] It is unclear whether all services provided by WorldCom to OneStar were provided after WorldCom filed its petition.

[5] The amounts and dates set forth are a summary of the amounts and dates asserted in the OneStar Trustee's complaint in the Adversary Proceeding in the Indiana Bankruptcy Court.  This summary does not represent findings of fact regarding the claims set forth in the Adversary Proceeding.

whether a bankruptcy trustee seeking to pursue an avoidance action is bound by the notice of the confirmation order that the debtor received in another bankruptcy case, when the debtor received the notice before it became a debtor by its filing of a bankruptcy case while it was a creditor in that other bankruptcy case.[6]  *Id.*  The parties submitted their respective briefs, with the final brief being filed on July 28, 2008.  No further hearing was held.

## IV.  <u>THE PARTIES' CONTENTIONS</u>

### a.  *WorldCom's Arguments*

WorldCom argues the OneStar Trustee violated the Court's discharge injunction by knowingly commencing the Adversary Proceeding seeking to avoid transfers made prior to the effective date of the WorldCom Plan.  WorldCom asserts that these claims, which arose prior to the WorldCom Effective Date, were discharged by the WorldCom Plan, the WorldCom Confirmation Order and under the Code.  Therefore, it argues that any assertion of such claims had to be brought as an administrative expense claim request in this Court within the applicable statute of limitations, in OneStar's bankruptcy case, under § 546(a).[7]

---

[6] The parties were directed to assume, for the purposes of briefing the issue, that (1) the WorldCom Plan is interpreted in the way that the Reorganized Debtors suggest and that a claim that arises post-confirmation and pre-effective date is discharged, and (2) OneStar, having notice of the WorldCom Confirmation Order, would be bound by the terms of the WorldCom Plan and the WorldCom Confirmation Order and therefore, under the principles of res judicata, OneStar could not collaterally attack the WorldCom Plan's discharge of claims arising within the post-confirmation/pre-effective date period.  (Tr. 2:17-25, 3:1-2, May 20, 2008, Case No. 02-13522, Docket No. 02-13533.)

[7] An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of –
    (1)  the later of –
        (A)  2 years after the entry of the order for relief; or
        (B)  1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
    (2)  the time the case is closed or dismissed.

WorldCom also argues that the OneStar Trustee had notice of WorldCom's bankruptcy proceeding but refused to dismiss the Adversary Proceeding and file an request for an administrative expense claim in WorldCom's chapter 11 case, or seek relief from the discharge injunction to proceed with the Adversary Proceeding. WorldCom asserts that since litigating the Adversary Proceeding violated the discharge injunction, it is void. WorldCom seeks an entry of an order directing the OneStar Trustee to dismiss the Adversary Proceeding. Further, WorldCom argues that since the filing of the Adversary Proceeding was void, any subsequent filing of the avoidance action, although not barred by an administrative bar date – since none was set, nevertheless would be subject to dismissal because of the statute of limitations in the OneStar case for filing avoidance actions under § 546(a) has expired.

### b. *The OneStar Trustee's Arguments*

The OneStar Trustee argues that since the OneStar estate's causes of action arose postpetition in WorldCom's case, they do not fit the definition of a "claim" as provided by the WorldCom Plan and were not discharged by the WorldCom Plan. The OneStar Trustee contends that since the claims in the Adversary Proceeding do not fit the WorldCom Plan's definition of a claim, he is not enjoined under the WorldCom Plan or the WorldCom Confirmation Order from prosecuting the Adversary Proceeding. Further, he contends that even if the avoidance actions fall within the definition provided for by the WorldCom Plan, § 1141(d) does not permit a plan to discharge post-confirmation/pre-

---

11 U.S.C. § 546(a). The order for relief in OneStar's bankruptcy case was entered on February 3, 2004 and the OneStar Trustee was elected on February 10, 2005. Accordingly, under § 546(a)(1)(B), the avoidance claims against WorldCom could not be brought after February 10, 2006.

effective date claims.  Therefore, such a provision providing for the discharge of post-confirmation/pre-effective date claims would violate § 1129(a)(1)[8] and be unenforceable.

## V. <u>DISCUSSION</u>

### a. *Post-Confirmation/Pre-Effective Date Claims*

Article I, § 1.25 of the WorldCom Plan defines claim as having "the meaning set forth in section 101 of the . . . Code."  Citing *LTV Steel Co. v. Shalala* (*In re Chateaugay Corp.*), 53 F.3d 478 (2d Cir. 1995), the OneStar Trustee asserts that only a prepetition claim is a claim under the Code because "[h]owever broadly 'claim' is understood, it is clear that the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition."  *Id.* at 497.  The Court finds that the OneStar Trustee interprets the term "claim" too narrowly.

Contrary to the OneStar Trustee's argument, *LTV* does not stand for the proposition that only a prepetition claim is a claim under the Code.  The Second Circuit did not hold that a right to payment arising postpetition is not a claim under the Code.[9] Rather, the Second Circuit discussed that a valid claim arises prepetition in the context of requiring creditors with prepetition claims to file a "proof of claim."  *See id.* at 496.  In

---

[8] "The court shall confirm a plan only if all of the following requirements are met: The plan complies with the applicable provisions of this title . . . ."  11 U.S.C. § 1129(a)(1).

