**UNITED STATES BANKRUPTCY COURT**         NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

_____

:

In re                                                      :         Chapter 11

:

WORLDCOM, INC., *et al*.,                    :

:         Case No. 02-13533 (AJG)

:

Reorganized Debtors.  :

_____:

### OPINION REGARDING AVOIDANCE CLAIMS OF CHAPTER 7 TRUSTEE
### OF ONESTAR LONG DISTANCE, INC.

In an opinion issued by the Court on February 26, 2009 (the "February Opinion"), the

parties were directed to address the issue of whether Elliot D. Levin, the Chapter 7 Trustee (the

"OneStar Trustee") for OneStar Long Distance, Inc. ("OneStar"), must come before this Court to

collect on any judgment that he may be granted in the adversary proceeding (the "Adversary

Proceeding") against WorldCom ("WorldCom" or the "Reorganized Debtors" or "MCI")[1]

currently pending in the United States Bankruptcy Court for the Southern District of Indiana (the

"Indiana Bankruptcy Court").  *In re WorldCom*, 401 B.R. 637, 651-52 (Bankr. S.D.N.Y. 2009).

The Court presumes familiarity with its February Opinion.  *See id.*

### THE PARTIES' ARGUMENTS

**1.  The OneStar Trustee's Arguments**

The OneStar Trustee asserts that any judgment in his favor in the Adversary Proceeding

will be a nondischarged debt of the Reorganized Debtors; therefore he should not be required to

come before this Court to collect on any such judgment because a nondischarged debt may be

collected outside of the bankruptcy court in which the debtor filed.  Further, the OneStar Trustee

---

[1] *See OneStar Long Distance v. MCI, Inc.*, (*In re OneStar Long Distance, Inc.*), Adv. Pro. 05-07061
(Bankr. S.D. Ind. 2005).  WorldCom changed its name to MCI, Inc., when its plan of reorganization became
effective.

argues that any judgment in the Adversary Proceeding will be satisfied from non-estate assets

because when WorldCom's plan of reorganization (the "WorldCom Plan") went effective on

April 20, 2004 (the "WorldCom Effective Date"), property of WorldCom's estate vested in the

Reorganized Debtors and is no longer *in custodia legis*.  *See* BLACK'S LAW DICTIONARY 783 (8th

ed. 2004) (defining *in custodia legis* as "[i]n the custody of the law.").  Accordingly, the OneStar

Trustee claims that collection of any judgment against WorldCom in the Adversary Proceeding

will not obstruct the Court's administration of any property remaining in WorldCom's estate

because all estate property vested in the Reorganized Debtor upon the Effective Date.  As a

result, even though a judgment in the Adversary Proceeding may be subject to treatment as an

administrative expense in WorldCom's case, the OneStar Trustee argues he should be permitted

to collect on any such judgment outside of this Court because there would be no interference

with the administration of WorldCom's estate.

### 2.  WorldCom's Arguments

WorldCom's argument mainly focuses on the accrual date of the avoidance claims that

are the subject of the Adversary Proceeding.  In the February Opinion, the Court stated "the

OneStar Trustee's claims arose during the time between the WorldCom Confirmation Order Date

and the WorldCom Effective Date, a time during which WorldCom's estate was still in existence

since property of the estate had not vested in the Reorganized Debtor until the WorldCom

Effective Date."  *In re WorldCom*, 401 B.R. at 651.  Since the avoidance claims arose

postpetition while WorldCom's estate was still in existence, WorldCom argues the avoidance

claims are potential administrative expenses of WorldCom's estate; therefore the OneStar

Trustee must file a request with this Court under § 503(b) for the allowance of any administrative

expense against WorldCom's estate.[2]

## DISCUSSION

### 1. Post-Confirmation/Pre-Effective-Date Administrative Claims

In the February Opinion, the Court stated that even though the parties did not have to

come before this Court to litigate the substantive merits of the avoidance actions, the issue of

whether the parties must return to the Court to collect on any judgment obtained in the Indiana

Bankruptcy Court concerning the avoidance actions remains.  That issue persists because

