| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Not for Publication |
| In re | Chapter 11 |
| **WORLDCOM, INC.**, *et al.*, | Case No. 02-13533 (AJG) |
| **Reorganized Debtors.** | (Jointly Administered) |

**OPINION REGARDING REORGANIZED DEBTORS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO CLAIM NO. 23470 FILED BY KENNEDY & ASSOCIATES**

A P P E A R A N C E S

STINSON MORRISON HECKER LLP
Attorneys for Reorganized Debtors
1201 Walnut Street
Kansas City, MO 64106

    Mark A. Shaiken, Esq.
    Sara E. Welch, Esq.

UNGARETTI & HARRIS, LLP
Attorneys for Kennedy & Associates, Inc.
3500 Three First National Plaza
Chicago, IL 60602

    Dean J. Polales, Esq.

and

PIROGOVSKY FREMDERMAN, LTD.
Attorneys for Kennedy & Associates, Inc.
3100 Dundee Road, Suite 507
Northbook, IL 60062

    Alex Pirogovsky, Esq.

ARTHUR J. GONZALEZ
Chief United States Bankruptcy Judge

The sole issue presented in this motion for partial summary judgment is Debtors' claim that no genuine issue of material fact opposes the legal conclusion that the alleged contract between WorldCom, Inc. ("WorldCom") and Kennedy & Associates, Inc. ("K&A") was not executory and therefore was not assumed under Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated October 21, 2003 ("Confirmed Plan") on April 20, 2004, the effective date of the Confirmed Plan. Assuming only for the purposes of this motion that the alleged contract was valid, the Court finds that WorldCom has failed to establish that the alleged contract was not executory on the effective date of the Confirmed Plan.

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), and under paragraph 32 of the WorldCom Order Confirming Debtor's Second Modified Amended Joint Plan of Reorganization (Oct. 31, 2003). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTS

*A. Overview and Procedural History*

WorldCom, Inc and certain of its direct and indirect subsidiaries filed petitions for Chapter 11 bankruptcy on July 21, 2002 (the petition date relevant to this Opinion) and November 8, 2002. K&A filed Proof of Claim No. 23470 ("POC 23470") on January 23, 2003 with an unsigned copy of the alleged contract attached but no mention of an "executory contract". WorldCom filed its initial bankruptcy plan on April 14, 2003 and its Confirmed Plan

2

on October 21, 2003. The Court signed the Confirmation Order on October 31, 2003, with effectiveness subject to conditions. On the effective date the Confirmed Plan assumed all non-rejected executory contracts. Confirmed Plan, § 8.01, Sch. 8.01 (amended Jan. 12, 2004). WorldCom objected to POC 23470. Debtors' Twenty-Second Omnibus Objection to Proofs of Claim (Aug. 4, 2004). K&A replied, claiming that POC 23470 included an executory contract that the Confirmed Plan did not explicitly reject and therefore assumed. K&A Response to the 22nd Omnibus Objection to Proofs of Claims (Sept. 9, 2004). WorldCom sought a *nunc pro tunc* order retroactively rejecting the alleged executory contract in the Confirmed Plan, which this Court denied. Order Denying Debtor's Motion for Order *Nunc Pro Tunc* Rejecting Agreement between WorldCom and K&A (Mar. 9, 2006). The parties conducted extensive document discovery regarding the claim, took depositions from K&A's David Kennedy and Patrick Kennedy, and took affidavits from WorldCom's Dona Miller and Julie Petersen. *See* Material Facts, *infra* 3-8. Based on this record, WorldCom moved for partial summary judgment on the non-executoriness of the alleged contract. Debtor's Motion for Partial Summ. J. With Respect to Claim No. 23470 Filed by K&A (Feb. 5, 2010). If granted, this motion preliminarily would classify Claim No. 23470 as a general, unsecured claim in Class 6 of the Confirmed Plan while still requiring a trial on the validity of the alleged contract, terms of the alleged contract, and damages caused by any breach. Following submissions by the parties, a hearing was held on May 18, 2010.

