**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Not For Publication**

_____

|   |   |   |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 02-13533 (AJG) |
| WORLDCOM, INC., *et al.*, | : |  |
|  | : |  |
|  | : |  |
| Reorganized Debtors. | : |  |

_____:

### OPINION AND ORDER REGARDING DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 21132 FILED BY SCHUYLER HILLS, INC.

APPEARANCES:

WEIL, GOTSHAL & MANGES LLP
Attorneys for Reorganized Debtors
700 Louisiana, Suite 1600
Houston, TX, 77002

     By: Alfredo R. Perez, Esq.

LAW OFFICE OF JOSHUA A. SABO
Attorney for Claimant Schuyler Hills, Inc.
287 North Greenbush Road
Troy, NY, 12180

     By: Joshua A. Sabo, Esq.

**ARTHUR J. GONZALEZ**
**Chief United States Bankruptcy Judge**

     The issue before the Court is whether WorldCom, Inc. (the "Debtor" or "WorldCom") is

liable for trespass to Schuyler Hills, Inc. (the "Claimant" or "Schuyler Hills") for exceeding the

scope[1] of an easement granting use of the Claimant's property. The Court finds that the Debtor's

---

[1] The scope of an easement delineates the extent of use an easement holder may make of the servient estate.

installation of an underground fiber optic cable (the "Cable") constitutes a misuse[2] of the easement thereby rendering the Debtor liable for trespass.

## I. Factual and Procedural History

Schuyler Hills owns property in Colonie, New York (the "Property").  Niagara Mohawk Power Corporation ("Niagara Mohawk") obtained the right to install power lines from the original owner of the Property, James McDermott.  James McDermott granted Niagara Mohawk's predecessor, New York Power and Light Corporation ("NYP&L"), two easements over the Property in 1947 (the "1947 Easement") and 1949 (the "1949 Easement").

The 1949 Easement grants Niagara Mohawk the permanent right to construct, operate, and maintain structures to transmit electricity and messages *over and across"* the Property.[3] (emphasis added).  From the date the 1949 Easement was granted until present, Niagara Mohawk has continued to operate and maintain power lines on steel towers and wood poles over and across the Property.  In 1988, Niagara Mohawk and MCI Telecommunications Corporation ("MCI"), an affiliate of the Debtor, entered into a Right-of-Way Occupancy Agreement (the "ROW Agreement").  The ROW Agreement permitted MCI to install, operate, and maintain the Cable along the 1949 Easement.  MCI began installing the Cable in the ground beneath the Niagara Mohawk power lines in 1988.  The installation of the Cable was completed in April

---

[2] The Court notes that in the context of an easement, "misuse" refers to any use by an easement holder which exceeds the scope of the easement and gives rise to liability for trespass.  *See Gangl v. Cutia*, 70 A.D.2d 969 (N.Y. App. Div. 3d Dep't 1979) ("The central issue is whether respondent presented facts sufficient to require a trial with respect to the alleged trespass on the right of way along the southerly side of appellant's lot.  The grant was specifically for 'horses and wagons' and appellant contends the use of trucks and other motor vehicles was a *misuse* of a limited grant." (emphasis added).

[3] "[S]aid party of the first part . . . has granted and released and hereby grant and release unto the party of the second part, its successors and assigns, the permanent right, privilege and easement to transmit electricity and messages *over and across* the lands of the property of the first part situate[d] in the Town of Colonie, County of Albany, and State of New York . . . Together with the right at all times to enter upon premises and build, rebuild, remove, replace, inspect, repair, operate and maintain a transmission line or lines consisting of such supports, guys, wires, cables and other appurtances as the party of the second part, its successors or assigns, may from time to time deem necessary for the transmission of electricity and messages."  (emphasis added).

1989. Shortly after installation, the location of the Cable was identified with markers indicating MCI as the owner of the cable.

