UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK          FOR PUBLICATION

In re:

       WORLDCOM, INC.,

                           Debtor.

Case No. 02-13533
Chapter 11

**MEMORANDUM OPINION AND ORDER GRANTING DEBTORS' SECOND MOTION
FOR PARTIAL SUMMARY JUDGMENT**

*A P P E A R A N C E S:*

STINSON MORRISON HECKER LLP
*Attorneys for Debtors and Debtors in Possession*
1201 Walnut Street
Kansas City, MO 64106
By:    Sara E. Welch, Esq.

PIROGOVSKY FREMDERMAN, LTD.
*Counsel for Kennedy & Associates, Inc.*
3000 Dundee Road, Suite 318
Northbrook, IL 60062
By:    Alex Pirogovsky, Esq.

UNGARETTI & HARRIS LLP
*Counsel for Kennedy & Associates, Inc.*
3500 Three First National Plaza
Chicago, IL 60602
By:    Dean J. Polales, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

       Pending before the Court is the *Debtors' Second Motion for Partial Summary Judgment*

*with Respect to Claim No. 23470 Filed by Kennedy & Associates* ("WorldCom Motion," ECF

Doc. # 19734). Kennedy & Associates ("K&A") filed a response ("K&A Response," ECF Doc.

1

# 19737), and WorldCom filed a reply ("WorldCom Reply," ECF Doc. # 19742). A hearing was held on June 19, 2013.

By its latest estimate, K&A seeks approximately $25 million in damages based on its assertion that WorldCom breached an agreement between the parties by failing to pursue potential insurance overpayment claims identified by K&A, even though nothing in the agreement required WorldCom to pursue any or every potential recovery identified by K&A. For reasons explained below, the Court **GRANTS** the motion for partial summary judgment in favor of the Debtors, limiting any recovery by K&A, in the event it succeeds in establishing the existence of a binding contract with WorldCom, to a percentage of the actual cost or expense savings or reimbursement achieved by WorldCom as a result of K&A's recommendations.

## I.    BACKGROUND

WorldCom, Inc. ("WorldCom") and certain of its subsidiaries filed petitions for chapter 11 relief on July 21, 2002 and November 8, 2002. K&A filed its proof of claim on January 23, 2003, asserting an unliquidated claim "pending audit of prepetition and postpetition recoveries." *See* WorldCom Mot., Ex. A at 1. WorldCom filed its confirmed plan of reorganization on October 21, 2003, and the Court confirmed the plan on October 31, 2003.

K&A, headed by David Kennedy, is a Social Security disability claim advocacy firm. K&A and WorldCom began working together after Dona Miller, Vice President of Corporate Employee Benefits at WorldCom, invited Kennedy to a WorldCom strategic partners meeting in 1999. According to K&A, several months later, Kennedy visited Miller's office in Florida, where they discussed the services K&A would provide WorldCom and the compensation K&A would receive in return.

2

In December 2000, according to K&A, Kennedy drafted a Benefit Plans Consulting Agreement ("Agreement") and sent it to Miller. The two-page Agreement stated that K&A was "to perform various claim analysis services; to evaluate such benefit programs . . . and to perform similar benefit plan review activities as requested by WorldCom, Inc." *See* WorldCom Mot., Ex. A at 3. The Agreement also provided that K&A would be compensated as follows: "(1) a monthly retainer billing plus expenses, and (2) billings for one-half (50%) of the gross cost or expense reduction (savings) in the benefit plans of WorldCom, Inc. including reimbursements of overpayments under the various benefit plans." *Id.* Nothing in the draft agreement required WorldCom to follow any or all of the advice or suggestions made by K&A. Other than the monthly retainer, any additional compensation was based only on "cost or expense reduction" and reimbursements.

The Agreement also contained an integration clause ("This agreement represents the entire Agreement between the parties and supersedes any and all previously written or oral agreements or understandings between the parties respecting the subject matter hereof."), and a choice of law clause ("The validity and construction of this Agreement, and the rights and obligations of the parties under this agreement, shall be governed by the law of the State of Illinois without regard to conflict of law rules."). *Id.* at 4.