[9] The debtor in *LTV* asserted that certain of its obligations under the Coal Act were prepetition debts and should be disallowed since no timely proof of claim was filed.  53 F.3d at 496.  The Second Circuit, utilizing the two-pronged test provided above, found that the debtor's obligations under the Coal Act did not accrue prepetition but rather six years after filing of the debtor's bankruptcy and, therefore, were not prepetition claims that must be disallowed as untimely.  *Id.* at 497 (stating that the debtor's liability arose on the day the Coal Act was enacted).  Even though the debtor's obligations did not arise prepetition, the Second Circuit went on to discuss that postpetition claims against the debtor are still dealt with under the Code.  *Id.* at 497.  The *LTV* court held that Coal Act obligations of the debtor incurred during the pendency of its bankruptcy were not prepetition claims but rather administrative expenses in the nature of taxes incurred by the estate entitled to administrative priority under 11 U.S.C. § 503(b)(1)(B).  *Id.* at 498.

that context, the claim for which a "proof of claim" is filed is a prepetition one.

Comparatively, a claimant whose right to payment against the estate arises postpetition does not file a proof of claim under §§ 501 and 502, but rather can file their claim as a request for payment under § 503. *See In re Serubo*, 1994 Bankr. LEXIS 229, at *27-28 (Bankr. E.D. Pa. 1994) ("An administrative claimant technically is not a 'creditor' as defined by the . . . Code, and, therefore, is not required to file a proof of claim by virtue of Rules 3002 or 3003.") (citing *In re Polysat, Inc.*, 152 Bankr. 886 (Bankr. E.D. Pa. 1993)). "As a general rule, a request for priority payment of an administrative expense pursuant to . . . Code § 503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor['s] estate, rather than from a prepetition transaction with the debtor . . . ." *In re Hemingway Transp.*, 993 F.2d 915, 929 (1st Cir. 1993) (citing *In re Hemingway Transp., Inc.*, 954 F.2d 1, 5 (1st Cir. 1991) (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)). Under § 101(5)(A), an entity with a right to payment against the estate has a claim. The timing of when that right to payment arose does not affect its status as a claim under the Code but rather the timing only affects whether the claimant must file a proof of claim or a request for an administrative expense. Therefore, even though the OneStar Trustee's right to payment did not arise prepetition, it is still a claim against the estate subject to treatment under the Code, such as classification as an administrative expense.

The Court recognizes that under § 507, expenses and claims are listed separately and given different priority. 11 U.S.C. § 507 ("The following expenses and claims have priority in the following order . . . ."). Also, § 503 does not define an administrative expense in terms of a claim but rather as the "actual and necessary costs and expenses of

8

preserving the estate." 11 U.S.C. § 503(b)(1)(A).  However, under § 503(a), "an entity

may file a *request for payment* of an administrative expense . . . ."  11 U.S.C. § 503(a)

(emphasis added).  Logically, an entity who files a request a payment of an administrative

expense under § 503(a) must be asserting a right to payment, as that term is used in

§101(5)(A).  *Compare* 11 U.S.C. § 503(a) *with* 11 U.S.C. § 101(5)(A).  Further, the Code

equates a claim with an administrative expense in § 1129(a)(9)(A).  Under that section, in

reference to the requirement that administrative expenses be paid in full under a plan of

reorganization, the Code equates an administrative expense with a claim by stating "with

respect to a claim of a kind specified in section 507(a)(2) . . . ."  11 U.S.C. §

1129(a)(9)(A).  As discussed above, § 507(a)(2) provides second priority to

administrative expenses allowed under § 503(b).  Section 1129(a)(9)(A) supports the

position that a claim under the Code is not limited to those rights to payment that arise

prepetition.  As one court noted, "[r]egardless of the semantics involved," a request for a

payment of a postpetition administrative expense is an assertion of a "'right to payment'

from the estate and thus a 'claim' against the estate."  *See In re Commercial Fin. Servs.*,

252 B.R. at 525.

   As demonstrated by the language of the Code, the legal obligations of the debtor

subsumed under the term claim are not limited to prepetition claims.  *See Snider v.

Commercial Fin. Servs.* (*In re Commercial Fin. Servs.*), 252 B.R. 516, 525 (Bankr. N.D.

Okla. 2000) ("The broad definition of claim in Section 101(4) [now 101(5)] includes of

necessity post-petition obligations incurred by the trustee or debtor in possession.")

(citing *In re MacDonald*, 128 B.R. 161, 164 (Bankr. W.D. Tex. 1991)).  Section

101(5)(A) does not restrict the term claim to include that which only arises prepetition.

Although the Code does provide that creditors are those entities that have a "claim against the debtor that arose at the time of or before the order for relief concerning the debtor," the Code does not confine the definition of claim to only those rights against the estate for payment held by a creditor as defined under § 101(10)(A).  *See* 11 U.S.C. § 101(10)(A).  If a claim, as the OneStar Trustee contends, can only arise prepetition, then a postpetition claimant would not have a right to payment under the Code.  The structure of the Code does not support that interpretation.  *See* 11 U.S.C. § 1129(a)(9)(A).  Therefore, the OneStar Trustee's claims, which arose postpetition in WorldCom's case, satisfy the definition of claim as provided for by the WorldCom Plan and the Code.