"[g]iven that [WorldCom's] estate was still in existence at the time the OneStar Trustee's claims

arose, those claims are still subject to administrative expense treatment in WorldCom's

bankruptcy case." *Id.*

Pursuant to § 503(b)(1)(A), administrative expenses include the "actual, necessary costs

and expenses of preserving the estate . . . ."  The Code is "silent as to the point in time at which

the expenses of a debtor in a reorganization case cease to be accorded first priority administrative

expense status." *In re Tri-L Corp*., 65 B.R. 774, 777 (Bankr. D. Utah 1986) (citing *In re Frank*

*Meador Buick, Inc.*, 59 B.R. 787, 791 (Bankr. W.D. Va. 1986)).  In many cases, claims that

accrue post-confirmation cannot be classified as administrative expenses because the estate

ceases to exist upon confirmation; therefore there is no estate to preserve.  *In re WorldCom*, 401

B.R. at 651 (citing *In re Frank Meador Buick Inc*., 65 B.R. 200, 203 (W.D. Va. 1986)).  An

estate typically ceases to exist beyond plan confirmation because pursuant to 11 U.S.C. §

---

[2] Much of WorldCom's opening brief in response to the Court's directive in the February Opinion focuses on whether liability for a preference claim can be classified as an administrative expense.  That issue in not currently before the Court.  However, as noted in the February Opinion, the Court "found two reported decisions holding that liability on a preference claim is an administrative expense." *In re WorldCom, Inc*., 401 B.R. at 652 n. 16 (citing *In re Lorro, Inc.* (*Shaprio v. Meridian Auto. Sys.*), 391 B.R. 760 (Bankr. E.D. Mich. 2008); *Wallach v. Frink Am., Inc.* (*In re Nutall Equip. Co., Inc.*), 188 B.R. 732, 739 (Bankr. W.D.N.Y. 1995)).

1141(b) "[e]xcept as provided in the plan or the order confirming the plan, the confirmation of a

plan vests all property of the estate in the debtor." However, because of the "except as provided"

language in § 1141(b), "courts have also recognized that the vesting of property in the debtor

under § 1141(b) (and, thus, the corresponding termination of the bankruptcy estate) is expressly

subject to the terms and provisions of the confirmed plan . . . and that the confirmed plan need

not state in explicit terms that the bankruptcy estate is to continue in existence." *In re Canton*

*Jubilee, Inc.*, 253 B.R. 770, 776 (Bankr. E.D. Tex. 2000) (citing *Hillis Motors, Inc. v. Hawaii*

*Auto. Dealers' Ass'n*, 997 F.2d 581, 587 (9th Cir. 1993), *overruled on other grounds as*

*recognized in Maricopa County v. PMI-DVW Real Estate Holdings, L.L.P.* (*In re PMI-DVW*

*Real Estate Holdings, L.L.P.*), 240 B.R. 24, 30 (Bankr. D. Ariz. 1999); *United States v. Unger*,

949 F.2d 231, 233 (8th Cir. 1991)); *but see Portfolio Lease Funding Corp., No. 1 v. Seagate*

*Technology* (*In re Atlantic Computer Sys.*), 163 B.R. 704, 706 (Bankr. S.D.N.Y. 1994) (finding

that the estate ceases to exist upon substantial consummation of a plan). Section 1141(b) allows

a "debtor or a court to prevent or postpone the transfer of property of the estate to the new post[-

]confirmation entity by providing that assets do not vest in the reorganized entity or they vest

after a delay or with qualifications. When that occurs, assets remain 'property of the estate'

subject to the jurisdiction of the bankruptcy court and the dictates of the Bankruptcy Code."

*Carter v. Peoples Bank & Trust Co.* (*In re BNW, Inc.*), 201 B.R. 838, 849 (Bankr. S.D. Ala.

1996) (citing *Unger,* 949 F.2d 231; *Hillis*, 997 F.2d 581); *see also In re Canal St. Ltd. P'ship.*,

260 B.R. 460, 462 (Bankr. D. Minn. 2001) (noting that the "prefatory language of § 1141(b)"

permits a confirmed plan to alter the confirmation date as the time when estate property vests in

the reorganized debtor).