*B. Material Facts*

After many opportunities for discovery followed by briefs and statements disputing and clarifying numerous minor issues, K&A and WorldCom agree about most material facts of this

3

case, particularly those related to the executory nature of the alleged contract. To the extent that they continue to disagree about any material fact, this Court will resolve genuine disputes in favor of K&A for purposes of this motion.

The parties agree that Dona Miller and David Kennedy began to develop an engagement between WorldCom and K&A in 1999 when Dona Miller invited David Kennedy to a meeting of WorldCom's strategic partners. K&A's Resp. to Debtors' Statement of Material Facts ("K&A Resp.") ¶ 16. K&A has produced an undisputed agreement amongst K&A, Hartford, and WorldCom, signed by K&A's David Kennedy, WorldCom's Dona Miller, and Hartford's Dong Ahn during July 2000 and effective June 5, 2000. K&A's Statement of Undisputed Material Facts ("K&A SOF") ¶ 1-2, Ex. A. In this agreement, WorldCom acknowledges that it has engaged K&A and requests that Hartford provide information about WorldCom's benefit plans to K&A. *Id.* Hartford agrees to provide the information, and K&A agrees to maintain confidentiality and provide reports to WorldCom and Hartford. *Id.* This agreement does not contain any information about compensation, duration of engagement, or termination of the agreement. *Id.*

In 2000, under the Information Reporting Agreement and other disputed written and oral agreements between the parties[1], K&A began to analyze WorldCom's use of Social Security in its benefit plans. Debtors' Motion for Partial Summ. J. with respect to Claim No. 23470 filed by K&A, Sch. 1, ("WorldCom SOF") ¶ 17-19. For purposes of this motion only, the Court resolves any disputes about the contracted work in favor of K&A, treating the contract as valid and containing the terms K&A claims based on its unsigned copy of the alleged contract. K&A SOF, Exhibit B. These terms include information sharing provisions similar to those of the

---

[1] The parties dispute the validity of the "Benefit Plans Consulting Services Agreement." *See* K&A SOF ¶ 4-8. *But see* Dona Miller Aff., ¶¶ 24, 25.

4

Information Reporting Agreement, extensive but not specifically defined benefit plan consulting obligations for K&A, monthly and recovery-based payment obligations for WorldCom, and a provision for termination by either party 180 days after notification by certified mail. *Id.*

From 2000 until 2003, the parties exchanged information. Based on material provided by Hartford, WorldCom, and others, K&A provided reports that assisted WorldCom in recovering $1.4 million in overpayments from Hartford. Debtors' Mot. for Partial Summ. J., Ex. E ("Dona Miller Aff.") ¶¶ 37, 39. WorldCom paid K&A's invoices for $5,000 monthly fees or retainers[2] and additional amounts based on recoveries[3] through June 2002, at which point K&A stopped sending invoices to WorldCom and WorldCom stopped paying K&A.[4] Dona Miller states that she informed K&A the prior arrangement would continue post-filing. Dona Miller Aff. ¶ 39. She also states that, "With respect to its limited engagement (pursuing social security disability offsets), K&A performed well." *Id.* ¶ 19.

After the bankruptcy filing on July 21, 2002 and the halt of payments, K&A continued to communicate regularly with Dona Miller until her termination in December 2002. *See, e.g.*, K&A SOF ¶¶ 18, 36, 41. Hartford terminated WorldCom's LTD benefit plan during 2002; Dona Miller subsequently wrote numerous emails to K&A about Hartford matters and new benefit plan options, and K&A responded in multiple cases with detailed recommendations and information. *See* K&A SOF ¶¶ 28, 30, 36, 37, 39, & 41. Although Dona Miller stated "I do not

---

[2] *See* WorldCom SOF ¶¶ 20-26 (describing payments from WorldCom to K&A), K&A Resp. ¶¶ 20-26 (disputing details of timing and language, but not material substance), Debtors' Reply Suggestions, 3-8 (acknowledging some corrected details from K&A Resp., disputing other details of timing and language, not modifying material substance).

[3] See WorldCom SOF ¶ 25 (describing payment with slight inaccuracies), K&A's Resp. ¶ 25 (correcting immaterial details), Reply Sugg. In Support of Debtors' Mot. for Partial Summ. J. ("WorldCom Reply") ¶ 25 (acknowledging corrections but not modifying material substance). The parties dispute the terms of their agreement about these additional payments and the completeness of these payments.