On or about July 20, 2000, Schuyler Hills filed a complaint and commenced a lawsuit in the Supreme Court of the State of New York against MCI. Schuyler Hills asserted a trespass claim and a claim to quiet title on the Property. On August 29, 2000, MCI filed a notice of removal with the U.S. District Court for the Northern District of New York (the "District Court") on the basis of diversity jurisdiction.[4] The District Court subsequently entered an order bifurcating the litigation into liability and damages phases. Pursuant to an agreed scheduling order, Schuyler Hills and MCI filed competing summary judgment briefs in 2002 on the issue of liability. In July and November of 2002, the Debtor filed for bankruptcy protection pursuant to chapter 11 of title 11 of the United States Code. *See In re WorldCom, Inc*., 320 B.R. 772, 774 (Bankr. S.D.N.Y. 2005). The Debtor's bankruptcy proceeding stayed the District Court litigation and Schuyler Hills timely filed claim no. 21132 alleging a $1 million unsecured claim based on the prepetition trespass litigation. The Debtor subsequently objected to claim no. 21132 in the 62nd Omnibus Objection to Proofs of Claim (Right-of-Way Claims). In accordance with an agreed scheduling order dated March 24, 2011, Schuyler Hills and the Debtor submitted supplemental briefs relating to claim no. 21132. The parties seek adjudication of the trespass claim on its merits. A hearing took place on June 14, 2011.

## II. Discussion

### *Installing the Cable under the Property Exceeds the Scope of the 1949 Easement*

The first issue before the Court is whether MCI's installation of the Cable exceeds the scope of the 1949 Easement, thereby rendering the Debtor liable for trespass. This issue requires the Court to interpret the language of the 1949 Easement. Under New York Law, "the extent and

---

[4] *Schuyler Hills, Inc. v. MCI WorldCom Communications, Inc.* (N.D.N.Y. – Case No. 1:00-cv-1321).

nature of an easement must be determined by the language contained in the grant, aided where necessary by any circumstances tending to manifest the intent of the parties." *Hopper v. Friery*, 260 A.D.2d 964, 966 (N.Y. App. Div. 3d Dep't 1999). As noted, the 1949 Easement grants Niagara Mohawk, as successor-in-interest to NYP&L, "the permanent right, privilege and easement to transmit electricity and messages over and across the lands of the property" and the right to "build, rebuild, remove, replace, inspect, repair, operate and maintain a transmission line or lines consisting of such support, guys, wires, cables and other appurtenances as the party of the second part, its successors and assigns may, from time to time deem necessary for the transmission of electricity."

The Debtor argues that New York courts consistently hold, as a matter of law, that the term "and" is also construed to mean "or" unless the relevant document shows on its face that "and" is to be literally construed. Accordingly, the Debtor argues that the 1949 Easement language granting rights to transmit messages "over and across the lands" permits transmission of messages "over" *or* "across" the Property. Therefore, by installing the Cable "across" the Property, albeit *under* the Property, the Cable is within the scope of the 1949 Easement. While the Court does not disagree with the Debtor's argument that the word "and" can be interpreted to mean "or," in the language "over and across," the word "across" connotes the purpose[5] of the 1949 Easement to go across the Property from one side to the other, while "over" describes the manner in which the subject of the 1949 Easement transverses from one side to the other. The word across is directional, the words over and under, certainly in the context of an easement, convey the pathway taken relative to the land burdened by the easement. The suggestion that "under" can be read into the word "across" does not reconcile with the plain meaning of the

---

[5] Black's Law Dictionary (9th ed. 2009) provides the following definition for easement "An interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited *purpose* (*such as to cross it for access to a public road*)." (emphasis added).

4

grant language.  Nor would it make sense then to include the word "over" in the 1949 Easement.

Because if across includes the notion of under, it would have to include the notion of over as

well.  If that were correct then the grant simply had to state that the 1949 Easement was to go

across the Property.  Yet the 1949 Easement states over and across to convey two separate

notions.  Further, interpreting the phrase "over and across" in conjunction with other references

within the 1949 Easement to non-generic maintenance and repairs, all of which suggest an

overhead structure, it is clear that the 1949 Easement was intended to confer an above-ground

property right.