K&A has alleged that WorldCom breached the Agreement by failing to compensate K&A for 50% of all *potential* savings identified by K&A. The dispute between WorldCom and Kennedy has evolved over time. Several months after the plan was confirmed, WorldCom objected to K&A's proof of claim. (ECF Doc. # 12229.) K&A replied that its claim included an executory contract that the confirmed plan did not explicitly reject and, therefore, assumed. (ECF Doc. # 12569.) WorldCom sought a *nunc pro tunc* order retroactively rejecting the alleged

3

executory contract in the confirmed plan, which then Chief Judge Gonzalez denied. (ECF Doc. # 17998.)

The parties conducted extensive discovery regarding K&A's proof of claim, took depositions from K&A's David Kennedy and Patrick Kennedy, and obtained affidavits from WorldCom's Dona Miller and Julie Petersen. WorldCom then moved for partial summary judgment, arguing that the Agreement was non-executory in nature. Finding that WorldCom had not shown that the undisputed facts proved its legal claim that the parties' actions after the petition date rendered the Agreement non-executory, Chief Judge Gonzalez denied WorldCom's motion in an opinion and order dated June 11, 2010 (ECF Doc. ## 19530 and 19531).[1]

Mediation efforts to resolve this dispute have seemingly foundered over the very large claim asserted by K&A. WorldCom now moves for partial summary judgment that would vastly reduce WorldCom's potential damages from the approximate $25 million that K&A seeks[2] to the approximate $750,000 that K&A *might* be entitled to receive (half of the $1.4 million in actual recoveries obtained by WorldCom), less whatever compensation K&A has received to date, if the Agreement is binding on both parties.

## II.    DISCUSSION

### A.    Summary Judgment Standard

A court should only grant summary judgment under Fed. R. Civ. P. 56, made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056, where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

[1] All remaining unresolved matters in *WorldCom*, including this one, were transferred to me when Chief Judge Gonzalez retired.

[2] At the March 14 hearing, counsel for K&A represented that the damages approximated $21 million. *See* March 14, 2013 Hearing Tr. 11:2-3 (ECF Doc. # 19739). At the June 19 hearing, however, counsel estimated the potential damages approximated $25 million, "give or take several million."

4

material fact and that the movant is entitled to judgment as a matter of law." *Beyer v. Cnty. of Nassau,* 524 F.3d 160, 163 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted).

Neither K&A nor WorldCom has ever located a signed copy of the written agreement. WorldCom disputes the validity of the Agreement, and has argued throughout this matter that, even if there is a binding agreement, the dispute should be governed by Florida law, where the bulk of the work was performed. K&A, on the contrary, argues that the Agreement was validly executed between the parties and that, pursuant to the choice-of-law provision in the Agreement, Illinois law applies. Nonetheless, for purposes of the partial summary judgment motion now before the Court, both WorldCom and K&A assume for purposes of argument that the Agreement was executed between the parties. Moreover, the parties appear to agree that Illinois and Florida law do not differ with respect to the legal principles applied in resolving the issues in this Motion. For these reasons, it is unnecessary for the Court to decide the choice of law issue. *See McHale v. Boulder Capital LLC (In re 1031 Tax Grp.)*, 439 B.R. 47, 59 (Bankr. S.D.N.Y. 2010) ("Under New York law, courts only engage in a choice of law analysis when there is an actual conflict between the possible applicable laws."). Accordingly, both Illinois and Florida cases are relied upon in the analysis set forth below.

### B. The Agreement Cannot Be Interpreted As Requiring WorldCom To Pay K&A Fifty Percent Of All Potential Savings, Not Just Actual Savings

The Agreement states that K&A is entitled to "50% of gross cost or expense reduction (savings) . . . including reimbursements of overpayments . . ." WorldCom Mot., Ex. A at 3. K&A stretches too far in construing the Agreement to require WorldCom to pay 50% of all *potential* savings identified by K&A.

When the terms within a contract are unambiguous, any analysis of the meaning of the contract should not extend beyond the contract itself. *See Air Safety Inc. v. Teachers Realty Corp.,* 185 Ill. 2d 457, 462 (1999) ("[A] court initially looks to the language of a contract alone. If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parole evidence.") (citations omitted). *See also Emerald Pointe Prop. Owners' Ass'n v. Commercial Constr. Indus.,* 978 So. 2d 873, 877 (Fla. Dist. Ct. App. 2008) ("Where contractual terms are clear and unambiguous, the court is bound by the plain meaning of those terms."). The intent of the parties must be discerned from within "the four corners of the document." *Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1036 (7th Cir. 1998) (holding that Illinois also applies the "four corners" rule in interpretation of contracts).