> b.  *The OneStar Trustee Is Not Bound by the WorldCom Plan When Asserting the Avoidance Actions*

Although the claims of the OneStar Trustee regarding the avoidance actions fit within the definition of claim as provided by the WorldCom Plan and the Code that does not result in the OneStar Trustee being bound by the WorldCom Plan in asserting such actions.  The contentions of both parties are premised fundamentally on whether the OneStar Trustee is bound by the WorldCom Plan and the discharge injunction.  Therefore, if the WorldCom Plan is not binding on the OneStar Trustee in his assertion of the avoidance actions, then the parties' arguments concerning the applicability of the WorldCom Plan's provisions to the OneStar Trustee's claims asserted herein need not be addressed.  For that reason, the Court first will determine whether and to what extent the OneStar Trustee is bound by the WorldCom Plan.

I.  *Section 1141(a) and Successors in Interest*

Section 1141(a) identifies the parties that are bound to a confirmed plan of

reorganization and provides

> Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions
> of a confirmed plan bind the debtor, any entity issuing securities under the plan,
> any entity acquiring property under the plan, and any creditor, equity security
> holder, or general partner in the debtor, whether or not the claim or interest of
> such creditor, equity security holder, or general partner is impaired under the plan
> and whether or not such creditor, equity security holder, or general partner has
> accepted the plan.

11 U.S.C. § 1141(a).  Included amongst those parties bound to a plan under § 1141(a) are

creditors, whether or not such creditor is impaired under the plan or has accepted the

plan.  The Code defines a creditor as an "(A) entity that has a claim against the debtor

that arose at the time of or before the order for relief concerning the debtor; (B) entity

that has a claim against the estate of a kind specified in section[s] 348(d), 502(f), 502(g),

502(h) or 502(i) of [title 11]; or (C) entity that has a community claim . . . ."  11 U.S.C. §

101(10).  Under § 1141(a), the WorldCom Confirmation Order and the WorldCom Plan

bind OneStar because it was a creditor of WorldCom, as demonstrated by the five proofs

of claim it filed in WorldCom's bankruptcy case.  *See* 11 U.S.C. § 501(a) ("A creditor . . .

may file a proof of claim . . . .").  Given that OneStar was bound by the WorldCom Plan,

it was also bound by its provisions.[10]

---

[10] However, a party is bound only to those plan provisions that would not be found unenforceable
under §§ 1129(a)(1) or (3).  As indicated previously, here the OneStar Trustee argues that Article X, §
10.02 of the WorldCom Plan is unenforceable against any party under § 1129(a)(1) since it impermissibly
expands the scope of § 1141(a)(1).  Article X, § 10.02 provides

> Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan
> and the payments and distributions to be made hereunder shall be in exchange for and in complete
> satisfaction, discharge, and release of all existing debts and Claims . . . of any kind, nature, or
> description whatsoever . . . against or in the Debtors or any of their assets or properties to the
> fullest extent permitted by section 1141 of the . . . Code.  Except as provided in the Plan, *upon the
> Effective Date*, all existing Claims against the Debtors . . . shall be, and shall be deemed to be,
> discharged and terminated, and all holders of Claims . . . shall be precluded and enjoined form

The filing of OneStar's bankruptcy on December 31, 2003 did not alter OneStar's status as being bound by the WorldCom Plan under § 1141(a).  Upon the filing of the petition, a separate entity was created, an estate, consisting of all of OneStar's legal and equitable interests in property.  *See* 11 U.S.C. § 541.  The filing of a petition under any chapter creates an estate that includes, among other things, the causes of action that belonged to the prepetition entity.  Causes of actions belonging to the debtor at the time of the commencement of the case are undoubtedly property of the estate.  *See e.g., Schertz-Cibolo-Univ. City Indep. Sch. Dist. v. Wright* (*In re Educators Group Health Trust*), 25 F.3d 1281, 1283–84 (5th Cir. 1994) ("The term 'all legal or equitable interests' has been defined broadly to include causes of action."); *see also La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988).  However, the filing of a petition also creates several statutory causes of action that belong to the estate, such as the avoidance of preferential transfers, fraudulent conveyances, and certain postpetition transaction.  11 U.S.C. §§ 547, 548, 549.  These causes of action only arise upon the filing of a petition and, whether pursued by a trustee or debtor in possession under § 1107(a), any recovery obtained from an avoided transfer is not preserved for the debtor but rather for the benefit of the estate and, consequently, the estate's creditors.  11 U.S.C. § 551.

WorldCom argues that since the OneStar Trustee is the successor in interest to OneStar, the WorldCom Plan and all its provisions bind him since the WorldCom Confirmation Order was a final order binding upon OneStar.  *See Silverman v. Tracar,*

---

asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim . . . based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim . . . .
*See* Article X, § 10.02 (emphasis added).
In addition, Article XII, § 12.01, a provision which vests exclusive jurisdiction in the Court over the substantive adjudication of administrative claims, may conflict with § 1129(a)(3) by contravening the rights afforded by 28 U.S.C. § 959(a).