In the Plan, Article X, § 10.01 specifically provided that " [u]pon the Effective Date, pursuant to sections 1141(b) and (c) . . . all property of the estates of the Debtors shall vest in the Reorganized Debtors free and clear of all claims . . . ." Therefore, until the Effective Date of the Plan (April 20, 2004), property of the estate remained in the estate. Prior to the Effective Date, the OneStar Trustee's avoidance claims arose on December 31, 2003, the date the involuntary petition against it was filed (the "OneStar Petition Date"). *See Wallach v. Frink Am., Inc.* (*In re Nuttall Equip. Co., Inc.*), 188 B.R. 732, 736 (Bankr. W.D.N.Y. 1995) (holding that the right to recover preferential transfers by a trustee or debtor in possession became a claim once the transferor of the payment sought to be recovered files a petition under the Bankruptcy Code). Because the OneStar Trustee's claims arose while WorldCom's estate was still in existence, the avoidance claims are against the estate and still subject to classification as an administrative expense, i.e., an actual, necessary cost and expense of preserving WorldCom's estate. *See Trustees of Amalgamated Ins. Fund*, 789 F.2d 98, 101 (2d Cir. 1986) ("[A]n expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession . . . .").

## 2. Nondischargeable Post-Confirmation/Pre-Effective-Date Claims

The OneStar Trustee concedes that any judgment in his favor would be subject to administrative expense treatment if he were to seek collection of that claim in WorldCom's case. However, he argues since any judgment in his favor in the avoidance actions will result in a nondischarged debt of the Reorganized Debtors, he should be permitted to collect that judgment in any court of competent jurisdiction, including the Indiana Bankruptcy Court.

The OneStar Trustee points to three cases to illustrate his point that a nondischarged debt may be collected outside the bankruptcy court administering the debtor's estate. The cases cited

5

by the OneStar Trustee are distinguishable from the current case before the Court. As a general

matter, none of the cases cited by the OneStar Trustee involve an administrative expense claim

with its attendant allowance standard. *See Grynberg v. United States*, (*In re Grynberg*), 986 F.2d

367 (10th Cir. 1993) (involving a prepetition tax claim); *In re Big O Movers and Storage, Inc.*,

326 B.R. 434 (Bankr. N.D. Ill. 2005) (concerning a prepetition creditor who received no notice

of the bankruptcy, plan confirmation, the claim bar date, nor was the creditor's claim scheduled

despite the debtor's knowledge of the claim); *In re Amigoni*, 109 B.R. 341 (Bankr. N.D. Ill.

1989) (dealing with restitution payments as a result of being convicted under 18 U.S.C. § 1341).

Since the cases cited by the OneStar Trustee do not involve claims that arise post-petition against

an estate, they are inapposite to determining whether the OneStar Trustee must return to this

Court to collect on any judgment in his favor concerning his post-confirmation/pre-effective-date

claims.

In the February Opinion, the Court recognized that the OneStar Trustee's avoidance

claims are nondischargeable when it held that the OneStar Trustee is not bound by the Plan, or

any of its provisions, when pursuing avoidance claims that belong to OneStar's estate. As a

result, the OneStar Trustee's claims are not subject to the discharge injunction contained in

Article X, § 10.02 of the Plan and the OneStar Trustee could litigate the substantive merits of the

avoidance claims before the Indiana Bankruptcy Court because the avoidance claims were not

discharged. *See* 11 U.S.C. § 524(a). While the OneStar Trustee is permitted to litigate the

substantive underlying avoidance claims in the Indiana Bankruptcy Court, the determination of

whether any judgment on those claims is an administrative expense of WorldCom's estate is left

to the province of this Court. *See e.g., L. O. Koven & Bro., Inc. v. United Steelworkers of

America*, 381 F.2d 196, 208 (3d Cir. 1967) ("The bankruptcy court thus had the exclusive right

and duty under its basic custodial power to decide what were proper administration expenses and
to shield the estate from unnecessary and improvident expenditures."). The discharge or
nondischarge of a claim does not divest the Court of jurisdiction over allowing or disallowing
administrative claims against an estate.[3] The courts in the cases to which the OneStar Trustee
cites do not make any administrative expense determination because the claims in those cases
arose in the first instance against a prepetition debtor.