[4] See WorldCom SOF ¶ 36, K&A Resp. ¶ 36 (admitting). The parties dispute why payments stopped, the salience of the July 2002 payments form, the scope of their agreement, Dona Miller's communication to K&A about continued invoicing/payment, and the effect of bankruptcy on the relationship between WorldCom and K&A.

5

know of any specific work K&A performed for the benefit of WorldCom after July 2002" (Dona Miller Aff. ¶ 39), WorldCom has not denied or challenged K&A's stated facts above.

K&A received information about WorldCom benefit claims from Hartford until at least January 2003. K&A SOF ¶ 50. K&A also sent emails during the post-petition period to Sharon Dixon, outside counsel for WorldCom (K&A SOF ¶¶ 46-47), and Nita Miller of Fox Everett, who worked to administer WorldCom's self-insured disability benefit plan after Hartford cancelled WorldCom's disability benefit plan (*See, e.g.*, K&A SOF ¶¶ 33, 34). However, communication between the parties slowed leading up to and after Dona Miller's termination; WorldCom advances the theory that K&A's work had mostly ended by late 2002 or early 2003, and in response K&A primarily cites outside contacts of questionable materiality. *See, e.g.*, K&A SOF ¶¶ 49, 52, 53. Additionally, many of the emails that K&A cites throughout the post-petition period, while related to the benefit plan work they performed for WorldCom, also include personal notes or give advice that goes beyond K&A's Social Security disability expertise and WorldCom's current narrow vision of K&A's scope of work. *See, e.g.*, K&A SOF ¶¶ 30, 36, 40. In sum, the undisputed facts clearly establish that K&A received information relating to WorldCom benefit plans from WorldCom employees and third-party administrators and performed work based on this information during the post-petition period of 2002. *See* Tr. of Hr'g 29 (May 18, 2010) (statement of Ms. Welch, representing Debtors) ("What the debtors do agree is that for purposes of summary judgment the Court may find that there was contact with WorldCom and work performed after the petition date.").

The final contacts between WorldCom and K&A before the effective date occurred on April 24, 2003[5]. After debate and document production, the parties now agree that K&A sought

---

[5] K&A argued at the hearing on the motion that the timing of these events, following the filing of the first version of the WorldCom bankruptcy plan on April 14, 2003, was relevant to the Court's inquiry. Some precedents examine

6

information about the VEBA from WorldCom's Ray Helms, who initially sought to assist but then instructed K&A to talk to Susan Tavel before performing any more work. *See* Amend. & Supp. K&A Resp., Ex. 2; *see also* WorldCom Reply 7. K&A called Susan Tavel that day, but neither party has introduced any evidence about the content of this call. *Id.* However, the parties agree that K&A had no contact with anyone at WorldCom after this date. *See* WorldCom SOF ¶ 40, K&A Resp. ¶ 40 (admitting). The parties also agree that K&A performed no work for WorldCom after this call, although K&A cites a document of questionable materiality and origin from 2004. K&A SOF ¶ 58. Neither party claims that the April 2003 communication included a formal termination of the alleged contract according to its terms, but WorldCom argues that it cancelled all the parties' future obligations, while K&A claims that it remained ready to receive information, provide services, and receive payment.

The Confirmed Plan took effect on April 20, 2004 and assumed any non-rejected executory contract, without making specific reference to any contract between K&A and WorldCom. Confirmed Plan, § 8.01, Sch. 8.01 (amended Jan. 12, 2004). Julie Petersen, a WorldCom manager, subsequently claimed that she did not perceive at any time that the company had an executory contract with K&A (*See* K&A SOF ¶ 59, Ex. AAA). Julie Petersen terminated any alleged contract while denying its validity on June 21, 2005. *Id.*

Thus, the parties agree that: (1) before the petition date, WorldCom, its insurers, and its third-party administrators sent information about benefit plans to K&A, K&A performed agreed work for WorldCom, and WorldCom paid K&A; (2) for a period after the petition date, K&A continued to communicate and work with WorldCom, its insurers, and its third-party