It is also significant that the original parties to the 1949 Easement never acted in a

manner which would lead either to believe that the 1949 Easement conveyed a right to bury the

Cable under Schuyler Hills's property.  From the time the 1949 Easement was created until

today, there is no evidence that Niagara Mohawk used the 1949 Easement for any purposes other

than to place transmission lines over and across the Property.  The intent of the parties who

originally entered into an easement can be shown by the contemporary interpretation and

practical construction they afforded the agreement.  *Oneida County Mobile Home Sales, Inc. v.*

*Niagara Mohawk Power Corporation*, 63 A.D.2d 385, 392 (N.Y. App. Div. 4th Dep't 1978).

The express language of the 1949 Easement did not permit Niagara Mohawk to bury

transmission lines underground, and the original parties to the 1949 Easement have never acted

in a manner that would imply such a use.

At the hearing on June 14, 2011, counsel for the Debtor argued that even if burying the

Cable does not comport with the plain meaning of the 1949 Easement's language, the Debtor is

not liable for trespass because the underground installation does not result in an additional

burden.  However, the Debtor's argument does not conform with New York Law.

Under New York Law, an additional burden is imposed when a new use of the land falls *outside* the scope of an existing easement. *See Hoffman v. Capital Cablevision Sys., Inc.*, 82 Misc. 2d 986, 987-88 (N.Y. Sup. Ct. 1975) (stating that "[t]he question, therefore, is whether or not the defendant's intended use falls within or without the scope of the existing easement . . . If it does not, then an additional burden is imposed on the plaintiffs' land apart from the already existing easement . . . and the plaintiffs reasonably compensated therefor."). Further, the Third Appellate Division explained there is no additional burden if a subsequent grantee is not entitled to do anything more than a grantee is already entitled to do. *See Hoffman v. Capitol Cablevision Sys., Inc.,* 52 A.D.2d 313, 316 (N.Y. App. Div. 3d Dep't 1976) ("[T]here is no additional burden imposed by the grantee. Nothing granted to the plaintiff enables it do anything which the grantee could not have done."). In this instance, the additional burden is simply established as a matter of law, since the use at issue is outside the scope of the 1949 Easement. Otherwise, one could continually expand the scope of an easement by establishing there was no additional burden. Such a policy would deny a property owner of the right to receive, among other things, the economic benefit of its property by granting additional easements solely on the basis that no additional burden was incurred without any additional consideration for the benefit conferred. As noted above, the 1949 Easement only authorized installation of an overhead transmission line across the Property. Accordingly, by burying the Cable across the Property, the Debtor has exceeded the scope of the 1949 Easement and imposed an additional burden on the Property. Therefore, the Debtor is liable for trespass as a matter of law.

Further, the Court notes that the concept of additional burden plays a role in evaluating additional uses *within* the scope of an existing easement. For example, in *Hoffman*, the plaintiffs' land was subject to an easement granting permission to telephone and power

companies to transmit electricity and messages. *Hoffman,* 82 Misc. 2d at 987. Although cable technology was not discovered at the time of the grant, the court noted that "[a] sufficiently broad interpretation to meet progressive inventions is required." Thus, the court ruled in favor of defendant cable company that merely strung a new cable wire along existing telephone and power line poles on the plaintiffs' property. *Id.* at 988. The court found the easement could be apportioned for this additional use because it was within the scope of the easement and it did not burden the property of the plaintiffs any more than the telephone and power companies had already done under the easement. *Id.* For instance, the court pointed out that the defendant cable company was "not given a license to install any new poles, which could be construed as imposing an additional burden on the plaintiffs." *Hoffman,* 52 A.D.2d at 317. However, as noted above, the language of the 1949 Easement and the subsequent conduct of the original parties plainly indicate that permission was only granted for the installation and maintenance of an above-ground structure. The Debtor's act of burying the Cable represents such a clear departure from the intended scope of the 1949 Easement that the Court need not reach the issue of whether the new use actually imposed an additional burden on the Property in this respect, since the Debtor has failed to satisfy the threshold issue of showing the use is even *within* the scope of the 1949 Easement. As previously noted, having failed to show the new use is within the scope of the 1949 Easement, the "additional burden" is already established.