It is true that Illinois courts recognize the "provisional admission" approach. *Air Safety,* 185 Ill. 2d at 463. Under the provisional admission approach, extrinsic evidence may be admitted in order to demonstrate ambiguity arising out of a seemingly unambiguous contract. *Id.* However, the provisional admission approach does not apply if the agreement contains an integration clause because, "where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Id.* at 464. As the Agreement contains an integration clause, the provisional admission approach is inapplicable here.

Above all, "where one interpretation of a contract would be absurd, and the other would be consistent with reason and probability, the contract should be interpreted in the rational manner." *King v. Bray*, 867 So. 2d 1224, 1227 (Fla. Dist. Ct. App. 2004); *Bourke*, 159 F.3d at 1039 (holding that since appellants failed to show that their interpretation was reasonable and

6

appellee demonstrated that its interpretation was reasonable, there was no ambiguity to resolve and the court should apply the language of the contract as written).

Here, the terms of the Agreement are unambiguous. The Agreement contains no language requiring WorldCom to pay K&A a portion of "potential" or "not yet realized" savings. If K&A had wanted to impose this type of obligation on WorldCom, it had the option to include such language in the contract, but it did not do so. As WorldCom points out, the compensation arrangement between K&A and WorldCom resembles that of a contingency fee agreement between a lawyer and a client. If the client decides to settle a case, or not pursue a case, even though the lawyer believes the client could prevail and recover damages, it would be absurd for the lawyer to send the client a bill for potential recoveries the client could have received, had she chosen to pursue the case.

### 1. K&A's ERISA Arguments Are Meritless

K&A argues that WorldCom's failure or refusal to attempt to realize the potential savings identified by K&A is a breach of WorldCom's fiduciary duties under ERISA because "statutes in existence at the time a contract is executed are deemed . . . part of the contract as though they were expressly incorporated therein," *Selcke v. New England Ins. Co.,* 995 F.2d 688, 689 (7th Cir. 1993). If K&A is correct, the Agreement may be interpreted under federal contract law. *See Frappier v. Wishnov (In re Estate of Frappier),* 678 So. 2d 884, 886 (Fla. Dist. Ct. App. 1996) ("Generally, actions that 'relate to' an ERISA [action] are preempted by federal law."); *Bock v. Computer Assocs. Int'l, Inc.,* No. 99-C-5967, 2000 WL 310288, at *5 (N.D. Ill. Mar. 24, 2000) ("When considering a contract in the context of an ERISA claim, federal common law rules of interpretation apply.") (citations omitted).

7

K&A does not have standing to make this claim. K&A itself does not and cannot assert a claim under ERISA. Its claim is a breach of contract claim alone. Standing under ERISA is, with some exceptions, limited to participants, beneficiaries, and fiduciaries. 29 U.S.C. § 1132 (1974). *See also Toomey v. Jones*, 855 F. Supp. 19, 24-25 (D. Mass. 1994) (stating that "'making recommendations to others for decisions with respect to plan administration' does not establish fiduciary status under ERISA.") (citation omitted); *Pension Plan of Pub. Serv. Co. of N.H. v. KPMG Peat Marwick,* 815 F. Supp. 52, 55 (D.N.H. 1993) ("[A]ttorneys, accountants, actuaries, and consultants performing their usual professional functions will ordinarily not be considered fiduciaries.") (citation omitted). Moreover, parties can only assert their own rights, and not the separate rights of other third parties. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) ("[T]his Court has held that 'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *See Also Kuck v. Berkey Photo, Inc.*, 85 F.R.D. 39, 43 (S.D.N.Y. 1979) ("It has long been held, as a general rule, that a person does not have standing to assert the rights of third parties."). At the June 19 hearing K&A acknowledged that it does not have a fiduciary relationship to WorldCom, is not a beneficiary to WorldCom, and cannot itself assert the rights of third parties.