S.A. (*In re Am. Preferred Prescription, Inc.*), 255 F.3d 87, 92 (2d Cir. 2001) ("The

confirmation of a plan in a Chapter 11 proceeding is an event comparable to the entry of

a final judgment in an ordinary civil litigation.") (citing *Trulis v. Barton*, 107 F.3d 685,

691 (9th Cir. 1997); *First Union Commercial Corp. v. Nelson, Mullins, Riley and

Scarborough* (*In re Varat Enterprises, Inc.*), 81 F.3d 1310, 1315 (4th Cir. 1996)).

WorldCom's argument is based on the premise that since the trustee is directed to collect

and reduce to money property of the estate, 11 U.S.C. § 704(1), it can pursue causes of

action belonging to the debtor that have become property of the estate.  *See* 11 U.S.C. §

323(b).  Therefore, the trustee succeeds to prepetition causes of actions belonging to the

debtor and if a prepetition cause of action belonging to the debtor is adjudicated, then that

judgment applies to the trustee as well.  *See Teltronics Servs. Inc. v. L.M. Ericsson

Telecomms., Inc.,* 642 F.2d 31, 37 (2d Cir. 1981).  WorldCom's argument is overbroad

because the OneStar Trustee only succeeds to a judgment binding against OneStar *to the

extent OneStar's interests are involved.  See Coleman*, 272 F.2d at 622; *Conine v.

Universal Oil Prods. Co*., 2006 U.S. Dist. LEXIS 42939, 8-9 (W.D. La. June 26, 2006)

(stating that a "trustee in bankruptcy, as a successor in interest to the debtor's property,"

is bound by any judgment rendered against that property).

WorldCom misconstrues the role of the trustee and the nature of the actions being

asserted by the OneStar Trustee.[11]  When the OneStar Trustee was elected the

representative of the estate, he became a successor in interest to OneStar.  *See Coleman v.

Alcock*, 272 F.2d 618, 621 (5th Cir. 1959) ("The Trustee is, of course, a successor of the

[debtor] for many purposes.").  As a successor to OneStar's interests, the OneStar Trustee

---

[11] In a chapter 11 case, a debtor in possession has the same powers and duties of a trustee and may
assert the avoidance actions mentioned above.  11 U.S.C. § 1107(a).

13

is bound by any judgments to the extent OneStar was bound. *See Teltronics* , 642 F.2d at

37 ("[A] judgment rendered against a bankrupt prior to his bankruptcy is conclusive upon

the trustee.") (citing 1B J. Moore, Federal Practice P 0.419(3.-6) at 3124-25 (2d ed.

1965)); *see also Coleman*, 272 F.2d at 622 ("If the [debtor's] property is involved the

trustee will be bound by the judgment to the same extent as any other person who

succeeds to an interest in property . . . .").  But as the representative of the estate, *see* 11

U.S.C. § 323(a), " the Trustee is not simply the successor in interest to the Debtor: he

represents the interest of all creditors of the Debtor's bankruptcy estate." *Corzin v. Fordu*

(*In re Fordu*)*,* 201 F.3d 693,705 (6th Cir. 1999).  Even though the OneStar Trustee is a

successor in interest to the causes of actions and judgments of OneStar, the avoidance

actions at issue were never an interest in property of OneStar, but rather belong to

OneStar's creditors.  *See Bethlehem Steel Corp. v. Moran Towing Corp.*, 390 B.R. 784,

786 (Bankr. S.D.N.Y. 2008) ("Avoidance actions brought pursuant to the . . . Code never

belonged to the Debtor, but rather were creditor claims that could only be brought by a

trustee or debtor in possession . . . .").  The avoidance actions only arose upon the filing

of OneStar's petition[12] and at their inception became a part of the OneStar estate.

Therefore, OneStar did not bind the OneStar Trustee in his pursuit of such actions.

    Further, in *Allegaert v. Perot*, the court held that a prepetition debtor could not

bind a trustee to a prepetition agreement to arbitrate avoidance claims because those

claims are "statutory causes of action belonging to the trustee, not to the bankrupt, and

the trustee asserts them for the benefit of the bankrupt's creditors, whose rights the trustee

---

[12] The right to recover preferential transfers by a trustee or debtor in possession becomes a claim, as that term is defined in § 101, and comes into existence once the transferor of that payment sought to be recovered files a petition under the Code.  *See Wallach v. Frink Am., Inc.* (*In re Nutall Equip. Co., Inc.*), 188 B.R. 732, 736 (Bankr. W.D.N.Y. 1995).

enforces." 548 F.2d 432, 436 (2d Cir. 1977). OneStar, at least in its own behalf, could

not pursue any of the avoidance actions asserted by the OneStar Trustee. *Cf. In re*

*Hughes*, 704 F.2d at 822 ("There should be no question but that the debtor, as such,

cannot maintain an action to set aside his own transfer as preferential under section

547.") (citing 4 COLLIER ON BANKRUPTCY ¶ 547.52[5] (15th ed. 1982)); *see also In re*

*Pointer*, 952 F.2d 82, 87 (5th Cir. 1992) ("[Section] 549 is an avoidance power belonging

solely to the trustee or debtor-in-possession."). Hence, the OneStar Trustee, as a

successor in interest to the claims and interests of OneStar, did not acquire the OneStar

avoidance actions by virtue of his successor in interest status as to OneStar.