Here, unlike the cases cited by the OneStar Trustee, the avoidance actions arose against
WorldCom's estate, thereby qualifying it as a potential administrative claim. This distinction is
significant because while a party to whom a nondischargeable debt is owed is entitled after
confirmation to enforce his or her rights as they would exist outside of bankruptcy, *In re
DePaolo*, 45 F.3d 373, 375 (10th Cir. 1995) (internal citations omitted), allowance of
administrative expenses against an estate is inherently a bankruptcy court power which is
unaffected by the discharge of a claim. In the Second Circuit, in order for an expense to qualify
as an administrative expense, the court must find that the expense "arose out of a transaction
between the creditor and the bankrupt's trustee or debtor in possession." *Supplee v. Bethlehem
Steel Corp.* (*In re Bethlehem Steel Corp.*), 479 F.3d 167, 172 (2d Cir. 2007) (citing
*Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100-01 (2d Cir. 1986)).
Further, an expense is administrative "only to the extent that the consideration supporting the
claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the
operation of the business." *McFarlin's*, 789 F.2d at 101 (internal citations omitted). The
discharge of a claim has no affect on the court's ability to conduct a § 503(b) inquiry because
allowance of an administrative expense against an estate is an inherent function of the

---

[3] Further, under Article XII, § 12.01(c), the Plan provided that the Court retain exclusive jurisdiction to
"hear and determine any objection to Administrative Expense Claims or Claims . . . ."

7

bankruptcy court to apply the appropriate § 503(b) standards and to determine what amount should be accorded administrative expense priority.

### 3. Adjudication and Allowance of Post-Confirmation/Pre-Effective-Date Administrative Claims

The OneStar Trustee next argues that even if the avoidance claims are administrative expenses, nothing compels him to file an administrative expense request before this Court but rather he can collect from the Reorganized Debtor's assets outside of bankruptcy.  An entity with a potential claim for an administrative expense, like the OneStar Trustee, "may timely file a request for payment . . . or may tardily file such request if permitted by the court for cause."  11 U.S.C. § 503(a).  After filing such a request and after "notice and a hearing," a determination will be made by the court as to whether an administrative expense will be allowed.  11 U.S.C. § 503(b).  The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure are silent as to where such a request must be heard.  *See* 4 COLLIER ON BANKRUPTCY ¶ 503.02 (15th ed. rev. 1982) ("Other than the reference in section 503(a) to the filing of a request for payment of an administrative expense, the Code is silent on the process and procedure for filing of administrative expenses.  The legislative history indicates that the procedural aspects of allowing administrative expenses are to be left to the Federal Rules of Bankruptcy Procedure. Unfortunately, the Federal Rules of Bankruptcy Procedure do not deal with the filing of requests for administrative expenses with the same level of detail as they do with regard to the filing of proofs of claim.").  Comparatively, the Plan provided that this Court retain <u>exclusive</u> jurisdiction to "hear and determine any objection to Administrative Expense Claims or Claims . . . ."  *See* Article XII, § 12.01(c) of the Plan.  Although the Court ruled in its February Opinion that the OneStar Trustee is not bound by the Plan and its provisions when <u>pursuing</u> claims of the estate, the Court specifically refrained from ruling on whether collection of any judgment in the

8

avoidance action must be heard before this Court.  The Court notes that the substantive

adjudication of the merits of the OneStar Trustee's avoidance claims is different than the

adjudication of the administrative expense status of any judgment obtained in the avoidance

actions.  The former issue was addressed in the February Opinion.

The Court was unable to find any reported decision where a court, other than the court in

which the debtor filed, substantively adjudicated the determination of whether an administrative

claim against the debtor's estate should be allowed as an actual, necessary cost and expense of

preserving the estate.  The OneStar Trustee does not cite to any such case in his papers either.

The Court notes that if the OneStar Trustee was able to collect on his avoidance claims during

the period between the day his claims arose and the Effective Date, while WorldCom's estate

was still in existence, the OneStar Trustee would have to come before this Court to collect those

potential administrative expense claims because the Court still had jurisdiction over the assets of

WorldCom's estate at that time.[4]  *See e.g.,* 28 U.S.C. 1334(e); *Cal. v. Harleston* (*In re

Harleston*), 275 B.R. 546, 551 (B.A.P. 9th Cir. 2002) ("[C]laims allowance is part of the larger

process of bankruptcy administration . . . .") (citing *Gardner v. New Jersey*, 329 U.S. 565, 573

(1947)).  While the estate may have since been divested of assets, this does not change the nature

of the claims (as claims against the estate), or the authority of the Court to adjudicate the

administrative expense status of such claims.  The OneStar Trustee is correct in that the assets of

the estate have vested in the Reorganized Debtor and any satisfaction of the avoidance claims

will come from those entities; but the focus of an administrative expense inquiry is not on the

status of assets of the estate as of the time the § 503 request is made, but rather the nature of the