---

the executoriness of the contract on the date a court considers a motion to assume or reject (*In re Wang Laboratories, Inc.*, 154 B.R. 389, 391 (Bankr. D. Mass. 1993)), but as there was no separate hearing to assume or reject this alleged contract or the bulk of WorldCom's executory contracts, this Court has used the effective date in a parallel adversary proceeding. *In re WorldCom, Inc.*, 343 B.R. 486, 493 (Bankr. S.D.N.Y. 2006).

administrators, although the work changed and slowed, particularly around the time of Dona Miller's termination; and (3) at some time before the effective date, K&A and WorldCom ceased communication and collaboration, without either party formally cancelling the alleged contract. For purposes of this partial summary judgment motion, the Court resolves remaining disputes about the contract itself and the precise details of K&A's work in the light most favorable to K&A.

### III. DISCUSSION

*A. Summary Judgment Standard*

Bankruptcy courts derive summary judgment power from Fed. R. Civ. P. 56 and F. R. Bankr. P. 7056. Rule 56(c) specifies that a court should grant summary judgment when the record shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law of the case defines material facts; they are the basic elements without proof of which a court cannot enter judgment for a party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues exist when the disputed evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* In assessing whether a reasonable jury could return a verdict for the non-moving party without a full trial record, a court resolves all ambiguities and disputed facts in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970). If the pre-trial record could reasonably support a decision in favor of the non-moving party, then a fact-finder must resolve the dispute after trial, and a court will deny summary judgment. On the other hand, when the record provides no reasonable support for a material fact necessary to a party's case, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

8

*B. Executory Contract Definition*

A debtor has discretion to assume or reject an executory contract based on 11 U.S.C. § 365, which does not define the term "executory contract." The Second Circuit ordinarily measures whether a contract is executory on the petition date. *In re The Penn Traffic Co.*, 524 F.3d 373, 381 (2d Cir. 2008). However, even if a court finds an executory contract on the petition date, post-petition events may indicate that no executory contract remains for the bankruptcy plan to assume or reject at the time it takes effect. *See id.*; *see also In re WorldCom, Inc.*, 343 B.R. 486, 493 (Bankr. S.D.N.Y. 2006).

This Court determines whether a contract was executory at a given time under the Countryman test and the functional approach. Under the Countryman test, "[A] contract is executory if performance is still required by both parties that is sufficiently material such that failure of either party to perform would excuse the other party's performance." *In re Delta Airlines*, No. 05-17923 (cgm), 2010 WL 423279, *4 (Bankr. S.D.N.Y. Feb. 3, 2010). The functional approach finds an executory contract where "assumption of a contract would benefit a debtor's estate." *WorldCom*, 343 B.R., at 500. Counterparties whose remaining possible performances provide no benefit to the estate and seek payment are functionally more like unsecured creditors, and a court will treat them thus; counterparties whose obligations benefit an estate may not default on those obligations without penalty simply because a debtor has entered bankruptcy.

*C. Parties' Arguments Concerning Executoriness at the Petition Date*

9

Because WorldCom does not challenge the validity of the contract for purposes of this motion for partial summary judgment, this discussion assumes that the contract existed pre-petition and focuses on its executoriness. K&A argues that the alleged contract was executory on the petition date because both parties had material obligations and WorldCom could benefit from K&A's services. K&A Resp. 3. This argument has significant legal and factual support, particularly when the facts are viewed in the light most favorable to K&A for the purposes of this motion.