### *Real Property Law Section 261 Bars the Debtor's Claim of a Prescriptive Easement[6]*

The Debtor asserts that even if a disputed issue exists with respect to the use of the Property within the terms of the 1949 Easement, the Debtor is still not liable for trespass because a prescriptive easement has arisen as a result of adverse, open, and continuous use of the

---

[6] Although not specifically addressed in the Debtor's supplemental objection to Schuyler Hills's proof of claim no. 21132 (ECF No. 19602), MCI asserted a property right based on a prescriptive easement in its motion for summary judgment before the District Court.

Property for over ten years, the prescriptive period under New York Law.  *See* CPLR 212(a);

RPAPL § 311.  However, Real Property Law § 261 states, "[w]henever any wire or cable used

for any telegraph, telephone, electric light or other electric purpose, or for the purpose of

communication otherwise than by the aid of electricity, is or shall be attached to, or does or shall

extend upon or over any building or land, no lapse of time whatever shall raise a presumption of

any grant of, or justify a prescription of any perpetual right to, such attachment or extension."

Application of Real Property Law § 261 bars the Debtor from obtaining a prescriptive easement.

The Debtor responded that Real Property Law § 261 does not preclude the existence of a

prescriptive easement because this case involves rights that have arisen in the context of a

dispute over an easement rather than rights based on prescription.  The Debtor cites *Keinz v.*

*Niagara Mohawk Power Corp.*, 41 A.D.2d 431, 434 (N.Y. App. Div. 4th Dep't 1973) for this

proposition.  However, the case law cited by the Debtor to support its argument is

distinguishable from the present case.  In *Keinz v. Niagara Mohawk Power Corp.*, the plaintiff

was a subsequent purchaser of land over which Niagara Mohawk had obtained an easement to

run telephone and power lines from the original owner.  Although the easement was not

recorded, the court found that signed electric and telephone easements were admissible against

the subsequent purchaser of land who had actual knowledge of the poles and wires.  *Id.*  The

court refuted the argument that Real Property Law § 261 defeated the defendant's claim of

rightful occupancy by "the fact that no presumption of a grant or prescriptive right is claimed by

defendant here."  The court went on to explain "[t]his is not a case which defendant rests its right

on adverse possession…defendant's claim is predicated on an equitable right founded on the

explicit grant contained in an executed instrument, coupled with possession and improvements,

and limited in its application to those taking title to the servient estate with notice."  *Id.*

Essentially, the continuous presence of the wires provided the requisite constructive notice to enforce an improperly recorded easement.

Conversely, in this case, the Debtor argues it is enforcing a right within the scope of the existing easement, but rather it is effectively requesting the Court to expand the 1949 Easement in such a way that is the functional equivalent to granting a new easement. In contrast with the existing 1949 Easement that permits installation of the Cable above-ground, the Debtor requests the Court to grant a new property right allowing the Debtor to install the Cable under the Claimant's property, thereby finding the current underground placement of the Cable is not a continuing trespass.[7] Further, the Debtor's motion for summary judgment entered before the District Court expressly asserts a property interest in the Property based on the existence of a prescriptive easement. Accordingly, Real Property Law § 261 bars the Debtor's right to a prescriptive easement and the Debtor is unable to avoid liability for trespass.

---

[7] In New York, an encroaching structure is a continuous trespass which gives rise to successive causes of action. *See 509 Sixth Avenue Corp. v. NYC Transit Authority*, 255 N.Y.S.2d 89, 91 (1964) (". . . although the nature of the structure may be permanent, the nature of the trespass is continuous. Suits predicated on a continuous trespass are barred only by the expiration of such a time which would create an easement by prescription or change title by operation of law." However, as noted previously, such an easement by prescription is barred by Real Property Law § 261).

### III. Conclusion

For the foregoing reasons, the Court denies the Debtor's objection to claim no. 2113, as

to the issue of liability, with damages to be determined.

The Court directs the parties to contact chambers regarding the scheduling of a hearing to

determine damages based on the diminution in the rental or usable value of the premises caused

by the trespass.

SO ORDERED

Dated:  New York, New York
       July 21, 2011

                              **<u>s/Arthur J. Gonzalez</u>**
                              ARTHUR J. GONZALEZ
                              CHIEF UNITED STATES BANKRUPTCY JUDGE