Even if K&A did have standing, federal contract law is identical to that of Florida and Illinois. The Court must first determine if the contract is ambiguous. *Bock*, 2000 WL 310288, at *5. If it is not, the Court will not admit extrinsic evidence. *Id*. Under some circumstances, objective evidence may be admitted to demonstrate how an otherwise clear contract can be ambiguous. *Id*. at *7. If this evidence shows that the contract is in fact ambiguous, then

8

02-13533-mg    Doc 19753    Filed 06/26/13    Entered 06/26/13 09:22:57    Main Document
Pg 9 of 15

extrinsic evidence should be admitted to determine "whether the meaning of the term remains ambiguous." *Id*. at *8. This Court has already found that the Agreement is facially unambiguous, and the same analysis would apply in this context.

> 2. *K&A's Prevention of Performance Theory Fails*

K&A also asserts that WorldCom's failure to perform constitutes a breach of the Agreement, in that it "worked to frustrate the purpose of the Contract." To reach this conclusion, Kennedy relies on the doctrine of "prevention of performance."

The doctrine of prevention of performance dictates that "[h]e who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned." *R.H. Stearns Co. v. United States,* 291 U.S. 54, 61 (1934). In *Stearns*, petitioner's tax overpayments over several years were used to later credit an overdue tax. *Id*. at 57. The overdue balance exceeded the credit, and the petitioner paid the remainder. The petitioner had requested that the collection of the tax be postponed until his claim for overpayment was processed and the Commissioner complied with this request. *Id*. Six years later, the petitioner learned that the waiver, which extended the collection period for the overdue tax, was not signed until after its expiration. *Id*. at 58. Therefore, the petitioner filed a refund claim for the overpaid tax. *Id*. The Supreme Court, in reviewing a dismissal of the petitioner's case, affirmed this judgment. *Id*. at 67.

In *Stearns*, the petitioner's failure to pay his tax was the reason that there was a need for an extension in the first place, and, thus, it would be unfair for him to benefit. *Stearns*, 291 U.S. 54 at 61. K&A attempts to analogize the petitioner in *Stearns* to a hypothetical buyer who refuses to look at his commissioned painting (of which payment is dependent on approval), and,

9

therefore, never has to pay. K&A argues that it is *WorldCom's* failure to pursue K&A's suggestions that prevents it from being paid.

This analogy is deeply flawed. First, K&A did benefit from the work it performed for WorldCom—K&A received monthly payments from WorldCom, and if the contract as written is enforceable, K&A would be entitled to 50% of the actual recoveries from the insurer. Second, WorldCom does not unfairly benefit from the terms of the Agreement, as it does not receive benefits from K&A's suggestions unless it chooses to carry them out (and even that anticipated benefit is uncertain, as is further described below).

### C. K&A Cannot Claim Speculative Damages For Cost Savings That Could Have Been, But Were Not, Realized By WorldCom

Even if the Agreement's payment terms are ambiguous on their face, K&A still cannot recover on its theory of "potential savings" because these are essentially speculative damages for the loss of anticipated or potential profits, which are generally not recoverable. According to Williston on Contracts, "[i]n accordance with the general principles concerning the recovery of damages for breach of contract previously considered, damages for the loss of anticipated or prospective profits, which the plaintiff might have made but which are not reasonably certain and are not capable of being proven, cannot be recovered." WILLISTON ON CONTRACTS § 64:10 (4th ed. 2013). "Such damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty." *Lowrie v. Castle,* 113 N.E. 206, 210 (Mass. 1916).

Under Illinois law, plaintiff must prove damages to a reasonable degree of certainty and the evidence of damages cannot be remote, speculative, or uncertain. *R.L.R. Investments, LLC v. Central Freight Lines, Inc.,* No. 4-12-0884, 2013 WL 2387774, at *5 (Ill. App. Ct. May 29, 2013) (citing *Nw. Commerce Bank v. Cont'l Data Forms, Inc.,* 233 Ill. App. 3d 124, 129-30