The OneStar Trustee may assert the avoidance actions on behalf of OneStar's

creditors since OneStar never had an interest in those causes of actions and could not

bind the OneStar Trustee from pursuing them. Although the OneStar Trustee is bound by

the WorldCom Plan in pursuing causes of action derivative of OneStar's rights and

interests, such binding effect does not apply to the OneStar Trustee's pursuit of causes of

actions for the benefit of the estate's creditors. Consequently, the parties' remaining

arguments concerning the applicability of the WorldCom Plan's provisions to the

OneStar Trustee's claims need not be addressed.[13]

---

[13] Regarding the OneStar Trustee's argument as to whether a claim that arises post-confirmation/pre-effective date can be discharged under a plan, the Court notes that since WorldCom did not establish a bar date by which administrative claims against the estate must be filed, the OneStar Trustee could, as WorldCom argues, file the Adversary Proceeding as an administrative claim in WorldCom's bankruptcy case. The filing of that action would be limited only by the relevant statute of limitations, in OneStar's case, under § 546(a) for avoidance actions. Because of the absence of a bar date for administrative claims, there is no concern that the OneStar Trustee's claims would be discharged without providing an opportunity to present his claims since his claims can still be filed. *See Corning v. ZiLOG, Inc. (In re ZiLOG, Inc.)*, 450 F.3d 996, 1001-02 (9th Cir. 2006) ("[C]laims arising between the Plan's confirmation and Effective Dates [cannot be discharged] without first allowing for the presentation of such claims.); *Holly's Inc. v. City of Kentwood (In re Holly's, Inc)*, 172 B.R. 545, 561 (Bankr. W.D. Mich. 1994) (expressing concern that a creditor whose sole claim arises on the effective date of the plan would be discharged without being listed by the debtor and without any notice of the discharge). Nonetheless, the issue here is whether the WorldCom Plan and its provisions can bind the OneStar Trustee, not whether he

15

c.  Res Judicata Does Not Bar the OneStar Trustee From Pursuing Avoidance
Actions

Although the OneStar Trustee is not bound by the WorldCom Plan, when

asserting avoidance actions on behalf of the estate, by virtue of his status as the successor

in interest to OneStar; arguably an issue remains as to whether, and to what extent, the

OneStar Trustee may be bound by the WorldCom Plan under the principles of res

judicata.  One court noted in dicta that "the doctrine of res jud[i]cata, in addition to §

1141(a), can bind parties to the provisions of a confirmed plan." *Dycoal, Inc. v. IRS* (*In*

*re Dycoal, Inc.*), 2006 U.S. Dist. LEXIS 25078, at *39 (W.D. Pa. 2006); *see also*

*Rainbow Trust v. Moulton Constr.* (*In re Rainbow Trust*), 200 B.R. 785, 788 (Bankr. D.

Vt. 1996).[14]  "Res judicata, or claim preclusion, precludes a litigant from advancing in a

new action all claims or defenses that were or could have been raised in a prior

proceeding in which the same parties or their privies were involved and that resulted in a

judgment on the merits."  *Liona Corp. v. PCH Assocs.* (*In re PCH Assocs.*), 949 F.2d

585, 594 (2d Cir. 1991) (citations omitted).  As a binding final order, a confirmation

order prohibits those parties bound under § 1141(a) or their privies from relitigating any

matter that was or could have been raised at confirmation.  *See Miller v. Meinhard-*

*Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) ("[A]n arrangement confirmed by a

---

was provided an opportunity to present his claims.  Therefore, the Court does not reach the issue as to
whether claims that arise during the post-confirmation/pre-effective date period can be subject to discharge
under § 1141.

[14] [A]t least one exception apparently exists with respect to the rule that § 1141(a) describes the
universe of parties that may be bound by a confirmed plan or confirmation order . . . Such
exception is when an individual or entity appears and participates in litigation regarding an issue
dealt with by a confirmed plan or confirmation Order, or is in privity with such an individual or
entity, such that such individual or entity (a) rises to the level of a party with respect to such plan
or order, and (b) is thus subsequently bound by such plan or order by virtue of an application of the
doctrine of res judicata regardless of whether such individual or entity is named within §
1141(a).

*Dycoal, Inc. v. IRS* (*In re Dycoal, Inc.*), 327 B.R. 220, 223 (Bankr. W.D. Pa. 2005).

bankruptcy court has the effect of a judgment rendered by a district court, and any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine *res judicata*."); *Circle K Corp. v. Circle K Corp.*, 181 B.R. 457, 462 (Bankr. D. Ariz. 1995) ("Parties subject to the res judicata effect of a Chapter 11 plan include creditors and parties in privity or successors in interest.").