---

[4] In that scenario, the OneStar Trustee would either have to file an administrative expense request in this Court under § 503 or obtain advance relief from the automatic stay from the bankruptcy court since § 362(a)(3) would prohibit "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  *See also Carroll v. Tri-growth Centre City Ltd.* (*In re Carroll*), 903 F.2d 1266, 1270-71 (9th Cir. 1990).

claim and its relation to the estate.  The timing of when a claim arose is one factor in determining

whether a claim can qualify as an administrative expense.  *See McMillan v. LTV Steel, Inc.*, 555

F.3d 218, 226 (6th Cir. 2009) ("Thus, a debt must arise after the debtor files for bankruptcy

'post-petition' in order to be accorded administrative expense priority.") (citing *Pension Benefit*

*Guar. Corp. v. Sunarhauserman, Inc*. (*In re Sunarhauserman, Inc*.), 126 F.3d 811, 817 (6th Cir.

1997)).  But whether or not the assets of the estate vested in a reorganized entity at the time an

administrative expense request is made is irrelevant to a § 503 determination.  Thus, the parties

must come before this Court to adjudicate the administrative expense status of any judgment

obtained in the avoidance actions because it is a claim against an estate that Court is

administering.  The claims allowance process is central to the administration of any bankruptcy

estate, *see e.g.,* 28 U.S.C. § 157(b)(2)(B), and the court administering the estate is responsible for

determining whether an expense was actual and necessary to preserving the estate.  *See e.g., L.*

*O. Koven & Bro., Inc.,* 381 F.2d at 208.

**4.   Collection of Post-Confirmation/Pre-Effective-Date Administrative Expenses**

The last issue to be determined is whether the Court can compel the Reorganized Debtors

to satisfy any administrative expense claim of the OneStar Trustee.  "Most confirmed Chapter 11

plans, if not all of them, provide mechanisms by which the reorganized company will assume the

administrative expenses of the debtor that arose during the bankruptcy and that were not paid

upon confirmation of the plan."  *Caradon Doors & Windows, Inc. v. Eagle-Picher Industries,*

*Inc.* (*In re Eagle-Picher Indus*.), 447 F.3d 461, 465 (6th Cir. 2006).  Here, under Article II, §

2.01 of WorldCom's Plan, the Reorganized Debtors agreed to assume certain administrative

expense claims incurred by the estate.

Administrative Expense Claims.  Except to the extent that any entity entitled to

payment of any Allowed Administrative Expense Claim agrees to a less favorable
treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash
in an amount equal to such Allowed Administrative Expense Claim on the later of the
Effective Date and the date such Administrative Expense Claim becomes an Allowed
Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, *however*,
that Allowed Administrative Expense Claims representing liabilities incurred in the
ordinary course of business by the Debtors in Possession or liabilities arising under loans
or advances to or other obligations incurred by the Debtors in Possession shall be paid in
full and performed by the Reorganized Debtors in the ordinary course of business in
accordance with the terms and subject to the conditions of any agreements governing,
instruments evidencing, or other documents relating to such transactions.

Article II, § 2.01 of the Plan (emphasis in original).  If the OneStar Trustee's claims qualify as

Allowed Administrative Expense Claims under § 2.01 then the Reorganized Debtors, not the

estate, are the parties obligated to satisfy those claim.  *See e.g., In re Air Center*, 48 B.R. 693,

695 (Bankr. W.D. Okla. 1985).  If the Reorganized Debtors are the parties responsible for

satisfying the OneStar Trustee's claims, then the OneStar Trustee argues he can pursue

satisfaction of that claim outside of the bankruptcy court in light of the fact that the debtor's

property vested in the Reorganized Debtor approximately five years ago.  *See In re Montgomery*

*Ward Holding Corp.*, 306 B.R. 489, 494 (Bankr. D. Del. 2004) (denying motion to compel

payment of an administrative expense because a new entity had agreed under a plan to satisfy all

post-petition claims of the estate).  Further, the OneStar Trustee argues that there would be no

disruption of estate administration because all of the assets of the estate have already vested in

the Reorganized Debtor.