K&A claims with reasonable factual support that the alleged contract required WorldCom to provide information, K&A to analyze and report on this information, and WorldCom to pay K&A. If proven, these facts would satisfy the Countryman test; WorldCom's obligations would have been excused if K&A refused to perform the agreed analysis, while K&A's obligations would have been excused if they had no information or expectation of payment from WorldCom. K&A's argument draws legal support from *Delta Air Lines*, 2010 WL 423279, at *3-4, which held that a consulting agreement requiring a former employee to provide consulting when requested and refrain from soliciting any other employees during a five-year term in exchange for a lifetime travel benefit was an executory contract under the Countryman test. On the *Delta Air Lines* petition date, three years remained on the consulting engagement, Delta still owed the travel benefit, and the employee had not violated any terms of the contract; the employee stipulated and the court noted that she possessed information "of little value" and had "de minimis" contact with Delta by the petition date. *Id.* K&A's position on the petition date was significantly stronger. The alleged contract created open-ended obligations greater than those in *Delta Air Lines*, and both parties agree they performed actions meeting these obligations (other than WorldCom's payments, which both parties had delayed in the past

10

and could reasonably expect WorldCom's bankruptcy to further delay) up to and well beyond the petition date.

Functionally, K&A's post-petition work arguably could have helped WorldCom's estate to recover funds due from insurance companies that exceeded amounts WorldCom would owe to K&A. WorldCom has admitted that K&A's work provided benefits pre-petition, the record establishes that K&A continued to perform work for WorldCom post-petition, and WorldCom could have requested or accepted K&A performance in the reasonable expectation that it would provide similar benefits to the pre-petition work. K&A claims, with significant factual support but some dispute from WorldCom, that useful work remained for them to perform following the petition date, further suggesting possible benefits to WorldCom.

As a result, WorldCom has no basis from which to argue, and makes no serious attempt to argue, that a reasonable fact-finder could not find an executory contract on the petition date based on the record before the Court.

*D. Parties' Arguments Concerning Executoriness on the Effective Date*

WorldCom instead argues that a reasonable fact-finder could not find an executory contract on the effective date[6], because post-petition actions by both parties dissolved K&A's remaining obligations and eliminated any benefit a continuing contract could provide to WorldCom. WorldCom Reply 9.

As noted above, K&A's work with WorldCom slowed around the time of Dona Miller's termination and ceased entirely by the end of April 2003. Neither party has introduced any

---

[6] In fact, WorldCom argues that the contract must have been non-executory well before the effective date, but has not clearly indicated whether it first was clearly non-executory soon after the petition date in July 2002, when Dona Miller left in December 2002, when Ray Helms and Susan Tavel of WorldCom communicated with K&A and work ceased in April 2003, or at some other time.

11

evidence that WorldCom asked K&A to perform any work after this date or that K&A sought to do so.  As a result, WorldCom argues that the parties had completed the exchange of performances that mark an executory contract under the Countryman test: there was no remaining obligation for WorldCom to seek more work from K&A or K&A to perform more work for WorldCom by the effective date.  However, K&A disputes this assertion, arguing that it stood ready to perform more work for WorldCom and expected payment or notice of termination under the alleged contract's terms.  K&A claims that that the alleged contract's mutual obligations could only lapse via termination.

Additionally, WorldCom argues that the only obligation under the alleged contract on the effective date would have been for WorldCom to pay K&A; as a result, WorldCom could derive no benefit from paying K&A and the executory contract fails under the functional approach.  However, K&A disputes this assertion as well, arguing that work only ceased in April 2003 due to WorldCom's defaults regarding information provision and pursuit of recoveries, which prevented K&A from performing its obligations.  K&A claims that if WorldCom had given K&A necessary information and continued to collaborate, K&A would have done more work to help WorldCom recover owed funds.

*E. Effect of Post-Petition Actions on the Alleged Contract*

Because the parties' dispute centers on legal issues related to termination of the alleged contract between the petition date and the effective date, the Court must determine for purposes of this motion whether the parties' undisputed actions during the period between the petition date and the effective date were sufficient to "terminate the outstanding obligations" and render the alleged contract non-executory on the effective date.  *Penn Traffic*, 524 F.3d, at 383.  The

12

Second Circuit ultimately held that the *Penn Traffic* contract was executory on the petition date and that none of the case's post-petition facts sufficed to find a non-executory contract, but contemplated how the parties might cause a contract to become non-executory post-petition. A claimant can never escape or enforce an executory contract unilaterally, because the purpose of § 365 is to allow a debtor to retain beneficial contracts and discard non-beneficial contracts in order to enable effective restructuring. *Penn Traffic*, 524 F.3d, at 382-83. Additionally, "[t]he Code provisions permitting a debtor to accept or reject an executory contract do not alter the parties' contractual rights." *Penn Traffic*, 524 F.3d, at 383. However, based on the principles behind § 365, a formerly executory contract might lose executory status after "the debtor itself ha[s] taken affirmative action affecting the existence of outstanding performance obligations." *Penn Traffic*, 524 F.3d, at 381.