10

(1992)). *See also Urban v. Drain Mgmt. & Inv. Servs.,* No. 1-11-3328, 2013 WL 764715, at *9 (Ill. App. Ct. Feb. 27, 2013) (stating that "defendants must prove damages to a 'reasonable degree of certainty, and evidence of damages cannot be remote, speculative, or uncertain'") (quoting *Carey v. Am. Family Brokerage, Inc.,* 391 Ill. App. 3d 273, 277 (2009)); *Indus. Door, Co., Inc. v. Infiniti of Hoffman Estates, Inc.,* No. 1-11-3162, 2012 WL 6861332, at *6 (Ill. App. Ct. Dec. 28, 2012) ("The party seeking damages bears the burden of proving the amount of damages to a reasonable degree of certainty and the evidence presented to support its damages may not be remote, speculative, or uncertain."); *Bockman Printing & Servs. v. Baldwin-Gregg, Inc.,* 572 N.E.2d 1094, 1102 (Ill. App. Ct. 1991) ("Although the U.C.C. does not require plaintiff to prove consequential damages with 'mathematical precision,' basic contract theory requires that damages must be proved with reasonable certainty and precludes damages based on conjecture and speculation.") (citation omitted).

The same holds true under Florida law. *See Doran Jason Co. v. Braddon,* 497 So. 2d 286, 288 (Fla. Dist. Ct. App. 1986) (in lowering the damages awarded to defendant, court noted "[i]t is clear that the basis for the jury's award of the maximum figure was fatally speculative"); *Douglass Fertilizers & Chem., Inc. v. McClung Landscaping, Inc.,* 459 So. 2d 335, 336 (Fla. Dist. Ct. App. 1984) ("It is well established that in both contract and tort actions, lost profits are recoverable only if their loss is proved with a reasonable degree of certainty"); *Schonfeld v. Albert Alpert & Sons, Ltd.,* 427 So. 2d 1035, 1036 (Fla. Dist. Ct. App. 1983) (finding that plaintiff was not entitled to lost profits damages and noting that the plaintiffs' "attempt to [prove lost profits damages] amounted to mere conjecture, for which there is no place in our courts. Damages for an anticipated loss of profits must be shown to a reasonable certainty by competent proof.") (citation omitted); *A & P Bakery Supply & Equip. Co. v. Hawatmeh,* 388 So. 2d 1071,

11

1072 (Fla. Dist. Ct. App. 1980) ("The well-recognized general rule in this state is that anticipated business profits are too remote, speculative and contingent to warrant a judgment for their loss.").

*Schonfeld* and *Doran Jason* are particularly instructive cases on their facts. In *Schonfeld*, the defendant paid the plaintiff for an option to purchase a distressed building. The building became the subject of a rehabilitation plan and defendants submitted an application to HUD for acceptance into its program. *Schonfeld*, 427 So. 2d at 1036. But before the option could be exercised, the building was demolished by the City of Miami in accordance with the ruling of the Unsafe Structures Board. *Id*. Defendants sued plaintiff for his alleged fraud in concealing the pendency of condemnation proceedings and for his breach of the option contract in allowing the subject matter of the option to be destroyed. *Id*. At trial, defendant testified that, in his opinion, HUD would have accepted the company's proposal. *Id*. Based on this assumption, the defendants asserted that plaintiff owed it $440,000 in lost profit damages, and the jury awarded this amount as lost profits. *Id*.

In reducing the jury award, the appellate court in *Schonfeld* found that the defendant "was not in a position to predict how HUD officials would exercise their discretion with regard to his company's latest application. His attempt to do so amounted to mere conjecture, for which there is no place in our courts . . . . Damages for an unanticipated loss of profits must be shown to a reasonable certainty by competent proof." *Id*.

In *Doran Jason*, defendant, William Braddon, was engaged by plaintiff, Doran Jason Company, as a commercial real estate agent. Pursuant to Braddon's employment agreement, Braddon would have the right to collect 57% of those commissions received by Doran Jason, which were generated from leases where Braddon attracted the tenant. *Doran Jason*, 497 So. 2d

12

at 287.  When Doran Jason terminated Braddon's employment, Braddon instituted an action for breach of contract.  *Id*.  Among other things, Braddon claimed that payments were owed to him from various leases he had negotiated, including a highly lucrative transaction with a tenant named Ari-Star, Inc., even though Doran Jason had never received commissions on the Ari-Star, Inc. lease.  *Id*.  After trial, a jury awarded Braddon $1,830,914 in damages (which included his share of commissions from the Ari-Star deal), and Doran Jason appealed the award.  *Id*.  The appellate court found that, "[w]hile Braddon had a contractual right to fifty-seven percent of the commissions paid to Doran Jason pursuant to leases Braddon had negotiated, his right to payment matured only after Doran Jason had received the commissions."  *Id*. at 287-88.  Since Doran Jason had not received the commissions from the Ari-Star lease, the court concluded that "the basis for the jury's award of the maximum figure was fatally speculative."  *Id*. at 288 (citing *Schonfeld*).