Res judicata bars a subsequent litigation when "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties [or in privity], (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *See Corbett v. MacDonald Moving Servs.,* 124 F.3d 82, 88 (2d Cir. 1997) (citing *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)). The only element at issue here is whether OneStar and the OneStar Trustee are the same party or in privity regarding the avoidance actions.

## I. *Same Party*

Res judicata requires that the litigants in the prior adjudication and the pending litigation be the same parties. *See Corbett*, 124 F.3d at 88. WorldCom cites to the Supreme Court's decision in *NLRB v. Bildisco*, 465 U.S. 513 (1984) to support the proposition that OneStar and the OneStar Trustee are the same entity. *Id.* at 527-28 ("For our purposes, it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing."); *see also* 11 U.S.C. § 1107(a) (providing the debtor in possession with most of the powers, functions and duties of a trustee). *Bildisco*

17

is inapplicable to the situation here since *Bildisco* dealt with whether a debtor and debtor in possession or trustee, *see* 11 U.S.C § 1107(a), were the same entity for purposes of rejecting executory contracts in the context of collective bargaining agreements. *See Bildisco*, 465 at 527-28. The Supreme Court rejected the argument that the debtor in possession is a different entity from the debtor with regard to rejecting executory contracts because "it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place." *Id.*

Here, the issue is whether OneStar and the OneStar Trustee are the same party for purposes of asserting avoidance actions under §§ 547 and 549. The *Bildisco* court treated a debtor and a debtor in possession as the same entity because both are bound by the terms of prepetition executory contracts. *Id.* In comparison, the basis for the trustee's assertion of an avoidance action is statutory, not contractual, and arises upon the filing of a petition, not before such filing. Unlike a prepetition contract whose terms apply to both the prepetition debtor and trustee or debtor in possession, avoidance claims only arise once the estate is created on the petition date and can only be brought by a trustee or debtor in possession on behalf of the estate's creditors. *See Bethlehem Steel Corp.*, 390 B.R. at 793 ("Avoidance claims are not derivative of the debtor's rights; rather, they are statutory claims created in favor of creditors that can only be prosecuted by a trustee or debtor in possession . . . ."). The debtor cannot pursue the avoidance action because the trustee or debtor in possession has sole statutory authority to pursue these actions on behalf and for the benefit of creditors. *Id.* As discussed above, although the OneStar Trustee is a successor in interest to OneStar, they are not the same party as OneStar for the purposes of res judicata analysis because OneStar never possessed the avoidance

actions; therefore the OneStar Trustee could not succeed to them.  Since any avoidance

action arises upon the creation of the estate with the filing of the petition, it is more

appropriate to view a debtor and the estate (whether administered by a debtor in

possession or trustee) as different entities for the purposes of pursuing avoidance actions.

*See e.g., Shopmen's Local 455 v. Kevin Steel Prods., Inc.*, 519 F.2d 698, 704 (2d Cir.

1975) ("[A] trustee in a straight bankruptcy proceeding is *not* the same entity as the pre-

bankruptcy company.  A new entity is created with its own rights and duties, subject to

the supervision of the bankruptcy court.") (emphasis in original).

## II.  *Privity*

Even though the debtor and the estate are separate entities for purposes of

bringing an avoidance action, res judicata applies if the litigants in the prior and current

litigation are in privity.  *See Allegaert* v. *Perot*, 548 U.S. 432, 436 (1977) ("[T]he

existence of this distinction between the bankrupt and the trustee is not necessarily

dispositive.  The significance of the distinction hinges on the facts of each situation."); *In*

*re Teltronics Servs., Inc*., 762 F.2d 185, 190 (2d Cir. 1985) (stating that res judicata

applies if the case involves "the same parties or their privies . . . .").  If the OneStar

Trustee were in privity with OneStar, then he would be "bound with respect to all the

issues that were raised or could have been raised in the previous lawsuit."  *Chase*

*Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) (citing *Comm'r*

*v. Sunnen*, 333 U.S. 591, 597 (1948)).  In the Second Circuit, privity between parties for

purposes of res judicata analysis can exist when (1) there is "substantial identity of the

incentives of the earlier party with those of the party against whom *res judicata* is

asserted," *see id.* at 346; (2) the party in the second action was adequately represented in

19

the first action by another vested with the authority of representation, *see Alpert's Newspaper Delivery, Inc. v. New York Times Co.,* 876 F.2d 266, 270 (2d Cir. 1989); (3) there are successors to a property interest; (4) the party to the second action controls the first action although not a formal party to it; or (5) the party was a co-party to a prior action. *Celotex Corp.*, 56 F.3d at 346 (citing *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (N.Y. 1970)); *accord Sanders Confectionary Prods. v. Heller Fin., Inc.,* 973 F.2d 474, 481 (6th Cir. 1992) ("Res judicata also bars those in privity with parties from bringing suit later. Privity in this sense means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented."); *Latham v. Wells Fargo Bank, N.A.,* 896 F.2d 979 (5th Cir. 1990). It is clear that the OneStar Trustee was neither a co-party to the Confirmation Order nor would he have asserted any control over OneStar during the confirmation proceeding since the Confirmation Order was signed on October 31, 2003 and the OneStar estate, which the OneStar Trustee represents, did not come into existence until December 31, 2003.