Even though property of the estate vested in the Reorganized Debtor upon the WorldCom

Effective Date, the Court has authority to order the Reorganized Debtor to satisfy allowed

administrative claims pursuant to § 2.01 of the Plan.[5]  The Reorganized Debtors submitted

---
[5] Pursuant to § 1.10 of the Plan
   Allowed means, with reference to any Claim against the Debtors, (i) any Claim that has been listed
   by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to

themselves to the jurisdiction of the Court under the terms of the Plan.  *See* Article XII, §

12.01(e) (providing the Court with exclusive jurisdiction to "issue such orders in aid of execution

and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code .

. . .").  Section 1142 specifically provides

(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.

(b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142.  Section 1142(b) "empowers the bankruptcy court to enforce the unperformed

terms of a confirmed plan."  *United States Brass Corp. v. Travelers Ins. Group, Inc.* (*In re*

*United States Brass Corp.*), 301 F.3d 296, 306 (5th Cir. 2002).  "The clear intent of Section

1142(b) of the Bankruptcy Code is to assure that the terms and provisions of a confirmed chapter

11 plan are carried out until the plan is completed and the final decree is entered closing the

case."  *In re Chateaugay Corp. v. Back*, 201 B.R. 48, 66 (Bankr. S.D.N.Y. 1996) (citing *In re*

*Johns-Manville Corp.*, 97 B.R. 174, 180 (Bankr. S.D.N.Y. 1989)).  Bankruptcy Rule 3020(d),

also provides, "[n]otwithstanding the entry of the order of confirmation, the court may issue any

other order necessary to administer the estate."  FED. R. BANKR. P. 3020(d); *see also In re Kmart*

---

time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any Claim allowed hereunder, (iii) any Claim that is not Disputed, (iv) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Reorganized Debtors pursuant to a Final Order of the Bankruptcy Court or under Section 7.06 of the Plan, or (v) any Claim that, if Disputed, has been Allowed by Final Order; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Commencement Date.

*Corp.*, 359 B.R. 189, 196 (Bankr. N.D. Ill. 2005).  The Court has the power under § 1142 to order the Reorganized Debtors to carry out the Plan and its provisions, notably § 2.01.  If the Plan envisioned that the Reorganized Debtors would be responsible for satisfying certain claims then the Court has the power to enforce compliance with the Plan.  This power is even more apparent in light of the statutory scheme set forth by Congress requiring that all confirmed plans provide that administrative expenses be paid in full.  *See* 11 U.S.C. § 1129(a)(9)(A).

Contrary to the OneStar Trustee's argument, this power of the Court does not diminish when property of the estate vested in the Reorganized Debtor.  *See In re Erie Hilton Joint Venture*, 137 B.R. 165, 170 (Bankr. W.D. Pa. 1992) (stating that a court retains jurisdiction to oversee execution of a plan even though all property of the estate vested in the debtor upon plan confirmation).  The Court is mindful that the "basic theory of reorganization proceedings is that the debtor or its successor corporation, if there be one, has been rehabilitated by the plan so that it can carry on its business.  The corollary of this is that it and its creditors should work out their mutual rights and duties in the ordinary tribunals and should not forever continue under tutelage of the bankruptcy court."  *Butler v. Greater Pythian Temple Asso.*, 205 F.2d 621, 623 (2d Cir. 1953).  This is not one of those instances where the bankruptcy court is impermissibly extending its reach over a reorganized debtor.  Rather, here the OneStar Trustee has a claim against the estate and pursuant to a plan, the Reorganized Debtor agreed to assume and satisfy certain claims.  Under these facts, there is a permissible nexus where the Court can compel a reorganized debtor to comply with the terms of a plan.

## CONCLUSION

Subsequent to any judgment in the OneStar Trustee's favor in the Adversary Proceeding,

the parties are required to come before this Court to determine the administrative expense status

of the OneStar Trustee's avoidance claims.  Since the claims of the OneStar Trustee arose

against the estate while it was still in existence, this Court must determine the administrative

expense status of such claims.  Further, the Court can compel the satisfaction of any

administrative expense claim.

The parties are directed to settle an order consistent with this opinion and the February

Opinion.


Dated: New York, New York
       May 19, 2009


**s/Arthur J. Gonzalez**
UNITED STATES BANKRUPTCY JUDGE