    This case differs procedurally from *Penn Traffic*, where the claimant sought to define the contract as non-executory in order to deprive the debtor of the power to reject it, while the debtor sought to define the contract as executory in order to apply its § 365 rejection power. In the current motion, WorldCom seeks to define the contract as non-executory in order to avoid the conclusion that it assumed the contract using its § 365 assumption power in the Confirmed Plan. Although WorldCom had discretion before the effective date to assume or reject any executory contract, on the effective date the Confirmed Plan assumed all outstanding executory contracts other than a list of specifically rejected executory contracts, which did not include the alleged K&A contract. Confirmed Plan § 8.01, Confirmed Plan, Sch. 8.01 (amended Jan. 12, 2004). The § 365 rejection power operates only through court-approved trustee action, and WorldCom cannot now claim that it constructively rejected this alleged contract without terminating it

according to its terms, passing an expiration date, or rejecting it formally with the Court's approval before the effective date of the Confirmed Plan. *See WorldCom*, 343 B.R., at 500.

The parties' undisputed actions affecting their mutual obligations before the effective date do not rise to the level of termination of all material obligations as described in any controlling precedent. A mutual cessation of collaborative work might suffice to render a more slender contract non-executory, but here the alleged contract states a termination method that WorldCom did not apply until 2005. In a case cited by both parties, an executory employment contract became non-executory post-petition when the employer terminated the employee according to the terms of his contract, leaving the employee no material obligations to his former employer. *In re Spectrum Info. Techs.*, 193 B.R. 400, 404 (Bankr. E.D.N.Y. 1996). The undisputed facts of this case indicate that WorldCom did not terminate the alleged contract according to its terms. In another case cited by both parties, an executory contract became non-executory when the debtor defaulted incurably on a contractual deadline. *In re Empire Equities Capital Corp.*, 405 B.R. 687 (Bankr. S.D.N.Y. 2009). The alleged contract in this case contains no such deadline and the undisputed facts indicate no such default. Finally, although the *Delta Air Lines* court did not consider post-petition events, it did find an ongoing obligation sufficient to support an executory contract even when the claimant was not actively performing any meaningful consulting duties under the contract as early as the petition date. *Delta Air Lines*, 2010 WL 423279, at *4. K&A possessed more substantial obligations; it performed requested work after the petition date and stood ready to perform more until WorldCom formally terminated the contract. A *de facto* or informal termination method simply does not apply to an executory contract that has not expired, experienced an incurable material default, or been terminated, in each case according to its specific terms and applicable bankruptcy law.

## IV. CONCLUSION

WorldCom has not met the burden of proof for partial summary judgment in its favor; the undisputed facts do not legally suffice to prove WorldCom's legal claim that the parties' actions after the petition date rendered the alleged contract non-executory[7]. The alleged contract contains at least an unexpired term of engagement, information sharing provisions, obligations for K&A to perform requested work, payment obligations for WorldCom, and a termination clause. K&A, WorldCom, and WorldCom's third-party benefit plan administrators made numerous undisputed contacts and exchanges consistent with this alleged contract both before and after WorldCom's bankruptcy petition. WorldCom has not introduced any evidence of an expiration, incurable default, or formal termination of the contract before the effective date. A reasonable fact-finder might determine that the alleged contract was executory on the effective date, based on consideration of the record under both the Countryman test and the functional approach. For these reasons, the Court denies WorldCom's motion for partial summary judgment.

Counsel for K&A is directed to settle an order consistent with this opinion.

Dated: New York, New York
      June 11, 2010

                                  <u>s/Arthur J. Gonzalez</u>
                                  CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[7] In fact, based on this record, if the court were to find that there was a valid contract, it appears that the undisputed facts support the conclusion that the alleged contract would have been executory on the effective date.