The law on speculative damages with respect to legal malpractice claims is also analogous to the issues here.  The amount of savings, if any, that WorldCom would have recovered, had it pursued all the claims identified by K&A, is not reasonably certain.  Similarly, courts have found, in the context of legal malpractice claims, that damages for what "would have happened" but for the lawyer's allegedly negligent conduct are too speculative to be recovered.

*Lane v. Pedersen & Houpt, PC,* No. 1-11-2748, 2012 WL 6962923 (Ill. App. Ct. Sept. 27, 2012), is one such example.  The claims in *Lane* arose out of a sale of the plaintiffs' four-unit apartment building in Chicago.  The purchaser of the apartment building sued the plaintiffs, alleging a number of fraud claims; plaintiffs, blaming their real estate lawyer, hired the law firm Pedersen & Houpt ("P&H") to defend them.  2012 WL 6962923 at *1.  P&H eventually settled the dispute with the purchaser.  *Id*.  Soon thereafter, the plaintiffs filed a negligence claim against

13

P&H, alleging that P&H failed to initiate proceedings against their real estate lawyer before the statute of limitations expired on their claim against the lawyer. *Id*. at *2. P&H argued that the statute of limitations did not begin to run until the final settlement was reached between plaintiffs and the purchaser, because before that date the plaintiffs did not and could not have suffered any actual damages. *Id*. at *4.

Agreeing with the defendants, the court in *Lane* found that "[t]he existence of actual damages is, therefore, essential to a viable cause of action for legal malpractice," and that "no cause of action will accrue without actual damages, and those damages will be considered speculative only if their existence itself (rather than merely the amount) was uncertain." *Id*. at *5. The court also found that, even though the purchaser's lawsuit alerted the plaintiffs to the possibility that they might have actionable claims against the real estate lawyer, the plaintiffs had no actionable damages prior to an adverse ruling against them (i.e., the settlement with the purchaser). *Id*.

In another case, *Lucey v. Law Offices of Pretzel & Stouffer, Chartered,* 301 Ill. App. 3d 349, 355 (1998), the plaintiff, Lawrence Lucey, brought a legal malpractice action against the defendants, Pretzel & Stouffer ("P&S"), because of allegedly improper advice given by P&S to Lucey. *Id*. Lucey found himself embroiled in a lawsuit arising, allegedly, out of reliance on the advice he received from P&S. In the midst of this lawsuit, Lucey sued P&S. *Id*.

The *Lucey* court set forth what is known as the "adverse judgment accrual rule," where "a cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." 301 Ill. App. 3d at 356. In reducing the damages awarded to the plaintiff, the *Lucey* court observed that "this is not a case where it is

14

plainly obvious, prior to any adverse ruling against the plaintiff, that he has been injured as the result of professional negligence," and that the client sustained no "actual damages" until the underlying lawsuit was resolved adversely to the plaintiff. *Id*. at 357-58.

These cases all dealt with awards for potential damages that, importantly, had never been realized. In each, the court was clear that damages based on, for example, the assumption that HUD would approve an application, *see* 427 So. 2d at 1036, or that Doran Jason would receive a commission from the Ari-Star lease, *see* 497 So. 2d at 287, could not be awarded because they were speculative and uncertain. Similarly, here, any award based on what WorldCom could have recovered, had it pursued every claim identified by Kennedy, is simply too speculative. These "potential" savings were never realized, and there is no guarantee that the insurance company would not have contested the claims made by WorldCom, or that WorldCom would have prevailed if the insurance company contested those claims.

### III.     CONCLUSION

For all the reasons explained above, the Court **GRANTS** WorldCom's second partial summary judgment motion. The parties are directed to return to mediation in light of the disposition granting WorldCom partial summary judgment. Counsel shall also confer regarding any discovery on any issue remaining for the Court to decide. After a further scheduling conference, the Court will establish a schedule for disposition of the remaining issues.

**IT IS SO ORDERED.**

Dated:   June 26, 2013
         New York, New York

                                              *Martin Glenn*
                                              MARTIN GLENN
                                              United States Bankruptcy Judge

15