In the Second Circuit, privity can also exist where there is substantial identity between the incentives of the earlier party and those of the party whom res judicata is asserted against. *See Celotex Corp.*, 56 F.3d at 346. Under this standard, privity between OneStar and the OneStar Trustee would exist if the incentives of OneStar in the Plan confirmation proceedings were substantially similar to the incentives of the OneStar Trustee in the Adversary Proceeding. The incentive of the OneStar Trustee in pursuing an avoidance action is to maximize return to the estate for the benefit of OneStar's creditors. As noted above, the Code provides the trustee with the ability to assert statutory causes of action belonging solely to the trustee. *See* 11 § U.S.C. §§ 547, 548,

20

549. The trustee does not bring an avoidance action for the benefit of the debtor, but for the benefit of the estate's creditors. *See* 11 U.S.C. § 551; *In re Hughes*, 704 F.2d 820, 822 (5th Cir. 1983) ("[I]t is for the benefit of creditors, and not its own benefit, that a debtor-in-possession wields the preference avoiding powers of a trustee . . . .").

The incentives of OneStar during WorldCom's confirmation proceedings cannot be viewed as identical to the incentives of the OneStar Trustee in pursuing the avoidance actions. During the confirmation proceedings, OneStar had not yet filed for bankruptcy and no estate had been created. It was neither acting on behalf of its creditors nor seeking to maximize return to them. Further, since OneStar could not have acted on its own to avoid its transfers to WorldCom, OneStar would not have had the same incentives as the OneStar Trustee concerning avoidance actions. *See In re Hughes*, 704 F.2d at 822 (stating that a debtor cannot act to set aside its own transfer under § 547). In addition to OneStar's inability to avoid its own transfer to WorldCom, the avoidance actions had not yet arisen at confirmation; therefore, OneStar had no incentive to raise objections concerning the effect of the Order on any possible avoidance action. This supports a finding that there is no identity of incentives between the parties during the prior and pending litigation.

The different incentives of the OneStar Trustee and OneStar also negate any argument that OneStar adequately represented the interests of OneStar's creditors or the OneStar Trustee when asserting, on behalf of OneStar's creditors, actions that came into existence upon the filing of the involuntary petition. Privity between parties can exist if "the interests of the party against whom claim preclusion is asserted were represented in prior litigation." *Celotex Corp.,* 56 F.3d at 345. OneStar did not represent the interests

of the OneStar Trustee, hence OneStar's creditors, at the confirmation proceedings because OneStar's estate had not been created at the time of confirmation and OneStar could not have acted to set aside its own transfer as preferential.  As a result, OneStar was only acting in its own interest and was not adequately representing the interests of OneStar's creditors or the OneStar Trustee acting on their behalf.  *Cf. In re Teltronics Servs., Inc.*, 18 B.R. 705, 706 (E.D.N.Y. 1982) ("Operation of res judicata requires identity of parties.  Yet the creditors presently represented by the trustee were not parties to the original action, nor were their interests represented therein.")

The last factor that may place OneStar and the OneStar Trustee in privity is whether the OneStar Trustee is a successor to the property interests of OneStar for purposes of asserting the avoidance actions against WorldCom.  WorldCom contends that since the OneStar Trustee is the successor in interest to OneStar, they are in privity.  Accordingly, since the Plan binds OneStar, the OneStar Trustee is similarly bound as successor in interest to OneStar.  As stated previously, WorldCom's argument fails because even though the OneStar Trustee is a successor in interests to causes of actions that are derivative of OneStar's rights, the OneStar Trustee is not a successor in interest to the avoidance actions, which only came into existence upon the creation of OneStar's estate and are pursued for the benefit of its creditors.  WorldCom is correct in arguing that a trustee is a successor to the property interests of the debtor, thereby placing them in privity.  *See In re Ahead By a Length, Inc.*, 100 B.R. 157, 165 (Bankr. S.D.N.Y. 1989) ("[A] bankruptcy trustee is a successor to the debtor's property and for many purposes is deemed to be in privity with the debtor . . . .").  However, "[p]rivity may exist for the purpose of determining one legal question but not another depending on the

circumstances and legal doctrines at issue." *Celotex Corp.*, 56 F.3d at 346. In this case, the OneStar Trustee and OneStar are not privity for the purposes of pursuing avoidance actions because the avoidance actions were never an interest in property of the Debtor; therefore it would be impossible for the OneStar Trustee to succeed to them from the Debtor.

       d.  <u>Administrative Expense Claim Treatment and Payment</u>

     WorldCom asserted that, pursuant to Article XII, § 12.01 of the WorldCom Plan, the OneStar Trustee should have initially filed his claims in this Court or obtained relief from the Court before proceeding with the Adversary Proceeding in the Indiana Bankruptcy Court because § 12.01 provides the Court with exclusive jurisdiction over a myriad of matters arising out of, and related to, WorldCom's bankruptcy case and the WorldCom Plan, including administrative expense claims.

     Since the OneStar Trustee is not bound by the WorldCom Plan when asserting estate causes of action, he is not bound by any provision of the WorldCom Plan that vests exclusive jurisdiction in this Court over the substantive adjudication of such claims.[15] However, although the OneStar Trustee may litigate the Adversary Proceeding in the Indiana Bankruptcy Court, the parties have not been afforded an opportunity to brief whether the OneStar Trustee must return to this Court to *collect* on any payment of a

---

[15] The Court is not addressing any issue relating to the enforceability of any aspect of the exclusive jurisdiction provision of the WorldCom Plan to a party bound by the WorldCom Plan. However, the Court notes that a plan provision requiring claimants to commence their causes of actions in one court may conflict with § 1129(a)(3) by nullifying 28 U.S.C. § 959(a) and the rights provided thereunder. Under § 1129(a)(3), a plan can only be confirmed if it is proposed in good faith and "not be any means forbidden by law." 11 U.S.C. § 1129(a)(3). A plan provision that requires all bound parties to obtain leave from the appointing court before suing a trustee or debtor in possession for business-related activities would arguably contravene § 1129(a)(3) since such a provision would operate to vitiate § 959(a), which allows "[t]rustees, receivers or managers of any property, including *debtors in possession*, may be sued, *without leave of the court appointing them*, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a) (emphasis added). Therefore, depending on the scope of the provision at issue, there may be an issue as to whether such scope would contravene § 1129(a)(3).

potential administrative expense in WorldCom's case. *See* 11 U.S.C. §§ 503(a)&(b)

(providing that an "entity may file a request for payment of administrative expense" and

that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . .");

*Gableman v. Peoria, Decatur & Evansville Ry.,* 179 U.S. 335, 339 (1900) ("[I]t devolves

on the court in possession of the property or funds out of which judgments against its

receiver must be paid to adjust the equities between all parties, and to determine the time

and manner of payment of judgment creditors necessarily applying for satisfaction from

assets so held to the court that holds them.").

Under § 503(b)(1)(a), administrative expenses are "the actual, necessary costs and

expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(a). But "[a]fter confirmation

of a plan under Chapter 11, administration of the estate ends and the estate ceases to exist

. . . Thus, it is impossible to classify [claims] that accrue post-confirmation as

administrative expenses for the simple reason that after confirmation there is no longer an

estate to administer." *In re Frank Meador Buick, Inc.,* 65 B.R. 200, 203 (W.D. Va.

1986). In the instant matter, the OneStar Trustee's claims arose during the time between

the WorldCom Confirmation Order Date and the WorldCom Effective Date, a time

during which WorldCom's estate was still in existence since property of the estate had

not vested in the Reorganized Debtor until the WorldCom Effective Date. Given that the

estate was still in existence at the time the OneStar Trustee's claims arose, those claims

are still subject to administrative expense treatment in WorldCom's bankruptcy case.[16]

---

[16] "[A]n expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor in possession in the operation of the business." *Supplee v. Bethlehem Steel Corp.* (*In re Bethlehem Steel Corp.*), 479 F.3d 167, 172 (2d Cir. 2007) (citing *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98,101 (2d Cir. 1986)). Regarding the issues as to whether the OneStar Trustee's claims meet the definition of an administrative expense, the Court notes that it found two reported decisions holding that liability on a preference claim is

Based upon the current status of the administration of the estate, an issue exists as to whether the Code requires the OneStar Trustee to come before this Court to collect any judgment that he may be granted regarding the avoidance actions. Therefore, the parties need to address that issue.

## VI.  **CONCLUSION**

The Reorganized Debtor's motion to enforce the WorldCom Plan and WorldCom Confirmation Order against the OneStar Trustee is denied because the OneStar Trustee is not bound by the WorldCom Plan with regard to asserting avoidance actions on behalf of OneStar's creditors against WorldCom. The OneStar Trustee may pursue the Adversary Proceeding as filed. Further, the OneStar Trustee is not otherwise bound by the WorldCom Plan to adjudicate any administrative expense claim before the Court, however the parties are directed to submit briefs regarding whether the Code requires, based upon the current status of the administration of this case, a request for payment of an administrative expense claim be sought before this Court.

---

an administrative expense. In *Frink*, the court held that liability on preference claims was "an ordinary cost of doing business, just as are product liability claims, claims for personal injuries suffered upon business premises, and countless other claims of which a debtor-in-possession might be unaware at the time of confirmation of a Plan." 188 B.R. at 739. Similarly, in *In re Lorro, Inc.* (*Shaprio v. Meridian Auto Sys.*), 319 B.R. 760 (Bankr. E.D. 2008), the court, citing *Frink*, held that "a preference claim against a party which arose while that party was in bankruptcy is an administrative claim in that party's bankruptcy." *Id.* at 767.

The parties are to confer upon an order consistent with this opinion and agree upon a briefing schedule regarding the issue set forth above.  Further, the parties are to submit the proposed order and briefing schedule order within ten days of the entry of this opinion.

Dated: New York, New York
       February 26, 2009

                              **s/Arthur J. Gonzalez**
                              UNITED STATES BANKRUPTCY JUDGE